# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE:  PROCESSED EGG PRODUCTS : 
ANTITRUST LITIGATION :    MDL No. 2002
——————————————————— :    08-md-02002
   :
THIS DOCUMENT APPLIES TO: :
All Direct Purchaser Actions :

---

### DEFENDANT SPARBOE FARMS, INC'S MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT BETWEEN PLAINTIFFS AND SPARBOE FARMS, INC.

---

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, and for the reasons detailed herein, Defendant Sparboe Farms, Inc. ("Sparboe") respectfully submits this memorandum in support of its motion for preliminary approval of a settlement between Plaintiffs and Sparboe on the terms and conditions set forth in the "Settlement Agreement Between Plaintiffs And Sparboe Farms, Inc." ("Settlement" or "Settlement Agreement"), attached as Exhibit 1 to the Hutchinson Declaration, filed herewith.[1]

Under the terms of the Settlement Agreement, the parties agreed that "Plaintiffs and Sparboe Farms shall use their best efforts to effectuate this Agreement, including cooperating in promptly seeking Court approval of the Settlement." (Hutchinson Decl., Ex. 1, ¶ 12.)[2] Accordingly, Sparboe respectfully requests that this Court rule as soon as

---

[1]  All capitalized terms not otherwise defined herein shall have the same meaning as set forth in the Settlement Agreement.  Moreover, the term "class" refers collectively to the Subclasses identified in the CAC.

[2] The parties also agreed that "[a]s soon as practicable after execution of the Agreement by Sparboe Farms, Plaintiffs shall submit to the court a motion … for preliminary approval of the settlement, and authorization to disseminate notice of class certification,

Portlnd1-2530212.1 0034560- 00001

1

is practicable on the Motion for Preliminary Approval and hear argument on Sparboe's Motion at the July 14, 2009, hearing previously set by order of the Court dated June 26, 2009 (Docket No. 183) for Plaintiffs' Motion for Preliminary Approval of Class Action Settlement between Plaintiffs and Sparboe Farms, Inc. and Preliminary Certification of Class Action for Settlement Purposes of Settlement (Docket Nos. 171 and 171).

## I.   **INTRODUCTION**

After several months of intense arm's-length negotiations by the experienced and capable antitrust lawyers designated by this Court to serve as Interim Co-Lead Class Counsel, Plaintiffs reached a settlement with Sparboe.  The Settlement requires cooperation from Sparboe in the discovery process on an expedited basis.  Specifically, Sparboe has agreed to produce (and has already allowed counsel for Plaintiffs to review) documents and allow Class Counsel to interview witnesses.

As set forth in the Settlement Agreement, prior to its execution, Class Counsel "conducted an investigation into the facts and the law regarding the Action and have concluded that a settlement with Sparboe Farms according to the terms set forth below is fair, reasonable, and adequate, and beneficial to and in the best interests of the Plaintiffs and the class." (Hutchinson Decl., Ex. 1, p. 2).  As detailed below, the Settlement is fair, reasonable and adequate.  Moreover, the benefit of the cooperation supplied by Sparboe, reached before the commencement of discovery with the Non-Settling Defendants, vastly outweighs Sparboe's continued participation in the litigation as a defendant. Accordingly, Sparboe respectfully requests that, pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court preliminarily approve the Settlement Agreement.

the settlement, and the final judgment contemplated by this Agreement to all potential Class Members." (Hutchinson Decl., Ex. 1, ¶ 13).

## II.   BACKGROUND

### A.   The Litigation

The operative complaint in this action is the Consolidated Amended Class Action Complaint ("Complaint"), filed on January 30, 2008. It appears that the only factual basis for Plaintiffs' Complaint is publicly available, industry newsletters and other publicly available information.[3]

The Complaint generally alleges that Sparboe and the Non-Settling Defendants violated the Sherman Antitrust Act, 15 U.S.C. §1, *et seq.*, by engaging in an unlawful conspiracy to reduce output and artificially fix and/or inflate the price of eggs in the United States. The Complaint lacks any specificity as to Sparboe's role in the alleged conspiracy.

### B.   The Settlement Negotiations

Class Counsel and Sparboe's counsel, Stoel Rives LLP, began settlement negotiations in March 2009, shortly after Sparboe was named as a defendant in the Complaint. During much of the relevant class period described in the Complaint, Sparboe was not a member of the United Egg Producers. Furthermore, Sparboe does not transact business in the Eastern District of Pennsylvania and, other than the special appearance here, is not subject to this Court's jurisdiction. Although Sparboe believes that Plaintiffs' claims are meritless and will be unsuccessful, Sparboe entertained early settlement discussions with Plaintiffs to avoid the significant expense of protracted class

---

[3] Sparboe was not named in any of the previously filed complaints. Service of process has not yet been perfected on Sparboe. This Court lacks personal jurisdiction over Sparboe, venue is improper as to claims against Sparboe, and Plaintiffs' claims against Sparboe are time barred.

litigation.  Plaintiffs, on the other hand, expressed an interest in settling with Sparboe on a non-monetary basis if Sparboe would give Plaintiffs access to Sparboe's private, non-privileged company and industry files and access to key Sparboe executives and employees for interviews.  Each parties' interest in settlement – Sparboe, to avoid the expense of class litigation and, Plaintiffs, to obtain early access to private information in light of Defendants' motion to dismiss – led to settlement negotiations spanning several months and included numerous telephone conferences and four in-person meetings.

On March 26, 2009, after the parties executed a Confidentiality and Non-Use Agreement, Sparboe's counsel made an initial proffer to Class Counsel describing what Sparboe's cooperation would be, were a settlement reached, and outlining why Sparboe is not a proper Defendant in this litigation.  (Hutchinson Decl., ¶ 7.)  A draft settlement agreement was circulated.

On April 23, 2009, Sparboe allowed Plaintiffs' Counsel to review certain documents and permitted an interview with a Sparboe employee.  Class Counsel and Sparboe's counsel engaged in several additional telephone conferences to further discuss the cooperation that Sparboe might provide as part of a settlement agreement.  At this point, no Settlement Agreement had been reached and the parties appeared at an impasse.  (Hutchinson Decl., ¶¶ 8-9.)

On April 30, 2009, Defendants, other than Sparboe, filed motions to dismiss (Docket Nos. 106, 107, 110, 112, 113, 115, 116, 118 and 119), mainly on the basis that the Complaint lacks any specifics of the conspiracy allegations, which is required under the Supreme Court's decision in *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 558

(2007). Active settlement negotiations between Sparboe and Class Counsel resumed. (Hutchinson Decl., ¶ 10.)

On May 26, 2009, Sparboe's counsel met for a third time with Class Counsel, during which Sparboe's Counsel again allowed Plaintiffs' Counsel to review the same set of documents previously presented at the April 23, 2009 meeting, along with some additional documents. Soon after this meeting, Plaintiffs' Counsel represented that three of the four Class Co-Leads were prepared to settle with Sparboe. (Hutchinson Decl., ¶ 11.)

On June 3, 2009, Sparboe's counsel again met with representatives of the fourth Class Co-Lead, as well as representatives of the other three Class Co-Leads. During this meeting, Sparboe allowed Plaintiffs' Counsel to again review the same set of documents that had been presented at the prior meetings. (Hutchinson Decl., ¶ 12.)

Following the June 3, 2009 meeting, numerous telephone conferences were held during which the specifics of the settlement were negotiated and finalized. Ultimately, both parties carefully reviewed a written settlement agreement, exchanged red-lined versions, and ultimately reconciled their respective redlined versions. (Hutchinson Decl., ¶ 13.) On June 8, 2009, a final Settlement Agreement was fully executed by Class Counsel and Sparboe's counsel. *Id.* at. ¶ 14. In the agreement, Plaintiffs agreed to dismiss Sparboe from the lawsuit with prejudice in exchange for Sparboe agreeing to give Class Counsel access to Sparboe's non-privileged information on an expedited basis. (Hutchinson, Decl., Ex. 1, ¶¶ 23 & 24.)

After 5:00 p.m., on Monday, June 8, 2009, Class Counsel asked Sparboe to make documents available for review the following morning at 9:00 a.m. (Hutchinson Decl., ¶

15.)  Sparboe's counsel worked feverishly to meet this deadline, and on Tuesday

morning, June 9, 2009, at 9:00 a.m., after obtaining assurances from Class Counsel that

Sparboe was not waiving any privileges by expediting the document review process in

furtherance of Sparboe's cooperation obligations under the Settlement Agreement,

Sparboe made documents available for inspection and review by Plaintiffs' Counsel in

Minneapolis.  (Hutchinson Decl., ¶ 16.)[4]  Sparboe has already made extraordinary efforts

to fully satisfy its cooperation obligations under the Settlement Agreement on an

expedited basis in response to Plaintiffs' demand to provide information in advance of

their July 22, 2009 response date to Defendants' motions to dismiss.  *Id.*

On June 22, 2009, Sparboe made dozens of additional boxes of documents

available for review by Class Counsel.  *Id.* at ¶ 17.

Also on June 22, 2009, Sparboe's counsel and representatives of all four Co-Lead

Plaintiffs' Counsel re-executed the Settlement Agreement after making a material

amendment to ¶ 11 of the Settlement Agreement, thereby reconfirming their

commitments and obligations under the Settlement Agreement.  (Hutchinson Decl., ¶ 19.)

No other provisions of the Settlement Agreement were changed from the version

previous executed on June 8, 2009.  *Id.*  After the Settlement Agreement was amended

and re-executed, Plaintiffs' filed their Motion for Preliminary Approval (Docket Nos. 171

and 172).

On June 23, 2009, Sparboe made a second witness available to Plaintiffs' Counsel

for an interview.  (Hutchinson Decl., ¶ 20.)

---

[4] (Hutchinson Decl., Ex. 1, ¶ 24.)

Sparboe has scheduled, and agreed to make available, three more witnesses for interviews during the week of June 29, 2009, and has made dozens of additional boxes of documents available for review.  (Hutchinson Decl., ¶¶ 21-22.)

The Settlement is the result of extensive arm's-length negotiations, after factual investigation and legal analysis, and is, in the publicly expressed opinion of Class Counsel, fair, reasonable and adequate to the Class.  Accordingly, Sparboe respectfully submits that the Settlement should be preliminarily approved by the Court.

## III.   PROVISIONS OF THE SETTLEMENT AGREEMENT

### A.   The Settlement Class

The Settlement Agreement defines a Settlement Class as follows:

> All persons and entities that purchased eggs, including shell eggs and egg products, produced from caged birds in the United States directly from any producer during the Class Period from January 1, 2000 through the present.
>
> a.) Shell Eggs Subclass
> All individuals and entities that purchased shell eggs produced from caged birds in the United States directly from any producer during the Class Period from January 1, 2000 through the present.
>
> b.) Egg Products Subclass
> All individuals and entities that purchased egg products produced from shell eggs that came from caged birds in the United States directly from any producer during the Class Period from January 1, 2000 through the present.
>
> Excluded from the class and subclasses are the Defendants, their co-conspirators, and their respective parents, subsidiaries and affiliates, all government entities, as well as the Court and staff to whom this case is assigned, and any member of the Court's or staff's immediate family. Also excluded from the Class and Subclasses are purchases of "specialty" shell egg or egg products (such as "organic," "free-range" or "cage-free") and purchases of hatching eggs (used by poultry breeders to produce breeder stock or growing stock for laying hens or meat).

Settlement Agreement, ¶ 11 (Hutchinson Decl., Ex. 1.)

**B.      Release Provisions In The Settlement Agreement**

In exchange for the consideration provided by Sparboe, Plaintiffs have agreed to release Sparboe from any and all claims arising out of or resulting from the conduct asserted in this lawsuit.  The full text of the proposed release, including the limitations thereof, are set forth in the Settlement Agreement, ¶¶ 17-19 (Hutchinson Decl., Ex. 1.)

**C.      Cooperation Provision In The Settlement Agreement**

As provided in the Settlement Agreement, Sparboe has agreed, notwithstanding the stay of discovery or the pending motions to dismiss, to cooperate with Plaintiffs by making discovery available to Plaintiffs on an expedited basis.  Sparboe's cooperation has included, and will continue to include, making documents available for review in the period before preliminary approval and the production of documents after preliminary approval.  Sparboe has also made witnesses available for interview.  (Hutchinson Decl., Ex. 1, ¶ 23.)

Under the cooperation agreement, Plaintiffs get access to documents prior to the Court ruling on the pending motions to dismiss and prior to the Court lifting the stay of discovery.  Given the strength of the pending motions to dismiss and the lack of any specificity in the current Complaint, it is possible that Plaintiffs' current Complaint of doubtful and disputed claims will not survive the pending motions to dismiss.  While Sparboe considered the pending motions to dismiss, and the likelihood that the Court would dismiss Plaintiffs' Complaint, ultimately Sparboe determined that it was in its best interests to take the certainty of  settlement rather than the risk of the Court's ruling on the motions to dismiss.  This is a decision faced by many defendants in litigation.  *See, e.g., Sheng v. Starkey Labs, Inc.*, 117 F.3d 1081, 1083 (8th Cir. 1997) (noting that the

defendant "had a dispositive motion pending, and yet chose the certainty of settlement rather than the gamble of a ruling on its motion").[5]

If there is any hope to Plaintiffs' claims surviving the motions to dismiss, obtaining discovery from Sparboe (or one of the other Defendants) affords Plaintiffs early access to private company and industry information that may or may not be helpful in the preparation of an amended complaint that contains the required specificity to withstand motions to dismiss based on *Twombly*. As such, a settlement with Sparboe is not only in the best interests of the Class, it is critical to Plaintiffs' claims surviving the motions to dismiss. Further, even if Plaintiffs' claims were to survive the pending motions to dismiss, the Settlement Agreement with Sparboe ensures that Plaintiffs get access to all discoverable, non-privileged information without the time and expense involved in pursuing formal discovery, and sooner than would be possible under the current scheduling orders of the court and stay of discovery. As the Court has already witnessed, the parties in this case have demonstrated that disputes will occur at every stage of the discovery process.

Sparboe has already allowed Class Counsel access to witnesses and documents. In fact, immediately after executing the Settlement Agreement, Sparboe's counsel

---

[5] Sparboe recognizes that, even if the Court grants the pending motions to dismiss, the Settlement Agreement is a binding contract on both Sparboe and the Plaintiffs, as this is the calculation to which both parties voluntarily agreed. *See, e.g., Green v. Lewis & Co.*, 436 F.2d 389, 390 (3d Cir. 1970) (citations omitted); *see also D.R. by M.R. v. East Brunswick Bd. of Educ.*, 109 F.3d 896, 901 (3d Cir. 1997) (holding that a settlement agreement is binding); *Good v. The Pa. R.R. Co.*, 384 F.2d 989, 990 (3d Cir. 1967) (holding that a settlement agreement, entered into by duly authorized counsel, was "valid and binding"). Courts consider settlement agreements to be binding contracts. *See In re Columbia Gas Sys., Inc.*, 50 F.3d 233, 238 (3d Cir. 1995) ("[W]e have treated a settlement agreement as a contract."). Ordinary principles of contract law govern settlement agreements. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 231 (3d Cir. 2001) (noting that "basic contract principles do indeed apply to settlement agreements").

provided a first round of additional documents to Class Counsel, and Class Counsel has already interviewed two of Sparboe's witnesses. Sparboe has now made close to one hundred (100) boxes of documents available to Class Counsel, and during the week of June 29, 2009, is prepared to allow Class Counsel to interview two additional witnesses, and to reinterview one of the previous witnesses. Sparboe has already substantially performed its obligations under the Settlement Agreement by providing early discovery to Class Counsel.

Sparboe is not obligated under the Settlement Agreement to provide any categories or types of information. (Hutchinson Decl., Ex. 1, ¶ 23.) Rather, the Settlement Agreement only requires Sparboe to make otherwise non-privileged, discoverable information available on an expedited basis to Class Counsel. (Hutchinson Decl., Ex. 1, ¶¶ 23 & 24.) Class Counsel's early access to private, confidential information – without having to use subpoenas, discovery requests, motion practice, or waiting until the stay of discovery is lifted – is the principal consideration and benefit to the Class. Settlements of this kind are of significant benefit to the Class as such settlements allow Class Counsel to gather information to discover the merits, if any, of the claims. *See, e.g., In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003) ("The provision of such [cooperation] is a substantial benefit to the classes and strongly militates toward approval of the Settlement Agreement.").

## IV.   <u>SETTLEMENT OF CLASS ACTIONS IS FAVORED</u>

There is a strong judicial policy in favor of the voluntary settlement agreements. *See Pennwalt Corp. v. Plough*, 676 F.2d 77, 79-80 (3d. Cir. 1982) (holding that voluntary settlement agreements are "specifically enforceable and broadly interpreted"). Indeed,

"[v]oluntary settlement of civil controversies is in high judicial favor. Judges and lawyers alike strive assiduously to promote amicable adjustments of matters in dispute, as for the most wholesome of reasons they certainly should." *Id.* at 80; *see also D.R. by M.R.*, 109 F.3d at 901 ("Settlement agreements are encouraged as a matter of public policy because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by courts.").

"The law favors settlement particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab.*, 55 F.3d 768, 784 (3d Cir. 1995) (citations omitted). In addition to conservation of judicial resources, "[t]he parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial." *Id.* (citing *First Commodity Corp. of Boston Customer Accts. Litig.*, 119 F.R.D. 301, 306-07 (D. Mass. 1987)). "These economic gains multiply when settlement also avoids the costs of litigating class status – often a complex litigation within itself." *Id.*

## V.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

### A.   Standard For Granting Preliminary Approval Of The Settlement

The approval of class action settlements involves a two-step process: (1) a preliminary approval is obtained; and (2) the court schedules a fairness hearing, after notice to the class, to determine final approval of the proposed settlement. *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F.Supp. 450, 562 (D.N.J. 1997); *In re Auto. Refinishing Paint Antitrust Litig.*, 2004 WL 1068807 at *1 (E.D. Pa. May 11, 2004); *4 Newberg on Class Actions* §11:25, at 38-39 (4th ed. 2000). In this case, Plaintiffs and Sparboe are proposing that the Court preliminarily approve the settlement,

but delay ordering the immediate dissemination of notice, although Sparboe would like

the Court to approve the Notice Plan and form of Notice as soon as practicable as well.

This is a process Courts have used in other cases. If the Court approves the notice

proposal once submitted, and after notice has been disseminated, then Plaintiffs will seek

final approval.

When deciding preliminary approval, a court does not conduct a "definitive

proceeding on fairness of the proposed settlement." *In re Mid-Atlantic Toyota Antitrust*

*Litig.*, 564 F.Supp. 1379, 1384 (D.C. Md. 1983); *In re General Motors Corp. Pick-up*

*Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995) (holding that the

"preliminary determination establishes an initial presumption of fairness"). That

determination must await the final hearing, at which the fairness, reasonableness, and

adequacy of the settlement is assessed. *In re Linerboard Antitrust Litig.*, 292 F.Supp.2d

631, 638 (E.D. Pa. 2003).[6] Indeed:

> In evaluating a settlement for preliminary approval, the
> court need not reach any ultimate conclusions on the issues
> of fact and law that underlie the merits of the dispute . . .
> Instead, the court must determine whether "the proposed
> settlement discloses grounds to doubt its fairness or
> otherwise obvious deficiencies, such as unduly preferential
> treatment of class representatives or of segments of the

---

[6]   The factors considered for final approval of a class settlement as "fair, adequate and
reasonable" include: (1) the complexity, expense and likely duration of the litigation; (2)
the reaction of the class to the settlement; (3) the stage of the proceedings and the amount
of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing
damages; (6) the risks of maintaining a class action through trial; (7) the ability of the
defendants to withstand a greater judgment; (8) the range of reasonableness of the
settlement in light of the best possible recovery; and (9) the range of reasonableness of
the settlement in light of all the attendant risks of litigation. *Girsh v. Jepson*, 521 F.2d
153, 157 (3d Cir. 1975); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534-35 (3d
Cir. 2004); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F.Supp. 450, 562
(D.N.J. 1997); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 713 (E.D. Pa. 2001).
Each of these factors will be addressed fully in connection with final approval.

> class, or excessive compensation for attorneys, and whether
> it appears to fall within the range of possible approval . . .
> The analysis often focuses on whether the settlement is the
> product of 'arms-length negotiations.'"

*In re Auto. Refinishing Paint Antitrust Litig.*, 2004 WL 1068807 at *1 [citations omitted];

*Thomas v. NCO Financial Sys.*, 2002 WL 1773035 at *5 (E.D. Pa. July 31, 2002).

A settlement falls within the "range of possible approval" under Rule 23 if there is

a conceivable basis for presuming that the standard applied for final approval will be

satisfied.  The standard for final approval of a settlement is that the settlement is fair,

adequate and reasonable to the class.  *Walsh v. Great Atlantic & Pacific Tea Co., Inc.*,

726 F.2d 956, 965 (3d Cir. 1983).

Finally, in reviewing the proposed settlement, the Court should consider that

"there is an overriding public interest in settling class action litigation, and it should

therefore be encouraged."  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534-35

(3d Cir. 2004); *In re General Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*,

55 F.3d 768, 784 (3d Cir. 1995) (holding that "the law favors settlement, particularly in

class actions and other complex cases where substantial judicial resources can be

conserved by avoiding formal litigation"); *Austin v. Pa. Dept of Corr.*, 876 F.Supp. 1437,

1455 (E.D. Pa. 1995) (explaining that "the extraordinary amount of judicial and private

resources consumed by massive class action litigation elevates the general policy of

encouraging settlements to 'an overriding public interest'").

As discussed below, the Settlement here clearly is "sufficiently fair, reasonable

and adequate to justify notice to those affected and an opportunity to be heard," the legal

standard for preliminary approval of a class action settlement.  *In re Auto. Refinishing*

*Paint Antitrust Litig.,* 2004 WL 1068807 at *1 (E.D. Pa. May 11, 2004) (quoting *Manual*

*for Complex Litigation (Fourth)* § (2004)).

**B.    The Negotiation Process With Sparboe Supports A Finding That The Settlement Is Fair, Reasonable And Adequate**

Settlements negotiated by experienced counsel that result from arm's-length

negotiations are generally entitled to deference from the court. *In re Auto. Refinishing*

*Paint Antitrust Litig.*, 2003 WL 23316645 at *6 (E.D. Pa. Sept. 5, 2003); *In re*

*Linerboard Antitrust Litig.*, 292 F.Supp.2d 631, 640 (E.D. Pa. 2003) (holding that "[a]

presumption of correctness is said to attach to a class settlement reached in arm's-length

negotiations between experienced, capable counsel," citing *Hanrahan v. Britt*, 174

R.R.D. 356, 366 (E.D. Pa. 1997)); *Lake v. First Nationwide Bank,* 156 F.R.D. 615, 628

(E.D. Pa. 1994) (giving "due regard to the recommendations of the experienced counsel

in this case, who have negotiated this settlement at arms-length and in good faith");

*Petruzzi's Inc. v. Darling-Delaware Co.*, 880 F.Supp. 292, 301 (M.D. Pa. 1995) ("the

opinions and recommendations of such experienced counsel are indeed entitled to

considerable weight").  This deference reflects the understanding that vigorous

negotiations between seasoned counsel protect against collusion and advance the fairness

considerations of Rule 23(e).

As discussed above and in the accompanying Hutchinson Declaration, the

Settlement with Sparboe is the result of several months of hard-fought, arm's-length

negotiations between Class Counsel and Sparboe's counsel, all experienced and capable

lawyers.  Class Counsel and Sparboe's counsel vigorously advocated their respective

clients' positions in the settlement negotiations and were prepared to litigate the case

fully if no settlement was reached.  Only after Class Counsel was served with the Non-

Settling Defendants' motions to dismiss was the Settlement reached. Before Class

Counsel signed the Settlement Agreement, they had already determined that the

Settlement Agreement was "fair, reasonable, and adequate, and beneficial to and in the

best interests of the Plaintiffs and the Class." (Hutchinson Decl., Ex. 1, p. 2). Nothing in

the course of the negotiations or in the substance of the proposed Settlement presents any

reason to doubt its fairness.

All of these factors strongly support the conclusion that the Settlement is fair,

reasonable and adequate to Plaintiffs and falls within the range of possible final

approvals.

**C.     The Expense And Uncertainty Of Continued Litigation Against
        Sparboe Supports A Finding That The Settlement Is Fair, Reasonable
        And Adequate**

"An antitrust class action is arguably the most complex action to prosecute."

*In re Linerboard Antitrust Litig.*, 292 F.Supp.2d 631, 638 (E.D. Pa. 2003) (citation

omitted); *Weseley v. Spear*, 711 F.Supp. 713, 719 (E.D.N.Y. 1989) (noting that antitrust

class actions are "notoriously complex, protracted, and bitterly fought"). This action is

no different. Continuing this litigation against Sparboe would entail a lengthy and

expensive legal battle, involving legal and factual issues specific to Sparboe.[7] It is

reasonable to expect that all such matters would be sharply disputed and vigorously

contested, as they were in the settlement negotiations. Additionally, Sparboe would

---

[7] For example, Sparboe maintains that effective service of process has not yet been
perfected on Sparboe, such that the claims against Sparboe are time barred. Sparboe also
maintains that this Court lacks personal jurisdiction over it and that venue is not proper as
to claims against Sparboe in the Eastern District of Pennsylvania. In the event that
Sparboe must litigate this case, Sparboe will assert these and other defenses, and Sparboe
explicitly retains and does not waive any of these defenses, particularly lack of personal
jurisdiction, by filing this Motion and the supporting Memorandum and Declaration.

assert various defenses, and a jury trial (assuming the case proceeded beyond pretrial motions) might well turn on close questions of proof making the outcome of such trial uncertain for both parties.[8] *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 638 (E.D. Pa. 2003); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 475-76 (S.D.N.Y. 1998) ("Antitrust litigation in general, and class action litigation in particular, is unpredictable. . . . [T]he history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only neglible damages, at trial, or on appeal.").

Moreover, even after trial is concluded, there would very likely be one or more lengthy appeals. *In re Remeron End-Payor Antitrust Litig.*, 2005 WL 2230314 at *17 (D.N.J. Sept. 13, 2005). Given this uncertainty, a certain "bird in the hand in this litigation is surely worth more than whatever birds are lurking in the bushes." *In re Chambers Development Securities Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995). All of these factors have particular weight here, where Sparboe has provided Class Counsel with documents indicating that Sparboe actually withdrew from membership in the United Egg Producers in early 2005.

Balancing the complexities of this litigation, the substantial risk, expense and duration of continued litigation against Sparboe and the likely appeal if Plaintiffs did prevail against Sparboe at trial, with the significant benefits of early access to Sparboe's documents and witnesses, Class Counsel has represented to this Court that, prior to even

---

[8]  *See, e.g., United States Football League v. Nat'l Football League*, 644 F.Supp. 1040, 1042 (S.D.N.Y. 1986) ("the jury chose to award plaintiffs only nominal damages, concluding that the USFL had suffered only $1.00 in damages"), *aff'd*, 842 F.2d 1335 (2nd Cir. 1988); *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1166-67 (7th Cir. 1982) (remanding antitrust judgment for new trial and damages).

signing the Settlement Agreement, Class Counsel firmly believes the Settlement represents a very good resolution of this litigation as to Sparboe. Moreover, it is well established that significant weight should be attributed to the expressed, contractual belief of experienced counsel that settlement is in the best interest of the class, as here. *In re General Instruments Securities Litig.*, 209 F.Supp.2d 423, 431 (E.D. Pa. 2001).

**D.     The Settlement Agreement's Cooperation Provision Supports A Finding That The Settlement Is Fair, Reasonable And Adequate**

An evaluation of the benefits of settlement must be tempered by a recognition that any compromise involves concessions on the part of all of the settling parties. Indeed, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice v. Civil Service Com'n of City and County of San Francisco*, 688 F.2d 715, 624 (citation omitted). As the Fifth Circuit noted in *Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977):

> The trial court should not make a proponent of a proposed settlement "justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained . . . ."

*Id.* at 1330 (citation omitted).

As discussed above, the Settlement Agreement provides for Sparboe's cooperation, which provides Plaintiffs with the only hope of surviving the pending motions to dismiss, while avoiding the risk, expense and duration of continued litigation against Sparboe. In the opinion of Class Counsel, as stated in the Settlement Agreement, and as represented to this Court in Plaintiffs' Memorandum of Law, the Settlement significantly benefits Plaintiffs and the Class. *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003) ("The provision of such [cooperation] is a substantial benefit to the classes and strongly militates toward approval of the Settlement

Agreement."); *In re Ikon Office Supplies Inc. Securities Litig.*, 194 F.R.D. 166 (E.D. Pa.

2000) ("*Ikon*") (noting that cooperation agreements are valuable when settling a complex

case); *In re Auto. Refinishing Paint Antitrust Litig.*, 2004 WL 1068807, at *2 (E.D. Pa.

May 11, 2004) ("*Auto Paint*") (acknowledging the assistance that the settling defendants

will provide "in pursuing this case against the remaining Defendants"); *In re Mid-Atlantic*

*Toyota Antitrust Litig.*, 564 F.Supp. 1379, 1386 (D.C. Md. 1983) ("[T]he commitment

[the] Distributor defendants have made to cooperate with plaintiffs will certainly benefit

the classes, and is an appropriate factor for the court to consider in approving a

settlement"); *In re Corrugated Container Antitrust Litig.*, 1981 WL 2093, at *16 (S.D.

Tex. June 4, 1981) *aff'd* 659 F.2d 1322, 1329 (5th Cir. 1981) ("The settlement

agreements provided for cooperation from the settling defendants that constituted a

substantial benefit to the class.  Those provisions were intended to save plaintiffs time

and expense in the continuing litigation . . . [and] made certain information and expertise

available to the class which might not have been available through normal discovery.").[9]

_____

[9] *In re Beef Industry Antitrust Litig.*, 607 F.2d 167, 180 (5th Cir. Tex. 1979) (court
approved settlement in which settling defendant agreed to assist plaintiffs by providing
access to witnesses), *cert. denied*, 452 U.S. 905, 101 S. Ct. 3029, 69 L. Ed. 2d 405
(1981); *In re Ivan F. Boesky Sec. Litig.*, 948 F.2d 1358, 1362 (2nd Cir. 1991)
(acknowledging the importance of the defendant's agreement to "provide information to
the plaintiffs potentially useful in the litigation against the nonsettling defendants."); *In re*
*Amicillin Antitrust Litig.*, 82 F.R.D. 652, 654 (D.D.C. 1979) ("It is apparent that
Beecham's assistance in the case against Bristol will prove invaluable to the plaintiffs,
and adds substantially to the economic value of the settlement package to the plaintiff
classes"); *Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 324, 339 (S.D.N.Y. 2005)
("Although the settlement fund by itself represents a fair and reasonable recovery, I note
that the settlement also includes significant non-monetary benefits.  Pursuant to the
settlement, Jenkens has agreed to provide (and has already provided) discovery on
plaintiffs' claims.  The value of this agreement is hard to determine, but it is not
negligible."); *Minpeco, S.A. v. Hunt*, 127. F.R.D. 460, 463 (S.D.N.Y. 1989)
("[A]greements involving a settling defendant's assistance in procuring the testimony of
its employees have been approved in other cases.").

Portlnd1-2530212.1 0034560- 00001

18

In addition, here, the early nature of Sparboe's cooperation has significant value in and of itself to Plaintiffs as an "ice-breaker" settlement that "should increase the likelihood of future settlements." *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003) ("The Court also notes that this settlement has significant value as an "ice-breaker" settlement--it is the first settlement in the litigation--and should increase the likelihood of future settlements."). The fact that the settlement occurred early in the litigation in advance of the Court's ruling on the Non-Settling Defendants' motions for dismissal for lack of specificity adds enormous value to the Settlement Agreement and from Class Counsel's perspective may allow Plaintiffs an opportunity to survive motions to dismiss, if any such opportunity exists.

Sparboe has already provided documents and witness interviews, and has committed to provide additional information and access to additional witnesses. Plaintiffs hope to use the discovery obtained from Sparboe to amend the Complaint in an effort to survive the pending motions to dismiss. While discovery from Sparboe may not reveal any useful information, given the very significant risk presented by the pending motions to dismiss that Plaintiffs' claims will not survive against any Defendant, the hope of obtaining some useful information from Sparboe was well worth the risk to Plaintiffs and the Class at this stage in the litigation. Further, if discovery from Sparboe reveals no useful information, then Plaintiffs and the Class have been spared years of protracted discovery disputes and litigation to get to the same point that was efficiently achieved through settlement. Thus, there can be no question of the Settlement's benefit.

## V.   **CONCLUSION**

For the reasons set forth above, Sparboe requests that the Court preliminarily approve the Settlement Agreement.  A proposed order is attached to the motion, which is filed herewith.

Respectfully submitted,

Dated:  June 28, 2009

s/ Troy J. Hutchinson
Eric A. Bartsch (MN Atty. ID #243723)
Troy J. Hutchinson (MN Atty. ID #320420)
Admitted *Pro Hac Vice*
STOEL RIVES LLP
33 South Sixth Street, Suite 4200
Minneapolis, MN  55402
Telephone:  612-373-8800
Facsimile:   612-373-8881
eabartsch@stoel.com
tjhutchinson@stoel.com

**ATTORNEYS FOR DEFENDANT
SPARBOE FARMS, INC.**