UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: PROCESSED EGG PRODUCTS ANTITRUST LITIGATION | : MDL No. 2002 <br> : 08-md-02002 |
| THIS DOCUMENT APPLIES TO: <br> All Direct Purchaser Actions | : <br> : <br> : |

## SETTLEMENT AGREEMENT BETWEEN PLAINTIFFS AND SPARBOE FARMS, INC.

This Settlement Agreement ("Agreement") is made and entered into this 8th day of June, 2009 (the "Execution Date"), by and between Sparboe Farms, Inc. ("Sparboe Farms"), together with its past and present parents, subsidiaries and affiliates, and plaintiff class representatives ("Plaintiffs"), as defined herein at Paragraph 7, both individually and on behalf of a class of direct purchasers of Shell Eggs and Processed Egg Products (as described herein at Paragraph 11) in the United States during the period January 1, 2000 through the present.

WHEREAS, Plaintiffs are prosecuting the above-captioned action currently pending and consolidated in the Eastern District of Pennsylvania, and including all actions transferred for coordination, and all direct purchaser actions pending such transfer (including, but not limited to, "tag-along" actions) (the "Action") on their own behalf and on behalf of the class against Sparboe Farms and other Defendants;

WHEREAS, Plaintiffs allege that Sparboe Farms participated in an unlawful conspiracy to raise, fix, maintain, and/or stabilize the price of Shell Eggs and Processed Egg Products in the United States at artificially high levels in violation of Section 1 of the Sherman Act;

1

WHEREAS, Plaintiffs have conducted an investigation into the facts and the law regarding the Action and have concluded that a settlement with Sparboe Farms according to the terms set forth below is fair, reasonable, and adequate, and beneficial to and in the best interests of the Plaintiffs and the class;

WHEREAS, Sparboe Farms, despite its belief that it is not liable for and has good defenses to the claims alleged in the Action, desires to settle the Action, and thus avoid the risk, exposure, inconvenience, and distraction of continued litigation of the Action, or any action or proceeding relating to the matters being fully settled and finally put to rest in this Agreement;

WHEREAS, Sparboe Farms agrees to further cooperate with Plaintiffs' Counsel and the class by providing information related to possible violations of the Sherman Act that have or may have been committed by other Defendants to this Action, or other parties not named as Defendants, with regard to the sale of Shell Eggs and Processed Egg Products;

WHEREAS, arm's-length settlement negotiations have taken place between Class Counsel (as defined below) and counsel for Sparboe Farms, and this Agreement has been reached as a result of those negotiations;

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is agreed by and among the undersigned that the Action be settled, compromised and dismissed on the merits with prejudice as to Sparboe Farms only, without costs as to Plaintiffs or the class, subject to the approval of the Court, on the following terms and conditions:

**Definitions.**

The following terms, as used in this Agreement, have the following meanings:

1. "Class Counsel" shall refer to the law firms of Weinstein, Kitchenoff & Asher LLC, 1845 Walnut Street, Suite 1100, Philadelphia, PA 19103; Hausfeld LLP, 1700 K Street NW, Suite 650, Washington, DC 20006; Bernstein Liebhard LLP, 10 East 40th Street, 22nd Floor, New York, NY 10016; and Susman Godfrey, 654 Madison Avenue, 5th Floor, New York, NY 10065-8404. "Plaintiffs' Counsel" shall refer to the law firms identified on pages 133-138 of the Consolidated Amended Class Action Complaint filed in the Action on January 30, 2009.

2. "Sparboe Farms' Counsel" shall refer to the law firm of Stoel Rives LLP, 33 South Sixth Street, Suite 4200, Minneapolis, MN 55402.

3. "Counsel" means both Plaintiffs' Counsel and Sparboe Farms' Counsel, as defined in Paragraphs 1 and 2 above.

4. "Class Member" means each member of the class, as defined in Paragraph 11 of this Agreement, who does not timely elect to be excluded from the class, and includes, but is not limited to, Plaintiffs.

5. "Class Period" means the period from and including January 1, 2000 up to and including the date when Notice of the Court's entry of an order preliminarily approving this settlement and certifying a class for settlement purposes is first published.

6. "Defendant(s)" refers to the persons or entities who are now or are prior to the time of notice added as Defendants in this Action, including, but not limited to, United Egg Producers, Inc.; United Egg Association; United States Egg Marketers, Inc.; Michael Foods, Inc.; Land O'Lakes Inc.; Moark LLC; Norco Ranch, Inc.; Rose Acre Farms, Inc.; National Food Corporation; Cal-Maine Foods, Inc.; Hillandale Farms of Pa., Inc.; Hillandale-Gettysburg, L.P.; Hillandale Farms East, Inc.; Hillandale Farms, Inc.; Ohio Fresh Eggs, LLC; Daybreak Foods, Inc.; Midwest Poultry Services, L.P.; NuCal Foods, Inc.; R.W. Sauder, Inc., Sparboe Farms, Inc.,

and each of their corporate parents, subsidiaries, and affiliated companies, as well as all individuals, partnerships, corporations and associations not named as Defendants but which participated as co-conspirators in the alleged violations.

7. "Plaintiffs" means each of the following named class representatives: T.K. Ribbing's Family Restaurant, LLC; Eby-Brown Company LLC; Goldberg and Solovy Foods, Inc.; Karetas Foods, Inc.; Nussbaum-SF, Inc.; Somerset Industries, Inc.; Wixon, Inc.; and SensoryEffects Flavor Co. d/b/a SensoryEffects Flavor Systems.

8. "Releasees" shall refer, jointly and severally, and individually and collectively to Sparboe Farms, its parents, subsidiaries, and affiliated companies, and their past and present officers, directors, employees, agents, insurers, attorneys, shareholders, joint venturers that are not Non-Settling Defendants, partners and representatives, as well as the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing.

9. "Releasors" shall refer jointly and severally and individually to the Plaintiffs, the Class Members and to each of their respective past and present officers, directors, parents, subsidiaries, affiliates, partners, and insurers, and to the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing.

10. "Non-Settling Defendants" refers to the persons or entities, other than Sparboe Farms, who are now or are prior to the time of notice added as Defendants in this Action, including, but not limited to, United Egg Producers, Inc.; United Egg Association; United States Egg Marketers, Inc.; Michael Foods, Inc.; Land O'Lakes Inc.; Moark LLC; Norco Ranch, Inc.; Rose Acre Farms, Inc.; National Food Corporation; Cal-Maine Foods, Inc.; Hillandale Farms of Pa., Inc.; Hillandale-Gettysburg, L.P.; Hillandale Farms East, Inc.; Hillandale Farms, Inc.; Ohio Fresh Eggs, LLC; Daybreak Foods, Inc.; Midwest Poultry Services, L.P.; NuCal Foods, Inc.;

R.W. Sauder, Inc., and each of their corporate parents, subsidiaries, and affiliated companies, as well as all individuals, partnerships, corporations and associations not named as Defendants but which participated as co-conspirators in the alleged violations.

**Settlement Class Certification**

11. Subject to Court approval, the following class shall be certified for settlement purposes only as to Sparboe Farms:

> All persons and entities that purchased eggs, including shell eggs and egg products, produced from caged birds in the United States directly from any producer during the Class Period from January 1, 2000 through the present.
>
> > a.) Shell Egg Subclass
> > All individuals and entities that purchased shell eggs produced from caged birds in the United States directly from any producer during the Class Period from January 1, 2000 through the present.
> >
> > b.) Egg Products Subclass
> > All individuals and entities that purchased egg products produced from shell eggs that came from caged birds in the United States directly from any producer during the Class Period from January 1, 2000 through the present.
>
> Excluded from the class and subclasses are the Defendants, their co-conspirators, and their respective parents, subsidiaries and affiliates, all government entities, as well as the Court and staff to whom this case is assigned, and any member of the Court's or staff's immediate family. Also excluded from the Class and Subclasses are purchases of "specialty" shell egg or egg products (such as "organic," "free-range" or "cage-free") and purchases of hatching eggs (used by poultry breeders to produce breeder stock or growing stock for laying hens or meat).

**Approval of this Agreement and Dismissal of Claims**

12. Plaintiffs and Sparboe Farms shall use their best efforts to effectuate this Agreement, including cooperating in promptly seeking Court approval of the Settlement and

securing both the Court's certification of the Class and the Court's approval of procedures (including the giving of class notice under Federal Rules of Civil Procedure 23(c) and (e)) to secure the prompt, complete, and final dismissal with prejudice of the Action as to Sparboe Farms.

13. Within (2) two business days after the execution of this Agreement by Sparboe Farms, Counsel shall jointly file with the Court a stipulation for suspension of all proceedings against Sparboe Farms pending approval of this Agreement. As soon as practicable after execution of the Agreement by Sparboe Farms, Plaintiffs shall submit to the Court a motion: (a) for certification of a class for settlement purposes; and (b) for preliminary approval of the settlement, and authorization to disseminate notice of class certification, the settlement, and the final judgment contemplated by this Agreement to all potential Class Members. The Motion shall include: (a) the definition of the class for settlement purposes as set forth in Paragraph 11 of this Agreement; (b) a proposed form of, method for, and date of dissemination of notice; and (c) a proposed form of final judgment order. The text of the items referred to in clauses (a) -- (c) above shall be agreed upon by Plaintiffs and Sparboe Farms before submission of the Motion. If possible, Plaintiffs shall combine dissemination of notice of the proposed certification of the class for settlement purposes and the Agreement with notice of other settlement agreements. Individual notice of the Agreement shall be mailed to persons and entities identified by Sparboe Farms, and, as ordered by the Court, those identified by Plaintiffs and Plaintiffs' Counsel or other Non-Settling Defendants in the Action, who are located in the United States and who purchased Shell Eggs and Processed Egg Products directly from Sparboe Farms or any Non-Settling Defendant(s) in the Action during the Class Period, and Notice of the Settlement shall be published once in the <u>Wall Street Journal</u> and in such other publications, if any, as Sparboe

Farms and Class Counsel agree to or as ordered by the Court. Within twenty (20) business days after the Execution Date, Sparboe Farms shall supply to Class Counsel at Sparboe Farms' expense and in such form as kept in the regular course of business (electronic format if available) such names and addresses of potential Class Members as it has.

14. Within twenty (20) business days after the end of the opt-out period established by the Court and set forth in the notice, Plaintiffs shall provide Sparboe Farms, through its counsel, Stoel Rives LLP, a written list of all potential Class Members who have exercised their right to request exclusion from the class.

15. If the Court approves this Agreement, Plaintiffs and Sparboe Farms shall jointly seek entry of an order and final judgment, the text of which Plaintiffs and Sparboe Farms shall agree upon as provided for in Paragraphs 12 and 13 of this Agreement:

(a) as to the Action, approving finally this Agreement and its terms as being a fair, reasonable, and adequate settlement as to the Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

(b) directing that, as to Sparboe Farms, the Action be dismissed with prejudice and, except as explicitly provided for in this Agreement, without costs;

(c) reserving exclusive jurisdiction over the settlement and this Agreement, including the administration and consummation of this settlement;

(d) determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the final judgment of dismissal as to Sparboe Farms shall be entered; and

(e) requiring Class Counsel to file with the Clerk of the Court a record of potential Class Members who timely excluded themselves from the class, and to provide a copy of the record to counsel for Sparboe Farms.

16. This Agreement shall become final only when (a) the Court has entered an order approving this Agreement under Rule 23(e) of the Federal Rules of Civil Procedure and a final judgment dismissing the Action against Sparboe Farms on the merits with prejudice as to all

Class Members and without costs has been entered, and (b) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of a final judgment as described in clause (a) above has expired or, if appealed, approval of this Agreement and the final judgment have been affirmed in their entirety by the Court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review ("Finally Approved"). It is agreed that neither the provisions of Rule 60 of the Federal Rules of Civil Procedure nor the All Writs Act, 28 U.S.C. §1651, shall be taken into account in determining the above-stated times. On the Execution Date, Plaintiffs and Sparboe Farms shall be bound by the terms of this Agreement, and the Agreement shall not be rescinded except in accordance with Paragraph 20 of this Agreement.

**Release and Discharge**

17. In addition to the effect of any final judgment entered in accordance with this Agreement, upon this Agreement becoming Finally Approved, and for other valuable consideration as described herein, the Releasees shall be completely released, acquitted, and forever discharged from any and all claims, demands, actions, suits and causes of action, whether class, individual or otherwise in nature, that Releasors, or each of them, ever had, now has, or hereafter can, shall, or may have on account of or arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected injuries or damages, and the consequences thereof, arising out of or resulting from conduct concerning any agreement among Defendants, the reduction or restraint of supply, the reduction of or restrictions on production capacity, or the pricing, selling, discounting, marketing, or distributing of Shell Eggs and Processed Egg Products in the United States or elsewhere, including but not limited to any conduct alleged, and causes of action asserted, or that could have been alleged or asserted,

whether or not concealed or hidden, in the Complaints filed in the Action (the "Complaints"), which arise from or are predicated on the facts and/or actions described in the Complaints under any federal, state or foreign antitrust, unfair competition, unfair practices, price discrimination, unitary pricing, trade practice, consumer protection, fraud, RICO, civil conspiracy law, or similar laws, including, without limitation, the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.*, from the beginning of time to the date of this Agreement (the "Released Claims"). The Releasors shall not, after the date of this Agreement, seek to recover against any of the Releasees for any of the Released Claims. Notwithstanding anything in this Paragraph, Released Claims shall not include, and this Agreement shall not and does not release, acquit or discharge, claims based solely on purchases of Shell Eggs and Processed Egg Products outside of the United States on behalf of persons or entities located outside of the United States at the time of such purchases. This Release is made without regard to the possibility of subsequent discovery or existence of different or additional facts.

    a.    Each Releasor waives California Civil Code Section 1542 and similar provisions in other states. Plaintiffs hereby certify that they are aware of and have read and reviewed the following provision of California Civil Code Section 1542 ("Section 1542"): "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor." The provisions of the release set forth above shall apply according to their terms, regardless of the provisions of Section 1542 or any equivalent, similar, or comparable present or future law or principle of law of any jurisdiction. Each Releasor may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims that

9

are the subject matter of this Settlement Agreement, but each Releasor hereby expressly and fully, finally and forever waives and relinquishes, and forever settles and releases any known or unknown, suspected or unsuspected, contingent or non-contingent, claim whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts, as well as any and all rights and benefits existing under (i) Section 1542 or any equivalent, similar or comparable present or future law or principle of law of any jurisdiction and (ii) any law or principle of law of any jurisdiction that would limit or restrict the effect or scope of the provisions of the release set forth above, without regard to the subsequent discovery or existence of such other or different facts.

18. In addition to the provisions of Paragraph 17, each Releasor hereby expressly and irrevocably waives and releases, upon this Agreement becoming Finally Approved, any and all defenses, rights, and benefits that each Releasor may have or that may be derived from the provisions of applicable law which, absent such waiver, may limit the extent or effect of the release contained in Paragraph 17. Each Releasor also expressly and irrevocably waives any and all defenses, rights, and benefits that the Releasor may have under any similar statute in effect in any other jurisdiction that, absent such waiver, might limit the extent or effect of the Release.

19. The release and discharge set forth in Paragraphs 17 and 18 herein do not include claims relating to payment disputes, physical harm, defective product or bodily injury (the "Excepted Claims") and do not include any Non-Settling Defendant.

### Rescission if the Agreement is Not Approved

20. If the Court refuses to approve this Agreement or any part hereof, or if such approval is modified or set aside on appeal, or if the Court does not enter the final judgment provided for in Paragraph 15 of this Agreement, or if the Court enters the final judgment and

appellate review is sought, and on such review, such final judgment is not affirmed, then Sparboe Farms and Plaintiffs shall each, in their sole discretion, have the option to rescind this Agreement in its entirety.

21.     In the event of rescission, if final approval of this Agreement is not obtained, or if the Court does not enter the final judgment provided for in Paragraph 15 of this Agreement, Class Counsel agrees that this Settlement Agreement, including its exhibits, and any and all negotiations, documents, information and discussions associated with it shall be without prejudice to the rights of Sparboe Farms, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing, or of the truth of any of the claims or allegations made in this Action in any pleading, and shall not be used directly or indirectly, in any way, whether in this Action or in any other proceeding except as otherwise subsequently and independently obtained by Class Counsel pursuant to the Federal Rules of Civil Procedure.

22.     Class Counsel further agrees that, in the event of rescission, the originals and all copies of documents provided by or on behalf of Sparboe Farms pursuant to this Agreement, together with all documents and electronically stored information containing information provided by Sparboe Farms, including but not limited to, notes, memos, records, interviews, shall be returned or produced to Sparboe Farms, provided that attorney notes or memoranda may be destroyed rather than produced if an affidavit of such destruction is promptly provided to Sparboe Farms through its counsel.

### Cooperation Agreement

23.     Following the Execution Date of this Agreement, and continuing through the conclusion of this litigation, Sparboe Farms will provide Plaintiffs with such cooperation as may

be reasonably requested by Class Counsel for the prosecution of the pending action or any other released claims pursuant to Paragraphs 17 and 18 related to Shell Eggs or Processed Egg Products. Prior to preliminary approval of the Settlement Agreement, such cooperation shall include, but shall not be limited to: making documents related to the claims asserted in this action available for review and making witnesses with knowledge related to the claims asserted in this action available for informal interviews and, as necessary, consultation with Plaintiffs' Counsel as Class Counsel might reasonably request. In addition, within five (5) business days of the Court's grant of preliminary approval of this Settlement Agreement, or as soon as practicable thereafter, Sparboe Farms shall continue to cooperate with Class Counsel, including but not limited to producing documents related to the claims asserted in this action and by making witnesses available at an appropriate time to testify at depositions and at trial, subject to the limitations agreed upon below. Sparboe Farms agrees to provide discovery to Plaintiffs in the pending Action as if Sparboe Farms were a party subject to all rules for discovery. Sparboe Farms has no obligation to cooperate with respect to any Excepted Claims.

Further:

    (a)    With respect to witnesses, if requested in good faith by Class Counsel, Sparboe Farms agrees to use its best efforts to produce interviewees, at a location to be chosen by Sparboe Farms, who are current or former directors, officers, or employees of Sparboe Farms for deposition at the time discovery in this Action commences subject to the limitations imposed by the Federal Rules of Civil Procedure or by any additional limitations imposed by any order or stipulation in this Action governing the depositions of any Non-Settling Defendant, and make those persons available for trial testimony, if requested in good faith by Plaintiffs'

Counsel. Should it be reasonably necessary, and if requested in good faith by Class Counsel, Sparboe Farms shall also make witnesses, including corporate designees, available to testify at deposition and trial, for the prosecution of the pending Action or any other action related to Shell Eggs and Processed Egg Products (except for the Excepted Claims) to which this Settlement Agreement applies to release the claims asserted therein, which testimony may pertain to knowledge of and/or participation by Sparboe Farms, including but not limited to its officers, directors and employees, regarding present and future claims asserted in the pending Action or any other actions related to Shell Eggs or Processed Egg Products, except for the Excepted Claims to which this Settlement Agreement applies to release the claims asserted therein. Notwithstanding anything in this Paragraph, the cooperation of individuals shall be subject to their individual rights and obligations.

(b)     With regard to documents and electronic data, Sparboe Farms will produce, at a location of its choosing, pursuant to and subject to the limitations imposed by Rule 30(b)(6) and the other Federal Rules of Civil Procedure as well as any additional limitation imposed by order or stipulation in this Action governing the authentication of documents or corporate representative testimony related to any Non-Settling Defendant, a corporate representative sufficiently qualified to authenticate and make admissible under the applicable rules of evidence, as well as under the rules of any state, all Sparboe Farms documents and electronic data as may in good faith be requested by Plaintiffs' Counsel in the

pending Action related to Shell Eggs or Processed Egg Products, except for the Excepted Claims.

24. Plaintiffs, Class Counsel and Plaintiffs' Counsel agree not to assert that Sparboe Farms waived its attorney-client privilege, work product immunity or any other privilege or protection with respect to information or documents provided or identified to Class Counsel or Plaintiffs' Counsel pursuant to this Agreement. Nor should anything in this Agreement be construed as a waiver of any such privilege, immunity or protection.

**Confidentiality and Non-Use of Information and Documents**

25. Should the Settling Parties be required to submit any information or documentation to the Court to obtain preliminary approval, such submission shall be, to the full extent permitted, for review by the court in camera only. All information and documents provided by Sparboe Farms to Class Counsel shall be subject to the protective order entered in this action, and any documents or electronically stored information designated as "Confidential" or "Attorneys Eyes Only" by Sparboe Farms shall have the same equivalent protection under the protective order.

26. Class Counsel agree to use any and all of the information obtained from Sparboe farms only for the purpose of this litigation, and agrees to be bound by the terms of the protective order described above in Paragraph 25. Any Plaintiffs' Counsel who receives information or documents produced in accordance with this Agreement agrees to be bound by all of the terms of this Agreement. Notwithstanding the foregoing, or the terms of the protective order, Class Counsel agree, unless ordered by a court and consistent with due process, that under no circumstances will information or documents be shared with any person, counsel, Class Counsel or Plaintiffs' Counsel who is also (i) counsel for any plaintiff in any other foreign, state or

federal action against one or more of the Releasees or Non-Settling Defendants, (ii) counsel for any plaintiff or Class Member who elects to opt out of the proposed litigation class upon Plaintiffs' motion for class certification or who elects to opt out of the proposed class for settlement purposes under this Agreement, (iii) any counsel representing or advising indirect purchasers of Shell Eggs or Processed Eggs, or (iv) any counsel representing or advising direct or indirect purchasers of "specialty" shell egg or egg products (such as "organic," "free range," or "cage free") and purchasers of hatching eggs (used by poultry breeders or produce breeder stock or growing stock for laying hens or meat).

### Notice of Settlement to Class Members

27.  Class Counsel shall take all necessary and appropriate steps to ensure that notice of this Settlement Agreement and the date of the hearing scheduled by the Court to consider the fairness, adequacy and reasonableness of this Settlement Agreement is provided in accordance with the Federal Rules of Civil Procedure and Court order. Class Counsel will undertake all reasonable efforts to obtain from the Non-Settling Defendants the names and addresses of those persons who purchased shell eggs or egg products directly from any Non-Settling Defendant during the Class Period. Notice of this Settlement will be issued no earlier than 180 days following Preliminary Approval of this Settlement Agreement by the Court, but as soon as practicable thereafter, unless otherwise ordered by the Court.

28.  Within three months from the date of Final Approval, Sparboe Farms agrees to reimburse Plaintiffs up to a maximum of $350,000.00 towards the costs of notice of the Settlement under this Agreement, provided the occurrences described below in Paragraph 29 do not occur.

29. In the event Plaintiffs enter into a cash settlement with any Non-Settling Defendant and receive preliminary approval of that settlement prior to the issuance of notice under this Agreement (such that the settlement notices can be combined), Plaintiffs shall apply those settlement funds towards the cost of notice, thus reducing or eliminating Sparboe Farms' obligation to reimburse Plaintiffs for the notice costs of this Agreement. In the event Plaintiffs obtain certification of a litigation class prior to the issuance of notice under this Agreement (such that the notice of this Settlement Agreement and the notice of class certification can be combined), then Plaintiffs agree to be fully responsible for costs of the combined notice without any cash contribution by Sparboe Farms.

30. In the event Plaintiffs enter into a cash settlement with any Non-Settling Defendants <u>after</u> notice of this settlement has been issued and paid for, in whole or in part, once that cash settlement has been Finally Approved, Plaintiffs shall release Sparboe Farms from any obligation to reimburse Plaintiffs for the notice costs of this Agreement. Forgiveness of Sparboe Farms's obligation to reimburse Plaintiffs for costs of notice of this Agreement will not exceed the value of such cash settlements, as Finally Approved. Under no circumstances shall Sparboe Farms be responsible for any costs or expenses in excess of $350,000.00.

**Subsequent Modification of Class Definition or Class Period**

31. In the event that Plaintiffs either enter into a settlement agreement with any Non-Settling Defendant, or obtain certification of a litigation class, and the definition of the class in any subsequent settlement agreement or certification order differs from the definition contained in this Agreement in Paragraph 11 (including an expansion of the Class Period), Plaintiffs agree to use their best efforts to modify the class definition and Class Period of this Agreement to conform to any and all subsequent expansion of the class definition or Class Period, including

moving for approval of an amendment to this Agreement and the dissemination of notice of the amendment in conjunction either with notice of any subsequent settlement class or notice of the certification of a litigation class, or both in the event that there are more than one subsequent modification to the class definition or Class Period. In no event shall Sparboe Farms be responsible for any additional notice costs or expenses.

**Miscellaneous**

32. This Agreement does not settle or compromise any claim by Plaintiffs or any Class Member asserted in the Action against any Non-Settling Defendant or any unnamed co-conspirator other than the Releasees. All rights of any Class Member against Non-Settling Defendants or unnamed co-conspirators or any other person or entity other than the Releasees are specifically reserved by Plaintiffs and the Class Members. The sales of Shell Eggs and Processed Egg Products by Sparboe Farms to Class Members shall remain in the case against the Non-Settling Defendants in the Action as a basis for damage claims and shall be part of any joint and several liability claims against Non-Settling Defendants in the Action or other persons or entities other than the Releasees.

33. The United States District Court for the Eastern District of Pennsylvania shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by Plaintiffs and Sparboe Farms. This Agreement shall be governed by and interpreted according to the substantive laws of the State of Pennsylvania without regard to its choice of law or conflict of laws principles. Sparboe Farms only submits to the jurisdiction in the Eastern District of Pennsylvania for the purposes of this Settlement Agreement and the

implementation, enforcement and performance thereof. Sparboe Farms otherwise retains all defenses to the Court's exercise of personal jurisdiction over Sparboe Farms.

34. This Agreement constitutes the entire agreement among Plaintiffs (and the other Releasors) and Sparboe Farms (and the other Releasees) pertaining to the settlement of the Action against Sparboe Farms only and supersedes any and all prior and contemporaneous undertakings of Plaintiffs and Sparboe Farms in connection therewith. This Agreement may be modified or amended only by a writing executed by Plaintiffs and Sparboe Farms, and approved by the Court.

35. This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Releasors and Releasees. Without limiting the generality of the foregoing: (a) each and every covenant and agreement made herein by Plaintiffs, Class Counsel or Plaintiffs' Counsel shall be binding upon all Class Members and Releasors; and (b) each and every covenant and agreement made herein by Releasees shall be binding upon all Releasees.

36. This Agreement may be executed in counterparts by Plaintiffs and Sparboe Farms, and a facsimile signature will be considered as an original signature for purposes of execution of this Agreement.

37. The headings in this Agreement are included for convenience only and shall not be deemed to constitute part of this Agreement or to affect its construction.

38. In the event this Agreement is not approved or is terminated, or in the event that the Order and Final Judgment approving the settlement is entered but is substantially reversed, modified, or vacated, the pre-settlement status of the litigation shall be restored and the Agreement shall have no effect on the rights of the Settling Parties to prosecute or defend the pending Action in any respect, including the right to litigate fully the issues related to class

certification, raise personal jurisdictional defenses, or any other defenses, which rights are specifically and expressly retained by Sparboe Farms.

39. Neither Sparboe Farms nor Plaintiffs, nor any of them, shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

40. Nothing expressed or implied in this Agreement is intended to or shall be construed to confer upon or give any person or entity other than Class Members, Releasors, Sparboe Farms, and Releasees any right or remedy under or by reason of this Agreement.

41. Where this Agreement requires any party to provide notice or any other communication or document to any other party, such notice, communication, or document shall be provided by facsimile or letter by overnight delivery to:

| For the class: | For Sparboe Farms: |
|---|---|
| Steven A. Asher<br>WEINSTEIN KITCHENOFF & ASHER LLC<br>1845 Walnut Street, Suite 1100<br>Philadelphia, PA 19103<br>(215) 545-7200<br>(215) 545-6536 (fax)<br>asher@wka-law.com | Troy J. Hutchinson<br>STOEL RIVES, LLP<br>33 South Sixth Street, Suite 4200<br>Minneapolis, MN 55402<br>(612) 373-8800<br>(812) 373-8881 (fax)<br>tjhutchinson@stoel.com |

42. Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement, subject to Court approval.

Originally Signed: June 5, 2009
Resigned: June 22, 2009 (to account for edits to Paragraph 11)

Steven A. Asher
WEINSTEIN KITCHENOFF & ASHER LLC
1845 Walnut Street, Suite 1100
Philadelphia, PA 19103
(215) 545-7200
(215) 545-6536 (fax)
asher@wka-law.com

Michael D. Hausfeld
HAUSFELD LLP
1700 K Street, Suite 650
Washington, DC 20006
(202) 540-7200
(202) 540-7201 (fax)
mhausfeld@hausfeldllp.com

Stanley D. Bernstein
BERNSTEIN LIEBHARD LLP
10 East 40th Street, 22nd Floor
New York, NY 10016
(212) 779-1414
(212) 779-3218 (fax)
bernstein@bernlieb.com

Stephen D. Susman
SUSMAN GODFREY LLP
654 Madison Avenue, 5th Floor
New York, NY 10065-8404
(212) 336-8330
(212( 336-8340 (fax)
SSusman@SusmanGodfrey.com

(On Behalf of the class, Plaintiffs, Class Counsel and Plaintiffs' Counsel)