**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: PROCESSED EGG PRODUCTS ANTITRUST LITIGATION | :<br>:<br>:   MDL No. 2002<br>:   08-md-02002<br>:<br>: |
| THIS DOCUMENT APPLIES TO:<br>ALL ACTIONS | :<br>: |

**ORDER ON PRELIMINARY APPROVAL OF SPARBOE SETTLEMENT**

Among the pending motions in this matter are 1) Direct Purchaser Plaintiffs' Motion for Preliminary Approval of Sparboe Settlement (Docket No. 171) and 2) Direct Purchaser Plaintiffs' Motion for Leave to Submit, In Camera, their Statement of Sparboe Cooperation (Docket No. 204).  For the reasons expressed below, on this 23rd day of October, 2009, it is hereby ORDERED that the Direct Purchaser Plaintiffs' Motion for Preliminary Approval of Sparboe Settlement is GRANTED, and the Direct Purchaser Plaintiffs' Motion for Leave to Submit, In Camera, their Statement of Sparboe Cooperation is MOOT.

I.      BACKGROUND

        A.      The Litigation

This antitrust class action litigation (the "Litigation") involves one or more alleged conspiracies to control the supply and to fix, raise, maintain and/or stabilize the prices of shell eggs and/or egg products in the United States, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.  Plaintiffs are direct and indirect purchasers of shell eggs and egg products ("Direct Plaintiffs" and "Indirect Plaintiffs," respectively); Defendants are egg trade groups and vertically integrated producers of shell eggs, egg products, or both.

In the fall and winter of 2008, several cases were filed in several federal district courts,

including the Eastern District of Pennsylvania, the District of Minnesota, and the District of New Jersey. The cases were transferred to this Court by the Judicial Panel on Multidistrict Litigation on December 2, 2008, for coordinated pretrial proceedings. Co-Lead and Liaison Counsel were appointed for the Direct Plaintiffs and the Indirect Plaintiffs, and Liaison Counsel were appointed for the Defendants.

The Court appointed a Special Master to assist with electronic discovery issues and issued an order for the preservation of documents and electronically-stored information. The Court also issued a protective order, along with various other orders to facilitate and manage the Litigation. The majority of discovery has been stayed, but at the direction of the Court the parties have exchanged certain preliminary discovery materials and are in the process of serving document preservation subpoenae on various third party entities and individuals.

Consolidated Amended Complaints have been filed by the Direct Plaintiffs and the Indirect Plaintiffs, presumably replacing or superceding all of the previously-filed individual Complaints. In these Consolidated Amended Complaints, Plaintiffs seek injunctive relief, treble damages, attorneys' fees and costs. A briefing schedule has been set, and Defendants have responded to the Consolidated Amended Complaints.[1]

B.      Direct Plaintiffs' Motion for Preliminary Approval of Sparboe Settlement

Direct Plaintiffs and Defendant Sparboe Farms, Inc. ("Sparboe") have now submitted a proposed settlement to the Court for preliminary approval ("Sparboe Settlement"). Direct Plaintiffs' motion for preliminary approval of the proposed Sparboe Settlement is not opposed by

---

[1] Most of the defendants filed motions to dismiss the Direct Plaintiffs' Consolidated Amended Complaint. One defendant has elected to file an answer.

any party involved in the Litigation.[2]  Under the proposed Sparboe Settlement, Direct Plaintiffs will release Sparboe from all pending claims, in exchange for information and documents that Direct Plaintiffs may choose to use to amend and, they surmise, strengthen their Consolidated Amended Complaint against the remaining defendants.[3]  Direct Plaintiffs have indicated that, if Court grants preliminary approval of the settlement, they will seek to amend their Consolidated Amended Complaint, presumably because of information expected to be gleaned from the Sparboe documents and information.  This, in turn, may affect the allegations contained in the Indirect Plaintiffs' Consolidated Amended Complaint.

After hearing oral argument on the motion for preliminary approval, the Court ordered supplemental briefing regarding (1) certain legal issues raised by Direct Plaintiffs' motion for approval, (2) the substance of the information that Direct Plaintiffs expect to secure as a result of the Sparboe Settlement, and (3) how such information will materially improve or strengthen Direct Plaintiffs' ability to articulate and prosecute their claims.  Accordingly, Sparboe, Direct Plaintiffs, and the defendants not involved in the proposed Sparboe Settlement ("Non-Settling Defendants) all submitted supplemental briefing.  Sparboe's supplemental submission specifically addressed the documents, testimony and other information that form the basis for the Sparboe Settlement.  Combined with the parties' previous submissions, it provides the Court with a sufficient basis to preliminarily approve the proposed Sparboe Settlement, as outlined

---

[2] This includes the Indirect Plaintiffs as well as the Non-Settling Defendants.

[3] There is no monetary component to the proposed Sparboe Settlement.  The Sparboe Settlement is based entirely on cooperation, and not on financial compensation.  If an amended Consolidated Amended Complaint is filed, the Court will then address the extent and timing of the obligations of the Non-Settling Defendants to respond.

herein.

    C.    Direct Plaintiffs' Motion Regarding <u>In Camera</u> Submission

Simultaneously with their supplemental briefing, Direct Plaintiffs filed a Motion for Leave to Submit, <u>In Camera</u>, their Statement of Sparboe Cooperation ("Direct Plaintiffs' Motion Regarding <u>In Camera</u> Submission"). In this motion, Direct Plaintiffs propose to submit an <u>in camera</u> statement that would provide the Court with additional details about the documents, testimony and other information that Direct Plaintiffs have obtained and expect to obtain from Sparboe in connection with the proposed settlement, without eliminating the benefit of Sparboe's early cooperation.[4]

The Non-Settling Defendants oppose this motion, arguing that Direct Plaintiffs need not make their supplemental submission <u>in camera</u> in order to preserve the benefit of Sparboe's early cooperation, and that any <u>in camera</u> submission would, by definition, prejudice the Non-Settling Defendants. Sparboe, meanwhile, contends that an <u>in camera</u> submission is unnecessary because the Court already has sufficient information about the substance of the proposed settlement for purposes of preliminary approval.[5] The Court concludes that, based on the full range of the parties' submissions to date, it has sufficient information to preliminarily approve the proposed

---

[4] Regarding their desire to submit the Statement of Sparboe Cooperation <u>in camera</u>, Direct Plaintiffs point to Paragraph 25 of the Sparboe Settlement Agreement, which states:

> Should the Settling Parties be required to submit any information or documentation to the Court to obtain preliminary approval, such submission shall be, to the full extent permitted, for review by the court in camera only.

[5] Sparboe also argues that, if filed, the proposed <u>in camera</u> submission would *not* prejudice the Non-Settling Defendants, whereas Sparboe *would* be prejudiced if the Court required Plaintiffs to *publicly* file the Statement of Sparboe Cooperation. In addition, Sparboe argues that the Non-Settling Defendants lack standing to object to the <u>in camera</u> submission.

4

Sparboe Settlement. Accordingly, the Direct Plaintiffs' Motion Regarding *In Camera* Submission is moot.

II.     PRELIMINARY APPROVAL

    A.     Class Findings

For purposes of the Settlement of the claims against Sparboe (and only for such purposes, and certainly without an adjudication of the merits and, further, without any impact upon the issues between any of the Plaintiffs and any of the Non-Settling Defendants), the Court preliminarily finds that the requirements of the Federal Rules of Civil Procedure, the United States Constitution, the Rules of the Court and any other applicable law have been met insofar as the proposed settlement is concerned,[6] in that:

    1.     The Settlement Class Members, as defined in Section B below, are ascertainable from objective criteria, such as Sparboe's records, and the Settlement Class Members are so numerous that their joinder before the Court would be impracticable.

    2.     For purposes of preliminary approval, the commonality requirement of Federal Rule of Civil Procedure 23(a) is satisfied insofar as Direct Plaintiffs have alleged one or more questions of fact and law common to the Sparboe Settlement Class, including whether Sparboe violated the Sherman Antitrust Act, 15 U.S.C. § 1, et seq., by engaging in an unlawful conspiracy to control supply and fix, raise, maintain and/or stabilize the prices of shell eggs

---

[6] When deciding preliminary approval, a court does not conduct a "definitive proceeding on fairness of the proposed settlement." In re Mid-Atlantic Toyota Antitrust Litig., 564 F. Supp. 1379, 1384 (D.C. Md. 1983); see In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 785-86 (3d Cir. 1995). That determination must await the final hearing, at which the fairness, reasonableness, and adequacy of the settlement is assessed. In re Linerboard Antitrust Litig., 292 F. Supp. 2d 631, 638 (E.D. Pa. 2003).

and/or egg products in the United States.

3. Based on Direct Plaintiffs' allegations that Defendants engaged in misconduct that uniformly affected members of the Sparboe Settlement Class, the Court preliminarily finds that the claims of the representative Direct Plaintiffs are typical of the claims of the Settlement Class members. The claims of the representative Direct Plaintiffs and absent class members rely on the same legal theories and arise from the same alleged "conspiracy" and "illegal agreement" by Defendants, namely, the agreement to control supply and fix, raise, maintain and/or stabilize the prices of shell eggs and/or egg products in the United States. Moreover, Direct Plaintiffs allege that all putative class members suffered injury as a result of Defendants' alleged anticompetitive conduct.

4. The Court preliminarily finds that the representative Direct Plaintiffs will fairly and adequately protect the interests of the Settlement Class, in that (i) the interests of the representative Direct Plaintiffs are consistent with those of the Sparboe Settlement Class members; (ii) there appear to be no conflicts between or among the representative Direct Plaintiffs and other Settlement Class members; (iii) the representative Direct Plaintiffs have been and appear to be capable of continuing to be active participants in both the prosecution and the settlement of this Litigation, and (iv) the representative Direct Plaintiffs and Sparboe Settlement Class members are represented by qualified, reputable counsel who are experienced in preparing and prosecuting large, complicated class action cases, including those based upon violations of antitrust law.

5. The Court preliminarily finds that, for this settlement's purposes, questions of law or fact common to members of the Settlement Class predominate over questions

affecting only individual members of the Settlement Class, under Rule 23(b)(3), and that a class action resolution in the manner proposed in the Sparboe Settlement Agreement would be superior to other available methods for a fair and efficient adjudication of the Litigation insofar as Sparboe is concerned.  In making these preliminary findings, the Court has considered, among other factors, (i) the interest of Settlement Class members in individually controlling the prosecution or defense of separate actions; (ii) the impracticality or inefficiency of prosecuting or defending separate actions; (iii) the extent and nature of any litigation concerning these claims already commenced; and (iv) the desirability of concentrating the litigation of the claims in a particular forum.

      6.      The Court makes no determination concerning the manageability of this Litigation as a class action, if this Litigation were to go to trial.

    B.      Preliminary Class Certification for Settlement Purposes Only

Based on the findings set forth in Section A above, the Court preliminarily certifies the Settlement Class for settlement purposes under FRCP 23(b)(3).  At this preliminary certification phase, and only for purposes of this proposed settlement, the Sparboe Settlement Class is defined as follows:

      1.      Settlement Class

> All persons and entities that purchased eggs, including shell eggs and egg products, produced from caged birds in the United States directly from any producer during the Class Period from January 1, 2000 through the present.

      a.      Shell Eggs Subclass

> All individuals and entities that purchased shell eggs produced from caged birds in the United States directly from any producer during the Class


Period from January 1, 2000 through the present.

b.   Egg Products Subclass

All individuals and entities that purchased egg products produced from shell eggs that came from caged birds in the United States directly from any producer during the Class Period from January 1, 2000 through the present.

Excluded from the class and subclasses are the Defendants, their co-conspirators, and their respective parents, subsidiaries and affiliates, all government entities, as well as the Court and staff to whom this case is assigned, and any member of the Court's or staff's immediate families. Also excluded from the Class and Subclasses are purchasers of "specialty" shell egg or egg products (such as "organic," "free-range" or "cage-free") and purchasers of hatching eggs (used by poultry breeders to produce breeder stock or growing stock for laying hens or meat). See Settlement Agreement, ¶ 11 (Hausfeld Decl., Ex. 1).

The Court concludes that, for the sole purpose of settlement, and without an adjudication on the merits, the Settlement Class is sufficiently well-defined and cohesive to merit preliminary approval. The Settlement Class shall be modified as necessary. Neither this Order nor any final order regarding the Sparboe Settlement shall have any effect on the Court's consideration and determination of class certification or any other issue with respect to the Non-Settling Defendants.

C.   Findings Regarding Proposed Settlement and Notice Procedures

The Court accepts the good faith representations of counsel that the proposed settlement was reached only after several months of intense arm's-length negotiations by counsel. Subject to final determination following an approved form of and plan for notice and a fairness hearing,

the Sparboe Settlement falls within the range of possible approval and is sufficiently fair, reasonable and adequate so as to warrant preliminary approval. In addition, the Court finds that:

      1.      The proposed settlement appears to require substantial cooperation from Sparboe, including the production of critical documents and witnesses that are expected to materially assist Direct Plaintiffs in articulating their claims and pursuing this litigation against the Non-Settling Defendants, and possibly others.

      2.      The benefit of the information supplied by Sparboe, received before the commencement of discovery with the Non-Settling Defendants, appears to outweigh the potential benefit of Sparboe's continued participation in the Litigation as a defendant.[7] Without commenting on whether the information and facts that Sparboe may provide would be established, or even admissible, at trial, based upon counsel's representations, they appear to provide significant assistance to the Sparboe Settlement Class members in the articulation and prosecution of their claims.

      3.      Direct Plaintiffs are not presently seeking approval of the form of and plan for the notice to be issued to the Settlement Class. Instead, the form of and plan for notice will be approved by separate order. After 180 days from the entry of this Order, Direct Plaintiffs shall file with the Court a motion with a proposed form and content of: (a) the Notice of Proposed Settlement(s); and (b) a plan for publication of the Notice, which provides due and sufficient

---

[7] In addition, counsel put considerable stock in the fact that the early nature of Sparboe's cooperation may have significant value in and of itself to Direct Plaintiffs as an "ice-breaker" settlement that may "increase the likelihood of future settlements." In re Linerboard Antitrust Litig., 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003). The fact that the Sparboe Settlement occurred early in the litigation, in advance of the Court's ruling on the Non-Settling Defendants' motions for dismissal for lack of specificity, may enhance the value of the Sparboe Settlement.

notice to all persons entitled thereto and complies fully with the requirements of Federal Rule of Civil Procedure 23 and the due process requirements of the United States Constitution. After the Court has received the filing of the motion with the proposed form of notice, the Court shall issue an order setting a deadline by which Direct Plaintiffs shall file with the Court and serve on the parties their motion for final approval of the Sparboe Settlement Agreement. This motion must address whether the Settlement Class should be finally certified as a class for settlement purposes under the standards recently articulated in <u>In re Insurance Brokerage Antitrust Litigation</u>, 579 F.3d 241 (3d Cir. 2009). Also, the Court shall schedule a final fairness hearing, as provided in Section D below.

  D.  Final Fairness Hearing

A final fairness hearing shall be scheduled by the Court, after the proposed form of and plan for notice has been finalized and approved by the Court.

  E.  Miscellaneous

    1.  The Litigation against Sparboe is hereby stayed, pending further order of the Court.

    2.  The terms used in this Order that are defined in the Sparboe Settlement Agreement are, unless otherwise defined herein, used in this Order as defined in the Settlement Agreement.

    3.  In the event the settlement does not become final and effective for any reason, nothing in this Order shall be construed to prejudice any position that any of the parties may assert in any aspect of the Litigation.

    4.  Neither the Settlement Agreement, nor any of its terms or provisions, nor

any of the negotiations or proceedings connected with it, shall be construed as an admission or concession by Sparboe of the truth or any of the allegations in the Litigation, or of any liability, fault or wrongdoing of any kind.  Likewise, nothing in the Settlement Agreement may be taken as evidence of any lack of viability or of the inadmissibility of any evidence or of any lack of merit in the Plaintiffs' allegations.

5. Counsel for Sparboe may be excused, if counsel so desires, from attendance at any subsequent meetings of counsel in the Litigation, except as may be specifically ordered by the Court.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE