EXHIBIT 1

## UNITED STATES DISTRICT COURT
## IN THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **IN RE: PROCESSED EGG PRODUCTS** | : | **MDL No. 2002** |
| **ANTITRUST LITIGATION** | : | **Case No: 08-md-02002** |
| | : | |
| | : | |
| **THIS DOCUMENT APPLIES TO** | : | |
| **DIRECT PURCHASER ACTIONS** | : | |
| | : | |

### DECLARATION OF MICHAEL D. HAUSFELD IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT BETWEEN PLAINTIFFS AND DEFENDANTS MOARK, LLC, NORCO RANCH, INC., AND LAND O' LAKES, INC., FOR  PRELIMINARY CERTIFICATION OF CLASS ACTION FOR PURPOSES OF SETTLEMENT, AND FOR APPROVAL OF NOTICE PLAN

I, Michael D. Hausfeld, declare as follows:

1.      I am one of the founding partners and Chairperson of the law firm Hausfeld LLP. I am one of the Court-appointed Interim Co-Lead Counsel for Direct Purchasers in the above captioned action.

2.      I submit this declaration in support of the motion for preliminary approval of the proposed settlement filed by the Plaintiffs.

3.      I was one of the principal negotiators of the proposed Settlement Agreement with Defendants Moark, LLC, Norco Ranch, Inc., and Land O' Lakes, Inc. ("Moark"), although all Interim Co-Lead Counsel for Direct Purchasers were actively involved in these negotiations.

4.      Moark was fully prepared to defend itself and litigate this case. Nevertheless, Moark was interested in seeing if an agreement could be reached to resolve this litigation. There were protracted discussions over the course of the last eight months between Interim Co-Lead Counsel and counsel for Moark.

5.      Preliminary contact with Moark about a potential settlement occurred in August 2009.

6.      During the Fall of 2009, Moark provided sales data and other financial information that permitted Plaintiffs to accurately estimate the range of damages that could be proven at trial.

7.      Direct settlement negotiations began in March, 2010.  Negotiations were intense and at arm's length.  Prior to entering into the Settlement Agreement, the Interim Co-Lead Counsel also wanted to be convinced that the monetary compensation afforded to the Class Members was fair, reasonable and adequate and that the cooperation provided would substantially assist Plaintiffs in advancing claims against the non-settling defendants.  Thus, as part of these negotiations, Moark described the nature and extent of the cooperation that it would agree to provide as part of any settlement.  On Friday, May 21, 2010 the Settlement Agreement was fully executed by the Co-Leads and Moark's Counsel.  A true and complete copy of this Agreement is attached as Exhibit A.  An addendum to that agreement, executed on June 1, 2010 is attached as Exhibit B.

8.      Pursuant to ¶39 of the Settlement Agreement, Moark has agreed to undertake significant cooperation to support Plaintiffs' prosecution of this action.  Moark's counsel have agreed to meet with Plaintiffs' to "to begin to provide a general description of the times, places, and corporate participants relating to the conduct at issue in the Action."  Further cooperation is mandated after Preliminary and Final Approval of the Settlement Agreement.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: June 4, 2010

Michael D. Hausfeld

EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: PROCESSED EGG PRODUCTS :
ANTITRUST LITIGATION          :      MDL No.  2002
_____ :     08-md-02002
                              :
THIS DOCUMENT APPLIES TO:      :
All Direct Purchaser Actions   :


SETTLEMENT AGREEMENT BETWEEN
DIRECT PURCHASER PLAINTIFFS AND DEFENDANTS
MOARK, LLC, NORCO RANCH, INC., AND LAND O' LAKES, INC.

This Settlement Agreement ("Agreement") is made and entered into this 21st day of May, 2010 (the "Execution Date"), by and between Moark, LLC, Norco Ranch, Inc., and Land O' Lakes, Inc. (collectively the "Moark Defendants"), together with their past and present parents, subsidiaries, and affiliates, and plaintiff Class representatives ("Plaintiffs")(as defined herein at Paragraph 11), both individually and on behalf of a Class (as defined herein at Paragraph 4) of direct purchasers of Shell Eggs and Egg Products (as defined  herein at Paragraphs 7 and 17).

WHEREAS, Plaintiffs are prosecuting the above-captioned actions currently pending and consolidated in the Eastern District of Pennsylvania, and including all actions transferred for coordination, and all direct purchaser actions pending such transfer (including, but not limited to, "tag-along" actions) (the "Action") on their own behalf and on behalf of the Class against Moark Defendants and other Defendants;

WHEREAS, Plaintiffs allege that Moark Defendants participated in an unlawful conspiracy to raise, fix, maintain, and/or stabilize the price of certain Shell Eggs and Egg

1

Products in the United States at artificially high levels in violation of Section 1 of the Sherman Act;

WHEREAS, Plaintiffs have conducted an investigation into the facts and the law regarding the Action and have concluded that a settlement with Moark Defendants according to the terms set forth below is fair, reasonable, and adequate, and beneficial to and in the best interests of Plaintiffs and the Class;

WHEREAS, Moark Defendants deny all allegations of wrongdoing in the Action. However, despite their belief that they are not liable for, and have good defenses to, the claims alleged in the Action, Moark Defendants desire to settle the Action, and thus avoid the expense, risk, exposure, inconvenience, and distraction of continued litigation of the Action, or any action or proceeding relating to the matters being fully settled and finally put to rest in this Agreement;

WHEREAS, Moark Defendants agree to  cooperate with Class Counsel (defined in Paragraph 1 below) and the Class by providing information related to the claims asserted by Plaintiffs in this Action against Non-Settling Defendants, or other parties not currently named as Defendants, with regard to the sale of Shell Eggs and Egg Products;

WHEREAS, arm's-length settlement negotiations have taken place between Class Counsel and Moark Defendants' Counsel, and this Agreement has been reached as a result of these negotiations;

NOW, THERFORE, in consideration of the covenants, agreements, and releases set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is agreed by and among the undersigned that the Action be settled, compromised and dismissed on the merits with prejudice as to Moark Defendants only, without

costs as to Plaintiffs, the Class or Moark Defendants, subject to the approval of the Court, on the following terms and conditions:

A.      **Definitions**

The following terms, as used in this Agreement, have the following meanings:

1.      "Class Counsel" shall refer to the law firms of Weinstein Kitchenoff & Asher LLC, 1845 Walnut Street, Suite 1100, Philadelphia, PA 19103; Hausfeld LLP, 1700 K Street NW, Suite 650, Washington, DC 20006; Bernstein Liebhard LLP, 10 East 40th Street, 22nd Floor, New York, NY 10016; and Susman Godfrey, 654 Madison Avenue, 5th Floor, New York, NY 10065-8404.  "Plaintiffs' Counsel" shall refer to the law firms identified on pages 133-137 of the Second Consolidated Amended Class Action Complaint filed in the Action on April 7, 2010.

2.      "Moark Defendants' Counsel" shall refer to the law firm of Eimer Stahl Klevorn & Solberg LLP, 224 South Michigan Avenue, Suite 1100, Chicago, Illinois 60604.

3.      "Counsel" means both Plaintiffs' Counsel and Moark Defendants' Counsel, as defined in Paragraphs 1 and 2 above.

4.      "Class Member" or "Class" shall mean each member of the settlement class, as defined in Paragraph 19 of this Agreement, who does not timely elect to be excluded from the Class, and includes, but is not limited to, Plaintiffs.

5.      "Class Period" shall mean the period from and including January 1, 2000 up to and including the date when notice of the Court's entry of an order preliminarily approving this settlement and certifying a Class for settlement purposes is first published.

3

6.      "Defendant(s)" shall refer to the parties listed as defendants in the Second Consolidated Amended Complaint as filed on January 30, 2010, and each of their corporate parents, subsidiaries, and affiliated companies.

7.      "Egg Products" shall mean the whole or any part of eggs that have been removed from their shells and may be processed, with or without additives, into dried, frozen or liquid forms.

8.      "Final Approval" shall mean the definition given to that phrase in Paragraph 24 hereof.

9.      "Non-Settling Defendants" shall refer to Defendants other than Moark Defendants.

10.     "Claims Administrator" shall mean the Garden City Group, Inc.

11.     "Plaintiffs" shall mean each of the following named Class representatives: T.K. Ribbing's Family Restaurant, LLC; Eby-Brown Company LLC; Goldberg and Solovy Foods, Inc.; Karetas Foods, Inc.; Nussbaum-SF, Inc.; Somerset Industries, Inc.; Wixon, Inc.; John A. Lisciandro d/b/a/ Lisciandro's Restaurant, and SensoryEffects Flavor Co. d/b/a SensoryEffects Flavor Systems.

12.     "Producer" shall mean any person or entity that owns, contracts for the use of, leases or otherwise controls hens for the purpose of producing eggs for sale.

13.     "Releasees" shall refer, jointly and severally, and individually and collectively, to Moark Defendants, their parents, subsidiaries, and affiliated companies, and their past and present officers, directors, employees, agents, insurers, attorneys, shareholders, joint venturers that are not Non-Settling Defendants, partners and representatives, as well as the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing.

4

14.     "Releasors" shall refer, jointly and severally, and individually and collectively, to Plaintiffs, the Class Members, and to each of their respective past and present officers, directors, parents, subsidiaries, affiliates, partners, and insurers, and to the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing.

15.     "Settlement Amount" shall refer to $25,000,000 U.S. dollars.

16.     "Settlement Fund" shall mean the funds accrued in the escrow account established in accordance with Paragraph 33 below.

17.     "Shell Eggs" shall mean eggs that are sold in the shell for consumption or for breaking and further processing.

18.     "Total Sales" shall mean the sum of the annual U.S. sales of all Producers, to be mutually agreed upon by Counsel, of Shell Eggs and Egg Products for the years during the Class Period.

**B.     Settlement Class Certification**

19.     Subject to Court approval, the following Class shall be certified for settlement purposes only as to Moark Defendants:

> All persons and entities that purchased eggs, including
> Shell Eggs and Egg Products, produced from caged birds in
> the United States directly from any Producer, including any
> Defendant, during the Class Period from January 1, 2000
> through the date when notice of the Court's entry of an
> order preliminarily approving this settlement and certifying
> a Class for settlement purposes is first published.
>
> a.) Shell Egg SubClass
> All individuals and entities that purchased Shell
> Eggs produced from caged birds in the United
> States directly from any Producer including any
> Defendant, during the Class Period from January 1,
> 2000 through the date when notice of the Court's
> entry of an order preliminarily approving this
> settlement and certifying a Class for settlement

5

purposes is first published, excluding individuals and entities that purchased only "specialty" Shell Eggs (certified organic, nutritionally enhanced, cage-free, free-range, and vegetarian-fed types) and "hatching" Shell Eggs (used by poultry breeders to produce breeder stock or growing stock for laying hens or meat).

b.) Egg Products SubClass
All individuals and entities that purchased Egg Products produced from Shell Eggs that came from caged birds in the United States directly from any Producer, including any Defendant, during the Class Period from January 1, 2000 through the date when notice of the Court's entry of an order preliminarily approving this settlement and certifying a Class for settlement purposes is first published, excluding individuals and entities that purchased only "specialty" Egg Products (certified organic, nutritionally enhanced, cage-free, free-range, and vegetarian-fed types).

Excluded from the Class and SubClasses are Producers, and their respective parents, subsidiaries and affiliates, all government entities, as well as the Court and staff to whom this case is assigned, and any member of the Court's or staff's immediate family.

## C.   Approval of this Agreement and Dismissal of Claims

20.     Plaintiffs and Moark Defendants shall use their best efforts to effectuate this Agreement, including cooperating in promptly seeking Court approval of this Agreement and securing both the Court's certification of the Class and the Court's approval of procedures, including the giving of Class notice under Federal Rules of Civil Procedure 23(c) and (e), to secure the prompt, complete, and final dismissal with prejudice of the Action as to Moark Defendants.

21.     Within two (2) business days after the execution of this Agreement by Moark

6

Defendants, Counsel shall jointly file with the Court a stipulation for suspension of all

proceedings against Moark Defendants pending approval of this Agreement.  Ten (10) business

days after execution of the Agreement by Moark Defendants, Plaintiffs shall submit to the Court

a motion (the "Motion"): (a) for certification of a Class for settlement purposes; and (b) for

preliminary approval of the Agreement, and authorization to disseminate notice of Class

certification, the settlement, and the final judgment contemplated by this Agreement to all

potential Class Members.  The Motion shall include: (a) the definition of the Class for settlement

purposes as set forth in Paragraph 19 of this Agreement; (b) a proposed form of, method for, and

date of dissemination of notice; and (c) a proposed form of final judgment order.  The text of the

items referred to in clauses (a) through (c) above shall be agreed upon by Plaintiffs and Moark

Defendants before submission of the Motion.  Individual notice of the Agreement shall be mailed

to persons and entities identified by Moark Defendants and, as ordered by the Court, those

identified by Plaintiffs and Plaintiffs' Counsel or other Non-Settling Defendants in the Action,

who are located in the United States and who purchased Shell Eggs and Egg Products directly

from Moark Defendants or any Non-Settling Defendant(s) in the Action during the Class Period,

and notice of the Settlement shall be published once in the Wall Street Journal and in such other

trade journals targeted towards direct purchasers of Shell Eggs and Egg Products, if any, as

Moark Defendants and Class Counsel agree to or as ordered by the Court.  Within twenty (20)

business days after the Execution Date, Moark Defendants shall supply to Class Counsel at

Moark Defendants' expense and in such form as kept in the regular course of business

(electronic format if available) such names and addresses of potential Class Members as it has.

If practicable, Plaintiffs may combine dissemination of notice of the proposed certification of the

Class for settlement purposes and the Agreement with the dissemination of notice of other

settlement agreements. However, the notice of this Agreement and the proposed certification of the Class shall be separate from any other notice.

22.     Within twenty (20) business days after the end of the opt-out period established by the Court and set forth in the notice, Plaintiffs shall provide Moark Defendants, through Moark Defendants' Counsel, a written list of all potential Class Members who have exercised their right to request exclusion from the Class, the dollar volume of purchases of Shell Eggs and Egg Products during the Class Period for each such potential Class Member and the percentage that such potential Class Member's purchases represents of the Total Sales.

23.     Within sixty (60) business days of preliminary approval of this Agreement by the Court, Plaintiffs and Moark Defendants shall jointly seek entry of an order and final judgment, the text of which Plaintiffs and Moark Defendants shall agree upon, as provided for in Paragraphs 20 and 21 of this Agreement:

      (a)     as to the Action, approving finally this Agreement and its terms as being a fair, reasonable, and adequate settlement as to the Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

      (b)     directing that, as to Moark Defendants, the Action be dismissed with prejudice and, except as explicitly provided for in this Agreement, without costs;

      (c)     reserving exclusive jurisdiction over the settlement and this Agreement, including the administration and consummation of this settlement;

      (d)     determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the final judgment of dismissal as to Moark Defendants shall be entered; and

      (e)     requiring Class Counsel to file with the Clerk of the Court a record of potential Class Members who timely excluded themselves from the Class, and to provide a copy of the record to counsel for Moark Defendants.

24.     This Agreement shall become final only when (a) the Court has entered an order approving this Agreement under Rule 23(e) of the Federal Rules of Civil Procedure and a final

judgment dismissing the Action against Moark Defendants on the merits with prejudice as to all Class Members and without costs has been entered, and (b) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of a final judgment as described in clause (a) above has expired or, if appealed, approval of this Agreement and the final judgment have been affirmed in their entirety by the Court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review ("Final Approval"). It is agreed that neither the provisions of Rule 60 of the Federal Rules of Civil Procedure nor the All Writs Act, 28 U.S.C. § 1651, shall be taken into account in determining the above-stated time. On the Execution Date, Plaintiffs and Moark Defendants shall be bound by the terms of this Agreement, and the Agreement shall not be rescinded except in accordance with Paragraphs 29 and 32 of this Agreement.

**D.   Release and Discharge**

25.   In addition to the effect of any final judgment entered in accordance with this Agreement, upon Final Approval of this Agreement, and for other valuable consideration as described herein, Releasees shall be completely released, acquitted, and forever discharged from any and all claims, demands, actions, suits and causes of action, whether Class, individual or otherwise in nature, that Releasors, or each of them, ever had, now has, or hereafter can, shall, or may have on account of or arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected injuries or damages, and the consequences thereof, arising out of or resulting from: (i) any agreement or understanding between or among two or more Producers of eggs, including any Defendants, including any entities or individuals that may later be added as a defendant to the Action, (ii) the reduction or restraint of supply, the reduction of or restrictions on production capacity, or (iii) the pricing, selling, discounting,

9

marketing, or distributing of Shell Eggs and Egg Products in the United States or elsewhere,
including but not limited to any conduct alleged, and causes of action asserted, or that could have
been alleged or asserted, whether or not concealed or hidden, in the Complaints filed in the
Action (the "Complaints"), which in whole or in part arise from or are related to the facts and/or
actions described in the Complaints, including under any federal or state antitrust, unfair
competition, unfair practices, price discrimination, unitary pricing, trade practice, consumer
protection, fraud, RICO, civil conspiracy law, or similar laws, including, without limitation, the
Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.*, from the beginning of time to the date when notice
of the Court's entry of an order preliminarily approving this Agreement is first published (the
"Released Claims").  Releasors shall not, after the date of this Agreement, seek to recover
against any of the Releasees for any of the Released Claims.  Notwithstanding anything in this
Paragraph, Released Claims shall not include, and this Agreement shall not and does not release,
acquit or discharge, claims based solely on purchases of Shell Eggs and Egg Products outside of
the United States on behalf of persons or entities located outside of the United States at the time
of such purchases.  This Release is made without regard to the possibility of subsequent
discovery or existence of different or additional facts.

26.    Each Releasor waives California Civil Code Section 1542 and similar provisions
in other states.  Each Releasor hereby certifies that he, she, or it is aware of and has read and
reviewed the following provision of California Civil Code Section 1542 ("Section 1542"): "A
general release does not extend to claims which the creditor does not know or suspect to exist in
his or her favor at the time of executing the release, which if known by him or her must have
materially affected his or her settlement with the debtor." The provisions of the release set forth
above shall apply according to their terms, regardless of the provisions of Section 1542 or any

equivalent, similar, or comparable present or future law or principle of law of any jurisdiction. Each Releasor may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims that are the subject matter of this Settlement Agreement, but each Releasor hereby expressly and fully, finally and forever waives and relinquishes, and forever settles and releases any known or unknown, suspected or unsuspected, contingent or non-contingent, claim whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts, as well as any and all rights and benefits existing under (i) Section 1542 or any equivalent, similar or comparable present or future law or principle of law of any jurisdiction and (ii) any law or principle of law of any jurisdiction that would limit or restrict the effect or scope of the provisions of the release set forth above, without regard to the subsequent discovery or existence of such other or different facts.

27.     In addition to the provisions of Paragraphs 25 and 26, each Releasor hereby expressly and irrevocably waives and releases, upon this Agreement becoming finally approved by the Court, any and all defenses, rights, and benefits that each Releasor may have or that may be derived from the provisions of applicable law which, absent such waiver, may limit the extent or effect of the release contained in Paragraphs 25 and 26.  Each Releasor also expressly and irrevocably waives any and all defenses, rights, and benefits that the Releasor may have under any similar statute in effect in any other jurisdiction that, absent such waiver, might limit the extent or effect of the release.

28.     The release and discharge set forth in Paragraphs 25 through 27 herein do not include claims relating to payment disputes, physical harm, defective product or bodily injury (the "Excepted Claims") and do not include any Non-Settling Defendant.

**E.      Rescission**

29.      If the Court refuses to approve this Agreement or any part hereof, or if such approval is modified or set aside on appeal, or if the Court does not enter the final judgment provided for in Paragraph 23 of this Agreement, or if the Court enters the final judgment and appellate review is sought, and on such review, such final judgment is not affirmed, then Moark Defendants and Plaintiffs shall each, in their sole discretion, have the option to rescind this Agreement in its entirety within ten (10) business days of the action giving rise to such option.  If this Agreement is rescinded, all amounts in the escrow created pursuant to Paragraph 33 hereof, less any expenses authorized pursuant to this Agreement, shall be wire transferred to the Moark Defendants, pursuant to their instructions, within ten (10) business days of the notice of rescission.

30.      In the event of rescission, if Final Approval of this Agreement is not obtained, or if the Court does not enter the final judgment provided for in Paragraph 23 of this Agreement, Class Counsel agree that this Agreement, including its exhibits, and any and all negotiations, documents, information and discussions associated with it shall be without prejudice to the rights of Moark Defendants, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing, or of the truth of any of the claims or allegations made in this Action in any pleading, and shall not be used directly or indirectly, in any way, whether in this Action or in any other proceeding, unless such documents and/or information is otherwise obtainable by separate and independent discovery permissible under the Federal Rules of Civil Procedure.

31.      Class Counsel further agree that, in the event of rescission, the originals and all copies of documents provided by or on behalf of Moark Defendants pursuant to this Agreement,

together with all documents and electronically stored information containing information provided by Moark Defendants, including, but not limited to, notes, memos, records, and interviews, shall be returned to Moark Defendants at Moark Defendant's expense, or destroyed by Class Counsel at their own expense, provided that attorney notes or memoranda may be destroyed rather than produced if an affidavit of such destruction is promptly provided to Moark Defendants through their counsel.

32.     If Class Counsel notify Moark Defendants, pursuant to Paragraph 22, that Class Members whose purchases represent 7.5% or more of the Total Sales have requested exclusion from this Agreement ("Excluded Class Members"), Moark Defendants shall have the right and option within fifteen (15) business days after receipt of such notice to either (1) rescind the Agreement or (2)  reduce the Settlement Amount by the percentage that the total purchases reported to Moark Defendants pursuant to Paragraph 22 represents of the Total Sales (example: total purchases of Excluded Class Members / Total Sales).  Within ten (10) business days of the exercise of option (2), the amount by which the Settlement Amount was reduced shall be wire transferred from the escrow established pursuant to Paragraph 33 to a newly established Escrow Account of Moark Defendants' choosing ("Reduction Escrow").  Distribution of the Reduction Escrow to Moark Defendants shall occur only upon written notice to Class Counsel by Moark Defendants' Counsel that actual settlement or judgment has occurred between Moark Defendants and any Excluded Class Member(s) ("Reduction Distribution").  Any Reduction Distribution shall only be for the actual amount of any settlement or judgment between an Excluded Class Member and Moark Defendants.  Any unclaimed remainder in the Reduction Escrow that exists at the later of the termination of this Action or any action brought by an Excluded Class Member shall revert to the benefit of the Class.  Moark Defendants shall have no claim to any Settlement

Amount other than from the Reduction Distribution Escrow.  Moark Defendants shall give written notice to Class Counsel in order to invoke rights under this Paragraph to rescind or reduce the Settlement Amount.

**F.    Payment**

33.    Moark Defendants shall pay or cause to be paid the Settlement Amount in settlement of the Action.  The Settlement Amount shall be wire transferred by Moark Defendants or their designee within ten (10) business days of the Execution Date into the Settlement Fund, which shall be established as an escrow account at a bank agreed to by Class Counsel and Moark Defendants' Counsel, and administered in accordance with the Escrow Agreement attached hereto as Exhibit A.

34.    Each Class Member shall look solely to the Settlement Amount for settlement and satisfaction, as provided herein, of all claims released by the Releasors pursuant to this Agreement.

35.    Class Counsel may seek an award of attorneys' fees and reasonable litigation expenses approved by the Court, to be paid out of the Settlement Amount after the Final Approval of the Agreement.  Moark Defendants agree not to object to Class Counsel's petition to the Court for payment of attorneys' fees, costs, and expenses from the Settlement Amount.  The Moark Defendants shall have no obligation to pay any fees or expenses for Class Counsel.

36.    Upon entry of an order by the Court approving the request for an award of attorneys' fees ("Attorneys' Fees Order") made pursuant to Paragraph 35 above, attorneys' fees may be distributed from the Settlement Fund pursuant to the terms of the fee order, provided however that any Class Counsel seeking to draw down their share of the attorneys' fees prior to Final Approval and the Attorneys' Fees Order becoming final shall secure the repayment of the

14

amount drawn down by a letter of credit or letters of credit on terms, amounts, and by banks
acceptable to Moark Defendants.  The Attorneys' Fees Order becomes final when the time for
appeal or to seek permission to appeal from the Attorneys' Fees Order has expired or, if
appealed, has been affirmed by the Court of last resort to which such appeal has been taken and
such affirmance has become no longer subject to further appeal or review.

37.     In order to receive distribution of funds pursuant to Paragraph 36 prior to Final
Approval and the Attorneys' Fees Order becoming final above, each Class Counsel shall be
required to provide the Claims Administrator the approved letter(s) of credit in the amount of
Class Counsel's draw-down, and shall be required to reimburse the Settlement Fund within thirty
(30) business days all or the pertinent portion of the draw-down with interest, calculated as the
rate of interest published in the Wall Street Journal for 3-month U.S. Treasury Bills as of the
close on the date that the draw-down was distributed, if Final Approval is not granted or if the
award of attorneys' fees is reduced or overturned on appeal.  The Claims Administrator may
present the letter(s) of credit in the event the Class Counsel fails to honor the obligation to repay
the amount withdrawn.

38.     Disbursements for any payments and expenses incurred in connection with
taxation matters relating to this Settlement Agreement shall be made from the Settlement
Amount upon written notice by Class Counsel of such payments and expenses to the Claims
Administrator, and such amounts shall not be refundable to Moark Defendants in the event that
this Settlement Agreement is disapproved, rescinded, or otherwise fails to become effective.

**G.     Cooperation**

39.     Moark Defendants shall provide cooperation pursuant to this Agreement.  All
cooperation shall be coordinated in such a manner so that all unnecessary duplication and

expense is avoided.  Moark Defendants' cooperation obligations shall only apply to Releasors who act with, by or through Class Counsel pursuant to this Agreement in this Action.

    (a)    **Proffers.**  Upon execution of this Settlement Agreement, Moark Defendants shall begin to undertake to support Class Plaintiffs' prosecution of the Action.  Beginning within ten (10) business days of the Execution Date, Moark Defendants agree that its counsel will meet with Class Counsel to begin to provide a general description of the times, places, and corporate participants relating to the conduct at issue in the Action.

    (b)    **Production of Documents.**  No later than ten (10) business days after the Execution Date, Moark Defendants shall begin to confer with Class Counsel about agreed-upon categories of documents from an agreed-upon list of custodians for production purposes.  Within one (1) business day after preliminary approval of this Agreement by the Court, Moark Defendants shall begin to produce the agreed-upon categories of documents from an agreed-upon list of custodians to Class Counsel.

    (b)    **Final Approval Cooperation.**  Upon Final Approval of the Agreement, and the rescission right having lapsed, Moark Defendants shall begin providing the following cooperation:

        (i)    Interviews:  At an agreed-upon time and at Moark Defendants' expense, Moark Defendants shall make available for one interview with Class Counsel and counsel for any other parties with which Moark Defendants have settled and/or their experts each then current directors, officers, and employees of Moark Defendants who possess information that, based on Class Counsel's good faith belief, would assist Plaintiffs in preparing and prosecuting the Action.  The Moark Defendants would use their best efforts to assist Class Counsel in arranging interviews with former directors, officers, and employees of Moark Defendants.

        (ii)    Declarations and Affidavits: Moark Defendants shall make available to Class Counsel, upon reasonable notice, any then current directors, officers, and employees of Moark Defendants for the preparation of declarations and/or affidavits to be used in the prosecution of the Action.  Moark Defendants shall use their best efforts to assist Class Counsel in arranging for declarations and/or affidavits of former directors, officers, and employees of Moark Defendants to be used in the prosecution of the Action.

        (iii)    Depositions: At an agreed-upon time and at Moark Defendants' expense, Moark Defendants shall make available for one deposition in the consolidated cases each of the then current directors, officers, and employees of the Moark Defendants, designated by Class Counsel, who

possess information that, based on Class Counsel's good faith belief,
would assist Plaintiffs in preparing and prosecuting the Action.  Written
notice by Class Counsel upon Moark Defendants' counsel shall constitute
sufficient service for such depositions.  Moark Defendants shall use their
best efforts to assist Class Counsel in arranging the deposition of former
directors, officers, and employees of the Moark Defendants.

(iv)    Testimony at Trial: Upon reasonable notice and at Moark
Defendants' expense, Moark Defendants shall make available for
testimony at trial, each of the then current directors, officers, and
employees of Moark Defendants, designated by Class Counsel, who
possess information, based on Class Counsel's good faith belief, that
would assist Plaintiffs in trial of the Plaintiffs' claims as alleged in the
Action.  Moark Defendants shall use their best efforts to assist class
Counsel in arranging for the appearance of former directors, officers, and
employees at trial.

(c)    **Attorney Client Privilege.**  Moark Defendants shall make available for
testimony or interview, upon reasonable notice and at Moark Defendants'
expense, each of the then current directors, officers, and employees of Moark
Defendants who Plaintiffs believe possess non-privileged information relating to
any assertion of privilege by a third party, to the extent permissible under the
law.  Consistent with all applicable legal and ethical rules, Moark Defendants
shall be under no obligation to produce documents that UEP claims are
privileged until such time as any dispute as to such claimed privilege is resolved.

(d)    **Quantum Meruit.**  Moark Defendants will not object to any application
made by Class Member or Class Counsel for quantum meruit from any entity or
person who opts out of this Settlement.

(e)    **Termination.**  The Moark Defendants' obligations to cooperate under the
Agreement terminate when final judgment has been rendered, with no remaining
rights of appeal, in the Action against all Defendants.

40.    Neither the entry into this Agreement nor any performance under it shall

constitute a waiver of Moark Defendants' own attorney-client privilege or work product

immunity.

41.    Should the Moark Defendants or Plaintiffs be required to submit any information

or documentation to the Court to obtain preliminary approval, such submission shall be, to the

full extent permitted, for review by the court *in camera* only.  All information and documents

provided by Moark Defendants to Class Counsel shall be subject to the protective order entered

in the Action, and any documents or electronically stored information designated as

"Confidential" or "Highly Confidential" by Moark Defendants shall have the same equivalent

protection as under the protective order.

**H.      Use of Information and Documents**

        42.      Class Counsel agree to use any and all of the information and documents obtained

from Moark Defendants only for the purpose of this litigation, and agree to be bound by the

terms of the protective order described above in Paragraph 41.  Any person who receives

information or documents produced in accordance with this Agreement shall agree to be bound

by all the terms of this Agreement and shall not receive such material prior to such agreement.

Notwithstanding the foregoing, or the terms of the protective order, Class Counsel agree, unless

ordered by a court and consistent with due process, that under no circumstances shall

information or documents be shared with any person, counsel, Class Counsel or Plaintiffs'

Counsel who is also (i) counsel for any plaintiff in any state or federal action against one or more

of the Releasees, (ii) counsel for any plaintiff or Class Member who or which elects to opt out of

the proposed class for settlement purposes under this Agreement, (iii) any counsel representing

or advising indirect purchasers of Shell Eggs or Processed Eggs, or (iv) any counsel representing

or advising direct or indirect purchasers of "specialty" shell egg or egg products (such as

"organic," "free range," or "cage free") and purchasers of hatching eggs (used by poultry

breeders or produce breeder stock or growing stock for laying hens or meat), or (v) any third

party not associated with Plaintiffs' Counsel in this Action.

43. Notwithstanding the provisions of Paragraph 42 above, Class Counsel shall coordinate, organize, and/or manage any and all cooperation provided pursuant to this Agreement with any other potential civil plaintiffs as agreed to by Counsel.

**I.    Notice of Settlement to Class Members**

44. Class Counsel shall take all necessary and appropriate steps to ensure that notice of this Settlement Agreement and the date of the hearing scheduled by the Court to consider the fairness, adequacy, and reasonableness of this Agreement is provided in accordance with the Federal Rules of Civil Procedure and any Court orders. Class Counsel will undertake all reasonable efforts to obtain from Non-Settling Defendants the names and addresses of those persons who purchased Shell Eggs or Egg Products directly from any Non-Settling Defendant during the Class Period. Notice of this Settlement will be issued after Preliminary Approval of this Settlement Agreement by the Court.

45. Class Counsel is authorized to use up to a maximum of $350,000.00 of the Settlement Amount towards the costs of notice of the Settlement under this Agreement.

**J.    Taxes**

46. Class Counsel shall be solely responsible for directing the Claims Administrator to file all informational and other tax returns necessary to report any taxable and/or net taxable income earned by the Settlement Amount. Further, Class Counsel shall be solely responsible for directing the Escrow Agent to make any tax payments, including interest and penalties due, on income earned by the Escrow Funds. Class Counsel shall be entitled to direct the Escrow Agent in writing to pay customary and reasonable Tax Expenses, including professional fees and expenses incurred in connection with carrying out their responsibilities as set forth in this Paragraph, from the applicable Escrow Fund by notifying the Escrow Agent in writing. Moark

19

Defendants shall have no responsibility to make any tax filings relating to this Settlement Agreement.

47.     For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "Administrator" of the Settlement Amount shall be the Claims Administrator, who shall timely and properly file or cause to be filed on a timely basis, all tax returns necessary or advisable with respect to the Settlement Amount (including, without limitation all income tax returns, all informational returns, and all returns described in Treas. Reg. § 1.468B 2(1)).

48.     The parties to this Agreement and their Counsel shall treat, and shall cause the Claims Administrator to treat, the Settlement Amount as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B 1.  In addition, the Claims Administrator and, as required, the parties, shall timely make such elections as necessary or advisable to carry out the provisions of this Paragraph, including the "relation-back election" (as defined in Treas. Reg. § 1.468B 1(j)) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the Claims Administrator to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties and thereafter to cause the appropriate filing to occur.  All provisions of this Agreement shall be interpreted in a manner that is consistent with the Settlement Amount being a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B 1.

**K.    Miscellaneous**

49.     This Agreement does not settle or compromise any claim by Plaintiffs or any

Class Member asserted in the Action against any Non-Settling Defendant or any potential defendant other than the Releasees.  All rights of any Class Member against Non-Settling Defendants or any other person or entity other than the Releasees are specifically reserved by Plaintiffs and the Class Members.  The sales of Shell Eggs and Egg Products by Moark Defendants to Class Members shall remain in the case against the Non-Settling Defendants in the Action as a basis for damage claims and shall be part of any joint and several liability claims against Non-Settling Defendants in the Action or other persons or entities other than the Releasees.

50.     The United States District Court for the Eastern District of Pennsylvania shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by Plaintiffs and Moark Defendants.  This Agreement shall be governed by and interpreted according to the substantive laws of the Commonwealth of Pennsylvania without regard to its choice of law or conflict of laws principles.  Moark Defendants submit to the jurisdiction in the Eastern District of Pennsylvania only for the purposes of this Agreement and the implementation, enforcement and performance thereof. Moark Defendants otherwise retain all defenses to the Court's exercise of personal jurisdiction over Moark Defendants.

51.     This Agreement constitutes the entire agreement among Plaintiffs (and the other Releasors) and Moark Defendants (and the other Releasees) pertaining to the settlement of the Action against Moark Defendants only, and supersedes any and all prior and contemporaneous undertakings of Plaintiffs and Moark Defendants in connection therewith.  In entering into this

Agreement, Plaintiffs and Moark Defendants have not relied upon any representation or promise made by Plaintiffs or Moark Defendants not contained in this Agreement.  This Agreement may be modified or amended only by a writing executed by Plaintiffs and Moark Defendants, and approved by the Court.

52.     This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Releasors and Releasees.  Without limiting the generality of the foregoing: (a) each and every covenant and agreement made herein by Plaintiffs, Class Counselor Plaintiffs' Counsel shall be binding upon all Class Members and Releasors; and (b) each and every covenant and agreement made herein by Releasees shall be binding upon all Releasees.

53.     This Agreement may be executed in counterparts by Plaintiffs and Moark Defendants, and an electronically-scanned (in either .pdf or .tiff format) signature will be considered an original signature for purposes of execution of this Agreement.

54.     The headings in this Agreement are included for convenience only and shall not be deemed to constitute part of this Agreement or to affect its construction.

55.     In the event this Agreement is not approved or is terminated, or in the event that the order and final judgment approving the settlement is entered but is substantially reversed, modified, or vacated, the pre-settlement status of the litigation shall be restored and the Agreement shall have no effect on the rights of the Moark Defendants or Plaintiffs to prosecute or defend the pending Action in any respect, including the right to litigate fully the issues related to Class certification, raise personal jurisdictional defenses, or any other defenses, which rights are specifically and expressly retained by Moark Defendants.

56.     Neither Moark Defendants nor Plaintiffs, nor any of them, shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law,

22

or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

57.     Nothing expressed or implied in this Agreement is intended to or shall be construed to confer upon or give any person or entity other than Class Members, Releasors, Moark Defendants, and Releasees any right or remedy under or by reason of this Agreement.

58.     Any putative Class Member that does not opt out of the Class created pursuant to the Agreement may remain in the Class without prejudice to the right of such putative Class Member to opt out of any other past, present or future settlement class or certified litigation class in the Action.

59.     Where this Agreement requires any party to provide notice or any other communication or document to any other party, such notice, communication, or document shall be provided by electronic mail or overnight delivery to:

For the Class:
Steven A. Asher
WEINSTEIN KITCHENOFF & ASHER LLC
1845 Walnut Street, Suite 1100
Philadelphia, PA 19103
Asher@wka-law.com

For Moark Defendants:
Nathan P. Eimer
EIMER STAHL KLEVORN & SOLBERG LLP
224 South Michigan Avenue, Suite 1100
Chicago, IL 60604
neimer@eimerstahl.com

60.     Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Agreement, subject to Court approval.

Dated: May 21, 2010

_(signature)_

Steven A. Asher
WEINSTEIN KITCHENOFF & ASHER LLC
1845 Walnut Street, Suite 1100
Philadelphia, P A 19103
(215) 545-7200
(215) 545-6536 (fax)
asher@wka-law.com

Michael D. Hausfeld
HAUSFELD LLP
1700 K Street, Suite 650
Washington, DC 20006
(202) 540-7200
(202) 540-7201 (fax)
mhausfeld@hausfeldllp.com

Stanley D. Bernstein
BERNSTEIN LIEBHARD LLP
10 East 40th Street, 22nd Floor
New York, NY 10016
(212) 779-1414
(212) 779-3218 (fax)
bernstein@bernlieb.com

Stephen D. Susman
SUSMAN GODFREY LLP
654 Madison Avenue, 5th Floor
New York, NY 10065-8404
(212) 336-8330
(212) 336-8340 (fax)
SSusman@SusmanGodfrey.com

(Interim Co-Lead Counsel for the Class)

Nathan P. Eimer
EIMER STAHL KLEVORN & SOLBERG LLP
224 S. Michigan Ave., Suite. 1100
Chicago, IL 60604
(312) 660-7601
(312) 692-1718 (fax)
neimer@eimerstahl.com

(On Behalf of Moark Defendants)

4837-3552-1030

Dated: May 21, 2010

---

Steven A. Asher
WEINSTEIN KITCHENOFF & ASHER LLC
1845 Walnut Street, Suite 1100
Philadelphia, P A 19103
(215) 545-7200
(215) 545-6536 (fax)
asher@wka-law.com

---

Stanley D. Bernstein
BERNSTEIN LIEBHARD LLP
10 East 40th Street, 22nd Floor
New York, NY 10016
(212) 779-1414
(212) 779-3218 (fax)
bernstein@bemlieb.com

(Interim Co-Lead Counsel for the Class)

---

Michael D. Hausfeld
HAUSFELD LLP
1700 K Street, Suite 650
Washington, DC 20006
(202) 540-7200
(202) 540-7201 (fax)
mhausfeld@hausfeldllp.com

---

Stephen D. Susman
SUSMAN GODFREY LLP
654 Madison Avenue, 5th Floor
New York, NY 10065-8404
(212) 336-8330
(212) 336-8340 (fax)
SSusman@SusmanGodfrey.com

---

Nathan P. Eimer
EIMER STAHL KLEVORN & SOLBERG LLP
224 S. Michigan Ave., Suite. 1100
Chicago, IL 60604
(312) 660-7601
(312) 692-1718 (fax)
neimer@eimerstahl.com

(On Behalf of Moark Defendants)

4837-3552-1030

24

Dated: May 21, 2010

_____

Steven A.  Asher
WEINSTEIN KITCHENOFF & ASHER LLC
1845 Walnut Street, Suite 1100
Philadelphia, P A 19103
(215) 545-7200
(215) 545-6536 (fax)
asher@wka-law.com

_____

Michael D.  Hausfeld
HAUSFELD LLP
1700 K Street, Suite 650
Washington, DC 20006
(202) 540-7200
(202) 540-7201 (fax)
mhausfeld@hausfeldllp.com

_____

Stanley D.  Bernstein
BERNSTEIN LIEBHARD LLP
10 East 40th Street, 22nd Floor
New York, NY 10016
(212) 779-1414
(212) 779-3218 (fax)
bernstein@bemlieb.com

(Interim Co-Lead Counsel for the Class)

_____

Stephen D.  Susman
SUSMAN GODFREY LLP
654 Madison Avenue, 5th Floor
New York, NY 10065-8404
(212) 336-8330
(212) 336-8340 (fax)
SSusman@SusmanGodfrey.com

_____

Nathan P.  Eimer
EIMER STAHL KLEVORN & SOLBERG LLP
224 S.  Michigan Ave., Suite.  1100
Chicago, IL 60604
(312) 660-7601
(312) 692-1718 (fax)
neimer@eimerstahl.com

(On Behalf of Moark Defendants)

4837-3552-1030

24

Dated: May 21, 2010

---

Steven A. Asher
WEINSTEIN KITCHENOFF & ASHER LLC
1845 Walnut Street, Suite 1100
Philadelphia, P A 19103
(215) 545-7200
(215) 545-6536 (fax)
asher@wka-law.com

Michael D. Hausfeld
HAUSFELD LLP
1700 K Street, Suite 650
Washington, DC 20006
(202) 540-7200
(202) 540-7201 (fax)
mhausfeld@hausfeldllp.com

---

Stanley D. Bernstein
BERNSTEIN LIEBHARD LLP
10 East 40th Street, 22nd Floor
New York, NY 10016
(212) 779-1414
(212) 779-3218 (fax)
bernstein@bemlieb.com

*Stephen D. Susman (by permission a. El-Hakam)*
Stephen D. Susman
SUSMAN GODFREY LLP
654 Madison Avenue, 5th Floor
New York, NY 10065-8404
(212) 336-8330
(212) 336-8340 (fax)
SSusman@SusmanGodfrey.com

(Interim Co-Lead Counsel for the Class)

---

Nathan P. Eimer
EIMER STAHL KLEVORN & SOLBERG LLP
224 S. Michigan Ave., Suite. 1100
Chicago, IL 60604
(312) 660-7601
(312) 692-1718 (fax)
neimer@eimerstahl.com

(On Behalf of Moark Defendants)

4837-3552-1030

24

Dated: May 21, 2010

_____
Steven A. Asher
WEINSTEIN KITCHENOFF & ASHER LLC
1845 Walnut Street, Suite 1100
Philadelphia, PA 19103
(215) 545-7200
(215) 545-6536 (fax)
asher@wka-law.com

_____
Michael D. Hausfeld
HAUSFELD LLP
1700 K Street, Suite 650
Washington, DC 20006
(202) 540-7200
(202) 540-7201 (fax)
mhausfeld@hausfeldllp.com

_____
Stanley D. Bernstein
BERNSTEIN LIEBHARD LLP
10 East 40th Street, 22nd Floor
New York, NY 10016
(212) 779-1414
(212) 779-3218 (fax)
bernstein@bemlieb.com

_____
Stephen D. Susman
SUSMAN GODFREY LLP
654 Madison Avenue, 5th Floor
New York, NY 10065-8404
(212) 336-8330
(212) 336-8340 (fax)
SSusman@SusmanGodfrey.com

(Interim Co-Lead Counsel for the Class)

_____
Nathan P. Eimer
EIMER STAHL KLEVORN & SOLBERG LLP
224 S. Michigan Ave., Suite. 1100
Chicago, IL 60604
(312) 660-7601
(312) 692-1718 (fax)
neimer@eimerstahl.com

(On Behalf of Moark Defendants)

4837-3552-1030

24

EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: PROCESSED EGG PRODUCTS :
ANTITRUST LITIGATION            :     MDL No. 2002
_____ :     08-md-02002
                                :
THIS DOCUMENT APPLIES TO:       :
All Direct Purchaser Actions    :


FIRST ADDENDUM TO
SETTLEMENT AGREEMENT BETWEEN
DIRECT PURCHASER PLAINTIFFS AND DEFENDANTS
MOARK, LLC, NORCO RANCH, INC., AND LAND O' LAKES, INC.


Pursuant to Paragraph 51 of the Settlement Agreement, Paragraph 33 is hereby modified

by striking "within ten (10) business days" and replacing it with "within sixteen (16) business

days."


Dated: June 1, 2010


Steven A. Asher
WEINSTEIN KITCHENOFF & ASHER LLC
1845 Walnut Street, Suite 1100
Philadelphia, P A 19103
(215) 545-7200
(215) 545-6536 (fax)
asher@wka-law.com

Michael D. Hausfeld
HAUSFELD LLP
1700 K Street, Suite 650
Washington, DC 20006
(202) 540-7200
(202) 540-7201 (fax)
mhausfeld@hausfeldllp.com

Stanley D. Bernstein
BERNSTEIN LIEBHARD LLP
10 East 40th Street, 22nd Floor
New York, NY 10016
(212) 779-1414
(212) 779-3218 (fax)
bernstein@bemlieb.com

(Interim Co-Lead Counsel for the Class)

Nathan P. Eimer
EIMER STAHL KLEVORN & SOLBERG LLP
224 S. Michigan Ave., Suite. 1100
Chicago, IL 60604
(312) 660-7601
(312) 692-1718 (fax)
neimer@eimerstahl.com

(On Behalf of Moark Defendants)

Stephen D. Susman
SUSMAN GODFREY LLP
654 Madison Avenue, 5th Floor
New York, NY 10065-8404
(212) 336-8330
(212) 336-8340 (fax)
SSusman@SusmanGodfrey.com