IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: PROCESSED EGG PRODUCTS ANTITRUST LITIGATION | : <br> : <br> :   MDL No. 2002 <br> :   08-md-02002 <br> : |
| THIS DOCUMENT APPLIES TO: <br> ALL ACTIONS | : <br> : <br> : |

### ORDER ON PRELIMINARY APPROVAL OF SETTLEMENT WITH MOARK, LLC, NORCO RANCH, INC. AND LAND O'LAKES, INC.

Among the pending motions in this matter is the Direct Purchaser Plaintiffs' Motion for Preliminary Approval of Settlement with Defendants Moark, LLC, Norco Ranch, Inc., and Land O'Lakes, Inc. (Docket No. 347). For the reasons expressed below, on this 15th day of July 2010, it is hereby ORDERED that the motion is GRANTED.

I.   BACKGROUND

    A.   The Litigation

This antitrust class action litigation (the "Litigation") involves one or more alleged conspiracies to control the supply and to fix, raise, maintain and/or stabilize the prices of shell eggs and/or egg products in the United States, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Plaintiffs are direct and indirect purchasers of shell eggs and egg products ("Direct Plaintiffs" and "Indirect Plaintiffs," respectively); Defendants are egg trade groups and vertically integrated producers of shell eggs, egg products, or both.

In the fall and winter of 2008, several cases were filed in several federal district courts, including the Eastern District of Pennsylvania, the District of Minnesota, and the District of New Jersey. The cases were transferred to this Court by the Judicial Panel on Multidistrict Litigation

on December 2, 2008, for coordinated pretrial proceedings. Co-Lead and Liaison Counsel were appointed for the Direct Plaintiffs and the Indirect Plaintiffs, and Liaison Counsel were appointed for the Defendants.

The Court appointed a Special Master to assist with electronic discovery issues and issued an order for the preservation of documents and electronically-stored information. The Court also issued a protective order, along with various other orders to facilitate and manage the Litigation. The majority of discovery has been stayed, but at the direction of the Court the parties have exchanged certain preliminary discovery materials and have served document preservation subpoenae on various third party entities and individuals.

Consolidated Amended Complaints were filed by the Direct Plaintiffs and the Indirect Plaintiffs, presumably replacing or superceding all of the previously-filed individual Complaints. Defendants responded to these Complaints and then, following the Court's preliminary approval of the settlement between Direct Plaintiffs and Defendant Sparboe Farms, Inc. ("Sparboe"), the Plaintiffs filed Second Consolidated Amended Complaints. In these Second Consolidated Amended Complaints, Plaintiffs seek injunctive relief, treble damages, attorneys' fees and costs. A briefing schedule was set, and Defendants have responded to the Second Consolidated Amended Complaints with answers as well as motions to dismiss. Oral Arguments have been set on the various motions to dismiss. In addition, the Court has addressed several miscellaneous issues, some of which required the assistance of Magistrate Judge Timothy Rice.

B.  Direct Plaintiffs' Motion for Preliminary Approval of Moark Settlement

Direct Plaintiffs and Defendants Moark, LLC, Norco Ranch, Inc., and Land O'Lakes, Inc. ("Moark") have now submitted a proposed settlement to the Court for preliminary approval

("Moark Settlement"). Under the proposed Moark Settlement, Direct Plaintiffs will release Moark from all pending claims, in exchange for monetary consideration as well as information and documents.

II. PRELIMINARY APPROVAL

    A. Class Findings

For purposes of the Settlement of the claims against Moark (and only for such purposes, and certainly without an adjudication of the merits and, further, without any impact upon the issues between any of the Plaintiffs and any of the Non-Settling Defendants), the Court preliminarily finds that the requirements of the Federal Rules of Civil Procedure, the United States Constitution, the Rules of the Court and any other applicable law have been met insofar as the proposed settlement is concerned,[1] in that:

    1. The Settlement Class Members, as defined below, are ascertainable from objective criteria, such as Moark's records, and the Settlement Class Members are so numerous that their joinder before the Court would be impracticable.

    2. For purposes of preliminary approval, the commonality requirement of Federal Rule of Civil Procedure 23(a) is satisfied insofar as Direct Plaintiffs have alleged one or more questions of fact and law common to the Moark Settlement Class, including whether Moark violated the Sherman Antitrust Act, 15 U.S.C. § 1, et seq., by engaging in an unlawful

---

[1] When deciding preliminary approval, a court does not conduct a "definitive proceeding on fairness of the proposed settlement." In re Mid-Atlantic Toyota Antitrust Litig., 564 F. Supp. 1379, 1384 (D.C. Md. 1983); see In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 785-86 (3d Cir. 1995). That determination must await the final hearing, at which the fairness, reasonableness, and adequacy of the settlement is assessed. In re Linerboard Antitrust Litig., 292 F. Supp. 2d 631, 638 (E.D. Pa. 2003).

conspiracy to control supply and fix, raise, maintain and/or stabilize the prices of shell eggs and/or egg products in the United States.

3. Based on Direct Plaintiffs' allegations that Defendants engaged in misconduct that uniformly affected members of the Moark Settlement Class, the Court preliminarily finds that the claims of the representative Direct Plaintiffs are typical of the claims of the Settlement Class members. The claims of the representative Direct Plaintiffs and absent class members rely on the same legal theories and arise from the same alleged "conspiracy" and "illegal agreement" by Defendants, namely, the agreement to control supply and fix, raise, maintain and/or stabilize the prices of shell eggs and/or egg products in the United States. Moreover, Direct Plaintiffs allege that all putative class members suffered injury as a result of Defendants' alleged anticompetitive conduct.

4. The Court preliminarily finds that the representative Direct Plaintiffs will fairly and adequately protect the interests of the Settlement Class, in that (i) the interests of the representative Direct Plaintiffs are consistent with those of the Moark Settlement Class members; (ii) there appear to be no conflicts between or among the representative Direct Plaintiffs and other Settlement Class members; (iii) the representative Direct Plaintiffs have been and appear to be capable of continuing to be active participants in both the prosecution and the settlement of this Litigation, and (iv) the representative Direct Plaintiffs and Moark Settlement Class members are represented by qualified, reputable counsel who are experienced in preparing and prosecuting large, complicated class action cases, including those based upon violations of antitrust law.

5. The Court preliminarily finds that, for this settlement's purposes,

questions of law or fact common to members of the Settlement Class predominate over questions affecting only individual members of the Settlement Class, under Rule 23(b)(3), and that a class action resolution in the manner proposed in the Moark Settlement Agreement would be superior to other available methods for a fair and efficient adjudication of the Litigation insofar as Moark is concerned. In making these preliminary findings, the Court has considered, among other factors, (i) the interest of Settlement Class members in individually controlling the prosecution or defense of separate actions; (ii) the impracticality or inefficiency of prosecuting or defending separate actions; (iii) the extent and nature of any litigation concerning these claims already commenced; and (iv) the desirability of concentrating the litigation of the claims in a particular forum.

6. The Court makes no determination concerning the manageability of this Litigation as a class action, if this Litigation were to go to trial.

B. Preliminary Class Certification for Settlement Purposes Only

Based on the findings set forth in Section A above, the Court preliminarily certifies the Settlement Class for settlement purposes under FRCP 23(b)(3). At this preliminary certification phase, and only for purposes of this proposed settlement, the Moark Settlement Class is defined as follows:

1. Settlement Class

   All persons and entities in the United States that purchased eggs, including Shell Eggs and Egg Products, produced from caged birds in the United States directly from any Producer, including any Defendant, during the Class Period from January 1, 2000 through the date when notice of the Court's entry of an order preliminarily approving this settlement and certifying a Class for settlement purposes is first published..

a. Shell Eggs Subclass

All individuals and entities in the United States that purchased Shell Eggs produced from caged birds in the United States directly from any Producer including any Defendant, during the Class Period from January 1, 2000 through the date when notice of the Court's entry of an order preliminarily approving this settlement and certifying a Class for settlement purposes is first published, excluding individuals and entities that purchased only "specialty" Shell Eggs (certified organic, nutritionally enhanced, cage-free, free-range, and vegetarian-fed types) and "hatching" Shell Eggs (used by poultry breeders to produce breeder stock or growing stock for laying hens or meat).

b. Egg Products Subclass

All individuals and entities in the United States that purchased Egg Products produced from Shell Eggs that came from caged birds in the United States directly from any Producer, including any Defendant, during the Class Period from January 1, 2000 through the date when notice of the Court's entry of an order preliminarily approving this settlement and certifying a Class for settlement purposes is first published, excluding individuals and entities that purchased only "specialty" Egg Products (certified organic, nutritionally enhanced, cage-free, free-range, and vegetarian-fed types).

Excluded from the Class and SubClasses are Producers, and their respective parents, subsidiaries and affiliates, all government entities, as well as the Court and staff to whom this case is assigned, and any member of the Court's or staff's immediate family.

The Court concludes that, for the sole purpose of settlement, and without an adjudication on the merits, the Settlement Class is sufficiently well-defined and cohesive to merit preliminary approval. The Settlement Class shall be modified as necessary. Neither this Order nor any final order regarding the Moark Settlement shall have any effect on the Court's consideration and determination of class certification or any other issue with respect to the Non-Settling Defendants.

C. Findings Regarding Proposed Settlement and Notice Procedures

The Court accepts the good faith representations of counsel that the proposed settlement was reached only after several months of intense arm's-length negotiations by counsel. Subject to final determination following an approved form of and plan for notice and a fairness hearing, the Moark Settlement falls within the range of possible approval and is sufficiently fair, reasonable and adequate so as to warrant preliminary approval. In addition, the Court finds that:

1. The proposed settlement appears to require substantial cooperation from Moark, including monetary consideration as well as the production of critical documents and witnesses that are expected to materially assist Direct Plaintiffs in pursuing this litigation against the Non-Settling Defendants.

2. The benefit of the monetary consideration and information supplied by Moark appears to outweigh the potential benefit of Moark's continued participation in the Litigation as defendants. Without commenting on whether the information and facts that Moark may provide would be established, or even admissible, at trial, based upon counsel's representations, they appear to provide significant assistance to the Moark Settlement Class members in the prosecution of their claims.

D. Notice to Class Members and Final Fairness Hearing

The schedule for dissemination of notices of the proposed settlement with Moark, and significant dates relating to final approval (e.g. objections, exclusions, briefing, final fairness hearing), shall be set forth in a separate order of the Court.

E. Miscellaneous

1. The Litigation against Moark is hereby stayed, pending further

order of the Court.

2. The terms used in this Order that are defined in the Moark Settlement Agreement are, unless otherwise defined herein, used in this Order as defined in the Settlement Agreement.

3. In the event the settlement does not become final and effective for any reason, nothing in this Order shall be construed to prejudice any position that any of the parties may assert in any aspect of the Litigation.

4. Neither the Settlement Agreement, nor any of its terms or provisions, nor any of the negotiations or proceedings connected with it, shall be construed as an admission or concession by Moark of the truth or any of the allegations in the Litigation, or of any liability, fault or wrongdoing of any kind. Likewise, nothing in the Settlement Agreement may be taken as evidence of any lack of viability or of the inadmissibility of any evidence or of any lack of merit in the Plaintiffs' allegations.

5. Counsel for Moark may be excused, if counsel so desires, from attendance at any subsequent meetings of counsel in the Litigation, except as may be specifically ordered by the Court.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE