**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE: PROCESSED EGG PRODUCTS** : | |
| **ANTITRUST LITIGATION** : | |
| : | **MDL No. 2002** |
| : | **08-md-2002** |
| : | |
| _____ : | |
| : | |
| **THIS DOCUMENT APPLIES TO:** : | |
| **ALL DIRECT PURCHASER** : | |
| **PLAINTIFF ACTIONS** : | |

## ALLOCATION ORDER

**WHEREAS**, the Court granted final approval of the Settlement Agreement Between

Direct Purchaser Plaintiffs and Defendants Moark, LLC, Norco Ranch, Inc., and Land O'Lakes,

Inc. ("Settlement Agreement") (Doc. No. 700) on July 16, 2012;

**WHEREAS**, the Court certified the following Settlement Class:

All persons and entities that purchased eggs, including Shell Eggs and Egg Products,

produced from caged birds in the United States directly from any Producer, including any

Defendant, during the Class Period from January 1, 2000 through the date when notice of the

Court's entry of an order preliminarily approving this settlement and certifying a Class for

settlement purposes is first published.

(a) Shell Egg SubClass

All individuals and entities that purchased Shell Eggs produced from caged birds

in the United States directly from any Producer including any Defendant, during the

Class Period from January 1, 2000 through the date when notice of the Court's entry of

an order preliminarily approving this settlement and certifying a Class for settlement

purposes is first published, excluding individuals and entities that purchased only

"specialty" Shell Eggs (certified organic, nutritionally enhanced, cage-free, free-range,

1

and vegetarian-fed types) and "hatching" Shell Eggs (used by poultry breeders to produce

breeder stock or growing stock for laying hens or meat).

        (b) Egg Products SubClass

                All individuals and entities that purchased Egg Products produced from Shell

Eggs that came from caged birds in the United States directly from any Producer,

including any Defendant, during the Class Period from January 1, 2000 through the date

when notice of the Court's entry of an order preliminarily approving this settlement and

certifying a Class for settlement purposes is first published, excluding individuals and

entities that purchased only "specialty" Egg Products (certified organic, nutritionally

enhanced, cage-free, free-range, and vegetarian-fed types).

Excluded from the Class and SubClasses are Producers, and their respective parents, subsidiaries

and affiliates, all governmental entities, as well as the Court and staff to whom this case is

assigned, and any member of the Court's or staff's immediate family.

        **WHEREAS**, the Settlement is final and the Settlement Fund must now be allocated

among the Settlement SubClasses for distribution to the Settlement Class members;

        **WHEREAS** the Direct Purchaser Plaintiffs have made a Motion for an Order for

Allocation of Settlement Proceeds (Docket No. 740);

**IT IS HEREBY ORDERED AS FOLLOWS:**

        1.      The proposed allocation of the Settlement Fund among the Settlement SubClasses

is adjudged to be fair, reasonable, and adequate and in the best interests of Direct Purchaser

Plaintiffs and the Settlement Class as a whole, as well as each Settlement SubClass individually

and the Settlement Class Members.

2.      The Court finds that the Notice and the Notice Plan constituted the best notice practicable under the circumstances and constituted valid, due, and sufficient notice to all persons entitled thereto.

3.      The Court directs the Claims Administrator, Garden City Group, Inc. ("GCG"), to allocate the Net Settlement Fund, after payment of all required expenses under the Settlement Agreement as well as the payments due from the Court's Order Granting Direct Purchaser Plaintiffs Attorneys' Fees and Reimbursement of Expenses, to the Settlement SubClasses, defined as the members of the Settlement SubClasses who did not timely and validly exclude themselves from the Settlement in accordance with the requirements set forth in the Notice or as otherwise approved by the Court, so that two-thirds of the Net Settlement Fund will go to the Shell Egg SubClass, and one-third will go to the Egg Products SubClass.

4.      GCG is directed to make payments from each SubClass's Individual Settlement Fund to Authorized Claimants as follows:

(a)     Each Authorized Claimant who files a valid, sworn, and timely Claim Form and who submits documents that the Claims Administrator determines are valid proof of purchase and purchase price shall be entitled to a payment from the Individual Settlement Fund(s) for which they are eligible in the amount of approximately 0.059 percent (0.059%) of their actual purchase price of each Settlement Product, or a total sum of $25.00, whichever is greater.

5.      Valid proof of purchase may include but is not limited to receipts, cancelled checks, credit card statements, or other records that show the Authorized Claimant purchased the Settlement Products, from whom the Authorized Claimant purchased the Settlement Products, and when the Authorized Claimant purchased the Settlement Products.

3

6.     Any funds remaining in the allocated amount for each Settlement SubClass after these payments are "Excess Amounts." If there are Excess Amounts, then the Initial Authorized Payments for that Settlement SubClass shall be increased by an equal percentage until the Individual Settlement Fund would be exhausted.

7.     Within twenty (20) days of the issuance of this Order, GCG shall identify and submit to Interim Co-lead Counsel an accounting of the payments to each Authorized Claimant that GCG intends to pay. At the same time, GCG will provide Moark Defendants' counsel with sufficient information to (i) identify, for each Individual Settlement Fund, the aggregate of all amounts GCG intends to pay to Authorized Claimants and (ii) explain, for each Individual Settlement Fund, the calculation as provided for in this Allocation Order.

8.     Within fourteen (14) days of such notice, Interim Co-lead Counsel shall identify any issues or communicate their agreement with the payments proposed to be made by GCG. If Interim Co-lead Counsel agrees with the payments proposed to be made by GCG, then GCG will notify each Authorized Claimant of the proposed payments. The Authorized Claimants will then have 30 days to object to the proposed payment. If an Authorized Claimant believes that the calculation of their recovery is inaccurate, then the Authorized Claimant must submit additional information proving the correct calculation with their objection. If no such objections are received, then GCG shall distribute payments accordingly. If any objections are received, then Interim Co-lead Counsel shall attempt to resolve those objections. If Interim Co-lead Counsel and GCG are unable to agree on the appropriate payments to be made or to resolve any outstanding issues, then they shall request an Order from the Court resolving such issues.

9.     This Order shall finally resolve the claims, rights, and liabilities of the parties related to the allocation of the Settlement Fund and, given that there is no just reason for delay,

4

shall be considered final and immediately appealable pursuant to Federal Rule of Civil Procedure 54(b).

BY THE COURT:

GENE E.K. PRATTER
United States District Judge

November 9, 2012