IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: PROCESSED EGG PRODUCTS ANTITRUST LITIGATION | : <br> : <br> : MDL No. 2002 <br> : 08-md-2002 <br> : |
| THIS DOCUMENT APPLIES TO: <br> ALL DIRECT ACTION PLAINTIFF ACTIONS | : <br> : <br> : |

MEMORANDUM

GENE E.K. PRATTER, J.                                    DECEMBER 20th, 2012

## I. Introduction

This multidistrict litigation involves allegations that egg producers violated Section 1 of the Sherman Act by conspiring to restrict the supply of, and thereby fix the prices for, domestically produced eggs. The direct action plaintiffs ("Plaintiffs") in the litigation are pursuing non-class relief against various defendants ("Defendants").[1] The Defendants have moved under Federal Rules of Civil Procedure 12(b)(6) and 9(b) to dismiss the Plaintiffs' claims for damages incurred prior to the commencement date of the applicable statute of limitations. For the reasons set forth below, the Motion is granted in part and denied in part.

---

[1] The Plaintiffs have filed the following six complaints: Kroger Co. v. United Egg Producers, Inc., No. 08-md-2002 (Docket No. 619) (hereinafter, "Kroger Cmplt."); Supervalu, Inc. v. United Egg Producers, Inc., No. 08-md-2002 (Docket No. 620) (hereinafter, "Supervalu Cmplt."); Publix Super Markets, Inc. v. United Egg Producers, Inc., No. 08-md-2002 (Docket No. 621) (hereinafter, "Publix Cmplt."); Winn-Dixie Stores, Inc. v. Michael Foods, Inc., No. 08-md-2002 (Docket No. 622) (hereinafter, "Winn-Dixie Cmplt."); Giant Eagle, Inc. v. United Egg Producers, Inc., No. 08-md-2002 (Docket No. 623) (hereinafter, "Giant Eagle Cmplt."); and Kraft Foods Global, Inc. v. United Egg Producers, Inc., No. 08-md-2002 (Docket No. 624) (hereinafter, "Kraft Cmplt.").

1

## II. Discussion

### A. *Statute of Limitations*[2]

The Plaintiffs' antitrust claim is subject to the Clayton Act's four-year statute of limitations. *See* 15 U.S.C. § 15b. Under that Act, damages for antitrust claims are recoverable if the suit "commenced within four years after the cause of action accrued." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971) (quoting 15 U.S.C. § 15b). In the case of a continuing price-fixing conspiracy "that brings about a series of unlawfully high priced sales over a period of years, each overt act that is part of the violation and that injures the plaintiff, *e.g.*, each sale to the plaintiff, starts the statutory period running again, regardless of the plaintiff's knowledge of the alleged illegality at much earlier times." *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997) (citations omitted) (internal quotation marks omitted).

Plaintiffs seek damages for alleged injuries beginning in 2000 and continuing to the present. *See, e.g.*, Kroger Cmplt. ¶ 211 ("Beginning at least as early as 2000 and continuing through the present . . . Defendants and their co-conspirators engaged in a continuing agreement, understanding and conspiracy to reduce the output of eggs in order to increase the price of eggs in unreasonable restraint of trade and commerce in *per se* violation of Section 1 of the Sherman Act[.]").[3] In response, the Defendants move to dismiss all damages that accrued four years prior to the dates on which the Plaintiffs filed their complaints.

---

[2] For a more thorough discussion of the legal standards relating to statutes of limitations and fraudulent concealment, the parties may refer to the Court's opinion regarding the motion to dismiss the Direct Purchaser Plaintiffs' complaint on statute of limitations grounds. *See In re Processed Egg Prods. Antitrust Litig.*, MDL No. 2002, 2011 WL 5980001 (E.D. Pa. Nov. 30, 2011).

[3] The Winn-Dixie and Kraft Plaintiffs allege that the conspiracy began in 1999 rather than 2000. *See* Winn-Dixie Cmplt. ¶ 501; Kraft Cmplt. ¶ 194.

2

A statute of limitations defense is generally ill-suited for a Rule 12(b)(6) motion. However, the Third Circuit Court of Appeals has recognized that "an exception is made where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994) (citations omitted). Here, the Defendants argue that the operative statute of limitations bars damages before 2006 or 2007, while the Plaintiffs contend that, irrespective of their allegations of fraudulent concealment, they may toll the statute of limitations so that their claims can reach back to September 24, 2004. However, regardless of which of these positions the Court adopts, all six complaints allege that egg prices increased, and the Plaintiffs' damages thus began to accrue, prior to 2004. *See, e.g.*, Kroger Cmplt. ¶¶ 132-33. Based upon these allegations and the operative four-year statute of limitations, the Court may adjudicate the Defendants' statute of limitations defense through a Rule 12(b)(6) motion. *See Processed Egg Prods.*, 2011 WL 5980001, at *1-2.

## B. Fraudulent Concealment Doctrine

In opposing the motion to dismiss, the Plaintiffs rely on the fraudulent concealment doctrine, which stops the statute of limitations from running when the accrual date of a claim has passed but the "plaintiff's cause of action has been obscured by the defendant's conduct." *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 160 (3d Cir. 2002). If a plaintiff pleads facts that satisfactorily demonstrate fraudulent concealment, the plaintiff may pursue antitrust claims for recovery of damages during the tolled period. *See Zenith*, 401 U.S. at 338 (recognizing that antitrust damages are recoverable outside the four-year statute of limitations for "any additional number of years during which the statute of limitations was tolled").

3

To invoke equitable tolling through fraudulent concealment at the pleading stage, a plaintiff must allege particularized facts sufficient to suggest "(1) that the defendant actively misled the plaintiff; (2) which prevented the plaintiff from recognizing the validity of her claim within the limitations period; and (3) where the plaintiff's ignorance is not attributable to her lack of reasonable due diligence in attempting to uncover the relevant facts." *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 509 (3d Cir. 2006) (citing *Mathews v. Kidder, Peabody & Co.*, 260 F.3d 239, 256 (3d Cir. 2001)). The Court previously noted that the first part of this test "is subject to considerable differences in treatment among the circuits and even among courts within the Third Circuit in civil antitrust suits," *Processed Egg Prods.*, 2011 WL 5980001, at *3, but that it generally "embodies the concept that 'if the defendant conceals *any* element of the offense, including, but not limited to, the injury itself, the four-year period will be tolled.'" *Id.* (quoting *Mathews*, 260 F.3d at 256 n.26 (emphasis in original)).

The second aspect of the fraudulent concealment test requires a plaintiff to "show that he actually was 'misled . . . into thinking that he did not have a cause of action[.]'" *Forbes v. Eagleson*, 228 F.3d 471, 487 (3d Cir. 2000) (quoting *Davis v. Grusemeyer*, 996 F.2d 617, 624 (3d Cir. 1993)). Plaintiffs must therefore allege facts sufficient to demonstrate that they "were not aware, nor should they have been aware, of the facts supporting their claim until a time within the limitations period measured backwards from when the plaintiffs filed their complaint." *Forbes*, 228 F.3d at 487.

As for the third element of the test, the Court notes that "the exercise of due diligence must be shown in the antitrust context." *See In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144, 1179 (3d Cir. 1993). Accordingly, this element serves to ensure "that [plaintiff's] continuing ignorance was not attributable to lack of diligence on his part," *Davis*, 996 F.2d at

624 n.13 (citation omitted) (bracket in original), and a plaintiff must plead that she took "reasonable measures to uncover the existence of injury." *Forbes*, 228 F.3d at 486 (quoting *Oshiver*, 38 F.3d at 1390).[4]

## C. Pleading Standards

The Defendants have moved to dismiss the Plaintiffs' claim of fraudulent concealment under Federal Rule of Civil Procedure 12(b)(6), a standard which the Court has set forth numerous times in this litigation and with which the parties here are already familiar. The Defendants also move to dismiss under Federal Rule of Civil Procedure 9(b), which requires complaints to "state with particularity the circumstances constituting fraud or mistake."

A plaintiff must comply with Rule 9(b) in pleading that a defendant fraudulently concealed a cause of action. *See Byrnes v. DeBolt Transfer, Inc.*, 741 F.2d 620, 626 (3d Cir. 1984) ("We agree, of course, that fraud, and thus fraudulent concealment, must be pleaded with particularity."). To satisfy the pleading requirements of Rule 9(b), a complaint may either describe "the circumstances of the alleged fraud with precise allegations of date, time, or place" or may use "some [other] means of injecting precision and some measure of substantiation into . . . allegations of fraud." *Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 172 n.10 (3d Cir. 2002) (citation omitted) (internal quotations omitted). At the very least, "[p]laintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation." *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004),

---

[4] As the Court has previously noted, this due diligence element is closely connected to the second element of fraudulent concealment. This interrelationship is illustrated in *Lower Lake Erie*, in which the court of appeals held that a claim for fraudulent concealment was unavailing in an antitrust case when plaintiffs failed to show any facts as to their diligence, and that plaintiffs "*did* know" certain facts about an industry's rate-making that "should reasonably have made them aware of a basis for asserting the very claims now being raised." 998 F.2d at 1179 (emphasis added).

5

*abrogation on other grounds recognized by In re Insurance Brokerage Antitrust Litig.*, 618 F.3d 300, 323 n.22 (3d Cir. 2010).

While the purpose of Rule 9(b) is to provide notice of precise misconduct, courts "should . . . apply the rule with some flexibility and should not require plaintiffs to plead issues that may have been concealed by the defendants." *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 658 (3d Cir. 1998), *abrogation on other grounds recognized by Forbes*, 228 F.3d at 483-84. Accordingly, the particularity rule is relaxed when factual information remains within the defendant's control. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997). "Relaxation," however, does not translate into, or otherwise authorize, boilerplate and conclusory allegations, and plaintiffs "must accompany their legal theory with factual allegations that make their theoretically viable claim plausible." *Id.* Moreover, Rule 8 of the Federal Rules of Civil Procedure continues to apply even when under Rule 9(b) "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *see also Processed Egg Prods.*, 2011 WL 5980001, at *5.

## D. Fraudulent Concealment as Alleged in the Kroger, Supervalu, and Publix Complaints[5]

The Court has previously held that, in pleading fraudulent concealment, plaintiffs must "plausibly suggest[] that they did not have knowledge or did not possess any information about the conspiracy that would have given rise to inquiry notice." *Id.* at *11. The Kroger, Supervalu, and Publix Plaintiffs do plead that they "did not have knowledge of Defendants' antitrust violations, or any facts that might have led Plaintiffs (or a reasonable purchaser in Plaintiffs' position) to discover[] Defendants' antitrust violations." *See, e.g.*, Kroger Cmplt. ¶ 117. However, the Court has established that a bare allegation that, "due to the nature of Defendants'

---

[5] Although not identical, these complaints are very similar, and the Court thus analyzes them together in this Memorandum.

6

concealing acts, [Plaintiffs] had no knowledge of the alleged conspiracy or of any facts or information which would have caused a reasonably diligent person to investigate whether a conspiracy existed, is essentially conclusory" and therefore insufficient. *Processed Egg Prods.*, 2011 WL 5980001, at *11 (internal quotation marks omitted); *see also id.* ("[If such an allegation were sufficient,] then every pleader for fraudulent concealment would seek a blissful safe harbor in a general allegation of ignorance.").

Moreover, the very allegations in the Kroger, Supervalu, and Publix Complaints "undercut[] the Plaintiffs' general claim that there were not any facts or information that might have alerted a reasonable person to investigate" the Defendants' actions. *Id.* at *12. For instance, these plaintiffs all allege that the Defendants "consistently made false statements about egg price increases to attribute higher egg prices to free-market conditions such as ordinary economic cycles and/or the rising cost of feed for chickens[.]" *See, e.g.*, Kroger Cmplt. ¶ 112. Read in the context of the complaint, such statements "amount to what are essentially suspiciously specific anticipatory denials of wrongdoing," and therefore gave the Kroger, Supervalu, and Publix Plaintiffs inquiry notice of the Defendants' alleged conspiracy. *Processed Egg Prods.*, 2011 WL 5980001, at *12. Additionally, the Defendants allegedly misled these plaintiffs by falsely stating that their cage size guidelines were implemented for animal welfare purposes. *See, e.g.*, Kroger Cmplt. ¶ 109.

In responding to the Defendants' motion to dismiss, the Kroger, Supervalu, and Publix Plaintiffs argue that the Defendants' alleged misstatements regarding cage size guidelines did not provide them with inquiry notice, because their complaint also alleges that they were predisposed to believe those guidelines were motivated by animal husbandry concerns. However, these plaintiffs make no such argument regarding the Defendants' alleged misstatements about "free

7

market conditions." In fact, the Kroger, Supervalu, and Publix Complaints wholly fail to allege facts which plausibly suggest that these plaintiffs believed the Defendants' claim that "free market conditions" were causing egg price increases.[6] The Kroger, Supervalu, and Publix Plaintiffs have thus "failed to plausibly suggest that . . . they had no knowledge of . . . any facts or information which would have caused a reasonably diligent person to investigate whether a conspiracy existed." *Processed Egg Prods.*, 2011 WL 5980001, at *13.

### E. Fraudulent Concealment as Alleged in the Winn-Dixie Complaint

The Winn-Dixie Plaintiffs also fail to sufficiently plead the second element of fraudulent concealment. Like the aforementioned complaints, the Winn-Dixie Complaint alleges that the Winn-Dixie Plaintiffs "did not have knowledge of Defendants' conspiracy" and did not "have notice of information . . . that would have, in the exercise of reasonable diligence . . . led to the discovery of facts constituting [the] Defendants' conspiracy." Winn-Dixie Cmplt. ¶ 491. Standing on its own, such an allegation is too conclusory to satisfactorily plead the second element of fraudulent concealment. *See Processed Egg Prods.*, 2011 WL 5980001, at *11.

Moreover, the Winn-Dixie Complaint joins those filed by Kroger, Supervalu, and Publix in asserting that "Defendants . . . made false statements about egg price increases designed to give the false impression that these price increases were due to factors consistent with competition and outside of Defendants' control." Winn-Dixie Cmplt. ¶ 486; *see id.* ¶ 487 ("Defendants consistently and publicly attributed high egg prices to circumstances that were

---

[6] These complaints do allege that "Plaintiff used [an unspecified] method of purchasing eggs that caused it to believe [for an unspecified reason] . . . it was receiving competitive prices for eggs." *See, e.g.*, Supervalu Cmplt. ¶ 96. Perhaps recognizing that such an allegation is "too vague . . . to survive a motion to dismiss," *Gagliardi v. Lee*, 154 F. App'x 317, 319 (3d Cir. 2005), the Kroger, Supervalu, and Publix Plaintiffs do not even attempt to argue that this allegation plausibly indicates that they believed the Defendants' statements about "free market conditions."

8

consistent with free-market competition[.]"). At the same time, the Winn-Dixie Complaint fails to plausibly suggest that the Winn-Dixie Plaintiffs believed these justifications for egg price increases. Because the Winn-Dixie Plaintiffs essentially allege that the Defendants proffered suspicious excuses for rising egg prices, but then fail to allege that they gave credence to those excuses, they have insufficiently pled that they lacked inquiry notice of their claims.[7] *See Processed Egg Prods.*, 2011 WL 5980001, at *12-13.

### F. Fraudulent Concealment as Alleged in the Giant Eagle Complaint

Like the other direct action plaintiffs, Giant Eagle attempts to plead the second element of fraudulent concealment by stating that it did not know that it was paying an artificially high price for egg products. *See* Giant Eagle Cmplt. ¶ 214. Giant Eagle also alleges that the Defendants repeatedly made false public statements that their cage size guidelines were for animal husbandry purposes. *See id.* ¶¶ 218(e), 219. However, Giant Eagle argues that these statements did not put it on inquiry notice because Defendants Hillandale Farms of Pennsylvania and Weaver Brothers stated as early as 2003 that egg prices were rising because the Defendants' exports and cage size guidelines were inadvertently reducing supply, and Giant Eagle accepted their explanation for rising prices. *See id.* ¶ 217.

As stated above, an allegation that the Defendants publicly misrepresented the purpose of the cage size guidelines actually suggests that a plaintiff *did* possess information that would have caused a reasonable person to investigate a possible conspiracy. Plaintiffs can avoid this inference by concomitantly and plausibly alleging that they believed the Defendants' stated

---

[7] The Court notes that the Winn-Dixie Plaintiffs' contentions are even weaker than those presented by Kroger, Supervalu, and Publix. While the latter group of plaintiffs at least alleged that they believed the Defendants' false statements regarding cage size guidelines, the Winn-Dixie Complaint vaguely states that such false statements were "credible to [unspecified] egg purchasers," but fails to specifically allege that they were credible to the Winn-Dixie Plaintiffs themselves. Winn-Dixie Cmplt. ¶ 482.

9

justification for the cage size guidelines. However, Giant Eagle alleges that it believed the Defendants' justification because they openly admitted that their practices were raising egg prices, but stated that this impact was unintended. Such allegations present a situation in which Giant Eagle "intimate[s] that [it was] not ignorant of facts supporting [its] claim against Defendants, and instead . . . had actual knowledge . . . of such a claim, and [did] not investigate[] it, merely because the supposed bad actors disclaimed bad acts[.]" *Processed Egg Prods.*, 2011 WL 5980001, at \*12. Yet a plaintiff cannot plead that it lacked inquiry notice of its claim by merely alleging that a defendant denied wrongdoing or liability for that claim. *See id.; cf. Eagleson*, 228 F.3d. at 487 ("Although it is true that [defendant] denied wrongdoing, nonetheless, his denials do not allow plaintiffs, who were aware of their potential claims, to allege ignorance."). Therefore, Giant Eagle has failed to plausibly allege that it lacked notice of its claims against the Defendants.[8]

## G. *Fraudulent Concealment as Alleged in the Kraft Complaint*

In responding to the Defendants' motion, the Kraft Plaintiffs have submitted a separate brief regarding the statute of limitations for their claims. *See* Docket No. 665. In this brief, the Kraft Plaintiffs note that their complaint includes a conclusory allegation that they exercised due diligence in investigating their potential claim. *See* Kraft Cmplt. ¶ 198 ("Plaintiffs did not know, and through the exercise of due diligence (which they exercised) could not have known, about the existence of the conspiracy[.]"). However, the complaint fails to allege *any* specific actions that would allow the Court to reasonably infer "that [the Kraft Plaintiffs'] continuing ignorance

---

[8] Giant Eagle also brings a claim under the Ohio Valentine Act. Although the Defendants cursorily argue that Giant Eagle has insufficiently pled fraudulent concealment under Ohio law, they do so in a single footnote, and fail to sufficiently discuss the Ohio standard for fraudulent concealment or how it relates to federal law on fraudulent concealment. *See* Docket No. 638 at 25 n.18. Therefore, the Court will not grant the instant motion to dismiss with respect to Giant Eagle's claim under the Valentine Act.

10

was not attributable to [a] lack of diligence." *Davis*, 996 F.2d at 624 n.13. The Kraft Plaintiffs attempt to justify this absence of allegations by arguing that their complaint indicates that no "storm warnings" about the conspiracy existed, and that plaintiffs need not specifically plead diligence in such a situation. *See* Docket No. 665, at 10-11.

Generally, "a plaintiff who fails to allege any due diligence is virtually foreclosed from invoking the fraudulent concealment doctrine." *Processed Egg Prods.*, 2011 WL 5980001, at *13; *see also Davis*, 996 F.2d at 624 n.13 (finding that the plaintiff's pleading of fraudulent concealment was deficient in one respect because "[the p]laintiff . . . failed to plead facts showing that he exercised due diligence . . . *as he was required to do*") (emphasis added) (citation omitted). However, "under certain circumstances a failure to allege any diligence may not necessarily completely bar use of the fraudulent concealment doctrine." *Processed Egg Prods.*, 2011 WL 5980001, at *14. Specifically, if a complaint includes no allegations which potentially indicate that the plaintiff should have known about an alleged conspiracy, then it may not have to include allegations that the plaintiff investigated the conspiracy. *See Mathews*, 260 F.3d at 255 ("[T]o determine what constitutes 'reasonable' due diligence, we must consider the magnitude of the existing storm warnings. The more ominous the warnings, the more extensive the expected inquiry."). At the same time, the Third Circuit Court of Appeals "has suggested that, so long as some storm warnings might exist, an argument that diligence is not required is unavailing when considered in light of the motivations of a statute that authorizes civil enforcement of prohibited practices." *Processed Egg Prods.*, 2011 WL 5980001, at *14 n.23 (citing *Mathews*, 260 F.3d at 252 & n.16).[9]

---

[9] Antitrust statutes, like racketeering statute at issue in *Mathews*, "seek not only to compensate victims but also to encourage those victims themselves . . . to investigate and thereby to uncover unlawful activity." *Klehr*, 521 U.S. at 195.

Here, the Kraft Plaintiffs allege that they knew of the Defendants' cage-size program, and that "Defendants' representations that they adopted this program based on animal welfare concerns were false and pretextual." Kraft Cmplt. ¶ 203. The Court previously held that such allegations undercut the direct purchaser plaintiffs' argument that they lacked notice of their potential claims. *Processed Egg Prods.*, 2011 WL 5980001, at *12. However, unlike the direct purchaser plaintiffs, the Kraft Plaintiffs allege that their own concern for animal welfare relaxed their inquiry regarding the Defendants' cage-size guidelines. *See* Kraft Cmplt. ¶ 205. Given their alleged concern for animal welfare, the Kraft Plaintiffs were in fact privy to a lesser "storm warning" than some of the other egg purchasers in this litigation. Nonetheless, the Kraft Plaintiffs clearly allege that they knew the Defendants were cooperating to increase cage sizes. Based on this knowledge, the Kraft Plaintiffs should have undertaken *some* sort of inquiry – even if only a nominal one – regarding the Defendants' concerted activity. Yet the Kraft Plaintiffs fail to specifically plead that they exercised *any* diligence whatsoever, and have therefore insufficiently pled the third element of the fraudulent concealment doctrine. *See Commonwealth of Pa. v. Lake Asphalt & Petroleum Co. of Pa.*, 610 F. Supp. 885, 890 (M.D. Pa. 1985) (holding that the plaintiff failed to adequately plead due diligence because it did not allege "what [it] did itself to uncover its claim").

## *H. Class Action Tolling*

In their motion to dismiss, the Defendants also argue that the Plaintiffs cannot claim tolling based on the filing of the first direct purchaser class action complaint consolidated in these proceedings, because the Plaintiffs filed independent actions before this Court reached a decision on class certification. Although the Plaintiffs contest this argument, they agree with the Defendants that the Third Circuit Court of Appeals has not addressed the permissibility of such

class action tolling. Therefore, the Court will look to the decisions of other circuits in deciding the instant matter.

The Second Circuit Court of Appeals has held that a plaintiff may rely on the filing of a class action complaint for tolling purposes even if that plaintiff opts out of the putative class before certification. *See In re Worldcom Sec. Litig.*, 496 F.3d 245, 256 (2d Cir. 2007). The court noted that, in a series of cases beginning with *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), the Supreme Court established that the filing of a class suit tolled the statute of limitations for putative class members who sought to intervene after a class certification motion was denied on numerosity grounds, class members who opt out of a class action after certification is granted, and putative class members who file separate suits after certification is denied. *See Worldcom*, 496 F.3d at 252-54. The *Worldcom* court relied on this line of cases in holding that "the tolling required by *American Pipe* . . . applies also to class members who file individual suits before class certification is resolved." *Id.* at 254. The court found that "the Supreme Court has repeatedly stated that the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Id.* at 255 (internal quotations omitted). Moreover, the court reasoned that "[i]t would not undermine the purposes of statutes of limitations to give the benefit of tolling" to putative class members who opt out before certification, because "the initiation of a class action puts the defendants on notice of the claims against them." *Id.*

The Ninth and Tenth Circuit Courts of Appeals have followed *Worldcom* and held that *American Pipe* tolling applies to putative class members who file independent actions before class certification is resolved. *See State Farm Mut. Auto. Ins. Co. v. Boellstorff*, 540 F.3d 1223,

13

1235 (10th Cir. 2008); *In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1009 (9th Cir. 2008). However, the Sixth Circuit Court of Appeals bars plaintiffs from relying on such class action tolling. *See Wyser-Pratte Mgmt. Co. v. Telxon Corp.*, 413 F.3d 553, 568-69 (6th Cir. 2005). The *Wyser-Pratte* court stated that its rule would encourage plaintiffs to delay opting out until after a court's certification decision, and thus reduce the judicial burden created by a multiplicity of opt-out actions. *See id.* at 569; *see also Glater v. Eli Lilly & Co.*, 712 F.2d 735, 739 (1st Cir. 1983).

After carefully reviewing the divergent circuit court opinions on this issue, the Court will apply the analysis of the Second, Ninth, and Tenth Circuit Courts of Appeals and hold that the Plaintiffs may claim the benefit of class action tolling. As *Worldcom* noted, such a decision comports with both *American Pipe* and the underlying purpose of statutes of limitations. *See* 496 F.3d at 254-55. Moreover, assuming *arguendo* that the Sixth Circuit's contrary rule would reduce the number of opt-out actions filed before certification, the Court finds that such a "reduction in the number of suits . . . was not the purpose of *American Pipe*[.]" *Id.* at 256.[10] Therefore, the Court holds that the statute of limitations only bars claims for damages occurring prior to September 24, 2004, the date four years before the filing of the first direct purchaser suit consolidated in these proceedings.

## III. Conclusion

For the foregoing reasons, the Court finds that the Plaintiffs have failed to sufficiently allege that the fraudulent concealment doctrine should toll the statute of limitations as to their federal law claims. However, the Plaintiffs may rely on class action tolling to recover damages

---

[10] The Court also finds persuasive the well-reasoned decision in *McDavitt v. Powell*, No. 09-0286, 2012 U.S. Dist. LEXIS 39323 (M.D. Pa. Mar. 21, 2012), which also followed *Worldcom* with respect to this issue. *See id.* at *24-28.

14

accruing on or after September 24, 2004. Finally, the Plaintiffs may seek the Court's leave to amend their complaints as to fraudulent concealment if they have a good faith belief that such a claim may be advanced, provided that they do so in a timely manner.

An Order consistent with this Memorandum follows.

BY THE COURT:

GENE E.K. PRATTER
United States District Judge