IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: PROCESSED EGG PRODUCTS
ANTITRUST LITIGATION

MDL No. 2002
08-md-02002

THIS DOCUMENT APPLIES TO:
ALL INDIRECT PURCHASER
PLAINTIFF ACTIONS

MEMORANDUM

GENE E.K. PRATTER, J.                                       MARCH 19, 2013

I. Introduction

This multidistrict litigation involves allegations that defendant egg producers and trade groups conspired to restrict the supply of eggs in this country. After the Defendants successfully moved to partially dismiss the Second Amended Complaint to the extent the claims for damages fell outside the applicable statutes of limitations, the Indirect Purchaser Plaintiffs filed Third and Fourth Amended Consolidated Class Action Complaints. Predictably, the Defendants now seek to partially dismiss the Plaintiffs' Fourth Amended Complaint (hereinafter, the "IPFAC"). Specifically, the Defendants move to partially dismiss 41 state claims invoking the laws of 21 different jurisdictions.[1]  For the following reasons, the Court grants the motion with prejudice.

---

[1] Certain counts in the IPFAC are not subject to this motion. The Defendants have not moved to dismiss as time-barred the Sherman Act claim or the West Virginia unjust enrichment claim, and the parties agree that the Plaintiffs may not seek damages arising before May 1, 2006 under Utah's antitrust statute.

1

## II. Background, Factual Allegations, and Legal Standards

The background of this litigation and the core factual allegations contained in the IPFAC were set forth at length in *In re Processed Egg Products Antitrust Litigation*, 851 F. Supp. 2d 867 (E.D. Pa. 2012), an opinion that also discussed the applicable legal standards for reviewing a motion to dismiss in this case, including the relevance of the *Erie* doctrine's precepts to the Court's consideration of the Plaintiffs' state law claims, as well as Federal Rules of Civil Procedure 8, 9(b), and 12(b)(6). Accordingly, the Court will not repeat that legal framework in this Memorandum except to incorporate its prior opinion by reference here.

## III. Legal Discussion

In their briefing, the Defendants summarize the relevant limitations periods governing the 41 state claims. The Plaintiffs do not dispute the Defendants' representations as to the lengths of the various statutes of limitations. Moreover, the Plaintiffs do not contest the Defendants' argument that these statutes of limitations partially bar their claims for damages absent some sort of equitable tolling. Instead, the Plaintiffs argue that they sufficiently allege facts that permit them to rely on two doctrines. First, the Plaintiffs contend that they have pled facts which plausibly suggest that the discovery rules of 16 states should toll their claims arising under the laws those jurisdictions.[2] Second, the Plaintiffs argue that they may rely on the fraudulent concealment doctrines of 17 states.[3] The Court considers each of these doctrines in turn.

---

[2] The Plaintiffs claim that they may rely on the discovery rules of Arizona, California, the District of Columbia, Iowa, Massachusetts, Mississippi, Nebraska, Nevada, New Mexico, North Carolina, North Dakota, South Dakota, Tennessee, Vermont, West Virginia, and Wisconsin. *See* Docket No. 750 at 47.

[3] These states are Arizona, California, the District of Columbia, Florida, Kansas, Massachusetts, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Mexico, New York, South Dakota, Tennessee, Vermont, and West Virginia. *See* Docket No. 750 at 47-48. Although

2

## A. *The Discovery Rule*

The Court will first discuss whether the IPFAC pleads sufficient facts to permit the Plaintiffs to rely on the 16 discovery rules arguably at issue in this case. As a general matter, the discovery rule "postpones the accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." 51 Am. Jur. 2d *Limitation of Actions* § 158 (2012). Therefore, the rule tends to "operate[] . . . when a plaintiff does not know, or could not through the exercise of reasonable diligence know, of the wrong[.]" *Id.* However, in deciding whether the Plaintiffs adequately plead facts to invoke the discovery rule, the Court must undertake a state-by-state analysis and "'apply the substantive law of the state whose law governs the action.'" *Egg Prods.*, 851 F. Supp. 2d at 878 n.8 (quoting *Spence v. ESAB Grp., Inc.*, 623 F.3d 212, 217 (3d Cir. 2010)). The parties appear to recognize this requirement, given that they devote nearly 150 pages in their briefs to discussing the discovery rules and other equitable tolling doctrines of various states.

While the parties agree that the *Erie* doctrine applies in this matter, they differ as to the pleading standard that the Plaintiffs must satisfy in order to rely on the discovery rule. Specifically, the Plaintiffs contend that Rule 8 of the Federal Rules of Civil Procedure "is applicable to allegations necessary to invoke the relevant states' discovery rules," *see* Docket No. 750 at 29, while the Defendants argue that Rule 9(b) sets forth the appropriate pleading standard, *see* Docket No. 756 at 10. However, the Court need not resolve this dispute because Rule 9(b) is relaxed even if it does apply.

---

the Plaintiffs omit Florida from the list of jurisdictions in which the fraudulent concealment doctrine precludes dismissal of their claims, *see id.* at 47, the Court will treat this omission as unintentional, because the Plaintiffs have not stipulated to the partial dismissal of their claims arising under Florida law.

Under the Federal Rules of Civil Procedure, "Rule 9(b) is relaxed concerning pleading 'conditions of a person's mind.'" *In re Processed Egg Prods. Antitrust Litig.*, No. 08-md-2002, 2011 WL 5980001, at *11 (E.D. Pa. Nov. 30, 2011) (quoting Fed. R. Civ. P. 9(b)). As stated above, the discovery rule generally turns on whether a plaintiff discovered or should have discovered her cause of action. To the extent that the specific discovery rules discussed *infra* reflect this general understanding, they essentially require the Plaintiffs to allege that they "'were not aware, nor should they have been aware, of the facts supporting their claim until a time within the limitations period measured backwards from when the plaintiffs filed their complaint.'" *Id.* at *3 (quoting *Forbes v. Eagleson*, 228 F.3d 471, 487 (3d Cir. 2000)). The Court has previously applied a relaxed Rule 9(b) standard to determine the sufficiency of such allegations, *see id.* at *11, and finds that a relaxed standard should apply here as well. However, the strictures of Rule 8 still apply to the IPFAC, and its factual allegations must be such as to allow the Court to reasonably infer that the Plaintiffs may rely on the discovery rules they cite.

### 1. Arizona

The Arizona discovery rule establishes that "a plaintiff's cause of action does not accrue *until* the plaintiff knows or, in the exercise of reasonable diligence, should know the facts underlying the [claim.]" *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.*, 898 P.2d 964, 966 (Ariz. 1995) (emphasis added); *see also Elm Ret. Ctr., LP v. Callaway*, 246 P.3d 938, 941 (Ariz. Ct. App. 2010) ("The discovery rule tolls limitations *until* the plaintiff possesses a minimum knowledge sufficient to recognize that a wrong occurred and caused injury.") (citations and quotations omitted) (emphasis added). Put differently – and in the Plaintiffs' own words – the discovery rule only tolls the statute of limitations until "a plaintiff knows, or in the

4

exercise of reasonable diligence should have known, of the defendants' wrongdoing." *See* Docket No. 750 at 49.

The critical word in the foregoing sentences is "until." The discovery rule is not a tool that plaintiffs may employ at-will to evade the statute of limitations. Instead, it is a doctrine with a limited reach, and its tolling benefit ends once a plaintiff discovers her injury. Therefore, a plaintiff cannot plausibly suggest that the discovery rule applies to her claim unless she alleges the date on which she learned of her injury. A complaint that lacks such an allegation offers mere speculation as to the applicability of the discovery rule, and fails to suggest plausibly that the benefit of the rule extends to the plaintiff. *See Zavala v. Wal-Mart Stores, Inc.*, 691 F.3d 527, 542 (3d Cir. 2012) ("Even on a motion to dismiss, we are not required to credit mere speculation."); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (a complaint must include factual allegations that "raise a right to relief above the speculative level").

The necessity of alleging a specific tolling date should not surprise the Plaintiffs, as the Court extensively addressed this issue some 14 months ago in partially dismissing the direct purchaser plaintiffs' complaint. *See Egg Prods.*, 2011 WL 5980001, at *8-11.[4] In its prior opinion, the Court noted that tolling under the fraudulent concealment doctrine, like Arizona's discovery rule, "lasts only '*until* the plaintiff knows, or should reasonably be expected to know, in the exercise of due diligence, the concealed facts supporting the cause of action.'" *Id.* at *9 (emphasis in original) (quoting *Forbes*, 228 F.3d at 487). The Court then held that the direct purchaser plaintiffs failed to allege a specific tolling date, and that they thus "failed to plausibly suggest, much less actually plead, that they did not know or could not have reasonably known, in

---

[4] Notably, the Court has twice granted the Plaintiffs leave to amend their complaint since issuing its 2011 opinion.

the exercise of due diligence, of the facts supporting their claim" until a time within the limitations period. *Id.* at *11.

Additionally, other courts have required a plaintiff to allege a tolling date in order to rely on the discovery rule. In *Fox v. Ethicon Endo-Surgery, Inc.*, 110 P.3d 914 (Cal. 2005), the California Supreme Court held that "[i]n order to rely on the discovery rule for delayed accrual of a cause of action, a plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show . . . the time and manner of discovery" of his injury. *Id.* at 920-21 (citations and quotations omitted). Although California did not establish this pleading requirement under a federal Rule 8 analysis, its "time and manner of discovery" rule supports the view that a plaintiff must allege a specific tolling date in order to plausibly suggest that she did not learn of her claims until a time within the limitations period. *See Training Inst., Inc. v. City of Chicago*, 937 F. Supp. 743, 750-51 (N.D. Ill. 1996) (holding that a plaintiff who attempts to rely on the discovery rule must plead the date she discovered her injury); *Stewart Coach Indus., Inc. v. Moore*, 512 F. Supp. 879, 886 (S.D. Ohio 1981) ("[T]he plaintiff who seeks to rely on the 'discovery rule' [must] affirmatively and particularly plead the date of discovery . . . or face dismissal of the complaint."); *Powell v. Cooper*, 603 N.W.2d 748, 1999 Wisc. App. LEXIS 794, at *1, 28 (Wis. Ct. App. 1999) (holding that a plaintiff could not rely on the discovery rule when her complaint failed to "identify when she discovered her emotional injury"), *rev'd in part on other grounds*, 622 N.W.2d 265 (Wis. 2001).

In responding to the instant motion, the Plaintiffs make several arguments as to why they may forgo pleading a tolling date. First, the Plaintiffs contend that "the specificity requirements of Rule 9(b) do not apply to state discovery rules." *See* Docket No. 750 at 45. As noted above,

the Court agrees with this view. However, the inapplicability of Rule 9(b) does not exempt the Plaintiffs from pleading facts which plausibly suggest that they may rely on the discovery rule, including facts pertaining to the date or dates when the Plaintiffs learned of their injuries.

Second, the Plaintiffs note that the Court's prior opinion on this issue concerned the pleading of fraudulent concealment under federal law, and that the IPFAC pleads facts which indicate that the Plaintiffs could not discover the conspiracy. *See id.* at 45-46. However, the state tolling doctrines discussed by the parties are similar to fraudulent concealment under federal law in that their functional benefit expires once a plaintiff discovers her claim. Moreover, the Plaintiffs miss the mark by emphasizing that some of the 534 paragraphs in the IPFAC suggest that it was difficult for them to uncover the alleged conspiracy. Assuming *arguendo* that the Plaintiffs undertook a Herculean task to discover their claims, they presumably achieved this feat at some point, as they have now filed suit. The applicability of Arizona's discovery rule hinges not merely on whether it was *difficult* for the Plaintiffs to learn of the facts underlying their causes of action, but also on *when* the Plaintiffs learned of those facts. In the absence of a tolling date, the IPFAC fails to suggest plausibly that such discovery did not occur until a time within the limitations period.

Finally, the Plaintiffs argue that "to the extent a 'tolling date' is required, the earliest reasonable date is September 21, 2006 – a fact plead [*sic*] with specificity" in the IPFAC. *Id.* at 46. Yet, instead of rescuing the Plaintiffs' attempt to rely on the discovery rule, this argument merely illustrates the inadequacy of the allegations. While the IPFAC alleges that a group of states attorneys general issued press releases on September 21, 2006 that described the UEP's claims about its certification program as "misleading," *see* Docket No. 794 at ¶ 318 nn.21-22, the IPFAC does not allege that any of the Plaintiffs read or otherwise learned about these press

releases. In fact, the IPFAC fails to suggest even remotely that the Plaintiffs learned of their claims due to these press releases.[5] Even after accepting all the allegations in the IPFAC as true and drawing all reasonable inferences from those allegations in favor of the Plaintiffs, the Court must find that the IPFAC does not allege a specific tolling date, and that it fails to suggest plausibly that the Plaintiffs are entitled to tolling until a time within Arizona's limitations period.

### 2. Remaining States

The Plaintiffs also attempt to rely on the discovery rules of 15 other jurisdictions. However, like Arizona, each of these jurisdictions has adopted a discovery rule that only tolls the statute of limitations *until* a certain time. *See Fox*, 110 P.3d at 920 ("The discovery rule only delays accrual *until* the plaintiff has, or should have, inquiry notice of the cause of action."); *Doe v. Medlantic Health Care Grp., Inc.*, 814 A.2d 939, 945 (D.C. 2003) (holding that under "the discovery rule . . . the statute of limitations will not run *until* plaintiffs know or reasonably should have known that they suffered injury due to the defendants' wrongdoing"); *Speight v. Walters Dev. Co.*, 744 N.W.2d 108, 116 (Iowa 2008) ("Under the discovery rule, a cause of action does not accrue *until* the injured party has actual or imputed knowledge of the facts that would support a cause of action."); *Pastos v. First Albany Corp.*, 741 N.E.2d 841, 846 (Mass. 2001) ("The [discovery] rule . . . operates to toll a limitations period *until* a prospective plaintiff learns or should have learned that he has been injured[.]"); *Phillips 66 Co. v. Lofton*, 94 So. 3d 1051, 1059 (Miss. 2012) ("'In actions . . . which involve latent injury . . . the cause of action does

---

[5] Under the Plaintiffs' logic, December 11, 2003 also should constitute a tolling date, because a *Buffalo News* article published that day allegedly included an admission by UEP member Scott Kreher that the UEP's certification program was increasing egg prices, an admission that placed the Plaintiffs on notice of their claims just as much as (if not more than) the September 21, 2006 press releases. *See* Docket No. 794 at ¶ 197. In reality, neither of these days suffices as a tolling date, because the IPFAC does not suggest that the Plaintiffs learned of their claims through either the article or the press releases. Given the allegations of the IPFAC, the date on which the Plaintiffs discovered their claims remains a mystery.

not accrue *until* the plaintiff has discovered, or by reasonable diligence should have discovered, the injury.'") (quoting Miss. Code Ann. § 15-1-49(2)); *Mandolfo v. Mandolfo*, 796 N.W.2d 603, 610 (Neb. 2011) ("When the discovery rule applies, the statute of limitations does not begin running *until* the plaintiff discovers, or reasonably should have discovered, the injury."); *Siragusa v. Brown*, 971 P.2d 801, 806 (Nev. 1998) ("Under the discovery rule, the statutory period of limitations is tolled *until* the injured party discovers or reasonably should have discovered facts supporting a cause of action."); *Butler v. Deutsche Morgan Grenfell, Inc.*, 140 P.3d 532, 538-39 (N.M. Ct. App. 2006) ("[T]he discovery rule dictates that a cause of action does not accrue for purposes of calculating the limitations period *until* the plaintiff discovers, or should have discovered in the exercise of reasonable diligence, the facts that underlie his or her claim."); *Stratton v. Royal Bank of Can.*, 712 S.E.2d 221, 226 (N.C. Ct. App. 2011) ("The discovery rule tolls the statute of limitations *until* the aggrieved party discovers or, through the exercise of reasonable diligence, should discover [her claim]."); *Wells v. First Am. Bank W.*, 598 N.W.2d 834, 838 (N.D. 1999) ("The discovery rule postpones a claim's accrual *until* the plaintiff knew, or with the exercise of reasonable diligence should have known, of the wrongful act and its resulting injury."); *Baye v. Diocese of Rapid City*, 630 F.3d 757, 760 (8th Cir. 2011) (noting that under South Dakota's discovery rule, "a statute of limitations runs from the time a plaintiff discovers facts sufficient to form a cause of action"); *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 621 (Tenn. 2002) ("[T]he discovery rule is an equitable exception that tolls the running of the statute of limitations *until* the plaintiff knows, or in the exercise of reasonable care and diligence, should know that an injury has been sustained."); *Rodrigue v. VALCO Enters.*, 726 A.2d 61, 62 (Vt. 1999) ("[W]e have construed the discovery rule to commence the running of the statute of limitations [once] a plaintiff discovers or reasonably should discover the injury,

its cause, and the existence of a cause of action.") (citations and quotations omitted); *Gaither v. City Hosp., Inc.*, 487 S.E.2d 901, 909 (W. Va. 1997) ("[T]he discovery rule . . . tolls the statute of limitations *until* a plaintiff, acting as a reasonable, diligent person, discovers the essential elements of a possible cause of action[.]"); Wis. Stat. § 133.18(4) ("A cause of action arising under this chapter does not accrue *until* the discovery, by the aggrieved person, of the facts constituting the cause of action.") (all emphases supplied). Having failed to allege a tolling date, the IPFAC does not plausibly suggest the applicability of any of the foregoing discovery rules.[6]

### B. Fraudulent Concealment

In addition to the discovery rule, the Plaintiffs seek to rely on the fraudulent concealment doctrines of 17 jurisdictions. The Court has previously held that "in pleading fraudulent concealment[,] the Plaintiffs must meet the requirements of Rule 9(b)." *In re Processed Egg Prods. Antitrust Litig.*, No. 08-md-2002, 2012 U.S. Dist. LEXIS 48321, at *23 n.8 (E.D. Pa. Apr. 4, 2012); *see also* Docket No. 750 at 31 (admitting that the Plaintiffs must plead fraudulent concealment in accordance with Rule 9(b)). Moreover, as noted above, when the tolling benefit of fraudulent concealment "lasts only *until* the plaintiff knows, or should reasonably be expected to know" of her cause of action, *see Egg Prods.*, 2011 WL 5980001, at *9 (emphasis in original) (internal quotations omitted), the plaintiff must typically plead a specific tolling date, *see id.* at *11.

The importance of alleging a tolling date in pleading fraudulent concealment was discussed by the Eighth Circuit Court of Appeals in *Summerhill v. Terminix, Inc.*, 637 F.3d 877 (8th Cir. 2011). Both the Third and Eighth Circuit Courts of Appeals have established that

---

[6] Because of the deficiencies of the IPFAC, the Court need not address the Defendants' argument that the discovery rule cannot apply to the Plaintiffs' California and South Dakota claims.

plaintiffs must plead fraudulent concealment with particularity. *Compare Byrnes v. DeBolt Transfer, Inc.*, 741 F.2d 620, 626 (3d Cir. 1984) ("We agree of course that fraud, and thus fraudulent concealment, must be pleaded with particularity."), *with Summerhill*, 637 F.3d at 880 ("[A]llegations of fraud, including fraudulent concealment for tolling purposes, must be pleaded with particularity.") (citations and quotations omitted). In *Summerhill*, the district court noted this requirement and dismissed a putative class action complaint that the plaintiff filed after the statute of limitations had run. *Id.* at 879. Affirming the dismissal, the Eighth Circuit Court of Appeals held that:

> Assuming *arguendo* that [the plaintiff] sufficiently pled that [the defendant] engaged in affirmative and fraudulent acts of concealment, the applicable statutes of limitations would only be tolled *until [the plaintiff] discovered the fraud* or should have discovered it by the exercise of reasonable diligence. By failing to allege when and how he discovered [the defendant's] alleged fraud, [the plaintiff] has failed to meet his burden of sufficiently pleading that the doctrine of fraudulent concealment saves his otherwise time-barred claims.

*Id.* at 881 (emphasis in original) (citations and quotations omitted). Several other courts also require plaintiffs to allege a tolling date when the benefit of the fraudulent concealment doctrine ends on the date of discovery. *See Training Inst.*, 937 F. Supp. at 751-52 (holding that a complaint does not adequately plead fraudulent concealment when it "fails to plead the date of discovery"); *Bergen v. Rothschild*, 648 F. Supp. 582, 587 (D.D.C. 1986) ("In general, courts read Rule 9(b) as requiring the fraudulent concealment plaintiff to plead . . . the dates and circumstances of the eventual discovery of the underlying fraud.") (citations and quotations omitted); *Gruener v. City of Cedar Falls*, 189 N.W.2d 577, 580-81 (Iowa 1971) (holding that a plaintiff cannot rely on the fraudulent concealment doctrine without stating when she discovered her claim); *see also* 51 Am. Jur. 2d *Limitation of Actions* § 163 (2012) ("One may not avoid the

effect of the statute of limitations on the ground of fraudulent concealment if he or she fails to plead or offer evidence as to when he or she discovered the alleged fraud.").

Here, every fraudulent concealment rule cited by the Plaintiffs only tolls the statute of limitations *until* the date of discovery. *See, e.g., Anson v. Am. Motors Corp.*, 747 P.2d 581, 589 (Ariz. Ct. App. 1987) (holding that fraudulent concealment "tolls the applicable statute of limitations *until* the plaintiff discovers or was put on reasonable notice of [her claim]"); *Bernson v. Browning-Ferris Indus. of Cal., Inc.*, 873 P.2d 613, 615 (Cal. 1994) (holding that fraudulent concealment "tolls the applicable statute of limitations, but only for that period during which the claim is undiscovered by plaintiff or until such time as plaintiff, by the exercise of reasonable diligence, should have discovered it"); *William J. Davis, Inc. v. Young*, 412 A.2d 1187, 1191 (D.C. 1980) ("The statute will not commence to run [under the fraudulent concealment doctrine] *until* the plaintiff discovers or has a reasonable opportunity to discover the wrong."); *S.A.P. v. State*, 704 So. 2d 583, 585 (Fla. Dist. Ct. App. 1997) ("As a general rule, fraudulent concealment constitutes an implied exception to the statute of limitations, postponing commencement of the running of the statute *until* discovery or reasonable opportunity of discovery of the concealment . . . of the cause of action."); *Bonin v. Vannaman*, 929 P.2d 754, 762 (Kan. 1996) ("Under the doctrine of fraudulent concealment, the statute of limitations . . . does not start to run *until* the plaintiff discovers the fraud[.]");[7] *Doe v. Roman Catholic Archbishop of the Archdiocese of Detroit*, 692 N.W.2d 398, 405 (Mich. Ct. App. 2004) (holding that "there can be no fraudulent concealment" once there is "a known cause of action") (citations and quotations omitted); *Buller v. A.O. Smith Harvestore Prods., Inc.*, 518 N.W.2d 537, 542 (Minn. 1994) ("Fraudulent

---

[7] Because the IPFAC fails to adequately plead fraudulent concealment, the Court will not address whether Kansas law extends the fraudulent concealment doctrine to the Plaintiffs' claims.

concealment tolls the statute of limitations *until* the party discovers, or has a reasonable opportunity to discover, the concealed defect.") (citations and quotations omitted); *Doe v. Roman Catholic Diocese of Jackson*, 947 So. 2d 983, 986-87 (Miss. Ct. App. 2006) ("Fraudulent concealment tolls the limitations period *until* the claim is discovered or should have been discovered."); *Hardin v. Farris*, 530 P.2d 407, 410 (N.M. Ct. App. 1974) (holding that fraudulent concealment tolls the statute of limitations "*until* the right of action is discovered, or, by the exercise of ordinary diligence, could have been discovered"); *Kytel Int'l Grp., Inc. v. Total-Tel Carrier Servs., Inc.*, 47 A.D.3d 448, 451-52 (N.Y. App. Div. 2008) (holding that under the fraudulent concealment doctrine, "time does not begin to run *until* [a] plaintiff discovers, or by reasonable diligence could have discovered, the basis of the lawsuit") (citations and quotations omitted); *Lloyd One Star v. Sisters of St. Francis*, 752 N.W.2d 668, 681 (S.D. 2008) ("When applicable, [fraudulent concealment] tolls the statute of limitations *until* the cause of action is discovered or might have been discovered by the exercise of diligence."); *Eldrige v. Savage*, No. M2012-00973, 2012 Tenn. App. LEXIS 919, at *15 (Tenn. Ct. App. Dec. 28, 2012) ("The statute of limitations is tolled *until* the plaintiff discovers or, in the exercise of reasonable diligence, should have discovered the defendant's fraudulent concealment[.]") (citations and quotations omitted). Therefore, given the IPFAC's failure to allege a tolling date or otherwise plead facts which plausibly suggest when the Plaintiffs discovered their claims, the Court must dismiss the portions of those claims that fall outside the applicable statutes of limitations.

### C. Minnesota

The Plaintiffs' Minnesota antitrust claim presents the Court with a somewhat more challenging task, as is often the case where the legal landscape has not been addressed by the most closely concerned judiciary. Under Minnesota's antitrust statute, "a cause of action for a

continuing violation is deemed to arise at any time during the period of the violation." Minn. Stat. § 325D.64(1). The parties agree that Minnesota courts have not interpreted this "continuing violation" language, but they differ as to whether the statute of limitations constricts the Plaintiffs' claims in light of such language. The two sides claim to have located guidance from other states' courts evaluating similar statutes. The Defendants cite *Alakayak v. B.C. Packers, Ltd.*, 48 P.3d 432 (Alaska 2002), and argue that Minnesota's four-year antitrust statute of limitations applies and precludes the Plaintiffs from recovering damages for the period prior to November 17, 2004. However, the Plaintiffs contend that the principles set forth in *Anzai v. Chevron Corp.*, 168 F. Supp. 2d 1180 (D. Haw. 2001), permit them to recover damages from the start of the alleged conspiracy notwithstanding the statute of limitations period.

In *Alakayak*, the Supreme Court of Alaska interpreted an antitrust statute of limitations which stated (in language similar to the Minnesota statute at issue) that "a claim for a continuing violation is considered to accrue at any time during the period of the violation." *Id.* at 460-61. The court held that "the passage in question merely holds that the statute of limitations may begin '*at any time*' while the violation is ongoing," and did not "require that recovery be granted going all the way back to the initial transgression[.]" *Id.* at 461 (emphasis in original). Put differently, the Court reasoned that Alaska's continuing violation language operates to "provide a new, and perhaps perpetually rolling, date from which the statute of limitations may begin," but such language does not necessarily allow plaintiffs to recover damages from the beginning of a conspiracy. *See id.* at 462.

In *Anzai*, a federal district court interpreted a Hawaii antitrust statute under which "a cause of action for a continuing violation is deemed to accrue at any time during the period of the violation." 168 F. Supp. 2d at 1183 (citations and quotations omitted). The court held that this

14

language "entitled [the plaintiff] to a ruling that, if it proves a 'continuing violation,' it would be entitled to seek provable damages for the entire period of the continuing violation." *Id.* at 1187. The Plaintiffs urge the Court to follow *Anzai* and permit them to recover damages under Minnesota law for claims accruing throughout the conspiracy.

After carefully reviewing *Alakayak* and *Anzai*, the Court finds the view of the Supreme Court of Alaska more persuasive. The "continuing violation" language in the statutes of Minnesota, Alaska, and Hawaii relates to when a cause of action accrues rather than to the recovery of damages. In other words, while these statutes establish "that the statute of limitations may begin 'at any time' while the violation is ongoing," their language does not "require that recovery be granted going all the way back to the initial transgression." *See Alakayak*, 48 P.3d at 461. Therefore, while Minnesota's antitrust statute permits a "suit for a continuing violation [to] take place at any time during which the violation was ongoing . . . [the] recovery is limited to the period prior to the filing of suit prescribed by the applicable statute of limitations." *See id.* at 463. Minnesota's four-year statute of limitations thus applies to the Plaintiffs' antitrust claim and limits the damages that the Plaintiffs may recover under that claim.[8]

### D. Wisconsin

The parties disagree as to whether a statute of limitations exists for unjust enrichment claims under Wisconsin law. Specifically, the Plaintiffs note that a state appellate court recently held that "the timeliness of an unjust enrichment claim is governed by laches," not a statute of limitations. *Lambo v. Kathleen D'Acquisto Irrevocable Trust*, 740 N.W.2d 901 (Wis. Ct. App.

---

[8] Although they have not reviewed the statute at issue here, Minnesota courts generally interpret state antitrust law consistently with federal law, and the Court's holding achieves this result. *See Lorix v. Crompton Corp.*, 736 N.W.2d 619, 626 (Minn. 2007) ("Minnesota antitrust law is generally interpreted consistently with federal antitrust law.").

2007). However, another appellate court has found that "[r]ecovery based on unjust enrichment is sometimes referred to as a quasi-contract. As a claim based on quasi-contract, a claim for unjust enrichment is subject to the six-year statute of limitations set forth in Wis. Stat. § 893.43," Wisconsin's statute of limitations for contractual suits. *Stapel v. Stapel*, 789 N.W.2d 753 (Wis. Ct. App. 2010) (citation omitted).

Having reviewed both these decisions, the Court finds *Stapel* more persuasive. In *Boldt v. State*, 305 N.W.2d 133 (Wis. 1981), the Supreme Court of Wisconsin held that an unjust enrichment claim was quasi-contractual and that the six-year statute of limitations thus applied to such a claim. *See id.* at 140-41. Other courts have followed *Boldt* in holding that the statute of limitations applies to claims for unjust enrichment. *See Stapel*, 789 N.W.2d at 753; *see also Servicios Especiales Al Comercio Exterior v. Johnson Controls, Inc.*, No. 08-1117, 2011 WL 1304922, at *2 (E.D. Wis. Apr. 1, 2011) ("The six-year limitation period is also applicable to . . . claims of unjust enrichment."); *Tesmer v. Dowd*, No. 88-0781, 1989 Wisc. App. LEXIS 389, at *2 (Wis. Ct. App. Apr. 5, 1989) ("Recovery upon unjust enrichment is referred to as 'quasi-contract[.]' . . . As a claim based on quasi-contract, the statute of limitations applies."). Given this authority, *Lambo* appears to have incorrectly applied Wisconsin law. The statute of limitations does apply to the Plaintiffs' unjust enrichment claim, and the IPFAC's failure to adequately plead the discovery rule bars the Plaintiffs from recovering damages on this claim that accrued prior to December 2, 2002.

## E. Leave to Amend

Granting leave to amend a complaint is within the discretion of the district court. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971). A district court may deny a request for leave to amend if a plaintiff exhibits "truly undue or unexplained delay" in

amending a complaint or makes "repeated failures to cure the deficiency by amendments previously allowed." *See Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993). Here, both of these considerations support denying the Plaintiffs' request for leave to file a *fifth* amended complaint.

First, the Plaintiffs have had ample opportunities to cure their pleading deficiencies "by amendments previously allowed." *Id.* On November 30, 2011, the Court, applying reasoning that clearly extends to every equitable tolling doctrine cited by the Plaintiffs, held that the direct purchaser plaintiffs in this litigation failed to adequately plead fraudulent concealment by not alleging a tolling date. *See Egg Prods.*, 2011 WL 5980001, at *8-11. In the 14 months that have passed since the Court issued this opinion, the Plaintiffs have *twice* received leave to file their *third* and *fourth* amended complaints, but they failed to allege a tolling date on both occasions. Given these failures, the Court will not indulge the Plaintiffs in yet another opportunity to amend their complaint. *See Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) ("When a party fails to take advantage of previous opportunities to amend, without adequate explanation, leave to amend is properly denied."); *Lorenz*, 1 F.3d at 1414 (denying leave to amend when plaintiff "had numerous opportunities to correct any deficiencies in her . . . claim but failed to take advantage of them").

Second, the Court finds that the Plaintiffs' failure to plead tolling dates up to this point constitutes "truly undue [and] unexplained delay." *See id.* In *Lorenz*, the Third Circuit Court of Appeals found a delay in seeking to amend a complaint "unreasonable" because a "three-year period [existed] between the filing of [the plaintiff's] original complaint and the filing of her motion to amend," and most of the factual allegations that she sought to add to her complaint "were available . . . before she filed her original complaint[.]" *See id.* Here, the Plaintiffs filed

their consolidated amended class action complaint on February 27, 2009, at which point they presumably already knew the date or dates when they discovered their claims. Yet after more than four years of litigating this action, as well as the filing of second, third, and fourth amended complaints, the Plaintiffs have still failed to allege a tolling date. In light of this procedural history, the Court will not permit the Plaintiffs to file a fifth amended complaint.

## IV. Conclusion

For the foregoing reasons, the Court grants the Defendants' motion to dismiss with prejudice.

An Order consistent with this Memorandum follows.

BY THE COURT:

GENE E.K. PRATTER
United States District Judge