UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: PROCESSED EGG PRODUCTS ANTITRUST LITIGATION<br><br>This document relates to:<br><br>ALL DIRECT PURCHASER ACTIONS | MDL Docket No. 2002<br>08-md-02002 |

**MEMORANDUM IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS' MOTION
TO PAY COSTS OF SETTLEMENT ADMINISTRATION**

Pursuant to the Settlement Agreement between the Direct Purchaser Plaintiffs ("Plaintiffs") and Defendants Moark, LLC, Norco Ranch, Inc., and Land O'Lakes, Inc. (collectively, "Moark") ("Moark Settlement Agreement") (Doc. Nos. 465-3, 699-700), and this Court's Orders of August 16, 2012 (Doc. No. 727) and November 9, 2012 (Doc. No. 761), Plaintiffs hereby request that the Court approve a distribution of $234,823.00 from the Settlement Fund to the Court-approved claims administrator, Garden City Group ("GCG"), for fees and expenses incurred in connection with the administration of the Moark Settlement Agreement.

**GCC'S WORK AS CLAIMS ADMINSTRATOR**

This Court approved GCG as claims administrator for this litigation on July 15, 2010, in connection with its preliminary approval of the Moark Settlement Agreement. (Doc. No. 387-388.) The Moark Settlement Agreement provides, among other things, that Moark would contribute $25 million to a Settlement Fund for distribution to members of a proposed Settlement

Class, part of which could be used to pay Court-approved attorneys' fees, costs, and expenses. (Doc. No. 465-3.) Pursuant to its appointment as administrator of the Moark Settlement, GCG has performed the tasks outlined below.

**I.  Work Performed by GCG Prior to October 15, 2010, in Conjunction with the Court's Order that GCG Disseminate Notice of the Moark Settlement Agreement**

After the Court preliminarily approved the Moark Settlement Agreement, GCG was ordered to disseminate notice to the members of the proposed Settlement Class. (Doc. No. 388.) In anticipation of disseminating notice, GCG collected, between April and August 2010, electronic data files from seventeen named egg producer Defendants containing the names and addresses of potential members of the Settlement Class. Work performed by GCG prior to mailing notice included loading addresses into a database created for this litigation, updating addresses, and identifying and excluding duplicate address records and address records for the Defendants. (*See* January 25, 2011 Declaration of Jennifer Keogh ("First Keogh Dec.") ¶¶ 7-8; Doc. No. 465-7.)

Upon entry of the Court's Order that GCG disseminate notice, GCG, in August and September 2010, served notice upon the potential class members through direct mailings to more than 13,000 direct purchasers of shell eggs and egg products, publication notice in the *Wall Street Journal* and industry publications, press releases, and maintenance of a informational website and toll-free hotline. (*See* Mem. in Supp. of Order Re: Final Approval of Moark Settlement Agreement ("Final Approval Mem."), Doc. No. 699 at 10-15 (detailing steps taken by GCG to disseminate notice); GCG Invoice Number 09754, attached hereto as Exh. B). GCG also was tasked with collecting claim forms and opt-out requests from members of the Settlement Class. (*See* Claim Form, Doc. No. 414-3.)

Prior to October 15, 2010, GCG also handled numerous administrative tasks relating to notice dissemination, including processing undeliverable mail, document storage, and the initial handling and processing of exclusion requests. (*See* May 24, 2013 Declaration of Jennifer M. Keough ("Second Keough Dec.") ¶ 21, attached hereto as Exhibit A; Exh. B.)

The Moark Agreement provided that Settlement Funds would be used to cover the expenses incurred in disseminating notice of the settlement. (*See* Moark Settlement Agreement ¶ 45; Doc. No. 465-3 ("Class Counsel is authorized up to a maximum of $350,000.00 of the Settlement Amount towards the costs of notice of the Settlement under this Agreement."). Ultimately, the actual cost of disseminating notice of the Moark Settlement was less than the authorized amount: prior to October 15, 2010, GCG incurred fees and costs in conjunction with providing notice of the Moark Settlement Agreement, as described herein, in the amount of $173,047.90. (*See* Exh. B; Final Aproval Mem. at 11.)[1] GCG has been reimbursed in full for these notice-related costs. (Second Keogh Dec. ¶ 20.)

To date, only these initial notice costs in the amount of $173,047 have been paid to GCG from the Settlement Fund. GCG has not yet been reimbursed for any of its additional work in administering the settlement since initial notice was issued. The additional work performed by GCG since October 15, 2010, is set forth below.

## II. Settlement Administration Work Performed by GCG Between October 15, 2010, and November 2012

GCG has performed extensive settlement administration work since initial class notice of settlement agreement was issued, including work to validate each claim. Members of the

---

[1] To date, GCG also has incurred fees and costs in the amount of $202,171.87 in connection with its administration of the Sparboe Settlement Agreement, which also was approved by the Court on July 16, 2012. (Docs. No. 697-698.) Outstanding fees owed to GCG by Sparboe are not at issue in this motion but are being pursued from Sparboe separately.

3

Settlement Class who wished to be excluded from the Moark Settlement Agreement were required to submit exclusion requests to GCG on or before November 16, 2010. (First Koegh Dec. ¶ 17.) Members of the Settlement Class who wished to file a claim were required to submit a Claim Form to GCG no later than January 7, 2011. (First Koegh Dec. ¶ 16.) Between October 15, 2010, and July 31, 2011, GCG performed 21.6 hours of work related to claim validation, including the handling and processing of exclusions. (GCG Invoice Number 14322, attached hereto as Exh. C; *see* Second Koegh Dec. ¶ 21.) Since July 31, 2011, GCG has performed an additional 59.6 hours of work related to claim validation, including handling and processing of exclusions, processing of non-conforming claims, and preparation of deficiency responses and rejection letters. (*See* GCG Invoice Number 11160, attached hereto as Exh. D; *see* Second Keogh Dec. ¶ 22.) In addition, GCG reviewed each claim to ensure, with the input of Interim Co-Lead Counsel, that the claimed purchases were valid claims from egg producers.

In addition to claim validation work, other services performed by GCG between October 15, 2010, and November 2012 included: processing of undeliverable mail, re-mailing of notice documents, maintenance of class member database, document storage, written and verbal communications with the class members, research regarding the eligibility of certain claims, regular maintenance of the class database, website, and toll-free hotline, tax reporting, and reporting to the Court and Parties. (*See* Second Keough Dec. ¶¶ 21-22; Exhs. C-D.)

GCG also performed work in connection with a second round of notice to the members of the Settlement Class. The Court granted final approval of the Moark Settlement Agreement on July 16, 2012. (Doc. Nos. 699-700.) Following final approval of the Settlement Agreements, the Court ordered GCG to disseminate additional notice to the Settlement Class of Plaintiffs' Motion for an Award of Attorneys' Fees and for Reimbursement of Expenses (the "Fee

4

Petition"). (Doc No. 727.) The notice explained that the Settlement Fund would be reduced by Interim Co-lead Counsel's attorneys' fees, "as well as litigation costs and expenses," prior to distribution. (Doc. No. 727.)

### III. Work Performed since November 9, 2012, in Conjunction with the Court's Allocation Order

At the Court's direction, Plaintiffs submitted to the Court, with input from GCG, a proposed plan for allocation of the Moark Settlement Fund, which the Court approved on November 9, 2012. (Docket No. 761.) The Allocation Order directed GCC to compile purchase-price information from the proof-of-purchase claim documents submitted by Authorized Claimants, to calculate distribution amounts for each Authorized Claimant based on an approximate percentage of purchase price, to submit an accounting of proposed payments to Interim Co-lead Counsel and to Moark for approval, and, finally, to send notice to each Authorized Claimant of the estimated distribution amounts to the members of the Settlement Class. (Docket No. 761.)

At the Court's direction, GCC worked to allocate the Net Settlement Fund between the Settlement SubClasses. (Docket No. 761.) GCC further calculated the appropriate estimated distribution amount that each Authorized Claimant would receive based on the Court-approved formula. (Second Keough Dec. ¶ 7.)

Within 20 days of the issuance of the Allocation Order, GCG submitted to Interim Co-lead Counsel an accounting of the payments GCG intends to make to each Authorized Claimant. (Keough Dec. ¶ 15.) GCC adjusted the approximate percentage where necessary to ensure that the Net Settlement Fund would not be exhausted before each Authorized Claimant was paid. (Keough Dec. ¶ 8.) When the percentage payment to an Authorized Claimant was under $25.00,

GCG's accounting reflected the $25.00 base payment approved by the Court. (Second Keough Dec. ¶ 9.)

Following Interim Co-lead Counsel's review of the payment amounts proposed by GCG, in January 2013, GCG notified each Authorized Claimant of the estimated amount of its claim. (Keough Dec. ¶ 16.) The Authorized Claimants had 30 days to object to the estimated payment. Twelve letters were returned undeliverable with change of address information, which GCG re-mailed with a new 30-day deadline. (Keough Dec. ¶ 18.)

GCG now is prepared to distribute the Net Settlement Funds to the Authorized Claimants. (Keough Dec. ¶ 19.) GCG will be mailing checks to 693 Authorized Claimants in amounts ranging from the $25.00 base payment to approximately $1.3 million. (Keough Dec. ¶ 19.)

### REQUEST FOR AUTHORIZATION OF PAYMENT TO GCC

The Moark Settlement Notice that was disseminated to members of the Settlement Class explained that the Settlement Fund could be "reduced by court-ordered attorneys' fees and reimbursement of litigation expenses, including administration of the Settlement, as approved by the Court." (Doc. No. 493-3.) As described herein, GCC has handled all aspects of settlement administration for the Moark Settlement Agreement.

Plaintiffs respectfully request that the Court authorize payment to GCC in the amount of $234,823.00 in fees and costs associated with settlement administration, which includes $177,058.71 in costs and fees already incurred and $57,764.29 in anticipated costs for completion of the project. Specifically:

- Between October 16, 2010, and July 31, 2011, GCG incurred costs and expenses for the work described herein in the amount of $74,001.47. (Exh. C.)

- Between August 1, 2011, and March 15, 2013, GCG incurred costs and expenses for the work described herein in the amount of $103,057.24.  (Exh. D; Second Keogh Dec. ¶ 22.)

- GCG estimates that fees and costs through project completion will total $57,764.29. (Exh. D; Second Keogh Dec. ¶ 22.)  This estimate will include fees and costs for coordinating and handling distribution of settlement checks to class members, post-distribution work, communications with class members, tax reporting, project management, quality assurance, and systems support.  (Second Keogh Dec. ¶ 22.)

All of these costs and fees have been or will be incurred by GCG in the performance of its administration duties regarding the Moark Settlement Agreement.

## CONCLUSION

Accordingly, Plaintiffs move for an Order that approves payment of $234,823.00 out of the Moark Settlement Fund to GCG for its fees and expenses incurred in connection with services performed and to be performed  to administer the Moark Settlement.

DATED: May 29, 2013                    Respectfully submitted,

/s/     Steven A. Asher
Steven A. Asher
**WEINSTEIN KITCHENOFF & ASHER LLC**
1845 Walnut Street, Suite 1100
Philadelphia, PA 19103
(215) 545-7200
(215) 545-6536 (fax)
asher@wka-law.com
*Interim Co-Plaintiffs and Liaison Counsel for Direct Purchaser Plaintiffs*

Michael D. Hausfeld
**HAUSFELD LLP**
1700 K Street NW
Suite 650
Washington, DC  20006
(202) 540-7200
(202) 540-7201 (fax)
mhausfeld@hausfeldllp.com
*Interim Co-Plaintiffs for Direct Purchaser Plaintiffs*

Stanley D. Bernstein
**BERNSTEIN LIEBHARD LLP**
10 East 40th Street, 22nd Floor
New York, New York 10016
(212) 779-1414
(212) 779-3218 (fax)
bernstein@bernlieb.com
*Interim Co-Plaintiffs for Direct Purchaser Plaintiffs*

Stephen D. Susman
**SUSMAN GODFREY LLP**
654 Madison Avenue, 5th Floor
New York, NY 10065-8404
(212) 336-8330
(212) 336-8340 (fax)
ssusman @susmangodfrey.com
*Interim Co-Plaintiffs for Direct Purchaser Plaintiffs*