# EXHIBIT A

# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: PROCESSED EGG PRODUCTS ANTITRUST LITIGATION | § § § § § § § § § § § | MDL No. 2002
08-md-02002 |
| THIS DOCUMENT RELATES TO:
All Direct Purchaser Actions | | |

**AFFIDAVIT OF JENNIFER M. KEOUGH**

**RE: MOARK SETTLEMENT CLAIMS ADMINISTRATION**

| | | |
|---|---|---|
| STATE OF WASHINGTON | § § § | ss. |
| COUNTY OF KING | | |

I, Jennifer M. Keough, being duly sworn, state as follows:

1. I am the Chief Operating Officer of The Garden City Group, Inc. ("GCG"), the Court-approved claims administration entity for the above-captioned litigation. The following statements are based upon my personal knowledge and information provided by other GCG employees working under my supervision, and, if called on to do so, I could and would testify competently thereto.

2. GCG provides this Affidavit to assist Interim Co-Lead Counsel in explaining the work it performed in the Moark settlement administration.

3. As used herein and in the Allocation Order, the Net Settlement Fund is defined as the amount of Moark settlement funds expected to remain available for distribution after (i) the

payment of any attorneys' fees ($7.5 million) and expenses ($487,720.30) as requested by Direct Purchaser Plaintiffs in their Supplement to Motion for an Award of Attorneys' Fees and Expenses (but only if authorized by the Court), and (ii) the payment of $350,000.00 in notice costs.

4. Under the Allocation Order, the Net Settlement Fund was allocated between the Shell Egg SubClass and the Egg Products SubClass. The value of the Net Settlement Fund was $16,662,279.70.

5. The Shell Egg SubClass was allocated two-thirds of the Net Settlement Fund, and the Egg Products SubClass was allocated one-third of the Net Settlement Fund ("Individual Settlement Fund(s)").

6. The distribution between these two Settlement SubClasses reflects the approximate percentage of claims filed for each SubClass.

7. Each Authorized Claimant was then entitled to a payment from the Individual Settlement Fund(s) for which they are eligible in the amount of approximately 0.059 percent (0.059%) of the total of their actual purchase price of each Settlement Product, or a total sum of $25.00, whichever was greater.

8. GCG calculated the approximate percentage of actual purchase price to be paid based on the Net Settlement Fund. In addition, GCG calculated this approximate percentage to ensure that the Net Settlement Fund would not be exhausted before each Authorized Claimant was paid. That percentage only changed if the required expenses differed from those anticipated by GCG, or one or more claims are subsequently denied or the amount of claims were adjusted following resolution of disputes over the payment amounts, if any. Any change to this percentage was applied equally to all Authorized Claimants.

9. With the Court's approval, a $25.00 base payment was authorized for Authorized Claimants. This approved minimum payment affected only thirty three (33) Authorized Claimants. Without this minimum payment, two of those Authorized Claimants would have received as little as $0.36 and $0.88. Instituting this minimum payment affected the Net Settlement Fund by a total of $461.25 (0.0028% of Net Settlement Fund).

10. In GCG's experience, low value checks are often misplaced or not cashed. The reissuance and cancelling of these checks can require a significant amount of administrative time, thereby increasing administrative costs for the Class. If funds were to remain unclaimed, further administration work would need to occur to disburse them, either to the claimants or as the Court otherwise directed. The additional costs associated with having to handle reissues and disbursement of these funds would certainly be greater than the $461.25 that the $25.00 base payment will engender.

11. The increase to administrative and attorney time may also drain the settlement proceeds available for distribution to claimants. Moreover, the expense associated with sending payment to claimants with very small claim values can vastly outweigh the value of payment.

12. Any funds remaining in the Individual Settlement Fund(s) for each Settlement SubClass after these payments are "Excess Amounts."

13. If there are Excess Amounts, then the Initial Authorized Payments for that Settlement SubClass will be increased by an equal percentage until the individual Settlement Fund would be exhausted.

14. Through this approach, each Authorized Claimant will receive their approximate *pro rata* share of the entire settlement proceeds available for distribution.

15. Within 20 days of the issuance of the Allocation Order, GCG identified and submitted to Interim Co-lead Counsel an accounting of the payments to each Authorized Claimant that GCG intends to pay.

16. Interim Co-lead Counsel then identified any issues or communicated their agreement with the payments proposed to be made by GCG. Interim Co-lead Counsel agreed with the payments proposed to be made by GCG, and GCG then notified each Authorized Claimant of the proposed payments. The Authorized Claimants had 30 days to object to the proposed payment, until February 8, 2013.

17. Twelve letters were returned undeliverable with change of address information and were remailed with a new 30-day deadline. The last objection deadline was March 11, 2013.

18. Plaintiffs then made an additional determination of eligibility that resulted in a distribution differing by a maximum of 2.96% from the amounts previously noticed, excepting those claims adjusted upward to reflect the new determination of eligibility.

19. GCG has performed the above work in accordance with the terms and provisions of the Notice and the Notice Plan and is prepared to distribute the Net Settlement Funds to Authorized Claimants. GCG will be mailing checks to 693 Authorized Claimants in amounts ranging from approximately $1.3 million to the $25.00 minimum approved by the Court.

20. In the fulfillment of its obligations, GCG has incurred fees and costs in the amount of $202,171.87 in relation to the Sparboe Settlement and $407,870.90 in relation to the Moark Settlement. This includes summary notice publication costs in the amount of $238,452.00. GCG previously received payment relating to the Moark Settlement in the amount of $173,047.90. The remaining $234,823.00 in fees and costs associated with claims administration of the Moark Settlement remains outstanding. GCG has received no payment to

date in regards to notice administration of the Sparboe Settlement and the full amount of $202,171.87 remains outstanding.

21. For both the Sparboe Settlement and the Moark Settlement, GCG handled all aspects of the notice administration. This included intake and standardization of class member data files, creation and formatting of notice documents, creation of mail file, dissemination of mailed notice, summary notice publication, media outreach, processing of undeliverable mail, notice remails, maintenance of class member database, document storage, creation and maintenance of Settlement website, creation and maintenance of toll-free number, management of call center, handling of written and verbal class member communications, processing of exclusions, and reporting to the Parties. Additionally, GCG handled claims validation, additional processing of non-conforming claims, preparation of deficiency letters, preparation of rejection letters, deficiency response processing, industry research, notice of Plaintiffs' Fee Petition for the Moark Settlement, and mailing of letters to claimants regarding their approximate settlement payment.

22. Settlement administrative work completed after July 2011 related exclusively to the Moark Settlement. Between August 2011 and March 15, 2013, GCG incurred fees and costs in the amount of $103,057.24 in fulfillment of its obligations. This includes fees and expenses associated with claim validation, contact services / handling of class member communication, producer eligibility research, preparation of deficiency letters, database maintenance, preparation of denial letters, tax reporting, additional processing of non-conforming claims, processing of class members challenges, processing of deficiency responses, calculation of class member payments and reporting to the Court and Parties. GCG estimates fees and costs through project completion will total $57,764.29. This includes fees and costs for coordinating and handling

distribution, post-distribution work, class member communications, tax reporting, project management, quality assurance, and systems support.

23. All costs were reasonably incurred by GCG in the performance of its settlement administrative duties.

24. Accordingly, Plaintiffs move for an Order that approves payment of $234,823.00 out of the Moark Settlement Fund to GCG for its fees and expenses incurred in connection with services performed and to be performed with respect to the administration of the Moark Settlement.

                                                                   _/s/ Jennifer M. Keough_
                                                                   JENNIFER M. KEOUGH

Sworn before me this 24th day of May 2013

_/s/ Loren T. Vine_
NOTARY PUBLIC in and for the State of Washington
LOREN T. VINE
LICENSE No. 150937
RESIDING IN SEATTLE
MY COMMISSION EXPIRES: October 12, 2014