IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: PROCESSED EGG PRODUCTS     :
ANTITRUST LITIGATION     :
    :     **MDL No. 2002**
    :     **08-md-2002**
_____ :
    :
THIS DOCUMENT APPLIES TO:     :
DIRECT PURCHASER PLAINTIFFS     :
AND SPARBOE FARMS, INC.     :

**M E M O R A N D U M**

GENE E.K. PRATTER, J.                              JULY 3, 2013

Direct Purchaser Plaintiffs ("Plaintiffs") and Sparboe Farms, Inc. ("Sparboe") disagree as

to whether a settlement agreement reached by the parties and approved by the Court requires

Sparboe to reimburse Plaintiffs for the costs associated with preparation and dissemination of the

notice of their class settlement. In entering final judgment pursuant to the settlement, the Court

retained exclusive jurisdiction over the settlement between these parties. The parties have

submitted memoranda to the Court setting forth their respective arguments as to whether Sparboe

must reimburse Plaintiffs for their notice costs.[1] There is no dispute as to the amount of costs

either in terms of reasonableness or calculation. For the reasons that follow, the Court will not

require reimbursement.

---

[1] The parties have submitted their legal arguments to the Court. They have been
customarily thorough in doing so. Although the issues have not been articulated in a formal
motion, the Court will treat the parties' respective positions as such, namely, a motion by
Plaintiffs for reimbursement and a cross-motion by Sparboe for an order declaring it free from
such an obligation.

## I. Factual Background

The multidistrict litigation from which this dispute originated involves a claim by Plaintiffs against defendant egg producers based upon alleged violations of Section 1 of the Sherman Act. Sparboe was formerly a defendant in this litigation. On June 8, 2009, Plaintiffs and Sparboe entered into a settlement agreement. Under the agreement, Sparboe agreed to reimburse Plaintiffs up to $350,000 for the costs associated with providing notice of the settlement, "provided the occurrences described . . . in Paragraph 29 do not occur." Paragraph 29 of the agreement states that:

> In the event Plaintiffs enter into a cash settlement with any Non-Settling Defendant and receive preliminary approval of that settlement prior to the issuance of notice under this Agreement (such that the settlement notices can be combined), Plaintiffs shall apply those settlement funds towards the cost of notice, thus reducing or eliminating Sparboe Farms' obligation to reimburse Plaintiffs for the notice costs of this Agreement.

*See* Docket No. 185-1 at ¶ 29.

Before class notice was issued in conjunction with the Sparboe settlement, Plaintiffs also settled with Moark, LLC, Norco Ranch, Inc., and Land O' Lakes, Inc. (collectively, "Moark"), another group of defendants involved in the litigation. Plaintiffs and Moark received preliminary approval of their settlement on July 15, 2010. That same day, the Court approved Plaintiffs' proposal to issue separate notices for the Sparboe and Moark settlements. At the time, neither Plaintiffs nor Sparboe addressed how or whether the Moark settlement affected Sparboe's obligation to reimburse Plaintiffs for the cost of class notice concerning the Sparboe settlement. Neither of them raised the issue or potential issue with the Court at that time.

## II. Discussion

"Settlement agreements are interpreted according to basic contract principles." *See In re Diet Drugs Prods. Liab. Litig.*, No. 12-3138, 2013 U.S. App. LEXIS 10168, at *5 (3d Cir. May

21, 2013) (citations and quotations omitted). Under Pennsylvania law,[2] courts interpret the meaning of an unambiguous contractual term from the writing itself, but may look beyond the written contract in resolving ambiguities. *See id.* at *5-6.

Here, the Court sees the parties' dispute as being centered on the word "can." *See* Sparboe Settlement Agreement, Docket No. 185-1 at ¶ 29 ("In the event Plaintiffs enter into a cash settlement with [Moark] and receive preliminary approval of that settlement prior to the issuance of notice under this Agreement (such that the settlement notices *can* be combined), Plaintiffs shall apply those settlement funds towards the cost of notice[.]") (emphasis supplied). Sparboe contends that the notices at issue "could" have been combined because they were both approved by the Court on July 15, 2010, while Plaintiffs argue the notices could not have been combined because the Court's order provided for separate notices.

Under some circumstances, the Court might rely on parol evidence to interpret the meaning of "can." *See Krizovensky v. Krivovensky*, 624 A.2d 638, 642 (Pa. Super. Ct. 1993) (holding that courts may rely on parol evidence when a contractual term is ambiguous); *De Witt v. Kaiser*, 484 A.2d 121, 124 (Pa. Super. Ct. 1984) (noting the same). In this case, however, the parties have not supplied the Court with any such evidence. Instead, they limited their factual submissions to the discussion of evidence *post-dating* the settlement agreement. Therefore, the Court will interpret the meaning of "can" by considering the dictionary, case law, and the purpose of judicial orders.

The *Merriam-Webster Dictionary* defines "can" broadly, stating that it is a word "used to indicate possibility." Similarly, one court within this district has found that "can" is a word "[u]sed to indicate *possibility* or probability." *See Corrigan v. Methodist Hosp.*, 234 F. Supp. 2d

---

[2] The settlement agreement states that it shall be interpreted according to Pennsylvania law. *See* Docket No. 185-1 at ¶ 33.

494, 502 (E.D. Pa. 2002) (citations and quotations omitted) (emphasis supplied). Given such definitions, and the fact that the Sparboe and Moark notices were approved on the same day, the Court finds that the notices "could" have been combined. Although the Court did adopt Plaintiffs' proposed notice plan and thus ordered the issuance of separate notices, no party in this litigation informed the Court of the effect that separate notices would or could have on Sparboe's payment obligations, and the Court did not specifically address this issue when entering its order. As a general proposition, the effect of a court order is limited to those subjects explicitly addressed therein and only those matters that necessarily must flow into or from the order as crafted. *See Nat'l Presto Indus., Inc. v. Dazey Corp.*, No. 90-6614, 1995 U.S. Dist. LEXIS 13642, at *17 (N.D. Ill. Sept. 18, 1995) ("As a general rule, however, a court order is to be construed narrowly[.]") (citing *Schering Corp. v. Ill. Antibiotics Co.*, 62 F.3d 903, 906 (7th Cir. 1995)); *see also Playboy Enters. v. Chuckleberry Publ'g, Inc.*, 939 F. Supp. 1032, 1038 (S.D.N.Y. 1996) (noting that interpreting the scope of a judicial order is a "task . . . assigned to the [c]ourt"). This Court adheres to the approach that neither a judicial opinion nor a judicial order should "outr[u]n the decision," *see Wells v. Garbutt*, 30 N.E. 978, 979 (N.Y. 1892), that is, it should be read and applied as relating to that with which the Court was then presented. Therefore, the Court holds that the Sparboe and Moark notices "could" have been combined despite the "spin" Plaintiffs try to impose on the July 15, 2010 Order, and that Sparboe has no obligation to reimburse Plaintiffs for the costs of class notice.

4

## III. Conclusion

For the foregoing reasons, the Court determines that Sparboe need not reimburse

Plaintiffs for the costs of class notice.

An Order consistent with this Memorandum follows.

BY THE COURT:

GENE E.K. PRATTER
United States District Judge