## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: PROCESSED EGG PRODUCTS | : | |
| ANTITRUST LITIGATION | : | |
| | : | **MDL No. 2002** |
| | : | **08-md-2002** |
| _____ | : | |
| | : | |
| THIS DOCUMENT APPLIES TO: | : | |
| ALL DIRECT PURCHASER PLAINTIFF AND | : | |
| DIRECT ACTION PLAINTIFF ACTIONS | : | |

### MEMORANDUM

GENE E.K. PRATTER, J.                                          AUGUST *23*, 2013

The premise of this multidistrict litigation is the proposition that certain egg producers violated federal antitrust law by conspiring to restrict the supply of domestically produced eggs. The direct purchaser plaintiffs ("DPPs") have brought a putative class action against various defendant producers, while the direct action plaintiffs ("DAPs") are pursuing non-class relief against the Defendants. The Defendants have moved under Federal Rules of Civil Procedure 12(b)(6) and 9(b) to partially dismiss the DPPs' and DAPs' claims for damages to the extent that those claims accrued at a time that makes them now barred by the applicable statute of limitations. For the reasons set forth below, the motion is granted in part and denied in part.

## I.  Procedural History

The issues raised in the pending motion are, excuse the expression, no spring chickens with respect to this litigation. On November 30, 2011, after considering the parties' briefing and holding oral argument, the Court partially dismissed the DPPs' claims without prejudice based on the Clayton Act's four-year statute of limitations. On December 20, 2012, following its

1

consideration of additional briefing, the Court reached the same decision with respect to the claims brought by the DAPs.

On January 4, 2013, having had the opportunity to consider both of the Court's decisions, the DPPs filed their third amended complaint. The DAPs followed suit with their own amended complaints between March 6, 2013 and March 8, 2013.[1]  On April 15, 2013, the Defendants filed an omnibus motion to partially dismiss the claims of the DPPs and the DAPs. This pending motion and the opposing papers cover much of the same ground that the Court addressed in its prior opinions.  Having reviewed the latest briefing of the parties, the Court resolves the renewed or remaining statute of limitations questions.

## II.  Discussion

### A.  *Rule 9(b) and Judicial Estoppel*

#### 1.      Rule 9(b)

The Court's prior opinions included extensive discussions of Federal Rules of Civil Procedure 12(b)(6) and 9(b), and those opinions are incorporated by reference here for all relevant purposes, including the applicable pleading standards. *See In re Processed Egg Prods. Antitrust Litig. (Eggs I)*, No. 08-md-2002, 2011 WL 5980001 (E.D. Pa. Nov. 30, 2011); *see also In re Processed Egg Prods. Antitrust Litig. (Eggs II)*, No. 08-md-2002, 2012 WL 6645533 (E.D.

---

[1] The DAPs have filed six amended complaints: Publix Super Markets, Inc. filed a second amended complaint on March 1, 2013; Supervalu, Inc. filed a second amended complaint on March 1, 2013; Winn-Dixie Stores, Inc., Roundy's Supermarkets, Inc., C&S Wholesale Grocers, Inc., and H.J. Heinz Co. (the "Winn-Dixie Plaintiffs") filed a third amended complaint on March 1, 2013; Kraft Foods Global, Inc., Kellogg Co., General Mills, Inc., and Nestle USA, Inc. (the "Kraft Plaintiffs") filed a second amended complaint on March 6, 2013; Giant Eagle, Inc. filed a second amended complaint on March 7, 2013; and Kroger Co., Safeway, Inc., Walgreen Co., Hy-Vee, Inc., Albertsons LLC, The Great Atlantic & Pacific Tea Co., H.E. Butt Grocery Co., and Conopco, Inc. (the "Kroger Plaintiffs") filed a second amended complaint on March 8, 2013.

Pa. Dec. 20, 2012). However, before analyzing the sufficiency of the plaintiffs' latest allegations, the Court will address one still-disputed issue pertaining to Rule 9(b).

In its prior opinions, the Court noted that "in pleading fraudulent concealment the strictures of Rule 9(b) apply." *See Eggs I*, 2011 WL 5980001, at *4. The DPPs, however, despite formerly conceding that Rule 9(b) governed their fraudulent concealment allegations, now contend that those allegations only need to meet the strictures of Rule 8, and not the demands of Rule 9(b) analysis. *See* Docket No. 827 at 8 at n.1. The Court disagrees. Third Circuit appellate precedent requires that a plaintiff comply with Rule 9(b) in pleading that a defendant fraudulently concealed a cause of action. *See Byrnes v. DeBolt Transfer, Inc.*, 741 F.2d 620, 626 (3d Cir. 1984) ("We agree, of course, that fraud, and thus fraudulent concealment, must be pleaded with particularity."). The Court perceives no reason to reconsider its previous decision regarding the applicability of Rule 9(b) and the requirement that Plaintiffs plead fraudulent concealment, including "the due diligence factor of the fraudulent concealment inquiry[,] with sufficient particularity." *In re Elec. Carbon Prods. Antitrust Litig.*, 333 F. Supp. 2d 303, 317 (D.N.J. 2004).

### 2.    Judicial Estoppel

The Defendants contend that judicial estoppel precludes the Plaintiffs from removing allegations from their prior complaints. The Third Circuit Court of Appeals has held that judicial estoppel may apply if (i) "the party to be estopped [has] taken two positions that are irreconcilably inconsistent;" (ii) the change in positions occurred "in bad faith . . . with intent to play fast and loose with the court;" and (iii) "no lesser sanction would adequately remedy the damage done by the litigant's misconduct." *See Montrose Med. Grp. Participating Savings Plan*

*v. Bulger*, 243 F.3d 773, 779-80 (3d Cir. 2001) (citations and quotations omitted).[2]  The decision

as to whether to apply judicial estoppel against a litigant rests within the sound discretion of a

district court.  *See In re Kane*, 628 F.3d 631, 637 (3d Cir. 2010).  However, the Court's

discretion on this issue is guided by Third Circuit case law stating that judicial estoppel is an

"extreme remedy," *see Chao v. Roy's Constr., Inc.*, 517 F.3d 180, 186 n.5 (3d Cir. 2008), and

holding that it "should only be applied to avoid a miscarriage of justice," *see Krystal Cadillac-*

*Oldsmobile GMC Truck, Inc. v. GM*, 337 F.3d 314, 319 (3d Cir. 2003).

      In this case, the Court must decide if judicial estoppel binds the plaintiffs to prior

allegations regarding Capper-Volstead immunity.  For instance, in their Second Amended

Complaint the DPPs alleged that the "Defendants and their co-conspirators . . . falsely claimed

that their activities were cloaked under the protections of the Capper-Volstead Act."  *See* Docket

No. 221 at ¶ 510.  However, in their current complaint the DPPs allege that the United Egg

Producers did not represent that the UEP Certified Program was subject to antitrust immunity

under the Capper-Volstead Act.  *See* Docket No. 779 at ¶ 528.  The Defendants claim that such

allegations are sufficiently inconsistent to trigger judicial estoppel.

      In *Montrose Medical*, the Third Circuit Court of Appeals held that a district court abused

its discretion by applying judicial estoppel against two plaintiffs.  *See* 243 F.3d at 778.  The

district court dismissed the plaintiffs' claim because they denied that their retirement plan was

subject to ERISA in earlier litigation, but claimed that the plan was covered by ERISA in a

subsequent case.  *See id.* at 781.  The Third Circuit reversed and held that judicial estoppel was

inapposite because the first court never accepted or adopted the plaintiffs' initial position.  *See*

---

[2] Although certain plaintiffs have stated that judicial estoppel cannot apply if inconsistent positions are taken in the same proceeding, *see* Docket No. 824 at 38-40, the Third Circuit Court of Appeals has rejected this contention. *See In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 377 (3d Cir. 2007).

*

*id.* at 782. Significantly for present purposes, the Third Circuit also noted that merely "pleading inconsistently in a single action" does not constitute the sort of bad faith that satisfies the second element of judicial estoppel. *See id.*

Here, the Court declines to exercise its discretion to apply judicial estoppel against the plaintiffs. The above-quoted language of *Montrose Medical* indicates that the Third Circuit Court of Appeals would not apply judicial estoppel merely because an amended complaint includes factual allegations that are inconsistent with a prior complaint. Moreover, Rule 8(d)(3) of the Federal Rules of Civil Procedure expressly allows a party to plead inconsistent claims, and "contradictory statements of fact are allowable" in a complaint "when the pleader is legitimately in doubt about the facts in question." *See Indianapolis Life Ins. Co. v. Hentz*, No. 06-2152, 2009 U.S. Dist. LEXIS 618, at *13-14 (M.D. Pa. Jan. 6, 2009). Given a plaintiff's ability to plead inconsistently in a single pleading, as well as the factual uncertainty that inherently exists at the pleadings stage of litigation, the Court finds that making inconsistent factual averments in separate complaints does not justify the application of judicial estoppel.[3]

## B. Fraudulent Concealment

The fraudulent concealment doctrine tolls the running of the statute of limitations when the accrual date of a claim has passed but the "plaintiff's cause of action has been obscured by the defendant's conduct." *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 160 (3d Cir. 2002). As the Court previously explained, invoking the doctrine of fraudulent concealment requires a plaintiff to allege particularized facts sufficient to suggest "(1) that the defendant actively misled the plaintiff; (2) which prevented the plaintiff from recognizing the validity of her claim within the limitations period; and (3) where the plaintiff's ignorance is not attributable to her lack of

---

[3] Although the Court declines to apply judicial estoppel, it does note that the Defendants may use discovery to inquire into inconsistencies in the Plaintiffs' complaints.

reasonable due diligence in attempting to uncover the relevant facts." *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 509 (3d Cir. 2006) (citing *Mathews v. Kidder, Peabody & Co.*, 260 F.3d 239, 256 (3d Cir. 2001)).  Because the Court finds that the due diligence element of fraudulent concealment is dispositive with respect to the issues at hand, the following discussion will focus on whether the Plaintiffs have adequately pled such diligence.[4]

The Third Circuit Court of Appeals has held that "the exercise of due diligence must be shown in the antitrust context." *See In re Lower Lake Erie Iron Ore Antitrust Litig.*, 998 F.2d 1144, 1179 (3d Cir. 1993).  This requirement ensures that a "[plaintiff's] continuing ignorance was not attributable to [a] lack of diligence on his part." *See Davis v. Grusemeyer*, 996 F.2d 617, 624 n.13 (3d Cir. 1993) (brackets in original).  Accordingly, our court of appeals has commented that a plaintiff inadequately alleged fraudulent concealment because he "failed to plead facts showing that he exercised due diligence in trying to uncover the nature of the [defendants'] allegedly self-concealing [actions], *as he was required to do.*" *See id.* (emphasis added) (citing *Wood v. Carpenter*, 101 U.S. 135, 143 (1879)); *see also Eggs I*, 2011 WL 5980001, at *13 ("Generally, a plaintiff who fails to allege any due diligence is virtually foreclosed from invoking the fraudulent concealment doctrine.").  Other courts also have held that a plaintiff must specifically plead how she exercised due diligence in order to rely on fraudulent concealment. *See Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975); *Commonwealth of Pa. v. Lake Asphalt & Petroleum Co. of Pa.*, 610 F. Supp. 885, 890 (M.D. Pa. 1985) (holding that the plaintiff failed to adequately plead due diligence because it did not allege "what [it] did itself to uncover its claim"); *see also Hinds Cnty. v. Wachovia Bank*

---

[4] The parties agree that, in the absence of fraudulent concealment, the Plaintiffs may not recover claims for damages that accrued before September 24, 2004. *See, e.g.*, Docket No. 827 at 2 (arguing that the DPPs "should be permitted to pursue damages that pre-date the September 24, 2004 commencement of the limitations period").

*N.A.*, 620 F. Supp. 2d 499, 522 (S.D.N.Y. 2009) ("[T]he Court cannot find that a brief reference to 'reasonable diligence,' coupled with general allegations of secrecy and deception . . . satisfies the Named Plaintiffs' burden under Rule 9(b) to plead the third prong of fraudulent concealment with particularity.").

To be sure, the Court also has acknowledged that "under certain circumstances[,] a failure to allege any diligence may not necessarily completely bar use of the fraudulent concealment doctrine." *See Eggs I*, 2011 WL 5980001, at *14. In this vein, the Court notes that the Third Circuit Court of Appeals has stated that "to determine what constitutes 'reasonable' due diligence, we must consider the magnitude of the existing storm warnings. The more ominous the warnings, the more extensive the expected inquiry." *See Mathews*, 260 F.3d at 255. Put differently, if a complaint plausibly suggests that a plaintiff lacked inquiry notice of her claim, then that plaintiff may not need to allege specific, detailed, or even generalized so-called due diligence in order to invoke the fraudulent concealment doctrine.

When a complaint does contain references to red flags or storm warnings that give rise to due diligence obligations, a plaintiff cannot adequately plead that she satisfied those obligations by merely alleging that a defendant disclaimed its supposed bad acts. As our court of appeals has held, a plaintiff does not exercise due diligence if she "fail[s] to undertake any investigation into the meaning of the storm warnings beyond asking defendants whether their plans were legitimate." *See Cetel*, 460 F.3d at 509. Similarly, the Fourth Circuit Court of Appeals has found that "due diligence contemplates more than [an] unpursued inquiry," for "[t]o permit a claim of fraudulent concealment to rest on no more than an alleged failure to own up to illegal conduct upon [a plaintiff's] inquiry would effectively nullify the statute of limitations." *See Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211, 218-19 (4th Cir. 1987).

With this legal frame of reference, the Court turns to the amended pleadings at hand.

### 1.     Direct Purchaser Plaintiffs' Third Amended Complaint

In their third amended complaint, the DPPs allege that they were "appropriately and reasonably diligent about their business operations and economic interests" and that they "took reasonable steps to be informed about issues and actions that affected their businesses and to attempt to ensure that they were receiving competitive prices for their purchasing needs." *See* Docket No. 827 at 13. However, the DPPs present no allegations regarding what their due diligence specifically entailed. The Court previously held that, as a general matter, such vague allegations inadequately plead due diligence under Rule 9(b). *See Eggs II*, 2012 WL 6645533, at *6; *see also Davis*, 996 F.2d at 624 n.13 ("[Plaintiff] failed to plead facts showing that he exercised due diligence in trying to uncover the nature of the [defendants'] allegedly self-concealing [actions], *as he was required to do*.") (brackets in original) (emphasis added); *Dayco*, 523 F.2d at 394 (holding that a plaintiff's "mere allegation of due diligence without asserting what steps were taken" insufficiently pled fraudulent concealment); *Lake Asphalt*, 610 F. Supp. at 890 (holding that a plaintiff must allege "what [it] did itself to uncover its claim" to invoke fraudulent concealment).

In their briefing, the DPPs argue that "[b]ecause there were no red flags or storm warnings to put Plaintiffs on inquiry notice of the price-fixing conspiracy, Plaintiffs were not required to allege any affirmative efforts to discover the existence of the conspiracy." *See* Docket No. 827 at 13. However, upon reviewing the third amended complaint, the Court finds that the pleading itself fails to plausibly suggest that no storm warnings existed regarding the alleged conspiracy. Instead, this complaint alleges that the Defendants informed the DPPs, albeit through alleged misrepresentations, that the Defendants were cooperating to increase the cage

space allotted to hens through the UEP Certified Program.[5]  *See* Docket No. 827 at 3

("Defendants falsely promoted [the UEP Certified Program] to Plaintiffs and the public

throughout 2003-2007[.]"). Moreover, the complaint's allegations regarding the Defendants'

egg price misrepresentations demonstrate that the DPPs knew that egg prices were rising even as

the Defendants were implementing their cage-space program. The Court previously held that,

given such alleged misrepresentations, plaintiffs "should have undertaken *some* sort of inquiry –

even if only a nominal one – regarding the Defendants' concerted activity." *See Eggs II*, 2012

WL 6645533, at *6 (emphasis in original). Nonetheless, the DPPs have failed to allege any

specific acts of diligence they undertook to uncover their claims, and their complaint does not

adequately plead the due diligence element of fraudulent concealment. *See In re Milk Prods.*

*Antitrust Litig.*, 84 F. Supp. 2d 1016, 1024-25 (D. Minn. 1997) (holding that plaintiffs must plead

due diligence with particularity when their complaint alleged that the defendants' conspiracy

"raised and stabilized" milk prices and "substantially eliminated" price competition, because

such price effects put the plaintiffs on inquiry notice of their claims).[6]

---

[5] The Plaintiffs generally allege that members of the UEP, acting under the pretense of concern for animal welfare, collectively used the Certified Program to house fewer hens per cage and thereby curtail the supply of domestic eggs. *See, e.g.*, Publix Cmplt. at ¶¶ 132-37.

[6] Various plaintiffs, including the DPPs, also argue that "it is *Defendants'* burden to show the existence of any 'storm warnings' that should have prompted Plaintiffs' inquiry." *See, e.g.*, Docket No. 827 at 12. These plaintiffs are correct that, in determining whether inquiry notice exists at the summary judgment stage of a RICO case, a defendant must show that storm warnings existed before a plaintiff must prove that it exercised due diligence. *See Mathews*, 260 F.3d at 252. Here, however, the Court is not weighing whether the parties have satisfied their evidentiary burdens. Moreover, the Court will not, as certain plaintiffs suggest, rely on the legal arguments presented in the Defendants' Statement of Law to evaluate the sufficiency of a complaint's factual allegations. *See, e.g.*, Docket No. 825 at 26 (claiming that the Defendants' "motion to dismiss is defeated by their Statement of Law"). The question before the Court is whether, irrespective of what the evidence may eventually prove or what the Defendants have written in their Statement of Law, the Plaintiffs have adequately pled that they exercised reasonable diligence in uncovering their claims. The DPPs' vague allegations that they acted with appropriate diligence by taking unspecified "reasonable steps" falls short of this standard.

9

**2.     Amended Complaints of the Kroger Plaintiffs, Winn-Dixie Plaintiffs, and Kraft Plaintiffs**

In their amended complaints, the Kroger Plaintiffs and Winn-Dixie Plaintiffs simply aver that they exercised due diligence, without pleading what their diligence specifically entailed. The Kraft Plaintiffs fail to even make conclusory allegations regarding their due diligence. *See* Docket No. 825 at 31 (arguing simply that it would have been "pointless" for the Kraft Plaintiffs to exercise due diligence). Such allegations (or lack thereof) are insufficient, given that none of these complaints plausibly suggest that no storm warnings existed that would have prompted the plaintiffs to investigate their claims. For instance, all three complaints allege that the various plaintiffs knew that the Defendants were cooperating to institute the UEP Certified Program. *See, e.g.,* Kraft Cmplt. at ¶ 205. Moreover, the Kroger and Winn-Dixie Plaintiffs allege that they were aware that egg prices were increasing as the UEP Certified Program was being implemented. Although the Kraft, Winn-Dixie, and Kroger Plaintiffs allege that their knowledge of these storm warnings accrued through credible misrepresentations, these plaintiffs nonetheless "should have undertaken *some* sort of inquiry" given what they allegedly knew about egg price increases and the UEP Certified Program. *See Eggs II*, 2012 WL 6645533, at \*6 (emphasis in original); *see also supra* at II.B & II.B(1). Their failure to do so necessitates the dismissal of their time-barred claims.

**3.     Amended Complaints of Giant Eagle, Publix, and Supervalu**

In their most recent complaints, Giant Eagle, Publix, and Supervalu all allege that they knew that the Defendants were cooperating to phase-in the UEP Certified Program and that egg prices were rising as the program was being implemented. For the reasons stated above, the Court finds that such allegations require the plaintiffs to allege that they acted with reasonable diligence. However, unlike the other direct action plaintiffs, Giant Eagle, Publix, and Supervalu

do plead (with varying degrees of specificity) how they exercised due diligence. The question

before the Court with respect to these plaintiffs' claims is whether, given the storm warnings that

these plaintiffs were admittedly privy to and the inquiries that they allegedly undertook, the

diligence allegations contained in the Giant Eagle, Publix, and Supervalu complaints are

adequate.

In its complaint, Giant Eagle alleges that it had an unspecified number of conversations

with Gary Bethel of Defendant Hillandale PA and Tim Weaver of Defendant Weaver Bros.

beginning in 2003 or 2004, and that one or both of these individuals told Giant Eagle that the

UEP Certified Program and egg exports were inadvertently affecting egg prices. Although

details such as the number of conversations that occurred and when those conversations took

place are unclear from the face of the complaint, Giant Eagle does appear to allege that it

initiated these discussions with Mr. Bethel and/or Mr. Weaver. *See* Giant Eagle Cmplt. at ¶ 239

(averring that Giant Eagle was making "routine request[s] for information about a price

increase"). As for Publix and Supervalu, these plaintiffs allege that they made "inquiries to

Defendants regarding the increasing egg prices," *see, e.g.*, Publix Cmplt. at ¶ 104, although they

fail to plead when these inquiries occurred or the particular persons to whom they were made.

Although these due diligence allegations differ with respect to their particularity, the

Court finds that they are inadequate as a matter of law. In *Cetel*, the Third Circuit Court of

Appeals held that plaintiffs attempting to invoke fraudulent concealment in a civil RICO case

"did not exercise the due diligence expected of a reasonable investor because they failed to

undertake any investigation into the meaning of the storm warnings beyond asking defendants

whether their plans were legitimate." *See Cetel*, 460 F.3d at 509. Here, Giant Eagle, Publix, and

Supervalu allege that they knew egg prices were increasing as the Defendants implemented their

11

UEP Certified Program, yet the only diligence these plaintiffs allegedly exercised in the face of

this knowledge was to ask the Defendants why such price increases were occurring. Such

superficial allegations, taken as true, do not constitute reasonable diligence by commercial

enterprises of the plaintiffs' stature. *See id.* at 508 ("[P]laintiffs who undertake no diligence

beyond [a] superficial inquiry of defendants . . . cannot obtain the benefit that a finding of

reasonable diligence will confer."); *Pocahontas*, 828 F.2d at 218-19 (holding that "due diligence

contemplates more than [an] unpursued inquiry" because "permit[ting] a claim of fraudulent

concealment to rest on no more than an alleged failure to own up to illegal conduct upon [a

plaintiff's] inquiry would effectively nullify the statute of limitations").

Additionally, the due diligence allegations of Publix and Supervalu are inadequate

because they fail to satisfy the strictures of Rule 9(b).[7]  Instead of pleading diligence with

particularity, Publix and Supervalu fail to specify who made inquiries of the Defendants, the

persons to whom such inquiries were directed, or when such inquiries occurred. Such vague

allegations of due diligence are insufficient. *See Hinds*, 620 F. Supp. 2d at 522 ("[T]he Court

cannot find that a brief reference to 'reasonable diligence,' coupled with general allegations of

secrecy and deception . . . satisfies the Named Plaintiffs' burden under Rule 9(b) to plead the

third prong of fraudulent concealment with particularity.").

## C.    *Class Tolling with Respect to Sparboe and Weaver Bros.*

In *Eggs II*, the Court held that the statute of limitations only barred the DAPs' claims for

damages accruing prior to September 24, 2004, because the DAPs could claim tolling based on

the filing of the first direct purchaser class action complaint consolidated in this matter. *See*

*Eggs II*, 2012 WL 6645533, at *7-8.  In so doing, the Court followed the Second Circuit Court of

---

[7] The Defendants do not argue that Giant Eagle's diligence allegations fail to satisfy Rule 9(b). *See* Docket No. 805 at 19 n.10.

Appeals, which has held that plaintiffs who opt out of a class before certification may benefit from class tolling. *See id.* at *7 ("'It would not undermine the purposes of statutes of limitations to give the benefit of tolling [to such plaintiffs]' . . . because 'the initiation of a class action puts the defendants on notice of the claims against them.'") (quoting *In re Worldcom Sec. Litig.*, 496 F.3d 245, 256 (2d Cir. 2007)).

Although the Court partially resolved the issue of class tolling in *Eggs II*, the parties have somewhat resuscitated the matter in their latest round of briefing as to Defendants Sparboe Farms, Inc. and Weaver Bros., Inc. In their motion, the Defendants note that the DPPs have not named Weaver Bros. as a defendant in any of their class action complaints. Instead, only Giant Eagle has brought a claim against Weaver Bros., and it did not do so until December 17, 2010. Therefore, the Defendants argue that Giant Eagle's claims against Weaver Bros. which accrued prior to December 17, 2006 should be dismissed. Additionally, Sparboe notes that the DPPs did not name it as a defendant until January 30, 2009, and thus argues for the dismissal of claims accruing prior to January 30, 2005.

The Third Circuit Court of Appeals has not addressed the applicability of class tolling in this situation. However, in *Wyser-Pratte Management Co. v. Telxon Corp.*, 413 F.3d 553 (6th Cir. 2005), the Sixth Circuit Court of Appeals held that class action tolling does not apply to unnamed defendants such as Sparboe and Weaver Bros. *See id.* at 568. The court reasoned that such defendants lack adequate notice of the claims they face when they are not named as defendants in an earlier-filed class action. *See id.* Although the Court declined to follow a separate portion of *Wyser-Pratte* in *Eggs II*, the Court also stated that "the initiation of a class action [on September 24, 2008] put[] the [named] defendants on notice of the claims against them." *See Eggs II*, 2012 WL 6645533, at *7 (quotations omitted). In contrast, Sparboe and

13

Weaver Bros. were not included as parties in the direct purchaser complaint filed on September

24, 2008, and they lacked adequate notice of the claims against them until they were actually

named as defendants in subsequent complaints. *Cf. Monaco v. City of Camden*, 366 F. App'x

330, 335 (3d Cir. 2010) ("[T]he mere existence of a related lawsuit was insufficient to put the

proposed defendants on notice of [the plaintiff's] lawsuit, or that they might be defendants in the

case."); *Wade v. Danek Med., Inc.*, 182 F.3d 281, 288 n.9 (4th Cir. 1999) ("One of the purposes

of a statute of limitations is to put a defendant on notice of the claims against him within the

specified period."); *Sperling v. Hoffmann-La Roche, Inc.*, 24 F.3d 463, 472 (3d Cir. 1994)

("'[L]imitations periods are intended to put defendants on notice of adverse claims.'") (quoting

*Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 352 (1983)).  Therefore, the Court will dismiss

the DAPs' claims against Sparboe that predate January 30, 2005, as well as Giant Eagle's claims

against Weaver Bros. that accrued before December 17, 2006.[8]

        Sparboe also argues that class tolling should be further limited because, although the

DPPs named it as a defendant on January 30, 2009, the DPPs amended their complaint and

---

[8] In their briefing, the DAPs note that *Appleton Electric Co. v. Graves Truck Line, Inc.*,
635 F.2d 603 (7th Cir. 1980), held that "where a class action suit is instituted against a class of
unnamed defendants . . . the statute of limitations is tolled as to all putative members of the
defendant class." *See id.* at 609-10. However, the *Appleton* court faced a "true conflict between
the operation of the statute of limitations and Rule 23," and believed that a contrary holding
would "sound the death knell" for defendant class actions. *See id.* The instant matter involves
an entirely different calculus, because the Plaintiffs are not suing a class of defendants under
Rule 23.

        Additionally, the Court recognizes that the original class complaints did allege that
unnamed co-conspirators were involved in the alleged conspiracy, but finds that such generalized
allegations were insufficient to put Sparboe and Weaver Bros. on notice of the claims against
them. *Compare* Brief of the Kraft Plaintiffs, Docket No. 825 at 38 (arguing that Sparboe had
adequate notice because it "knew, or reasonably should have known, that it had potential liability
when the original class action complaints were filed"), *with Wyser-Pratte*, 413 F.3d at 568
(rejecting such an argument).  The DAPs' claim that Weaver Bros. had "notice of the class action
and the likelihood that [it] could be named as [a] Defendant[]," *see* Docket No. 824 at 34 n.14,
falls particularly flat, given that in the absence of Giant Eagle's suit, Weaver Bros. would not
even be a defendant in this matter.

thereby removed Sparboe as a defendant on April 7, 2010.  However, Sparboe cites no authority

to support its assertion that class tolling ceased to apply simply because the DPPs amended their

complaint.  Moreover, Sparboe had notice of the claims against it once it was sued in January

2009, and Sparboe's awareness of those claims did not suddenly end when it entered into

settlement negotiations with the DPPs that ultimately prompted its removal as a defendant from

the direct purchaser class action.  Therefore, the DAPs may pursue damages against Sparboe that

accrued on or after January 30, 2005.

**D.     *Giant Eagle's Claim Under the Ohio Valentine Act***

The Defendants argue that Giant Eagle's claim under the Ohio Valentine Act, Ohio Rev.

Code § 1331.01 *et seq.*, should be partially dismissed because Ohio follows federal law with

respect to fraudulent concealment.  In its response, Giant Eagle does not contest this argument.

Additionally, the parties appear to agree that class tolling applies to Giant Eagle's Ohio-law

claims against most of the Defendants.  Finally, with respect to Sparboe and Weaver Bros., the

Court notes that in Ohio "the statute of limitations continues to run as to a potential defendant

who is not named as a defendant in the class suit because a nondefendant lacks notice of the

assertion of claims against him." *See Beavercreek Local Schs. v. Basic, Inc.*, 595 N.E.2d 360,

373 (Ohio Ct. App. 1991).  Given the foregoing concessions and case law, the Court will dismiss

Giant Eagle's claims under the Valentine Act such that Giant Eagle cannot recover damages

against Weaver Bros. that accrued prior to December 17, 2006, damages against Sparboe that

accrued prior to January 30, 2005, and damages against the remaining defendants that accrued

prior to September 24, 2004.

## *E. Leave to Amend*

The decision of whether to grant leave to amend a complaint lies within the discretion of the district court. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971). A district court may deny a request for leave to amend if a plaintiff exhibits "truly undue or unexplained delay" in amending a complaint or makes "repeated failures to cure the deficiency by amendments previously allowed." *See Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993). Here, the Plaintiffs have had ample opportunities to cure their pleading deficiencies "by amendments previously allowed." *Id.* On both November 30, 2011 and December 20, 2012, the Court discussed the due diligence element of the fraudulent concealment doctrine and held that plaintiffs in this litigation failed to adequately plead fraudulent concealment. After the Court issued these opinions, most of the DAPs filed their *second* amended complaints, and the DPPs and Winn-Dixie Plaintiffs filed their *third* amended complaints. Despite the Court's previous opinions on these very points, the Plaintiffs have all failed to adequately allege that they acted with reasonable diligence. The Court will not permit the Plaintiffs to file another series of amended complaints given their prior opportunities to adequately plead fraudulent concealment. *See Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) ("When a party fails to take advantage of previous opportunities to amend, without adequate explanation, leave to amend is properly denied."); *Lorenz*, 1 F.3d at 1414 (denying leave to amend when plaintiff "had numerous opportunities to correct any deficiencies in her . . . claim but failed to take advantage of them").

16

## III.  Conclusion

For the foregoing reasons, the Court denies the Defendants' motion to dismiss with respect to Sparboe's argument that class action tolling ceased to apply because the DPPs amended their complaint.  The Court grants the remainder of the instant motion with prejudice.

An Order consistent with this Memorandum follows.


BY THE COURT:

GENE E.K. PRATTER
United States District Judge