**UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **IN RE: PROCESSED EGG PRODUCTS** | : | **MDL No. 2002** |
| **ANTITRUST LITIGATION** | : | **Case No: 08-md-02002** |
| | : | |
| | : | |
| **THIS DOCUMENT APPLIES TO** | : | |
| **ALL DIRECT PURCHASER ACTIONS** | : | |
| | : | |

**DIRECT PURCHASER PLAINTIFFS' MEMORANDUM IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
AGREEMENT BETWEEN PLAINTIFFS AND DEFENDANT CAL-MAINE FOODS,
INC., FOR CERTIFICATION OF CLASS ACTION FOR PURPOSES
OF SETTLEMENT, AND FOR LEAVE TO FILE MOTION FOR FEES AND
EXPENSES**

**TABLE OF CONTENTS**

I.     INTRODUCTION .................................................................................................1

II.    BACKGROUND ...................................................................................................2

       A.     The Litigation.............................................................................................2

       B.     Previous Settlement History ......................................................................3

       C.     The Cal-Maine Settlement Negotiations....................................................3

III.   PROVISIONS OF THE SETTLEMENT AGREEMENT.....................................4

       A.     The Settlement Class...................................................................................4

       B.     Cash Consideration to the Proposed Class & Rescission Provisions ........5

       C.     The Factual Information Provision .............................................................6

       D.     Release Provisions .....................................................................................6

IV.    THE PROPOSED SETTLEMENT IS SUFFICIENTLY FAIR, REASONABLE
       AND ADEQUATE ................................................................................................7

       A.     Standard For Granting Preliminary Approval Of The Settlement ............7

       B.     The Settlement Amount, the Factual Information Obligations, and the
              Terms of the Agreement Support Preliminary Approval...........................9

       C.     The Negotiation Process With Cal-Maine Supports Preliminary Approval..........12

       D.     The Extent of Discovery at the Time the Settlement Agreement was
              Negotiated and Agreed to Supports Preliminary Approval. ...................13

       E.     The Expense and Uncertainty of Continued Litigation Against Cal-Maine
              Supports Preliminary Approval. ............................................................14

V.     PRELIMINARY CERTIFICATION OF THE PROPOSED CAL-MAINE
       SETTLEMENT CLASS IS WARRANTED ......................................................15

       A.     This Case Satisfies The Prerequisites Of Rule 23(a) ............................16

              1.     The Settlement Class is sufficiently numerous ...........................16

              2.     There are common questions of law and fact.............................18

i

3.     The Class Representatives' claims are typical of those of the Settlement Class ........................................................................................19

4.     The Class Representatives will fairly and adequately protect the interests of the Class ........................................................................20

B.     The Class Representatives' Claims Satisfy The Prerequisites Of Rule 23(b)(3) ..............................................................................................21

1.     Common legal and factual questions predominate ...................................22

2.     A class action is superior to other methods of adjudication ....................27

VI.     PLAINTIFFS' MOTION FOR LEAVE TO FILE MOTION FOR ATTORNEYS' FEES AND EXPENSES ..............................................................................................28

VII.     CONCLUSION .....................................................................................................28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Amchem Prods., Inc. v. Windsor,*
   521 U.S.591 (1997)..............................................................................21, 22, 27

*Austin v. Pa. Dept of Corr.,*
   876 F. Supp. 1437 (E.D. Pa. 1995) ...................................................................8

*Baby Neal v. Casey,*
   43 F.3d 48 (3d Cir. 1994).................................................................................19

*Bogosian v. Gulf Oil Corp.,*
   561 F.2d 434 (3d Cir. 1977)..............................................................................20

*Comcast Corp. v. Behrend,*
   133 S. Ct. 1426 (2013).....................................................................................25

*Danny Kresky Enter. Corp. v. Magid,*
   716 F.2d 206 (3d Cir. 1983)..............................................................................22

*Gates v. Rohm & Haas Co.,*
   248 F.R.D. 434 (E.D. Pa. 2008).........................................................................7

*Girsh v. Jepson,*
   521 F.2d 153 (3d Cir. 1975)..............................................................................7

*Hedges Enters., Inc. v. Cont'l Grp., Inc.,*
   81 F.R.D. 461 (E.D. Pa. 1979).........................................................................25

*Hoxworth v. Blinder, Robinson & Co., Inc.,*
   980 F.2d 912 (3d Cir. 1992)..............................................................................19

*In re Am. Inv. Life Ins. Co. Annuity Mktg. and Sales Practices Litig.,*
   263 F.R.D. 226 (E.D. Pa. 2009).........................................................................7

*In re Auto. Refinishing Paint Antitrust Litig.,*
   MDL NO. 1426, 2004 WL 1068807 (E.D. Pa. May 11, 2004) ......................7, 9, 10

*In re Auto. Refinishing Paint Antitrust Litig.,*
   No. MDL 1426, 2003 WL 23316645 (E.D. Pa. Sept. 5, 2003) .............................12

*In re Auto. Refinishing Paint Antitrust Litig.,*
   617 F. Supp. 2d 336 (E.D. Pa. 2007) .................................................................8

*In re Catfish Antitrust Litig.,*
   826 F. Supp. 1019 (N.D. Miss. 1993)................................................................18

*In re Chambers Dev. Sec. Litig.*,
   912 F. Supp. 822 (W.D. Pa. 1995) ...................................................................14

*In re Cmty. Bank of N. Va.*,
   418 F.3d 277 (3d Cir. 2005) ....................................................................21, 26

*In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions,*
   410 F. Supp. 659 (D. Minn. 1974) ...................................................................11

*In re Flat Glass Antitrust Litig,*
   191 F.R.D. 472 (W.D. Pa. 1999) ...............................................................18, 25

*In re Gen. Instruments Sec. Litig.,*
   209 F. Supp. 2d 423 (E.D. Pa. 2001) ...............................................................11

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,*
   55 F.3d 768 (3d Cir. 1995) ................................................................................7

*In re Hydrogen Peroxide Antitrust Litig.*
   552 F.3d 305 (3d Cir. 2008) ....................................................................22, 25

*In re Ikon Office Supplies Inc. Sec. Litig.,*
   194 F.R.D. 166 (E.D. Pa. 2000) ...............................................................10, 15

*In re Imprelis Herbicide Mktg., Sales Practices & Prods. Liab. Litig.,*
   2013 U.S. Dist. LEXIS 18332 (E.D. Pa. Feb. 11, 2013) ....................................8, 13

*In re Ins. Brokerage Antitrust Litig.,*
   579 F.3d 241 (3d Cir. 2009) .......................................................22, 23, 24, 27

*In re Ins. Brokerage Antitrust Litig.,*
   Case No. 04-5184, 2013 WL 3956378 (D.N.J. Aug. 1, 2013) .................................8

*In re K-Dur Antitrust Litig.,*
   No. 01-1652, 2008 WL 2699390 (D.N.J. Apr. 14, 2008) .................................17, 25

*In re Linerboard Antitrust Litig.,* 305 F.3d 145, 156 (3d Cir. 2002),
   305 F.3d 145 (3d Cir. 2002) ............................................................................22

*In re Linerboard Antitrust Litig.,*
   292 F. Supp. 2d 631 (E.D. Pa. 2003) ....................................................... passim

*In re Mercedes-Benz Antitrust Litig.,*
   213 F.R.D 180 (D.N.J. 2003) ....................................................................17, 22

*In re Microcrystalline Cellulose Antitrust Litig.,*
   218 F.R.D. 79 (E.D. Pa. 2003) ..........................................................18, 19, 26

*In re Mid-Atlantic Toyota Antitrust Litig.*,
    564 F. Supp. 1379 (D.C. Md. 1983) ..................................................................7, 10

*In re NASDAQ Market-Makers Antitrust Litig.*,
    169 F.R.D. 493 (S.D.N.Y. 1996) ...........................................................................17

*In re NASDAQ Market-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) ...........................................................................14

*In re OSB Antitrust Litig.*,
    2007 WL 2253418 (E.D. Pa. Aug. 3, 2007) ..........................................................17

*In re Pet Food Prods. Liability Litig.*,
    No. 07-2867, 2008 WL 4937632 (D.N.J. Nov. 18, 2008) ......................................15

*In re Plywood Antitrust Litig.*,
    76 F.R.D 570 (E.D. La. 1976) ...............................................................................25

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
    962 F. Supp. 450 (D.N.J. 1997) ...........................................................................6, 7

*In re The Prudential Ins. Co. of Am. Sales Practices Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998) ..................................................................................26

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
    163 F.R.D. 200 (S.D.N.Y. 1995) ...........................................................................15

*In re Remeron End-Payor Antitrust Litig.*,
    No. Civ. 02-2007, 2005 WL 2230314 (D.N.J. Sept. 13, 2005) .............................14

*In re Rite Aid Corp. Sec. Litig.*,
    146 F. Supp. 2d 706 (E.D. Pa. 2001) ......................................................................7

*In re Sumitomo Copper Litig.*,
    189 F.R.D. 274 (S.D.N.Y. 1999) ...........................................................................17

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) .........................................................................7, 16, 18

*In re Warfarin Sodium Antitrust Litigation*,
    212 F.R.D. 231 (D. Del 2003) *aff'd*, 391 F.3d 516 (3d Cir. 2004) ........................26

*Krell v. Prudential Ins. Co. of Am.*,
    525 U.S. 1114 (1999) ............................................................................................26

*Lake v. First Nationwide Bank*,
    156 F.R.D. 615 (E.D. Pa. 1994) ............................................................................12

*Marsden v. Select Med. Corp.*,
  246 F.R.D. 480 (E.D. Pa. 2007)...................................................................................17

*McGuiness v. Parnes*,
  No. 87-2728-LFO, 1989 WL 29814 (D.D.C. Mar. 22, 1989) ...................................11

*Petruzzi's Inc. v. Darling-Delaware Co.*,
  880 F. Supp. 292 (M.D. Pa. 1995) ..........................................................................12

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993)....................................................................................16

*Stewart v. Abraham*,
  275 F.3d 220 (3d Cir. 2001)...............................................................................16, 17

*Stewart v. Rubin*,
  948 F. Supp. 1077 (D.D.C. 1996), *aff'd*, 124 F.3d 1309 (D.C. Cir. 1997)..............11

*Sullivan v. DB Inv., Inc.*,
  667 F.3d 273 (3d Cir. 2011)...............................................................................22, 23

*Thomas v. NCO Fin. Sys.*,
  No. CIV.A. 00-5118, 2002 WL 1773035 (E.D. Pa. July 31, 2002)............................8

*Transamerican Refining Corp. v. Dravo Corp.*,
  130 F.R.D. 70 (S.D. Tex. 1990)...............................................................................18

*Wal-Mart Stores Inv. v. Dukes*,
  131 S. Ct. 2541 (2011)............................................................................................23

*Weisfeld v. Sun Chem. Corp.*,
  210 F.R.D 136 (D.N.J. 2002)...................................................................................17

*Weseley v. Spear*,
  711 F. Supp. 713 (E.D.N.Y. 1989) ..........................................................................14

**STATUTES**

15 U.S.C. § 1 ...............................................................................................................2

**RULES**

Rule 23(a)........................................................................................................... passim

Rule 23(b) ...............................................................................................16, 21, 22, 27

Rule 23(e)....................................................................................................... 1, 2, 12

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Direct Purchaser Plaintiffs ("Plaintiffs") respectfully submit this memorandum in support of their motion for: (1) preliminary approval of a settlement between Plaintiffs and Defendant Cal-Maine Foods, Inc. ("Cal-Maine") set forth in the "Settlement Agreement between Direct Purchaser Plaintiffs and Defendant Cal-Maine Foods, Inc." ("Settlement" or "Settlement Agreement"), attached as Exhibit A to the Declaration of Michael D. Hausfeld accompanying this Motion and Memorandum;[1] (2) certification of a class for purposes of the Settlement; and (3) leave to file a motion for attorneys' fees and reimbursement of expenses.[2]

## I.   <u>INTRODUCTION</u>

After many months of intense arm's-length negotiations, Plaintiffs successfully obtained a mutually agreeable settlement with Cal-Maine.  In exchange for a release from this lawsuit, Cal-Maine has agreed to pay $28,000,000 into a Fund to provide for the claims of members of the proposed Settlement Class.  The Settlement also obligates Cal-Maine to provide, through a proffer by Cal-Maine's counsel, factual information regarding the facts and events at issue in this litigation, to authenticate documents, and to provide a witness at trial.  Plaintiffs believe these commitments will materially assist Plaintiffs in further analyzing and prosecuting this Action against the remaining Defendants: Daybreak Foods, Inc., Hillandale Farms of Pa., Inc.; Hillandale-Gettysburg, L.P.; Rose Acre Farms, Inc. Michael Foods, Inc., Midwest Poultry Services, L.P., NuCal Foods, Inc., National Food Corporation, Ohio Fresh Eggs, LLC, R. W. Sauder, Inc., United Egg Producers, Inc., and United States Egg Marketers, Inc. ("Non-Settling Defendants").

---

[1] Class Counsel intend to file a motion for approval of the plan for Class Notice of the Settlement Agreement and form of notice in the coming weeks.

[2] All capitalized terms not otherwise defined herein shall have the same meaning as set forth in the Settlement Agreement.

Plaintiffs respectfully move the Court for an Order (the "Preliminary Approval Order"), in substantially the proposed form submitted herewith, that, among other things:

- finds that the proposed settlement with Cal-Maine is sufficiently fair, reasonable and adequate to allow dissemination of notice of the settlement to the Settlement Class;

- finds that the proposed Settlement Class satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure and approves the proposed Class for settlement purposes; and

- grants leave permitting Plaintiffs to file a motion for an award of attorneys' fees and litigation expenses as set forth in the Proposed Order attached hereto.

These provisions will set in motion the procedures necessary to obtain final approval of the proposed settlement as required by Rule 23(e) of the Federal Rules of Civil Procedure.

At this time, in considering whether to grant preliminary approval, the Court need determine only whether the proposed settlement is sufficiently fair, reasonable, and adequate to allow notice of the proposed settlement to be disseminated to the Settlement Class. A final determination of the settlement's fairness will be made at or after the Fairness Hearing, after Class Members have received notice of the settlement and have been given an opportunity to object to it or opt-out of the class. As set forth below, Plaintiffs submit that the proposed Settlement amply satisfies the required standards.

## II.   <u>BACKGROUND</u>

### A.   **The Litigation**

This case concerns an alleged conspiracy among the nation's largest egg producers. Plaintiffs allege that Defendants and other named and unnamed co-conspirators violated the Sherman Antitrust Act, 15 U.S.C. § 1, *et seq*., by engaging in an unlawful conspiracy to reduce output and thereby artificially fix, raise, maintain and/or stabilize the prices of shell eggs and egg products in the United States. As a result of Defendants' alleged conduct, Plaintiffs and

members of the Class paid prices for shell eggs and egg products that were higher than they otherwise would have been absent the conspiracy.   The lawsuit seeks treble damages, injunctive relief, attorneys' fees and costs from Defendants.   Cal-Maine has denied all allegations of wrongdoing in the Action.

### B.      Previous Settlement History

On June 8, 2009, Sparboe entered into a settlement agreement with Plaintiffs providing for cooperation in the continued litigation of the case, and on July 16, 2012, this Court granted final approval of the settlement.  ECF No. 698.  On May 21, 2010, Moark, LLC, Norco Ranch, Inc., and Land O'Lakes, Inc. ("Moark") entered into a settlement agreement with Plaintiffs providing for both continued cooperation and a cash settlement of $25,000,000.00, and on July 16, 2012 this Court granted final approval of the settlement.  ECF No. 700.

### C.      The Cal-Maine Settlement Negotiations

Interim Co-Lead Counsel for Plaintiffs ("Class Counsel") and Cal-Maine's counsel, Gibson, Dunn & Crutcher, LLP, engaged in extensive arms' length negotiations over the course of a year and a half to reach the current settlement.  The scope and details of the negotiations are described in the Hausfeld Declaration, attached hereto.  Class Counsel and Cal-Maine's counsel, both highly experienced and capable, vigorously advocated their respective clients' positions in the settlement negotiations.  The initial negotiations, which began in March 2012 and continued intermittently into early 2013, were conducted via telephone conferences and email.  Hausfeld Decl. ¶¶ 5, 6.  Class Counsel and Cal-Maine's counsel agreed to and did mediate the settlement agreement over the course of a full day on June 25, 2013 before the Honorable Daniel Weinstein (Ret.) of JAMS, a respected former jurist, and mediated negotiations continued over the course of the following weeks.  *Id.* ¶ 6.

At the time of mediation, Plaintiffs had spent nearly six months intensively reviewing Defendants' document productions—encompassing more than one million documents—in this matter, and key fact witnesses had been deposed.  *Id.*  ¶ 7.  Class Counsel thus had significant knowledge of Defendants' antitrust conspiracy and the strengths and weaknesses of their claims as well as of Defendants' asserted defenses.  Class Counsel used the extensive document production produced to date, as well as deposition transcripts and other discovery materials to evaluate Cal-Maine's positions and to advocate for a fair settlement that serves the best interests of the Class.  The Parties submitted extensive confidential mediation briefs regarding the strengths and weaknesses of the claims and defenses in aid of the mediation.  *Id.* ¶ 6.

The Parties reached an agreement in principle on July 17, 2013.  *Id.* ¶ 9.  On August 2, 2013, the Settlement Agreement was fully executed by Class Counsel and Cal-Maine's counsel. *Id.*  After factual investigation and legal analysis, it is the opinion of Class Counsel that the Settlement amount of $28 million, combined with Cal-Maine's factual information obligations, is fair, reasonable and adequate to the Class.  Plaintiffs respectfully submit that the Settlement is in the best interests of the Class and should be preliminarily approved by the Court, and that a class should be certified for purposes of the Settlement.

## III.   PROVISIONS OF THE SETTLEMENT AGREEMENT

### A.   The Settlement Class

The Settlement Agreement defines the proposed Settlement Class as follows:

All persons and entities that purchased Shell Eggs and Egg Products in the United States directly from any Producer, including any Defendant, during the Class Period from January 1, 2000 through the date on which the Court enters an order preliminarily approving the Agreement and certifying a Class for Settlement purposes.

a.)  Shell Egg SubClass

All individuals and entities that purchased Shell Eggs in the United States directly from any Producer, including any Defendant, during the Class Period from January 1, 2000 through the date on which the Court enters an order preliminarily approving the Agreement and certifying a Class for Settlement purposes.

b.) Egg Products SubClass

All individuals and entities that purchased Egg Products produced from Shell Eggs in the United States directly from any Producer, including any Defendant, during the Class Period from January 1, 2000 through the date on which the Court enters an order preliminarily approving the Agreement and certifying a Class for Settlement purposes.

Excluded from the Class and SubClasses are Defendants, Other Settling Defendants, and Producers, and the parents, subsidiaries and affiliates of Defendants, Other Settling Defendants, and Producers, all government entities, as well as the Court and staff to whom this case is assigned, and any member of the Court's or staff's immediate family.

Settlement Agreement, ¶ 20 (Hausfeld Decl., Ex. A).  The Agreement defines the Settlement Class as the settlement classes were defined in the Moark and Sparboe settlement agreements.[3]

**B.      Cash Consideration to the Proposed Class & Rescission Provisions**

The proposed Settlement Agreement provides that within 20 days of its execution, Cal-Maine will pay $28,000,000 in cash (the "Settlement Amount").  *See* Settlement Agreement ¶¶ 16, 34.  This money shall be maintained in an escrow account controlled by Cal-Maine and Class Counsel pending approval of the settlement by the Court.  Cal-Maine has the right and option to rescind the Agreement should class members whose combined purchases of Shell Eggs and Egg

---

[3] All of the settlement agreements define the Settlement Classes as "all persons and entities that purchased eggs . . . including Shell Eggs and Egg Products . . . directly from any producer . . . ."  And all of the Settlement Agreements exclude from the class those who purchased exclusively "specialty shell eggs" or "hatching shell eggs."  The Moark and Sparboe Settlement Agreements provide for those exclusions in the class definitions themselves, whereas the Settlement Agreement with Cal-Maine simply defines "shell eggs" and "egg products" as excluding specialty and hatching shell eggs in the definition of those terms in the Agreement, thus incorporating those exclusions into the class definition by reference.  *Compare* Cal-Maine Settlement Agreement ¶¶ 8, 18, 20 *with* Moark Settlement Agreement (ECF No. 349-1) ¶ 19 *and* Sparboe Settlement Agreement (ECF No. 172-2) ¶ 11.

Products equal or exceed a percentage of Cal-Maine's Total Sales exclude themselves from the Settlement Class, as set forth in a Supplemental Agreement between the Parties, which will be disclosed to the Court for *in camera* inspection prior to entry of the Preliminary Approval Order. *Id.* ¶ 31.  Additionally, the Settlement Agreement provides that Class Counsel may seek an award of attorneys' fees and expenses from the Settlement Amount, subject to Court approval, and that Cal-Maine shall have no other obligation to pay any fees or expenses to Class Counsel.

### C.    The Factual Information Provision

In addition to the Settlement Amount, the Settlement Agreement also requires that Cal-Maine provide an attorney proffer related to Cal-Maine's knowledge, and that of its directors, officers, employees and agents, of the facts relating to documents, witnesses, meetings, communications, conduct and events at issue in the Action, provide information related to transactional data produced by Cal-Maine, authenticate documents produced by Cal-Maine and, to the extent possible, authenticate documents produced by non-settling Defendants that were authored or created by Cal-Maine or sent to or received by Cal-Maine, and to make a witness available to testify at trial regarding facts or issues that remain in dispute at the time of trial.  *Id.* ¶¶ 40-43.

### D.    Release Provisions

In exchange for the consideration provided by Cal-Maine, Plaintiffs have agreed to release Cal-Maine from any and all claims arising out of or resulting from: (i) an agreement or understanding between or among two or more Producers of eggs, including any Defendants; (ii) the reduction or restraint of supply, the reduction of or restrictions on production capacity, or (iii) the pricing, selling, discounting, marketing, or distributing of Shell Eggs and Egg Products in the United States or elsewhere.  *Id.*  ¶¶ 14, 26-29.  The full text of the proposed release, including the limitations thereof, is set forth in the Settlement Agreement.

**IV.    THE PROPOSED SETTLEMENT IS SUFFICIENTLY FAIR, REASONABLE
AND ADEQUATE**

> **A.    Standard For Granting Preliminary Approval Of The Settlement**

The approval of class action settlements involves a two-step process: (1) preliminary

approval; and (2) a fairness hearing, after notice to the class, to determine final approval of the

proposed settlement.  *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450,

562 (D.N.J. 1997); *In re Auto. Refinishing Paint Antitrust Litig.*, MDL NO. 1426, 2004 WL

1068807, at *1 (E.D. Pa. May 11, 2004); 4 NEWBERG ON CLASS ACTIONS § 11:25, at 38-39

(4th ed. 2002).

When deciding preliminary approval, a court does not conduct a "definitive proceeding

on fairness of the proposed settlement."  *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp.

1379, 1384 (D.C. Md. 1983); *see also In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods.

Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995) (holding that the "preliminary determination

establishes an initial presumption of fairness"); *In re Am. Inv. Life Ins. Co. Annuity Mktg. and

Sales Practices Litig.,* 263 F.R.D. 226, 238 (E.D. Pa. 2009) (same). That definitive determination

must await the final hearing, at which the fairness, reasonableness, and adequacy of the

settlement are more fully assessed.  *See In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631,

638 (E.D. Pa. 2003).[4]  Indeed, as one court noted:

---

[4]    The factors considered for final approval of a class settlement as "fair, reasonable and
adequate" include: (1) the complexity, expense and likely duration of the litigation; (2) the
reaction of the class to the settlement; (3) the stage of the proceedings and the amount of
discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages;
(6) the risks of maintaining a class action through trial; (7) the ability of the defendants to
withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the
best possible recovery; and (9) the range of reasonableness of the settlement in light of all the
attendant risks of litigation.  *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *In re Warfarin
Sodium Antitrust Litig.*, 391 F.3d 516, 534-35 (3d Cir. 2004); *In re Prudential Ins. Co. of Am.
Sales Practices Litig.*, 962 F. Supp. 450, 562 (D.N.J. 1997); *In re Rite Aid Corp. Sec. Litig.*, 146
F. Supp. 2d 706, 713 (E.D. Pa. 2001).  At the preliminary approval stage, "the Court need not

> In evaluating a settlement for preliminary approval, the court need not reach any ultimate conclusions on the issues of fact and law that underlie the merits of the dispute . . . . Instead, the court must determine whether "the proposed settlement discloses grounds to doubt its fairness or otherwise obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and whether it appears to fall within the range of possible approval . . . . The analysis often focuses on whether the settlement is the product of 'arms-length negotiations.'

*Thomas v. NCO Fin. Sys.*, No. CIV.A. 00-5118, 2002 WL 1773035, at *5 (E.D. Pa. July 31, 2002) (internal citations omitted).  In determining at the preliminary approval stage whether an antitrust settlement falls within a "range of reasonableness," a court examines whether the "'(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'"[5] *In re Imprelis Herbicide Mktg., Sales Practices & Prods. Liab. Litig*., No. 11-md-2284, 2013 U.S. Dist. LEXIS 18332, at *7 (E.D. Pa. Feb. 11, 2013) (*quoting In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 638 (E.D. Pa. 2003) and *citing In re Gen. Motors Corp.*, 55 F.3d at 784).  After making such findings, a settlement agreement is entitled to a presumption of fairness and should be preliminarily approved.  *See id.* at *8.

Additionally, in reviewing a proposed settlement, courts may also consider the amount of relief provided, s*ee, e.g.*, *In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d 336, 344 (E.D. Pa. 2007), and commitments of settling defendants to provide information or cooperation that assists the class in prosecuting the action against non-settling defendants, *see e.g., In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d at 643.

---

address these factors, as the standard for preliminary approval is far less demanding." *Gates v. Rohm & Haas Co.,* 248 F.R.D. 434, 444 n.7 (E.D. Pa. 2008). Plaintiffs will thus fully address each of these factors in in their memorandum in support of their motion for final approval.

[5] The last factor, the percentage of objections, is premature at this stage.  *In re Imprelis*, U.S. Dist. LEXIS 18332, at *10.

Finally, the Court should consider that "settlement of litigation is especially favored by courts in the class action setting." *In re Ins. Brokerage Antitrust Litig.*, Case No. 04-5184, 2013 WL 3956378 (D.N.J. Aug. 1, 2013) (citing *In re Gen. Motors Corp.*, 55 F.3d at 784 (holding that "the law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation")); *Austin v. Pa. Dept of Corr.*, 876 F. Supp. 1437, 1455 (E.D. Pa. 1995) (explaining that "the extraordinary amount of judicial and private resources consumed by massive class action litigation elevates the general policy of encouraging settlements to 'an overriding public interest'").

As discussed below, the proposed Settlement here is entitled to a presumption of fairness because it provides for no preferential treatment of class representatives or segments of the class, does not provide for excessive compensation of attorneys,  provides significant relief to the Settlement Class, and requires that Cal-Maine provide additional information, and a witness to testify, regarding the facts and events at issue, and was negotiated at arm's length by experienced Class and Defense counsel after many months of fact discovery.

**B.     The Settlement Amount, the Factual Information Obligations and the Terms of the Agreement Support Preliminary Approval.**

 The $28,000,000 Settlement Amount exceeds the $25 million settlement amount in the Moark, LLC, Norco Ranch, Inc., and Land O'Lakes, Inc. settlement agreement previously approved by this Court.  ECF No. 700.  Moreover, the damages Plaintiffs suffered due to Cal-Maine's alleged conduct remain in the case, and, under joint and several liability, are recoverable from other Defendants.  *See In re Auto. Refinishing Paint Antitrust Litig.*, MDL NO. 1426, 2004 WL 1068807, at *2 (preliminarily approving settlement agreement because, *inter alia*, "this settlement does not affect the joint and several liability of the remaining Defendants in this alleged conspiracy").

And, as discussed above, the proposed Settlement Agreement provides for Cal-Maine's immediate assistance in providing to Plaintiffs factual information about Cal-Maine's knowledge of the documents and events at issue in this Action.  Class Counsel believe that this will further enhance and strengthen Plaintiffs' claims in this Action, while avoiding the risk and expense of continued litigation against Cal-Maine.  Plaintiffs expect this assistance to include further documentation and details, through an attorney proffer, regarding Cal-Maine's knowledge of the meetings held and agreements that Plaintiffs allege were made in support of the price-fixing conspiracy.  Moreover, Cal-Maine will make available a knowledgeable witness to testify at trial regarding issues that remain in dispute at that time, such as the alleged concerted supply restraint agreements, UEP's animal welfare guidelines and their intent and role in reducing production, and USEM's egg export programs and their intent to and effect of reducing egg supply.  In the opinion of Class Counsel, the proposed Settlement significantly benefits Plaintiffs and will materially assist Class Counsel in further analyzing their claims and in the further prosecution of this Action. *See In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d at 643 ("The provision of such [cooperation] is a substantial benefit to the classes and strongly militates toward approval of the Settlement Agreement."); *In re Ikon Office Supplies Inc. Sec. Litig.*, 194 F.R.D. 166, 177 (E.D. Pa. 2000) (noting that cooperation agreements are valuable when settling a complex case); *In re Auto. Refinishing Paint Antitrust Litig.*, 2004 WL 1068807, at *2 (acknowledging the assistance that the settling defendants will provide "in pursuing this case against the remaining Defendants").[6]

---

[6]   *See also In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1386 (D.C. Md. 1983) ("[T]he commitment [the] Distributor defendants have made to cooperate with plaintiffs will certainly benefit the classes, and is an appropriate factor for the court to consider in approving a settlement"); *In re Corrugated Container Antitrust Litig.*, MDL 3101981, WL 2093, at *16 (S.D. Tex. June 4, 1981), *aff'd*, 659 F.2d 1322, 1329 (5th Cir. 1981) ("The settlement

Class Counsel, who have substantial experience litigating antitrust class actions, believe the settlement amount is an appropriate amount of cash consideration for the discharge of the claims of the Class against Cal-Maine and a highly favorable result for the Class. The Settlement Agreement was entered into after review of Cal-Maine's sales figures and market share during the damages period, as well as the likely expense of and risks associated with litigating claims against Cal-Maine through trial.

Courts have accorded significant weight to the opinion of Class Counsel based on a thorough analysis of the facts. *See, e.g., In re Gen. Instruments Sec. Litig.,* 209 F. Supp. 2d 423, 431 (E.D. Pa. 2001); *Stewart v. Rubin,* 948 F. Supp. 1077, 1099 (D.D.C. 1996), *aff'd,* 124 F.3d 1309 (D.C. Cir. 1997) ("A court should defer to the judgment of experienced counsel who have competently evaluated the strength of the proof."); *McGuiness v. Parnes,* No. 87-2728-LFO, 1989 WL 29814, at *1 (D.D.C. Mar. 22, 1989) ("While the evaluation of the fairness and adequacy of a settlement such as this is anything but a scientific process, there is nothing about this Settlement suggesting that the Court should second-guess the product of the negotiations between the skilled and conscientious lawyers who represented parties on both sides of this litigation."); *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions,* 410 F. Supp. 659, 667 (D. Minn. 1974) ("The recommendation of experienced antitrust counsel is entitled to great weight.").

Finally, the Settlement Agreement is fair to the class as a whole. It provides no preferential treatment to Class Representatives, and Class Counsel anticipate the allocation of settlement funds will, as in the Moark settlement, be distributed pro-rata based on each class

---

agreements provided for cooperation from the settling defendants that constituted a substantial benefit to the class. Those provisions were intended to save plaintiffs time and expense in the continuing litigation . . . [and] made certain information and expertise available to the class which might not have been available through normal discovery.").

member's (including Class Representative's) purchases of shell eggs and egg products.  Class

representatives will benefit from the Settlement Agreement in the same way as any other

Settlement Class member.  *See* Allocation Order, Nov. 9, 2012 (ECF No. 761) (finding pro rata

allocation of settlement funds to be fair, reasonable, and adequate).  And, as noted, the

Agreement requires that any award for payment of attorneys' fees and costs is subject to proper

motion to, and approval by, the Court.

    C.    **The Negotiation Process With Cal-Maine Supports Preliminary Approval.**

    Settlements that result from arm's-length negotiations between experienced counsel are

generally entitled to deference from the court.  *In re Auto. Refinishing Paint Antitrust Litig.*, No.

MDL 1426, 2003 WL 23316645, at *6 (E.D. Pa. Sept. 5, 2003); *In re Linerboard Antitrust Litig.*,

292 F. Supp. 2d at 640 (holding that "[a] presumption of correctness is said to attach to a class

settlement reached in arm's-length negotiations between experienced, capable counsel" (*citing*

*Hanrahan v. Britt*, 174 F.R.D. 356, 366 (E.D. Pa. 1997))); *Lake v. First Nationwide Bank*, 156

F.R.D. 615, 628 (E.D. Pa. 1994) (giving "due regard to the recommendations of the experienced

counsel in this case, who have negotiated this settlement at arms-length and in good faith");

*Petruzzi's Inc. v. Darling-Delaware Co.*, 880 F. Supp. 292, 301 (M.D. Pa. 1995) ("[T]he

opinions and recommendations of such experienced counsel are indeed entitled to considerable

weight"); 2 NEWBERG ON CLASS ACTIONS, § 11.41 (3d ed. 1992) ("There is usually an

initial presumption of fairness when a proposed class settlement, which was negotiated at arm's

length by counsel for the class, is presented for court approval.").  This deference reflects the

understanding that vigorous negotiations between seasoned counsel protect against collusion and

advance the fairness considerations of Rule 23(e).

    As discussed above and in the accompanying Hausfeld Declaration, the Settlement with

Cal-Maine is the result of hard-fought, arm's-length negotiations between Class Counsel and

Cal-Maine's counsel, all experienced and capable lawyers in complex class actions and antitrust matters.[7]  Class Counsel and Cal-Maine's counsel vigorously advocated their respective clients' positions in the settlement negotiations and were prepared to litigate the case fully if no settlement was reached.  Hausfeld Decl. ¶ 4.  And the Parties engaged the services of an experienced, neutral mediator to facilitate the settlement negotiations, which continued with the mediator's assistance in the weeks following the initial in-person mediation session.  *Id.* ¶ 6.  As part of that process, the Parties exchanged, and provided to the mediator, comprehensive confidential mediation briefs laying out the strengths and weaknesses of the claims and defenses. *Id.*  Nothing in the course of the negotiations or in the substance of the proposed Settlement presents any reason to doubt its fairness.

> **D.    The Extent of Discovery at the Time the Settlement Agreement was Negotiated and Agreed to Supports Preliminary Approval.**

At the time the Parties began their mediation, and by the time they had entered into the Settlement Agreement, fact discovery was well advanced.  Not only had document requests been served, but Defendants had produced more than one million documents, a substantial portion of which had been reviewed by Class Counsel.  Additionally, depositions of fact witnesses had commenced, including the depositions of the two critical witnesses—UEP's former and current presidents, Al Pope and Gene Gregory.  Hausfeld Decl. ¶ 7.  Accordingly, the degree of discovery supports a finding that the Settlement is within the range of reasonableness.  *In re Imprelis*, 2013 U.S. Dist. LEXIS 18332, at *9-10 (finding settlement within range of reasonableness where "[a] considerable amount of preliminary discovery was conducted,

---

[7] The experience and qualifications of Interim Co-Lead Class Counsel are described in Interim Co-Lead Counsel's Submission in Support of Permanent Appointment of Interim Leadership Structure.  No. 08-cv-4653 (E.D. Pa.), ECF No. 26, and accompanying exhibits.

including the review of some 500,000 pages of documents . . . , the hiring and consultation of several experts, and a deposition of [Defendant's] product manager").

    **E.**    **The Expense and Uncertainty of Continued Litigation Against Cal-Maine Supports Preliminary Approval.**

The Settlement is particularly reasonable given the risks inherent in moving forward against Cal-Maine.  It has been often observed that "[a]n antitrust class action is arguably the most complex action to prosecute."  *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d at 639 (citation omitted); see *also Weseley v. Spear*, 711 F. Supp. 713, 719 (E.D.N.Y. 1989) (noting that antitrust class actions are "notoriously complex, protracted, and bitterly fought").  Continuing this litigation against Cal-Maine would entail a lengthy and expensive legal battle, which has already consumed nearly five-years.  This case does not follow a Department of Justice investigation or any public indictment.  It is reasonable to expect that all such matters would be sharply disputed and vigorously contested, as they were in the settlement negotiations. Additionally, Cal-Maine has asserted various defenses, and a jury trial (assuming the case proceeded beyond pretrial motions) might well turn on questions of proof, making the outcome inherently uncertain for both parties.  *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d at 639; *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 475-76 (S.D.N.Y. 1998) ("Antitrust litigation in general, and class action litigation in particular, is unpredictable. . . . [T]he history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal."). And, as the Court is aware,  Defendants' Omnibus Motion to Dismiss Plaintiffs' Claims for the period prior to September 25, 2004 on statute of limitations grounds (ECF No. 805) remains pending.  Plaintiffs thus also face the uncertainty associated with the scope of the relevant period.

Moreover, even after trial is concluded, there would very likely be one or more lengthy appeals. *In re Remeron End-Payor Antitrust Litig.*, No. Civ. 02-2007, 2005 WL 2230314, at \*17 (D.N.J. Sept. 13, 2005). The degree of uncertainty supports preliminary approval of the proposed Settlement Agreement. *See In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995).

Class counsel have considered the complexities of this litigation, the risks, expense and duration of continued litigation against Cal-Maine, and the likely appeal if Plaintiffs do prevail at trial. After weighing these against the guaranteed recovery to the Class and what Class Counsel believe to be the significant benefits of Cal-Maine's factual information obligations, Class Counsel firmly believe the Settlement represents a desirable resolution of this litigation as to Cal-Maine.

All of the relevant factors—the terms of the settlement itself, the nature of the negotiations, the degree of discovery at the time of settlement, the experience of Class Counsel and the risks of proceeding against Cal-Maine—all support the conclusion that the Settlement falls within the range of possible final approvals and is entitled to the presumption of fairness, permitting notice to issue to the Class.

## V.  PRELIMINARY CERTIFICATION OF THE PROPOSED CAL-MAINE SETTLEMENT CLASS IS WARRANTED

It is well-established that a class may be certified for purposes of settlement. *In re Pet Food Prods. Liability Litig.*, No. 07-2867, 2008 WL 4937632, at \*3 (D.N.J. Nov. 18, 2008) ("Class actions certified for the purposes of settlement are well recognized under Rule 23."); *Ikon*, 194 F.R.D. at 188 (class certified for purposes of settlement of securities class action). In the case of settlements, "tentative or temporary settlement classes are favored when there is little or no likelihood of abuse, and the settlement is fair and reasonable and under the scrutiny of the

trial judge." *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 205 (S.D.N.Y. 1995) (internal quotation and citation omitted).  The settlement here is fair, reasonable, and non-abusive.  It is thereby subject to approval by the Court.

Rule 23 governs the issue of class certification for both litigation and settlement classes. A settlement class should be certified where the four requirements of Rule 23(a)—numerosity, commonality, typicality and adequacy—are satisfied, and when one of the three subsections of Rule 23(b) is also met.  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 527-30.

## A.     This Case Satisfies The Prerequisites Of Rule 23(a).

Certification is appropriate under Rule 23(a) if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  This Court has already held that the similarly defined settlement class satisfies Rule 23(a)'s prerequisites in its July 16, 2012 Order granting final approval to the Moark, LLC, Norco Ranch, Inc., and Land O'Lakes, Inc. settlement agreement:

> The Settlement Class is so numerous that joinder of all members is not practicable, there are questions of law and fact common to the Settlement Class, the claims of the Class Representatives are typical of the claims of the Settlement Class, and the Class Representatives will fairly and adequately protect the interests of the Settlement Class. For purposes of this settlement, questions of law and fact common to the members of the Settlement Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Order, July 16, 2012 (ECF No. 700) ¶ 4.

### 1.     *The Settlement Class is sufficiently numerous.*

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be "impracticable."  *Robidoux v. Celani*, 987 F.2d 931, 935

(2d Cir. 1993).  There is no threshold number required to satisfy the numerosity requirement and the most important factor is whether joinder of all the parties would be impracticable for any reason.  *Stewart v. Abraham*, 275 F.3d 220, 227-28 (3d Cir. 2001) (noting that there is no minimum number to satisfy numerosity and observing that generally the requirement is met if the number of plaintiffs exceeds 40).  Moreover, numerosity is not determined solely by the size of the class but also by the geographic location of class members.  *Marsden v. Select Med. Corp.*, 246 F.R.D. 480, 484 (E.D. Pa. 2007).

Here, the proposed Settlement Class is comprised of purchasers of hundreds of millions of cases of shell eggs and of purchasers of egg products.  Third Consolidated Amended Class Action Complaint ("3CAC"), ¶ 108 (ECF No. 779).  In the Moark Settlement, notice of the Settlement Agreement was sent to more than 13,000 potential class members, and nearly 700 class members filed claims and received distributions from the Settlement Fund.  *See* Mem. in Supp. of DPP's Motion to Pay Costs of Settlement Administration (ECF No. 823-2) at 2, 6.  Moreover, Class Representatives are located in California, Illinois, Missouri, New York, North Carolina, Pennsylvania and Wisconsin.  3CAC, ¶¶ 32-38.  Putative class members are also geographically dispersed.  Thus, joinder of all class members would be impracticable and the Settlement Class is sufficiently numerous to satisfy Rule 23(a)(1).  *Stewart*, 275 F.3d at 227-28 (observing that generally the requirement is met if the number of plaintiffs exceeds 40); *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 508-09 (S.D.N.Y. 1996) (holding that class members numbering a million made joinder impracticable); *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 278 (S.D.N.Y. 1999) (numerosity requirement met where potential class exceeded 20,000).

2.    *There are common questions of law and fact.*

Antitrust cases like this one easily meet the commonality requirement of Rule 23(a)(2). *See In re K-Dur Antitrust Litig.*, No. 01-1652, 2008 WL 2699390, at *4 (D.N.J. Apr. 14, 2008) (holding that common issues predominate with respect to whether defendants violated antitrust law); *Weisfeld v. Sun Chem. Corp.*, 210 F.R.D 136, 141 (D.N.J. 2002) (holding that conspiracy to restrain trade subject to common proof); *In re OSB Antitrust Litig.*, 2007 WL 2253418, at *4 (E.D. Pa. Aug. 3, 2007); *In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D 180, 186-87 (D.N.J. 2003) (holding that common issues predominated on issue of alleged antitrust violation). Moreover, to satisfy commonality:

> The members need not have identical claims to have common legal or factual issues that satisfy commonality. Instead, all that is required is that the litigation involve some common questions and that plaintiffs allege harm under the same theory.

*In re Microcrystalline Cellulose Antitrust Litig.*, 218 F.R.D. 79, 83-84 (E.D. Pa. 2003) (internal citations omitted).

Whether Defendants entered into an illegal agreement to reduce production and fix the prices of eggs is a factual question common to all class members because this question is an essential element of proving an antitrust violation.  Common legal questions include whether, if such an agreement was reached, Defendants violated antitrust laws. "Indeed, consideration of the conspiracy issue would, of necessity focus on Defendants' conduct, not the individual conduct of the putative class members."  *In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 484 (W.D. Pa. 1999); *Transamerican Refining Corp. v. Dravo Corp.*, 130 F.R.D. 70, 75 (S.D. Tex. 1990) ("[T]he conspiracy issue … is susceptible of generalized proof since it deals primarily with what the Defendants themselves did and said."); *In re Catfish Antitrust Litig.*, 826 F. Supp. 1019, 1039 (N.D. Miss. 1993) ("Evidence of a national conspiracy . . . would revolve around what the

defendants did, and said, if anything, in pursuit of a price fixing scheme."); *In re Warfarin*, 391 F.3d at 528 ("In other words, while liability depends on the conduct of DuPont, and whether it conducted a nationwide campaign of misrepresentation and deception, it does not depend on the conduct of individual class members.").  Because there are several common legal and factual questions related to potential liability, the commonality requirement of Rule 23(a)(2) is met.

3.    *The Representative Plaintiffs' claims are typical of those of the Settlement Class.*

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  As the Third Circuit described in *Baby Neal v. Casey*, 43 F.3d 48 (3d Cir. 1994):

> The typicality inquiry is intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented.   The typicality criterion is intended to preclude certification of those cases where the legal theories of the named plaintiffs potentially conflict with those of the absentees by requiring that the common claims are comparably central to the claims of the named plaintiffs as to the claims of the absentees."
>
> Typicality entails an inquiry whether "the named plaintiff's individual circumstances are markedly different or . . . the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." Commentators have noted that cases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims.

*Id.* at 57-58 (internal citations omitted).

Moreover, "factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory."  *Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 923 (3d Cir. 1992) (internal citations omitted).  "Even if there are 'pronounced factual

differences among the plaintiffs, typicality is satisfied as long as there is a strong similarity of legal theories and the named plaintiff does not have any unique circumstances.'" *Microcrystalline*, 218 F.R.D. at 84; *see also Mercedez-Benz*, 213 F.R.D at 185 ("[W]hile the Court must ensure that the interests of the plaintiffs are congruent, the Court will not reject the plaintiffs' claim of typicality on speculation regarding conflicts that may arise in the future.").

Here, typicality is satisfied because the claims of the Class Representatives and absent class members rely on the same legal theories and arise from the same alleged "conspiracy" and "illegal agreement" by Defendants, namely, Defendants' agreement to reduce production and artificially fix and/or inflate the prices of eggs.  3CAC, ¶¶ 536.  Moreover, Plaintiffs allege that all putative class members were direct purchasers of eggs and/or egg products and suffered injury as a result of Defendants' alleged anticompetitive conduct.  *Id.* ¶¶ 32-38.  And the Class is divided into subclasses to address any differences between shell egg purchases and purchases of processed egg products.  Accordingly, the Rule 23(a)(3) typicality requirement is satisfied.

4.    *The Class Representatives will fairly and adequately protect the interests of the Class.*

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  As the Third Circuit explained in *Bogosian v. Gulf Oil Corp*., 561 F.2d 434 (3d Cir. 1977), the adequate representation requirement of Rule 23(a)(4):

> [guarantees] that the representatives and their attorneys will competently, responsibly, and vigorously prosecute the suit and that the relationship of the representative parties' interest to those of the class are such that there is not likely to be divergence in viewpoint or goals in the conduct of the suit.

*Id.* at 449.

Here, Class Counsel have extensive experience and expertise in antitrust disputes, complex litigation and class action proceedings throughout the United States. Class Counsel are qualified and able to conduct this litigation, as this Court recognized when appointing them as Interim Co-Lead Counsel. Class Counsel have vigorously represented Plaintiffs in the settlement negotiations with Cal-Maine and have vigorously prosecuted this action. Moreover, the named Class Representatives have adequately represented the absent Class Members' interests, actively participating in discovery by responding to document production requests and interrogatories, and have no conflicts with them. Adequate representation under Rule 23(a)(4) is therefore satisfied.

## B. The Class Representatives' Claims Satisfy The Prerequisites Of Rule 23(b)(3).

In addition to satisfying Rule 23(a), Plaintiffs must show that each putative class falls under at least one of the three subsections of Rule 23(b). Here, the Settlement Class qualifies under Rule 23(b)(3), which authorizes class certification if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."[8] Fed. R. Civ. P. 23(b)(3). This Court has already found that a similar settlement class satisfies Rule 23(b)'s prerequisites in its July 16, 2012 Order approving the Moark, LLC, Norco Ranch, Inc., and Land O'Lakes, Inc. settlement classes. Order, July 16, 2012 (ECF No. 700); *see also* Mem. in Supp. of Order (ECF No. 699).

---

[8] Since this is a settlement class, the Court need not examine the manageability of the class at trial. "[I]n a settlement-only class action . . . the court certifying the class need not examine issues of manageability. *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 306 (3d Cir. 2005) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S.591, 620 (1997)) (explaining that issues of individual liability and damages are even less likely to defeat predominance in settlement-only class actions).

Rule 23(b)(3) is "designed to secure judgments binding all class members, save those who affirmatively elect[] to be excluded," where a class action will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614-15 (1997).  Certification of the proposed Settlement Class under Rule 23(b)(3) will serve these purposes.

1.   <u>*Common legal and factual questions predominate.*</u>

The Rule 23(b)(3) predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation . . . ."  *Sullivan v. DB Inv., Inc.*, 667 F.3d 273, 297 (3d Cir. 2011) *cert. denied,* 132 S. Ct. 1876 (2012) (quoting *In re Ins. Broker. Antitrust Litig.*, 579 F.3d 241, 266 (3d Cir. 2009) (internal quotations omitted)); *In re Hydrogen Peroxide Antitrust Litig.*  552 F.3d 305, 311 (3d Cir. 2008); *see also Mercedes-Benz*, 213 F.R.D. at 186 ("Predominance requires that common issues be both numerically and qualitatively substantial in relation to the issues peculiar to individual class members.").

A plaintiff seeking certification of an antitrust class action must show that common or class-wide proof will predominate with respect to: "(1) a violation of the antitrust laws… (2) individual injury resulting from that violation, and (3) measurable damages."  *In re Hydrogen Peroxide*, 552 F.3d at 311;  *Danny Kresky Enter. Corp. v. Magid*, 716 F.2d 206, 209-10 (3d Cir. 1983); *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 156 (3d Cir. 2002).  The Rule 23(b)(3) test of predominance can be "readily met" in antitrust cases.  *Amchem Products*, 521 U.S. at 625.

The Third Circuit recently discussed the predominance inquiry in the specific context of Section 1 antitrust settlements in *In re Ins. Brokerage Antitrust Litigation*, 579 F.3d 241 (3d Cir. 2009) (applying *Hydrogen Peroxide* in a settlement context).   The case involved allegations of bid rigging and steering among brokers and insurers in the property and casualty insurance

industry.  As here, plaintiffs brought class action claims arising under Section 1 of the Sherman

Act.  On review, the Third Circuit examined the propriety of the standards applied by the district

court in certifying two settlement-only classes against individual defendants.  The district court

had granted certification to both classes.

In evaluating a challenge to the predominance of common issues for each settlement

class, the Third Circuit first noted that "because the 'clear focus' of an antitrust class action is on

the allegedly deceptive conduct of defendant and not on the conduct of individual class

members, common issues necessarily predominate."  *In re Ins. Brokerage Antitrust Litig.*,  579

F.3d at 267; *see also Sullivan*, 667 F.3d at 299 (finding that *Wal-Mart Stores Inv. v. Dukes*, 131

S. Ct. 2541 (2011), bolstered a finding that common issues predominated in an antitrust case

where the answers to the questions of alleged anticompetitive conduct and the harm it caused are

common as to all class members).  The court then turned to the specific common issues

identified by the district court with respect to the antitrust claims:

> (1) whether the … Defendants entered into a conspiracy to allocate
> the market for the sale of insurance; (2) whether the …
> Defendants' alleged conspiracy had the purpose and effect of
> unlawfully restraining competition in the insurance industry; [and]
> (3) whether the . . . Defendants' conduct violated Section 1 of the
> Sherman Act.

*In re Ins. Brokerage Antitrust Litig.*,  579 F.3d at 267.

Finding these issues satisfied predominance, the court "examine[d] [each of] the elements

of plaintiffs' claim through the prism of Rule 23."  The court analyzed whether common

questions of law or fact existed with respect to the four elements of a Sherman Act Section One

conspiracy claim, which require a plaintiff to show:  "(1) concerted action by the defendants; (2)

that produced anticompetitive effects within the relevant product and geographic markets; (3)

that the concerted actions were illegal; and (4) that it was injured as a proximate result of the concerted action." *Id.*

The court found that "[b]ecause the first and third elements of a Sherman Act violation focus on the conduct of the defendants . . . common questions abound with respect to whether the defendants engaged in illegal, concerted action" and that "[t]he second element of a Sherman Act violation, which focuses on the effects of the defendants' challenged conduct, also involves common questions in the present case, including whether the …Defendants' actions reduced competition for insurance, whether the . . . Defendants' actions resulted in a consolidation of the insurance industry, and whether the . . . Defendants' actions produced an increase in the cost of premiums for commercial insurance." *Id.* at 268.

Thus, as here, the issues common to the class in *Insurance Brokerage* concerned whether Defendants "engaged in illegal concerted action" and whether that action "reduced competition," and "produced an increase in the cost" of the commodity in the relevant market. *Id.* There, as here, it is clear that the same set of core operative facts and theory of liability apply to each class member. As discussed above, whether Defendants entered into an illegal agreement to reduce production and artificially fix, raise, maintain, and/or stabilize the prices of eggs is a factual question common to all class members. If Class Representatives and potential class members were to bring individual actions, they would each be required to prove the same wrongdoing by Defendants in order to establish liability. Therefore, common proof of the first three elements of Defendants' violation of antitrust law will predominate.

After examining the first three elements of the Sherman Act conspiracy claim, the court in *Insurance Brokerage* turned to the final element: injury or antitrust impact. The court found that "the task for plaintiffs is to demonstrate that the element of antitrust impact is capable of

proof at trial through evidence that is common to the class rather than individual to its members." *Id.* The plaintiffs in that case argued antitrust injury was a common question because the overcharge attributable to the conspiracy was "built into every commercial premium for commercial insurance products, and the conspiratorial conduct of all Defendants reduced or eliminated competition for insurance products, thereby raising the insurance premiums paid by Plaintiffs and all members of the class." *Id.* The court agreed, finding that "whether the named plaintiffs and absent class members were proximately injured by the conduct of the . . . Defendants is a question that is capable of proof on a class-wide basis" *Id.* After a brief discussion of the flow of injury through the insurance brokerage market, the court concluded that "we are satisfied that the element of antitrust injury—that is, the fact of damages—is susceptible to common proof, even if the amount of damage that each plaintiff suffered could not be established by common proof." *Id.*

The *Insurance Brokerage* decision, expressly accounting for the Third Circuit's earlier ruling in *Hydrogen Peroxide*, also accords with earlier cases holding that the fact of antitrust injury is susceptible to common proof, even where individual damages may differ. *See e.g., K-Dur*, 2008 WL 2699390, at *20; *Flat Glass*, 191 F.R.D. at 486 ("[T]he proof plaintiffs must adduce to establish a conspiracy to fix prices, and that defendants' base price was higher than it would have been absent the conspiracy, would be common to all class members."); *In re Plywood Antitrust Litig.*, 76 F.R.D 570, 584 (E.D. La. 1976) ("[I]f the members of each of the classes prove they purchased softwood plywood during the relevant period and that defendants conspiratorially increased or stabilized plywood prices, then the trier of fact may conclude that the requisite fact of injury occurred."); *Hedges Enters., Inc. v. Cont'l Grp., Inc.*, 81 F.R.D. 461,

475 (E.D. Pa. 1979) (proof of a conspiracy to establish a "base" price would establish at least the fact of damage, even if the extent of the damages suffered by the plaintiffs would vary).

Moreover, *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013), poses no barrier to certification here.  In that case, injury was premised on four theories of impact (each theory may have affected some but not all class members); although all but one theory was rejected by the court, the damages model did not isolate injury tied to the remaining theory and thus impact could not be proven class-wide. 133 S. Ct. at 1430, 1434-35.  Here, DPPs offer just one theory of liability—Defendants conspired to curtail supply and thus artificially inflated egg prices—which will be capable of measurement on a class-wide basis since all class members purchased eggs or egg products.

Here, the alleged conspiracy is the overriding predominant question in this case.  And, as alleged in the Complaint, the conspiracy permitted all Defendants to artificially maintain or inflate the price of eggs by eliminating the risk that customers would be able to avoid the non-competitive price, thus working an antitrust injury onto the entire class.  *See* 3CAC, ¶¶ 496, 530-531.  Accordingly, common or class-wide proof will also predominate with respect to the fact of injury or impact in this case.[9]

---

[9] Regarding the amount of damages, "[a]ntitrust cases nearly always require some speculation as to what would have happened under competitive conditions, to estimate the damage done by restraints on trade or other collusion, but this is not fatal to class certification." *Microcrystalline*, 218 F.R.D. at 92 (*citing In re Fine Paper Antitrust Litig.*, 82 F.R.D 143, 151-52 (E.D. Pa. 1979)) (noting that diversity of product, marketing practices, and pricing have not been fatal to class certification in numerous cases where conspiracy is "the overriding predominant question").   Accordingly, the need to determine the amount of damage sustained by each plaintiff is an insufficient basis for which to decline class certification.  *In re Cmty. Bank of N. Va.*, 418 F.3d at 305-306 ("Although the calculation of individual damages is necessarily an individual inquiry, the courts have consistently held that the necessity of this inquiry does not preclude class action treatment where class issues predominate.");  *In re Warfarin Sodium Antitrust Litigation*, 212 F.R.D. 231, 242 (D. Del 2003) ("[T]he need for individual damages

2.       *A class action is superior to other methods of adjudication.*

"The superiority requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternate available methods of adjudication." *In re The Prudential Ins. Co. of Am. Sales Practices Litig. Agent Actions*, 148 F.3d 283, 316 (3d Cir. 1998), *cert. denied*, *Krell v. Prudential Ins. Co. of Am.*, 525 U.S. 1114 (1999). In evaluating the superiority of a class action, the Court should inquire as to the class members' interest in individually controlling the prosecution of separate actions, the extent and nature of any litigation concerning the controversy already commenced by members of the class, and the desirability or undesirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3).

Here, a class action is superior to other available methods for the fair and efficient adjudication of class claims, "because litigating all of these claims in one action is far more desirable than numerous separate actions litigating the same issues." *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d at 259. Absent class action certification, the Court may be faced with dozens of individual lawsuits, all of which would arise out of the same set of operative facts. By proceeding as a class action, resolution of common issues alleged in one action will be a more efficient use of judicial resources and bring about a single outcome that is binding on all class members. Also, as in most antitrust lawsuits, potential plaintiffs are likely to be geographically dispersed, as are the Class Representatives. As such, the realistic alternative to a class action is many scattered lawsuits with possibly contradictory results for some plaintiffs and Defendants. These very issues led the Supreme Court to acknowledge that the unique qualities of antitrust litigation often mean that a class action is superior to individual lawsuits. *Amchem*, 521 U.S. at

---

calculations does not defeat predominance and class certification") *aff'd*, 391 F.3d 516, 534-35 (3d Cir. 2004).

617.  Finally, this is an appropriate forum to litigate the case because two of the Class

Representatives are located in the district, many of the Defendants resided or transacted business

in the district during the Class Period, and a substantial portion of the affected interstate trade

and commerce was carried out in the district.  3CAC, ¶ 26.  This is also the forum selected by the

Judicial Panel on Multidistrict Litigation.

## VI.   PLAINTIFFS' MOTION FOR LEAVE TO FILE MOTION FOR ATTORNEYS' FEES AND EXPENSES

Plaintiffs also seek leave to file a motion for an award of attorneys' fees and for

reimbursement of litigation expenses from the Settlement Amount.[10]  As specified in the

Proposed Order filed herewith, Class Counsel's motion for attorneys' fees and for

reimbursement of expenses shall be filed 45 days in advance of the Settlement objection and opt-

out deadline, and shall be posted on the www.eggproductssettlement.com website.  The timing

and form of notice will provide the potential class members with both sufficient notice of the

motion and a reasonable opportunity to review it prior to determining whether to object to the

motion or Settlement Agreement or opt-out of the class.[11]  Additionally, as set forth in the

Proposed Order, the Class Notice of the Settlement Agreement shall include the date on which

the motion for attorneys' fees and expenses shall be filed, and inform the Class that the motion

will be made available on the settlement website at that time.

## VII.   CONCLUSION

For the reasons set forth above, Plaintiffs request that the Court: (1) preliminarily approve

the Settlement Agreement; (2) certify a class for purposes of the Settlement; and (3) grant

---

[10] *See* Order, July 18, 2012 (ECF No. 704) n.1 (directing Plaintiffs, pursuant to CMO No. 1, to seek leave of Court prior to filing a motion for fees and expenses).

[11] *See* Order, Aug. 15, 2013 (ECF No. 727) n.2 (concluding that the class must have sufficient notice of, and adequate opportunity to object to, a motion for fees and expenses prior to the objection deadline).

Plaintiffs leave to file a motion for attorneys' fees and reimbursement of litigation expenses as provided in the Proposed Order.

Dated:  August 23, 2013                     Respectfully submitted,


                                            /s/        Steven A. Asher

                                            Steven A. Asher
                                            **WEINSTEIN KITCHENOFF & ASHER LLC**
                                            1845 Walnut Street, Suite 1100
                                            Philadelphia, PA 19103
                                            (215) 545-7200
                                            (215) 545-6536 (fax)
                                            asher@wka-law.com
                                            ***Interim Co-Lead Counsel and Liaison Counsel for Direct Purchaser Plaintiffs***

                                            Michael D. Hausfeld
                                            **HAUSFELD LLP**
                                            1700 K Street NW
                                            Suite 650
                                            Washington, DC  20006
                                            (202) 540-7200
                                            (202) 540-7201 (fax)
                                            mhausfeld@hausfeldllp.com
                                            ***Interim Co-Lead Counsel for Direct Purchaser Plaintiffs***

                                            Stanley D. Bernstein
                                            **BERNSTEIN LIEBHARD LLP**
                                            10 East 40th Street, 22nd Floor
                                            New York, New York 10016
                                            (212) 779-1414
                                            (212) 779-3218 (fax)
                                            bernstein@bernlieb.com
                                            ***Interim Co-Lead Counsel for Direct Purchaser Plaintiffs***

                                            Stephen D. Susman
                                            **SUSMAN GODFREY LLP**
                                            654 Madison Avenue, 5th Floor
                                            New York, NY 10065-8404

(212) 336-8330
(212) 336-8340 (fax)
ssusman@susmangodfrey.com

**_Interim Co-Lead Counsel for Direct Purchaser_**
**_Plaintiffs_**


On the Brief:

Stephen R. Neuwirth
**QUINN EMANUEL URQUHART**
**& SULLIVAN**
51 Madison Avenue, 22nd Floor
New York, New York  10010
(212) 849-7000
(212) 849-7165
stephenneuwirth@quinnemanuel.com