IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: PROCESSED EGG PRODUCTS ANTITRUST LITIGATION | : : : : : | MULTIDISTRICT LITIGATION |
| THIS DOCUMENT APPLIES TO ALL DIRECT PURCHASER ACTIONS | : : | No. 08-md-2002 |

O R D E R

**(1) GRANTING PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT AGREEMENT BETWEEN DIRECT PURCHASER PLAINTIFFS AND CAL-MAINE FOODS, INC.; (2) CERTIFYING THE CLASS FOR PURPOSES OF SETTLEMENT; (3) GRANTING LEAVE TO FILE MOTION FOR FEES AND EXPENSES; (4) GRANTING PRELIMINARY APPROVAL OF THE PROPOSED AMENDMENT TO SETTLEMENT AGREEMENT BETWEEN DIRECT PURCHASER PLAINTIFFS AND SPARBOE FARMS, INC.; AND (5) APPROVING THE PARTIES' NOTICE PLAN**

**AND NOW**, this 28th day of February, 2014, upon consideration of Direct Purchaser Plaintiffs' Motion for Preliminary Approval of Class-Action Settlement with Defendant Cal-Maine Foods, Inc., for Certification of Class Action for Purposes of Settlement, and for Leave to File Motion for Fees and Expenses (Docket No. 848) and Direct Purchaser Plaintiffs' Motion for (1) Preliminary Approval of Amendment to the Sparboe Settlement Agreement, and (2) Approval of Notice Plan for the Proposed Cal-Maine Settlement Agreement & Proposed Sparboe Amendment (Docket No. 853), and following a hearing on these Motions on February 26, 2014, **it is HEREBY ORDERED and DECREED that:**

   1.   Direct Purchaser Plaintiffs' Motion for Preliminary Approval of Class-Action Settlement with Defendant Cal-Maine Foods, Inc., for Certification of Class Action for Purposes of Settlement, and for Leave to File Motion for Fees and Expenses (Docket No. 848) is GRANTED.

2. The background of this consolidated multidistrict litigation has been extensively recounted elsewhere. Defendants, some of the nation's largest egg producers, including Cal-Maine Foods, Inc. ("Cal-Maine") and Sparboe Farms, Inc. ("Sparboe"), allegedly conspired to reduce egg output and thus fix, raise, maintain, and/or stabilize the prices of eggs and egg products in the United States. Direct Purchaser Plaintiffs allegedly paid higher prices as a result of this conspiracy, and they now seek treble damages, injunctive relief, attorneys' fees, and costs. Earlier in this litigation, Direct Purchaser Plaintiffs reached settlement agreements, for which the Court granted final approval in 2012, with the Moark Defendants and Sparboe. *See generally, e.g., In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 249 (E.D. Pa. 2012) (Moark); *In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 278 (E.D. Pa. 2012) (Sparboe).

3. After a year and a half of arm's-length negotiations between experienced counsel, facilitated by a neutral mediator; mature fact discovery of over one million documents; and commencement of deposition of fact witnesses, the Direct Purchaser Plaintiffs and Cal-Maine have reached a Settlement Agreement ("Cal-Maine Settlement Agreement," Docket No. 848-2, Ex. A) for which they now seek the Court's preliminary approval.

4. The Cal-Maine Settlement Agreement defines the Settlement Class as follows:

All persons and entities that purchased Shell Eggs and Egg Products in the United States directly from any Producer, including any Defendant, during the Class Period from January 1, 2000 through the date on which the Court enters an order preliminarily approving the Agreement and certifying a Class for Settlement purposes.

(a) Shell Egg SubClass

All individuals and entities that purchased Shell Eggs in the United States directly from any Producer, including any Defendant, during the Class Period from January 1, 2000 through the date on which the Court enters an order preliminarily approving the Agreement and certifying a Class for Settlement purposes.

(b) Egg Products SubClass

> All individuals and entities that purchased Egg Products produced from Shell Eggs in the United States directly from any Producer, including any Defendant, during the Class Period from January 1, 2000 through the date on which the Court enters an order preliminarily approving the Agreement and certifying a Class for Settlement purposes.
>
> Excluded from the Class and SubClasses are Defendants, Other Settling Defendants, and Producers, and the parents, subsidiaries and affiliates of Defendants, Other Settling Defendants, and Producers, all government entities, as well as the Court and staff to whom this case is assigned, and any member of the Court's or staff's immediate family.

5. The Cal-Maine Settlement Agreement establishes $28 million as the Settlement Amount. Class members will receive distributions from the Settlement Amount based pro-rata on each Class member's purchases, and the cost of the Notice Plan and any award of attorneys' fees and litigation expenses will be paid from the Settlement Amount.

6. The Cal-Maine Settlement Agreement also requires Cal-Maine to provide an attorney proffer related to Cal-Maine's knowledge, and that of its directors, officers, employees, and agents, of the facts relating to documents, witnesses, meetings, communications, conduct, and events at issue in this litigation. Cal-Maine agrees to provide, via the proffer by Cal-Maine's attorney, information related to transactional data, to authenticate documents sent and received by Cal-Maine, and to make a witness available to testify on facts and issues in dispute at the time of trial.

7. In exchange for the Settlement Amount, the Direct Purchaser Plaintiffs release Cal-Maine from any and all claims they raised or could have raised regarding any agreement or understanding among Defendant Producers; the reduction or restraint of supply; or the pricing, selling, discounting, marketing, or distributing of Shell Eggs and Egg Products.

8. The preliminary approval determination requires the Court to consider whether "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the

proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 638 (E.D. Pa. 2003) (citing *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785-86 (3d Cir. 1995)); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 233 n. 18 (3d Cir. 2001). If, after consideration of those factors, a court concludes that the settlement should be preliminarily approved, "an initial presumption of fairness" is established. *In re Linerboard*, 292 F.Supp.2d at 638 (citing *In re Gen. Motors Corp.*, 55 F.3d at 785). Here, based on these factors, the Court concludes that the Proposed Cal-Maine Settlement Agreement falls within the range of reasonableness.

9. In addition, where, as here, the Court has not already certified a class, the Court must also determine whether the proposed settlement class satisfies the requirements of Rule 23. *Amchem v. Windsor*, 521 U.S. 591, 620 (1997). At the preliminary approval stage, the Court may conditionally certify the class for purposes of providing notice. David F. Herr, *Annotated Manual for Complex Litigation* § 21.632 (West, 4th ed. 2013) ("The judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)."). Accordingly, at this stage, the Court must determine whether the proposed class should be conditionally certified, and leave the final certification decision for the Fairness Hearing.

    a. Rule 23(a) requires that the parties moving for class certification demonstrate that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect

the interests of the class." Fed. R. Civ. P. 23(a). Accordingly, the Court finds that:

   i. The members of the Cal-Maine Settlement Class, defined above, are ascertainable from objective criteria, such as Cal-Maine's records, and that they are so numerous that their joinder before the Court would be impracticable.

   ii. The commonality requirement is satisfied insofar as Direct Purchaser Plaintiffs have alleged one or more questions of fact and law common to the Cal-Maine Settlement Class, including whether Cal-Maine violated federal antitrust law.

   iii. The Class Representatives have claims that are typical of the claims of the Class, because the Representatives' claims rely on the same legal theories and arise from the same illegal agreement. All putative Class members were direct purchasers of Shell Eggs or Egg Products, as reflected in the two SubClasses.

   iv. The requirement of adequacy of representation is met because Class Counsel are extensively experienced litigators and there are no apparent conflicts of interest.

b. Under Federal Rule of Civil Procedure 23(b)(3), a class action may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed R. Civ. P. 23(b)(3). The Court finds that this requirement is met.

10. The Court makes no determination concerning the manageability of this action as a class action if it were to go to trial. *See In re Cmty. Bank of N. Va.*, 418 F.3d 277, 306 (3d Cir. 2005).

11. **Direct Purchaser Plaintiffs' request for leave to file a Motion for Attorneys' Fees and Litigation Expenses is GRANTED** and such Motion shall be filed according to the schedule set out below. Interim Co-Lead Counsel for Direct Purchaser Plaintiffs shall include in the text of their proposed Direct Mail Notice and Publication Notice of the Settlement Agreement the deadline by which Direct Purchaser Plaintiffs must file their Motion for Attorneys' and Litigation Expenses and a statement that Class members may review the Motion for Attorneys' Fees and Litigation Expenses at the www.eggproductssettlement.com website prior to the objection and opt-out deadlines set forth below.

12. **Direct Purchaser Plaintiffs' Motion for (1) Preliminary Approval of Amendment to the Sparboe Settlement Agreement, and (2) Approval of Notice Plan for the Proposed Cal-Maine Settlement Agreement & Proposed Sparboe Amendment (Docket No. 853) is GRANTED.**

13. The Sparboe Settlement Agreement contains a provision requiring the Sparboe Settlement Class Period to expand to meet the characteristics of more expansive definitions in any subsequent settlements with other Defendants (Docket No 172-2, -3, at ¶ 31). Accordingly, because the Proposed Cal-Maine Settlement Agreement class runs from January 1, 2000, to the date of this Order, the Sparboe Settlement Class Period must also be temporally extended to the date of this Order, as reflected in the Proposed Sparboe Amendment.

    a. Under the Proposed Sparboe Amendment, any existing members of the Sparboe Settlement Class, as well as any class members who become members of the Sparboe Settlement Class solely because of the expansion of the Class Period, may object to the Sparboe Amendment. Persons or entities

>   who become members of the Sparboe Settlement Class solely on account of the expansion of the Class Period may opt out.
>
>   b. Pursuant to the Sparboe Settlement Agreement, Sparboe shall bear none of the cost of notice of the Proposed Sparboe Amendment. Notice of the Proposed Sparboe Amendment shall be provided together with notice of the Proposed Cal-Maine Settlement Agreement, as detailed below.

14. The Court finds, consistent with its earlier findings, *see generally* 284 F.R.D. 249; 284 F.R.D. 278, that the Proposed Sparboe Amendment is sufficiently fair, reasonable, and adequate so as to warrant preliminary approval and dissemination of notice of the Amendment.

15. **The Court hereby approves the Proposed Notice Plan for the Proposed Cal-Maine Settlement Agreement and the Proposed Sparboe Amendment as "the best notice that is practicable under the circumstances," as required by Federal Rule of Civil Procedure 23(c)(2)(B).** The Notice Plan includes Direct Mail Notice, Publication Notice, a website, and a toll-free hotline.

16. **The Notice Plan, the Proposed Cal-Maine Settlement Agreement, and the Proposed Sparboe Amendment shall proceed in the following manner and on the following schedule:**

>   a. **Garden City Group ("GCG") is appointed Claims Administrator and is approved to implement the Notice Plan and to administer claims under the Cal-Maine Settlement Agreement and Sparboe Amendment.**
>
>   b. **By March 28, 2014,** each Defendant shall provide to GCG a supplemental production that shall include the names and addresses of all customers in the United States (i) to whom that Defendant sold Shell Eggs or Egg Products in

7

the United States between the date of that Defendant's most recent customer name and address production to GCG and the date of the entry of this Order; and (ii) that were not included in that Defendant's most recent customer name and address production to GCG. The customer information transmitted by Defendants to GCG:

    i. Shall be produced in a mutually agreeable electronic format or, if not available electronically, in the form in which such information is regularly maintained;

    i. shall be treated as confidential, and shall only be used by GCG for purposes of creating and maintaining a customer database and for disseminating notice; and

    ii. shall not be shared with Direct Purchaser Plaintiffs, Indirect Purchaser Plaintiffs, their counsel, or their experts.

c. **By May 2, 2014,** GCG shall send notice by U.S. First Class mail, postage prepaid, to all individuals whose names and addresses were produced by Defendants to GCG (Direct Mail Notice). The Direct Mail Notice shall be in substantially the same format as that proposed at Docket No. 853-3.

d. GCG shall publish notice (Publication Notice) in substantially the same format as that proposed at Docket No. 853-4, as follows:

    i. **By May 2, 2014,** GCG shall publish Direct Mail Notice, relevant Court documents, the Cal-Maine Settlement Agreement, the Sparboe Amendment, any Settlement updates, and answers to "Frequently Asked Questions" at www.eggproductssettlement.com.

    ii. **By May 2, 2014,** GCG will staff a toll-free hotline, 866-881-8306, to answer any Settlement Class member's questions.

    iii. **By May 9, 2014,** on one occasion, in the National Edition of *The Wall Street Journal*, on one-sixth of the page.

    iv. **By May 9, 2014,** or as close thereto as publication schedules permit, on one occasion, in the following industry publications: Restaurants and Institutions, Restaurant Business, Convenience Store News, Hotel F&B, Nation's Restaurant News, School Nutrition, Food Service Director, Progressive Grocer, Food Manufacturing, Supermarket News, Stores, Egg Industry Magazine, Banking Buyer, Modern Baking, Food Processing, Long Term Living, and PetFood Industry.

    v. **By May 9, 2014,** GCG shall issue press releases, consisting of substantially the same language of the Publication Notice, through (a) PR Newswire and (b) 1000 journalists in the restaurant and food industry.

    vi. **By May 30, 2014,** Direct Purchaser Plaintiffs shall file an affidavit prepared by GCG that details the process engaged in by GCG to effect the Notice Plan, and confirms that the requirements regarding Direct Mail Notice, Publication Notice, the website, and the toll-free hotline have been completed in accordance with this Order.

e. Direct Purchaser Plaintiffs shall submit their Motion for Attorneys' Fees and Litigation Expenses by **June 20, 2014**, which date shall be inserted in the Direct Mail Notice and Publication Notice.

f. **Requests for exclusion from the Cal-Maine Settlement** must be First-Class Mail postmarked or hand-delivered to GCG, at the address indicated in the relevant notice, **by August 1, 2014**, which date shall be inserted in the Direct Mail Notice and Publication Notice.

g. **Objections to the Sparboe Amendment** must be First-Class Mail postmarked or hand-delivered to the Court, Counsel for Direct Purchaser

Plaintiffs, and Counsel for Sparboe, at the addresses indicated in the relevant notice, **by August 1, 2014**, which date shall be inserted in the Direct Mail Notice and Publication Notice.

h. **Requests for exclusion from the Sparboe Settlement, as amended by the Sparboe Amendment,** by individuals or entities who become members of the Sparboe Settlement Class solely by virtue of the Sparboe Amendment (i.e., those who had no direct purchases of Shell Eggs or Egg Products from any Producer in the United States from between January 1, 2000, and October 23, 2009, but that did not make such purchases between October 24, 2009, and the date of this Order) must be First-Class Mail postmarked or hand-delivered to GCG, at the address indicated in the relevant notice, **by August 1, 2014**, which date shall be inserted in the Direct Mail Notice and Publication Notice.

i. **Objections to the Sparboe Amendment** by any member of the Sparboe Settlement Class, as amended, must be First-Class Mail postmarked or hand-delivered to the Court, Counsel for Direct Purchaser Plaintiffs, and Counsel for Sparboe, at the addresses indicated in the relevant notice, **by August 1, 2014**, which date shall be inserted in the Direct Mail Notice and Publication Notice.

j. **By August 15, 2014,** the Direct Purchaser Plaintiffs must file their

   i. Motion for Final Approval of the Cal-Maine Settlement Agreement and

   ii. Motion for Final Approval of the Sparboe Amendment.

k. The Court will hold a **Fairness Hearing for the Cal-Maine Settlement and the Sparboe Amendment on Thursday, September 18, 2014, at 2:00 PM,**

in Courtroom 10B, United States Courthouse, 601 Market Street, Philadelphia, PA 19106. This date shall be inserted into the Direct Mail Notice and Publication Notice. The date, time, and location of this hearing are subject to change, and Settlement Class members are advised to check www.eggproductsettlement.com for any updates.

1. **Claim Forms in the Cal-Maine Settlement** must be First-Class Mail postmarked or hand-delivered to GCG, at the address indicated in the relevant notice, **by August 1, 2014,** which date shall be inserted in the Direct Mail Notice and Publication Notice. The Claim Form shall be in substantially the same format as that proposed at Docket No. 853-5.

**IT IS SO ORDERED.**

BY THE COURT:

GENE E.K. PRATTER
United States District Judge