IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: PROCESSED EGG PRODUCTS ANTITRUST LITIGATION<br><br>THIS DOCUMENT APPLIES TO:<br><br>Direct Action (Non-Class) Plaintiffs' Cases | MDL NO. 2002<br>08-MD-02002 |

**ROSE ACRE FARMS, INC.'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO DIRECT ACTION PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS**

The Counterclaims brought by Rose Acre Farms, Inc. ("RAF") and Cal-Maine Foods, Inc. ("CMF") are based on these simple and straightforward allegations:

- Direct Action Plaintiffs ("DAPs") misrepresented that they desired a bona fide animal welfare program and that the UEP Certified Program (the "Program") met their standards for such a program; their misrepresentations constitute fraud. Counterclaim ("CC") ¶¶ 43–50, 57–83.

- The DAPs promised to support the Program. Instead, the DAPs sued RAF and CMF claiming the Program is a *per se* violation of the antitrust laws. CC ¶¶ 57–83.

- Alternatively, if the DAPs' statements in support of the Program were not fraudulent, then the initiation and continued prosecution of their antitrust action constitutes extortion and an abuse of process. *See* CC ¶¶ 84–87.

In response to these straightforward allegations, the DAPs move to dismiss the Counterclaims based on the following flawed premises:

1) *RAF and CMF allege that they were induced into violating the antitrust laws; therefore, there can be no justifiable reliance and thus no fraud or promissory estoppel claims.*  In fact, as explained below and in CMF's and RAF's Response to the DAPs' Motion to Dismiss State-Law Counterclaims ("Response"), so long as a jury finds that the DAPs fraudulently induced RAF and CMF into undertaking the Program, and promised to support the Program, the DAPs are

1

liable for fraud and promissory estoppel regardless of the Program's antitrust legality.[1]

2) *RAF and CMF are not entitled to damages for fraud or promissory estoppel—if RAF and CMF prevail in the antitrust case, they cannot recover damages because they have already recovered the costs of the Program through higher egg prices; if they lose the antitrust action, they cannot recover because they should not have relied upon the DAPs' misrepresentations and promises.* RAF and CMF can prove damages regardless of the outcome of the DAPs' antitrust claim. If they lose the antitrust case, they can still prevail on their fraud and promissory estoppel claims. If they win, any prior recovery of the costs of the Program through premiums paid by the DAPs for eggs produced pursuant to the Program ("Certified Eggs") relates simply to the amount of damages, not whether RAF and CMF were injured by the DAPs' conduct.

3) *The extortion and abuse of process claims are contingent upon RAF and CMF successfully defending the DAPs' antitrust action, and as such, are not yet ripe. Further, any damages are speculative.* Because the evidence supporting the extortion and abuse of process claims will largely involve the same evidence used to defend against the antitrust action, and because these claims are premised on the fact that the DAPs' antitrust action was improper from the outset, they are not only ripe but also compulsory in the current action. Additionally, the costs of defending against the DAPs' challenge to the program will be ascertainable; in any event, the fact that calculating damages may be difficult is not a proper basis for dismissal on the pleadings.

4) *Noerr-Pennington immunity destroys the majority of the Counterclaims.* In reality, the DAPs' out-of-court misrepresentations and promises (most of which preceded the DAPs' antitrust action) that serve as the basis of the fraud and promissory estoppel claims are wholly unconnected to the DAPs' antitrust action, and thus *Noerr-Pennington* is inapplicable. Further,

---

[1] *Peterson v. Tharp*, 299 F.2d 434, 436–37 (5th Cir. 1962); *McVeigh v. McGurren*, 117 F.2d 672, 679 (7th Cir. 1940); *In re Turner*, 12 B.R. 497, 500 (Bankr. N.D. Ga. 1981).

the extortion and abuse of process claims, which do attack the propriety of the DAPs bringing their underlying action, are by their very nature not covered by *Noerr-Pennington*.

## I. RAF and CMF Sufficiently Pled Justifiable Reliance

RAF and CMF more than sufficiently pled that, in implementing and maintaining the Program, they justifiably and detrimentally relied on the DAPs' misrepresentations and promises.[2] *See, e.g.*, CC ¶¶ 57–83, 88–102, 247, 257 & 277. In order to argue that RAF and CMF lacked justifiable reliance, though, the DAPs mischaracterize the Counterclaims and argue that there can be no justifiable reliance because RAF and CMF are seeking redress for being induced into committing a *per se* Sherman Act violation. DAPs' Reply at 1–2; MTD Hr'g Tr. 26–28, May 12, 2014. That simply is not what the Counterclaims plead. RAF and CMF believe, and have always believed, that the Program is a bona fide animal welfare program, producing procompetitive benefits, and is absolutely legal. Nevertheless, without the DAPs' misrepresentations and promises, and their concomitant demand for Certified Eggs, RAF and CMF would have never invested the tremendous resources they did to implement the Program. CC ¶¶ 104, 122, 133, 149, 159, 247, 257 & 277. So long as those misrepresentations and promises induced RAF and CMF to invest substantial resources to build and implement a Program the DAPs did not truly desire, the DAPs are liable for fraud and promissory estoppel.

The DAPs further argue that misrepresentations and promises made after they filed their lawsuit, such as their continued demand for Certified Eggs, cannot be actionable because the antitrust suit placed RAF and CMF on notice that they should not rely on the DAPs' continuing misrepresentations and promises. Their "don't trust us" argument fails for two reasons. First, in many cases, RAF and CMF were contractually bound by the DAPs to continue producing Certified Eggs. CC ¶¶ 95–102. Moreover, even in the instances where a written contract did not

---

[2] Only RAF maintains promissory estoppel and abuse of process claims.

exist, the DAPs demanded only Certified Eggs.  CC ¶¶ 59, 88, 95–102.  The DAPs' claim at oral argument that RAF and CMF could have chosen not to produce Certified Eggs, which would have breached their supply agreements with the DAPs and dozens of other customers, wholly ignores commercial reality and the market power the DAPs collusively wield over egg producers.  CC ¶¶ 88–102 & 105.  The DAPs collectively represent a very significant portion of RAF's and CMF's wholesale businesses.  CC ¶ 43.  The loss of the DAPs' business that would result from the unilateral refusal to sell Certified Eggs to them would be devastating not only to RAF's and CMF's shareholders, but to the thousands of employees and hens that rely upon these companies.  Such a Hobson's choice is no real choice at all.

Second, as a matter of law, a recipient may justifiably rely on misrepresentations, even if those misrepresentations are contradicted by the maker's other representations or actions, if the maker prevents the recipient from discovering the falsity by obstructing the recipient's investigation by means of additional false statements.  RESTATEMENT 2D TORTS §547; *Spreitzer v. Hawkeye State Bank*, 779 N.W.2d 726, 738 (Iowa 2009); *see also Schmidt v. Landfield*, 20 Ill.2d 89 (Ill. 1960).  That is precisely the case here.  CC ¶¶ 88–102.  Indeed, to this very day, the DAPs continue to demand Certified Eggs and publicly support the Program, all the while claiming that the Program violates the antitrust laws.  CC ¶ 105.

Further, while the DAPs dispute RAF's and CMF's justifiable reliance, that is a factual matter not appropriate for resolution on the pleadings.[3]  The cases the DAPs cite (DAPs' Reply 5–6) in support of dismissal on the pleadings actually undermine the DAPs' position.  Two of the cases dismissed the fraud claim because, as a matter of law, reliance is unjustified when a written contract provision explicitly states a fact completely contradictory to the claimed

---

[3] That reliance is a factual issue that cannot be resolved on the pleadings is beyond dispute.  *Spreitzer*, 779 N.W.2d at 736; *Medtech Corp. v. Indian Ins. Co.*, 555 N.E.2d 844, 850 (Ind. App. 1990); *Atherton v. Conn. Gen. Life Ins. Co.*, 955 N.E.2d 656, 661 (Ill. App. 2011).

4

misrepresentation.[4]  There is no such contradiction claimed here; the terms in the contracts between the DAPs and RAF or CMF are entirely *consistent* with the claimed misrepresentations. CC ¶¶ 61, 63–64, 66–67, 69, 71, 75, 78–82, 95–102.  The remaining cases either deal with a situation where the plaintiff failed to plead reliance,[5] the plaintiff admittedly knew the falsity of the representation,[6] or have absolutely nothing to do with fraud or justifiable reliance.[7]

## II. RAF's and CMF's Damages Are Neither Speculative Nor Dependent on Winning the Underlying Antitrust Claims

RAF and CMF seek the following components of damages:

- Fraud and promissory estoppel: the costs of (1) implementing, and maintaining the Program, (2) defending the portion of the DAPs' antitrust suits related to the Program, and (3) the portion of any antitrust verdict that relates to the Program.  CC ¶ 104.

- Extortion and abuse of process: the costs of defending the portion of the antitrust suits related to the Program and the harm to its corporate goodwill and reputation.  CC ¶ 106.

Without citing any case law in support, the DAPs argue that the Counterclaims lack a plausible *theory* of damages and, hence, should be dismissed.  Shouting "checkmate," the DAPs present a "heads I win, tails you lose" proposition: if the DAPs prevail on their antitrust claims, RAF and CMF are not entitled to any damages for fraud or promissory estoppel, and conversely, if the DAPs lose their antitrust suits, then RAF and CMF have not been damaged because the DAPs have paid for the Program by paying a premium for Certified Eggs.  Such sophistry is untenable. As explained above and in the Response, the legality of the Program, and hence the outcome of the DAPs' antitrust actions, is irrelevant to the fraud and promissory estoppel claims.  Response

---

[4] *Anderson v. Mayo Clinic*, 2008 Minn. App. Unpub. LEXIS 993, at *8 (Minn. App. Ct. 2008); *Meehan v. United Consumers Franchising Corp.*, 312 F.3d 909, 912 (9th Cir. 2002).
[5] *Zakakar v. CHL Mortgage Pass-Through Trust*, 2011 U.S. Dist. LEXIS 118763, at *8 (S.D. Cal. 2011) (finding the Plaintiff entirely failed to plead reliance, but granting leave to amend); *Stumm v. BAC Home Loan Servicing LP*, 914 F. Supp. 2d 1009, 1016 (D. Minn. 2012).
[6]  *HSBC Bank USA v. Teagarden*, 2013 Ohio App. LEXIS 6115, at *11–15 (Ohio Ct. App. 2013).
[7] *Jankovich v. Bowen*, 884 F. Supp. 743, 747–48 (S.D. Fla. 1994) (addressing a criminal case's motion to suppress a confession with the judge sitting as the fact finder).

5

at 8–9, 15–17.[8] If RAF and CMF prevail in those antitrust actions—which they fully expect to do—they nevertheless have suffered damages as a result of the DAPs inducing them into implementing and maintaining the Program. CC ¶¶ 57–83. Whether, and to what extent, the DAPs have paid a higher price for Certified Eggs, and therefore paid for the Program, relates simply to whether the DAPs have an offset to RAF's and CMF's damages. That is an issue that goes to the amount of damages, which is an issue of fact, not the existence or fact of damages. *First Am. Mktg. Corp. v. Canella*, 2004 U.S. Dist. LEXIS 2251, at *25 (E.D. Pa. Jan. 26, 2004) (refusing to dismiss complaint for failure to plead specific damages); *see Republic of Colom. v. Diageo N. Am. Inc.*, 531 F. Supp. 2d 365, 435–36 (E.D.N.Y. 2007) (refusing to dismiss plaintiffs' claims because proving damages could be extremely difficult).

The DAPs also complain that the damages sought by RAF and CMF are speculative. Damages are deemed speculative only if the uncertainty concerns the fact of damages, not the amount. *Windt v. Shepard's/Mcgraw-Hill, Inc.*, 1997 U.S. Dist. LEXIS 17501, at *24 (E.D. Pa. Nov. 7, 1997). With respect to the costs of implementing and maintaining the Program, those costs are capital expenses that RAF and CMF have already incurred and can be demonstrated with little effort. CC ¶¶ 104, 122, 133, 149, 159, 247, 257 & 277. The costs of defending the portion of the antitrust action that relates to the Program are also costs that RAF and CMF will have incurred.[9] CC ¶ 106. Although this will require parsing through RAF's and CMF's litigation expenses to ascertain the appropriate percentage attributable to the Program, that does not make damages speculative, it simply makes them challenging to calculate.[10]

Additionally, the DAPs argue that the "American Rule" bars recovery for RAF's and

---

[8] A finding that the Program is illegal would not absolve the DAPs from fraud or promissory estoppel. *Peterson*, 299 F.2d at 436–37; *McVeigh*, 117 F.2d at 679; *In re Turner*, 12 B.R. at 500.
[9] The portion of any antitrust verdict that the DAPs might win that relates to the Program can easily be ascertained by structuring the jury verdict form in an appropriate manner.
[10] *See Republic of Colom.*, 531 F. Supp. 2d at 435–36.

CMF's Program-related litigation expenses. But, RAF and CMF are not seeking to recover the costs associated with prosecuting their Counterclaims, which is what the "American Rule" would bar. Rather, they seek the consequential damages of the DAPs' inducing RAF and CMF to implement and maintain the Program. CC ¶¶ 104, 113, 123, 134, 143, 150 & 169. Litigation expenses incurred defending the Program are a direct result of RAF's and CMF's reliance on the DAPs' misrepresentations and promises, and, therefore, are recoverable as damages. *Howard v. Crawford & Co.*, 348 So. 2d 1326, 1327 (Fla. Dist. Ct. App. 1980) (The American Rule "is not applicable in a suit for fraud and deceit where the damages resulting from the fraud and deceit were attorneys' fees necessarily paid *to correct the result of the fraud and deceit*.") (emphasis added); RESTATEMENT 2D OF TORTS § 549 (1977). Further, because the DAPs' promise to support the Program is at least the equivalent of a covenant not to sue, RAF's attorneys' fees and litigation expenses are compensatory damages arising from its promissory estoppel claims and recoverable as such. *See Dallas Gas Partners, L.P. v. Prospect Energy Corp.*, 733 F.3d 148 (5th Cir. 2013); *Gregoire v. Lucent Techs.*, 2005 U.S. Dist. LEXIS 39988, at *44–45 (MD Fla. 2005).

### III.   The Alternative Claims Are Compulsory and Ripe

RAF's abuse of process and RAF's and CMF's extortion claims are ripe and appropriately considered compulsory counterclaims under both state and federal law, and therefore, should not be dismissed. The Third Circuit has held that, pursuant to FED. R. CIV. P. 13(a), an abuse of process claim is a compulsory counterclaim in the underlying action. *Great Lakes Rubber Corp. v. Herbert Cooper Co.*, 286 F.2d 631, 633 (3rd Cir. 1961).[11] RAF's abuse of process claims involve virtually the same evidence being presented in the underlying antitrust

---

[11] In *Great Lakes Rubber*, the Third Circuit held that abuse of process is a compulsory counterclaim because claims are compulsory whenever the "counterclaim is logically related to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts," or the counterclaims "are offshoots of the same basic controversy between the parties." *Id.*; *see also GMC v. Alberic Colon Auto Sales, Inc.*, 2007 U.S. Dist. LEXIS 38895, at *3–4 (citing numerous federal courts that found that abuse of process is a compulsory counterclaim).

action. Accordingly, even if the Court finds that the alternative claims are not compulsory, they should be permitted to go forward to save both judicial resources and the burden on the parties.

At oral argument, citing *Yaklevich v. Kemp, Schaeffer & Rowe Co., LPA*, 626 N.E.2d 115, 118 (Ohio 1994), the Court inquired whether Ohio law would consider the abuse of process claims permissive, rather than compulsory, counterclaims. Under Ohio law, when a claimant alleges "improper motive *ab initio*," as RAF does here, the abuse of process cause of action is a compulsory counterclaim to the underlying action, and if not brought then, will be forever barred on res judicata grounds. *Automation Tool Die v. Cook*, 2002 Ohio App. LEXIS 7188, at *6–9 (Ohio App. 9th 2002) (finding improper motive *ab initio* is an "atypical" case of abuse of process within *Yaklevich*'s exception); *see also Yaklevich,* 626 N.E.2d at 118.[12] RAF alleged that, from the start, DAPs' claims were nothing but a duplicitous scheme to secure *de facto* discounts on Certified Eggs that they would not be able to otherwise secure in the marketplace. CC ¶¶ 291 & 320. Therefore, RAF's abuse of process claims are properly considered compulsory under both state and federal law.

## IV.     *Noerr-Pennington* Does Not Insulate DAPs from *Any* of the Counterclaims

The *Noerr-Pennington* doctrine immunizes a defendant from liability for engaging in government petitioning conduct, including, in certain instances, the maintenance of a lawsuit. *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972). It is axiomatic, then, that the *Noerr-Pennington* doctrine would not apply to a claim that does not attack the right to engage in some petitioning conduct, in this case the filing and maintenance of the DAPs' antitrust actions. *See Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 122 (3d Cir. N.J. 1999) ("Cheminor"). RAF's and CMF's fraud claims and RAF's promissory estoppel claims are

---

[12] Although Indiana appears to be mute on this subject, even if it would consider abuse of process counterclaims to be permissive, federal law, as articulated by *Great Lakes*, controls on such matters of procedure. *Hanna v. Plumer*, 380 U.S. 460, 473 (U.S. 1965); *Shady Grove Orthopedic Assoc. v. Allstate Ins.*, 559 U.S. 393, 389-399 (2010).

8

based on misrepresentations and promises made to RAF and CMF that have no relevance to the DAPs' antitrust action, let alone attack their right to file such an action.[13] *See, e.g.,* CC ¶¶ 108, 118, 129, 139, 145, 155, 165, 243, 253, 273 & 283.  Moreover, to the extent RAF and CMF cite the DAPs' antitrust action as evidence of the falsity of their fraudulent statements, *Noerr-Pennington* does not prevent the Court from considering such evidence.  *United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 670–71 n.3 (1965).  Additionally, the DAPs' promise to support the Program, which at least encompasses a promise not to sue, is outside the realm of *Noerr-Pennington* immunity.  *See Nat'l Fire Ass'n*, 2006 U.S. LEXIS 14360, at *75 n.21 (rejecting the argument that *Noerr-Pennington* provides immunity for an action based on a breach of a covenant not to sue).

      RAF's and CMF's claims of extortion and RAF's claims for abuse of process attack the propriety of the DAPs' antitrust action, but *Noerr-Pennington* is still unavailing.  *Riveredge Assoc. v. Metropolitan Life Ins. Co.*, 774 F. Supp. 897, 901 (D.N.J. 1991) ("Even *Noerr-Pennington* immunity, moreover, does not extend to behavior that constitutes an abuse of the judicial process.") (*citing Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492 (1988)); *Chest Hill Co. v. Guttman*, 1981 U.S. Dist. LEXIS 10040, *33–34 (S.D. Ohio May 29, 1981) (*Noerr-Pennington's* "cloak of immunity" provides no protection for abuse of process).[14]  Similarly, *Noerr-Pennington* is inapplicable to claims of extortion.  *See United States v. Boyd*, 231 F. App'x 314, 316 (5th Cir. 2007) ("First Amendment does not protect extortion."); *accord Cal. Motor Trans. Co.*, 404 U.S. at 514 ("It is well-settled that First Amendment rights are not immunized from regulation when they are used as an integral part of conduct which violates a

---

[13] The DAPs also contend that *Noerr-Pennington* immunity prevents RAF and CMF from recovering attorneys' fees, yet cite no authority to support this proposition.  As discussed above, attorneys' fees incurred defending the Program are compensatory damages directly resulting from the DAPs' illegal conduct.  *See Dallas Gas Partners*, 733 F.3d 148; *Nat'l Fire Ass'n v. Int'l Code Council, Inc.*, 2006 U.S. LEXIS 14360, *75 n.21 (D.Mass. March 29, 2006).
[14] *See* Response at 15–16 for additional authority and related argument.

valid statute.").

The DAPs attempt to conflate all of RAF's and CMF's claims and argue that (a) RAF and CMF have not adequately pled the "sham exception;" and (b) the DAPs' outright misrepresentations do not suffice to meet the first element of the "sham exception" – that the lawsuit is objectively baseless. But, as demonstrated above, *Noerr-Pennington* is inapplicable to *any* of RAF's and CMF's claims and thus there is no immunity for which RAF and CMF require the "sham exception." Thus, the DAPs' constant citation to the Third Circuit's *Cheminor* decision analyzing the "objectively baseless" prong of the sham exception is beside the point.[15]

## V.     Conclusion

For all the reasons explained above, Rose Acre Farms, Inc. respectfully requests that the Court deny Direct Action Plaintiffs/Counterclaim Defendants' motion to dismiss in its entirety.

DATED:     May 28, 2014                                        Respectfully Submitted,

/s/ Jay L. Levine
Donald M. Barnes
Jay L. Levine
Jetta C. Sandin
PORTER, WRIGHT, MORRIS & ARTHUR, LLP
1900 K Street, NW, Suite 1110
Washington, DC  20006-1110
Telephone:  (202) 778-3056
Facsimile:  (202) 778-3063
*Counsel for Defendant and Counterclaim Plaintiff Rose Acre Farms, Inc.*

---

[15] *Cheminor* analyzed the degree to which misrepresentations would turn an otherwise facially appealing antitrust claim to one that is "objectively baseless" and held that misrepresentations that "infect the core" of the action render the suit "objectively baseless" for purposes of the sham exception.  168 F.3d at 124.  Because *Noerr-Pennington* is inapplicable, there is no need to determine how much of the DAPs' complaint is infected with misrepresentations. That said, RAF and CMF have previously explained that the Counterclaims adequately allege the "sham exception." Response at 17–21.  Although the DAPs placed great emphasis on the Program in their antitrust action, particularly on the cage space requirement and the 100% Rule, the Court need not attempt to parse the DAPs' complaints to determine whether the misrepresentations concerning the Program "infect the core" of the complaints (although they do). The extortion and abuse of process claims attack the DAPs' inclusion of the Program as part of the allegedly anticompetitive conduct.  By definition, the misrepresentations *regarding the Program* infect the core of the *allegations concerning the Program*.

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of May, 2014, I filed the foregoing document on CM/ECF, which will effect service of this motion on all counsel of record.


Dated: May 28, 2014                By: _/s/Jay L. Levine_____
                                         Jay L. Levine