UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: PROCESSED EGG PRODUCTS ANTITRUST LITIGATION | MDL No. 2002 |
| | Case No. 08-md-02002 |
| THIS DOCUMENT APPLIES TO ALL DIRECT PURCHASER ACTIONS | |

**AFFIDAVIT OF JENNIFER M. KEOUGH**
**REGARDING NOTICE DISSEMINATION AND CLAIMS ADMINISTRATION**

STATE OF WASHINGTON  )
                               )  ss.:
COUNTY OF KING          )

JENNIFER M. KEOUGH, being duly sworn, states:

    1.    I am Chief Operating Officer of The Garden City Group, Inc. ("GCG"). I have over 20 years of experience working in the legal field. The overwhelming majority of that time has been spent managing complex projects and class action administration. The following statements are based on my personal knowledge and information provided by other experienced GCG employees working under my supervision, and if called on to do so, I could and would testify competently thereto.

    2.    GCG is a recognized leader in legal administration services for class action settlements, bankruptcy cases and legal noticing programs. GCG has operational offices in the following locations: Lake Success, New York; New York, New York; Seattle, Washington; Chicago, Illinois; Dublin, Ohio; Tallahassee, Florida; Lake Oswego, Oregon; Los Angeles, California; New Orleans, Louisiana; and Hammond, Louisiana. GCG has a

staff of more than 1,000, including lawyers, a team of software engineers, call center professionals, notice and media experts, in-house legal advertising specialists and graphic artists with extensive website design experience.

      3.      GCG has a considerable amount of expertise in class action administration and the development of notice programs. In its history of over 25 years, our team has served as administrator for over 2,500 cases. GCG has mailed over 290 million notices, disseminated over 800 million emails, handled over 28 million phone calls, processed over 50 million claims, and distributed over $35 billion in benefits. GCG's legal notices have appeared in more than 40 languages in approximately 170 countries.

      4.      Pursuant to Paragraph 16(a) of the Court's February 28, 2014 Order (1) Granting Preliminary Approval of the Proposed Settlement Agreement Between Direct Purchaser Plaintiffs and Cal-Maine Foods, Inc.; (2) Certifying the Class for Purposes of Settlement; (3) Granting Leave to File Motion for Fees and Expenses; (4) Granting Preliminary Approval of the Proposed Amendment to Settlement Agreement Between Direct Purchaser Plaintiffs and Sparboe Farms, Inc.; and (5) Approving the Parties' Notice Plan (the "Order"), GCG was appointed by the Court in the above-captioned litigation (the "Litigation") to act as Claims Administrator and to implement a legal notice program ("Notice Plan") to inform Class Members of a proposed class action settlement between Plaintiffs and Defendant Cal-Maine Foods, Inc. ("Cal-Maine"), as well as an amendment to the prior settlement agreement with Sparboe Farms, Inc. ("Sparboe") expanding the class period ("Sparboe Amendment").

      5.      Pursuant to Paragraph 16(d)(vi) of the Order, I submit this Affidavit to report to the Court and the Parties to the Litigation, that, in compliance with the Court's Order, all

elements of the Notice Plan have been successfully implemented. The Notice Plan elements include:

- Direct notice by first-class mail to Class Members[1], which includes the long-form notice and the Claim Form (collectively, the "Notice Packet");

- Publication of short-form notice (the "Summary Notice");

- A press release through PR Newswire;

- A dedicated website through which Class Members can obtain information concerning the Cal-Maine Settlement and the Sparboe Amendment; and

- A toll-free telephone helpline through which Class Members can obtain information concerning the Cal-Maine Settlement and the Sparboe Amendment.

## DIRECT MAIL NOTICE

6.      In 2010, prior to implementing notice relating to the Moark Settlement and the Sparboe Settlement, GCG received approximately 13,900 electronic records from egg producer Defendants. Pursuant to Paragraph 16(b) of the Order, Defendants were ordered to provide supplemental records not included in prior production to GCG. Between March 7, 2014 and April 2, 2014, GCG received various electronic data files from eleven named Defendants, and was advised that the files contained the lists of supplemental Class Member names and addresses. In total, GCG received 8,413 supplemental electronic records from Defendants. Pursuant to Paragraph 16(b)(i-ii) of the Order, these records are treated as confidential and utilized solely for the purpose of disseminating notice and maintaining a customer database.

---

[1] As defined in the Order, the Settlement Class consists of all persons and entities that purchased Shell Eggs and Egg Products in the United States directly from any Producer, including any Defendant, during the Class Period from January 1, 2000 through February 28, 2014. Excluded from the Class are Defendants, Other Settling Defendants, and Producers, and the parents, subsidiaries and affiliates of Defendants, Other Settling Defendants, and Producers, all government entities, as well as the Court and staff to whom this case is assigned, and any member of the Court's or staff's immediate family.

7.     GCG loaded the supplemental data and the prior 2010 data into a database created for the Litigation. Prior to mailing the Notice Packet, mailing addresses of potential Class Members were updated using the National Change of Address database ("NCOA"). The NCOA resulted in 976 address updates. GCG identified and excluded duplicate records. Additionally, GCG excluded known ineligible records including known records for Defendants and Producers. GCG formatted the Notice Packet, and caused it to be printed and personalized with the name and address of each known potential Class Member.

8.     Pursuant to Paragraph 16(c) of the Order, GCG posted the Notice Packets for first-class mail, postage pre-paid on April 15, 2014 (the "Notice Date"). On the Notice Date, 16,796 copies of the Notice Packet were mailed via first-class mail. A copy of the Notice Packet is attached hereto as Exhibit 1.

## UNDELIVERABLES

9.     As of the date of this Affidavit, GCG has received 65 Notice Packets returned by the U.S. Postal Service with forwarding address information. Notice Packets returned by the U.S. Postal Service with forwarding address information were promptly re-mailed to the updated addresses provided.

10.     As of the date of this Affidavit, GCG has received 2,902 Notice Packets returned by the U.S. Postal Service without forwarding address information.

## NOTICE BY PUBLICATION

11.     Pursuant to Paragraph 16(d)(iii) of the Order, GCG caused the Summary Notice to be published on April 8, 2014 in *The Wall Street Journal*. Additionally, pursuant to Paragraph 16(d)(iv) of the Order, the Summary Notice was published in a variety of trade magazines that specifically cater to the restaurant and food industries. The Summary Notice

published in the following trade magazines[2]: *Restaurant Business* (May 2014 issue), *Convenience Store News* (April 2014 issue), *Hotel F&B* (May/June 2014 issue), *Nation's Restaurant News* (April 7, 2014 issue), *FoodService Director* (May 15, 2014 issue), *Progressive Grocer* (April 2014 issue), *Food Manufacturing* (May/June 2014 issue), *Supermarket News* (April 7–20, 2014 issue), *Stores* (May 2014 issue), *Egg Industry* (April 2014 issue), *Bake*[3] (April 2014 issue), *Food Processing* (April 2014 issue), *Long-Term Living* (April 2014 issue) and *PetFood Industry* (May 2014 issue).  Additionally, the Summary Notice is scheduled to publish in June/July 2014 issue of *School Nutrition* which goes on sale on June 1, 2014.  Publication Notice tear sheets from the publications are attached hereto as Exhibit 2.

## PRESS RELEASES

12.     Pursuant to Paragraph 16(d)(v) of the Order, GCG coordinated the release of press releases, consisting of substantially the same language as the Summary Notice, on April 7, 2014.  The releases were distributed over the US1 Newsline and the Hispanic Newsline and included distribution to over 1,000 journalists in the Restaurant and Food Industries.

## WEBSITE

13.     Pursuant to Paragraph 16(d)(i) of the Order, GCG established and maintains a website dedicated to this Settlement (www.EggProductsSettlement.com) to provide additional information to the Class Members and to answer frequently asked questions.  Users of the website can download a Notice Packet as well as review the Order, Settlement Agreements and other relevant Court documents.  The web address is set forth in the Notice Packet.  The Settlement website has been operational since August 30, 2010, and is accessible 24 hours a

---

[2] *Restaurants and Institutions* is no longer in print.

[3] *Baking Buyer* which was redesignated as *Bake* in Jan 2012.  *Modern Baking* is no longer in print.

day, 7 days a week. The website was updated to include information about the Cal-Maine Settlement and the Sparboe Amendment on April 4, 2014. Between April 4, 2014 and the date of this Affidavit, the website has received 906 visits.

**TOLL-FREE TELEPHONE HELPLINE**

14.     Pursuant to Paragraph 16(d)(ii) of the Order, beginning on August 30, 2010, GCG set up and continues to maintain an automated toll-free telephone number (1-866-881-8306), where potential Class Members can obtain information about the Settlement. This toll-free number is accessible twenty-four hours a day, seven days a week. Class Members who call the toll-free number have the option of leaving a voice message requesting a return call from a call center representative. The automated toll-free number was updated to include information about the Cal-Maine Settlement and the Sparboe Amendment on April 4, 2014. Between April 4, 2014 and the date of this Affidavit, there have been 264 calls to the automated number. GCG has and will continue to expeditiously handle Class Member inquiries.

**CLAIM SUBMISSIONS**

15.     Pursuant to Paragraph 16(l) of the Order, Class Members who wish to file a claim in the Cal-Maine Settlement are required to submit a completed Claim Form to GCG via mail postmarked or hand-delivered no later than August 1, 2014. As of the date of this Affidavit, GCG has received 48 timely Claim Forms. Class Members who previously filed a claim in the Moark Settlement are not required to file a Claim Form in the Cal-Maine Settlement for those same purchases. Class Members with valid Moark Settlement claims automatically have claims in the Cal-Maine Settlement. Including both prior and new and supplemental submissions, there are currently 917 claims on file in the Cal-Maine Settlement.

## OBJECTIONS AND EXCLUSIONS

16.     Pursuant to Paragraph 16(f) and Paragraph 16(h) of the Order, any Class Member who wishes to be excluded from the Cal-Maine Settlement and/or the Sparboe Settlement as amended by the Sparboe Amendment is required to submit their exclusion request to GCG postmarked or hand-delivered no later than August 1, 2014.  As of the date of this Affidavit, GCG has not received any exclusion requests from Class Members.

17.     Pursuant to Paragraph 16(g) and Paragraph 16(i) of the Order, any Class Member who wishes to object to the approval of the Cal-Maine Settlement and/or the Sparboe Settlement as amended by the Sparboe Amendment is required to submit their objection to the Court and the Parties, postmarked or hand-delivered no later than August 1, 2014.  As of the date of this Affidavit, GCG has not directly received any objections from Class Members.

JENNIFER M. KEOUGH

Sworn to before me this
29th day of May 2014

Notary Public

MISTY M CARMAN
Notary Public
State of Washington
My Commission Expires
October 15, 2017

AFFIDAVIT OF JENNIFER M. KEOUGH          7