UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN RE: PROCESSED EGG PRODUCTS** : | **MDL No. 2002** |
| **ANTITRUST LITIGATION** : | **Case No: 08-md-02002** |
| : | |
| : | |
| **THIS DOCUMENT APPLIES TO** : | |
| **ALL DIRECT PURCHASER ACTIONS** : | |
| : | |

**DIRECT PURCHASER PLAINTIFFS' MEMORANDUM IN SUPPORT OF:
(1) MOTION FOR PRELIMINARY APPROVAL OF THE SECOND AMENDMENT
TO THE SPARBOE SETTLEMENT AGREEMENT,
AND
(2) MOTION FOR APPROVAL OF NOTICE PLAN FOR THE PROPOSED
SETTLEMENTS WITH MIDWEST POULTRY SERVICES, LP, NATIONAL FOOD
CORPORATION, UNITED EGG PRODUCERS AND UNITED STATES EGG
MARKETERS, AND THE PROPOSED SECOND SPARBOE AMENDMENT**

**I.      INTRODUCTION**

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Direct Purchaser Plaintiffs ("Plaintiffs") submit this memorandum in support of their: (1) Motion for Preliminary Approval of a Proposed Second Amendment to the Sparboe Settlement Agreement and (2) Motion for Approval of Notice Plan for the Proposed Settlements with Defendants Midwest Poultry Services, LP, National Food Corporation, United Egg Producers and United States Egg Marketers, and the Proposed Second Sparboe Amendment.

These Motions are brought in connection with (a) the June 8, 2009 settlement between Plaintiffs and Defendant Sparboe ("Sparboe Settlement Agreement")[1]; (b) the proposed second amendment to that Agreement executed on June 16, 2014 ("Second Sparboe Amendment," attached hereto as Exhibit A); (c) the March 28, 2014 settlement between Plaintiffs and Defendant National Food Corporation ("NFC Settlement Agreement"); (d) the March 31, 2014 settlement between Plaintiffs and Defendant Midwest Poultry Services, LP ("Midwest Poultry Settlement Agreement")[2]; and (e) the May 21, 2014 settlement between Plaintiffs and Defendants United Egg Producers and United States Egg Marketers ("UEP/USEM Settlement Agreement").[3]

---

[1] The terms of the Sparboe Settlement are set forth in the Settlement Agreement Between Plaintiffs and Sparboe Farms, Inc., originally signed June 8, 2009 and re-executed June 22, 2009 (ECF Nos. 172-2, 172-3).

[2] The terms of the NFC Settlement Agreement and the Midwest Poultry Settlement Agreement are set forth in the agreements attached as exhibits to the Declarations of James J. Pizzirusso submitted in support of Plaintiffs' motion for preliminary approval of those settlement agreements. *See* ECF No. 952-2, Ex. 1 (NFC Settlement Agreement) and ECF No. 952-3, Ex. 1 (Midwest Poultry Settlement Agreement).

[3] The terms of the UEP/USEM Settlement Agreement are set forth in the Settlement Agreement between Plaintiffs and United Egg Producers and United States Egg Marketers, attached as Exhibit 1 to the Declaration of James J. Pizzirusso submitted in support of Plaintiffs' motion for preliminary approval of that agreement, filed contemporaneously with these motions.

## II. THE PROPOSED SECOND AMENDMENT TO THE SPARBOE SETTLEMENT AGREEMENT SHOULD BE PRELIMINARILY APPROVED

Plaintiffs and Sparboe reached a settlement on June 8, 2009 (ECF No. 172-2, 172-3). Final approval of the Sparboe Settlement Agreement was granted on July 16, 2012 (ECF No. 698). The Class Period in the Sparboe Settlement Agreement runs from January 1, 2000 to October 23, 2009, the date on which the Court preliminarily approved the Sparboe Agreement. *See* October 23, 2009 Order on Preliminary Approval of Sparboe Settlement at 7-8 (ECF No. 214) (certifying class period from Jan. 1, 2000 to the "present"); July 16, 2012 Order Granting Final Approval of the Class Action Settlement Between Direct Purchaser Plaintiffs and Defendant Sparboe Farms, Inc. at 2 n.1 (ECF No. 698) (certifying class period of Jan. 1, 2000 to Oct. 23, 2009).

Under the terms of the Sparboe Settlement Agreement, Plaintiffs and Sparboe agreed to conform the Sparboe Settlement Class definition to the class definition used in any subsequent settlement agreement with Defendants in this Action to the extent the subsequent agreement provides for an expanded settlement class, including an expansion of the Class Period (ECF No. 172-3, ¶ 31). The Sparboe Settlement Agreement also requires Plaintiffs to seek the Court's approval of such an amendment, and to disseminate notice of the same to the Class:

> In the event that Plaintiffs either enter into a settlement agreement with any Non-Settling Defendant, or obtain certification of a litigation class, and the definition of the class in any subsequent settlement agreement or certification order differs from the definition contained in this Agreement in Paragraph 11 (including an expansion of the Class Period), Plaintiffs agree to use their best efforts to modify the class definition and Class Period of this Agreement to conform to any and all subsequent expansion of the class definition or Class Period, including moving for approval of an amendment to this Agreement and the dissemination of notice of the amendment in conjunction either with notice of any subsequent settlement class or notice of the certification of a litigation class, or both in the event that there are more than one

2

> subsequent modification to the class definition or Class Period. In no event shall Sparboe Farms be responsible for any additional notice costs or expenses.

*Id.* Subsequent settlements with other Defendants in this Action have triggered Plaintiffs' obligation to seek Court approval of proposed amendments to the Sparboe Settlement Agreement.

On August 2, 2013, Plaintiffs entered into a Settlement Agreement with Defendant Cal-Maine Foods, Inc. (ECF No. 848-2, Ex. A), wherein the parties agreed to a class period that is longer than that contained in the Sparboe Settlement Agreement. Accordingly, on September 3, 2013, Plaintiffs moved the Court to preliminarily approve a proposed amendment to the Sparboe Settlement Agreement ("First Sparboe Amendment") and approve a notice plan for disseminating notice thereof (ECF No. 853). On February 28, 2014, the Court granted the motion (ECF No. 908 ¶¶ 12-16) and the notice plan was implemented in April 2014 (ECF No. 975 ¶¶ 6-14). A fairness hearing is scheduled for September 18, 2014 (ECF No. 908 ¶ 16.k); if the First Sparboe Amendment is granted final approval, it will extend the Sparboe Settlement Class Period through February 28, 2014.

In March and May 2014, Plaintiffs entered into three additional settlement agreements: (1) the NFC Settlement Agreement, (2) the Midwest Poultry Settlement Agreement, and (3) the UEP/USEM Settlement Agreement. Like the Cal-Maine Settlement Agreement, these three settlement agreements contain class definitions that are substantially similar to the Sparboe Settlement Agreement.[4] However, the Class Periods in these three recent settlement agreements

---

[4] Like the Cal-Maine Settlement Agreement, the three most recent settlement agreements exclude Producers from the class, whereas the Sparboe Settlement Agreement does not. *Compare* Cal-Maine Settlement Agreement ¶ 20; NFC Settlement Agreement ¶ 22; Midwest Poultry Settlement Agreement ¶ 23; and UEP/USEM Settlement Agreement ¶ 25 *with* Sparboe Settlement Agreement ¶ 11. This difference, however, does not require amendment to the

3

are longer, running from January 1, 2000 to the date on which the Court preliminarily approves the settlements.

Because the NFC, Midwest Poultry, and UEP/USEM Settlement Agreements expand the Class Period, on June 16, 2014, Plaintiffs and Sparboe executed a Second Amendment to the Sparboe Agreement that conforms the class period in the Sparboe Agreement to the class period in the NFC, Midwest Poultry, and UEP/USEM Settlement Agreements. The proposed Second Amendment provides:

> Paragraph 11 of the Sparboe Agreement is amended to provide for the following Class Period: "January 1, 2000 through the date on which the Court enters an order preliminarily approving the settlement agreements with National Food Corporation, the settlement agreement with Midwest Poultry Services, LP, and the settlement agreement with United Egg Producers and United States Egg Marketers, and certifies a corresponding Class for Settlement purposes as to National Food Corporation, Midwest Poultry Services, LP, and United Egg Producers and United States Egg Marketers only. If the Court enters separate preliminary approval and settlement-class certification orders as to any of these three settlements, the date of the last such order shall be deemed the last day of the Class Period."

Second Amendment ¶ 1, attached hereto as Exhibit A. The proposed Second Amendment does not alter any other provision of the Sparboe Settlement Agreement, and the Sparboe Agreement remains binding on Plaintiffs and the Class. *Id.* ¶ 4. The Second Amendment also requires that notice of the Second Amendment be disseminated to the Class in conjunction with notice of the NFC, Midwest Poultry, and UEP/USEM Settlement Agreements, at no cost to Sparboe. *Id.* ¶ 3.

For the same reasons that the Court preliminarily approved the First Sparboe Amendment in connection with the Cal-Maine Settlement, Plaintiffs respectfully request that the Court

---

Sparboe Settlement Agreement because the more recent settlement classes, in that respect, are narrower than the Sparboe Settlement Class. The Sparboe Settlement Agreement requires amendment only when a subsequent class definition expands the scope of the class. *See* Sparboe Settlement Agreement ¶ 31.

preliminarily approve the Proposed Second Amendment and authorize the dissemination of notice thereof to the Class according to the Notice Plan described herein.

First, the Court previously granted final approval to the Sparboe Settlement Agreement, and found its terms to be sufficiently fair, reasonable and adequate to the Sparboe Class (including the provision expressly anticipating that the Class Period would be expanded under the circumstances presented here). Second, the Sparboe Settlement Agreement provided for only cooperation; there was no settlement fund created. Thus, members of the original Sparboe Settlement Class and members under the First Sparboe Amendment suffer no dilution of the value of the Settlement to them by including additional Class members. Third, Class Members under both the prior class periods and the expanded period benefit equally from the value of Sparboe's cooperation in assisting with the prosecution of this Action against the remaining Defendants. Fourth, any direct purchaser who will become a member of the Class solely by virtue of the Second Amendment (*i.e.*, they had no purchases of eggs or egg products in the prior class periods) will have the opportunity to exclude themselves from the amended Class or object to the Second Amendment. Finally, any existing Class Member also will have the opportunity to object to expansion of the Class. For these reasons, the Second Amendment should be preliminarily approved and notice should be disseminated to the Class.

### III. THE NOTICE PLAN SHOULD BE APPROVED AS SATISFYING THE REQUIREMENTS OF RULE 23.

On April 25, 2014, Plaintiffs moved for Preliminary Approval of the Settlement Agreements with Defendants National Food Corporation and Midwest Poultry Services, LP. (ECF No. 952). During a May 12, 2014 hearing regarding that preliminary approval motion, the Court requested that Plaintiffs present a proposed plan for disseminating notice of these settlements (ECF No. 965). Soon thereafter, Plaintiffs and Defendants United Egg Producers

5

and United States Egg Marketers entered into a Settlement Agreement dated May 21, 2014. Contemporaneously with the instant Motion, Plaintiffs are filing their Motion for Preliminary Approval of the UEP/USEM Settlement Agreement.

Plaintiffs now respectfully move the Court for approval of the Plan for, and Form of, Notice for these three Settlement Agreements and the Proposed Second Amendment to the Sparboe Agreement. The proposed notice plan and form of notice directs that notice of these agreements be sent to all Class Members in a "reasonable manner to all class members who [will] be bound by the proposal" and provides for the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," as required by Rules 23(e)(1) and 23(c)(2)(B) of the Federal Rules of Civil Procedure.[5]

### a. The Notice Plan

Plaintiffs propose the same multi-faceted and comprehensive Notice Plan that this Court previously approved twice; first, to provide notice of the Moark and Sparboe Settlements (Sparboe & Moark Notice Plan Order at 1 (ECF No. 388)), and, second, to provide notice of the Cal-Maine Settlement and the First Sparboe Amendment (ECF No. 908 at 6-11, ¶¶ 12-16).

Plaintiffs again have retained Garden City Group ("GCG"), which developed the Moark/Sparboe and Cal-Maine/First Sparboe Amendment notice plans and forms of notice, to

---

[5] The parties have agreed that the costs of providing notice and administering the settlements shall be paid from the three Settlement Amounts according to the following allocation: $25,000 from the UEP/USEM Settlement Amount, with any additional costs over $25,000 paid equally from the Midwest Poultry Settlement Amount and the NFC Settlement Amount. *See* Declaration of James J. Pizzirusso, Ex. B hereto. Although this allocation differs from the terms of the Settlement Agreements (*compare* UEP/USEM Settlement Agreement ¶ 48; Midwest Poultry Settlement Agreement ¶ 46; NFC Settlement Agreement ¶ 45), the parties have determined that this revised agreement as to cost allocation does not require any amendments to the Settlement Agreements. However, the agreement is incorporated into the Proposed Order submitted herewith. *See* Ex. C ¶ 6.h.

implement the same plan of notice for the Second Sparboe Amendment and the NFC, Midwest Poultry, and UEP/USEM Settlement Agreements. GCG is a nationally recognized leader in notice and settlement administration with substantial experience in developing and implementing comprehensive notice plans in connection with class action settlements. The expertise of GCG in settlement administration is set forth in paragraphs 2-3 of the declaration of Jennifer M. Keough, submitted on May 30, 2014 regarding Notice Dissemination and Claims Administration in connection with the Cal-Maine Settlement and the First Sparboe Amendment (ECF No. 975).

Specifically, the Notice Plans for the Moark/Sparboe and Cal-Maine/First Sparboe Amendment included the following elements, which will be implemented to provide notice for the Second Sparboe Amendment and the NFC, Midwest Poultry, and UEP/USEM Settlement Agreements:

- Sending the Long-Form Notice by first-class mail to all persons and entities identified by National Food Corporation and Midwest Poultry[6] and non-settling Defendants[7] as direct purchasers of eggs in the United States during the Class Period or otherwise identified by GCG based on its administration of prior Settlements;

- Posting the Long-Form Notice, along with court documents, the NFC, Midwest Poultry, and UEP/USEM Settlement Agreements and the Second Sparboe Amendment,[8] on the specially created web site designed to provide notice of the settlements in this litigation, www.eggproductssettlement.com, which has been in

---

[6] The NFC and Midwest Poultry Settlement Agreements require that these settling Defendants provide to Plaintiffs, within 20 days of entry of the Preliminary Approval Order, sales and customer data from the Class Period. NFC Settlement Agreement ¶ 25 (ECF No. 952-2); Midwest Poultry Settlement Agreement ¶ 26 (ECF No. 952-3). The UEP/USEM Settlement Agreement omits such a provision because neither UEP nor USEM are in the business of selling Shell Eggs or Egg Products.

[7] Plaintiffs' Proposed Order for Preliminary Approval includes the directive that non-settling Defendants provide confidential customer lists to GCG, as was done in the Moark Settlement (ECF No. 388 ¶ 3) and the Cal-Maine Settlement (ECF No. 908 ¶ 16.b).

[8] The Sparboe Settlement Agreement has been available on the website since September 2010; the First Sparboe Amendment has been available on the website since May 2014.

place for nearly four years and is easily accessible through Internet search engines;

- Publishing Summary Notice ("Publication Notice") on one occasion in the national edition of *The Wall Street Journal*, on one-sixth of one page;

- Publishing Summary Notice on one occasion in each of the following industry publications likely to reach egg purchasers: *Restaurant Business, Convenience Store News, Hotel F&B, Nation's Restaurant News, Food Service Director, Progressive Grocer, Food Manufacturing, Supermarket News, Stores, Egg Industry, Bake, Food Processing, Long Term Living, Pet Food Industry* and *School Nutrition*;[9]

- Issuing a press release that consists of the language of the Publication Notice through PR Newswire to nearly 1,000 journalists covering the restaurant and food industry, which is anticipated, as in prior notices, to generate press articles regarding the Second Sparboe Amendment and the NFC, Midwest Poultry, and UEP/USEM Settlement Agreements; and

- Staffing a toll-free hotline (866-881-8306), accessible 24 hours per day and seven days per week, to answer any Settlement Class member's questions. Class members who call the toll-free number during business hours will have the option to speak directly to a live representative, and those who call during other hours may leave a voice message requesting the Long-Form Notice or a return call from a call center representative.

Fed. R. Civ. P. 23(c)(2)(B) provides that "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The proposed Notice Plan meets this requirement. Here, the proposed Notice Plan provides for both direct notice (which, in prior settlements, resulted in mailings to more than 16,700 potential class members[10]), and, to ensure that any Class members who do not receive individual notice are notified of the Second Sparboe

---

[9] *See* Decl. of Jennifer M. Keough ¶ 11 (ECF No. 975), identifying the publications utilized in implementing the Notice Plan for the Cal-Maine Settlement and First Sparboe Amendment. Some of the publications included in earlier Court-approved publication notice plans are no longer in print, specifically, *Restaurants & Institutions*, *see* Order ¶ 5(b) (ECF No. 388) , and *Modern Baking*, *see* Order ¶ 16.d.iv (ECF No. 908). In addition, *Baking Buyer* is now known as *Bake*. *See* Decl. of Jennifer M. Keough ¶ 11 nn.2-3 (ECF No. 975).

[10] *See* Decl. of Jennifer M. Keough ¶ 8 (ECF No. 975).

Amendment and the NFC, Midwest Poultry, and UEP/USEM Settlement Agreements, an extensive Publication Notice plan with an estimated combined circulation exceeding 2 million, a website, and a toll-free information line. "It is well settled that in the usual situation first-class mail and publication in the press fully satisfy the notice requirements of both Fed. R. Civ. P. 23 and the due process clause." *Zimmer Paper Prods., Inc. v. Berger & Montague P.C.*, 758 F.2d 86, 90 (3d Cir. 1985). Individual mail notice is the "best notice practicable" where, as here, the names and addresses of potential class members are ascertainable,[11] and publication notice plans have been endorsed by the Third Circuit as the best notice practicable, even in the absence of direct mail notice.[12]

### b. The Proposed Notice Plan Timeline

As outlined in the Proposed Order attached hereto as Exhibit C, Plaintiffs propose the following settlement administration timeline, with deadlines measured from the date of the Court's preliminary approval order:

- **Within 45 days**: Defendants make supplemental data productions (Ex. C, ¶ 6.b);
- **Within 90 days**: GCG staffs the toll-free settlement hotline, mails the Direct Notice, and publishes relevant documents to the settlement website (*id*. ¶¶ 6.c-e);
- **Within 100 days**: GCG publishes the Publication Notice (*id*. ¶ 6.f);
- **Within 120 days**: Filing of GCG's affidavit regarding implementation of the Notice Plan (*id*. ¶ 6.g);

---

[11] *See, e.g.*, *Larson v. AT&T Mobility LLC*, 687 F.3d 109, 126 (3d Cir. 2012) (citing *Greenfield v. Villager Indus.*, 483 F.2d 824, 832 (3d Cir. 1973)).

[12] *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 252 (3d Cir. 2009) (approving settlement administrator's plan to mail notice to settlement class members, publish notice of the fairness hearing in multiple periodicals, and establish a website and toll-free number to provide details of the proposed settlement and to offer assistance to the settlement class members); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 536 (3d Cir. 2004) (concluding that notice in publications likely to be read by class members, along with a call center, website and downloadable materials, was reasonable and the best notice practicable).

- **Within 140 days**: Filing of Plaintiffs' Motion for Attorneys' Fees, Litigation Expenses, and Incentive Awards (*id.* ¶ 6.i);

- **Within 180 days**: Deadline for objections and requests for exclusion from the Midwest Poultry, NFC, and UEP/USEM Settlement Agreements, and the Second Sparboe Amendment (*id.* ¶¶ 6.j-m);

- **Within 195 days**: Filing of final approval motions for the Midwest Poultry, NFC, and UEP/USEM Settlement Agreements, and the Second Sparboe Amendment (*id.* ¶ 6.n);

- **Within 230 days**: Fairness Hearing (*id.* ¶ 6.o).

This is the same schedule contained in the Court's earlier Order approving the notice plan for the First Sparboe Amendment and the Cal-Maine Settlement (ECF No. 908 ¶ 16.b-k), with one exception.

Plaintiffs respectfully request that the Court approve a slightly extended schedule to allow for the possibility of combining notice of the Midwest Poultry, NFC, and UEP/USEM Settlement Agreements and the Second Sparboe Amendment with notice of yet additional settlement(s). Specifically, Plaintiffs propose that the settlement administration timeline utilized for the Cal-Maine Settlement be extended here by approximately 30 days. Thus, whereas with the Cal-Maine Settlement notice was mailed 63 days after the Court's entry of its preliminary approval order (ECF No. 908 ¶ 16.c), here Plaintiffs propose that notice be mailed 90 days after preliminary approval, with all other deadlines adjusted accordingly.[13] *See* Ex. C ¶ 6.d. This extended schedule will provide a window during which Plaintiffs hope to consummate an

---

[13] For the deadline governing Defendants' production of updated transaction data, Plaintiffs propose a 15-day extension, instead of the 30-day extension proposed for other events in the administration. GCG has informed Plaintiffs' counsel that, based on its experience in administering the Cal-Maine Settlement, a schedule that allows additional time between its receipt of Defendants' supplemental productions and the mailing deadline will better enable it to process the new data and incorporate them into the Notice Plan. Accordingly, whereas in the Cal-Maine Settlement the Court ordered that Defendants' supplemental data productions be made within 30 days of preliminary approval (ECF No. 908 ¶ 16.b), here Plaintiffs proposed that such productions be made within 45 days of preliminary approval. *See* Ex. C ¶ 6.b.

10

additional settlement(s), file a motion for preliminary approval thereof, and propose revised notices that incorporate information about any additional settlement(s).  With the Court's approval, Plaintiffs then would disseminate notice of all such proposed settlement(s) together with notice of the Midwest Poultry, NFC, and UEP/USEM Settlement Agreements and the Second Sparboe Amendment.

Allowing a short, 30-day extension of the Notice Plan (as compared to the Cal-Maine timeline) is in the best interests of the Class, because it will allow dissemination of a single Notice.  As opposed to implementing multiple notice plans relatively close in time, combining all of the most recent information into a single Notice, disseminated via a single mailing and publication program, has clear advantages.  It avoids the unnecessary expense of an additional, successive notice program (the cost of which is likely to be in six figures), and prevents any Class member confusion that potentially could arise from receipt of multiple mailings in close succession.  For these reasons, Plaintiffs respectfully request that the Court adopt the settlement administration timeline contained in the Proposed Order.

    **c.   The Form and Content of the Proposed Notices**

Plaintiffs also seek approval of the proposed form and content of the Direct and Publication Notices for the Second Sparboe Amendment and the NFC, Midwest Poultry, and UEP/USEM Settlement Agreements, attached hereto as Exhibits D and E, respectively.

Rule 23 requires that the notice state "clearly and concisely . . . in plain, easily understood language" the following information:

- the nature of the action;
- the definition of the class certified;
- the class claims, issues or defenses;

- that a class member may enter an appearance through an attorney if the member so desires;

- that the court will exclude from the class any member who requests exclusion;

- the time and manner for requesting exclusion; and

- the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).  Both the Direct Mail and the Publication Notices proposed here include each of these required elements for the Second Sparboe Amendment and the NFC, Midwest Poultry, and UEP/USEM Settlement Agreements:

- Nature of the action—Direct ¶ 2, Publication at 1;

- Class Definition—Direct ¶ 3(NFC, Midwest Poultry, and UEP/USEM Settlements) & ¶ 7 (Sparboe extended Class Period), Publication at 1;

- Class Claims, Issues & Defenses—Direct ¶ 2, Publication at 1;

- Right to appear—Direct ¶ 12, Publication at 2;

- Right to exclude/Time & Manner to Request Exclusion—Direct at 1-2 & ¶ 14; Publication at 1;

- Binding effect—Direct at 1 & ¶ 6 (NFC, Midwest Poultry, and UEP/USEM Settlement) and 1 & ¶ 9 (Sparboe); Publication at 1.

Additionally, the Direct Notice informs potential Class Members about the history of the litigation and prior settlements; the general nature of the Second Sparboe Amendment and the NFC, Midwest Poultry, and UEP/USEM Settlement Agreements; where to access the complete Settlement Agreements and Second Amendment and other Court documents; how the lawyers will be paid and when they will file any petition for an award of attorneys' fees, expenses and incentive awards; Class Members' right to object and how to do so; the date and time of the Fairness Hearing, among other information.  This additional information conforms with Rule 23(e)'s requirement for distribution of the settlement notice in a reasonable manner.  *See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F.3d 283, 327 (3d Cir. 1998)

12

("The Rule 23(e) notice is designed to summarize the litigation and the settlement and to apprise class members of the right and opportunity to inspect the complete settlement documents, papers, and pleadings filed in the litigation.") (quotations and citations omitted).

Moreover, these notices are provided in substantially the same format and use the same plain and concise language, wherever possible, that was used in the Moark/Sparboe and Cal-Maine/First Sparboe Amendment notices previously approved by the Court. *See* Moark/Sparboe Notice Plan Order (ECF No. 388) at Exs. A-1, A-2, B-1, B-2; Plaintiffs' Motion for Approval of Notice Plan, Ex. B (ECF No. 853-3) & Ex. C (ECF No. 853-4); Cal-Maine/First Sparboe Amendment Notice Plan Order ¶¶ 16.c-d (ECF No. 908) (approving notice "in substantially the same format as that proposed at" ECF Nos. 853-3 & 853-4). They differ only minimally in substance or form from the Cal-Maine/Sparboe Amendment Notice previously approved by the Court in the following respects:

- Information pertaining to the filing of claims has been removed, as no distribution from the NFC, Midwest Poultry or UEP/USEM Settlement Funds is contemplated at the present time. The Direct Notice explains to potential Class Members that a distribution may occur at an appropriate time, possibly in conjunction with future settlements, and encourages Class Members to retain their purchase records for use in any such claims process. *See* Proposed Direct Notice (Ex. D) ¶ 5.

- The Direct Mail and Publication Notices make clear that the only Sparboe Class Members who may now opt-out of the Sparboe Agreement are those made a member of the Sparboe Class by virtue of the Second Amendment. *See id.* at 1 & ¶¶ 9, 14.b; Publication Notice at 1 (Ex. E). Sparboe Class Members who were included in the original Sparboe Settlement Class (purchases between Jan. 1, 2000 and Oct. 23, 2009) or under the definition contained in the First Sparboe Amendment, and did not exclude themselves by the corresponding opt-out deadlines may not now exclude themselves; they are already bound by the Settlement. But the Direct Notice makes clear that *any* member of the Sparboe Class, as amended, may object to the Sparboe Amendment. Ex. D ¶ 13.b.

For the reasons stated above, the proposed Notice Plan and Form of Notice fulfill the requirements of Rule 23 and due process. Accordingly, approval of the Notice Plan and Form of Notice is appropriate.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court: (1) preliminarily approve the Second Sparboe Amendment; and (2) approve the proposed Notice Plan described herein and the Form and content of Notices attached hereto.

Dated:  June 19, 2014                                       Respectfully submitted,

/s/      Steven A. Asher
Steven A. Asher
**WEINSTEIN KITCHENOFF & ASHER LLC**
1845 Walnut Street, Suite 1100
Philadelphia, PA 19103
(215) 545-7200
(215) 545-6536 (fax)
asher@wka-law.com
*Interim Co-Lead Counsel and Liaison Counsel for Direct Purchaser Plaintiffs*

Michael D. Hausfeld
**HAUSFELD LLP**
1700 K Street NW
Suite 650
Washington, DC  20006
(202) 540-7200
(202) 540-7201 (fax)
mhausfeld@hausfeldllp.com
*Interim Co-Lead Counsel for Direct Purchaser Plaintiffs*

Stanley D. Bernstein
**BERNSTEIN LIEBHARD LLP**
10 East 40th Street, 22nd Floor
New York, NY 10016
(212) 779-1414
(212) 779-3218 (fax)
bernstein@bernlieb.com

*Interim Co-Lead Counsel for Direct Purchaser Plaintiffs*

Stephen D. Susman
**SUSMAN GODFREY LLP**
654 Madison Avenue, 5th Floor
New York, NY 10065-8404
(212) 336-8330
(212) 336-8340 (fax)
ssusman @susmangodfrey.com
*Interim Co-Lead Counsel for Direct Purchaser Plaintiffs*

15