IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: PROCESSED EGG PRODUCTS ANTITRUST LITIGATION : : : : : *THIS DOCUMENT APPLIES TO ALL* : *DIRECT PURCHASER ACTIONS* : | MULTIDISTRICT LITIGATION<br><br><br><br>No. 08-md-2002 |

### O R D E R

**(1) GRANTING PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT AGREEMENT BETWEEN DIRECT PURCHASER PLAINTIFFS AND NUCAL FOODS, INC.; (2) CERTIFYING THE CLASS FOR PURPOSES OF SETTLEMENT; AND (3) GRANTING LEAVE TO FILE MOTION FOR FEES AND EXPENSES.**

**AND NOW**, this 3rd day of October, 2014, upon consideration of Direct Purchaser Plaintiffs' Motion for Preliminary Approval of Class-Action Settlement with Defendant NuCal Foods, Inc., for Certification of Class Action for Purposes of Settlement, and for Leave to File Motion for Fees and Expenses (Docket No. 1041), and following a hearing on these Motions on October 2, 2014, **it is HEREBY ORDERED and DECREED that:**

1. **Direct Purchaser Plaintiffs' Motion for Preliminary Approval of Class-Action Settlement with Defendant NuCal Foods, Inc., for Certification of Class Action for Purposes of Settlement, and for Leave to File Motion for Fees and Expenses (Docket No. 1041) is GRANTED.**

2. The background of this consolidated multidistrict litigation has been extensively recounted elsewhere. Defendants, some of the nation's largest egg producers, including NuCal Foods, Inc. ("NuCal"), allegedly conspired to reduce egg output and thus fix, raise, maintain, and/or stabilize the prices of eggs and egg products in the United States. Direct Purchaser Plaintiffs allegedly paid higher prices as a result of this conspiracy, and they now seek treble

1

damages, injunctive relief, attorneys' fees, and costs. Earlier in this litigation, Direct Purchaser Plaintiffs reached settlement agreements, for which the Court granted final approval in 2012, with the Moark Defendants and Sparboe. *See generally, e.g., In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 249 (E.D. Pa. 2012) (Moark); *In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 278 (E.D. Pa. 2012) (Sparboe). Direct Purchaser Plaintiffs have also reached settlement agreements with Defendants Cal-Maine Foods, National Food Corporation, Midwest Poultry Services, United Egg Producers, and United States Egg Marketers. *See generally* Feb. 28, 2014 Order (Doc. No. 908) (Cal-Maine); July 30, 2014 Order (Doc. No. 1027).

3. After seven months of arm's-length negotiations between experienced counsel, mature fact discovery of over one million documents, and commencement of deposition of fact witnesses, the Direct Purchaser Plaintiffs and NuCal have reached a Settlement Agreement ("NuCal Settlement Agreement," Docket No. 1041-2, Ex. 1) for which they now seek the Court's preliminary approval.

4. The NuCal Settlement Agreement defines the Settlement Class as follows:

All persons and entities that purchased Shell Eggs and Egg Products in the United States directly from any Producer, including any Defendant, during the Class Period from January 1, 2000 through the date on which the Court enters an order preliminarily approving the Agreement and certifying a Class for Settlement purposes.

(a) Shell Egg SubClass

All individuals and entities that purchased Shell Eggs in the United States directly from any Producer, including any Defendant, during the Class Period from January 1, 2000 through the date on which the Court enters an order preliminarily approving the Agreement and certifying a Class for Settlement purposes.

(b) Egg Products SubClass

All individuals and entities that purchased Egg Products produced from Shell Eggs in the United States directly from any Producer, including any Defendant, during the Class Period from January 1, 2000 through the date on which the Court

2

enters an order preliminarily approving the Agreement and certifying a Class for Settlement purposes.

Excluded from the Class and SubClasses are Defendants, Other Settling Defendants, and Producers, and the parents, subsidiaries and affiliates of Defendants, Other Settling Defendants, and Producers, all government entities, as well as the Court and staff to whom this case is assigned, and any member of the Court's or staff's immediate family.

5. The NuCal Settlement Agreement establishes $1.425 million as the Settlement Amount. Class members will receive distributions from the Settlement Amount based pro-rata on each Class member's purchases, and the cost of the Notice Plan and any award of attorneys' fees and litigation expenses will be paid from the Settlement Amount.

6. The NuCal Settlement Agreement also requires NuCal to provide an attorney proffer concerning background information on NuCal's organization, operations, and personnel, as well as concerning identification of potential witnesses and their anticipated testimony. NuCal also agrees to make available three witnesses to be interviewed by Class Counsel, to provide information related to transactional data, to authenticate documents created, sent, or received by NuCal, and to make two witnesses available to testify on facts and issues in dispute at the time of trial.

7. In exchange for the Settlement Amount, the Direct Purchaser Plaintiffs release NuCal from any and all claims they raised or could have raised regarding any agreement or understanding among Defendant Producers; the reduction or restraint of supply; or the pricing, selling, discounting, marketing, or distributing of Shell Eggs and Egg Products.

8. The preliminary approval determination requires the Court to consider whether "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 638 (E.D. Pa. 2003)

3

(citing *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785-86 (3d Cir. 1995)); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 233 n.18 (3d Cir. 2001). If, after consideration of those factors, a court concludes that the settlement should be preliminarily approved, "an initial presumption of fairness" is established. *In re Linerboard*, 292 F. Supp. 2d at 638 (citing *In re Gen. Motors Corp.*, 55 F.3d at 785). Here, based on these factors, the Court concludes that the Proposed NuCal Settlement Agreement falls within the range of reasonableness for settlement of claims such as these, including the context of other settlements heretofore reached with this litigation and as to which these Plaintiffs and Plaintiff Classes can, will, and may participate, all as more particularly discussed on the record of the October 2, 2014 proceedings in open court.

9. In addition, where, as here, the Court has not already certified a class, the Court must also determine whether the proposed settlement class satisfies the requirements of Rule 23. *Amchem v. Windsor*, 521 U.S. 591, 620 (1997). At the preliminary approval stage, the Court may conditionally certify the class for purposes of providing notice. David F. Herr, *Annotated Manual for Complex Litigation* § 21.632 (West, 4th ed. 2013) ("The judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)."). Accordingly, at this stage, the Court must determine whether the proposed class should be conditionally certified, and leave the final certification decision for the Fairness Hearing.

    a. Rule 23(a) requires that the parties moving for class certification demonstrate that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of

the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Accordingly, the Court finds that:

   i. The members of the NuCal Settlement Class, defined above, are ascertainable from objective criteria, such as NuCal's records, and that they are so numerous that their joinder before the Court would be impracticable.

   ii. The commonality requirement is satisfied insofar as Direct Purchaser Plaintiffs have alleged one or more questions of fact and law common to the NuCal Settlement Class, including whether NuCal violated federal antitrust law.

   iii. The Class Representatives have claims that are typical of the claims of the Class, because the Representatives' claims rely on the same legal theories and arise from the same illegal agreement. All putative Class members were direct purchasers of Shell Eggs or Egg Products, as reflected in the two SubClasses.

   iv. The requirement of adequacy of representation is met because Class Counsel are extensively experienced litigators and there are no apparent conflicts of interest.

b. Under Federal Rule of Civil Procedure 23(b)(3), a class action may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed R. Civ. P. 23(b)(3).

The Court finds that these requirements are met, and a class can be conditionally certified, except as provided in paragraph 10 immediately below.

10.     The Court makes no determination concerning the manageability of this action as a class action if it were to go to trial. *See In re Cmty. Bank of N. Va.*, 418 F.3d 277, 306 (3d Cir. 2005).

11.     **Direct Purchaser Plaintiffs' request for leave to file a Motion for Attorneys' Fees and Litigation Expenses is GRANTED.** The Court has not yet determined the date for filing such a Motion. The Court plans to set this date when it rules upon the currently pending Motion for Approval of Notice Plan for Proposed Settlement with NuCal Foods, Inc. (Doc. No. 1047).

12.     **For reasons set forth in the transcript of the October 2, 2014 Preliminary Approval Hearing, the Court is withholding consideration of the Notice Plan for the Proposed Settlement with NuCal.** Accordingly, the Court will presently abstain from setting a timeline with deadlines for the proposed settlement, pending approval of the Notice Plan.

**IT IS SO ORDERED.**

BY THE COURT:

*/s/ Gene E.K. Pratter*
GENE E.K. PRATTER
United States District Judge