**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE: PROCESSED EGG PRODUCTS** | : |
| **ANTITRUST LITIGATION** | : |
| | :    **MDL No. 2002** |
| | :    **08-md-02002** |
| ———————————————————— | : |
| | : |
| **THIS DOCUMENT APPLIES TO:** | : |
| **ALL ACTIONS** | : |

### <u>MEMORANDUM</u>

GENE E.K. PRATTER, J.                                                                NOVEMBER 17, 2014

     This multidistrict litigation encompasses numerous actions that have been consolidated and coordinated before the Court. The essence of the litigation is that several egg producers and trade groups are accused of conspiring to control and limit the supply of eggs and egg products, resulting in artificially inflated prices. *See In re Processed Egg Prods. Antitrust Litig.*, 588 F. Supp. 2d 1366, 1367 (J.P.M.L. 2008). There are three categories of plaintiffs: a class of Direct Purchaser Plaintiffs ("DPPs"), comprised of entities and individuals that purchased eggs or egg products directly from the defendants; a class of Indirect Purchaser Plaintiffs ("IPPs"), comprised of entities and individuals who purchased eggs from a distributor other than the named defendants; and a collection of Direct Action Plaintiffs ("DAPs"), comprised of plaintiffs who chose to remain out of, or opt out of, the direct purchaser class and bring individual lawsuits.

     The dispute addressed in this Memorandum concerns the extent to which certain defendants may have waived attorney-client privilege over certain documents. The dispute was referred to Magistrate Judge Timothy Rice who issued an order on September 11, 2014 (Docket

No. 1052) (hereinafter "Order"). This did little to quell the dispute, however, as three sets of litigants filed objections to the Order. The Court considers now these objections.

## I.      **Factual and Procedural Background**

The present dispute arose from the Motion to Compel Defendants to Produce Withheld Documents (Doc. No. 962) filed by DAPs and IPPs. In this Motion, DAPs and IPPs argue that because Defendants are asserting a "good faith defense"—that is, Defendants are asserting that they are not liable because they believed in good faith that their trade associations, namely United Egg Producers ("UEP"), and United States Egg Marketers ("USEM"), were in acting compliance with the law[1]—Defendants have therefore put their communications with their attorneys at issue. This, Plaintiffs argue, waives any claim of attorney-client privilege with respect to these communications. Certain defendants responded by asserting that their good faith defense is based on non-attorney communications with UEP and USEM personnel; other defendants responded by asserting that their good faith defense is based on communications with UEP and USEM's attorneys, not their own lawyers. Therefore, Defendants argue, they have not put the advice of their own attorneys at issue. Neither UEP nor USEM are themselves asserting this good faith defense—but, rather, the Defendants who were *members* of UEP and USEM are asserting a good faith defense.

UEP and USEM produced many of the allegedly privileged documents as part of a Settlement Agreement between themselves and DPPs. DAPs and IPPs argue that this constitutes

---

[1] Specifically, Defendants argue that (1) no antitrust violation occurred, (2) even if an antitrust violation did occur, Defendants are immune under the Capper-Volstead Act (7 U.S.C. §§ 291-92) which expressly permits certain activities by agricultural cooperatives, and (3) even if Defendants are not exempt under Capper-Volstead, Defendants did not violate the Sherman Antitrust Act because they believed, in good faith, that the agricultural cooperative was acting within the lawful bounds of Capper-Volstead (and therefore did not *knowingly* enter into a conspiracy in violation of the Sherman Act).

a waiver as to these documents. In response, Defendants assert that the UEP and USEM disclosure to DPPs does not constitute a waiver as to or by the Defendants because of a December 20, 2012 Stipulation and Order that provides that the "fact of production of a document in this Litigation may not be used to argue waiver in this Litigation of UEP's attorney-client privilege" and that the "fact of production of a document in this Litigation may not be used to argue waiver in any other litigation or proceeding of UEP's attorney-client privilege." Plaintiffs argue that the documents produced in the settlement were not *produced* in "*this Litigation*" as contemplated in the Stipulation and Order. That is, Plaintiffs argue that "this Litigation" refers to the entire multi-district litigation and that documents were only protected under the Stipulation and Order if produced to all Plaintiffs in the litigation—by deciding to produce the documents only to DPPs, UEP and USEM did not make a "*production* of a document in *this Litigation*."

This dispute was referred to the magistrate judge under Rule 72(a) of the Federal Rules of Civil Procedure. The magistrate judge ruled on the Motion to Compel on September 12, 2014. Judge Rice held that:

(1) Defendants Michael Foods, Inc., R.W. Sauder, Inc., Moark, LLC, and Norco Ranch, Inc. ("Supplier Defendants") did not waive attorney-client privileges by asserting their good faith defenses, since the defenses are based on communications with non-attorney personnel at UEP and USEM. Order at 1. This does not put the advice of counsel at issue, and advice of counsel is not an essential element to determining the validity of the good faith defense. *See* Order at 1.

(2) Defendants Rose Acre, Cal-Maine, and Daybreak, who assert their good faith defense based on communications with UEP and USEM's counsel, have waived privilege

with respect to those communications and are required to disclose any privileged documents in their possession that relate to their good faith defense. Order at 2-3.

(3) However, UEP and USEM do not have to disclose privileged communications in their possession pertaining to their co-defendants' good faith affirmative defenses. Order at 2-3. (Recall that neither UEP nor USEM is itself asserting a good faith defense.) Defendants Rose Acre, DayBreak, and Cal-Maine cannot waive this privilege asserted by UEP and USEM. Order at 3.

(4) UEP and USEM did not waive privilege over documents disclosed to DPPs pursuant a Settlement Agreement. Order at 3-4. The December 20, 2012 Stipulation and Order provided that such disclosure would not waive attorney-client privilege. Order at 4.

(5) Defendant Rose Acre farms must produce two documents containing attorney-client communications pertinent to its good faith defense. Order at 5-6. These documents were reviewed *in camera*, and, based on this review, Judge Rice rejected the contention that Rose Acre's "good faith defense is not based on advice it received from its attorneys." Order at 5.

(6) Defendant DayBreak need not produce a withheld document that does not relate to its good faith defense. Order at 6.

## II.   THE OBJECTIONS

### A.  *IPPs' Objections (Doc. No. 1066)*

IPPs contend that Judge Rice's Order erred in ruling that the December 2012 Stipulation and Order protects UEP and USEM's disclosure to DPPs from constituting a waiver of attorney-client privilege (finding number 4 in the list above). They argue, once again, that the disclosure was not made within "this Litigation" as contemplated by the Stipulation and Order. Their

argument posits that for a disclosure to be within "this Litigation," it must be made to the entire group of litigants in the multidistrict litigation. Therefore, under this construction, a disclosure made only to DPPs is not within "this Litigation" as contemplated by the Stipulation and Order.

IPPs further argue that even if Judge Rice's Order correctly decided that the disclosure was within "this Litigation," he still erred in finding that the privilege was not waived. They claim that the Stipulation and Order does not cover the disclosure by UEP and USEM because the Stipulation and Order provides only that the "fact of production" does not constitute a waiver. However, in the Settlement Agreement with DPPs, UEP and USEM agree not only to produce the privileged documents, but to allow DPPs to "*use* [the documents] in litigating the Action." IPPs' Objs. at 6 (emphasis added). This agreement to allow a third party to *use* the documents, IPPs argue, goes beyond what is protected by the Stipulation and Order—namely, the mere production of the documents.

Therefore, IPPs argue, because the documents are not shielded by the Stipulation and Order, their selective production to DPPs entirely waived the attorney-client privilege claim over them, inasmuch as the Third Circuit Court of Appeals does not recognize a selective waiver doctrine.

### B. DAPs' Objections (Doc. No. 1067)

DAPs have two objections to Judge Rice's Order. First, they object to the finding that the Supplier Defendants did not waive the attorney-client privilege because their good faith defense relies only upon information from non-attorney personnel at UEP and USEM (finding number 1 above). Second, they object to the finding that Rose Acre, Cal-Maine, and DayBreak must produce only those communications with UEP and USEM's attorneys (finding number 2 above).

They contend, instead, that the Defendants must produce all communications and information relevant to Defendants' beliefs and knowledge about antitrust law and Capper-Volstead.

They argue that, even if the good faith defense alone does not require the disclosure of all relevant communications, the purportedly privileged documents should be reviewed by Judge Rice *in camera*. Judge Rice's *in camera* review of Rose Acre's documents led to the disclosure of two documents that suggested Rose Acre's defense is based on advice it received from its attorney (finding number 5). DAPs argue that this approach should be applied to the other defendants to discern if their good faith defenses are likewise based on advice received from Counsel.[2]

### C.  UEP and USEM's Objections (Doc. No. 1068)

UEP and USEM argue that "To the extent that the Court's ruling required UEP's and USEM's co-defendants to produce certain documents, the ruling necessarily relies on a premise that certain co-defendants' invocation of a 'good faith' defense can result in a waiver of UEP's and USEM's privilege." *See* UEP and USEM Objs. at 1. UEP and USEM apparently object to Judge Rice's determination that certain Defendants must disclose communications between or among themselves and Counsel for UEP and USEM (finding number 2). They argue that because these Defendants were members of UEP and USEM, disclosure to those defendants did not waive UEP's privilege over the communications. Therefore, they argue, the ability to waive privilege over these communications remains with UEP and USEM alone.

### III.    LEGAL STANDARD AND ANALYSIS

Under Rule 72(a), a magistrate judge can hear and decide a referred, non-dispositive matter. Following the magistrate judge's order, a party has 14 days to object to the district court.

---

[2] Rose Acre has not objected to Judge Rice's finding, so the Court does not consider whether Judge Rice correctly ruled that Rose Acre must disclose two of the documents reviewed *in camera*.

Fed. R. Civ. P. 72(a). The district court must "consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Id.* A finding in an order is "clearly erroneous" when the district court, reviewing the record before the magistrate judge, "is left with the definite and firm conviction that a mistake has been committed." *In re Mushroom Direct Purchaser Antitrust Litig.*, No. 06-0620, 2012 WL 5199388 at *1 (E.D. Pa. Oct. 22, 2012) (internal quotation marks omitted) (quoting *Haines v. Liggett Grp., Inc.*, 975 F.2d 81, 92 (1992)). "A finding is contrary to law if the magistrate judge has misinterpreted or misapplied applicable law." *Id.* (internal quotation marks omitted) (quoting *Gunter v. Ridgewood Energy Corp.*, 32 F. Supp. 2d 162, 164 (D.N.J. 1998)).

The objections raise five main issues:

(1) Whether Judge Rice correctly decided that, pursuant the December 2012 Stipulation and Order, UEP and USEM did not waive their privilege by disclosing privileged communications to the DPPs. More specifically:

    a.  Whether Judge Rice correctly decided that the Stipulation and Order applied to this limited disclosure and not just to MDL-wide disclosures;

    b.  Whether Judge Rice correctly decided that the Stipulation and Order applied to UEP and USEM's agreement to allow DPPs to "use" the disclosed communications (rejecting the argument that the Stipulation and Order covers only "the fact of production" and not the agreed-upon "use" of disclosed communications);

(2) Whether Judge Rice correctly decided that, because Supplier Defendants were asserting their good faith defense based only on communications with non-attorney

personnel, Supplier Defendants have neither put attorney advice at issue nor waived any claim of privilege;

(3) Whether Judge Rice correctly decided that Rose Acre, Cal-Maine, and Daybreak had the ability to waive privilege as to communications with UEP and USEM's attorneys that were in the possession of Rose Acre, Cal-Maine, and Daybreak:

(4) Whether Judge Rice correctly decided that, because Cal-Maine, Daybreak, and Rose Acre are asserting a good faith defense based only on communications with UEP and USEM's attorneys, those defendants do not have to disclose communications with their own attorneys;

and

(5) Whether Judge Rice should have undertaken an *in camera* inspection of the purportedly privileged communications of all Defendants asserting a good faith defense to determine whether the communications are relevant to that defense.

### A.  Whether UEP and USEM waived privilege by disclosing privileged information to DPPs

As IPPs correctly point out, the Third Circuit Court of Appeals does not recognize the so-called selective-waiver doctrine. *See In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 361 (3d Cir. 2007). Therefore, in a vacuum, the disclosure by UEP and USEM of privileged information to DPPs would waive privilege over that information. But, alas, the disclosure did not occur in a vacuum. Rather, Judge Rice found that the disclosure was protected by the Court's December 20, 2012 Stipulation and Order, which provided that the "fact of production of a document in this litigation may not be used by any party to argue waiver in this Litigation of UEP's attorney-client privilege."

IPPs and DAPs raise two issues in objecting to Judge Rice's Order. First, they argue that Judge Rice incorrectly determined that the production of the documents to DPPs was a disclosure "in this Litigation." Second, they argue that the settlement with DPPs allowed DPPs to *use* the information, which takes the disclosure outside the language of the Stipulation and Order. The Stipulation and Order, they argue, only prevents waiver due to the "fact of production" of the information—not due to the *use* of the information.

Because construction of a court order is a matter of law, the Court must ask whether the magistrate judge misinterpreted or misapplied applicable law. *See Apex Fountain Sales, Inc. v. Kleinfeld*, 818 F.2d 1089, 197 (3d Cir. 1987) (construction of a court order is a "purely legal issue"). Courts generally look to the "four corners of the document" when interpreting their own orders. *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 286 (3d Cir. 1991). However, where ambiguity exists in a court order, a court may "rely on the circumstances surrounding the drafting of the order and other aids of construction." *See id.* at 287. In interpreting its own order, a court should "give effect to the intention of the court, not to that of the parties." *Id.* at 286 (quoting *United States v. 60.22 Acres of Land, More or Less, Situate in Klickitat County, State of Wash.*, 638 F.2d 1176, 1178 (9th Cir. 1980)).

Here, the Court is called upon to interpret its own December 20, 2012 Order. The Order was issued pursuant the Court's authority under Fed. R. Evid. 502(d), which provides that a "federal court may order that [attorney-client] privilege . . . is not waived by disclosure connected with the litigation pending before the court—in which event the disclosure is also not a waiver in any other federal or state proceeding." Examining first the plain language of the Order, the Court notes that "this Litigation" is defined in the Order as "this multi-district litigation." However, contrary to IPPs' assertions, this does not resolve this issue. The issue

9

really turns on what constitutes a "production" in "this Litigation." That is, whether a production in "this Litigation" refers to a production in *any* of the cases in "this Litigation" or only a production in *all* of the cases in "this Litigation." The Court finds that the Order was not crafted with such a potential distinction in mind and, therefore, is ambiguous as to whether only MDL-wide productions qualify for protection under the Order, or whether a more limited production could also qualify for protection. Therefore, the Court examines the surrounding circumstances and seeks to give effect to the intention of the Court.[3]

The Court's intention in issuing this Order was to provide Rule 502(d) protection to each of the litigants enumerated in the Order in each of the cases pending in this MDL. In the interest of efficiency, the Court issued this single Order to cover multiple cases, much as the Court has consolidated multiple cases into this singly managed multidistrict litigation. But the decision to manage multiple cases within the form of a multidistrict litigation does not mean that the individual cases lose all independence from one another. The Court contemplated that there could well be negotiated settlements involving disclosures between certain (but not all) plaintiffs and certain (but not all) defendants in this litigation. The Court contemplated that those disclosures would not be shared with other plaintiffs and defendants in other cases. Thus, a production in "this Litigation" encapsulates both MDL-wide productions and, in instances like this, more limited productions in certain, but not all, of the multitude of cases within the larger multidistrict litigation. Therefore, production by UEP and USEM of privileged information in its litigation against DPPs would qualify as production within "this Litigation," and the fact of the production in and of itself would not waive UEP and USEM's privilege.

---

[3] Even though the parties stipulated to the proposed order presented to the Court, only the Court can issue a 502(d) Order and, therefore, the Court gives effect to the intentions of the Court, not those of the parties.

IPPs also argue that UEP and USEM waived their privilege over the documents disclosed in the settlement agreement because they not only agreed to the "production" of privileged documents but also to the "use" in litigation of those privileged documents. The terms of the settlement agreement between UEP, USEM, and DPPs provided:

> The parties have agreed that UEP and USEM will, within five (5) business days of the Execution Date and pursuant to the Stipulation and Order Pursuant to Federal Rule of Evidence 502(d) signed by the Court on December 20, 2012, produce or authorize the production of [certain privileged documents]. . . . All such documents shall be marked "Highly Confidential" pursuant to the Case Management Order No. 10 (Protective Order) signed by the Court on February 12, 2009. . . .
>
> Plaintiffs may use documents produced pursuant to this Paragraph in litigating the Action, provided, however, that limitations on the use of material qualifying as Highly Confidential pursuant to the Protective Order . . . shall apply as provided under that Order.

Declaration of James J. Pizzirusso, Exhibit 1 ¶46(b) (Doc. No. 997-2) (hereinafter "UEP/USEM/DPP Settlement Agreement").

This issue again turns on the construction of the Court's December 20, 2012 Order. The essential question is what that Order was meant to protect. IPPs argue that the Order was merely meant to "protect parties against waiver of privilege due to inadvertent production." IPP's Objs. at 6. UEP and USEM assert that the 502(d) Order was meant to protect any production within this litigation, including the production made as a result of the settlement agreement here.

The Court concludes that the December 20, 2012 Order protects the disclosure in the UEP/USEM/DPP Settlement Agreement from a claim of waiver of privilege. Contrary to IPPs' assertions, the plain language of this Order does not limit the 502(d) protection to mere accidental or inadvertent disclosures. As paragraph three of the Court's December 20, 2012 Order notes, the Court had, in fact, already issued an Order that protected inadvertently disclosed documents from claims of waiver of privilege. *See* 502(d) Order ¶ 3 ("UEP does not waive any

of its rights under Case Management Order No. 10 . . . including, but not limited to Paragraph 8

and its protections regarding inadvertent production of documents, information, or

communications subject to a claim of attorney-client privilege or work product or other

protection."); Case Management Order No. 10 (Protective Order) ¶ 8 (Docket No. 50) ("If, in

connection with the pending litigation, information subject to a claim of attorney-client privilege

or attorney work product protection is disclosed . . . the disclosure . . . shall not constitute or be

deemed a waiver or forfeiture of any claim of privilege or work product protection that a Party

would otherwise be entitled to assert . . . ."). The Court acknowledges that, occasionally, a court

issues a duplicative order or instruction. Here, however, the Court, in its December 20, 2012

502(d) Order, specifically referenced its earlier Protective Order for inadvertent disclosures,

making plain by implication that the Court intended for the 502(d) Order to extend protections

beyond its earlier Protective Order.

        The Court's 502(d) Order protects disclosures in the interest of "sav[ing] the parties and

the Court time and resources that otherwise will be expended logging documents and potentially

litigating the availability of the attorney-client privilege or work product or other protection."

502(d) Order ¶ 2. In other words, the Court recognized that, especially in this extensive,

multidistrict litigation, the costs of pre-production screening for privileged information often

may outweigh the benefits. The Court therefore determined that, in the interests of the efficient

and economical progress of the case, the parties enumerated in the Order would be permitted to

produce discovery without concern of waiving privilege by way of that disclosure. That is, the

Court agreed to allow the parties to provide potentially privileged documents to opposing parties,

with the aim that it would be the merits of the underlying privilege claim, not the mere fact that

the documents were produced, that would determine whether the privilege would be preserved.

But the Court's 502(d) Order does not give parties a blank check to disseminate privileged information without waiving privilege. After all, as IPPs note, it is only the mere "fact of production" that is protected. While IPPs argue that this "fact of production" language implies that only inadvertent disclosures are protected, this interpretation of the Order's "fact of production" language is too narrow. In this context the Court contemplated that the root word "produce" would mean "show or provide . . . for consideration, inspection, or *use*." *The New Oxford American Dictionary* 1352 (2d ed. 2005) (emphasis added). That is, implicit in the act of "producing" something is the notion that the receiving party can inspect, consider, and, to some extent, *use* the information to guide further action in the litigation. The Order would not protect an agreement to disseminate privileged information to the public or to share privileged information with those outside the Court's Order, but it does protect an agreement to allow the confidential use of received information in shaping litigation strategy.

Here, the Court concludes that the UEP/USEM/DPP Settlement Agreement's provision regarding the disclosure of privileged documents falls within the scope of the Court's 502(d) Order. The Settlement Agreement provides that UEP and USEM will cooperate with DPPs in their prosecution of this action, primarily by providing, without further litigation or delay, the requested discovery materials in this case. In keeping with this provision, UEP and USEM agreed to produce documents previously withheld as privileged.

This provision does not, however, permit DPPs to disseminate the supposedly privileged documents to the public or to those outside the scope of the Court's Order (which, of course, is why IPPs and DAPs are asking the Court to compel disclosure of these documents). Rather, DPPs agreed to maintain the confidentiality of these documents, meaning that their "use" of the documents is limited to their absorption of the information and reliance on the documents in

13

determining future actions in this litigation. That is, DPPs can *inspect* the ostensibly privileged documents, *consider* their import, and *use* them in determining future action.

This agreement to produce the privileged documents saves UEP, USEM, and DPPs the expense and time of litigating which documents can properly be withheld as privileged. Such an exchange fits naturally within the context of a settlement agreement, which aims to abruptly resolve disputes so as to reduce the costs and risks that typically accompany discovery and/or settlement features in lengthy litigation. Had UEP and USEM not agreed to produce their privileged documents as part of the settlement agreement, the parties would have had to expend time, effort, and money determining which documents were privileged and would not be disclosed. Such determinations could easily have sparked a costly, lengthy dispute that would have, at the least, mitigated the benefits of the settlement agreement and, at the worst, derailed it. This type of production, therefore, is precisely the type of efficiency-maximizing production that the Court's 502(d) Order seeks to protect from claims of waiver of privilege.

The Court rejects IPPs' contentions that the disclosure pursuant the settlement agreement with DPPs waived UEP and USEM's privilege by going beyond the "fact of production." The Court emphasizes that the parties subject to the Court's 502(d) Order have not lost their ability to challenge a claim of privilege for any other reasons than those outlined in the Court's Order. The parties can still challenge whether a withheld document is, in fact, privileged at all. The parties can also still challenge whether a party has waived its claim of privilege by putting the advice of counsel at issue or by disclosing a document to a party or in a manner not protected by the 502(d) Order.

For the reasons stated above, Judge Rice's finding that UEP and USEM had not waived privilege through their settlement agreement with DPPs is hereby affirmed.

**B.   *Whether Supplier Defendants waived privilege by asserting a good faith defense***

Judge Rice determined that the Supplier Defendants had not waived attorney-client privilege by their assertion of a good faith defense. He reasoned that because the "Supplier Defendants have asserted that their good faith defense is not based on any advice directly obtained from UEP's and USEM's attorneys," the Supplier Defendants have not put any privileged communications at issue. Order at 2. The Court affirms this outcome and reasoning.

Judge Rice correctly determined that merely asserting a generalized good faith defense does not waive attorney-client privilege. Rather, a litigant must "take[] the affirmative step in the litigation to place the advice of [counsel] in issue." *Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994). DAPs attempt to distinguish *Rhone-Poulenc* by arguing that this case more closely resembles *Livingstone v. N. Belle Vernon Borough*, 91 F.3d 515 (3d Cir. 1996), in which the Third Circuit Court of Appeals held that a defendant had waived attorney-client privilege in challenging the voluntariness of a release she had signed. *Id.* at 536-37. DAPs argue that *Rhone-Poulenc* and *Livingstone* stand for the proposition that a good faith belief regarding a legal issue necessarily puts counsel's advice at issue and waives attorney-client privilege. *See* DAP Objs. 5. This, however, is not the correct analysis under the law in the Third Circuit. The correct analysis is the one undertaken by Judge Rice: to ask whether specific advice of counsel is an essential element of the good faith defense and, if not, whether Supplier Defendants affirmatively placed attorney-client communication at issue as part of the good faith defense.

The Court agrees with Judge Rice that advice of counsel is not an essential element of the good faith defense in this case.[4] This situation is, as Judge Rice noted, more like the situation in

---

[4] This very well might beg (without answering now) the question of whether there exists a good faith defense to the loss of Capper-Volstead protection. A recent opinion of another judge

*Rhone-Poulenc* than the situation in *Livingstone*. In the voluntariness defense raised in *Livingstone*, whether a defendant had counsel before signing a release "is an explicit, and important element of the voluntariness analysis." *See Livingstone*, 91 F.3d at 537 (citing *Newton v. Rumery*, 480 U.S. 386, 394 (1987)). In *Rhone-Poulenc*, insurance companies refused to pay claims from an insured pharmaceutical company, arguing that the insured pharmaceutical company knew about, but did not disclose, potential legal liability relating to one of its products.[5] *See Rhone-Poulenc*, 32 F.3d at 855-56. In a deposition, the chairman and CEO of the insured pharmaceutical company testified that the company had relied on the advice of outside counsel in determining the potential legal liability related to the product. *Id.* at 856. The court, however, held that because the insured pharmaceutical company "had not interjected the advice of counsel as an essential element of a claim in this case, the district court erred . . . in finding they must disclose [the privileged documents at issue]." *Id.* at 864.

Here, similarly, Supplier Defendants have not interjected the advice of counsel as an essential element of their good faith defense. Rather, Supplier Defendants are explicitly asserting that they are not relying on the advice of counsel in asserting their good faith defense, and, like in *Rhone-Poulenc*, their good faith defense does not necessarily require placing advice of counsel at issue. Admittedly, the advice Supplier Defendants received from legal counsel is likely relevant to their good faith belief. However, as Judge Rice noted, privilege is not waived "merely by taking a position that [privileged communication] might contradict." *United States v. Salerno*,

---

in the Eastern District of Pennsylvania expressly rejected the notion of a good faith affirmative defense to loss of Capper-Volstead protection. *In re Mushroom Direct Purchaser Antitrust Litig.*, No. 06-0620, 2014 WL 5149082 at *6-7 (E.D. Pa. Oct. 14, 2014).

[5] DAPs characterize *Rhone-Poulenc* as involving not "a party's claim that it had a good faith belief about the law" but involving "a party's claim that it had a belief about a certain *fact*." DAP Objs. 5 (emphasis in original). This is an inaccurate reading of *Rhone-Poulenc*. *See Rhone-Poulenc*, 32 F.3d at 861 ("[Defendants] also seek to discover the advice counsel provided to [plaintiff] with regard to the legal significance of those facts."). This situation, like that in *Rhone-Poulenc*, involves beliefs about the legal significance of certain facts.

505 U.S. 317, 323 (1992). That is, the Third Circuit Court of Appeals has rejected "relevance" as the touchstone for analysis in this context. *See Rhone-Poulenc*, 32 F.3d 851, 863 ("Advice is not in issue merely because it is relevant, and does not necessarily become in issue merely because the attorney's advice might affect the client's state of mind in a relevant manner."). Rather, "[t]he advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication." *Id.* That, simply put, is not the case here, where Supplier Defendants' good faith defense is based only on what they learned from non-attorney personnel.

### C.   Whether Rose Acre, Cal-Maine, and Daybreak had the ability to waive privilege as to communications with UEP and USEM's attorneys

Defendants Rose Acre, Cal-Maine, and Daybreak, in contrast to the Supplier Defendants, are all asserting good faith defenses based on their communications with lawyers for UEP and USEM. These three defendants are all members of UEP and USEM. Judge Rice ruled that these three defendants must produce communications with UEP and USEM's attorneys that they possess that relate to their good faith defense. UEP and USEM assert that Judge Rice erred in this ruling because these three defendants, as members of UEP and USEM, did not have the authority to waive the privilege on behalf of their trade associations, namely UEP and USEM. The Court finds that Judge Rice's ruling did not yet sufficiently assess which party held the privilege to these communications.

The attorney-client privilege is designed to encourage candid communication between clients and their attorneys. Courts have long recognized that the doctrine of attorney-client privilege is a doctrine of "darkness designed to encourage light." John W. Gergacz, Attorney-Corporate Client Privilege § 1:2 (2014). That is, the purpose of attorney-client privilege is "to

encourage clients to make full disclosure to their attorneys." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (quoting *Fisher v. United States*, 445 U.S. 40, 51 (1980). The doctrine of privilege, therefore, seeks a "balance between disclosure yielding truth and confidentiality yielding truth." Gergacz, *supra*, § 1:2. For this reason, the protections of attorney-client privilege are limited to "(1) [communications] (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal advice for the client." *In re Teleglobe Commc'ns*, 493 F.3d 345, 359 (3d Cir. 2007) (quoting Restatement (Third) of the Law Governing Lawyers § 68 (2000)). "Privileged persons" include the attorney, the client, and the agents that "help facilitate attorney-client communications or the legal representation." *Id.* It is the client who holds the privilege, and, therefore, only the client who can decide to waive the privilege. *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 90 (3d Cir. 1992).

The limited scope of the attorney-client privilege creates definitional difficulties in the context of entities such as corporations or, as here, trade associations. The primary definitional difficulty is determining who (or what) in the corporate or associational context is "the client" who holds the privilege and is, therefore, capable of waiving the privilege. The well-established, general, though often unhelpful, answer in the corporate context is that the corporation itself is the client, and "the power to waive the corporate attorney-client privilege rests with the corporation's management." *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985).

This brings us to the next difficulty: discerning which communications are within the relationship between the attorney and the corporate client. The Supreme Court addressed this difficulty in its seminal opinion in *Upjohn*, determining that communications with both high-level executives and low-level employees may fall under the protections of attorney-client

privilege, provided that the communications were for the purpose of obtaining legal advice for the corporation. *See Upjohn*, 449 U.S. at 392-93. The Court reasoned that the purpose of the privilege—encouraging candid communication by the corporation to its attorneys—necessitated finding that the privilege extended to more than just the "control group" of high-level officers and directors at a corporation. *See id.* at 392. Not only could an employee at any level "embroil the corporation in serious legal difficulties," such an employee could "have the relevant information needed by corporate counsel if he is adequately to advise the client with respect to such actual or potential difficulties." *Id.* at 391. Further, any advice provided by the attorney to the corporation "will also frequently be more significant to noncontrol group members . . . and [limiting advice to control group members] makes it more difficult to convey full and frank legal advice to the employees who will put into effect the client corporation's policy." *Id.* at 392.

The Court's holdings in *Upjohn* create certain practical challenges for litigants with which their corporate attorney colleagues are often none too familiar. In the corporate context, communications between employees and corporate counsel, though potentially within the protections of attorney client privilege, are fraught with potential conflicts and discontinuities of interests. For example, an employee or manager might approach corporate counsel about a legal problem in her personal life, such as a divorce or a DUI. Such advice, unless related to the scope of the employee's employment at the corporation and given for the sake of advising the corporation, would not fall within the corporate client-attorney relationship, and might not be privileged at all. *Cf. Upjohn Co. v. United States*, 449 U.S. 383, 394 (1981) (finding attorney-corporate client privilege where communications between counsel and employees were within "the scope of the employees' corporate duties, and the employees themselves were sufficiently aware that they were being questioned in order that the corporation could obtain legal advice.").

To prevent potential representational conflicts, in which an attorney finds herself representing the conflicting interests of the corporation and the employee, corporate counsel have made a practice of providing "*Upjohn* warnings" to employees, notifying them that the lawyer represents the corporation, not the employee, and that any privilege over the communications is held by the corporation, not the employee. *See* Gergacz, *supra*, §2:15.

The parties have previously disputed the extent to which the principles of *Upjohn* apply to this case. Judge Rice has held that there may be scenarios in which UEP, as an agricultural cooperative, can assert privilege over confidential communications made between its attorneys and its members concerning legal advice for the association, much as a corporation can assert privilege over confidential communications between its attorneys and its employees. *See In re Processed Egg Prods. Antitrust Litig.*, 278 F.R.D. 112, 115 n.3 (E.D. Pa. 2011) (Rice, M.J.) ("One could posit scenarios in which communications between UEP members and its counsel would be covered by a privilege held only by UEP."). The parties have not objected to this premise in the past or presently, and the Court finds no reason to revisit it here, other than to note that the analogy between a corporation and a trade association for purposes of privilege is not perfect—members of a trade association are not perfectly analogous to employees of a corporation. The Court's determinations of privilege, therefore, rely more upon the principles underlying *Upjohn* than upon the notion that *Upjohn*'s protections are wholly and automatically applicable here. Judge Rice has been correctly analyzing UEP and USEM's privilege in this regard.

A trade association, like a corporation, does not have a blanket of privilege that it can toss over every communication between its lawyers and its members, dimming the light of discovery. Rather, the communications must be within the scope of the attorney-associational client

relationship. This requires further analysis into the content and context of the communications between counsel for the association and its members. *See In re Plasma-Derivative Protein Therapies Antitrust Litig.*, No. 09-C-7666, 11-c-1468, 2013 WL 791432, at \*3 (N.D. Ill. Mar. 4, 2013) ("Plaintiffs argue that the mere fact that PPTA is a trade association does not automatically establish that all the communications between PPTA's counsel and PPTA members are attorney client privileged. The Court agrees, as assessments of whether such communications are privileged are made on a case by case basis."). Here, UEP and USEM assert that they alone hold privilege over communications between their attorneys and members of UEP and USEM. Therefore, they argue, members of these associations cannot waive privilege over members' communications with counsel for the association. But this statement begs the question whether the communications are privileged in the first place and, if so, whether UEP, USEM, or the member holds the privilege.

Judge Rice impliedly determined, it seems, that whoever possessed the communications held the privilege over those communications. *See* Order at 2-3 ("[Rose Acre, Daybreak, and Cal-Maine] have waived the attorney-client privilege related to such communications and must produce any privileged documents they possess related to their defense. . . . UEP and USEM are not required to produce all documents they possess in support of the affirmative defenses of Rose Acre, Daybreak, and Cal-Maine."). This was not the correct, complete standard for determining which party holds the privilege. Who holds the privilege depends on the content and context of the communications. If the communications were within the attorney-associational client relationship—that is, if the communications were attorney advice within the scope of the member's role within the association and given for the sake of advising the association—then the privilege would belong to UEP and USEM, and only they could waive the privilege. *Cf. Upjohn*,

449 U.S. at 394 ("The communications concerned matters within the scope of the employees' corporate duties . . . ."). If, on the other hand, the communications were outside the scope of the members' roles in the association and were not given for the sake of advising the association, then UEP and USEM would not hold privilege over such communications, no matter which party possessed the documents. In the latter case, the communications might concern legal advice for the individual member of UEP and USEM, in which case the member would hold the privilege and could waive it, or the communications might not be privileged at all. *Cf. In re Processed Egg*, 278 F.R.D. at 122 n.16 ("[T]he record could not reasonably support the finding, urged by UEP, that Sparboe—which it views as a quasi-employee of 'single entity' UEP—was incapable of waiving any privilege. There is no evidence the letters were drafted by Sparboe's counsel while he was wearing his 'UEP member representative hat,' and not his 'in-house counsel for Sparboe hat.' At most, he may have been seeking legal advice for Sparboe from UEP's counsel, thus rendering Sparboe the 'client' for privilege purposes. Any other view would extend *Upjohn* beyond its intended reach and ignore Sparboe's separate corporate form.").

Accordingly, the Court vacates Judge Rice's finding as to communications between these three defendants and counsel for UEP and USEM. The Court remands this dispute to Judge Rice for a determination as to whether the communications at issue are, indeed, within the scope of the attorney-client relationship between counsel and the association or if the communications are outside that embrace.

**D.  Whether the magistrate judge correctly determined the extent to which Rose Acre, Cal-Maine, and Daybreak waived privilege by asserting a good faith defense**

DAPs object to the magistrate judge's determination that Rose Acre, Cal-Maine, and Daybreak had waived the privilege only as to the communications from UEP and USEM's

attorneys, not to all communications relevant to their good faith defense. The Court affirms Judge Rice's ruling on this point.

Implied waiver of attorney-client privilege is a narrow exception to attorney-client privilege (which is itself a narrow exception to the general liberality of discovery). This exception is cautiously calibrated to the specific attorney advice that has been placed at issue, even if further privileged information could be relevant. *See Teleglobe*, 493 F.3d at 378 ("In discovery disputes, implied waivers are construed narrowly."); *see also In re Lott*, 424 F.3d 446, 453 (6th Cir. 2005) ("Implied waivers are consistently construed narrowly. Courts must impose a waiver no broader than needed to ensure the fairness of the proceeding before it." (internal quotation marks omitted)).

Judge Rice correctly concluded that placing certain attorney advice at issue does not necessarily result in a waiver of all potentially relevant attorney advice. The correct inquiry is to ask what attorney advice has been put at issue and to narrowly circumscribe the scope of the waiver accordingly. Here, Rose Acre, Cal-Maine, and Daybreak put their communications with UEP and USEM's attorneys at issue. To the extent they hold the privilege over these communications, they have impliedly waived that privilege to the extent the communications address these three defendants' contested good faith belief. But this implied waiver does not extend to attorney-client communications that Rose Acre, Cal-Maine, and Daybreak have not placed at issue. These three defendants have not asserted that they will "attempt[ ] to prove [a] claim or defense by disclosing or describing" their communications with their own attorneys. *See Rhone-Poulenc*, 32 F.3d at 863. Therefore, they have not waived privilege as to these communications.

DAPs are correct to note, however, that litigants cannot use this waiver doctrine as both a sword and a shield. *See Murray v. Gemplus Int'l, S.A.*, 217 F.R.D. 362, 367 (E.D. Pa. 2003) ("As many courts have noted, the attorney-client privilege is a shield used to protect communications, not a sword wielded to gain an advantage in litigation."). But, here, Judge Rice correctly analyzed the circumstances in this case and determined that, as of now, there is no evidence that Defendants are using privilege "as an offensive weapon," *see id.*, correctly leaving open the issue for reconsideration "if evidence is produced showing Defendants relied on counsel's advice to determine the legality of their actions." Order at 1 n.1. Thus, Judge Rice did not commit clear error or rule contrary to law when he narrowly construed the waiver by defendants asserting a good faith defense and remained open to reconsidering the scope of the waiver as further evidence and information comes available.

### E.   Whether an **in camera** *inspection of privileged documents potentially relevant to a good faith defense is warranted*

Judge Rice also did not err in his determination of which documents would be reviewed *in camera*. The decision whether to review allegedly privileged documents in camera is discretionary. *See, e.g.*, *United States v. Zolin*, 491 U.S. 554, 572 (1989) ("[T]he decision whether to engage in *in camera* review rests in the sound discretion of the district court."); *Greene v. Philadelphia Housing Authority*, 484 F. App. 681, 685 (3d Cir. 2012) ("Furthermore, the District Court had no duty to undertake a laborious *in camera* review of the thousands of entries in the law firm invoices. *In camera* review is just one of several methods that district courts have at their disposal . . . ."). Judge Rice's Order specifically notes that DAPs and IPPs' Motion to Compel may be revisited as the case develops. *See* Order at 1 n.1. He therefore retains discretion whether to review documents *in camera*, as needed for proper determinations as to

24

privilege. Therefore, because Judge Rice has discretion as to which documents to review *in camera*, and because he has left open the possibility of revisiting his determination as to *in camera* review as the case develops, Judge Rice did not commit clear error or act contrary to law in his determination as to which documents to review *in camera*.

**IV.**   <u>**Conclusion**</u>

For the above reasons, Judge Rice's September 11, 2014 Order is AFFIRMED IN PART and VACATED IN PART.  The dispute is REMANDED to the Magistrate Judge for a redetermination as to the holder of the privilege in communications between UEP and USEM's attorneys and Defendants Cal-Maine, Rose Acre, and Daybreak. An Order consisted with this Memorandum follows.

BY THE COURT:


<u>S/Gene E.K. Pratter</u>
GENE E.K. PRATTER
United States District Judge