# UNITED STATES DISTRICT COURT
## IN THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **IN RE: PROCESSED EGG PRODUCTS** | : | **MDL No. 2002** |
| **ANTITRUST LITIGATION** | : | **Case No: 08-md-02002** |
| | : | |
| | : | |
| **THIS DOCUMENT APPLIES TO** | : | |
| **ALL DIRECT PURCHASER ACTIONS** | : | |
| | : | |

**DIRECT PURCHASER PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT BETWEEN PLAINTIFFS AND DEFENDANTS HILLANDALE FARMS OF PA., INC., AND HILLANDALE-GETTYSBURG, L.P., FOR CERTIFICATION OF CLASS ACTION FOR PURPOSES OF THE SETTLEMENT, AND FOR LEAVE TO FILE A MOTION FOR ATTORNEYS' <u>FEES AND REIMBURSEMENT OF EXPENSES</u>**

**TABLE OF CONTENTS**

I.    INTRODUCTION ...........................................................................................................1

II.   BACKGROUND .............................................................................................................2

      A.    The Litigation.....................................................................................................2

      B.    Previous Settlement History .............................................................................3

      C.    The Settlement Negotiations.............................................................................4

III.  PROVISIONS OF THE SETTLEMENT AGREEMENT....................................................5

      A.    The Settlement Class.........................................................................................5

      B.    Cash Consideration to the Proposed Class & Rescission Provisions .....................6

      C.    The Cooperation Provision ...............................................................................7

      D.    Release Provisions ............................................................................................7

IV.   THE PROPOSED SETTLEMENTS ARE SUFFICIENTLY FAIR,
      REASONABLE AND ADEQUATE......................................................................................8

      A.    Standard For Granting Preliminary Approval Of The Settlements .........................8

      B.    The Settlement Amount, the Cooperation Provision and the Terms of the
            Agreement Support Preliminary Approval. ...........................................................10

      C.    The Negotiation Process Supports Preliminary Approval. ...................................12

      D.    The Extent of Discovery at the Time the Settlement Agreement was
            Negotiated and Agreed to Supports Preliminary Approval. ..................................14

      E.    The Expense and Uncertainty of Continued Litigation Against the
            Hillandale/Gettysburg Defendants Supports Preliminary Approval....................14

V.    PRELIMINARY CERTIFICATION OF THE PROPOSED SETTLEMENT
      CLASSES IS WARRANTED ...........................................................................................15

      A.    This Case Satisfies The Prerequisites Of Rule 23(a). .........................................16

            1.    The Settlement Class is sufficiently numerous.........................................17

            2.    There are common questions of law and fact. ..........................................18

3.      The Representative Plaintiffs' claims are typical of those of the Settlement Class.................................................................................19

4.      The Representative Plaintiffs will fairly and adequately protect the interests of the Class. ..............................................................21

B.      The Representative Plaintiffs' Claims Satisfy The Prerequisites Of Rule 23(b)(3)........................................................................................21

1.      Common legal and factual questions predominate. .................................23

2.      A class action is superior to other methods of adjudication. ...................27

VI.     PLAINTIFFS' MOTION FOR LEAVE TO FILE MOTION FOR ATTORNEYS' FEES AND EXPENSES ......................................................................................28

VII.    CONCLUSION........................................................................................................29

## TABLE OF AUTHORITIES

### Cases

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) ................................................................ 22, 23, 28

*Austin v. Pa. Dept of Corr.,*
    876 F. Supp. 1437 (E.D. Pa. 1995) ........................................................ 10

*Baby Neal v. Casey,*
    43 F.3d 48 (3d Cir. 1994) ................................................................ 19, 20

*Bogosian v. Gulf Oil Corp.,*
    561 F.2d 434 (3d Cir. 1977) .................................................................. 21

*Comcast Corp. v. Behrend,*
    133 S. Ct. 1426 (2013) .......................................................................... 26

*Danny Kresky Enter. Corp. v. Magid,*
    716 F.2d 206 (3d Cir. 1983) .................................................................. 23

*Gates v. Rohm & Haas Co.,*
    248 F.R.D. 434 (E.D. Pa. 2008) ............................................................. 9

*Girsh v. Jepson,*
    521 F.2d 153 (3d Cir. 1975) .................................................................... 8

*Hedges Enters., Inc. v. Cont'l Grp., Inc.,*
    81 F.R.D. 461 (E.D. Pa. 1979) .............................................................. 26

*Hoxworth v. Blinder, Robinson & Co., Inc.,*
    980 F.2d 912 (3d Cir. 1992) .................................................................. 20

*In re Am. Inv. Life Ins. Co. Annuity Mktg. and Sales Practices Litig.,*
    263 F.R.D. 226 (E.D. Pa. 2009) ............................................................. 8

*In re Auto. Refinishing Paint Antitrust Litig.,*
    617 F. Supp. 2d 336 (E.D. Pa. 2007) ...................................................... 9

*In re Auto. Refinishing Paint Antitrust Litig.,*
    MDL NO. 1426, 2004 WL 1068807 (E.D. Pa. May 11, 2004) ........... 8, 11

*In re Auto. Refinishing Paint Antitrust Litig.,*
    No. MDL 1426, 2003 WL 23316645 (E.D. Pa. Sept. 5, 2003) .............. 12

*In re Catfish Antitrust Litig.,*
    826 F. Supp. 1019 (N.D. Miss. 1993) .................................................... 19

*In re Chambers Dev. Sec. Litig.,*
    912 F. Supp. 822 (W.D. Pa. 1995) ........................................................... 15

*In re Cmty. Bank of N. Va.,*
    418 F.3d 277 (3d Cir. 2005) ............................................................. 22, 27

*In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions,*
    410 F. Supp. 659 (D. Minn. 1974) .......................................................... 12

*In re Fine Paper Antitrust Litig.,*
    82 F.R.D 143 (E.D. Pa. 1979) ................................................................ 27

*In re Flat Glass Antitrust Litig.,*
    191 F.R.D. 472 (W.D. Pa. 1999) ....................................................... 19, 26

*In re Gen. Instruments Sec. Litig.,*
    209 F. Supp. 2d 423 (E.D. Pa. 2001) ................................................. 11, 12

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,*
    55 F.3d 768 (3d Cir. 1995) ................................................................. 8, 10

*In re Hydrogen Peroxide Antitrust Litig.*
    552 F.3d 305 (3d Cir. 2008) ................................................................. 23

*In re Ikon Office Supplies Inc. Sec. Litig.,*
    194 F.R.D. 166 (E.D. Pa. 2000) ....................................................... 11, 16

*In re Imprelis Herbicide Mktg., Sales Practices & Prods. Liab. Litig.,*
    No. 11-md-2284, 2013 U.S. Dist. LEXIS 18332 (E.D. Pa. Feb. 11, 2013) ........................ 9, 14

*In re Ins. Broker. Antitrust Litig.,*
    579 F.3d 241 (3d Cir. 2009) ......................................................... passim

*In re Ins. Brokerage Antitrust Litig.,*
    297 F.R.D. 136 (D.N.J. 2013) ................................................................ 10

*In re K-Dur Antitrust Litig.,*
    No. 01-1652, 2008 WL 2699390 (D.N.J. Apr. 14, 2008) .................................. 18, 26

*In re Linerboard Antitrust Litig.,*
    292 F. Supp. 2d 631 (E.D. Pa. 2003) .............................................. passim

*In re Linerboard Antitrust Litig.,*
    305 F.3d 145 (3d Cir. 2002) ................................................................. 23

*In re Mercedes-Benz Antitrust Litig.,*
    213 F.R.D 180 (D.N.J. 2003) ..................................................... 18, 20, 23

*In re Microcrystalline Cellulose Antitrust Litig.*,
 218 F.R.D. 79 (E.D. Pa. 2003) ................................................................ 19, 20, 27

*In re Mid-Atlantic Toyota Antitrust Litig.*,
 564 F. Supp. 1379 (D.C. Md. 1983) ....................................................................... 8

*In re NASDAQ Market-Makers Antitrust Litig.*,
 169 F.R.D. 493 (S.D.N.Y. 1996) .......................................................................... 18

*In re NASDAQ Market-Makers Antitrust Litig.*,
 187 F.R.D. 465 (S.D.N.Y. 1998) .......................................................................... 15

*In re OSB Antitrust Litig.*,
 2007 WL 2253418 (E.D. Pa. Aug. 3, 2007) ......................................................... 18

*In re Pet Food Prods. Liability Litig.*,
 No. 07-2867, 2008 WL 4937632 (D.N.J. Nov. 18, 2008) ..................................... 15

*In re Plywood Antitrust Litig.*,
 76 F.R.D 570 (E.D. La. 1976) .............................................................................. 26

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
 962 F. Supp. 450 (D.N.J. 1997) ............................................................................. 8

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
 163 F.R.D. 200 (S.D.N.Y. 1995) .......................................................................... 16

*In re Remeron End-Payor Antitrust Litig.*,
 No. Civ. 02-2007, 2005 WL 2230314 (D.N.J. Sept. 13, 2005) ............................. 15

*In re Rite Aid Corp. Sec. Litig.*,
 146 F. Supp. 2d 706 (E.D. Pa. 2001) ..................................................................... 9

*In re Sumitomo Copper Litig.*,
 189 F.R.D. 274 (S.D.N.Y. 1999) .......................................................................... 18

*In re The Prudential Ins. Co. of Am. Sales Practices Litig. Agent Actions*,
 148 F.3d 283 (3d Cir. 1998) ................................................................................ 27

*In re Warfarin Sodium Antitrust Litig.*,
 212 F.R.D. 231 (D. Del 2003) .............................................................................. 27

*In re Warfarin Sodium Antitrust Litig.*,
 391 F.3d 516 (3d Cir. 2004) .................................................................... 8, 16, 19

*Lake v. First Nationwide Bank*,
 156 F.R.D. 615 (E.D. Pa. 1994) ........................................................................... 13

*Marsden v. Select Med. Corp.*,
    246 F.R.D. 480 (E.D. Pa. 2007) ............................................................. 17

*McGuiness v. Parnes*,
    No. 87-2728-LFO, 1989 WL 29814 (D.D.C. Mar. 22, 1989) ................................... 12

*Petruzzi's Inc. v. Darling-Delaware Co.*,
    880 F. Supp. 292 (M.D. Pa. 1995) .......................................................... 13

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993) ............................................................... 17

*Stewart v. Abraham*,
    275 F.3d 220 (3d Cir. 2001) ............................................................ 17, 18

*Stewart v. Rubin*,
    948 F. Supp. 1077 (D.D.C. 1996) ........................................................... 12

*Sullivan v. DB Inv., Inc.*,
    667 F.3d 273 (3d Cir. 2011) ............................................................ 23, 24

*Thomas v. NCO Fin. Sys.*,
    No. CIV.A. 00-5118, 2002 WL 1773035 (E.D. Pa. July 31, 2002) .............................. 9

*Transamerican Refining Corp. v. Dravo Corp.*,
    130 F.R.D. 70 (S.D. Tex. 1990) ............................................................ 19

*Wal-Mart Stores Inv. v. Dukes*,
    131 S. Ct. 2541 (2011) .................................................................... 24

*Weisfeld v. Sun Chem. Corp.*,
    210 F.R.D 136 (D.N.J. 2002) ............................................................... 18

*Weseley v. Spear*,
    711 F. Supp. 713 (E.D.N.Y. 1989) ......................................................... 14

## **Statutes**

15 U.S.C. § 1, *et seq* ..................................................................... 2

## **Rules**

Federal Rule of Civil Procedure 23 ..................................................... passim

## **Other Authorities**

2 NEWBERG ON CLASS ACTIONS, § 11.41 (3d ed. 1992) ......................................... 13

4 NEWBERG ON CLASS ACTIONS § 11:25 (4th ed. 2002) ......................................... 8

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Direct Purchaser Plaintiffs ("Plaintiffs") respectfully submit this memorandum in support of their motion for (1) preliminary approval of a settlement between Plaintiffs and Defendants Hillandale Farms of Pa., Inc. ("Hillandale PA") and Hillandale-Gettysburg, L.P. ("Hillandale-Gettysburg") (collectively the "Hillandale/Gettysburg Defendants" or "Defendants") as set forth in the "Settlement Agreement Between Direct Purchaser Plaintiffs and Defendants Hillandale Farms of Pa., Inc., and Hillandale-Gettysburg, L.P." ("Agreement" or "Settlement Agreement"), attached as Exhibit 1 to the Declaration of Ronald J. Aranoff; (2) for certification of a class action for purposes of settlement; and (3) for leave to file motions for attorney's fees and reimbursement of expenses.

## I.     INTRODUCTION

After months of intense arm's-length negotiations, Plaintiffs and the Hillandale/Gettysburg Defendants entered into a Settlement Agreement to provide $3,000,000 into a fund to provide for the claims of members of the proposed Settlement Class. The Agreement also requires that the Hillandale/Gettysburg Defendants cooperate with Class Counsel by authenticating documents. Pursuant to the terms of the Settlement Agreement, Plaintiffs will release the Hillandale/Gettysburg Defendants, as well as Hillandale Farms East, Inc., and Hillandale Farms, Inc., from all pending claims.

Plaintiffs respectfully move the Court for an Order ("Preliminary Approval Order"), preliminarily approving the Settlement Agreement in substantially the same form as the proposed order submitted herewith, that provides, among other things:

- the settlement proposed in the Settlement Agreement has been negotiated at arm's length and is preliminarily determined to be fair, reasonable, adequate, and in the best interests of the Settlement Class;

- the Settlement Class defined in the Settlement Agreement be certified, designating Class Representatives and Settlement Class Counsel as defined therein, on the condition that the certification and designations shall be automatically vacated in the event that the Settlement Agreement is not approved by the Court or any appellate court; and

- a hearing on the settlement proposed in the Settlement Agreement shall be held by the Court to determine whether the proposed settlement is fair, reasonable, and adequate, and whether it should be finally approved by the Court.

These provisions will set in motion the procedures necessary to obtain final approval of the proposed settlements as required by Rule 23(e) of the Federal Rules of Civil Procedure.

At this time, in considering whether to grant preliminary approval of a proposed settlement, the Court need determine only whether the settlement is sufficiently fair, reasonable, and adequate to allow notice of the proposed settlement to be disseminated to the Settlement Class. A final determination of the settlement's fairness will be made at or after the Fairness Hearing, after Class Members have received notice of the settlement and have been given an opportunity to object to it or opt-out of the class. As set forth below, Plaintiffs submit that the Agreement amply satisfies the required standards.

## II.   <u>BACKGROUND</u>

### A.   **The Litigation**

This case concerns an alleged conspiracy among the nation's largest egg producers. Plaintiffs allege that Defendants and other named and unnamed co-conspirators violated the Sherman Antitrust Act, 15 U.S.C. § 1, *et seq*., by engaging in an unlawful conspiracy to reduce output and thereby artificially fix, raise, maintain and/or stabilize the prices of shell eggs and egg products in the United States. As a result of Defendants' alleged conduct, Plaintiffs and members of the Class paid prices for shell eggs and egg products that were higher than they otherwise would have been absent the conspiracy. The lawsuit seeks treble damages, injunctive relief,

attorneys' fees, and costs from Defendants. The Hillandale/Gettysburg Defendants deny all allegations of wrongdoing in this action.

**B.      Previous Settlement History**

On June 8, 2009, Sparboe Farms, Inc. ("Sparboe") entered into a settlement agreement with Plaintiffs providing for cooperation in the continued litigation of the case, and on July 16, 2012, this Court granted final approval of the settlement. (ECF No. 698.) On May 21, 2010, Moark, LLC, Norco Ranch, Inc., and Land O'Lakes, Inc. (collectively "Moark Defendants") entered into a settlement agreement with Plaintiffs providing for both continued cooperation and a cash settlement of $25,000,000.00. This Court granted final approval of the settlement on July 16, 2012. (ECF No. 700.) On August 2, 2013, Cal-Maine Foods, Inc. ("Cal-Maine") entered into a settlement agreement with Plaintiffs providing for continued cooperation and a cash settlement of $28,000,000.00. (ECF No. 848-2.) This Court granted final approval of that settlement on October 10, 2014. (ECF No. 1082.) On March 28, 2014, Plaintiffs entered into a settlement with Defendant National Food Corporation ("NFC") providing for continued cooperation and a cash settlement of $1,000,000.00. (ECF No. 952-2.) On March 31, Plaintiffs entered into a settlement with Midwest Poultry Services, LP ("MPS") providing for continued cooperation and a cash settlement of $2,500,000.00. (952-3.) On May 21, 2014, Plaintiffs entered into a settlement with United Egg Producers ("UEP") and United States Egg Marketers ("USEM") for cooperation and a cash settlement of $500,000. (ECF No. 997-2.) The Court granted preliminary approval of Plaintiffs' settlements with NFC, MPS, UEP/ USEM on July 30, 2014. (ECF 1027.) On August 1, 2014, Plaintiffs entered into a settlement agreement with NuCal Foods, Inc. ("NuCal") providing for continued cooperation and a cash settlement of $1,425,000. (ECF. No. 1041.) The Court granted preliminary approval of the NuCal Settlement Agreement on October 3, 2014. (ECF. No. 1073.)

### C.      The Settlement Negotiations

Interim Co-Lead Counsel for Plaintiffs ("Class Counsel") and counsel for the Hillandale/Gettysburg Defendants engaged in extensive arm's-length negotiations over the course of approximately four months to reach the current settlement. The scope and details of the negotiations are described in the Aranoff Declaration filed herewith. Class Counsel and Defendants' counsel, who are highly experienced and capable, vigorously advocated their respective clients' positions in the settlement negotiations.

The parties first discussed the possibility of settlement shortly after the litigation began, and again after the Court ruled on motions to dismiss. However, these early settlement discussions were not fruitful and the parties did not engage in additional settlement discussions for some time. Aranoff Decl. at ¶ 4. In September 2013, the parties sought to stay the litigation to pursue a joint mediation before the Honorable Harlan A. Martin (Ret.) of JAMS, a respected former jurist. *Id.* at ¶ 5. The Hillandale/Gettysburg Defendants participated in that mediation, which took place in October 2013. Although the mediation was unsuccessful, Class Counsel decided to approach the Hillandale/Gettysburg Defendants about resolving the case. *Id.*

Class Counsel and counsel for the Hillandale/Gettysburg Defendants began substantive settlement discussions during the summer of 2014. *Id.* at ¶ 6. The parties' discussions moved forward in earnest after Plaintiffs reached settlements with other defendants in this case. While the parties were initially far apart, they made slow and steady progress over time. After several rounds of telephone calls and emails, Plaintiffs and the Hillandale/Gettysburg Defendants agreed to a $3,000,000 settlement in early September. *Id.* The broad terms of the settlement were memorialized in a binding term sheet dated September 19, 2014. *Id.* On October 22, 2014, Class Counsel and counsel for the Hillandale/Gettysburg Defendants executed the formal Settlement Agreement. In conjunction with executing the Settlement Agreement, the Hillandale/Gettysburg

Defendants identified financial information provided during discovery sufficient to show the financial status of the company. *Id.*

After factual investigation and legal analysis, it is the opinion of Class Counsel that the Settlement Amount of $3,000,000, combined with Defendants' obligation to authenticate documents, is fair, reasonable, and adequate to the Class. Plaintiffs respectfully submit that the Settlement is in the best interest of the Class and should be preliminarily approved by the Court, and that a class should be certified for purposes of the Settlement.

## III.    PROVISIONS OF THE SETTLEMENT AGREEMENT

### A.    The Settlement Class

The Settlement Agreement defines the proposed Settlement Class as follows:

All persons and entities that purchased Shell Eggs or Egg Products in the United States directly from any Producer, including any Defendant, during the Class Period from January 1, 2000 through the date on which the Court enters an order preliminarily approving the Agreement and certifying a Class for Settlement purposes.

a.) Shell Egg SubClass

All individuals and entities that purchased Shell Eggs in the United States directly from any Producer, including any Defendant, during the Class Period from January 1, 2000 through the date on which the Court enters an order preliminarily approving the Agreement and certifying a Class for Settlement purposes.

b.) Egg Products SubClass

All individuals and entities that purchased Egg Products produced from Shell Eggs in the United States directly from any Producer, including any Defendant, during the Class Period from January 1, 2000 through the date on which the Court enters an order preliminarily approving the Agreement and certifying a Class for Settlement purposes.

Excluded from the Class and SubClasses are Defendants, Other Settling Defendants, and Producers, and the parents, subsidiaries and affiliates of Defendants, Other Settling Defendants, and Producers, all government entities, as well as the Court and staff to whom this case is assigned, and any member of the Court's or staff's immediate family.

Settlement Agreement, ¶ 23 (Aranoff Decl., Ex. 1). The Cal-Maine, Moark, Sparboe, NFC, MPS,

UEP/USEM, and NuCal settlement agreements all similarly define the Settlement Class.[1]

### B.    Cash Consideration to the Proposed Class & Rescission Provisions

The Settlement Agreement provides that, within 30 days of its execution, the

Hillandale/Gettysburg Defendants will pay $3,000,000.00 in cash (the "Settlement Amount").

*See* Settlement Agreement ¶¶ 20, 40. Payment of the Settlement Amount will be equally split

between Hillandale PA and Hillandale-Gettysburg. *Id.* at ¶ 20 n.1. This money shall be

maintained in an escrow account controlled by the Defendants and Class Counsel pending

approval of the settlement by the Court.

Plaintiffs and Defendants each have the right and option to rescind the Settlement

Agreement for the reasons described in ¶ 35 of the Agreement, including in the event that the

Court refuses to approve the Agreement or any part thereof, or if such approval is modified or set

aside on appeal. Defendants also have the right and option to rescind the Agreement should class

members whose combined annual purchases of Shell Eggs and/or Egg Products from Hillandale

PA equal or exceed a certain percentage of Hillandale PA's total sales decide to exclude

themselves from the Settlement Class. *Id.* at ¶ 38. The Opt-Out threshold is set forth in a

---

[1] All of the settlement agreements define the Settlement Classes as "all persons and
entities that purchased eggs . . . including Shell Eggs and Egg Products . . . directly from any
producer . . . ." Moark Settlement Agreement (ECF No. 349-1) ¶ 19. And all of the Settlement
Agreements exclude from the class those who purchased exclusively "specialty shell eggs" or
"hatching shell eggs."  The Moark and Sparboe Agreements provide for those exclusions in the
class definitions themselves, whereas the Settlement Agreement with Cal-Maine simply defines
"shell eggs" and "egg products" as excluding specialty and hatching shell eggs in the definition
of those terms in the Agreement, thus incorporating those exclusions into the class definition by
reference.  *Compare* Cal-Maine Settlement Agreement (ECF 848-2) ¶¶ 8, 18, 20 *with* Moark
Settlement Agreement (ECF No. 349-1) ¶ 19, *and* Sparboe Settlement Agreement (ECF No. 172-
2) ¶ 11.

Supplemental Agreement between the parties, which will be disclosed to the Court for *in camera* inspection prior to entry of the preliminary approval order. *Id.* at ¶¶ 38–39.

Additionally, the Settlement Agreement provides that Class Counsel may, at a time approved by the Court, seek from the Settlement Amount an award of attorney's fees, reimbursement of expenses, and incentive awards for class representatives, and that the Defendants shall have no obligation to pay any fees or expenses of Class Counsel. *Id.* at ¶ 43.

### C.    The Cooperation Provision

In addition to the Settlement Amount, the Agreement also requires that the Hillandale/Gettysburg Defendants cooperate with Plaintiffs in their prosecution of this Action by authenticating documents. Under the Agreement, the Hillandale/Gettysburg Defendants must authenticate documents, including business records if applicable, that were produced by the Hillandale/Gettysburg Defendants and, to the extent possible, any documents produced by Non-Settling Defendants or the alleged co-conspirators that were authored or created by the Hillandale/Gettysburg Defendants or sent to or received by the Hillandale/Gettysburg Defendants. *Id.* at ¶ 47.

### D.    Release Provisions

In exchange for the consideration described above, Plaintiffs have agreed to release the Hillandale/Gettysburg Defendants, as well as Hillandale Farms East, Inc., and Hillandale Farms, Inc., from any and all claims arising out of or resulting from: (i) any agreement or understanding between or among two or more Producers of eggs, including any Defendants; (ii) the reduction or restraint of supply, the reduction of or restrictions on production capacity; or (iii) the pricing, selling, discounting, marketing, or distributing of Shell Eggs or Egg Products in the United States or elsewhere. The full text of the proposed releases, including the limitations thereof, is set forth in the Settlement Agreements. *Id.* ¶¶ 30-34.

## IV.   THE PROPOSED SETTLEMENTS ARE SUFFICIENTLY FAIR, REASONABLE AND ADEQUATE

### A.   Standard For Granting Preliminary Approval Of The Settlements

The approval of class action settlements involves a two-step process: (1) preliminary approval; and (2) a fairness hearing, after notice to the class, to determine final approval of the proposed settlement.  *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 562 (D.N.J. 1997); *In re Auto. Refinishing Paint Antitrust Litig.*, MDL NO. 1426, 2004 WL 1068807, at *1 (E.D. Pa. May 11, 2004); 4 NEWBERG ON CLASS ACTIONS § 11:25, at 38-39 (4th ed. 2002).

When deciding preliminary approval, a court does not conduct a "definitive proceeding on fairness of the proposed settlement."  *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D.C. Md. 1983); *see also In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995) (holding that the "preliminary determination establishes an initial presumption of fairness"); *In re Am. Inv. Life Ins. Co. Annuity Mktg. and Sales Practices Litig.,* 263 F.R.D. 226, 238 (E.D. Pa. 2009) (same). That definitive determination must await the final hearing, at which the fairness, reasonableness, and adequacy of the settlement are more fully assessed.  *See In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 638 (E.D. Pa. 2003).[2]  Indeed, as one court noted:

---

[2]   The factors considered for final approval of a class settlement as "fair, reasonable and adequate" include: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best possible recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation. *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534-35 (3d Cir. 2004); *In re Prudential Ins. Co. of Am.*

> In evaluating a settlement for preliminary approval, the court need not reach any ultimate conclusions on the issues of fact and law that underlie the merits of the dispute . . . . Instead, the court must determine whether "the proposed settlement discloses grounds to doubt its fairness or otherwise obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and whether it appears to fall within the range of possible approval . . . . The analysis often focuses on whether the settlement is the product of 'arms-length negotiations.'

*Thomas v. NCO Fin. Sys.*, No. CIV.A. 00-5118, 2002 WL 1773035, at *5 (E.D. Pa. July 31, 2002) (internal citations omitted). In determining at the preliminary approval stage whether an antitrust settlement falls within a "range of reasonableness," a court examines whether "'(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'"[3] *In re Imprelis Herbicide Mktg., Sales Practices & Prods. Liab. Litig*., No. 11-md-2284, 2013 U.S. Dist. LEXIS 18332, at *7 (E.D. Pa. Feb. 11, 2013) (*quoting In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 638 (E.D. Pa. 2003)). After making such findings, a settlement agreement is entitled to a presumption of fairness and should be preliminarily approved. *Id.* at *8.

Additionally, in reviewing a proposed settlement, courts may also consider the amount of relief provided, *see, e.g.*, *In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d 336, 344 (E.D. Pa. 2007), and commitments of settling defendants to provide information or cooperation that assists the class in prosecuting the action against non-settling defendants, *see e.g., In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d at 643.

_____

*Sales Practices Litig.*, 962 F. Supp. 450, 562 (D.N.J. 1997); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 713 (E.D. Pa. 2001). At the preliminary approval stage, "the Court need not address these factors, as the standard for preliminary approval is far less demanding." *Gates v. Rohm & Haas Co.,* 248 F.R.D. 434, 444 n.7 (E.D. Pa. 2008). Plaintiffs will thus fully address each of these factors in in their memorandum in support of their motion for final approval.

[3] The last factor, the percentage of objections, is premature at this stage.  *In re Imprelis*, 2013 U.S. Dist. LEXIS 18332, at *10.

9

Finally, the Court should consider that "settlement of litigation is especially favored by courts in the class action setting." *In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 144 (D.N.J. 2013); *see also In re Gen. Motors Corp.*, 55 F.3d at 784 (holding that "[t]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation"); *Austin v. Pa. Dept of Corr.*, 876 F. Supp. 1437, 1455 (E.D. Pa. 1995) (explaining that "the extraordinary amount of judicial and private resources consumed by massive class action litigation elevates the general policy of encouraging settlements to 'an overriding public interest'").

As discussed below, the proposed Settlement Agreement with the Hillandale/Gettysburg Defendants is entitled to a presumption of fairness because it provides no preferential treatment of class representatives or segments of the class, does not provide for excessive compensation of attorneys, provides significant relief to the Settlement Class, and requires the Defendants to cooperate with Plaintiffs by authenticating documents, which will assist Plaintiffs in prosecuting the case against the Non-Settling Defendants.

### B.    The Settlement Amount, the Cooperation Provision and the Terms of the Agreement Support Preliminary Approval.

The Settlement Amount provided in the proposed Settlement Agreement is fair and reasonable and represent a favorable result for the class. As noted above, the Agreement requires that the Hillandale/Gettysburg Defendants pay $3,000,000. This amount was agreed upon after approximately four months of intense, arm's-length negotiations. Class Counsel believes it is in the best interest of the class to enter into the Agreement rather than continuing to pursue a judgment against the Hillandale/Gettysburg Defendants that may prove to be uncollectible. Moreover, the damages Plaintiffs suffered due to the Hillandale/Gettysburg Defendants alleged conduct remain in the case and are recoverable from Non-Settling

Defendants under joint and several liability. *See In re Auto. Refinishing Paint Antitrust Litig.*, MDL NO. 1426, 2004 WL 1068807, at *2 (E.D. Pa. May 11, 2004) (preliminarily approving settlement agreement because, *inter alia*, "this settlement does not affect the joint and several liability of the remaining Defendants in this alleged conspiracy").

Also, as described above, the Settlement Agreement requires the Hillandale/Gettysburg Defendants to cooperate with Plaintiffs by authenticating documents. Under the Agreement, the Hillandale/Gettysburg Defendants must authenticate documents, including business records, that they produced in this Action, and to the extent possible, documents produced by Non-Settling Defendants or the alleged co-conspirators that were authored or created by, or sent to or received by, the Hillandale/Gettysburg Defendants. Class Counsel believes that Defendants' cooperation will assist Class Counsel in prosecuting their claims in this case. *See In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d at 643 ("The provision of such [cooperation] is a substantial benefit to the classes and strongly militates toward approval of the Settlement Agreement."); *In re Ikon Office Supplies Inc. Sec. Litig.*, 194 F.R.D. 166, 177 (E.D. Pa. 2000) (noting that cooperation agreements are valuable when settling a complex case); *In re Auto. Refinishing Paint Antitrust Litig.*, 2004 WL 1068807, at *2 (acknowledging the assistance that the settling defendants will provide "in pursuing this case against the remaining Defendants").

Class Counsel have substantial experience litigating antitrust class actions and strongly believe that the settlement amount is appropriate cash consideration for the discharge of the claims against the Hillandale/Gettysburg Defendants, and is a highly favorable result of the Class. This determination is based in part on the risk and likely expense of continuing to litigate the claims against Defendants. Courts have accorded significant weight to the opinion of Class Counsel based on a thorough analysis of the facts. *See, e.g., In re Gen. Instruments Sec. Litig.,*

11

209 F. Supp. 2d 423, 431 (E.D. Pa. 2001); *Stewart v. Rubin,* 948 F. Supp. 1077, 1087 (D.D.C. 1996) ("A court should defer to the judgment of experienced counsel who have competently evaluated the strength of the proof."); *McGuiness v. Parnes,* No. 87-2728-LFO, 1989 WL 29814, at *1 (D.D.C. Mar. 22, 1989) ("While the evaluation of the fairness and adequacy of a settlement such as this is anything but a scientific process, there is nothing about this Settlement suggesting that the Court should second-guess the product of the negotiations between the skilled and conscientious lawyers who represented parties on both sides of this litigation."); *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions,* 410 F. Supp. 659, 667 (D. Minn. 1974) ("The recommendation of experienced antitrust counsel is entitled to great weight.").

Finally, the settlement is fair to the class as a whole. It provides no preferential treatment to Class Representatives, and Class Counsel anticipate the allocation of settlement funds will be distributed *pro rata* based on each class member's (including Class Representative's) purchases of shell eggs and egg products. Class representatives benefit from the Settlement Agreement in the same way as any other Settlement Class member. *See* Allocation Order, Nov. 9, 2012 (ECF No. 761) (finding *pro rata* allocation of settlement funds to be fair, reasonable, and adequate). And, as noted above, the Agreement provides that Class Counsel must obtain approval from the Court to receive fees and expenses from the Settlement Amount, which may not be paid until final approval of the Agreement.

## C.  The Negotiation Process Supports Preliminary Approval.

Settlements that result from arm's-length negotiations between experienced counsel are generally entitled to deference from the court. *In re Auto. Refinishing Paint Antitrust Litig.*, No. MDL 1426, 2003 WL 23316645, at *6 (E.D. Pa. Sept. 5, 2003); *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d at 640 ("A presumption of correctness is said to attach to a class settlement

reached in arm's-length negotiations between experienced, capable counsel . . . ." (internal quotations omitted)); *Lake v. First Nationwide Bank*, 156 F.R.D. 615, 628 (E.D. Pa. 1994) (giving "due regard to the recommendations of the experienced counsel in this case, who have negotiated this settlement at arms-length and in good faith"); *Petruzzi's Inc. v. Darling-Delaware Co.*, 880 F. Supp. 292, 301 (M.D. Pa. 1995) ("[T]he opinions and recommendations of such experienced counsel are indeed entitled to considerable weight"); 2 NEWBERG ON CLASS ACTIONS, § 11.41 (3d ed. 1992) ("There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval.").  This deference reflects the understanding that vigorous negotiations between seasoned counsel protect against collusion and advance the fairness considerations of Rule 23(e).

As discussed above and in the accompanying Aranoff Declaration, the settlement is the result of arm's length negotiations between Class Counsel and counsel for the Hillandale/Gettysburg Defendants, all of whom are experienced and capable in complex class action and antitrust matters.[4] Defendants' counsel and Class Counsel vigorously advocated their respective clients' positions in the settlement negotiations and were prepared to litigate the case fully if no settlement was reached. Nothing in the course of Plaintiffs' negotiations with the Hillandale/Gettysburg Defendants, or in the substance of the proposed Settlement Agreement, presents any reason to doubt the Agreement's fairness.

---

[4] The experience and qualifications of Interim Co-Lead Class Counsel are described in Interim Co-Lead Counsel's Submission in Support of Permanent Appointment of Interim Leadership Structure.  No. 08-cv-4653 (E.D. Pa.), ECF No. 26, and accompanying exhibits.

### D.   The Extent of Discovery at the Time the Settlement Agreement was Negotiated and Agreed to Supports Preliminary Approval.

Fact discovery was well advanced when this Settlement Agreement was reached. When Class Counsel and counsel for the Hillandale/Gettysburg Defendants reached an agreement, Class Counsel had reviewed over 15,000 documents produced by Hillandale/Gettysburg. Aranoff Decl. at ¶ 8. Class Counsel had also deposed the Chairman of Hillandale-Gettysburg, the President of Hillandale Pa., and the General Manager of Hillandale-Gettysburg. *Id.* Additionally, at the time of the Settlement Agreement, Defendants collectively had produced over 1 million documents, much of which had already been reviewed by Class Counsel. Accordingly, the amount of discovery completed supports a finding that the Settlement is within the range of reasonableness. *In re Imprelis*, 2013 U.S. Dist. LEXIS 18332, at *9-10 (finding settlement within range of reasonableness where "[a] considerable amount of preliminary discovery was conducted, including the review of some 500,000 pages of documents . . . , the hiring and consultation of several experts, and a deposition of [Defendant's] product manager").

### E.   The Expense and Uncertainty of Continued Litigation Against the Hillandale/Gettysburg Defendants Supports Preliminary Approval.

Class counsel have considered the complexities of this litigation, the risks, expense and duration of continued litigation against Hillandale PA and Hillandale-Gettysburg and the likely appeal if Plaintiffs prevail at trial. After weighing these against the guaranteed recovery and cooperation provided to the Plaintiffs in the Settlement Agreement, Class Counsel strongly believes the Settlement is favorable to and in the best interests of the Plaintiffs and the Class.

The settlement is particularly reasonable given the inherent risks in moving forward with litigation towards trial. It has been often observed that "[a]n antitrust class action is arguably the most complex action to prosecute." *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d at 639 (citation omitted); *see also Weseley v. Spear*, 711 F. Supp. 713, 719 (E.D.N.Y. 1989) (noting that

antitrust class actions are "notoriously complex, protracted, and bitterly fought"). Continuing this litigation against either party would entail a lengthy and expensive legal battle, which has already consumed almost six years. This case does not follow a Department of Justice investigation or any public indictment. Additionally, the Hillandale/Gettysburg Defendants have asserted various defenses, and a jury trial (assuming the case proceeded beyond pretrial motions) might well turn on questions of proof, making the outcome inherently uncertain for both parties. *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d at 639; *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 475-76 (S.D.N.Y. 1998) ("Antitrust litigation in general, and class action litigation in particular, is unpredictable. . . . [T]he history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal."). Moreover, even after trial is concluded, there could be one or more lengthy appeals. *In re Remeron End-Payor Antitrust Litig.*, No. Civ. 02-2007, 2005 WL 2230314, at *17 (D.N.J. Sept. 13, 2005). The degree of uncertainty supports preliminary approval of the proposed Settlement Agreement. *See In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995).

All of the relevant factors—the terms of the settlement itself, the nature of the negotiations, the degree of discovery at the time of settlement, the experience of Class Counsel, and the risks of proceedings against the Hillandale/Gettysburg Defendants—support the conclusion that the Settlement falls within the range of possible final approvals and is entitled to the presumption of fairness, permitting notice to issue to the Class.

## V.   PRELIMINARY CERTIFICATION OF THE PROPOSED SETTLEMENT CLASSES IS WARRANTED

It is well-established that a class may be certified for purposes of settlement.  *In re Pet Food Prods. Liability Litig.*, No. 07-2867, 2008 WL 4937632, at *3 (D.N.J. Nov. 18, 2008)

("Class actions certified for the purposes of settlement are well recognized under Rule 23."); *Ikon*, 194 F.R.D. at 188 (class certified for purposes of settlement of securities class action).  In the case of settlements, "tentative or temporary settlement classes are favored when there is little or no likelihood of abuse, and the settlement is fair and reasonable and under the scrutiny of the trial judge." *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 205 (S.D.N.Y. 1995) (internal quotation and citation omitted). The Settlement here is fair, reasonable, and non-abusive. Therefore the Settlement Class should be certified by the Court.

Rule 23 governs the issue of class certification for both litigation and settlement classes. A settlement class should be certified where the four requirements of Rule 23(a)—numerosity, commonality, typicality and adequacy—are satisfied, and when one of the three subsections of Rule 23(b) is also met. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 527-30.

### A.      This Case Satisfies The Prerequisites Of Rule 23(a).

Certification is appropriate under Rule 23(a) if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). The Court held that the same settlement class satisfies Rule 23(a)'s prerequisites in its October 10, 2014 Order granting final approval to the Cal-Maine settlement agreement:

> The Settlement Class is so numerous that joinder of all members is not practicable, there are questions of law and fact common to the Settlement Class, the claims of the Class Representatives are typical of the claims of the Settlement Class, and the Class Representatives will fairly and adequately protect the interests of the Settlement Class. For purposes of this settlement, questions of law and fact common to the members of the Settlement Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Order, October 10, 2014 (ECF No. 1082 at ¶ 4). The Court also found that Rule 23(a)'s

requirements were satisfied for purposes of preliminary approval of the Settlement Class set

forth in: (1) the NFC Settlement Agreement (ECF No. 1027 at ¶ 16), (2) the MPS Settlement

Agreement (*id.*), (3) the UEP/USEM Settlement Agreement (*id.* at ¶ 26), and (4) the NuCal

Settlement Agreement (ECF. No. 1073 at ¶ 9), all of which used the same Settlement Class

provided in this Settlement Agreement.

1.    <u>The Settlement Class is sufficiently numerous.</u>

Class certification under Rule 23(a)(1) is appropriate where a class contains so many

members that joinder of all would be "impracticable." *Robidoux v. Celani*, 987 F.2d 931, 935 (2d

Cir. 1993). There is no threshold number required to satisfy the numerosity requirement and the

most important factor is whether joinder of all the parties would be impracticable for any reason.

*Stewart v. Abraham*, 275 F.3d 220, 227-28 (3d Cir. 2001) (noting that there is no minimum

number to satisfy numerosity and observing that generally the requirement is met if the number

of plaintiffs exceeds 40). Moreover, numerosity is not determined solely by the size of the class

but also by the geographic location of class members. *Marsden v. Select Med. Corp.*, 246 F.R.D.

480, 484 (E.D. Pa. 2007).

Here, the proposed Settlement Class is comprised of direct purchasers of hundreds of

millions of cases of shell eggs and of direct purchasers of egg products. Third Consolidated

Amended Class Action Complaint ("3CAC"), ¶ 108 (ECF No. 779). In the Moark Settlement,

notice of the Settlement Agreement was sent to more than 13,000 potential class members, and

nearly 700 class members filed claims and received distributions from the Settlement Fund. *See*

Mem. in Supp. of DPP's Motion to Pay Costs of Settlement Administration (ECF No. 823-2) at

2, 6. In the Cal-Maine Settlement, notice of the Settlement Agreement was sent to 16,796

potential class members, and 470 class members submitted claim forms. *See* Supplemental

17

Affidavit of Jennifer M. Keogh Regarding Notice Dissemination and Claims Administration, ECF No. 1036-4 at ¶¶ 8, 15.

Moreover, Class Representatives are located in California, Illinois, Missouri, New York, North Carolina, Pennsylvania and Wisconsin. 3CAC, ¶¶ 32-38. Putative class members are also geographically dispersed. Thus, joinder of all class members would be impracticable and the Settlement Class is sufficiently numerous to satisfy Rule 23(a)(1). *Stewart*, 275 F.3d at 227-28 (observing that generally the requirement is met if the number of plaintiffs exceeds 40); *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 508-09 (S.D.N.Y. 1996) (holding that class members numbering a million made joinder impracticable); *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 278 (S.D.N.Y. 1999) (numerosity requirement met where potential class exceeded 20,000).

                2.       <u>There are common questions of law and fact.</u>

Antitrust cases like this one easily meet the commonality requirement of Rule 23(a)(2). *See In re K-Dur Antitrust Litig.*, No. 01-1652, 2008 WL 2699390, at *4 (D.N.J. Apr. 14, 2008) (holding that common issues predominate with respect to whether defendants violated antitrust law); *Weisfeld v. Sun Chem. Corp.*, 210 F.R.D 136, 141 (D.N.J. 2002) (holding that conspiracy to restrain trade subject to common proof); *In re OSB Antitrust Litig.*, 2007 WL 2253418, at *4 (E.D. Pa. Aug. 3, 2007); *In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D 180, 186-87 (D.N.J. 2003) (holding that common issues predominated on issue of alleged antitrust violation). Moreover, to satisfy commonality:

> The members need not have identical claims to have common legal or factual issues that satisfy commonality. Instead, all that is required is that the litigation involve some common questions and that plaintiffs allege harm under the same theory.

*In re Microcrystalline Cellulose Antitrust Litig.*, 218 F.R.D. 79, 83-84 (E.D. Pa. 2003) (internal citations omitted).

Whether Defendants entered into an illegal agreement to reduce production and fix the prices of eggs is a factual question common to all class members because this question is an essential element of proving an antitrust violation. Common legal questions include whether, if such an agreement was reached, Defendants violated antitrust laws. "Indeed, consideration of the conspiracy issue would, of necessity focus on Defendants' conduct, not the individual conduct of the putative class members." *In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 484 (W.D. Pa. 1999); *see also In re Warfarin*, 391 F.3d at 528 ("In other words, while liability depends on the conduct of DuPont, and whether it conducted a nationwide campaign of misrepresentation and deception, it does not depend on the conduct of individual class members."); *In re Catfish Antitrust Litig.*, 826 F. Supp. 1019, 1039 (N.D. Miss. 1993) ("Evidence of a national conspiracy . . . would revolve around what the defendants did, and said, if anything, in pursuit of a price fixing scheme."); *Transamerican Refining Corp. v. Dravo Corp.*, 130 F.R.D. 70, 75 (S.D. Tex. 1990) ("[T]he conspiracy issue … is susceptible of generalized proof since it deals primarily with what the Defendants themselves did and said."). Because there are several common legal and factual questions related to potential liability, the commonality requirement of Rule 23(a)(2) is met.

3.    The Representative Plaintiffs' claims are typical of those of the Settlement Class.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." As the Third Circuit described in *Baby Neal v. Casey*, 43 F.3d 48 (3d Cir. 1994):

> The typicality inquiry is intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align

> with those of absent class members so as to assure that the absentees' interests will be fairly represented.  The typicality criterion is intended to preclude certification of those cases where the legal theories of the named plaintiffs potentially conflict with those of the absentees by requiring that the common claims are comparably central to the claims of the named plaintiffs as to the claims of the absentees."
>
> Typicality entails an inquiry whether "the named plaintiff's individual circumstances are markedly different or . . . the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." Commentators have noted that cases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims.

*Id.* at 57-58 (internal citations omitted).

Moreover, "factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory."  *Hoxworth v. Blinder*, *Robinson & Co., Inc.*, 980 F.2d 912, 923 (3d Cir. 1992) (internal citations omitted). "Even if there are 'pronounced factual differences among the plaintiffs, typicality is satisfied as long as there is a strong similarity of legal theories and the named plaintiff does not have any unique circumstances.'" *Microcrystalline*, 218 F.R.D. at 84; *see also Mercedez-Benz*, 213 F.R.D at 185 ("[W]hile the Court must ensure that the interests of the plaintiffs are congruent, the Court will not reject the plaintiffs' claim of typicality on speculation regarding conflicts that may arise in the future.").

Here, typicality is satisfied because the claims of the Class Representatives and absent class members rely on the same legal theories and arise from the same alleged conspiracy and illegal agreement by Defendants, namely, Defendants' agreement to reduce production and artificially fix and/or inflate the prices of eggs. *See* 3CAC, ¶ 536. Moreover, Plaintiffs allege that all putative class members were direct purchasers of eggs and/or egg products and suffered injury as a result of Defendants' alleged anticompetitive conduct. The Class is also divided into

subclasses to address any differences between shell egg purchases and purchases of processed

egg products. Accordingly, the Rule 23(a)(3) typicality requirement is satisfied.

>4. The Representative Plaintiffs will fairly and adequately protect the interests of the Class.

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect

the interests of the class." Fed. R. Civ. P. 23(a)(4). As the Third Circuit explained in *Bogosian v.*

*Gulf Oil Corp.*, 561 F.2d 434 (3d Cir. 1977), the adequate representation requirement of

Rule 23(a)(4):

> [guarantees] that the representatives and their attorneys will competently,
> responsibly, and vigorously prosecute the suit and that the relationship of the
> representative parties' interest to those of the class are such that there is not likely
> to be divergence in viewpoint or goals in the conduct of the suit.

*Id.* at 449.

Here, Class Counsel have extensive experience and expertise in antitrust disputes,

complex litigation and class action proceedings throughout the United States. Class Counsel are

qualified and able to conduct this litigation, as this Court recognized when appointing them as

Interim Co-Lead Counsel. Class Counsel have vigorously represented Plaintiffs in the settlement

negotiations with the Hillandale/Gettysburg Defendants and have vigorously prosecuted this

action. Moreover, the named Class Representatives have adequately represented the absent Class

Members' interests, actively participating in discovery by responding to document production

requests and interrogatories, and have no conflicts with them. Adequate representation under

Rule 23(a)(4) is therefore satisfied.

**B. The Representative Plaintiffs' Claims Satisfy The Prerequisites Of Rule 23(b)(3).**

In addition to satisfying Rule 23(a), Plaintiffs must show that each putative class falls

under at least one of the three subsections of Rule 23(b). Here, the Settlement Class qualifies

under Rule 23(b)(3), which authorizes class certification if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."[5]  Fed. R. Civ. P. 23(b)(3).

The Court has already found that the same settlement class satisfies Rule 23(b)(3)'s prerequisites in its October 10, 2014 Order granting final approval of the Cal-Maine Settlement Agreement. Order, October 10, 2014 (ECF. No. 1082 at ¶ 4); *see also* Mem. in Supp. of Order (ECF No. 1081). The Court also found that Rule 23(b)(3)'s requirements were satisfied for purposes of preliminary approval of the Settlement Class set forth in: (1) the NFC Settlement Agreement (ECF No. 1027 at ¶ 16), (2) the MPS Settlement Agreement (*Id.*), (3) the UEP/USEM Settlement Agreement (*Id.* ¶ 26), and the NuCal Settlement Agreement (ECF No. 1073 at ¶ 9), all of which used the same Settlement Class provided in the Hillandale/Gettysburg Settlement Agreement.

Rule 23(b)(3) is "designed to secure judgments binding all class members, save those who affirmatively elect[] to be excluded," where a class action will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614-15 (1997). Certification of the proposed Settlement Class under Rule 23(b)(3) will serve these purposes.

---

[5] Since this is a settlement class, the Court need not examine the manageability of the class at trial. "[I]n a settlement-only class action . . . the court certifying the class need not examine issues of manageability. *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 306 (3d Cir. 2005) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)) (explaining that issues of individual liability and damages are even less likely to defeat predominance in settlement-only class actions).

1.      Common legal and factual questions predominate.

The Rule 23(b)(3) predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Sullivan v. DB Inv., Inc.*, 667 F.3d 273, 297 (3d Cir. 2011) (quoting *In re Ins. Broker. Antitrust Litig.*, 579 F.3d 241, 266 (3d Cir. 2009)); *In re Hydrogen Peroxide Antitrust Litig.,* 552 F.3d 305, 311 (3d Cir. 2008); *see also Mercedes-Benz*, 213 F.R.D. at 186 ("Predominance requires that common issues be both numerically and qualitatively substantial in relation to the issues peculiar to individual class members.").

A plaintiff seeking certification of an antitrust class action must show that common or class-wide proof will predominate with respect to: "(1) a violation of the antitrust laws… ,(2) individual injury resulting from that violation, and (3) measurable damages." *In re Hydrogen Peroxide*, 552 F.3d at 311; *Danny Kresky Enter. Corp. v. Magid*, 716 F.2d 206, 209-10 (3d Cir. 1983); *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 156 (3d Cir. 2002). The Rule 23(b)(3) test of predominance is "readily met" in antitrust cases. *Amchem Products*, 521 U.S. at 625.

The Third Circuit discussed the predominance inquiry in the specific context of Section 1 antitrust settlements in *In re Ins. Brokerage Antitrust Litigation*, 579 F.3d 241 (3d Cir. 2009) (applying *Hydrogen Peroxide* in a settlement context). That case involved allegations of bid rigging and steering among brokers and insurers in the property and casualty insurance industry. As here, plaintiffs brought class action claims arising under Section 1 of the Sherman Act. On review, the Third Circuit examined the propriety of the standards applied by the district court in certifying two settlement-only classes against individual defendants. The district court had granted certification to both classes.

In evaluating a challenge to the predominance of common issues for each settlement class, the Third Circuit first noted that "because the 'clear focus' of an antitrust class action is on

the allegedly deceptive conduct of defendant and not on the conduct of individual class members, common issues necessarily predominate." *Id.* at 267; *see also Sullivan*, 667 F.3d at 299 (finding that *Wal-Mart Stores Inv. v. Dukes*, 131 S. Ct. 2541 (2011), bolstered a finding that common issues predominated in an antitrust case where the answers to the questions of alleged anticompetitive conduct and the harm it caused are common as to all class members). The court then turned to the specific common issues identified by the district court with respect to the antitrust claims:

> (1) whether the … Defendants entered into a conspiracy to allocate the market for the sale of insurance; (2) whether the … Defendants' alleged conspiracy had the purpose and effect of unlawfully restraining competition in the insurance industry; [and] (3) whether the . . . Defendants' conduct violated Section 1 of the Sherman Act.

*In re Ins. Brokerage Antitrust Litig.*, 579 F.3d at 267.

Finding these issues satisfied predominance, the court "examine[d] [each of] the elements of plaintiffs' claim through the prism of Rule 23." *Id.* The court analyzed whether common questions of law or fact existed with respect to the four elements of a Sherman Act Section One conspiracy claim, which require a plaintiff to show:  "(1) concerted action by the defendants; (2) that produced anticompetitive effects within the relevant product and geographic markets; (3) that the concerted actions were illegal; and (4) that it was injured as a proximate result of the concerted action."  *Id.*

The court found that "[b]ecause the first and third elements of a Sherman Act violation focus on the conduct of the defendants . . . common questions abound with respect to whether the defendants engaged in illegal, concerted action"  and that "[t]he second element of a Sherman Act violation, which focuses on the effects of the defendants' challenged conduct, also involves common questions in the present case, including whether the . . . Defendants' actions reduced competition for insurance, whether the . . . Defendants' actions resulted in a consolidation of the

insurance industry, and whether the . . . Defendants' actions produced an increase in the cost of premiums for commercial insurance." *Id.* at 268.

As in this case, the issues common to the class in *Insurance Brokerage* concerned whether Defendants "engaged in illegal concerted action" and whether that action "reduced competition," and "produced an increase in the cost" of the commodity in the relevant market. *Id*. There, as here, it is clear that the same core set of operative facts and theory of liability apply to each class member. As discussed above, whether Defendants entered into an illegal agreement to reduce production and artificially fix, raise, maintain, and/or stabilize the prices of eggs is a factual question common to all class members. If Class Representatives and potential class members were to bring individual actions, they would each be required to prove the same wrongdoing by Defendants in order to establish liability. Therefore, common proof of the first three elements of Defendants' violation of antitrust law will predominate.

After examining the first three elements of the Sherman Act conspiracy claim, the court in *Insurance Brokerage* turned to the final element: injury or antitrust impact. The court found that "the task for plaintiffs is to demonstrate that the element of antitrust impact is capable of proof at trial through evidence that is common to the class rather than individual to its members." *Id.* The plaintiffs in that case argued antitrust injury was a common question because the overcharge attributable to the conspiracy was "built into every commercial premium for commercial insurance products, and the conspiratorial conduct of all Defendants reduced or eliminated competition for insurance products, thereby raising the insurance premiums paid by Plaintiffs and all members of the class." *Id.* The court agreed, finding that "whether the named plaintiffs and absent class members were proximately injured by the conduct of the . . . Defendants is a question that is capable of proof on a class-wide basis." *Id.* After a brief

25

discussion of the flow of injury through the insurance brokerage market, the court concluded that it was "satisfied that the element of antitrust injury—that is, the fact of damages—is susceptible to common proof, even if the amount of damage that each plaintiff suffered could not be established by common proof." *Id.*

The *Insurance Brokerage* decision, which expressly accounted for the Third Circuit's earlier ruling in *Hydrogen Peroxide*, also accords with earlier cases holding that the fact of antitrust injury is susceptible to common proof, even where individual damages may differ. *See e.g., K-Dur*, 2008 WL 2699390, at *20; *Flat Glass*, 191 F.R.D. at 486 ("[T]he proof plaintiffs must adduce to establish a conspiracy to fix prices, and that defendants' base price was higher than it would have been absent the conspiracy, would be common to all class members."); *In re Plywood Antitrust Litig.*, 76 F.R.D 570, 584 (E.D. La. 1976) ("[I]f the members of each of the classes prove they purchased softwood plywood during the relevant period and that defendants conspiratorially increased or stabilized plywood prices, then the trier of fact may conclude that the requisite fact of injury occurred."); *Hedges Enters., Inc. v. Cont'l Grp., Inc.*, 81 F.R.D. 461, 475 (E.D. Pa. 1979) (proof of a conspiracy to establish a "base" price would establish at least the fact of damage, even if the extent of the damages suffered by the plaintiffs would vary).

Moreover, *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013) poses no barrier to certification here. In that case, injury was premised on four theories of impact (each theory may have affected some but not all class members); although all but one theory was rejected by the court, the damages model did not isolate injury tied to the remaining theory and thus impact could not be proven class-wide. 133 S. Ct. at 1430, 1434-35. Here, Plaintiffs offer just one theory of liability—Defendants conspired to curtail supply and thus artificially inflated egg prices—

which will be capable of measurement on a class-wide basis since all class members purchased eggs or egg products.

Here, the alleged conspiracy is the overriding predominant question in this case. And, as alleged in the Complaint, the conspiracy permitted all Defendants to artificially maintain or inflate the price of eggs by eliminating the risk that customers would be able to avoid the non-competitive price, thus working an antitrust injury onto the entire class. *See* 3CAC, ¶¶ 496, 530-531. Accordingly, common or class-wide proof will also predominate with respect to the fact of injury or impact in this case.[6]

      2.      A class action is superior to other methods of adjudication.

"The superiority requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternate available methods of adjudication." *In re The Prudential Ins. Co. of Am. Sales Practices Litig. Agent Actions*, 148 F.3d 283, 316 (3d Cir. 1998). In evaluating the superiority of a class action, the Court should inquire as to the class members' interest in individually controlling the prosecution of separate actions, the extent and nature of any litigation concerning the controversy already commenced by members of the class, and the desirability or undesirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3).

---

[6] Regarding the amount of damages, "[a]ntitrust cases nearly always require some speculation as to what would have happened under competitive conditions, to estimate the damage done by restraints on trade or other collusion, but this is not fatal to class certification." *Microcrystalline*, 218 F.R.D. at 92 (*citing In re Fine Paper Antitrust Litig.*, 82 F.R.D 143, 151-52 (E.D. Pa. 1979)) (noting that diversity of product, marketing practices, and pricing have not been fatal to class certification in numerous cases where conspiracy is "the overriding predominant question"). Accordingly, the need to determine the amount of damage sustained by each plaintiff is an insufficient basis to decline class certification. *In re Cmty. Bank of N. Va.*, 418 F.3d at 305-306 ("Although the calculation of individual damages is necessarily an individual inquiry, the courts have consistently held that the necessity of this inquiry does not preclude class action treatment where class issues predominate."); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 242 (D. Del 2003) ("[T]he need for individual damages calculations does not defeat predominance and class certification.").

Here, a class action is superior to other available methods for the fair and efficient adjudication of class claims, "because litigating all of these claims in one action is far more desirable than numerous separate actions litigating the same issues." *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d at 259. Absent class action certification, the Court may be faced with dozens of individual lawsuits, all of which would arise out of the same set of operative facts. By proceeding as a class action, resolution of common issues alleged in one action will be a more efficient use of judicial resources and bring about a single outcome that is binding on all class members. Also, as in most antitrust lawsuits, potential plaintiffs are likely to be geographically dispersed, as are the Class Representatives. As such, the realistic alternative to a class action is many scattered lawsuits with possibly contradictory results for some plaintiffs and Defendants. These very issues led the Supreme Court to acknowledge that the unique qualities of antitrust litigation often mean that a class action is superior to individual lawsuits. *Amchem*, 521 U.S. at 617.

Finally, this is an appropriate forum to litigate the case because two of the Class Representatives are located in the district, many of the Defendants resided or transacted business in the district during the Class Period, and a substantial portion of the affected interstate trade and commerce was carried out in the district. 3CAC, ¶ 26. This is also the forum selected by the Judicial Panel on Multidistrict Litigation.

## VI.   PLAINTIFFS' MOTION FOR LEAVE TO FILE MOTION FOR ATTORNEYS' FEES AND EXPENSES

Plaintiffs respectfully seek leave to file a motion for an award of attorneys' fees and reimbursement of expenses from the Settlement Amount.[7] As specified in the Proposed Order

---

[7] *See* Order, July 18, 2012 (ECF No. 704) n.1 (directing Plaintiffs, pursuant to CMO No. 1, to seek leave of Court prior to filing a motion for fees and expenses).

filed herewith, Class Counsel's motion for attorneys' fees and for reimbursement of expenses shall be filed 45 days in advance of the Settlement objection and opt-out deadline. Plaintiffs have filed a proposed notice plan for this Settlement concurrent with this motion for preliminary approval. The proposed notice plan combines notice of the Hillandale/Gettysburg Settlement with notice of the NuCal settlement. The timing and form of the notice in Plaintiffs' proposed notice plan will provide potential class members with both sufficient notice of the motion for fees and expenses, and a reasonable opportunity to review it prior to determining whether to object to the motion or Agreement or to opt-out of the class.[8] Additionally, as set forth in the proposed Order, the Class Notice of the Settlement Agreement shall include the date on which the motion for fees and costs shall be filed, and inform the Class that the motion will be made available on the settlement website.

VII.   **CONCLUSION**

For the reasons set forth above, Plaintiffs request that the Court: (1) preliminarily approve the Settlement Agreement; (2) certify a class for purposes of the Settlement; and (3) grant Plaintiffs leave to file a motion for attorneys' fees and reimbursement of expenses.

---

[8] *See* Order, Aug. 15, 2013 (ECF No. 727) n.2 (concluding that the class must have sufficient notice of, and adequate opportunity to object to, a motion for fees and expenses prior to the objection deadline).

Dated:        November 21, 2014        Respectfully submitted,


                                       /s/        *Steven A. Asher*

                                       Steven A. Asher
                                       **WEINSTEIN KITCHENOFF & ASHER LLC**
                                       1845 Walnut Street, Suite 1100
                                       Philadelphia, PA 19103
                                       (215) 545-7200
                                       (215) 545-6536 (fax)
                                       asher@wka-law.com
                                       *Interim Co-Lead Counsel and Liaison Counsel for*
                                       *Direct Purchaser Plaintiffs*

                                       Michael D. Hausfeld
                                       **HAUSFELD LLP**
                                       1700 K Street NW
                                       Suite 650
                                       Washington, DC  20006
                                       (202) 540-7200
                                       (202) 540-7201 (fax)
                                       mhausfeld@hausfeldllp.com
                                       *Interim Co-Lead Counsel for Direct Purchaser*
                                       *Plaintiffs*

                                       Stanley D. Bernstein
                                       **BERNSTEIN LIEBHARD LLP**
                                       10 East 40th Street, 22nd Floor
                                       New York, New York 10016
                                       (212) 779-1414
                                       (212) 779-3218 (fax)
                                       bernstein@bernlieb.com
                                       *Interim Co-Lead Counsel for Direct Purchaser*
                                       *Plaintiffs*

                                       Stephen D. Susman
                                       **SUSMAN GODFREY LLP**
                                       654 Madison Avenue, 5th Floor
                                       New York, NY 10065-8404
                                       (212) 336-8330
                                       (212) 336-8340 (fax)
                                       ssusman@susmangodfrey.com
                                       *Interim Co-Lead Counsel for Direct Purchaser*
                                       *Plaintiffs*