IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE PROCESSED EGG PRODUCTS | § | MDL 2002 |
| ANTITRUST LITIGATION | § | 08-md-02002 |
| _____ | § | |
| | § | |
| THIS DOCUMENT APPLIES TO: | § | |
| | § | |
| *All Actions*. | § | |

**SUPPLEMENTAL REPLY MEMORANDUM IN SUPPORT OF MOTION
FOR LEAVE TO FILE SUPPLEMENT RELATING TO DAMAGES OF
PLAINTIFFS WINN-DIXIE STORES, INC., ROUNDY'S
SUPERMARKETS, INC., AND H.J. HEINZ COMPANY, L.P.**

In their March 6, 2015 opposition to the Winn-Dixie Plaintiffs' Motion for Leave, Defendants admit that the Supplement did not introduce any new methodology or damages theory, and did not alter any methodology or damages theory set forth in the January 22 Report.[1] In fact, the only prejudice that Defendants identify is that the Supplement contains the calculations, along with the required backup data, for the Winn-Dixie Plaintiffs that would have been included in the January 22 Report, and that their expert would be required to respond to those calculations (Defs. Sur-Reply Mem., pp. 4-6, and 14). However, this does not constitute prejudice because, if those calculations had been included in the January 22 Report, Defendants' expert would have had to respond to them by March 13 anyway. So, in a sense, Defendants' expert had less work to do for its March 13 report than if those calculations had been included in the January 22 Report.[2]

---

[1] Defendants' Sur-Reply Memorandum in Opposition to Winn-Dixie Plaintiffs' Motion for Leave to File Supplement, Dkt.#1138 ("Defs. Sur-Reply Mem."), p. 4 ("Defendants do not dispute that the underlying general methodology applied by Dr. Baye to each DAP is the same"), and p. 14 ("the general methodology may be the same in that Dr. Baye followed the same instruction manual for each plaintiff").

[2] In addition, as noted previously, Defendants' prejudice argument confirms the Winn-Dixie Plaintiffs' argument that the elimination of C&S from the calculations also lessened the amount of work to be done by Defendants' expert.

1

Indeed, assuming that, as it has indicated, this Court will give Defendants' additional time to respond to the Supplement, then the fact of the Supplement and that the calculations contained in it were not contained in the January 22 Report actually redounds to the benefit of Defendants and their expert, because they have less work to do in connection with the report due on March 13.

In addition, Defendants also do not refute that the data used by Dr. Baye to make the calculations contained in the Supplement had been produced in the case long ago. So, no new data was used to run the calculations. Defendants strain to make an argument that new data was used, but what they really mean and must admit is that new data was generated, in the form of the calculations themselves and the backup calculations and data. This is not new data being introduced into the case, according to the Third Circuit decisions.

While Defendants cite *ZF Meritor* in support of their argument that the Supplement actually involves new data, a close examination of that decision demonstrates little difference between the facts in that decision and those here. In that decision, the supplement was not merely correcting calculations in a prior report. The prior report had used certain data which was later found to be unreliable (the reference to the projections in the SBP – Strategic Business Plan); so, the Plaintiffs had to use different data to run the calculations, based on the same methodology in the prior report. 696 F.3d at 297 ("Plaintiffs sought … to modify the estimates to reflect reliance on *different data*")(emphasis added). The data used to run the new calculations had been disclosed in the prior report, but it had not been used in the prior report to run calculations. 696 F.3d at 296-298. Thus, in *ZF Meritor*, new calculations were made in the supplement based on data previously produced in the case and even identified in the prior report, but not used in any way to make calculations in the prior report. With this clarification, it is

clear that the present case involves a situation analogous to that in *ZF Meritor*, and that Defendants' argument that the Supplement here involves new data should be rejected.

Defendants also argue that they have suffered prejudice because of the time spent by their counsel and their expert opposing the Motion for Leave and evaluating the Supplement as against the January 22 Report. However, their expert spent 16 hours or 2 days. Based on this information from Defendants, then their expert's response to the Supplement should be due on March 17. More importantly, the time spent by Defendants' counsel and their expert could have been avoided if Defendants had agreed to the filing of the Supplement, as counsel for the Winn-Dixie Plaintiffs had sought prior to and at the time of filing this Motion.

Defendants also present a skewed and incomplete view of the Third Circuit law addressing an untimely expert report or supplement. First, they claim that there are only four *Pennypack* factors, instead of the five factors commonly discussed and applied in the Third Circuit. The factor that the Defendants omit is the most critical factor – the critical nature or importance of the evidence sought to be excluded – which overwhelmingly favors allowing the Supplement here, according to the Third Circuit in ZF Meritor. See Supplemental Memorandum in Support of Motion for Leave to File Supplement Relating to Damages of Plaintiffs Winn-Dixie Stores, Inc., Roundy's Supermarkets, Inc., and H.J. Heinz Company, L.P., Dkt.#1139 ("WDP Supp. Mem."), at pp. 15-16. That Defendants would think that they could get away with not including the most important factor in the *Pennypack* analysis reveals their desperation here.

In addition, in furtherance of their skewed view of the *Pennypack* analysis, Defendants misrepresent the holding in *ZF Meritor*. Specifically, Defendants claim that *ZF Meritor* did not involve a late report under Rule 26(a). Defs. Sur-Reply Mem., p. 11 ("To be clear, the case did not involve a late expert report or a violation of Rule 26(a), as is the case here.). This is flat

wrong.  First, the Third Circuit in *ZF Meritor* invoked Rule 26(a) in its analysis.  Second, and most importantly, the Third Circuit stated that Plaintiff sought to introduce its alternate damages estimates after the deadline set by the district court, which was why the district court excluded them (just as Defendants seek here).  Thus, the Third Circuit wrote:

> Under *Federal Rule of Civil Procedure 26(a)(2)*, a party is required to disclose an expert report containing "a *complete* statement of all opinions the witness will express and the basis and reasons for them." *Fed. R. Civ. P. 26(a)(2)(B)(i)* (emphasis added). Any additions or changes to the information in the expert report must be disclosed by the time the party's pretrial disclosures are due. *Fed. R. Civ. P. 26(e)(2)*. Here, Plaintiffs were required to make all mandatory disclosures six months before trial, including all damages calculations. The damages estimates in DeRamus's report were found to be unreliable, and Plaintiffs sought, **after the date by which discovery disclosures were due**, to modify the estimates to reflect reliance on different data. …

696 F.3d at 297 (emphasis added).  Thus, it is clear that *ZF Meritor* dealt exactly with an untimely supplement, and therefore, Defendants' skewed characterization of *ZF Meritor* fails.

Defendants also contend that *ZF Meritor* is not applicable because it "had nothing to do with a Rule 37(c)(1) sanction analysis." Defs. Sur-Reply Mem. at 12.  This argument is a smokescreen.  First, the Third Circuit in *ZF Meritor* applied the five *Pennypack* factors, stating: "**although** the District Court's decision was not a discovery sanction … we find the *Pennypack* factors instructive, and thus they will guide our analysis." *Id.* at 298 (emphasis added).  In other words, the Third Circuit applied the *Pennypack* factors notwithstanding the fact that the case did not involve a Rule 37(c)(1) sanction; so, the *Pennypack* factors apply to both Rule 37(c)(1) sanctions and non-Rule 37(c)(1) sanction circumstances.  Thus, Defendants' attempt to distinguish *ZF Meritor* on this basis is a smokescreen and should be rejected.  Therefore, it is clear that not only *ZF Meritor* applies to this case, but also the five *Pennypack* factors apply in full force.

Finally, Defendants' opposition is notably light in its discussion and analysis of the Third Circuit's decisions analyzing and applying the *Pennypack* factors.  Not only did Defendants omit the fifth factor of the *Pennypack* factors – the critical nature or importance of the evidence sought to be excluded – the most important factor, but also they fail to discuss at all, much less in any detail, much of the Third Circuit case law analyzing and applying the *Pennypack* factors – other than their failed attempt to distinguish *ZF Meritor*.  By contrast, in their Supplemental Memorandum, the Winn-Dixie Plaintiffs discuss and analyze numerous Third Circuit decisions applying the *Pennypack* factors, including the holdings in those decisions: (1) no prejudice where no new methodology or damages theory introduced, and based on data previously produced in the case, and also where a very short time – 15 days – between deadline and untimely report or supplement (WDP Supp. Mem., pp. 3-5), (2) an ability to cure the prejudice where supplement submitted prior to expert's deposition, several months prior to the close of expert discovery and where no trial date has been set, and/or court would or could give additional time to opposing party (WDP Supp. Mem, pp. 6-7), (3) no disruption of orderly and efficient trial of the case where no trial date set (WDP Supp. Mem., p. 8), (4) no exclusion even if fourth *Pennypack* factor weighs in favor of exclusion where all other factors weigh against exclusion, and no showing of bad faith here under Third Circuit decisions (WDP Supp. Mem., pp. 8-15), (5) the damages calculation contained in the Supplement is critical evidence, which favors allowing the Supplement (WDP Supp. Mem., pp. 15-16), and (6) a court must look at the totality of the analysis of the *Pennypack* factors, which overwhelmingly favor allowing the Supplement (WDP Supp. Mem., pp. 9 and 16).

In stark contrast to the Winn-Dixie Plaintiffs' detailed discussion of Third Circuit decisions analyzing and applying the *Pennypack* factors, Defendants rely on three clearly

inapposite decisions. For example, Defendants cite two Third Circuit decisions in support of their argument that "WDPs have acted in bad faith and willfully violated the court-ordered deadline, and thus the fourth Pennypack factor weighs in favor of exclusion *more than any other*" (Defs. Sur-Reply Mem., p. 16 and n.9)(emphasis added), and citing *Konstantopolous v. Westvaco Corp.*, 112 F.3d 710, 719 (3d. Cir. 1997), and *Allen v. Parkland School Dist.*, 230 Fed. Appx., 189, 194 (3d. Cir. 2007). However, those two decisions are clearly distinguishable because they involved clear cases of uncurable prejudice and findings that the evidence was not critical. For example, in *Konstantopolous*, the report or supplement was submitted 1 ½ years after the discovery cut-off and three (3) weeks before the trial date. Thus, the court held that there was clear prejudice and it could not be cured. 112 F.3d at 719. (Even with all of that, the court did not make a finding of bad faith.) Moreover, the court also held that the evidence to be excluded was not critical. *Id.* at 720 ("With respect to the importance of Dr. Jemail's expected testimony, it appears that some, but not all, of her testimony was covered by the testimony of another plaintiffs' witness …. We do not regard this factor as particularly favorable to either side …."). Similarly, in *Allen*, the expert report was submitted 15 months after the deadline. 230 Fed. Appx. at 191 and 194-95. In addition, the court noted that the plaintiffs repeatedly attempted to submit the expert report in violation of an existing court order limiting the witness' testimony to that of a treating physician, and not an expert. *Id.* Finally, the court noted that the evidence was not critical. *Id.* at 194 ("While Allen characterizes Dr. Jones' testimony as essential to his case, it should be noted that the District Court did not exclude all of Dr. Jones' testimony."). As a final matter, neither decision held that, contrary to many Third Circuit decisions, the fourth *Pennypack* factor – bad faith – could outweigh the other four *Pennypack* factors. See WDP Supp. Mem., pp. 8-9 and 16. Thus, contrary to supporting Defendants' argument for exclusion, the decisions they

y

rely on confirm what is needed for exclusion, which is absent here, and support allowing the Supplement.

For their third decision, Defendants cite with much fanfare a Third Circuit decision decided on February 25, 2015 – *DCK TTEC, LLC v. Postel Indus., Inc.*, 2015 U.S. App. LEXIS 2775 (3d Cir. Feb 25, 2015) -- in support of their argument that the Winn-Dixie Plaintiffs acted in bad faith and that exclusion was warranted on that basis. Defs. Sur-Reply Mem., p. 8 ("`[where] the District Court's conclusion that [the party] did so in bad faith .. was supported by the record'"). While it is true that the Third Circuit in *DCK* used the words – 'the record" – that is about all that is true in Defendants' highly misleading citation to and reliance on this decision.  Specifically, Defendants stop short of telling this Court what "the record" was, even though the Third Circuit took pains to set it forth in detail.  That record demonstrated that the party proposing the fact witness (not an expert witness or report) engaged in conduct designed to unfairly surprise and, thus, prejudice the opposing party.  Thus, the Third Circuit held:

> Further, Postel does not contest the uncontroverted fact that it failed to follow *FRCP Rule 26*'s disclosure requirements, and the District Court's conclusion that Postel did so in bad faith to surprise DCK is supported by the record. At trial, DCK indicated that it had requested Prado's contact information during discovery, following up several times via phone, mail, and email. Postel concedes that DCK did not receive this information during discovery, and DCK did not have the opportunity to depose Prado. Indeed, Postel's attorneys stated that they were in contact with Prado the weekend before trial, but Postel did not provide DCK with Prado's contact information until after the trial started. Thus, the record clearly reflects that the District Court acted within its discretion to disallow Prado's testimony.

Id. at *5-6.  Therefore, the above decision is inapposite here.  In that decision, there was no supplementation disclosing the witness and Postel had actually failed to disclose the witness' contact information to DCK when it asked for it in discovery several times, and also acted in a way to avoid DCK being able to depose the witness prior to trial.  By contrast, in this case, there is clearly no conduct rising to the level of unfair surprise as there was in the *DCK* decision.

Defendants have also abandoned their argument based on the alleged pattern of the Winn-Dixie Plaintiffs' conduct regarding deadlines and case management orders. As shown in the Winn-Dixie Plaintiffs' Supplemental Memorandum, this argument failed on multiple levels because (1) even if it constituted bad faith, it did not outweigh the other four *Pennypack* factors, which weigh heavily in favor of allowing the Supplement (WDP Supp. Mem., pp. 9 and 16), and (2) Defendants' alleged conduct was based on, at best, one violation of a court order (WDP Supp. Mem., at 13-15).[3]

Finally, no doubt realizing the weak nature of their argument for exclusion of the Supplement (and possibly betraying the real reason for their opposition to the Supplement), Defendants alternatively suggest a two week extension of the March 13 deadline for their expert report. Whether or not they are entitled to more time to respond to the Supplement, Defendants are not entitled to an award of attorneys' fees and costs, or reimbursement for their expert's time. The cases cited by Defendants are all inapposite. First, the decision in *Community Assn. of Underwriters of America, Inc., v. Queensboro Flooring Co.*, 2014 U.S. Dist. LEXIS 90939 (M.D.Pa. 2014), does not involve an untimely expert report. More importantly, the sanction was based on a delay of 11 months by Defendants in producing specific documents. Similarly, in *Tarlton v. Cumberland County Correctional Facility*, 192 F.R.D. 165, 170 (D.N.J. 2000), the sanction was based on a failure to identify documents more than one year after the deadline for doing so. Finally, in *Fitz, Inc. v. Ralph Wilson Plastics Co.*, 174 F.R.D. 587 (D.N.J. 1997), the sanction was based on nine declarations attached plaintiffs' memorandum of law in support of class certification, and where those witnesses should have been disclosed pursuant to Rule 26(a) and Rule 26(e). It is not stated in the decision when the Rule 26(a) disclosures were due, but,

---

[3] Defendants also failed to file any submission with the Court by March 11, 2015, which the Court invited them to do if they had an issue with the submission of the Winn-Dixie Plaintiffs filed on March 6, 2015.

8

given that the witnesses were first disclosed in their declarations, which were attached to a second motion for class certification, it is reasonable to assume that the Rule 26(a) deadline was many months, if not possibly more than a year, prior to the declarations. Based on all of the above, it is clear that the decisions relied on by Defendants are not applicable to this case – in which the delay is 15 days. In addition, none of the decisions cited in the Winn-Dixie Plaintiffs' Supplemental Memorandum, all of which dealt with an untimely expert report or supplement, did not impose monetary sanctions.

## CONCLUSION

For the reasons stated above, and in their prior submissions, the Winn-Dixie Plaintiffs respectfully request that this Court grant their Motion for Leave to File Supplement Relating to Damages for Plaintiffs Winn-Dixie Stores, Inc., Roundy's Supermarkets, Inc., and H.J. Heinz Company, L.P.

Dated: March 12, 2015

Respectfully submitted,

By: */s/ Patrick J. Ahern*
_____

Patrick J. Ahern
Ahern and Associates, P.C.
Three First National Plaza
70 West Madison Street, Suite 1400
Chicago, Illinois 60606
Tel: (312) 214-3784
Fax: (312) 214-3110

*Counsel for Plaintiffs Winn-Dixie Stores, Inc.,*
*Roundy's Supermarkets, Inc.,*
*and H.J. Heinz Company, L.P.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of March, 2015, a true and correct copy of the foregoing was filed using the CM/ECF system. In addition, (1) the filing is available for viewing and downloading via the CM/ECF system, and (2) the CM/ECF system will send notification of this filing to all attorneys of record who have registered for CM/ECF updates.

*/s/ Patrick J. Ahern*