IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: PROCESSED EGG PRODUCTS ANTITRUST LITIGATION | : : : : : | MULTIDISTRICT LITIGATION |
| *THIS DOCUMENT APPLIES TO:* ALL DIRECT ACTION PLAINTIFF CASES ALL INDIRECT PURCHASER CASES | : : : | No. 08-md-2002 |

**M E M O R A N D U M**

PRATTER, J.                                                                                       JULY 18, 2016

The nation's major egg producers are accused by those who purchase eggs, directly and indirectly, of conspiring to control and limit the supply of eggs and thereby increase egg prices. The plaintiffs who bring this pending motion are the Direct Action Plaintiffs ("DAPs"), as well as the Indirect Purchaser Plaintiffs ("IPPs"). They hope to persuade the Court to exclude certain portions of the testimony of Dr. Jesse David, an economist retained by defendant Rose Acre Farms, Inc.. Plaintiffs invoke *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993), and Fed. R. Evid. 702 and 403 in their efforts.

Dr. David proposes to testify that during the alleged conspiracy period, Rose Acre's flock size increased, thereby challenging the inference that Rose Acre participated in the alleged limit-the-flock conspiracy. The plaintiffs first argue that Dr. David's opinions regarding Rose Acre's unilateral increase in its flock size are irrelevant to establishing liability for Rose Acre's participation in an antitrust conspiracy, and should therefore be excluded. Second, the plaintiffs argue that Dr. David's report is inadmissible because it fails to respond to the plaintiffs' expert reports, as required by the Court's Case Management Order No 22. *See* Doc. No. 1111. Third, the plaintiffs argue that Dr. David's opinions are inadmissible because they lack adequate

1

foundation. Finally, the plaintiffs argue that, even if otherwise relevant, Dr. David's report should be excluded under Rule 403.

Rose Acre Farms has filed a brief in opposition, and the plaintiffs filed a further reply brief. The Court conducted a hearing, during which Dr. Davis appeared and offered live testimony. Having considered Dr. David's testimony and all the briefing, the Court denies the plaintiffs' motions for the reasons discussed in this Memorandum.

## I.   STANDARD OF REVIEW

The trial judge has a special obligation under Federal Rule of Evidence 702 to ensure that any and all expert testimony is not only relevant, but reliable. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)). Rule 702 governs the admissibility of expert testimony and provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The purpose of the inquiry is to ensure that the expert, whether basing his testimony on professional studies or personal experience, is employing the same level of intellectual rigor that characterizes the practice of an expert in the relevant field. *Kumho Tire,* 526 U.S. at 152. The Third Circuit Court of Appeals has characterized Rule 702 as embodying "a trilogy of restrictions on expert testimony: qualification, reliability and fit." *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003) (citations omitted). While specialized knowledge is a requirement, the basis of such knowledge can be "practical experience as well as academic training and credentials." *Betterbox Commc'ns Ltd. v. BB Techs., Inc.*, 300 F.3d 325, 328 (3d Cir. 2002) (Alito, J.) (noting that the specialized knowledge

requirement has been construed "liberally") (citing *Waldorf v. Shuta*, 142 F.3d 601, 625 (3d Cir. 1998)). There is no prohibition against an expert relying upon the work of another expert so long as the expert is otherwise qualified. *See In re Zoloft (Sertraline Hydrocloride) Products Liab. Litig.*, 26 F. Supp. 3d 466, 470 (E.D. Pa. 2014) ("It is acceptable to rely on the hypothesis testing of others, so long as one addresses both supportive and contrary evidence in reaching one's opinion."); *Leese v. Lockheed Martin Corp.*, 6 F. Supp. 3d 546, 553 (D.N.J. 2014) (citing *I.B.E.W. Local Union 380 Pension Fund v. Buck Consultants*, No. 03–4932, 2008 WL 2265269, at *3 (E.D. Pa. June 3, 2008)).

## II. ANALYSIS

The plaintiffs seek to exclude Dr. David's expert report in its entirety. As a preliminary matter, the Court notes that the plaintiffs do not challenge Dr. David's credentials or expertise in the field of quantitative statistical and economic analysis. Nevertheless, the Court will briefly address the sufficiency of his experience and education for purposes of the opinions he proposes to offer.

As per his report, Dr. David is an economist and partner at Edgeworth Economics, L.L.C., a consulting firm that provides economics and financial analysis for complex litigation and public policy matters. He has previously worked as a senior vice president at Criterion Economics and vice president at National Economics Research Associates, where he performed economic analyses for litigation, strategy and policy matters. He holds a bachelor's degree in physics and economics from Brandeis University and a Ph.D. in economics from Stanford University. His economic speciality is environmental and public finance issues, but he has also studied industrial organization and econometrics. He has previously served as an economic expert in the context of numerous other federal and state cases, as well as arbitrations, including

cases dealing with agricultural antirust claims.  Based upon the averments in his report, the Court finds that Dr. David is qualified to offer the opinions contained in his report.

### *a. Relevance of Direct Evidence of a Conspiracy*

The plaintiffs' first argument is that Dr. David's opinion is inadmissible because its subject matter is unhelpful and irrelevant to the jury's ultimate analysis.  In his report, Dr. David reaches the following conclusions, which the plaintiffs challenge: "Rose Acre pursued a business strategy consistent with its unilateral self-interest . . ." and Rose Acre's conduct was ". . . inconsistent with allegations by Plaintiffs and their experts that Rose Acre acted contrary to its unilateral self-interest and participated in a conspiracy to restrict supply."  David Report at ¶ 64. The plaintiffs contend that, because they intend to prove a Sherman Act violation by direct evidence of the defendants' agreement to engage in a *per se* unlawful conspiracy, any evidence that Rose Acre acted in its self-interest during the conspiracy period by expanding production, i.e., increasing the size of its egg-laying flock, is legally irrelevant to assigning Rose Acre liability or damages for participation in the conspiracy.

There are several problems with plaintiffs' argument.  The first is a general problem of timing.  The plaintiffs seek to exclude evidence based upon what they assert the record at trial will look like.  To accept the plaintiffs' position, it seems that the Court would have speculate as to the eventual outcome of the trial, or at least the final contours of the evidence.  Whether such speculation at this point is proper is not entirely clear. While certainly not dispositive in any respect, it is telling that despite the plaintiffs' assertions that the existence of an agreement that violates the Sherman Act is an "undisputed" and "undisputable fact" in this case, the plaintiffs have not moved for summary judgment on this issue.  Ultimately, it appears that excluding the

evidence in question is, at this point, premature, particularly given that the Court can revisit the issue on a motion at trial after the plaintiffs have presented their case in chief.

Substantively, the authority relied upon by the plaintiffs does not dictate that the challenged evidence should be excluded. The plaintiffs' argument relies upon a distinction between direct and circumstantial evidence. As a preliminary matter, either category of evidence may be used to satisfy the element of concerted action necessary to make out a Section 1 claim. *See Rossi v. Standard Roofing, Inc.*, 156 F.3d 452, 465 (3d Cir. 1998). "Direct evidence" of an illegal agreement is "evidence that is explicit and requires no inferences to establish the proposition or conclusion being asserted," and that does not require the trier of fact to "make inferences to establish facts." *In re Baby Food Antitrust Litigation*, 166 F.3d 112, 118 (3d Cir. 1999).

> While direct evidence, the proverbial 'smoking-gun,' is generally the most compelling means by which a plaintiff can make out his or her claim, it is also frequently difficult for antitrust plaintiffs to come by. Thus, plaintiffs have been permitted to rely solely on circumstantial evidence (and the reasonable inferences that may be drawn therefrom) to prove a conspiracy.

*Toledo Mack Sales & Serv., Inc. v. Mack Trucks, Inc.*, 530 F.3d 204, 219 (3d Cir. 2008) (citing *Rossi*, 156 F.3d at 465). The Supreme Court has limited the manner of inferences which may be drawn from circumstantial evidence, but has also held that such limits do not apply to a plaintiffs' direct evidence of unlawful agreement. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 596 (1986).

While plaintiffs' counsel expressed skepticism at oral argument that anyone would be surprised the plaintiffs intended to prove their case through direct evidence of an agreement, defense counsel emphatically denied that they concede the existence of an agreement. Moreover, the precise scope of the direct evidence to which the plaintiffs refer, at this point at

5

least, appears to be somewhat of a moving target. In the briefing, the plaintiffs imply that evidence of Rose Acre's involvement in the UEP and USEM programs alone is the evidence of the alleged agreement. *See* Pl. Br. at 8 (Doc. No. 1193). Counsel for the DAPs, however, have previously taken the position that agreeing to participate in the certification program alone did not constitute a *per se* violation of the Sherman Act but rather that the conspiracy in question involved an agreement to engage in an entire constellation of anti-competitive activities that collectively had the effect of reducing egg supply and increasing egg prices. *See* Def. Post Hearing Br. at 3 (citing Hr'g Tr. 35, May 12, 2014). If the act of signing onto the UEP and USEM programs does not constitute the *per se* violation, this inextricably leads one to ask the question: what direct evidence of agreement do the plaintiffs point to? And based upon what has been articulated in this briefing, the Court is not able to put its metaphorical finger on exactly what direct evidence of an agreement the plaintiffs are relying on.

Second, the authority relied upon by the plaintiffs does not appear to stand for the premise that plaintiffs' pretrial characterization of their case as one relying on direct rather than circumstantial evidence forecloses the defendants from offering circumstantial evidence which tends to show that defendants (or any given one of them) did not agree to the alleged conspiracy.

The plaintiffs' position relies principally on two cases. First, the plaintiffs cite *United States v. General Motors Corp.*, 384 U.S 127, 142 (1966). The analysis in this case, however, is distinguishable from the present case – notably, while the existence of an agreement is a hotly contested matter here, the analysis performed by the Supreme Court in *General Motors* was based upon the trial court's findings of fact establishing the existence of the unlawful agreement. The Court was not analyzing an evidentiary issue. Indeed in *General Motors*, members of an association of Los Angeles Chevrolet dealers, faced with price competition from other licensed

dealers working with discount auto dealerships to sell discounted new Chevrolets, entered into an agreement with GM to force licensed dealerships to stop doing business with the discounters. *General Motors,* 384 U.S. at 131-36.  The district court, in its findings of fact, held that no "agreement" among the defendants had been proven and that, rather, the defendants had acted in their own self-interest in order to protect the terms of the franchise arrangement set out in the dealer's license agreement with GM.  *Id.* at 141-42.  The Supreme Court reversed, holding that the trial court failed to apply the correct legal standard for a Section 1 Sherman Act violation.  *Id.* at 141.  The Court determined that the trial court's findings of fact clearly established the existence of an agreement between the defendants.  The Court described the record in the case thusly:

> Neither individual dealers nor the associations acted independently or separately. The dealers collaborated, through the associations and otherwise, among themselves and with General Motors, both to enlist the aid of General Motors and to enforce dealers' promises to forsake the discounters. The associations explicitly entered into a joint venture to assist General Motors in policing the dealers' promises, and their joint proffer of aid was accepted and utilized by General Motors.

*Id.* at 143.

In light of the fact that the existence of an agreement between the parties had been established, the Court explained that:

> [i]t is of no consequence, for purposes of determining whether there has been a combination or conspiracy under § 1 of the Sherman Act, that each party acted in its own lawful interest.  Nor is it of consequence for this purpose whether [the challenged conduct was] economically desirable [to one of the conspirators].

*Id.* at 142.  This holding, however, does not preclude the possibility that a defendant may rely upon circumstantial evidence of its own self-interest or actions taken inconsistent with the scope of the alleged conspiracy as a means to argue that it never engaged in an agreement in the first place.  If circumstantial evidence is available to one litigant, in the context of a case with the

7

issues such as these, there is no justification for rejecting the symmetry of permitting the other side use of circumstantial evidence as well.

The Third Circuit Court of Appeals decision in *Toledo Mack Sales & Serv. v. Mack Trucks, Inc.,* 530 F.3d 204 (3d Cir. 2008), reinforces the fact that *General Motors* does not stand as a limit on the admissibility of evidence.  In *Toledo Mack Sales,* the Third Circuit Court of Appeals reversed the lower court's entry of judgment as a matter of law in favor of a Sherman Act defendant.  As in *General Motors,* this holding was following trial, and made with the benefit of an established record. Briefly, the facts of the case are as follows. A licensed Mack Truck dealer in Toledo brought a Section 1 claim against Mack Trucks, Inc., alleging a vertical conspiracy between this franchisor and certain franchisee-dealers, as well as a horizontal non-compete conspiracy among the dealers themselves.  The Court of Appeals held that the plaintiff had presented direct evidence of the existence of both a horizontal and vertical agreement among the defendants, and that this evidence was sufficient for the jury to conclude that an agreement existed, which violated the Act.  *Toledo Mack Sales,* 530 F.3d at 220.

Again, the procedural posture of this case renders it distinguishable from the situation here.  The Court of Appeals found that direct evidence of the conspiracy was in the record and this foreclosed the need to evaluate the inferences one could draw from circumstantial evidence. *Id.* at 219-20 (distinguishing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 594 (1986)).  The court nevertheless explained that direct evidence of an agreement is often difficult to come by, and that in its absence, the fact finder must draw inferences from circumstantial evidence. "[I]n evaluating whether a genuine issue for trial exists, the antitrust defendants' economic motive is highly relevant. If the defendants had no rational economic motive to conspire, and if their conduct is consistent with other, equally plausible explanations,

8

the conduct does not give rise to an inference of conspiracy." *Toledo Mack Sales*, 530 F.3d at 219 (quoting *Matsushita*, 475 U.S. at 596).

The plaintiffs also argue, both in the briefing and at oral argument, that *United States of America v. Apple, Inc.,* No. 12-2826 (S.D.N.Y. May 23, 2013), is particularly apt. While there was no published opinion, the plaintiffs have attached the minute entry and oral argument transcript to their briefing. The plaintiffs in that case raised similar arguments to those forwarded by the plaintiffs here, namely that "when an accused conspirator is in a vertical relationship with its co-conspirators, the vertical player's independent economic self-interest carries no weight because the allegation of conspiracy is not based on that player's parallel conduct." Hr. Tr. at 33-34. The court explained that the evidentiary determination was being made prior to trial, and that the ultimate relevance determination of the challenged evidence would be made in light of the direct or circumstantial evidence offered by the plaintiffs at trial.

> If the plaintiffs succeed in providing that Apple reached an agreement with the publishers to act together to raise eBook prices and took steps to further that scheme, then the fact that that scheme and those steps were in Apple's own independent economic interest is no defense. On the other hand, if the circumstantial evidence that Apple intentionally entered into a price-fixing conspiracy is ambiguous, all evidence, including the extent to which an action would have been in its economic interest absent a conspiracy, should be considered.

*United States v. Apple, Inc.*, Hr. Tr. at 34. The court's holding did not rest on the distinction drawn between direct and circumstantial evidence but rather on the conclusion that much of the challenged expert's opinion failed to meet the strictures for Rule 702 because it merely consisted of argument more suitable for counsel's summation. The district court's unreported analysis, however, is fully consistent with the holding here.

In addition to arguing that Dr. David's opinion regarding Rose Acre's economic self-interest are irrelevant in light of direct evidence of a conspiracy, the plaintiffs also contend that

9

Dr. David's testimony regarding Rose Acre's flock expansion is irrelevant for the same reason. The logic (or perhaps illogic) of this argument is analogous to what was discussed above, and relies largely upon the assumption that the plaintiffs will be able to prove the existence of an unlawful conspiracy in which Rose Acre agreed to participate. The plaintiffs contend that evidence showing that Rose Acre did not participate in all aspects of the agreement does not foreclose its liability. But again, the plaintiffs ignore the fact that they have not yet proven the existence of a conspiracy or Rose Acre's participation in it. Evidence of Rose Acre's flock expansion would be circumstantial evidence that no such agreement existed. Because the plaintiffs' argument essentially assumes the ultimate issue in this case, ruling in their favor now on the evidentiary issue would be premature.

In sum, the Court finds the argument and authority presented by the plaintiffs are not compelling. At this point, there appears no reason to exclude the testimony of Dr. Davis based upon the plaintiffs' alleged direct evidence.

### b. *Necessity of Expert Testimony*

The plaintiffs' next argument is that Dr. David's opinion testimony deals with subject matter for which expert testimony is not required. The plaintiff contends that "the number of birds an egg company owns as well [sic] its general business philosophy are straightforward topics that are easy to comprehend and well within the common knowledge of the average juror." Pl. Br. at 11.

Having reviewed Dr. David's report, the Court concludes that the topics covered, and the analysis provided, exceeds the common knowledge of the average juror. The plaintiffs' characterization of Dr. David's report as "uncomplicated" is not compelling under the circumstances. In his report, Dr. David has compiled data from seventeen Rose Acre farms over

fifteen years and extrapolated the increase in total inventory over the period of time. He used this data to draw comparisons between U.S. hen layer data and the regression models proposed by the plaintiffs' experts. He concludes that Rose Acre's flock grew faster than the national average and faster than the plaintiffs' expert predictions. The Court finds that the data and opinions in Dr. David's report draws upon the type of "scientific, technical or other specialized knowledge that will assist the tier of fact to understand the evidence or determine a fact at issue," which Rule 702 contemplates. In light of the analysis in Section II.a, *supra*, the Court finds that his analysis can be helpful to the jury. Therefore, the Court will deny the motion as to this argument.

### c. Responsiveness to Plaintiffs' Experts

The plaintiffs' next argument is that Dr. David's report should be excluded on the basis that it fails to respond to the plaintiffs' experts' report. In essence, the plaintiffs ask the Court to characterize Dr. David as a rebuttal expert. The plaintiffs assert that the defendants agreed to limit their experts to a rebuttal role and that as rebuttal witness Dr. Davis was constrained to responding to the opinions of plaintiffs' witnesses. They contend that this understanding is expressed in the Court's Case Management Order No. 22. Consequently, plaintiffs seek to strike Dr. David's testimony because it exceeds the scope of matters covered by their experts and is therefore "non-responsive".

The plaintiffs' interpretation of the scope of the Court's Order is not appropriate. Rather than set out the substantive boundaries for the defendants' expert, the Order simply provides dates upon which the defense experts should file merits reports. The fact that the Court did not, in a scheduling order, attempt to classify all defense experts as rebuttal expert witnesses is emphasized by the fact that, immediately following the excerpt cited by the plaintiffs in their

11

motion, the Court *expressly set a separate date* for the plaintiffs to file rebuttal expert reports. There is simply no support for the plaintiffs' position that Dr. David must be characterized as a rebuttal expert. Therefore, the Court need not engage with the authority cited by the plaintiffs regarding the scope for rebuttal expert reports.

The plaintiffs also argue that, to the extent Dr. David's report is responsive to the plaintiffs' experts, it should nevertheless be omitted. The plaintiffs assert that Dr. David's critique of the regression analyses in Dr. Rausser's report is inadmissible because it simply presents a general criticism and does not attempt to identify any specific factors which were wrongfully omitted. The plaintiffs rely principally to *Bazemore v. Friday,* 478 U.S. 385 (1986), to argue that an expert challenging another expert's regression must identify the omitted factors which would have made a substantial different in the analysis. The Court in *Bazemore*, however, actually held that failure to provide such missing factors render the challenged experts' opinion less probative, not inadmissible:

> The Court of Appeals erred in stating that petitioners' regression analyses were 'unacceptable as evidence of discrimination,' because they did not include 'all measurable variables thought to have an effect on salary level.' The court's view of the evidentiary value of the regression analyses was plainly incorrect. While the omission of variables from a regression analysis may render the analysis less probative than it otherwise might be, it can hardly be said, absent some other infirmity, that an analysis which accounts for the major factors 'must be considered unacceptable as evidence of discrimination.' Normally, failure to include variables will affect the analysis' probativeness, *not its admissibility*

*Bazemore*, 478 U.S. at 400 (citations omitted) (emphasis added).

In sum, to the extent that Dr. David's report raises issues which do not challenge the findings of Dr. Rausser, the plaintiffs are fully capable of highlighting this for the jury and arguing in summation the reasons why they find Dr. David's opinions unpersuasive. At this point, however, the plaintiffs' argument does not justify exclusion of this expert.

### d. *Rule 403*

The plaintiffs' final argument can be addressed briefly. The plaintiffs argue that, even if relevant, the contents of Dr. David's report should be excluded under Federal Rule of Evidence 403. A challenge to expert testimony based on Rule 403 must indicate the specific aspect of the methodology used that renders the opinion evidence especially prejudicial, confusing, or overwhelming. *Surace v. Caterpillar, Inc.*, No. 94-1422, 1995 WL 303895, at *7 (E.D. Pa. May 16, 1995), *aff'd in part*, 111 F.3d 1039 (3d Cir. 1997) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 746 (3d Cir. 1994)). Aside from generally characterizing Dr. David's opinion as "legally irrelevant" and "prejudicial", the plaintiffs' briefing fails to provide any specific reasoning why such prejudice would substantially outweigh the probative value of his testimony. The Court already has noted that Dr. David's report provides circumstantial evidence of Rose Acre's non-participation in the alleged conspiracy and responds to the arguments raised by the plaintiffs' experts. The Court need not measure the specific probative value of this evidence, aside from finding that this value is not substantially outweighed by the unspecified prejudicial effect noted in the plaintiffs' briefing. Consequently, the Court will deny the motion on this ground as well.

## III. CONCLUSION

For the reasons discussed above, the Court will deny the plaintiffs' motion to exclude the testimony of Dr. Jesse David. An appropriate Order follows.

BY THE COURT:

_s/Gene E.K. Pratter____
GENE E.K. PRATTER
United States District Judge