IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: PROCESSED EGG PRODUCTS ANTITRUST LITIGATION | : MULTIDISTRICT : LITIGATION : : : |
| *THIS DOCUMENT APPLIES TO:* ALL ACTIONS | : No. 08-md-2002 : |

MEMORANDUM

PRATTER, J.                                                                                         AUGUST 11, 2016

The nation's major egg producers are accused by those who purchase eggs, both directly and indirectly, of conspiring to control and limit the supply of eggs and thereby increase egg prices. The Direct Action Plaintiffs ("DAPs") and the Indirect Purchaser Plaintiffs ("IPPs") have jointly moved to exclude the testimony and opinions of Dr. Michelle Burtis, a proposed economics expert retained by defendant Michael Foods, Inc. The Direct Purchaser Plaintiffs ("DPPs") subsequently joined in that motion as to Section III.D., which addresses Dr. Burtis's opinion regarding the existence of a unitary egg industry. Michael Foods responded in opposition to this motion. The DAPs and IPPs then filed a rely memo in further support of their motion, which was subsequently joined by the DPPs as to Sections III.A and III.B.

Generally, Dr. Burtis proposes to testify that, based upon the unique character of Michael Foods's products, the company is not motivated by the same price and supply considerations which may motivate other defendants that are not engaged in the production of high value egg products. She explains that: "Michael Foods' business strategy is a strategy directed towards the development and sale of high value egg products, and that strategy does not provide an economic incentive to attempt to raise the price of shell eggs." Burtis Report at 4. Her analysis purports to

rely upon econometric analysis of sales data from Michael Foods, as well as material produced in the course of this litigation. Ultimately, Dr. Burtis concludes that the available data indicates that Michael Foods's profits do not depend upon higher shell egg prices. Therefore, she concludes that the company's decision to become UEP Certified was not the result of the company's participation in the alleged antitrust conspiracy.

The plaintiffs argue that Dr. Burtis should be prohibited from testifying that Michael Foods's decision to join the allegedly anticompetitive UEP Certified Program was motivated by "economically rationally, independent business reasons." They assert that a defendant's motivations are irrelevant in the face of direct evidence of their participation in a conspiracy. The plaintiffs also argue that Dr. Burtis should be prevented from recounting or summarizing factual information because her summary is unrelated to her expert opinions and either parrots the statements of defendant's officers or threatens to usurp the role of the jury. Finally, the plaintiffs argue that Dr. Burtis should not be allowed to offer testimony regarding the existence of a single egg industry because such an opinion is irrelevant and not based upon any recognized methodology. As to each of these, the Court finds that the plaintiffs' arguments are unpersuasive. The Court will therefore deny the motion.

## I. STANDARD OF REVIEW

The trial judge has a special obligation under Federal Rule of Evidence 702 to ensure that any and all expert testimony is not only relevant, but reliable. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)). Rule 702 governs the admissibility of expert testimony and provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based

2

on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The purpose of the gatekeeping obligation is to ensure that the expert, whether basing her testimony on professional studies or personal experience, is employing the same level of intellectual rigor that characterizes the practice of an expert in the relevant field. *Kumho Tire,* 526 U.S. at 152. The Third Circuit Court of Appeals has characterized Rule 702 as embodying "a trilogy of restrictions on expert testimony: qualification, reliability and fit." *Schneider ex rel. Estate of Schneider v. Fried,* 320 F.3d 396, 404 (3d Cir. 2003) (citations omitted). While specialized knowledge is a requirement, the basis of such knowledge can be "practical experience as well as academic training and credentials." *Betterbox Commc'ns Ltd. v. BB Techs., Inc.,* 300 F.3d 325, 328 (3d Cir. 2002) (Alito, J.) (noting that the specialized knowledge requirement has been construed "liberally") (citing *Waldorf v. Shuta,* 142 F.3d 601, 625 (3d Cir. 1998)).

## II. ANALYSIS

As a preliminary matter, the Court notes that the plaintiffs have not challenged Dr. Burtis's credentials or qualifications as an economist.[1] In her report, Dr. Burtis states that she is currently the Vice President of Charles River Associates, an economic and finance consulting firm. She holds a Ph.D. in economics from the University of Texas at Austin and a B.A. in

---

[1] The plaintiffs do argue that Dr. Burtis has no independent knowledge of the egg industry specifically and that she has no special expertise in agricultural economics. While referencing her credentials, however, the plaintiffs do not provide any argument challenging their sufficiency. Rather this argument addresses the substance of her opinions. The Court notes first that the Third Circuit Court of Appeals has "eschewed imposing overly rigorous requirements of expertise and [has] been satisfied with more generalized qualifications." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994); *Hammond v. International Harvester Co.*, 691 F.2d 646, 652–53 (3d Cir. 1982). The plaintiffs do not articulate why Dr. Burtis's lack of expertise in agricultural economics renders her incapable of proffering the opinions in her report. Rather, their argument takes the position, discussed elsewhere, that Dr. Burtis simply parrots facts derived from Michael Foods employees and officers. This argument will be discussed in greater depth below. The Court, however, finds that it provides no basis to conclude that Dr. Burtis lacks the qualification to proffer the opinions at issue.

3

economics from the University of Colorado, Boulder. She states that her work has involved studying and analyzing various forms of business conduct and how such conduct impacts performance of both markets and individual firms. She has previously provided expert testimony in the course of litigation as well as advised the U.S. Department of Justice and the Federal Trade Commission regarding the competitive effects of mergers and acquisitions. She also states that she served as a consulting expert for companies involved in antitrust litigation. Finally, she has taught undergraduate microeconomics at the University of Texas and graduate economics at George Mason University.

Based upon these representations, which have not been challenged by the plaintiffs, the Court finds that Dr. Burtis is qualified to render the opinion she has offered in her report.

### *a. Admissibility of Evidence of Michael Foods's Independent Decision Making*

The first substantive argument put forward by the plaintiffs challenging the admissibility of Dr. Burtis's opinions reiterates an argument made by the DAPs and IPPs in their motion seeking to exclude the testimony of Dr. Jesse David. As in that other motion, the plaintiffs here argue that Dr. Burtis's opinion regarding Michael Foods's "independent" business justification for participating in the UEP Certified Program is legally irrelevant—and therefore inadmissible—to counter the plaintiffs' antitrust claims. The plaintiffs acknowledge that "[w]hether a firm had an independent business justification for its conduct can be a relevant factor when the court is asked to infer the existence of a conspiracy from circumstantial evidence." Pl. Br. at 1. The plaintiffs assert, however, that they can establish their claims based upon direct, as opposed to circumstantial, evidence, and for this reason the defendants should be prohibited from offering a defense which challenges the inferences which can be drawn from the available circumstantial evidence.

4

The Court has previously considered and rejected this general argument as premature. In denying the plaintiffs' motion to exclude the expert testimony of Dr. David, the Court explained in detail why this argument was unavailing, at least at this stage in the litigation. *See In re: Processed Egg Products Antitrust Litig.*, No. 08-MD-2002, 2016 WL 3912843, at *2-5 (E.D. Pa. July 19, 2016). The precedent relied upon by the plaintiffs does not support their conclusion that the Court should exclude otherwise relevant evidence based upon their assertions of what the record will ultimately show at trial. Therefore, for the reasons discussed in the Court's prior opinion regarding Dr. David, the Court likewise denies the plaintiffs' motion seeking to exclude Dr. Burtis's testimony regarding Michael Foods's reasons for participating in the UEP Certified Program.[2]

In addition to the legal relevancy of this testimony, the plaintiffs also argue that evidence of Michael Foods's "independent intent" to participate in the UEP Certified Program improperly invades the province of the jury. This argument is also without merit. As a preliminary matter, despite the plaintiffs' characterization, Dr. Burtis does not propose to offer testimony regarding the "*mens rea*" of Michael Foods. Rather, her proposed testimony describes the economic conditions of Michael Foods in relation to the egg industry and explains why the price of eggs did not impact Michael Foods in the same way as other defendants. *See* Burtis Report at ¶¶ 9-10. The case law cited by the plaintiffs in support of their argument is unavailing. Several of these decisions are unhelpful as they relate to the admissibility of expert testimony regarding a criminal defendant's *mens rea* under Fed. R. Evid. 704(b).[3] *See United States v. Dees*, 574 F.

---

[2] The fact that the Court finds this argument premature certainly will not prohibit the plaintiffs from raising it again, based upon the evidence which eventually comes in at trial.

[3] Federal Rule of Evidence 704(b) provides that:
> In a criminal case, an expert witness must not state an opinion about whether the defendant did nor did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone.

5

App'x 179, 183 (3d Cir. 2014); *United States v. Watson*, 260 F.3d 301, 308 (3d Cir. 2001). The plaintiffs have failed to provide any analysis supporting the application of such criminal cases to the subject matter at issue here. The other decisions included in the plaintiffs' lengthy string cite —all of which are from outside the Third Circuit—are also unhelpful as they stand for little more than the uncontroversial position that an expert may not speculate as to what exists in the mind of a party. *See DePaepe v. Gen. Motors Corp.*, 141 F.3d 715, 720 (7th Cir. 1998); *George v. Kraft Foods Glob., Inc.*, 800 F. Supp. 2d 928, 934 (N.D. Ill. 2011). Unlike the proposed expert opinions discussed in these decisions, Dr. Burtis's report does not appear to be based on speculation, nor does it seek to characterize the mental state of the defendants. The substance of her opinions does not propose to articulate the "mental attitudes of others" or Michael Foods's "corporate intent," but rather seeks to articulate why there existed economically rational, independent business reasons for Michael Foods's decision to join the UEP Certified Program, and perhaps more importantly for purposes of this litigation, how the plaintiffs' experts failed to adequately address this in their reports. Dr. Burtis's opinion reflects an analysis of economic data and other material in the record. This evidence is clearly relevant to the factfinder's ultimate determination as to whether the defendants engaged in unlawful, concerted action. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 327 (3d Cir. 2010). It appears to be the product of reliable methodology and satisfies the requirements of "qualification, reliably, and fit." *See Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). Given this, the Court finds that the plaintiffs' argument on this point unpersuasive.

---

Not only is this not a criminal case, the mental state of the defendants here is not an element of the charged offense and Dr. Burtis has not proposed to offer testimony describing the defendants' mental state.

6

### b. *Summarized Factual Material In Report*

The plaintiffs next argue that Dr. Burtis's proposed testimony regarding the significance of Michael Foods's flock size expansion during the alleged conspiracy period, is irrelevant to the issues at hand and inadmissible as expert testimony because it consists of little more than a recitation of factual conclusions. *See* Pl. Br. at 5, n.3 ("[M]uch of Dr. Burtis' report involves little more than a summary of factual material submitted by Michael Foods employees well after the May 2014 close of discovery.").[4] In essence, the plaintiffs appear to be contending that Dr. Burtis should be prohibited from articulating the factual basis of her conclusions.

Federal Rule of Evidence 703 provides that "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Moreover, an expert may base his opinion on a particular version of dispute facts and ultimately, the weight to be given to those facts rests with the jury. *Walker v. Gordon,* 46 F. App'x 691, 696 (3d Cir. 2002); *Krys v. Aaron,* 112 F. Supp. 3d 181, 195 (D.N.J. 2015); *see also In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 742 (3d Cir. 1994) (noting that the admissibility of an expert opinion requires the Court determine whether the proposed opinion rests upon "good grounds."). The facts, which the plaintiffs here complain are improperly included in Dr. Burtis's report, appear to comprise the foundation and support for Dr. Burtis's ultimate opinion. The plaintiffs have not attempted to argue that these facts are independently inadmissible—simply that the jury cannot hear them come from Dr. Burtis's mouth. In presenting these facts, however, Dr. Burtis has not usurped the role of the jury. The Court will instruct the jury on the use and weight of expert

---

[4] The plaintiffs also argue that Dr. Burtis's failed to apply certain analyses to the available data. Such arguments regarding which specific methodologies should or should not be applied goes to the weight the opinion should ultimately be given and not its admissibility. *See United States v. Downing,* 753 F.2d 1224, 1233 (3d Cir. 1985); *In re TMI Litig. Cases Consol. II,* 922 F. Supp. 1038, 1046 (M.D. Pa. 1996).

testimony and any potential confusion can be adequately dealt with at trial. The plaintiffs' argument to exclude Dr. Burtis's testimony on this basis is without merit.[5]

### c. *Egg Industry*

The plaintiffs' third argument focuses on Dr. Burtis's characterization of the "egg industry."[6] They contend that her opinion that there is no single egg *industry*—as opposed to a single egg *market*—should be excluded because the definition of the egg industry is not relevant to the ultimate resolution of the antitrust claims. The plaintiffs argue that Dr. Burtis's statements regarding the egg industry cannot be grounded in any professionally accepted methodology or tests and will confuse the issues at trial. To the extent that such issues are relevant to the case, they contend that experts should be permitted to analyze and testify regarding *only* the scope of the relevant *market*.

While cast in a somewhat different way, this argument rests on the same logical foundation as the previous argument that evidence dealing with Michael Foods's unique business incentives should be held inadmissible. Dr. Burtis's opinion that no single egg industry exists is offered in direct opposition to the central tenet of the plaintiffs' argument, namely that the defendants, when faced with price and supply pressures, responded uniformly by joining the alleged conspiracy. If it were shown that Michael Foods did not respond to the same economic pressures as other defendants, this would call into question the inference the plaintiffs want the

---

[5] Alternatively, the plaintiffs' also reiterate their contention that evidence regarding flock size expansion of one co-conspirator is legally irrelevant to the resolution of the antitrust conspiracy claims. The plaintiffs contend that Michael Foods is liable for its participation in the alleged conspiracy, regardless of whether or not it expanded production during the conspiracy period. This argument, however, rests upon the assumption that the plaintiffs will be able to prove that Michael Foods did, in fact, join an unlawful conspiracy. Michael Foods contends that Dr. Burtis's analysis of its operations and the egg industry generally, shows why this defendant had no motivation to join a supply reduction conspiracy. For the same reasons identified in Section II.a, *supra*, the Court finds that the plaintiffs' arguments here are premature.

[6] Unlike the prior two issues, the Direct Purchaser Plaintiffs group has joined the IPPs and DAPs motion as to this section. (Doc. Nos. 1195, 1216).

Court to draw that a conspiracy to reduce supply and increase egg prices was actually formed. While the plaintiffs, in their reply, attempt to respond to this point by arguing that Michael Foods actually profited from the supply reduction, such an argument simply reemphasizes the fact that this dispute challenges the weight of Dr. Burtis's opinions, not their admissibility.

To the extent that Dr. Burtis has not provided an opinion regarding the market-wide supply effects of the agreement, this fact serves to highlight what Dr. Burtis is, in fact, attempting to do. As noted by Michael Foods in its response, the question of market definition is clearly a central issue in antitrust cases: "[t]he significance of market definition derives in large part from the focus of many antitrust cases upon whether the defendant (or a group of defendants) possesses or is likely to obtain market power or monopoly power." ABA Section of Antitrust Law, Antitrust Law Developments at 567 (7th ed. 2012). Dr. Burtis, however, is not offering an opinion regarding market power. Rather, she characterizes the purpose of her analysis thusly:

> Specifically, I have been asked to evaluate Plaintiffs' claims in the context of Michael Foods' business of producing egg products and, in particular in the context of the Company's focus on high value egg products. I have been asked to evaluate whether Michael Foods' conduct was consistent with Plaintiffs claims of a conspiracy to restrict flock size and whether Michael Foods had an independent business justification for becoming "UEP Certified."

Burtis Report at ¶ 4. Viewed in this context, the plaintiffs' argument does not implicate the methodology employed by Dr. Burtis, but rather the weight the factfinder should give the conclusions she has drawn from the work she has performed. To the extent that the plaintiffs claim that Dr. Burtis's opinions should not be given much, if any, weight, they are fully capable of addressing this on cross examination. They have not provided a compelling reason, however, why this testimony is inadmissible.

In addition, the plaintiffs' argument that the concept of an "industry" is an economically meaningless term does not appear to find support in any authority provided to the Court. While stating that the concept of "industry" is irrelevant for purposes of resolving an antitrust claim, the plaintiffs go on to implicitly acknowledge that it is, nevertheless, a foundational concept in economics. The briefing cites to a statement in Dr. Burtis's deposition where she states that her opinions regarding the nature of the egg industry were based upon her understanding of basic economic concepts which might be found in an introductory economics textbook.[7] In light of this, the plaintiffs' argument pivots from arguing that the concept of an industry is meaningless for purposes of an antitrust analysis, to contending that the concept is so basic and foundational that it is within the experience of an average juror and therefore there is no need for Dr. Burtis to provide an expert opinion. Reliance upon basic economic principles does not render an otherwise admissible expert opinion excludable. *See In re Chocolate Confectionary Antitrust Litig.*, 289 F.R.D. 200, 209 (M.D. Pa. 2012); *U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Local Union No. 3, AFL-CIO*, 313 F. Supp. 2d 213, 236 (S.D.N.Y. 2004). In reaching her ultimate conclusions, Dr. Burtis has applied her experience as an economist to the facts of the case. The issues raised by the plaintiffs regarding the manner in which she applied these principles or the weight they should be given by the factfinder are all issues to be dealt with at trial and do not implicate the admissibility of her testimony. For these reasons, this last argument of the plaintiffs must also fail.

---

[7] The plaintiffs complain that Dr. Burtis failed to provide sufficient citations in support of her opinions, and this prevented them from cross examining her on these issues. They only raised this issue, however, in their reply briefing. Moreover, they did question Dr. Burtis about the basis of her opinion at her deposition and her responses will allow cross examination on these issues at trial.

10

## III. CONCLUSION

For the reasons discussed above, the Court will deny the plaintiffs' motion to exclude the testimony of Dr. Michelle Burtis. An appropriate Order follows.

BY THE COURT:

GENE E.K. PRATTER
United States District Judge