**UNITED STATES DISTRICT COURT**
**IN THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE: PROCESSED EGG PRODUCTS ANTITRUST LITIGATION** | **MDL No. 2002** <br> **Case No: 08-md-02002** |
| **THIS DOCUMENT APPLIES TO :** <br> *ALL DIRECT PURCHASER ACTIONS* | |

**DIRECT PURCHASER PLAINTIFFS' MEMORANDUM IN SUPPORT OF**
**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**
**BETWEEN DIRECT PURCHASER PLAINTIFFS AND MICHAEL FOODS, INC.**
**AND LEAVE TO FILE MOTION FOR AWARD OF FEES AND REIMBURSEMENT**
**OF <u>EXPENSES FROM THE MICHAEL FOODS, INC. SETTLEMENT FUND</u>**

## TABLE OF CONTENTS

I.      INTRODUCTION ......................................................................................................1

II.     BACKGROUND ........................................................................................................3

      A.      The Litigation...............................................................................................3

      B.      Previous Settlement History ........................................................................3

      C.      The MFI Settlement Negotiations................................................................4

III.    PROVISIONS OF THE SETTLEMENT AGREEMENT.................................................7

      A.      The Class......................................................................................................7

      B.      Cash Consideration to the Class & Rescission Provisions ......................8

      C.      The Cooperation Provisions........................................................................8

      D.      Release Provisions ......................................................................................9

IV.     THE PROPOSED SETTLEMENT IS SUFFICIENTLY FAIR, REASONABLE
      AND ADEQUATE ......................................................................................................9

      A.      Standard for Preliminary Approval of the Settlement ............................9

      B.      The Settlement Amount, the Cooperation Obligations, and the Terms of
            the Agreement Support Preliminary Approval. ......................................12

      C.      The Negotiation Process with MFI Supports Preliminary Approval....................15

      D.      The Procedural Posture at the Time the Settlement Agreement was
            Negotiated Supports Preliminary Approval........................................17

      E.      The Expense and Uncertainty of Continued Litigation against MFI
            Supports Preliminary Approval. ................................................................19

V.      THE CLASS DEFINED IN THE SETTLEMENT AGREEMENT IS
      COTERMINOUS WITH THE LITIGATION CLASS PREVIOUSLY
      CERTIFIED. ..............................................................................................................21

VI.     PLAINTIFFS' MOTION FOR LEAVE TO FILE MOTION FOR ATTORNEYS'
      FEES AND REIMBURSEMENT OF EXPENSES ........................................................24

VII.    CONCLUSION...........................................................................................................24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Am. Inv. Life Ins. Co. Annuity Mktg. and Sales Practices Litig.*,
    263 F.R.D. 226 (E.D. Pa. 2009) ................................................................................11

*Austin v. Pa. Dep't of Corr.*,
    876 F. Supp. 1437 (E.D. Pa. 1995) ..........................................................................12

*In re Auto. Refinishing Paint Antitrust Litig.*,
    617 F. Supp. 2d 336 (E.D. Pa. 2007) ......................................................................11

*In re Auto. Refinishing Paint Antitrust Litig.*,
    MDL No. 1426, 2004 WL 1068807 (E.D. Pa. May 11, 2004) .................................2, 9, 13, 14

*In re Auto. Refinishing Paint Antitrust Litig.*,
    No. MDL 1426, 2003 WL 23316645 (E.D. Pa. Sept. 5, 2003) ...............................15

*Bradburn Parent Teacher Store, Inc. v. 3M* (*Minnesota Mining & Mfg. Co.*),
    513 F. Supp. 2d 322 (E.D. Pa. 2007) ......................................................................19

*In re Chambers Dev. Sec. Litig.*,
    912 F. Supp. 822 (W.D. Pa. 1995) ..........................................................................21

*In re Cmty. Bank of N. Va.*,
    418 F.3d 277 (3d Cir. 2005) ....................................................................................17

*In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*,
    410 F. Supp. 659 (D. Minn. 1974) ..........................................................................15

*Diaz v. Hillsborough Cty. Hosp. Auth.*,
    No. 90-cv-120, 2000 WL 1682918 (M.D. Fla. Aug. 7, 2000) .................................23

*Gates v. Rohm & Haas Co.*,
    248 F.R.D. 434 (E.D. Pa. 2008) ..............................................................................9, 10, 11

*In re Gen. Instruments Sec. Litig.*,
    209 F. Supp. 2d 423 (E.D. Pa. 2001) ......................................................................14

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) ......................................................................................11

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975) ....................................................................................10

*In re Ikon Office Solutions Inc. Sec. Litig.*,
   194 F.R.D. 166 (E.D. Pa. 2000)............................................................................14

*In re Ins. Brokerage Antitrust Litig.*,
   297 F.R.D. 136 (D.N.J. 2013)..............................................................................11

*Kopchak v. United Res. Sys.*,
   No. 13-cv-5884, 2016 WL 4138633 (E.D. Pa. Aug. 4, 2016) ..............................11

*Lake v. First Nationwide Bank*,
   156 F.R.D. 615 (E.D. Pa. 1994)...........................................................................15

*In re Linerboard Antitrust Litig.*,
   292 F. Supp. 2d 631 (E.D. Pa. 2003) ........................................................... *passim*

*McGuiness v. Parnes*,
   No. 87-2728, 1989 WL 29814 (D.D.C. Mar. 22, 1989) ......................................16

*Mehling v. N.Y. Life Ins. Co.*,
   246 F.R.D. 467 (E.D. Pa. 2007)...........................................................................10

*In re Mid-Atlantic Toyota Antitrust Litig.*,
   564 F. Supp. 1379 (D. Md. 1983) ........................................................................10

*In re NASDAQ Market-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998) .........................................................................21

*In re Orthopedic Bone Screw Prods. Liab. Litig.*,
   176 F.R.D. 158 (E.D. Pa. 1997)...........................................................................16

*Petruzzi's Inc. v. Darling-Delaware Co.*,
   880 F. Supp. 292 (M.D. Pa. 1995) .......................................................................15

*In re Polyurethane Foam Antitrust Litig.*,
   135 F. Supp. 3d 679, 684 (N.D. Ohio 2015).........................................................23

*In re Processed Egg Prods. Antitrust Litig.*,
   284 F.R.D. 249 (E.D. Pa. 2012)...........................................................................23

*In re Processed Egg Prods. Antitrust Litig.*,
   No. 08-md-2002, 2014 WL 828083 (E.D. Pa. Feb. 28, 2014)..............................10

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
   962 F. Supp. 450 (D.N.J. 1997) .......................................................................9, 10

*In re Remeron End-Payor Antitrust Litig.*,
   No. 02-cv-2007, 2005 WL 2230314 (D.N.J. Sept. 13, 2005)...............................21

*In re Rite Aid Corp. Sec. Litig.*,
    146 F. Supp. 2d 706 (E.D. Pa. 2001) ....................................................................10

*Rowe v. E.I. DuPont de Nemours & Co.*,
    No. 06-cv-1810, 2011 WL 3837106 (D.N.J. Aug. 26, 2011) ...................................19

*Seidman v. Am. Mobile Sys.*,
    965 F. Supp. 612 (E.D. Pa. 1997) .........................................................................19

*Smoot v. Wieser Bros. Gen. Contractors, Inc.*,
    No. 15-cv-424, 2016 WL 1736498 (W.D. Wis. Apr. 29, 2016) ..............................10

*Stewart v. Rubin*,
    948 F. Supp. 1077 (D.D.C. 1996) .........................................................................14

*T.K. Ribbing's Family Rest. v. United Egg Producers, Inc.*,
    No. 08-cv-4653 (E.D. Pa. Nov. 13, 2008) .............................................................16

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004).............................................................................10, 22

*Weseley v. Spear*,
    711 F. Supp. 713 (E.D.N.Y. 1989) ........................................................................20

**Statutes**

7 U.S.C. § 291 (Capper-Volstead Act) ........................................................................6, 18

15 U.S.C. § 1, *et seq*. (Sherman Act) ...............................................................................3

**Rules**

Fed. R. Civ. P. 23 ..............................................................................1, 2, 16, 22-24

Pursuant to Rules 23(e) of the Federal Rules of Civil Procedure, the Direct Purchaser

Plaintiff Class ("Class," "Plaintiffs," or "DPPs") respectfully submit this memorandum in

support of their motion for: (1) preliminary approval of a settlement between Plaintiffs and

Defendant Michael Foods, Inc. ("MFI"), set forth in the "Settlement Agreement between Direct

Purchaser Plaintiffs and Defendant Michael Foods, Inc." ("Settlement" or "Settlement

Agreement"), attached as Exhibit A to the Declaration of Stanley D. Bernstein ("Bernstein

Decl.") accompanying this Motion and Memorandum;[1] and (2) leave to file a motion for an

award of attorneys' fees and reimbursement of expenses from the MFI Settlement Fund.[2]

## I.    INTRODUCTION

After several months of intense arms'-length negotiations in 2016, principally with the

assistance of a professional mediator, and preceded by unsuccessful settlement discussions three

years prior, Plaintiffs obtained a mutually agreeable settlement with MFI that delivers enormous

value to the Class and creates the largest settlement in this litigation to date. In exchange for a

release from the claims in this lawsuit through December 31, 2008, MFI has agreed to pay

---

[1] Pursuant to the Stipulation and Proposed Order to Modify Date of Submission of
Proposed Notice Plan submitted to the Court on January 4, 2016 by Class Counsel and Counsel
to MFI, Class Counsel intend to file a motion for approval of a plan for and form of Notice of the
MFI Settlement Agreement in the coming weeks. For purposes of efficiency, Plaintiffs intend to
combine Notice of the MFI Settlement with Notice of the pending Shell Egg litigation class
certified by this Court, as those classes share the same class definition. *See infra* n.3 and
accompanying text. Additionally, Plaintiffs intend that the Notice will also include a combined
claim form for claims from the MFI Settlement and claims from prior settlements with the
United States Egg Marketers ("USEM") and United Egg Producers ("UEP"), Hillandale Farms
of Pa., Inc. and Hillandale-Gettysburg, LP ("Hillandale"), Midwest Poultry Services LP,
National Foods Corporation, and NuCal Foods, Inc., which were finally approved by this Court
on June 30, 2016 (ECF Nos. 1418 & 1419). Although class members of these previously
approved settlements received Notice of the settlements and their right to opt out or object to
them (the deadline for which has passed), they have not yet had the ability to submit claims for
distribution from these settlements.

[2] All capitalized terms not otherwise defined herein shall have the same meaning as set
forth in the Settlement Agreement.

$75,000,000 into a Fund to provide compensation to the proposed Settlement Class members. The Settlement Amount is nearly three times that of the previous largest settlement amount obtained by DPPs—$28 million from Defendant Cal-Maine Foods, Inc.—and larger than all previous settlements between DPPs and other Settling Defendants combined. In addition to the cash payment, the Settlement Agreement also obligates MFI to assist Plaintiffs in prosecuting this Action by authenticating and establishing the admissibility of documents in this litigation and to provide up to four trial witnesses at MFI's sole expense. Plaintiffs believe these commitments will materially assist them in further prosecuting this Action against the remaining three Defendants: Rose Acre Farms, Inc., Ohio Fresh Eggs, LLC, and R. W. Sauder, Inc. ("Non-Settling Defendants").

Plaintiffs respectfully move the Court for an Order, in substantially the proposed form submitted herewith:

- finding that the proposed settlement with MFI is sufficiently fair, reasonable and adequate to allow dissemination of notice of the settlement to the Settlement Class; and

- granting leave to Plaintiffs to file a motion for an award of attorneys' fees and reimbursement of litigation expenses as set forth in the Proposed Order.

Such an order will allow Plaintiffs to undertake the procedures necessary to obtain final approval of the proposed MFI Settlement as required by Rule 23(e) of the Federal Rules of Civil Procedure and to move for payment of fees and costs from the Settlement Amount with adequate advance notice to the Class prior to final approval. At this time, in considering whether to grant preliminary approval to the MFI Settlement Agreement, the Court need determine only whether the proposed settlement is sufficiently fair, reasonable, and adequate to allow notice of the proposed settlement to be disseminated to the Class. *See In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 WL 1068807, at *1-2 (E.D. Pa. May 11, 2004). A final

determination of the settlement's fairness will be made at or following the Fairness Hearing, after Class Members have received notice of the settlement and of the fee and expense petition, and have been given an opportunity to opt-out of the Settlement or object to it or to the fee and expense motion. As set forth below, Plaintiffs submit that the proposed Settlement more than satisfies the standards for preliminary approval.

## II.     BACKGROUND

### A.     The Litigation

This case alleges a nationwide conspiracy among the country's largest egg producers. Plaintiffs allege that Defendants (both Settling and Non-Settling) and other named and unnamed co-conspirators violated the Sherman Antitrust Act, 15 U.S.C. § 1, *et seq*., by engaging in an unlawful conspiracy to reduce egg production and supply and thereby artificially fix, raise, maintain and/or stabilize the prices of shell eggs in the United States. As a result of Defendants' alleged conduct, Plaintiffs and members of the Class paid prices for shell eggs that were higher than they otherwise would have been absent the conspiracy. The lawsuit seeks treble damages, injunctive relief, and attorneys' fees and costs from Defendants. MFI has denied all allegations of wrongdoing in the Action. Filed in late 2008, this litigation has been pending for more than eight years, and, following the Court's denial of Defendants' motions for summary judgment on liability, is nearly ready for trial.

### B.     Previous Settlement History

The MFI Settlement Agreement is the ninth settlement obtained in this Action by DPPs. On June 8, 2009, Sparboe Farms, Inc. entered into a settlement agreement with Plaintiffs, providing for substantial cooperation in the continued litigation of the case, and on July 16, 2012, this Court granted final approval of that settlement. Order, July 16, 2012 (ECF No. 698). On May 21, 2010, Moark, LLC, Norco Ranch, Inc., and Land O'Lakes, Inc. (collectively, "Moark")

entered into a settlement agreement with Plaintiffs providing for both continued cooperation and a cash payment of $25,000,000.00, and on July 16, 2012 this Court granted final approval to that settlement. Order, July 16, 2012 (ECF No. 700). On August 2, 2013, Cal-Maine Foods, Inc. entered into a settlement agreement with Plaintiffs, providing for cooperation and a cash payment of $28,000,000. The Court finally approved the Cal-Maine Settlement Agreement on October 10, 2014. Order, Oct. 10, 2014 (ECF No. 1082).

In 2014, Plaintiffs entered into a series of settlement agreements with several smaller Defendants: National Food Corporation (on March 28, 2014, for a $1,000,000 cash payment); Midwest Poultry Services (on March 31, 2014, for a $2,500.000 cash payment); UEP and USEM (on May 21, 2014, for a $500,000 cash payment, collectively); NuCal Foods (on August 1, 2014, for a $1,425,000 cash payment); and Hillandale (on October 22, 2014, for a $3,000,000 cash payment).[3] The Court granted final approval to these settlements on June 30, 2016. Orders, June 30, 2016 (ECF Nos. 1418 & 1419).

The total value of all prior settlements between DPPs and Settling Defendants is $61,425,000. Each of these settlement agreements provided for a broad settlement class, which included among its members any individual or entity that purchased shell eggs or egg products directly from any egg producer, including but not limited to any Defendant, or such producers' affiliates, during the period January 1, 2000 through the date on which the settlements were preliminarily approved by the Court.

### C.     The MFI Settlement Negotiations

Most recently, Co-Lead Counsel for Plaintiffs ("Class Counsel") and MFI's counsel, Weil Gotshal & Manges LLP, engaged in extensive arms' length negotiations over the course of

---

[3] Plaintiffs also voluntarily dismissed Defendant Daybreak Foods from the Action.

several months, including an all-day mediation and several follow-up discussions, to reach the pending Settlement Agreement. These renewed negotiations followed a failed attempt nearly three years prior to reach a resolution with MFI and various discussions since that time. Throughout prior discussions and the 2016 negotiations, Class Counsel and MFI's counsel, both highly experienced and capable, vigorously advocated their respective clients' positions throughout the settlement negotiations. The Parties were far apart when their discussions and subsequent mediation began in 2016.

The Parties' first serious attempts at settlement began in October 2013 when Plaintiffs and almost all of the then-remaining Defendants (including MFI) participated in a mediation in an attempt to reach a global resolution of the DPPs' claims. Bernstein Decl. ¶ 5. The Parties prepared mediation briefs and submitted them to the mediator, the Honorable Harlan A. Martin (ret.) of JAMS. *Id.*. The mediation took place on October 9, 2013 and lasted nearly a full day, but the gulf between the Parties' positions was too wide and no global resolution was reached. *Id.* And although MFI and Plaintiffs occasionally and informally discussed settlement at various times thereafter, settlement communications did not begin again in earnest for nearly three years. *Id.* ¶ 6.

In July 2016, after the Court had certified the DPP Shell Egg litigation class (but denied certification of an Egg Products class) and limited the class period to September 24, 2004 through December 31, 2008, MFI and Plaintiffs resumed settlement discussions, but the Parties' settlement positions remained far apart. *Id.* ¶ 7. Then, in August 2016, Plaintiffs and MFI agreed to mediate settlement with Jed D. Melnick of JAMS, an experienced and qualified mediator who had previously worked with the Honorable Daniel B. Weinstein, the mediator who assisted with the Cal-Maine settlement discussions. *Id.* ¶ 9. The Parties provided Mr. Melnick with extensive

background materials from their summary judgment briefs and supporting documents. *Id.* On

September 8, 2016, when the mediation began, the Parties' settlement postures differed sharply,

due in part to several pending motions that had the potential to impact the litigation. Although

the mediation ended without resolution that day, numerous mediated negotiations continued via

telephone and email over the course of the following months. *Id.* ¶ 12.

 The Court then denied MFI's motion for summary judgment as to its individual liability,[4]

and granted, in part, Plaintiffs' motion for summary judgment, finding that the UEP and

Defendants' conduct under the auspices of UEP were not protected by the Capper-Volstead Act

(thus eliminating a key defense at trial). *Id.* ¶ 13. As settlement negotiations were ongoing, the

Parties continued to aggressively litigate this action. In September 2016, Michael Foods joined in

a motion to decertify the Shell Egg litigation class previously certified by the Court, and filed a

motion to certify for appeal the Court's denial of its motion for summary judgment. *Id.* ¶¶ 11,

13. Plaintiffs filed briefs opposing both motions in late November and early December. *Id.* ¶¶

11, 13.

 By early December 2016, the negotiations proceeded rapidly as the Parties' positions

converged, and the Parties reached agreement on the principal terms of the Settlement on

December 6, 2016. Bernstein Decl. ¶¶ 14-15. The proposed Settlement Agreement was fully

executed on December 8, 2016. MFI subsequently deposited the Settlement Amount into an

escrow account pursuant to the Parties' Agreement. *Id.* ¶¶ 15-16.

 Thus, at the time the Settlement Agreement was reached, Class Counsel had significant

and comprehensive knowledge of the strengths and weaknesses of Plaintiffs' claims and of

---

[4] Order Granting, in Part, and Denying, in Part, Pls.' Mot. for Summ. J. re: Capper-Volstead at 11, Sept. 13, 2016 (ECF No. 1442); Order Denying Defs.' Mot. for Summ. J., Sept. 28, 2016 (ECF No. 1445).

MFI's asserted defenses that enabled Class Counsel to evaluate MFI's settlement positions and to advocate for a fair settlement that served the best interests of the Class. Fact and expert discovery had long since closed, Plaintiffs' motion for certification of a Shell Egg litigation class had been granted,[5] *Daubert* and summary judgment motions had been briefed and decided,[6] and the Parties were preparing for trial. *Id.* ¶ 17. After extensive factual investigation, legal analysis, and case development, it is the opinion of Class Counsel that the Settlement amount of $75 million, combined with MFI's cooperation obligations, is fair, reasonable and adequate to the Class. Plaintiffs respectfully submit that the Settlement is in the best interests of the Class and should be preliminarily approved by the Court.

## III.    PROVISIONS OF THE SETTLEMENT AGREEMENT

### A.    The Class

The Class definition in the MFI Settlement Agreement is identical to the Shell Egg Litigation Class previously certified by this Court:[7]

> All individuals and entities that purchased shell eggs from caged birds in the United States directly from Defendants during the Class Period from September 24, 2004 through December 31, 2008.

---

[5] Am. Mem., Nov. 12, 2015 (ECF No. 1346); Order, Feb. 3, 2016 (ECF No. 1372).

[6] Order Denying Mot. to Exclude Opinions & Testimony of Dr. Jesse David, July 19, 2016 (ECF No. 1423); Order Denying Mot to Exclude Testimony of Dr. Michelle Burtis, Aug. 15, 2016 (ECF No. 1427) Order Denying Mot to Exclude Opinions & Testimony of Dr. Gordon Rausser, Aug. 16, 2016 (ECF No. 1428); Order Denying Mot. to Exclude Opinions & Testimony of Dr. Michael Darre, Aug. 31, 2016 (ECF No. 1430); Mem. Granting, in Part, Mot. for Summ. J. Against IPPs and DAPs, Aug. 9, 2016 (ECF No. 1438); Order Granting, in Part, and Denying, in Part, Mot. for Summ. J. re: Damages, Sept. 12, 2016 (ECF No. 1440); Order Granting, in Part, and Denying, in Part, Pls. Mot. for Summ. J. re: Capper-Volstead, Sept. 13, 2016 (ECF No. 1442); Order Denying Defs. Mot. for Summ. J., Sept. 28, 2016 (ECF No. 1445).

[7] *Compare* MFI Settlement Agreement ¶ 18 *with* Order Certifying Shell Egg Litigation Class ¶ 1, Feb. 3, 2016 (ECF No. 1372) *and* Am. Mem. at 4 & 61, Nov. 12. 2015 (ECF No. 1346).

Excluded from the Class are the Defendants, their co-conspirators, and their respective parents, subsidiaries and affiliates, as well as any government entities. Also excluded from the Class are purchasers of "specialty" shell eggs (such as "organic," "certified organic," "free range," "cage free," "nutritionally enhanced," or "vegetarian fed") and purchasers of hatching eggs, which are used by poultry breeders to produce breeder stock or growing stock for laying hens or meat.

Settlement Agreement ¶ 18 (Bernstein Decl., Ex. A).

**B.**    **Cash Consideration to the Class & Rescission Provisions**

The proposed Settlement Agreement provides that within 20 days of its execution, MFI will pay $75,000,000 in cash (the "Settlement Amount") into an escrow account (which funds have since been deposited). *See* Settlement Agreement ¶ 32. This money shall remain in that account, controlled by MFI and Class Counsel, pending approval of the settlement by the Court. MFI also has the right and option to rescind the Agreement should the purchases of class members choosing to opt-out of the Settlement equal or exceed a percentage of sales set forth in a Confidential Supplemental Agreement between the Parties, which will be disclosed to the Court for *in camera* inspection prior to entry of the Preliminary Approval Order. *Id.* ¶ 29. Additionally, the Settlement Agreement provides that Class Counsel may seek an award of attorneys' fees and reimbursement of litigation expenses from the Settlement Fund, subject to Court approval, and that MFI shall have no other obligation to pay any fees or expenses to Class Counsel.

**C.**    **The Cooperation Provisions**

In addition to the Settlement Amount, the Settlement Agreement also requires that MFI establish the authenticity and status of certain documents as business records. *Id.* ¶ 38. MFI also agrees to comply with trial subpoenas, served via email by Plaintiffs, to produce up to four trial witnesses and that it will not seek to quash any such subpoenas served by Plaintiffs. MFI also

agrees that any such witnesses that are current MFI employees will be deemed to reside within 100 miles of this district and will travel to this District for trial at MFI's expense. *Id.* ¶ 39. Additionally, MFI agrees to cooperate to help Plaintiffs locate and serve subpoenas on MFI's former employees. *Id.*

### D.   Release Provisions

In exchange for the consideration provided by MFI, Plaintiffs have agreed to release MFI from any and all claims arising out of or resulting from: (i) an agreement or understanding between or among two or more Defendants; (ii) Defendants' reduction or restraint of supply and reduction of or restrictions on production capacity, or (iii) Defendants' pricing, selling, discounting, marketing, or distributing of Shell Eggs in the United States or elsewhere up to December 31, 2008. *Id.* ¶¶ 24-27. The full text of the proposed release, including the limitations thereof, is set forth in the Settlement Agreement at paragraphs 24 through 27.

## IV.   THE PROPOSED SETTLEMENT IS SUFFICIENTLY FAIR, REASONABLE AND ADEQUATE

### A.   Standard for Preliminary Approval of the Settlement

The approval of class action settlements involves a two-step process: (1) preliminary approval; and (2) a fairness hearing, after notice to the class, to determine final approval of the proposed settlement. *See Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 438-39 (E.D. Pa. 2008); *In re Auto. Refinishing*, 2004 WL 1068807, at *1-2; *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 562 (D.N.J. 1997); 4 NEWBERG ON CLASS ACTIONS § 11:25, at 38-39 (4th ed. 2002).

When deciding preliminary approval, a court does not conduct a "definitive proceeding on the fairness of the proposed settlement." *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983). That definitive determination must await the final hearing, at

which the fairness, reasonableness, and adequacy of the settlement are more fully assessed. *See In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 638 (E.D. Pa. 2003).[8]

In determining whether to preliminarily approve a class settlement, courts look to whether "the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval." *Mehling v. N.Y. Life Ins. Co*., 246 F.R.D. 467, 472 (E.D. Pa. 2007). To make that determination, courts consider whether "'(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'"[9] *Gates*, 248 F.R.D. at 444 (*quoting In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d at 638); *In re Processed Egg Prods. Antitrust Litig*., No. 08-md-2002, 2014 WL 828083, at *2 (E.D. Pa. Feb. 28, 2014); *Kopchak v. United Res. Sys*., No. 13-cv-5884, 2016 WL 4138633, at *6 (E.D. Pa. Aug. 4, 2016) (applying these factors to determine whether there are obvious deficiencies). A settlement falls within the

---

[8] The factors considered for final approval of a class settlement as "fair, reasonable and adequate" include: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best possible recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation. *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534-35 (3d Cir. 2004); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. at 562; *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 713 (E.D. Pa. 2001). At the preliminary approval stage, "the Court need not address these factors, as the standard for preliminary approval is far less demanding." *Gates,* 248 F.R.D. at 444 n.7. Plaintiffs will thus fully address each of these factors in their memorandum in support of their motion for final approval.

[9] The last factor, the percentage of objections, is premature at this stage as the members of the class have not had an opportunity to object. *Smoot v. Wieser Bros. Gen. Contractors, Inc.*, No. 15-cv-424, 2016 WL 1736498, at *5 (W.D. Wis. Apr. 29, 2016).

range of possible approval when a court finds these factors are satisfied. *Kopchak*, 2016 WL 4138633, at *6.

   After making such findings, a settlement agreement is entitled to a presumption of fairness and should be preliminarily approved. *See Gates*, 248 F.R.D. at 439; *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995) (holding that the "preliminary determination establishes an initial presumption of fairness"); *In re Am. Inv. Life Ins. Co. Annuity Mktg. and Sales Practices Litig.*, 263 F.R.D. 226, 238 (E.D. Pa. 2009) (same). Where, as here, a litigation class has already been certified prior to settlement negotiations, courts have required a less probing fairness inquiry than in the absence of such certification. *See In re Gen. Motors Corp.*, 55 F.3d at 805; *see also id.* at 814 ("In ordinary class action settlements (i.e., where the court certifies the class before settlement negotiations commence) courts can presume that the negotiations occurred at arm's length because they have already determined that the counsel negotiating on behalf of the class adequately represents the class's interests."). Additionally, in reviewing a proposed settlement, courts may also consider the amount of relief provided, s*ee, e.g.*, *In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d 336, 344 (E.D. Pa. 2007), and commitments of settling defendants to provide information or cooperation that assists the class in prosecuting the action against non-settling defendants, *see e.g., In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d at 643.

   Finally, the Court should consider that "settlement of litigation is especially favored by courts in the class action setting." *In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 144 (D.N.J. 2013) (citing *In re Gen. Motors Corp.*, 55 F.3d at 784 (holding that "the law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation")); *Austin v. Pa. Dep't of Corr.*, 876 F.

Supp. 1437, 1455 (E.D. Pa. 1995) (explaining that "the extraordinary amount of judicial and private resources consumed by massive class action litigation elevates the general policy of encouraging settlements to an overriding public interest") (internal quotations omitted).

As discussed below, the MFI Settlement is entitled to a presumption of fairness because: the negotiations occurred at arm's length over a period of several months and at a time when the litigation was well-advanced; Class Counsel and MFI's counsel are experienced in this type of complex litigation; the settlement does not provide for any preferential treatment of class representatives or any segment of the class nor for compensation of attorneys beyond what this Court may award; and the Agreement provides significant monetary relief to the Class and requires that MFI provide cooperation that will assist with the prosecution of this case.

**B.     The Settlement Amount, the Cooperation Obligations, and the Terms of the Agreement Support Preliminary Approval.**

As noted, the $75,000,000 Settlement Amount exceeds the combined value of all prior settlement approved by this Court, and exceeds the highest settlement amount obtained to date from Cal-Maine Foods ($28 million) by nearly three-fold. *See* Mem. Approving Cal-Maine Settlement at 38, Oct. 10, 2014 (ECF No. 1081) (finally approving Cal-Maine Settlement finding $28 million in monetary relief and cooperation to be reasonable). This amount reflects Plaintiffs' success in defeating summary judgment motions on liability and in securing certification of the Shell Egg litigation class, as well as the Court's rulings that the putative egg products class (which had been included in all prior settlements) could not be certified for trial purposes and that the Shell Egg class is limited to a four-year period.  The $75 million in monetary relief is all the more significant because the Class is expected to be smaller than those of prior settlements, providing even greater relief to its members than the Settlement Amount may suggest: it includes a class period of just over four years, in contrast to prior settlement periods that ran for up to 14

years; it includes only purchases from Defendants, unlike prior settlements that included
purchases from any egg producer; and it applies only to purchases of shell eggs, unlike prior
settlements that included purchases of both shell eggs and egg products.[10] Thus, considering the
value of the Settlement Amount and the more narrow Class definition, the MFI Settlement
Amount of $75 million actually understates the value of the Settlement to Class members. It
provides substantially more monetary relief to fewer claimants for fewer purchases from fewer
producers than all prior settlements found by this Court to be fair, reasonable, and adequate.

Moreover, the damages Plaintiffs suffered due to MFI's alleged conduct remain in the
case, and, under joint and several liability, are recoverable from the three remaining Defendants.
*See In re Auto. Refinishing*, 2004 WL 1068807, at *2 (preliminarily approving settlement
agreement where, *inter alia*, "this settlement does not affect the joint and several liability of the
remaining Defendants in this alleged conspiracy"). Again, the settlement here is an excellent
result for the Class, with a recovery far in excess of prior settlements approved previously by the
Court (in fact, larger than all the prior settlements combined).

And, as discussed above, the proposed Settlement Agreement also provides that MFI not
only authenticate and establish as business records documents Plaintiffs may seek to introduce at
trial, it also requires MFI's cooperation in presenting up to four current MFI employees as trial

---

[10] *Compare* MFI Settlement Agreement ¶ 18 *with* Decl. of Michael D. Hausfeld, Ex. A
(Settlement Agreement with Moark) ¶ 19 (ECF No. 349-1); Decl. of Michael D. Hausfeld, Ex. A
(Settlement Agreement with Cal-Maine Foods) ¶ 20 (ECF No. 848-2); Decl. of James J.
Pizzirusso, Ex. A (Settlement Agreement with National Foods Corp.) ¶ 22 (ECF No. 952-2);
Decl. of James J. Pizzirusso, Ex. B (Settlement Agreement with Midwest Poultry Services) ¶ 23
(ECF No. 952-3); Decl. of James J. Pizzirusso, Ex. A (Settlement Agreement with UEP/USEM)
¶ 25 (ECF No. 997-2); Decl. of James J. Pizzirusso, Ex. A (Settlement Agreement with NuCal
Foods) ¶ 22 (ECF No. 1041-2); Decl. of Ronald J. Aranoff, Ex. A (Settlement Agreement with
Hillandale) ¶ 23 (ECF No. 1093-2).

The Class, in contrast to prior settlement agreements, also includes egg producers in the
class definition if they purchased shell eggs directly from any Defendant or their affiliates.

witnesses, at MFI's expense, and in assisting Class Counsel in locating MFI's former employees who Plaintiffs may seek to call at trial and in securing their cooperation and attendance.

In the opinion of Class Counsel, who have substantial experience litigating antitrust class actions, the significant Settlement Amount is appropriate cash consideration for the discharge of the Class claims against MFI and a highly favorable result for the Class. The Settlement Amount was agreed to after review of MFI's shell egg sales and market share during the damages period, and after consideration of the likely expense of and risks associated with litigating claims against MFI at trial. Class Counsel also believe the cooperation required under the Agreement, which will preserve Plaintiffs' ability to present to a jury evidence adduced from FMI over years of discovery, will provide substantial assistance to Plaintiffs in further prosecuting their claims. *See In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d at 643 (noting settlement provisions for cooperation provide substantial benefit to the classes and support settlement approval); *In re Ikon Office Solutions Inc. Sec. Litig.*, 194 F.R.D. 166, 177 (E.D. Pa. 2000) (noting that cooperation agreements are valuable in settling a complex case); *In re Auto. Refinishing*, 2004 WL 1068807, at *2 (acknowledging the settlement provisions' requirements for assistance by settling defendants in prosecuting claims).

Courts have accorded significant weight to the opinion of Class Counsel based on a thorough analysis of the facts. *See, e.g., In re Gen. Instruments Sec. Litig.,* 209 F. Supp. 2d 423, 431 (E.D. Pa. 2001); *Stewart v. Rubin,* 948 F. Supp. 1077, 1099 (D.D.C. 1996) ("A court should defer to the judgment of experienced counsel who have competently evaluated the strength of the proof."), *aff'd,* 124 F.3d 1309 (D.C. Cir. 1997); *Petruzzi's Inc. v. Darling-Delaware Co.*, 880 F. Supp. 292, 301 (M.D. Pa. 1995) ("[T]he opinions and recommendations of such experienced counsel are indeed entitled to considerable weight"); *In re Coordinated Pretrial Proceedings in*

*Antibiotic Antitrust Actions,* 410 F. Supp. 659, 667 (D. Minn. 1974) ("The recommendation of experienced antitrust counsel is entitled to great weight.").

Finally, the Settlement Agreement is fair to the class as a whole. It provides no preferential treatment to Class Representatives. Class Counsel anticipate the allocation of settlement funds will, as in the Moark and Cal-Maine settlements, be distributed pro-rata based on each class member's (including Class Representative's) purchases of shell eggs.[11] Class representatives will benefit from the Settlement Agreement in the same way as any other Class member. *See* Allocation Order, May 11, 2016 (ECF No. 1401) (finding pro rata allocation of Cal-Maine settlement funds to be fair, reasonable, and adequate). Moreover, the Agreement requires that any award for payment of attorneys' fees and costs is subject to proper motion to, and approval by, the Court. Settlement Agreement ¶ 34.

## C.   The Negotiation Process with MFI Supports Preliminary Approval.

Settlements that result from arm's-length negotiations between experienced counsel are generally entitled to deference from the court. *In re Auto. Refinishing Paint Antitrust Litig.*, No. MDL 1426, 2003 WL 23316645, at *6 (E.D. Pa. Sept. 5, 2003); *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d at 640 (holding that "[a] presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced, capable counsel"); *Lake v. First Nationwide Bank*, 156 F.R.D. 615, 628 (E.D. Pa. 1994) (giving "due regard to the recommendations of the experienced counsel in this case, who have negotiated this settlement at arms-length and in good faith"); *McGuiness v. Parnes,* No. 87-2728, 1989 WL 29814, at *1 (D.D.C. Mar. 22, 1989) ("While the evaluation of the fairness and adequacy of a settlement . . . is anything but a scientific process, there is nothing about this Settlement suggesting that the Court

---

[11] Because egg products are not included in the Class, however, unlike in prior settlements, class members' purchases of egg products will not be compensated.

should second-guess the product of the negotiations between the skilled and conscientious lawyers who represented parties on both sides of this litigation."); 2 NEWBERG ON CLASS ACTIONS, § 11.41 (3d ed. 1992) ("There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval."). This deference reflects an understanding that vigorous negotiations between seasoned counsel protect against collusion and advance the fairness considerations of Rule 23(e). *See In re Orthopedic Bone Screw Prods. Liab. Litig.*, 176 F.R.D. 158, 184 (E.D. Pa. 1997) (concluding that the settlement was the product of "good faith, arms' length negotiations[,]" which eliminated "the risk that a collusive settlement agreement may [have been] reached").

   As discussed above and in the accompanying Bernstein Declaration, the Settlement with MFI is the result of hard-fought, arm's-length negotiations between Class Counsel and MFI's counsel, all experienced and capable lawyers in complex class actions and antitrust matters.[12] Class Counsel and MFI's counsel vigorously advocated their respective clients' positions in the settlement negotiations and were prepared to proceed against MFI to trial if no settlement was reached. Bernstein Decl. ¶¶ 5-9, 12, 17. And the Parties twice engaged the services of experienced, neutral mediators to facilitate the settlement negotiations; after the second mediation, the mediator continued assisting the negotiations in the months following the initial in-person mediation session. *Id.* ¶¶ 5, 9, 12. As part of those processes, the Parties exchanged,

---

   [12] In finally approving the Cal-Maine Settlement, the Court previously found that Class Counsel were experienced in similar class action and antitrust litigation. Mem. at 27, Oct. 10, 2014 (ECF No. 1081).

   The experience and qualifications of Interim Co-Lead Class Counsel are described in Interim Co-Lead Counsel's Submission in Support of Permanent Appointment of Interim Leadership Structure. *See* Submission in Supp. of Permanent Appt. of Interim Leadership Structure, *T.K. Ribbing's Family Rest. v. United Egg Producers, Inc.*, No. 08-cv-4653 (E.D. Pa. Nov. 13, 2008) (ECF No. 26), and accompanying exhibits.

16

and provided to the mediator, comprehensive confidential mediation briefs and other materials laying out the strengths and weaknesses of the claims and defenses. *Id.* ¶¶ 5, 9.

Importantly, as settlement negotiations with Michael Foods were ongoing, the Parties continued to aggressively advocate their litigation positions. As discussed more fully *infra* Section VI.D, after the mediation had already been planned or was continuing, Michael Foods joined in a motion to decertify the DPP Shell Egg litigation class (ECF No. 1433), and also moved  the Court to certify for interlocutory appeal its order denying MFI's summary judgment motion (ECF No. 1449). Plaintiffs filed strong and vigorous opposition briefs to both motions, along with a supplemental expert report accompanying the opposition to the motion for decertification. ECF Nos. 1454 & 1456.

Moreover, the Settlement Agreement provides for now specified amount of attorneys' fees or cost reimbursement, and provides only for Plaintiffs' ability to apply to the Court for a fee and costs award. *See In re Cmty. Bank of N. Va.*, 418 F.3d 277, 308 (3d Cir. 2005) (noting danger of collusion where fees are negotiated simultaneously with the settlement). Thus, nothing in the course of the negotiations or in the substance of the proposed Settlement presents any reason to doubt its fairness. Indeed, the time gap between the global mediation with all Defendants in 2013 and the final agreement between Plaintiffs and MFI, entered into more than three years later, demonstrates that Settlement Agreement was the product of informed and vigorous negotiation.

### D.    The Procedural Posture at the Time the Settlement Agreement was Negotiated Supports Preliminary Approval.

Before the Parties began their second mediation in September 2016, this Action was well advanced and the Parties were preparing for trial. Discovery had long since concluded (involving dozens of depositions and production of more than one million documents by Defendants, the

review of which Plaintiffs determined established that MFI and the others engaged in a massive conspiracy). Bernstein Decl. ¶ 7. Further, the Court had granted Plaintiffs' motion for class certification of a Shell Egg litigation class and subsequently limited that class period to September 24, 2004 through December 31, 2008.[13] *Id.* Defendants' motion for interlocutory review of the class certification order was denied,[14] and summary judgment had been fully briefed and argued. *Id.*

      Directly after the September 8, 2016 mediation and while the negotiations with MFI continued, this Court: granted, in part, Plaintiffs' motion for summary judgment, finding that the UEP was not protected by the Capper-Volstead Act and eliminating a key defense in this litigation and denied Plaintiffs' summary judgment motion with respect to the Capper-Volstead Act's applicability to USEM;[15] denied MFI's dispositive motion for summary judgment, while finding that certain arguments and evidence favorable to MFI's defenses could be introduced at trial;[16] and granted, in part, certain Defendants' summary judgment motion as to Direct Action Plaintiffs and Indirect Purchaser Plaintiffs, finding claims regarding the UEP Certified Program by the DAPs and IPPs would be evaluated under a "rule of reason" standard.[17]  Thus, as these negotiations were proceeding, the Action against MFI was heading toward trial and all parties to

---

[13] Amended Mem. Granting, in Part, DPPs' Mot for Class Certification, Nov. 12, 2015 (ECF No. 1346); Order Granting Certification of Shell Egg Litigation Class, Feb. 3, 2016 (ECF No. 1372).

[14] Order Denying Petition for Leave to Appeal, Dec. 3, 2015 (ECF No. 1357).

[15] Order Granting, in Part, and Denying, in Part, Pls.' Mot. for Summ. J. re: Capper-Volstead, Sept. 12, 2016 (ECF No. 1442).

[16] *See* Mem. at 6-8, 24, 31-32, Sept. 28, 2016 (ECF No. 1444); Order Denying Defs. Mot. for Summ. J., Sept. 28, 2016 (ECF No. 1445).

[17] Order Granting, in Part, Defs. Mot. for Summ J. as to DAPs and IPPs on Liability, Sept. 9, 2016 (ECF No. 1438). It remains unclear how this ruling will apply to the DPP Action.

the Agreement understood the scope of the remaining claims and the attendant risks of proceeding.

Accordingly, the advanced procedural posture of this litigation at the time the Settlement Agreement was reached supports a finding that the Settlement is within the range of reasonableness. *See Bradburn Parent Teacher Store, Inc. v. 3M* (*Minnesota Mining & Mfg. Co.),* 513 F. Supp. 2d 322, 331 (E.D. Pa. 2007) (finding fact that case was near the eve of trial following substantial discovery when agreement was reached supported fairness of the settlement); *Rowe v. E.I. DuPont de Nemours & Co.*, No. 06-cv-1810, 2011 WL 3837106, at *13 (D.N.J. Aug. 26, 2011) (noting that counsel were well-positioned to assess the merits of the litigation during settlement negotiations where the settlement agreement was reached after discovery had concluded and summary judgment was fully briefed and pending, and finding that this weighed in favor of approval). *Seidman v. Am. Mobile Sys.*, 965 F. Supp. 612, 617, 619 (E.D. Pa. 1997) (approving settlement where, *inter alia*, settlement was achieved on the eve of trial after extensive discovery had occurred and a litigation class had been certified).

### E.    The Expense and Uncertainty of Continued Litigation against MFI Supports Preliminary Approval.

The Settlement is particularly reasonable given the risks inherent in moving forward against MFI. Courts have noted that "[a]n antitrust class action is arguably the most complex action to prosecute." *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d at 639 (citation omitted); *see also Weseley v. Spear*, 711 F. Supp. 713, 719 (E.D.N.Y. 1989) (noting that antitrust class actions are "notoriously complex, protracted, and bitterly fought").

Continuing this litigation against MFI poses risks for both Plaintiffs and MFI. First, as noted, *supra*, MFI and other Defendants moved the Court to certify for interlocutory appeal of the Court's denial of their summary judgment motions (which motion MFI has since withdrawn

as to the DPPs). ECF Nos. 1449-52. Although Plaintiffs' opposition to those motions (ECF No. 1454) compellingly demonstrates why the motions are without merit, Plaintiffs face the risk that the Court may grant the motions, subjecting class members to a protracted appeal and further delaying ultimate relief to the Class. Second, the Court's memorandum in support of its Order denying MFI's motion for summary judgment, although finding that MFI's participation in the UEP Certified Program alone may be sufficient for a jury to find MFI's concerted action with other Defendants to reduce supply, also identified a number of MFI's arguments that it may present at trial, namely that certain of MFI's customers demanded its participation in the UEP certified program, that MFI pursued production expansion even after joining that program, and that concerted action by MFI was economically irrational.[18] Third, the Court's Order applying the rule of reason to the DAPs' and IPPs' claims regarding the Certified Program,[19] if applied to DPPs, suggests that trial may be more complex than if only the *per se* standard applied.  Finally, all Defendants moved the Court to decertify the Shell Egg litigation class. ECF No. 1433. Although Plaintiffs' opposition to that motion demonstrates that decertification is inappropriate and the motion is meritless, and Plaintiffs are confident this case will proceed to trial, the decertification motion also adds to the uncertainty in this litigation.

Accordingly, although Plaintiffs are confident in the strength of their case against MFI and the likelihood of success in defeating the motion for decertification and in prevailing at trial, the outcome is nonetheless uncertain. *See In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d at 639; *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 475-76 (S.D.N.Y. 1998) ("Antitrust litigation in general, and class action litigation in particular, is unpredictable. . . .

---

[18] Mem. at 6-8, 24, 31-32, Sept. 28, 2016 (ECF No. 1444).

[19] Order Granting, in Part, Defs. Mot. for Summ J. as to DAPs and IPPs on Liability, Sept. 9, 2016 (ECF No. 1438).

[T]he history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal."). Moreover, even after trial is concluded, there would very likely be one or more lengthy appeals. *In re Remeron End-Payor Antitrust Litig.*, No. 02-cv-2007, 2005 WL 2230314, at *17 (D.N.J. Sept. 13, 2005). The degree of uncertainty supports preliminary approval of the proposed Settlement Agreement. *See In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995).

Class counsel have considered the complexities of this litigation, the risks and expense of continuing to trial against MFI, and the likely appeal if Plaintiffs do prevail at trial. After weighing these against the guaranteed recovery to the Class and what Class Counsel believe to be the significant benefits of the Settlement Amount and MFI's cooperation obligations, Class Counsel firmly believe the Settlement represents a desirable resolution of this litigation as to MFI.

All of the relevant factors—the terms of the settlement, the nature of the negotiations, the well-advanced state of the litigation at the time of settlement, the experience of Class Counsel and the risks of proceeding against MFI—support the conclusion that the Settlement falls within the range of possible final approval and is entitled to the presumption of fairness, permitting notice to issue to the Class.

## V.     THE CLASS DEFINED IN THE SETTLEMENT AGREEMENT IS COTERMINOUS WITH THE LITIGATION CLASS PREVIOUSLY CERTIFIED.

Rule 23 governs the issue of class certification for both litigation and settlement classes. A class should be certified where the four requirements of Rule 23(a) are satisfied, and when one of the three subsections of Rule 23(b) is also met. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 527-30. Certification is appropriate under Rule 23(a) if: (1) the class is so numerous that

joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). In addition to satisfying Rule 23(a), a class much also satisfy the requirements of Rule 23(b)(3), which authorizes class certification if "the court finds that the questions of law or fact common class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

As noted *supra*, the MFI Settlement Agreement defines the Class as follows:

> All individuals and entities that purchased shell eggs from caged birds in the United States directly from Defendants during the Class Period from September 24, 2004 through December 31, 2008.

> Excluded from the Class are the Defendants, their co-conspirators, and their respective parents, subsidiaries and affiliates, as well as any government entities. Also excluded from the Class are purchasers of "specialty" shell eggs (such as "organic," "certified organic," "free range," "cage free," "nutritionally enhanced," or "vegetarian fed") and purchasers of hatching eggs, which are used by poultry breeders to produce breeder stock or growing stock for laying hens or meat.

Settlement Agreement ¶ 18. This Class definition is identical to the definition of the Shell Egg litigation class previously certified by this Court. Order Certifying Shell Egg Litigation Class ¶ 1, Feb. 3, 2016 (ECF No. 1372).

The Court may therefore rely on its prior findings that the Class, so defined, satisfies Rule 23. *See, e.g.*, *In re Polyurethane Foam Antitrust Litig.*, 135 F. Supp. 3d 679, 684 (N.D. Ohio 2015) (noting that the court previously certified a litigation class using the same class definition as the settlement class with the exception of the settlement class's reference to opt-outs

and concluding, therefore, that the settlement class satisfies Rule 23), *recons. denied*, No. 10-md-2196, 2015 WL 12748013 (N.D. Ohio Dec. 21, 2015); *Diaz v. Hillsborough Cty. Hosp. Auth.*, No. 90-cv-120, 2000 WL 1682918, at *1 (M.D. Fla. Aug. 7, 2000) (approving the class for settlement purposes where the class was substantially similar to the litigation class previously certified as satisfying Rule 23(a) and (b)). *Cf. In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 249, 259 (E.D. Pa. 2012) (noting that a court must determine whether the settlement class satisfies Rule 23 when a litigation class has not yet been certified).

In its Memorandum certifying the Shell Egg litigation class,[20] this Court previously found that the same class defined under the MFI Settlement Agreement satisfies Rule 23's requirements of: (1) *numerosity*, because the class includes potentially more than 13,000 members (Mem. at 7, Nov. 12, 2015 (ECF No. 1346)); (2) *commonality*, because the allegation that Defendants conspired to restrict egg supply are common to each class member and can be proven on a class-wide basis (*id.*); (3) *typicality and adequacy*, because the prices paid by all class members for shell eggs were affected by the conspiracy and differences in methods for purchasing and pricing did not create intra-class conflicts (*id.* at 7-12); (4) *ascertainability*, because the class is defined by objective criteria and is ascertainable using Defendants' transaction data and Plaintiffs' purchase records (*id.* at 12-13); (5) *predominance*, because Defendants' antitrust violations and any defenses may be proven by evidence common to the class, antitrust injury was likewise susceptible to common proof, including expert economic and statistical evidence of antitrust impact, that all or virtually all of the class members would have been affected by the conspiracy, and that individual issues did not predominate (*id.* at 13-59); and (6) *superiority and manageability*, because interests of efficiency and economy favored

---

[20] Am. Mem., Nov. 12, 2015 (ECF No. 1346).

23

litigating the class antitrust claims (*id.* at 59-60). Accordingly, because the Class defined in the MFI Settlement Agreement is identical to the certified Shell Egg class it satisfies Rule 23.

## VI.   PLAINTIFFS' MOTION FOR LEAVE TO FILE MOTION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

Plaintiffs also seek leave to file a motion for an award of attorneys' fees and for reimbursement of litigation expenses from the MFI Settlement Fund.[21] Class Counsel propose that their motion for attorneys' fees and for reimbursement of expenses be filed 45 days before the Settlement objection and opt-out deadline, and shall be posted on the www.eggproductssettlement.com website. In their forthcoming proposed form of Notice, Class Counsel will propose that that the Notice of the MFI Settlement will inform Class members of: (1) the maximum amount of fees that Class Counsel will seek from the Settlement Amount; (2) the date on which Plaintiffs' fee and expense motion will be filed and that the motion will be available on the settlement website for Class members' review; and (3) their right to object to the motion in whole or in part, and the means by which they may do so. This will afford Class members both sufficient notice of the motion and a reasonable opportunity to review it prior to determining whether to object to the motion or the Settlement Agreement or to opt-out of the class.[22]

## VII.   CONCLUSION

For the reasons set forth above, Plaintiffs request that the Court preliminarily approve the Settlement Agreement between Plaintiffs and MFI and grant Plaintiffs leave to file a motion for attorneys' fees and reimbursement of litigation expenses as provided in the Proposed Order.

---

[21] *See* Order at 1 n.1, July 18, 2012 (ECF No. 704) (directing Plaintiffs, pursuant to CMO No. 1, to seek leave of Court prior to filing a motion for fees and expenses).

[22] *See* Order at 1 n.2, Aug. 15, 2013 (ECF No. 727) (concluding that the class must have sufficient notice of, and adequate opportunity to object to, a motion for fees and expenses prior to the objection deadline).

Dated: January 5, 2017        Respectfully submitted,

*/s/* Mindee J. Reuben

Mindee J. Reuben

**LITE DEPALMA & GREENBERG LLC**

1835 Market Street, Suite 2700

Philadelphia, PA 19103

mreuben@litedepalma.com

(267) 314-7980

(973) 623-0858 (fax)

mreuben@litedepalma.com

*Co-Lead Counsel and Liaison Counsel for Direct Purchaser Plaintiffs*

Michael D. Hausfeld

**HAUSFELD LLP**

1700 K Street NW

Suite 650

Washington, DC 20006

(202) 540-7200

(202) 540-7201 (fax)

mhausfeld@hausfeldllp.com

*Co-Lead Counsel for Direct Purchaser Plaintiffs*

Stanley D. Bernstein

**BERNSTEIN LIEBHARD LLP**

10 East 40th Street

New York, New York 10016

(212) 779-1414

(212) 779-3218 (fax)

bernstein@bernlieb.com

*Co-Lead Counsel for Direct Purchaser Plaintiffs*

Stephen D. Susman

**SUSMAN GODFREY LLP**

654 Madison Avenue, 5th Floor

New York, NY 10065-8404

(212) 336-8330

(212) 336-8340 (fax)

25

ssusman@susmangodfrey.com

*Co-Lead Counsel for Direct Purchaser Plaintiffs*

On the Brief:

Stephen R. Neuwirth
**QUINN EMANUEL URQUHART**
**& SULLIVAN**
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000
(212) 849-7165
stephenneuwirth@quinnemanuel.com

Ronald J. Aranoff
**WOLLMUTH MAHER & DEUTSCH LLP**
500 Fifth Avenue-12[th] Floor
New York, New York 10110
212 382-3300
212 382-0050
raranoff@wmd-law.com