IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: PROCESSED EGG PRODUCTS ANTITRUST LITIGATION<br><br>THIS DOCUMENT APPLIES TO:<br>ALL INDIRECT PURCHASER ACTIONS | MDL No. 2002<br>Case No.: 08-md-02002 |

**DEFENDANTS' POST-HEARING BRIEF IN FURTHER OPPOSITION TO INDIRECT PURCHASER PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION**

With leave of Court (Hr'g Tr. 97:6-10), Defendants Cal-Maine Foods, Inc.; United States Egg Marketers, Inc.; United Egg Producers, Inc.; Rose Acre Farms, Inc.; Michael Foods, Inc.; Papetti's Hygrade Egg Products; R.W. Sauder, Inc.; and Ohio Fresh Eggs, LLC ("Defendants") hereby submit a post-hearing brief relating to the Indirect Purchaser Plaintiffs' ("IPPs'") Renewed Motion for Class Certification under Rule 23(b)(2) to address two issues that arose for the first time during the oral argument held on March 7, 2017 in connection with the motion: the IPP's reliance on (1) a recent, not-for-publication decision from the Third Circuit, *Providence Pediatric Medical Daycare Inc. v. Alaigh*, 2016 WL 7093933 (3d Cir. Dec. 6, 2016) (Hr'g Tr. 23:7-16, 30:24-31:19), and (2) a specific passage from the Third Circuit's decision in *Mid-West Paper Products Co. v. Continental Group, Inc.*, 596 F.2d 573 (3d Cir. 1979) (Hr'g Tr. 32:9-24). *Providence* and *Mid-West Paper* have no bearing on the instant motion for class certification. The Court should deny the motion.

To certify an injunction class under Rule 23(b)(2), the IPPs must show they have proof common to the class of each element of the relevant cause of action. *In re OSB Antitrust Litig.*, 2007 WL 2253425, at *17-18 (E.D. Pa. Aug. 3, 2007) (denying injunction class where, as here, "Plaintiffs have not shown that they can prove actual or threatened injury, causation, or

1

redressability on a common basis because of 'disparate factual circumstances' among" class members) (relying on *Barnes v. The Amer. Tobacco Co.*, 161 F.3d 127, 143 (3d Cir. 1998)); *In re Managerial, Prof'l & Tech. Empls. Antitrust Litig.*, 2006 WL 38937, *9 (D.N.J. Jan. 5, 2006) ("even though Defendants allegedly shared information with respect to [the proposed class] generally," certification should be denied because "that conduct is not generally applicable in its potential effects"); *accord Hohider v. UPS*, 574 F.3d 169, 176-177, 184-185 (3d Cir. 2009). In addition, IPPs must establish that the requested injunction will provide all, or virtually all, class members actual relief. *Gates v. Rohm & Haas Co.*, 655 F.3d 255 (3d Cir. 2011) (no certified injunction class due to individualized and speculative causation and injury issues). At the hearing, the IPPs tried to minimize or avoid that burden by citing *Providence*, a recent non-class case, and quoting a passage from *Mid-West Paper Prods. Co. v. Continental Group, Inc.*, 596 F.2d 573 (3d Cir. 1979), that has been superseded by several subsequent Third Circuit decisions in indirect-purchaser cases.

*Providence* addressed whether receipt of a requested license mooted under Article III the plaintiff's request for injunctive relief with respect to the allegedly arbitrary manner in which officials issued licenses. The court held that because the plaintiff had obtained the requested license and there was no reasonable expectation of recurrence, the claim was moot. 2016 WL 7093933, at *2-3.

Setting to one side the fact that the case did not present class issues, it would not support Plaintiffs' position here. Moreover, the plaintiff in *Providence* did not allege any antitrust violation; therefore, the holding of the case could not have disturbed the multiple decisions from the Supreme Court and Third Circuit recognizing that the standing requirements for a plaintiff seeking an injunction pursuant to Section 16 of the Clayton Act (as the IPPs seek here) are

different and more demanding than the constitutional minimums required by Article III. *See, e.g.*, *City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 264-69 (3d Cir. 1998) (distinguishing between the two, and affirming dismissal of antitrust complaint seeking damages and injunctive relief on *antitrust* standing grounds); *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 109-113 (1986) (holding that private plaintiffs seeking injunctive relief under Section 16 must also demonstrate "antitrust injury" to have standing to sue) (relying on *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519 (1983)).[1]  Those precedents likewise make clear that a Section 16 *plaintiff* must demonstrate the existence of an actual, threatened antitrust injury and provide direct proof that the allegedly anticompetitive conduct caused that injury (an overcharge). *See Cargill*, 479 U.S. at 117-119 & n.15 (rejecting plaintiff's proof of antitrust injury, which included forward-looking expert testimony, as speculative); *West Penn*, 147 F.3d at 268 ("Antitrust injury must be caused by the antitrust violation—not a mere causal link, but a direct effect."); *Howard Hess Dental Labs. v. Dentsply Int'l, Inc.*, 516 F. Supp. 2d 324, 333-337, 335 (D. Del. 2007) ("The fact that plaintiffs seek only injunctive relief rather than damages does not alter plaintiffs' obligation to establish its antitrust injuries."), *aff'd*, 602 F.3d 237, 246-251 (3d Cir. 2010) (relying on *McCarthy v.*

---

[1] *See* Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law ¶ 335 (4th ed. 2013) ("Antitrust standing therefore requires more than the constitutional minimum for the 'case or controversy' that brings jurisdiction to Article III courts.").

*Recordex Serv., Inc.*, 80 F.3d 842, 856 (3d Cir. 1996), among other authorities).[2] Plaintiffs' effort to shift this burden to defendants by citation to *Providence* is unavailing.[3]

In addition, the Third Circuit's decision in *Providence*, which was not a class action, did not address Rule 23(b)(2)'s requirements at all, much less in the context of a proposed aggregation of Section 16 injunction claims on a nationwide basis. The *Providence* court did not say anything that would excuse the IPPs' and their expert's failure to undertake a rudimentary investigation, much less a demonstration using proof common to the class, that all or virtually all shell egg purchasers will pay an illegal overcharge in the future attributable to the alleged conspiracy (as opposed to state laws mandating compliance with the UEP Certified Program and/or the variable and growing private and governmental demands for animal welfare laws with even greater cage-space standards, *see* Hr'g Tr. 49:2-51:10, 56:23-57:12, 61:23-78:1; *see also* Hr'g Tr. 4/21/15 197:3-14, 205:2-16; 280:20-281:25 (Dr. Kevin Murphy direct and cross

---

[2] As Professors Areeda and Hovekamp explain, "The plaintiff seeking injunctive relief must generally meet all the requirements that apply to the damages plaintiff, except that the injury itself need only be threatened and damage need not be quantified." Antitrust Law ¶ 335 (further noting the "similar limitations on standing to obtain equitable relief" under Section 16 and that "to satisfy this causation requirement, the plaintiff in equity must connect its prospective injury to the violation in about the same proximate way as the damage plaintiff"). *Cf. In re Warfarin Sodium Antitrust Litig.*, 214 F.3d 395, 402 (3d Cir. 2000) (allowing indirect purchaser complaint brought under Section 16 to overcome a motion to dismiss for lack of antitrust standing because plaintiffs alleged they *would* continue to pay actual overcharges attributable to the challenged conduct).

[3] Defendants agree with *Providence* insofar as it would conclude that class members in states that now embrace the UEP standard would be moot. Indeed, none of Plaintiffs' experts here have shown a likelihood of future injury for the class as a whole because they focused solely on prior injury. Nothing in *Providence* suggests either that evidence of prior harm can give rise to a presumption of future harm or that it is defendants' burden to demonstrate the absence of future harm. Hr'g. Tr. 23, 30-31. To the contrary, the court referenced the fact that Plaintiff "made no allegations about its ability to obtain licenses in the future or show that another moratorium would be imposed." *Id*. at *2. *See also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (holding that "the party invoking federal jurisdiction bears the burden of establishing" Article III's requirements).

examination testimony concerning the variability of pass-through)).  *See Gates,* 655 F.3d at 262-269; *Barnes*, 161 F.3d at 143-49.  Nor is *Providence* a substitute for the absence of contemporaneous and reliable proof that an injunction that does *not* mandate that Defendants immediately stock egg-laying hens at less than 67 square inches and backfill cages on Certified farms would actually result in retail purchasers nationwide paying lower prices at the cash register  (Hr'g Tr. 66:13-70:20), as required under Rule 23(b)(2).  *Cf. Shelton v. Bledsoe*, 775 F.3d 554 (3d Cir. 2015) (certifying injunction class seeking relief mandating prison warden change unconstitutional policy that was impacting, or threatening to impact, all class-member prisoners).  The Court of Appeals similarly said nothing about the appropriateness of a mandatory injunction class where, as here, absent class members retain factually related damages claims allegedly worth billions of dollars that would be placed in jeopardy at an injunction-only trial offering, at best, dubious prospects of tangible, classwide relief.  *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2559 (2011); *Hohider v. UPS*, 574 F.3d 169 (3d Cir. 2009); *In re Skelaxin Antitrust Litig.*, 299 F.R.D. 555, 557-79 (E.D. Tenn. 2014).

  *Mid-West Paper* also does not save the IPPs' second attempt at certifying an injunction class.  The IPPs try to transform dicta from the injunctive relief section of *Mid-West Paper* concerning general economic *theories* of pass-through into an "automatic assumption [of] . . . injury" for all indirect purchasers suing under Section 16.  Hr'g Tr. 32:15-23, 33:14-18.  Such a proposition cannot be squared with the Supreme Court's decision in *Cargill*, nor with the Third Circuit's subsequent decisions in indirect purchaser cases like *Dentsply* and *Recordex Services*, all of which unmistakably mandate that a plaintiff actually *prove* imminent and cognizable

antitrust injury for an injunction to issue.[4]  In addition, allowing an irrevocable presumption of antitrust injury would run afoul of *Hydrogen Peroxide*'s subsequent teaching that in each case a district court must conduct a "rigorous analysis" of the record evidence in order to determine that Rule 23's requirements have been satisfied by the preponderance of the evidence.  *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 326, 312 (3d Cir. 2008) (reversing certification order predicated in part on an impermissible classwide "presumption of antitrust impact").

The renewed motion for certification should be denied for all the reasons stated in Defendants' opposition (ECF No. 1355) and by counsel on behalf of the Defendants at the certification hearing.

---

[4]  For example, if in indirect purchaser cases there existed an evidentiary rule for an automatic and irrevocable presumption that alleged overcharges were passed through the chain of distribution, in *Dentsply* there would have been no reason to deny the indirect purchasers' summary judgment motion on the ground that a triable issue of a fact existed as to whether they suffered antitrust injury and thus had antitrust standing to sue.  602 F.3d at 247 (affirming denial of motion for summary judgment filed by indirect purchasers seeking injunctive relief under Section 16, and rejecting argument that "our holding in the [prior] Government Case that Dentsply had engaged in anticompetitive practices compelled an inference of antitrust injury to the Plaintiffs").  And in *Recordex*, after determining that the indirect purchasers did not qualify for any of the possible exceptions to *Illinois Brick*, 80 F.3d at 850-55, there would have been no reason to remand the case to the district court for additional proceedings concerning whether the indirect purchasers had competent evidence of antitrust injury, as required by Section 16.  *Id.* at 856 (analyzing relevance of *Mid-West Paper* and nonetheless concluding that "we will remand to allow the district court to undertake such an analysis").

DATED:  March 17, 2017

/s/ Carrie C. Mahan
Carrie C. Mahan
WEIL, GOTSHAL & MANGES LLP
1300 Eye Street NW
Washington, DC 20005
Telephone: (202) 682-7000
carrie.anderson@weil.com

William L. Greene
STINSON LEONARD STREET LLP
150 South Fifth Street, Suite 2300
Minneapolis, MN 55402
Telephone: (612) 335-1500
william.greene@stinsonleonard.com

*Counsel for Defendants Michael Foods, Inc. and Papetti's Hygrade Egg Products*


/s/ Donald M. Barnes
Donald M. Barnes
Jay L. Levine
PORTER, WRIGHT, MORRIS & ARTHUR LLP
1900 K Street, NW, Suite 1110
Washington, DC 20006-1110
Telephone: (202) 778-3056
DBarnes@porterwright.com

*Counsel for Defendant Rose Acre Farms, Inc.*


/s/ Jan P. Levine
Jan P. Levine
Robin P. Sumner
PEPPER HAMILTON LLP
3000 Two Logan Square
Philadelphia, PA 19103
Telephone:  (215) 981-4000
levinej@pepperlaw.com

*Counsel for Defendants UEP and USEM*

Respectfully submitted,

/s/ Brian E. Robison
Veronica Smith Lewis
Brian E. Robison
Jason C. McKenney
Olivia A. Adendorff
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Ave, Suite 1100
Dallas, TX 75201
Telephone: (214) 698-3100
VLewis@gibsondunn.com
BRobison@gibsondunn.com

Robin Locke Nagele
POST & SCHELL, P.C.
Four Penn Center, 14th Floor
1600 John F. Kennedy Blvd.
Philadelphia, PA 19103
Telephone: (215) 587-1155
rnagele@postschell.com

*Counsel for Defendant Cal-Maine Foods, Inc.*

/s/ Christine C. Levin
Joseph A. Tate
Christine C. Levin
DECHERT LLP
Cira Centre, 2929 Arch Street
Philadelphia, PA 19104
Telephone: (215) 994-2421
christine.levin@dechert.com

*Counsel for Defendant R.W. Sauder, Inc.*


/s/ Joseph M. Callow, Jr.
Joseph M. Callow, Jr.
KEATING MUETHING & KLEKAMP PLL
One East Fourth Street, Suite 1400
Cincinnati, OH 45202
Telephone: (513) 579-6400
jcallow@kmklaw.com

*Counsel for Defendant Ohio Fresh Eggs, LLC*

7

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of March, 2017, the foregoing document was filed using the CM/ECF system. In addition, (1) the filing is available for viewing and downloading via the CM/ECF system, and (2) the CM/ECF system will send notification of this filing to all attorneys of record who have registered for CM/ECF updates.

/s/ *Brian E. Robison*
Brian E. Robison