IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: PROCESSED EGG PRODUCTS ANTITRUST LITIGATION | MULTIDISTRICT LITIGATION |
| THIS DOCUMENT APPLIES TO: ALL ACTIONS | No. 08-md-2002 |

## MEMORANDUM

PRATTER, J.                                                                                      SEPTEMBER 28, 2017

Perhaps this Court has a serious case of déjà vu, because this all seems eerily familiar. Exactly one year ago, on September 28, 2016, this Court denied four defendants' motions for summary judgment. *In re: Processed Egg Products Antitrust Litigation*, 2016 WL 5539593 (E.D. Pa. Sept. 28, 2016) (Doc. No. 1445, hereinafter "Order"). All four defendants filed motions for leave to file interlocutory appeals of the decision. (Doc. Nos. 1449-1452). The defendants try to re-hash the arguments they made in their summary judgment briefs and argue that there are four reasons why interlocutory appeal is appropriate in this instance. First, they argue that the Court's analysis misinterpreted *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). Second, they argue that the Court erroneously found customer demand irrelevant. Third, they argue that no reasonable jury could find that the unilateral decision to join the UEP Certified Program could suffice for a Section 1 violation of the Sherman Act. Finally, they argue that the Court erred in not finding a good-faith exception under the Capper-Volstead Act. For the reasons stated herein, these arguments fare no better one year later, and the Court declines to exercise its discretion to certify the September 28, 2016 order for interlocutory appeal.

## I. BACKGROUND[1]

Direct and indirect purchasers of eggs accuse major egg producers of conspiring to control and limit the nation's egg supply, thereby increasing egg prices through a number of allegedly interrelated, anticompetitive programs. Specifically, the defendant egg producers are accused of violating Section 1 of the Sherman Act by developing and implementing an unlawful egg certification program, exporting eggs at a loss, and colluding to reduce egg production in periods of oversupply through coordinated action, such as reducing chick hatch, promoting early molting, and expediting hen disposal. The defendants deny that these programs violate the Sherman Act.

The four defendants in the present motion filed summary judgment motions, arguing, *inter alia*, that the evidence adduced throughout discovery was insufficient to proceed to a jury. This Court denied the motions, finding that the "similar conduct by all four moving defendants— mainly joining and participating in the United Egg Producers ("UEP") Certified Program— constitutes sufficient evidence to frustrate the motions for summary judgment." Order at 1. All four defendants filed motions requesting leave to file an interlocutory appeal under 28 U.S.C. § 1292(b).

## II. LEGAL STANDARD

Interlocutory appeals are permissible under § 1292(b) if a district court's "order [1] involves a controlling question of law [2] as to which there is substantial ground for difference of opinion and [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation . . . ." 28 U.S.C. § 1292(b). All three of these criteria are required. Such appeals must be reserved for "exceptional cases" *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 74

---

[1] In addition to the facts laid out below, rather than re-scrambling old opinions, the Court points to facts laid out in previous opinions. *See, e.g.*, Doc. Nos. 1438, 1445.

2

(1996) (internal quotation marks omitted) and are "wholly within the discretion of the courts, even if the criteria are present." *Bachowski v. Usery*, 545 F.2d 363 (3d Cir. 1976). "Section 1292(b) was not intended to open the floodgates to a vast number of interlocutory appeals," and "[c]ertification is the exception, not the rule." *Zygmuntowicz v. Hospitality Investments, Inc.*, 828 F. Supp. 346, 353 (E.D. Pa. 1993).

## III. DISCUSSION

Given that the arguments underlying the moving defendants' claims largely overlap (because all defendants are disputing the same opinion) the Court will examine the four issues raised by the defendants in turn.

### A. The Court's Analysis of *Matsushita*

The moving defendants claim that the Court should have required the plaintiffs to demonstrate evidence that "tends to exclude" that the defendants acted independently in joining the UEP Certified Program. *Matsushita*, 475 U.S. at 597. The defendants spend considerable time attempting to resurrect this argument made in their initial motion for summary judgment. They argue that, absent direct evidence of collusion, *Matsushita* requires that plaintiffs show evidence that "tends to exclude" other pro-competitive reasons for the defendants' actions.

To begin, the sufficiency of evidence under *Matsushita* is not a pure question of law, as much as the defendants try to dress it up as such. This involves an application of the *Matsushita* case law to the specific facts on summary judgment. This fact alone is grounds to deny the motion under § 1292(b). But even if the defendants' argument were a question of law, the defendants speak of the "tends to exclude" language in *Matsushita* as a categorical necessity that must be applied unless there is a written and notarized agreement to conspire. Defendants have pointed to no holding of the Supreme Court or the Third Circuit Court of Appeals that goes that

3

far. The two holdings discussed in the briefings—*Matsushita* and *In re Chocolate Confectionary*—do not hold as much either. 475 U.S. 574 (1986); 801 F.3d 383 (3d Cir. 2015).

*Matsushita* held that the "evidence must tend to exclude the possibility that petitioners [acted pro-competitively] rather than [show an attempt] to implement an economically senseless conspiracy." *Matsushita*, 475 U.S. at 597. The Supreme Court focused on the fact that the conspiracy alleged in *Matsushita* was simply implausible in light of the balance of facts. They explained that the plaintiffs "must show that the inference of conspiracy is reasonable in light of the competing inferences of independent action . . . ." *Id.* at 588. Here, unlike the convoluted scheme alleged in *Matsushita*, the alleged conspiracy was not economically senseless. In fact, the evidence shows that the scheme had the effect of lowering egg supply, which increases prices.

The *Chocolate Confectionary* case further elaborated on *Matsushita*. The Third Circuit Court of Appeals focused on whether there were "plus factors" that push otherwise neutral conduct into anti-competitive conduct. In other words, if the conduct could be equally pro-competitive and anti-competitive, the plaintiff must show something more to prove a conspiracy. These plus factors include "(1) evidence that the defendant had a motive to enter into a price fixing conspiracy; (2) evidence that the defendant acted contrary to its interests; and (3) evidence implying a traditional conspiracy." *Chocolate Confectionary*, 801 F.3d at 398. These factors are all present here. Defendants had a motive to enter into the UEP Certified Program because the alleged scheme would increase profits. They also acted contrary to their profit-maximizing interests by taking actions to decrease egg supply. While the inferences from these facts are disputed by Defendants, the fact that they dispute them does not contradict that a reasonable jury could draw such permissible inferences.

4

The "most important plus factor" of the factors discussed in *Chocolate Confectionary* is "whether there is enough traditional conspiracy evidence to create a reasonable inference" of price-fixing. *Id.* at 401. The plaintiffs demonstrated this plus factor by one simple fact: the UEP Certified Program. All four defendants were in the UEP Program, which mandated a number of actions that were allegedly anticompetitive, such as increasing cage space (and thus decreasing egg supply). Defendants point out that there are other pro-competitive reasons for these rules, and they might well be right. But the mere fact that there is (1) an agreement (2) among competitors to (3) take actions that (4) reduce supply is enough to meet a plus factor required in *Chocolate Confectionary*, and is not a question on which there can be a "substantial ground for difference of opinion." 28 U.S.C. § 1292(b).

### B. Customer Demand

Michael Foods next argues that the Court improperly ignored its reasons for joining the UEP Certified Program, namely that there were customer demands for them to do so. However, the Court did nothing of the sort. The Court carefully considered the argument and found the argument to be unpersuasive. *See* Order at 24. The weight given to this argument is a fact-intensive question, and therefore not a "controlling question of law" ripe for interlocutory appeal. 28 U.S.C. § 1292(b).

### C. Joining the UEP Certified Program

Defendants next argue that the Court held that the UEP Certified Program "in and of itself" constitutes an agreement under Section 1 of the Sherman Act. They posit that the legal sufficiency of such a ruling is a question ripe for interlocutory appeal. *See, e.g.*, Rose Acre Brief at 7. This argument is misplaced because the Court did not hold that such membership constitutes an agreement "in and of itself." The Court held that membership in the program "may

*serve as evidence* available to a reasonable jury for concluding that such an action was a commitment to reduce or limit supply." Order at 22 (emphasis added). There is no reasonable ground for disagreement among jurists that such a program may be *evidence* of concerted action. Given that the defendants' argument overstates the Court's holding, and that Defendants do not dispute that this could be used as *evidence* in a conspiracy, the defendants fail to show that there is a substantial ground for difference of opinion required by § 1292(b).

### D. Good-Faith Exception Under the Capper-Volstead Act

Finally, the defendants argue that there is substantial disagreement over whether there is a good-faith exception under the Capper-Volstead Act. Despite this assertion, Defendants cannot point to a single judicial decision that has embraced such an argument. In fact, the only case Defendants point to rejected the idea. *In re Mushroom Direct Purchaser Antitrust Litig.*, 54 F. Supp. 3d 382, 391 (E.D. Pa. 2014). This Court has already addressed the merits (or lack thereof) of such an argument. Order at 25-27. The lack of any statutory authority for a good faith exception and dearth of judicial authority endorsing such an exception highlights the absence of the substantial disagreement necessary for interlocutory appeal.

### IV. CONCLUSION

For the reasons outlined above, the Court declines to exercise its discretion under 28 U.S.C. § 1292(b), and accordingly denies the defendants' motions for interlocutory appeal.

An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
United States District Judge