# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: PROCESSED EGG PRODUCTS ANTITRUST LITIGATION | : : : : : | MULTIDISTRICT LITIGATION |
| *THIS DOCUMENT APPLIES TO ALL DIRECT PURCHASER ACTIONS* | : : | No. 08-md-2002 |

## **M E M O R A N D U M**

PRATTER, J.                                                                                                                                          NOVEMBER 17, 2017

Much of the ground the Court walks upon here is well-worn, given that this is the latest settlement reached during this case.[1] Direct Purchaser Class Plaintiffs seek final approval of a settlement between Direct Purchaser Class Plaintiffs and Defendant Michael Foods. This is the highest settlement amount thus far in this Multidistrict Litigation, totaling a $75 million payment. On June 26, 2017, the Court granted preliminary approval of the settlement, with an order that objections or requests for exclusion must be mailed by October 9, 2017. *See* June 26, 2017 Order, Doc. No. 1523. On November 6, 2017, the Court held a fairness hearing to address the fairness of the proposed settlement. No objections to the settlement were made at that hearing or filed by the deadline. For the reasons outlined below, the Court finds the settlement fair and approves it.

---

[1] Earlier in this litigation, Direct Purchaser Plaintiffs reached settlements with the Moark Defendants, Sparboe Farms, Inc., Cal-Maine Foods, Inc., National Food Corporation, Midwest Poultry Services, L.P., United Egg Producers, United States Egg Marketers, NuCal Foods, Inc., Hillandale Farms of Pa., Inc., and Hillandale-Gettysburg, L.P. *See In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 249 (E.D. Pa. 2012) (Moark); *In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 278 (E.D. Pa. 2012) (Sparboe); *In re Processed Egg Prod. Antitrust Litig.*, 302 F.R.D. 339 (E.D. Pa. 2014) (Cal-Maine); *In re: Processed Egg Prod. Antitrust Litig.*, No. 08-MD-2002, 2016 WL 3584632, at *1 (E.D. Pa. June 30, 2016) (National Food, Midwest, UEP, USEM, NuCal, Hillandale Farms, and Hillandale-Gettysburg).

## BACKGROUND

Defendants, some of the nation's largest egg producers, including Michael Foods, Inc., allegedly conspired to reduce egg output and thus fix, raise, and maintain or stabilize the prices of shell eggs in the United States for a period of years. Direct Purchaser Plaintiffs allegedly paid higher prices as a result of this conspiracy, and they now seek treble damages, injunctive relief, attorneys' fees, and costs.

After several months of arm's-length negotiations between experienced counsel, fact discovery of over one million documents, and dozens of depositions, the Direct Purchaser Plaintiffs and Michael Foods, Inc. have reached a settlement agreement, Doc No. 1481-2, Ex. A, for which they now seek the Court's final approval.

The Michael Foods settlement agreement defines the settlement class as identical to that which the Court certified on February 2, 2016:

> All individuals and entities that purchased shell eggs from caged birds in the United States directly from Defendants during the class Period from September 24, 2004 through December 31, 2008.
>
> Excluded from the class are the defendants, their co-conspirators, and their respective parents, subsidiaries and affiliates, as well as any government entities. Also excluded from the class are purchasers of "specialty" shell eggs (such as "organic," "certified organic," "free range," "cage free," "nutritionally enhanced," or "vegetarian fed") and purchasers of hatching eggs, which are used by poultry breeders to produce breeder stock or growing stock for laying hens or meat.

Michael Foods, Inc. will pay $75 million in exchange for dismissal of the claims against it. Class members will receive pro-rata distributions from the settlement amount based on each class member's purchases of shell eggs. The agreement also requires Michael Foods to cooperate with Direct Purchaser Plaintiffs' prosecution of the case by authenticating documents. Further,

should a trial occur in this action, Michael Foods must comply with subpoenas to produce up to four witnesses at trial.

In exchange for the settlement amount, the Direct Purchaser Plaintiffs release Michael Foods from any and all claims they raised or could have raised regarding (i) an agreement or understanding among defendant producers; (ii) the reduction or restraint of supply and the reduction or restriction on production capacity; or (iii) the pricing, selling, discounting, marketing, or distributing of shell eggs in the United States or elsewhere up to December 31, 2008.

## DISCUSSION

### I. Legal Standard

Federal Rule of Civil Procedure 23 provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:

(1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
(2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.
(3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.
(4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.
(5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

*Id.* The "[f]actual determinations necessary to make Rule 23 findings must be made by a preponderance of the evidence. In other words, to certify a class the district court must find that

the evidence more likely than not establishes each fact necessary to meet the requirements of Rule 23." *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 257-58 (3d Cir. 2009) (quoting *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3d Cir. 2008)). "The decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 299 (3d Cir. 1998) (quoting *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975)).

The Court previously certified a shell egg litigation class, finding it fully complied with the requirements of Rule 23. *See* Feb. 3, 2016 Order (Doc. No. 1372). Given that the class defined in the proposed Michael Foods settlement agreement is identical to the litigation class approved by the Court, the Court need not make additional Rule 23 findings regarding the class defined in the Michael Foods settlement agreement. *See, e.g., In re Polyurethane Foam Antitrust Litig.*, 135 F. Supp. 3d 679, 684 (N.D. Ohio 2015) (concluding that the settlement classes satisfied Rule 23 because they were nearly identical to a previously-certified litigation class).

The Court further finds that subsection (3) of Rule 23(e) was met when the parties filed their proposed settlement. *See* Doc No. 1481-2, Ex. A. Subsection (5) of Rule 23(e) is not implicated because no objections were filed. Finally, the Court finds that the requirements of the Class Action Fairness Act, which mandates a 90-day notice between notice and final settlement approval, has been met here.[2] *See* 28 U.S.C. § 1715(d). Therefore, all that remains is for the Court to determine if the remaining requirements of Rule 23(e) have been met. This requires the Court to decide if notice was adequate, and if the settlement is fair and reasonable. The Court finds that these requirements have been met.

---

[2] Michael Foods filed a declaration of compliance on February 16, 2017 stating that it had satisfied CAFA's notice requirement as of January 17, 2017.

## II.     Rule 23(e)(1) & (4): Notice is Adequate

"In the class action context, the district court obtains personal jurisdiction over the absentee class members by providing proper notice of the impending class action and providing the absentees with the opportunity to be heard or the opportunity to exclude themselves from the class." *Prudential*, 148 F.3d at 306. Rule 23(e) sets forth two provisions concerning notice to class members.

First, Rule 23(e)(1) requires all members of the class be notified of the terms of any proposed settlement. Fed. R. Civ. P. 23(e).[3] This "notice is designed to summarize the litigation and the settlement" and "to apprise class members of the right and opportunity to inspect the complete settlement documents, papers, and pleadings filed in the litigation." *Prudential*, 148 F.3d at 327 (quoting 2 A. Conte & H. Newberg, *Class Actions* § 8.32 at 8-109 (5th ed. 2011)).

Here, the notice of the Michael Foods settlement met the requirements of Rules 23(c)(2) and 23(e). The notice appropriately detailed the nature of the action, the class claims, the definition of the class and subclasses, the terms of the proposed settlement agreement, class members' right to object or request exclusion from the settlement, and the timing and manner for doing so. The notice also informed class members of their opportunity to be heard at the fairness hearing or to enter an appearance through an attorney, and stated that the settlement would be binding on class members who did not opt out of it.

---

[3] Rule 23(c)(2)(B) also requires that class members be given the best notice practicable under the circumstances, including individual notice to all potential class members identifiable through reasonable effort. This notice is to be given to all potential members of a Rule 23(b)(3) class. *Prudential*, 148 F.3d at 326. Specifically, the Rule provides that such notice "must, in clear, concise and plain language, state: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues or defenses; (iv) the class member's right to enter an appearance by an attorney; (v) the class member's right to be excluded from the class; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of settlement on class members." Fed. R. Civ. P. 23(c)(2)(B). The Court finds that the notice of settlement complied with this requirement as well.

5

Furthermore, the extent of Plaintiffs' efforts to notify potential class members is adequate. The notice was mailed to potential class members individually based upon consumer information provided by Michael Foods, other defendants, and notice from past settlements. *See Larson v. AT&T Mobility LLC*, 687 F.3d 109, 123-24 (3d Cir. 2012) (recognizing that "'individual notice to identifiable class members is not a discretionary consideration to be waived in a particular case. It is, rather, an unambiguous requirement of Rule 23. . . . Accordingly, each class member who can be identified through reasonable effort must be notified. . . .'" (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974))).

In addition, the parties published a notice of the settlement in several appropriate publications, distributed press releases concerning the settlement across relevant news wires, conducted keyword search advertising campaigns, posted banner advertisements, and maintained an active website and toll-free number. This notice far exceeds the minimum required under Rule 23. *See Zimmer Paper Prods., Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 90 (3d Cir. 1985) ("It is well settled that in the usual situation first-class mail and publication in the press fully satisfy the notice requirement of both Fed. R. Civ. P. 23 and the due process clause.").

Second, Rule 23(e)(4) requires that if "the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so." Fed. R. Civ. P. 23(e)(4). The Court finds that this element is satisfied because the notice mailings allowed for objections and exclusions. The notice plan administrator received 224 Michael Foods settlement exclusion requests and 250 litigation class exclusion requests. Garr Decl. ¶ 10.

Accordingly, the Court determines that the notice provided to the putative class members constitutes adequate notice in satisfaction of the demands of Rule 23.

### III. Rule 23(e)(2): The Settlement Is Fair, Reasonable & Adequate

To grant final approval, the Court must conclude that the proposed settlement is fair, reasonable and adequate. Fed. R. Civ. P. 23(e)(2); *Ins. Brokerage*, 579 F.3d at 258. Trial courts are generally afforded broad discretion in determining whether to approve a proposed class action settlement. *Eichenholtz v. Brennan*, 52 F.3d 478, 482 (3d Cir. 1995).

Although no opposition has been filed and no objectors have contested the settlement, the Court has the duty of protecting absentee class members under Rule 23(e). The Court executes this duty by independently "assuring the settlement represents adequate compensation for the release of the class claims." *Prudential*, 148 F.3d at 316-317.[4] Indeed, certain requirements of Rule 23 "demand undiluted, even heightened, attention in the settlement context." *Amchem*, 521 U.S. at 620. "Whether or not there are objectors or opponents to the proposed settlement, the court must make an independent analysis of the settlement terms." David F. Herr, *The Manual for Complex Litigation* § 21.61, 488 (4th ed. 2011). A lack of adversaries at the final approval stage does not bear on whether the settlement negotiations themselves were hard-fought and sufficiently adversarial. The Court must look past the lack of objectors and determine for and by itself whether the settlement negotiations were fair, reasonable and adequate.

---

[4] The *Manual for Complex Litigation* observes that the "task is demanding because the adversariness of litigation is often lost after the agreement to settle." David F. Herr, *The Manual for Complex Litigation* § 21.61, 487 (4th ed. 2011). Indeed, the observation that "'[c]ourts applying [a multifactor] test [ ] often recite the litany and engage in pro forma analyses, but their hearts are not in it,'" could be an equally a propos statement for those parties advancing unopposed motions for final settlement approval. *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 605 n.10 (3d Cir. 2010) (Smith, J. dissenting) (quoting *Jonathan R. Macey & Geoffrey P. Miller, Judicial Review of Class Action Settlements*, 1 J. of Legal Analysis 167, 172 (2009)).

## A. Initial Presumption of Fairness

Based upon the record, the Court concludes that an initial presumption of fairness attaches to this settlement. The Third Circuit Court of Appeals has "directed a district court to apply an initial presumption of fairness when reviewing a proposed settlement where: '(1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'" *In re Warfarin Sodium Antitrust Litigation*, 391 F.3d 516, 535 (3d Cir. 2004) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 232 n.18 (3d Cir. 2001)).

These criteria have been met here. First, the parties engaged in arms-length negotiations for multiple months over the course of three years, once the parties were well into the meat of the litigation, before reaching a settlement. The parties exchanged offers and counteroffers, discussed settlement, and eventually took part in a formal mediation session. This mediation session spurred further negotiations, eventually resulting in the settlement agreement. Second, discovery is largely complete, where the defendants produced more than one million documents. The plaintiffs deposed several key witnesses, including current and former leaders of Defendant United Egg Producers. This discovery informed the settlement agreement reached by the litigants through their experienced counsel. Third, counsel on both sides are experienced not only in class action litigation, but also in similar antitrust litigation. Finally, no member of the purported class objected to the settlement.

Given that the Court finds that the four fundamental factors are sufficiently met, the presumption of fairness applies to the settlement.

## B. Standards for Determining Fairness of Proposed Settlement

The Third Circuit Court of Appeals has set forth nine more factors, known as the *Girsh* factors, to be considered when determining the fairness of a proposed settlement:

> (1) the complexity, expense and likely duration of the litigation;
> (2) the reaction of the class to the settlement;
> (3) the stage of the proceedings and the amount of discovery completed;
> (4) the risks of establishing liability;
> (5) the risks of establishing damages;
> (6) the risks of maintaining the class action through trial;
> (7) the ability of the defendants to withstand a greater judgment;
> (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and
> (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation...

*Girsh*, 521 F.2d at 157 (internal quotations and punctuation marks omitted); *Prudential*, 148 F.3d at 317. "The settling parties bear the burden of providing that the *Girsh* factors weigh in favor of approval of the settlement." *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 350 (3d Cir. 2010) (citing *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995)).

In *Prudential*, the Third Circuit Court of Appeals also identified additional non-exclusive factors for courts to consider for a "thoroughgoing analysis of settlement terms." *Pet Food*, 629 F.3d at 350. Those factors include:

> (1) the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions;
> (2) the development of scientific knowledge;
> (3) the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages;
> (4) the existence and probable outcome of claims by other classes and subclasses;
> (5) the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved – or likely to be achieved – for other claimants;
> (6) whether class or subclass members are accorded the right to opt out of the settlement;

>(7) whether any provision for attorneys' fees are reasonable; and
>(8) whether the procedure for processing individual claims under the settlement is fair and reasonable.

*Prudential*, 148 F.3d at 323.[5] Although the Court must make findings as to the *Girsh* factors to approve a settlement as fair, reasonable, and adequate, the *Prudential* factors are illustrative of additional factors that may be useful for a court to consider.

Thus, the Court is required to make an independent analysis of the settlement to determine whether it is fair, reasonable, and adequate by independently evaluating all of the *Girsh* factors (and the *Prudential* factors, as appropriate), recognizing that the Court cannot substitute the parties' assurances or conclusory statements for the Court's independent analysis of the settlement terms. *Pet Food*, 629 F.3d at 351. Accordingly, the Court "may find it necessary to drill down into the case and into the agreement to make an independent 'scrupulous' analysis of the settlement terms" and affirmatively seek out information to the extent that the parties have either not supplied it or have provided only conclusory statements. *Id.*

### C. Discussion of *Girsh* and *Prudential* Factors

The Court's analysis of the *Girsh* factors, and the *Prudential* factors, as appropriate, leads to the conclusion that the relevant considerations weigh in favor of a finding of the fairness of this proposed agreement under Rule 23(e).

### *1. The Complexity, Expense, and Likely Duration of the Litigation*

The first *Girsh* factor, which evaluates the complexity, expenses, and likely duration of the litigation, "captures the probable costs, in both time and money, of continued litigation." *Warfarin*, 391 F.3d at 536 (citation omitted). The Court appreciates that antitrust suits like this one are often complex, even on the eve of trial as the claims come into sharper focus. *See In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 639 (E.D. Pa. 2003). However, this litigation is

---
[5] The Court of Appeals invites individualized analysis by noting that "[o]ther related factors . . . also may be relevant to this inquiry." *Prudential*, 148 F. 3d at 323 n.73.

nearing its end, and the expense and duration remaining are minimal. Although this factor weighs against settlement, it is only minimally so, and outweighed by the other factors. By the same token, so much has been addressed in the case and so much is known about it—and the industry at issue—that all of this available information helps to inform the Court's assessment and understanding of the proposed settlement. *See also*, III.C.3., *infra*.

### 2. *The Reaction of the Class to the Settlement*

"In an effort to measure the class's own reaction to the settlement's terms directly, courts look to the number and vociferousness of the objectors." *Gen. Motors*, 55 F.3d at 812. The Third Circuit Court of Appeals has recognized the practical conclusion that it is generally appropriate to assume that "silence constitutes tacit consent to the agreement" in the class settlement context. *See Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1313 n.15 (3d Cir. 1993). By using these considerations as a gauge of class reaction to the settlement, the Court determines that the class reaction here favors settlement. Indeed, there were no objections, and thus no negative feedback, to the settlement. As counsel highlighted at oral argument, many of the class members are sophisticated entities with their own in-house counsel, who have the resources and ability to assess the settlement agreement beyond the average layperson or enterprise.

As such, this factor weighs in favor of the proposed settlement's fairness and adequacy. *See Cendant Corp.*, 264 F.3d at 23435 (recognizing that "[t]he vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of the Settlement").

### 3. *The Stage of the Proceedings and the Amount of Discovery Completed*

This *Girsh* factor requires the Court to evaluate whether the plaintiffs have an "adequate appreciation of the merits of the case before negotiating" settlement. *Prudential*, 148 F.3d at 319

(quoting *Gen. Motors*, 55 F.3d at 813). "To ensure that a proposed settlement is the product of informed negotiations, there should be an inquiry into the type and amount of discovery the parties have undertaken." *Id.* This factor weighs heavily in favor of settlement. These parties have been through extensive discovery, which is largely concluded at this point. Not only that, but the Court has ruled on the *Daubert* motions and the only remaining questions on admissibility of evidence are the upcoming motions *in limine*. It is hard to imagine a situation where parties have a better grasp of the depth of the claims. Likewise, the Court benefits from the late-stage status of the case.

### 4. *Risks of Establishing Liability and Damages, and of Maintaining the Class Action Through Trial*

These three *Girsh* factors concern the risks of establishing liability and damages, as well as risks of maintaining a class action through trial. The factors require the Court to "survey the potential risks and rewards of proceeding to litigation in order to weigh the likelihood of success against the benefits of an immediate settlement." *Warfarin*, 391 F.3d at 537. The inquiry requires balancing "the likelihood of success and the potential damage award if the case were taken to trial against the benefits of immediate settlement." *Prudential*, 148 F.3d at 319. That is, the Court assesses the risks of establishing liability to "examine what the potential rewards (or downside) of litigation might have been had class counsel decided to litigate the claims rather than settle them." *Gen. Motors*, 55 F.3d at 814. The inquiry into establishing damages "attempts to measure the expected value of litigating the action rather than settling it at the current time." *Id.* at 816.

The record demonstrates that counsel have significant experience in antitrust cases such as this one which should enable them to appreciate the strengths and weakness of the case and the risks of maintaining the action through trial. Antitrust class action litigation is also complex and inherently rife with risk and unpredictability. The Court finds that this suit presents no

exception. As all experienced litigators and jurists know, when it comes to a jury trial, nothing is certain—except the risk of uncertainty.

Even assuming the plaintiffs could establish their theory of an overarching conspiracy at trial, their success in establishing liability and damages as to individual defendants like Michael Foods is by no means assured. The cooperation of Moark, Sparboe and Cal-Maine is likewise no guarantee to success in proving liability and damages in this complex litigation, and the plaintiffs still must show that the defendants individually agreed to join the alleged conspiracy. Both sides are beating the drums for trial, and a settlement at this stage of the proceedings is fraught with uncertainty as a jury nears. Because the plaintiffs would face genuine risks and uncertainties in establishing liability and damages against Michael Foods, these factors weigh in favor of settlement.

### 5. *The Ability of the Defendant to Withstand a Greater Judgment*

This factor "is concerned with whether the defendants could withstand a judgment for an amount significantly greater than the Settlement." *Cendant*, 264 F.3d at 240. Thus, the Court must consider here whether Michael Foods could withstand a judgment for an amount significantly greater than $75 million and the costs associated with the proposed cooperation.

Both sides agree that Michael Foods could withstand a greater judgment, so this factor weighs minimally against settlement. However, both sides also agree, as does the Court, that this was a hard-fought settlement from both sides. A settlement, by its nature, is a compromise. Class action settlements would be rare if courts required defendants to pay the maximum amount they could withstand. That Michael Foods "could afford to pay more does not mean that it is obligated to pay any more than what the [plaintiffs] are entitled to under the theories of liability that existed at the time the settlement was reached." *Warfarin*, 391 F.3d at 538.

This factor is most heavily weighted in circumstances where the parties argue that the defendant's ability to pay was a ceiling on a settlement that would otherwise be higher. In circumstances such as these, where the settlement is otherwise fair, reasonable and adequate, a defendant's ability to withstand a greater judgment need not defeat final approval. *See Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 323 (3d Cir. 2011) ("[I]n any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and, against the weight of the remaining factors, this fact alone does not undermine the reasonableness of the instant settlement." (quoting *Weber v. Gov't Emp. Ins. Co.*, 262 F.R.D. 431, 447 (D.N.J. 2009))). This factor, although important, is but one factor of many in the determination of a fair settlement amount.

Accordingly, the Court finds that although this factor does not weigh in favor of approval, it does not warrant rejection of the settlement.

### 6. *The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation*

"The last two *Girsh* factors ask whether the settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case went to trial." *Prudential*, 148 F.3d at 322. In other words, the Court evaluates "whether the settlement represents a good value for a weak case or a poor value for a strong case. The factors test two sides of the same coin: reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." *Warfarin*, 391 F.3d at 538 (citing *Prudential*, 148 F.3d at 322). "The reasonableness of a proposed settlement depends in part upon a comparison of the present value of the damages the plaintiffs would recover if successful, discounted by the risks of not prevailing." *Boone v. City of Phila.*, 668 F. Supp. 2d 693, 712 (E.D. Pa. 2009) (citing

*General Motors*, 55 F.3d at 806). [6] There are clear attendant risks to litigation here, because the plaintiffs seek billions of dollars of recovery, and have vigorously disputed the defense expert witnesses regarding damages.

Moreover, this is the largest settlement to date ($75 million) at nearly three times the next-highest settlement ($28 million). This fact alone weighs heavily in favor of fairness to class members. Not only that, but the Court must evaluate the settlement in light of monetary and nonmonetary considerations. "Settlements involving nonmonetary provisions for class members . . . deserve careful scrutiny to ensure that these provisions have actual value to the class," which can be accomplished through a Rule 23(e) analysis. Fed. R. Civ. P. 23(h) advisory committee's note to 2003 amendment. "Despite the difficulties they pose to measurement, nonpecuniary benefits . . . may support a settlement." *Bolger*, 2 F.3d at 1311.

Given that this settlement is structured to provide both monetary and nonmonetary consideration, it is difficult to determine accurately the actual total value of the proposed settlement, but it is certainly above the $75 million payment. The Court determines that the $75 million monetary relief in conjunction with the additional, valuable consideration of Michael Foods' agreement to cooperate with the plaintiffs at trial is reasonable both in light of the best possible recovery against Michael Foods and in light of the risks the parties would face if the case went to trial. Calculating the best possible recovery against Michael Foods for the class in the aggregate is speculative at this point in time given the previously-discussed risks of establishing liability and damages associated with this complex litigation, even when considering

---

[6] The Third Circuit Court of Appeals expects that "settling parties should provide[] information to determine the range of reasonableness of the [settlement] allocation 'in light of the best possible recovery,' and 'in light of all the attendant risks of litigation.'" *Pet Food*, 629 F.3d at 354 (citations omitted). The Court further explains that "'[t]his figure should generate a range of reasonableness (based on size of the proposed award and the uncertainty inherent in these estimates) within which a district court approving (or rejecting) a settlement will not be set aside.' Precise value determinations are not required." *Id.*

that treble damages are technically available for recovery under the plaintiffs' Sherman Act claim.

Given the substantial monetary award, the Court is persuaded that the settlement confers real and substantial benefits upon the class. The Court concludes that the settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case went to trial. The *Girsh* factors, therefore, weigh in favor of approval of the settlement.

### 7. Prudential *Factors*

The relevant *Prudential* factors weigh in favor of approving the settlement as well. First, the Court has already addressed the impact of several factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages. Second, the settlement achieved here provides the class with an immediate and concrete award, larger than any other yet achieved in this litigation. Third, the settlement agreement allows putative class members the right to opt out of the settlement. This right to opt out was noted explicitly in the notice sent to the class members and distributed through various media. Indeed, some parties exercised this right by filing requests for exclusion.

Fourth, all segments of the class are being treated equally relative to the monetary relief under the settlement. The distribution of the settlement amount, after administrative costs, expenses and counsel fees, is a *pro rata* share proportionate to the dollar amount of a class member's direct purchases in the United States during the period designated in the agreement.

The settlement sets forth a method for calculating the distribution for recovery by class members based upon *pro rata* allocations, which conforms to a common formula used in class actions:

> [A] common formula in class actions for damages is to distribute the net settlement fund after payment of counsel fees and expenses, ratably among class

16

> claimants according to the amount of their recognized transactions during the relevant time period. A typical requirement is for recognized loss to be established by the filing of proofs of claim, or statements of intention to prove claims, based on a specified value of transactions involved. . . . [I]n antitrust class actions, a proof of claim form may be utilized in disseminating the settlement proceeds among class members.

*Newberg*, supra, § 12.35.

Fifth, the settlement is silent as to the attorney fees in this case. As a general matter, that the parties have agreed the attorneys' fees and costs may be awarded from the settlement amount would not weigh against approving the settlement. *Cf.* Newberg, *supra*, § 12:3 ("The defendants in a class action settlement may properly agree to pay the plaintiffs' attorneys' fees and expenses . . . . Such an agreement may take the form of an agreement to pay reasonable fees, to be subsequently determined by the court . . ."). The Court will address the fairness of those fees in a separate order, but because this settlement and the attorney fees motions are bifurcated, the request for attorney fees does not bear on the fairness of the settlement. This *Prudential* factor requires analysis of the *settlement agreement* terms regarding attorney fees. Here, it simply allows for them, which the Court finds reasonable.

### 8. Summary of Girsh and Prudential Factors

Upon considering the Michael Foods settlement agreement in light of all of the *Girsh* and the relevant *Prudential* factors, the Court is satisfied that the settlement is fair, reasonable, and adequate. As discussed, a few of the factors are neutral or weigh against settlement approval. However, all of the factors considered in determining the fairness of a settlement "are a guide; an unfavorable conclusion regarding one or more factors does not automatically render the settlement unfair." 2 Joseph M. McLaughlin, *McLaughlin on Class Actions: Law and Practice* § 6:8 (6th ed. 2010); *see also Ehrheart v. Verizon Wireless*, 609 F.3d 590, 605 (3d Cir. 2010) (Smith, J. dissenting) (quoting same). Accordingly, not every factor need weigh in favor of

17

settlement for the settlement to be approved by the Court. *See Cendant*, 264 F.3d at 242-43 (affirming a final settlement approval when not all factors weighed in favor of approval). Because, on balance, the factors as considered above weigh in favor of settlement, the Court concludes that approval of the settlement is appropriate pursuant to Fed. R. Civ. P. 23.

## CONCLUSION

For the foregoing reasons, the Court determines that the proposed settlement meets the requirements of Rule 23 and concludes that the proposed settlement agreement is fair, reasonable, and adequate. Accordingly, the Court grants Plaintiffs' motion for final approval of the class action settlement with Defendant Michael Foods.

An order consistent with this memorandum follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE