IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: PROCESSED EGG PRODUCTS ANTITRUST LITIGATION | : MULTIDISTRICT<br>: LITIGATION<br>:<br>: |
| *THIS DOCUMENT APPLIES TO:*<br>ALL DIRECT PURCHASER ACTIONS | : No. 08-md-2002<br>: |

**MEMORANDUM**

PRATTER, J.                                                                                              FEBRUARY 9, 2018

INTRODUCTION

Seventeen months after this Court held that the United Egg Producers Certified Program was *not* an antitrust violation *per se*, the Direct Purchaser Plaintiffs ask the Court to rule that the same program *is* a *per se* antitrust violation. Sidestepping the merits question, which this Court resolved in 2016, these plaintiffs assert that the defendants waived their ability to challenge the *per se* rule by not filing a summary judgment motion to preclude application of the *per se* rule. In effect, they try to use summary judgment as a shield against any arguments that were not brought then. They assert this without citing to a single case, rule, or order from this Court requiring such a "confirmation" at a given point in antitrust pleading or pretrial procedure. In fact, case law is to the contrary: this rule of reason or *per se* decision could be made up until the time of presenting jury instructions. *Larry v. Muko, Inc.*, 609 F.2d 1368, 1376 (3d Cir. 1979).

Given that the Court has already determined that the rule of reason applies to this Certified Program, *In re Processed Egg Products Antitrust Litig.*, 206 F. Supp. 3d 1033 (E.D. Pa. 2016), the Court declines to deviate from that ruling and denies the motion to "confirm." The

1

Court also denies the request for additional expert testimony, because the plaintiffs have shown no cause as to why they should be allowed to re-open discovery and related pretrial procedures two years after that phase of the litigation was concluded.

## BACKGROUND

The defendants in this case are accused of a multi-year, multi-faceted price-fixing scheme to decrease the supply of eggs and drive up prices. Central to the claim of price fixing (and at issue in this motion) is the United Egg Producers (UEP) Certified Program. This program issued certifications to egg producers if those producers complied with the UEP's animal husbandry guidelines. The plaintiffs claim that these guidelines depressed egg supply by, among other things, increasing cage space per chicken.[1]

In 2016, the Court ruled on summary judgments between and among certain defendants, the Direct Action Plaintiffs (DAPs) and the Indirect Purchaser Plaintiffs (IPPs). This ruling did not directly or expressly apply to the Direct Purchaser Plaintiffs (DPPs) at issue in this motion. In that ruling, the Court held that the UEP Certified Program must be analyzed under the standard antitrust rule of reason, not as a *per se* antitrust violation.

In the matter immediately before the Court, both sides claim that they interpreted that 2016 ruling in their favor. The DPPs claim that because the defendants never filed a summary judgment motion to *preclude* the *per se* rule against the DPPs specifically, this constitutes a waiver of any challenge to it now. They then argue for even more: that this waiver mandates the use of the *per se* rule here. The defendants counter that the DPPs "had their chance," so to speak, when they were involved in the previous ruling by submitting a 2015 post-hearing brief on the

---

[1] A more detailed discussion of the relevant portions of the UEP Certified Program is explained in this Court's summary judgment ruling addressing the same issue. *See In re Processed Egg Products Antitrust Litig.*, 206 F. Supp. 3d 1033 (E.D. Pa. 2016).

issue. They argue that this means that the 2016 ruling applying the rule of reason must apply to the DPPs as well. Neither side discusses the merits of the question.

The DPPs filed this "motion to confirm" after receiving notice that the defendants were planning to proceed under the rule of reason. They request application of the *per se* rule or, in the alternative, re-opening discovery and allowing new expert witness reports and depositions.

## DISCUSSION

While the parties have tried to clear two waiver-based paths, the Court declines to go down either. Neither side has waived any argument, given that these decisions can be decided as late as the jury instructions. *See Larry v. Muko, supra.* Even so, the Court must observe that the merits of the issue have already been decided. The question presented by this "motion to confirm" is the exact same question the Court decided nearly 18 months ago, and the Court will not deviate from that past opinion. Nor will the Court reopen discovery now, only three months before trial, given that the moving plaintiffs have not demonstrated good cause to do so.

### I. Waiver Arguments

The DPPs do not point to any outside rule, case or order to support their waiver argument. Rather, they point to past statements by the defendants' counsel throughout this decade-long case. For example, in 2017, counsel for a defendant said they "have been operating with the understanding that our case is still a *per se* case."[2] Over the last 10 years, this case has had over 1,500 docket entries and innumerable hearings. Finding statements like these is not unlike "looking over a crowd and picking out your friends." Stephen Breyer, *On the Uses of Legislative History in Interpreting Statutes*, 65 S. CAL. L. REV. 845, 846 (1992) (discussing

---

[2] The defendants assert here that this prior comment was made by a different defendant (not one remaining in this case) and was made in reference to the DPPs' *theory* of the case.

3

Judge Leventhal's characterization of the selective nature of legislative history). Throughout this decade of litigation, the Court is quite certain that both sides can pluck snippets or full sentences from oral argument that sound as if they undercut positions they now take, but that does not inexorably constitute estoppel to pursue certain arguments later. More information is necessary. The defendants rightly point out that all of the statements need to be taken in context, and the DPPs do not point to a single written statement in a brief from the defendants conceding the issue here.

The DPPs point to the defendants' failure to file a summary judgment motion as support for their argument. Their argument appears to be an aggressive variant of the "adoptive admission" doctrine in the Federal Rules of Evidence. FED R. EV. 801(d)(2)(B). There, silence in the face of an accusation is admissible because a person would normally dispute a charge of malfeasance. But, in the absence of a clear "speak now or forever hold your peace" directive from the Court via case management directives or some equivalent requirement, the attempted use of summary judgment in this manner by the plaintiffs is troublesome. Summary judgment is intended as a sword to dispose of meritless claims. The defendants here let the sword rust in its scabbard, and the DPPs interpret this decision as an affirmative waiver of any use at a later date. This cannot be so. For example, a defendant could reasonably believe that, while they would prevail at trial, the nature of the claims do not justify the expense or delay of a summary judgment motion. That reasoned decision could not possibly constitute a waiver to challenge those claims at trial, or it would turn summary judgment from a pre-trial tool into a pre-trial necessity. Therefore, the defendants' indecision to bring a summary judgment motion does not constitute a waiver of their argument in favor of the rule of reason.

Conversely, the defendants argue that the DPPs filed briefing in 2015 regarding this question, which estops them from arguing in favor of the *per se* rule now. The DPPs submitted what they described as a "post-hearing submission on the question of whether the *per se* standard applies in this case." Such a submission made sense for the DPPs at the time. As a practical matter, the ruling in the DAP and IPP cases would apply to the DPPs with equal force, which may have been why they submitted their additional brief even though they were not formally involved in that summary judgment motion. Ultimately, the *holding* did not expressly, or actually, as a technical matter, apply to the DPPs because they were not parties to the motion, so their post-hearing submission does not estop them from arguing against it now.

The Court finds that there was no waiver of the *per se* or rule of reason argument by either party. This non-waiver holding (unlike the merits holding to follow) encompasses more than just the UEP Certified Program. The Court finds no prior waiver of any *per se* or rule of reason challenges to any components of the alleged scheme by the DPPs or the defendants here. However, both parties have requested that the Court determine (or re-determine, or re-confirm, as may be the preferred posture) the same question it determined in 2016, so the Court will proceed to the merits of the UEP Certified Program.

## II.    Rule of Reason Application to UEP Certified Program

To establish an actionable antitrust violation, a plaintiff must show (1) concerted action by the defendants, (2) that this concerted action resulted in a restraint on trade and (3) that this restraint was unreasonable. 15 U.S.C. § 1; *Santana Prod., Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 131 (3d Cir. 2005). Because every agreement among competitors will inevitably restrain trade in some manner, the Supreme Court has read into the Sherman Act a

5

"reasonableness requirement." *White Motor Co. v. United States*, 372 U.S. 253, 261–62 (1963) (citing *Bd. of Trade of City of Chicago v. United States*, 246 U.S. 231, 238 (1918)).

The rule of reason is the "usual standard" to determine if challenged conduct unreasonably restrains trade. *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 315 (3d Cir. 2010) (citing *Leegin Creative Leather Products, Inc. v. PSKS, Inc.*, 551 U.S. 877, 882 (2007)); *In re Processed Egg Products Antitrust Litig.*, 206 F. Supp. 3d 1033 (E.D. Pa. 2016). But some actions are *per se* antitrust violations. The *per se* rule is appropriate only in instances where "the business practice in question is one, which on its face, has no purpose except stifling of competition." *Eichorn v. AT&T Corp.*, 248 F.3d 131, 143 (3d Cir. 2001), *as amended* (June 12, 2001) (citing *White Motor Co. v. United States*, 372 U.S. 253, 262 (1963)).

In this motion, the Court only evaluates whether the UEP Certified Program—one component of the allegations against the defendants—is *per se* unlawful.[3] "Evaluating the legality of the individual business practices making up the alleged conspiracy is entirely consistent with the Supreme Court's directive that use of the *per se* analysis should be sparing and deliberate." *In re Processed Egg Products Antitrust Litig.*, 206 F. Supp. 3d 1033, 1043 (E.D. Pa. 2016). The Court finds here, just as in the DAP and IPP cases, that the UEP Certified Program must be evaluated under the rule of reason rubric.

This Court conducted a lengthy analysis of the UEP Certified Program in September 2016 that it will not repeat here. *See In re Processed Egg Products Antitrust Litig.*, 206 F. Supp.

---

[3] While the DPPs ask to "confirm" that *all* components of the alleged scheme fall under the *per se* rule, the only issue that both parties ask the Court to determine is the standard for the UEP Certified Program. Given the DPPs' focus on waiver-based arguments, if the parties wish the Court to rule on the merits of other components, the Court requires a separate and specific motion with briefing on the merits of those issues, and the issues must be individually articulated.

3d 1033 (E.D. Pa. 2016). In that opinion, this Court held that the UEP Certified Program must be analyzed under the rule of reason. That program is the *exact same program* at issue here. While the dispute there involved different plaintiffs and defendants, the moving plaintiffs here submitted post-hearing briefing addressing the applicability of the *per se* rule making the same legal arguments. The DPPs have pointed to no reason why the actions at issue here were any different. Therefore, the Court will not deviate from that prior ruling merely because the parties to this case are different. The duplicative facts—indeed, the very same facts analyzed in that ruling—"renders it necessary and appropriate to evaluate the plaintiffs' claims under the rule of reason." *Egg Products*, 206 F. Supp. 3d at 1047.

### III.     Request to Reopen Discovery

Alternatively, the DPPs ask that, should the Court not find the *per se* rule applicable, they be allowed to re-open discovery for new expert testimony.[4] To take the possible sting out of their proposed new expert arsenal, the DPPs assure the Court and their opponents that they are indeed "ready to go" with the new material and can share it with the defendants very quickly. The DPPs claim they will be prejudiced if they are not permitted to pursue this course because they have built their entire litigation strategy around the applicability of the *per se* rule to all of their claims. The defendants counter that the DPPs were always on notice of the rule of reason, are feigning surprise, and trying to change their strategy on the eve of trial. The defendants also

---

[4] This request is specifically to allow the DPPs to "(a) submit the opinions of an animal welfare expert who could respond to Defendants' assertions about the purported animal welfare purposes of the UEP Certified Program, and (b) submit a short supplemental expert report by Dr. Rausser, DPPs [sic] economic expert, disaggregating damages among the principle categories of conduct within the alleged conspiracy to limit the supply of eggs." Mot. at 7.

7

claim they will be prejudiced by having to consider and depose new experts at this late stage of the litigation.

The DPPs' claim of surprise is curious. During the summary judgment briefing in 2015, the DPPs submitted briefing on this issue, presumably because the facts in that holding would have a direct effect on them. As this Court noted in a footnote to that earlier opinion, "the Direct Purchaser Plaintiffs were allowed to submit post hearing briefing addressing the arguments regarding the applicability of the *per se* rule. The arguments raised are essentially the same as those put forward by the other plaintiffs groups—namely that the subjective purpose of the conspiracy was to reduce supply and that supply reduction conspiracies are *per se* unlawful. Consequently, the Court need not separately address them." *Egg Products*, 206 F. Supp. at 1047 n.5. Doubtless, the DPPs were on notice of the prior ruling, and went so far as to brief the Court using the same arguments that this Court ultimately rejected.

Even if the DPPs were not involved in that earlier summary judgment motion, expert selection happened before the summary judgment ruling addressing the *per se* question. During expert selection, it was an open question whether the *per se* rule or the rule of reason would apply. Even then, the DPPs chose not to call an animal welfare expert or ask Dr. Rausser to disaggregate damages among the categories of conduct. This was a strategic choice by an experienced team of lawyers. The Court has discussed how admirably the professionals engaged by and for all sides have performed throughout this litigation, and the Court assumes no differently regarding this strategic decision.

The DPPs have only pointed to their own assumption, against the weight of the reasonable evidence to the contrary, that this was a *per se* case. Such an assumption cannot be

8

grounds to re-open discovery at this late stage of the proceedings. This request is therefore also denied.

## CONCLUSION

For the foregoing reasons, the UEP Certified Program must be evaluated under the rule of reason, and leave for additional expert discovery is denied. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE