# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: PROCESSED EGG PRODUCTS ANTITRUST LITIGATION | : : : : : | MULTIDISTRICT LITIGATION |
| *THIS DOCUMENT APPLIES TO:* ALL DIRECT PURCHASER ACTIONS | : : : | No. 08-md-2002 |

# **M E M O R A N D U M**

PRATTER, J.                                                                                                                                  APRIL 5, 2018

In preparation for the impending trial with the Direct Purchaser Class Plaintiffs and the remaining defendants, the parties altogether filed 21 motions *in limine*. The Court has ruled on 15 of those motions. This memorandum opinion addresses three of the remaining motions.

The first motion (Doc. No. 1589) poses the plaintiffs' argument to bar the defendants' reliance on legal theories that were excluded in the course of the summary judgment rulings. Although the defendants make several novel arguments in an attempt to re-visit the summary judgment rulings, the Court finds that these arguments were waived and do not belong in the trial going forward.

The plaintiffs' second motion (Doc. No. 1592) seeks to preclude the defendants from arguing that their participation in the alleged price-fixing agreement was limited, claiming such arguments are irrelevant under bedrock conspiracy law. Although limited conspiracy participation is irrelevant to determine liability for conspiratorial acts, it is relevant here insofar as it can show whether the parties ever joined the conspiracy in the first place, or perhaps, whether (and when) someone has withdrawn from a conspiracy. Therefore, the Court finds such information, and appropriate arguments based on such information, admissible and tenable.

Finally, the third motion (Doc. No. 1597) seeks to preclude Dr. Rausser, the plaintiffs' expert economist, from discussing animal welfare standards, arguing that such standards fall outside his area of expertise. Such information is admissible, but only as limited by Federal Rule of Evidence 703. Dr. Rausser may discuss animal welfare standards, but only in the context of having arguably considered them to reach his conclusions as an economist. He may not discuss such standards as if he were an animal welfare expert. This motion is therefore denied, but the plaintiffs are reminded of the strictures of Federal Rule of Evidence 703.

## BACKGROUND

The defendants in this case are accused of a multi-year, multi-faceted price-fixing scheme to decrease the supply of eggs and drive up prices. The Direct Purchaser Class Plaintiffs (DPPs) allege that beginning in the early 2000s, the defendants conspired to reduce the domestic supply of shell eggs (thereby increasing egg prices) under the auspices of two industry groups, the United Egg Producers (UEP) and the United States Egg Marketers.

The centerpiece of the scheme is the UEP Animal Care Certified Program. Under the Certified Program, the UEP issued certifications to producers if those producers complied with certain animal husbandry guidelines adopted by the UEP. According to the plaintiffs, these guidelines depressed egg supply by, among other things, establishing a minimum cage space allowance per bird in the defendants' facilities, which reduced flock size.[1]

---

[1] A more detailed discussion of the relevant portions of the UEP Certified Program can be found in this Court's summary judgment ruling addressing the same issue. *See In re Processed Egg Products Antitrust Litig.*, 206 F. Supp. 3d 1033 (E.D. Pa. 2016).

## DISCUSSION

I. **Motion to Exclude Testimony of Belief of Immunity under Capper-Volstead or Similar Laws**

"Persons engaged in the production of agricultural products" are immune from antitrust liability. 7 U.S.C. § 291. By definition then, an agricultural cooperative that includes non-producers is *not* immune under Capper-Volstead, and is subject to liability under the Sherman Act. In September 2016, the Court ruled that the UEP could not claim Capper-Volstead protection because it contained one non-producer: Sauder. The presence of Sauder "prevents the cooperative from claiming Capper-Volstead protection." *In re: Processed Egg Products Antitrust Litig.*, 2016 WL 4922706 at *6 (E.D. Pa. Sep. 13, 2016). The Court's ruling in this regard rested on this one issue.

The DPPs seek to preclude any testimony regarding immunity under the Capper-Volstead Act as irrelevant in the wake of the summary judgment ruling. The defendants concede that they will not argue against anything antithetical to the summary judgment ruling,[2] but argue that pre-2004 Capper-Volstead protection is an open issue for trial. The defendants now point to the fact that Sauder did not join the UEP until 2004, and Sauder's participation in the UEP was the sole reason for granting summary judgment on this issue. In essence then, this motion *in limine* asks the Court to determine if pre-2004 Capper-Volstead protection is still an open question for trial. The Court holds that it is not. The defendants' argument, although innovative, was waived at summary judgment.

In briefing on the summary judgment motion, the DPPs asked the Court to grant summary judgment on any affirmative defense the defendants may bring claiming Capper-

---

[2] The DPPs also seek to preclude the defendants from asserting a good-faith belief that their actions were insulated from liability. Given that the defendants agree they will not argue a good-faith belief or contest the summary judgment ruling during the upcoming trial, the Court grants this portion of the motion as unopposed.

Volstead protection. Despite this temporal argument being available, the defendants only argued that "Sauder simply does not fit" into the category of non-producers. Opp. to Affirmative Defenses Summary Judgment at 31 (Doc. No. 1259). That summary judgment argument relied exclusively on the functional aspects of Sauder's business, arguing that Sauder had "intimate involvement in the egg production process." *Id*.

The argument here (which was available at summary judgment) is wholly different. The defendants focus here on the *relationship* between Sauder and the UEP, arguing that Capper-Volstead immunity hinges on the time when Sauder officially joined the UEP, regardless of its producer or non-producer status. At the summary judgment stage, no party discussed the relationship (temporally or otherwise) between Sauder and the UEP as a basis for Capper-Volstead immunity. Even after the Court's grant of summary judgment, the defendants did not move the Court to reconsider or clarify its ruling. Therefore, the defendants cannot raise this novel argument now as an end-run around the summary judgment deadline. The Court declines to reconsider its ruling at summary judgment, and grants the motion to exclude the evidence of Capper-Volstead Immunity, even for pre-2004 involvement, finding that the defendants waived this type of temporal challenge at summary judgment.

The defendants finally argue that, even if the lack of Capper-Volstead immunity is well-settled, reference to the Capper-Volstead Act should not be categorically prohibited. They point to hundreds of documents that are otherwise admissible but mention Capper-Volstead. The Court agrees. The Court only holds here that these documents are inadmissible if used to affirmatively argue that the defendants are immune or that they are entitled to a good-faith Capper-Volstead defense. These documents may be admissible for other purposes. To the extent these documents do present an evidentiary issue, the parties may offer or object to them on a case-by-case basis at

trial. The Court encourages counsel to confer with each other as to the language they propose that the Court use to explain to the jury references in various exhibits to Capper-Volstead.

## II. Motion to Preclude Parties From Arguing Limited Conspiracy Participation

The DPPs next request that the defendants be barred from arguing that their participation in the conspiracy was limited. The DPPs point to hornbook conspiracy law: that all defendants are jointly and severally liable for the conspiracy, no matter the extent of their participation. The defendants agree with the central premise of conspiracy liability, but argue that the limited nature of their involvement is nonetheless relevant to show whether they were ever part of a conspiracy in the first place. The Court agrees with the defendants, and finds that evidence of their limited role in the conspiracy is relevant for the liability phase of the trial. However, the Court reserves its ruling on the damages phase until completion of the liability phase of the trial. The DPPs may renew this argument prior to the damages phase for consideration in that phase of the trial.

### A. Conspiracy Participation

The crux of the DPPs argument is that parties who join conspiracies late are still liable for the harms that flow from that conspiracy, so the defendants are liable for the entirety of the conspiracy as a matter of law. For example, if a group plans to rob a bank, and someone joins simply to drive the getaway car, all members are liable for all crimes that occur in furtherance of the bank robbery. Therefore, argue the DPPs, any evidence about any one defendant's limited participation in the conspiracy is irrelevant.

But the defendants explain that they offer such evidence for a different purpose. They want to use their limited involvement to show that they were never actually members of the conspiracy. The defendants argue that they were simply undertaking legal activities that may have been swept up in a conspiracy. Consider the bank robbery example, above. If the robbers boarded a bus to flee the bank, a jury could find that (a) the bus driver was part of the conspiracy

as the getaway driver or (b) the bus driver was simply driving his or her route. Both are possible conclusions, but the bus driver's defense could be that his or her minimal involvement constitutes evidence he or she was never part of the conspiracy to begin with. Given that this evidence "has [a] tendency to make a fact more or less probable" and is a fact "of consequence in determining the action," FED. R. EVID. 401, the Court finds that this evidence is relevant if the defendants offer it to show they were not part of the conspiracy.

Moreover, the Court already held at summary judgment that it would "not address the evidence related to the defendants' participation, or lack thereof, in the coordinated short-term supply reduction program and the export program. By declining to address the evidence relating to those issues," the Court has explained, "the Court in no way suggests that the parties will be precluded from presenting such evidence, pro and con, at trial." *In re: Processed Egg Products Antitrust Litig.*, 2016 WL 5539592 at *1, n.1 (E.D. Pa. Sep. 28, 2016). The Court held in the same summary judgment opinion that, although the parties need not participate in every aspect of a conspiracy, such evidence should be considered by a jury. Evidence of limited conspiracy participation "does not, as a matter of law, preclude a reasonable jury from concluding that [the defendants] participated in a conspiracy to restrain trade." *Id*. at *14. In other words, the Court held that this is a viable line of argument for trial. The same remains true today.

### B. Damages Phase

However, the Court recognizes that the relevance of this information may be different during the damages phase, if the jury finds liability. Then, the defendants' argument (that their limited participation shows they were not part of the conspiracy) may carry little, if any, weight. Given this difference, the Court declines to rule on the motion as it pertains to the damages

phase. The parties may renew objections or arguments regarding this issue after the liability phase of the trial.

### III. Motion to Preclude Dr. Rausser from Discussing Animal Welfare

The defendants move here to preclude Dr. Rausser from testifying to animal welfare and animal husbandry issues at trial, claiming that this information is outside his area of expertise. They invoke a line from the Court's *Daubert* order that allowed the defendants to raise this very issue at trial, should Dr. Rausser stray beyond the area of his expertise.[3] The Court has already held that "Dr. Rausser is not qualified to opine as to animal welfare issues and that, taken out of context, the statements in his report do tend to sound as though he is attempting to offer opinions on that topic. In context, however, it is less clear that his intent is to opine outside his area of expertise." August 16, 2016 Order at n.1. Therefore, as the Court has already ruled, Dr. Rausser cannot discuss animal welfare issues, unless they are used within the bounds of his expertise. He is not an animal welfare expert and will not be permitted to appear as an animal welfare expert in economist's clothing.

There are myriad ways in which Dr. Rausser can discuss animal welfare in relation to his economic models, and the Court declines to categorically prohibit Dr. Rausser from mentioning animal welfare. However, such references must be circumscribed by Federal Rule of Evidence 703. If "experts in the particular field would reasonably rely on [certain] kinds of facts or data in forming an opinion on the subject, [the underlying facts] need not be admissible for the opinion to be admitted." FED. R. EVID. 703. If the "facts or data would otherwise be inadmissible," as they are here, "the proponent of the opinion may disclose them to the jury only if their probative

---

[3] The DPPs counter that the Court has ruled on this exact issue, quoting the following line from a previous order: "Dr. Rausser is not attempting to opine on animal welfare issues. . . ." However, the DPPs failed to include the first half of that sentence, where the Court explains that the statement to follow is an argument made by the DPPs. In that order, the Court explicitly noted that it agreed with the defendants' arguments, not the DPPs. Thus, the DPPs' attempted, perhaps inadvertent, slight of hand is unavailing.

value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." *Id*. This rule allows Dr. Rausser to discuss these facts even if they are inadmissible, so long as they are (1) used to form his opinion on the subject, and (2) substantially more probative than prejudicial.

As to the first of these requirements, the Court finds that these animal welfare statements are used to help form Dr. Rausser's opinion. He relies on this animal welfare information to form his conclusion of whether the actions at issue were in keeping with economic self-interest. However, the second requirement is more problematic. It is impossible to know before trial if these facts are substantially more probative than prejudicial because the question is inherently context-dependent. For example, it would be impermissible to ask Dr. Rausser substantive questions that only animal welfare experts could answer. However, it *would* be permissible for him to simply state that he accounted for published animal welfare standards in coming to his economic conclusions. The actual bounds of his animal welfare reference(s) lie somewhere in the middle.

Therefore, the Court declines to categorically bar Dr. Rausser's testimony regarding animal welfare, but will allow parties to raise objections to this issue at trial, should Dr. Rausser stray too far from his area of expertise.

## CONCLUSION

For the foregoing reasons, the motions *in limine* are variously granted or denied as outlined above. An appropriate order follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE