IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: PROCESSED EGG PRODUCTS ANTITRUST LITIGATION | ) ) ) ) ) ) ) ) ) | MDL NO. 2002<br>08-md-2002<br><br>Judge Gene Pratter |
| THIS DOCUMENT RELATES TO:<br>All Actions | ) ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT OHIO FRESH
EGGS, LLC'S MOTION FOR JUDGMENT AS A MATTER OF LAW
AND MOTION TO STRIKE AND/OR RECONSIDER THE ADMISSIBILITY
UNDER FRE 801(D)(2)(E) OF PLAINTIFFS' EXHIBIT 15**

**I.     INTRODUCTION**

Plaintiffs have brought an antitrust claim under Section 1 of the Sherman Act alleging that OFE conspired to reduce flock size and to increase the price of eggs. Now that the Plaintiffs have rested, however, no reasonable jury would have a legally sufficient basis to find that OFE was part of the alleged unlawful conspiracy. OFE is entitled to judgment as a matter of law. In addition, Plaintiffs have not demonstrated that P15 meets the requirements of admissibility as a coconspirator statement under Federal Rule of Evidence 801(d)(2)(E). Accordingly, the Court should reconsider its ruling and exclude P15 as inadmissible hearsay.

**II.    LEGAL STANDARD**

Pursuant to Rule 50(a)(1) of the Federal Rules of Civil Procedure:

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may resolve the issue against the party; and grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

The standard for granting judgment under Rule 50 is whether, viewing the evidence in the light most favorable to the non-movants and giving them the advantage of every reasonable inference, there is insufficient evidence from which a jury reasonably could reach its verdict. *Eddy v. Virgin Islands Water & Power Auth.*, 369 F.3d 227, 230 (3d Cir. 2004). A reasonable inference is one that may only be drawn from the evidence "without resort to speculation." 9 Moore's Federal Practice – Civil § 50.64[1] (2018) (internal citations omitted). The nonmoving party is "not entitled to the benefit of unreasonable inferences or to inferences conflicting with uncontested facts." *Id.* Rather, the court must "determine whether the record contains the 'minimum quantum of evidence from which a jury might reasonably afford relief.'" *Keith v. Truck Stops Corp. of Am.*, 909 F.2d 743, 745 (3d Cir. 1990) (quoting *Smollett v. Skayting Dev. Corp.*, 793 F.2d 547, 548 (3d Cir. 1986)); *Wilson v. Philadelphia Detention Ctr.*, 986 F. Supp. 282, 286 (E.D. Pa. 1997). A "scintilla of evidence is not enough to sustain a verdict of liability." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993).

Plaintiffs have alleged that OFE violated Section 1 of the Sherman Act by conspiring to reduce hen supply and artificially increase the price of shell eggs. To succeed on their claim, Plaintiffs must prove: "(1) that the defendants contracted, combined or conspired among each other; (2) that the combination or conspiracy produced adverse, anti-competitive effects within the relevant product and geographic markets; (3) that the objects of and the conduct pursuant to that contract or conspiracy were illegal; and (4) that the plaintiffs were injured as a proximate result of that conspiracy." *In re Processed Egg Products Antitrust Litig.*, 206 F. Supp. 3d 1033, 1044 (E.D. Pa. 2016) (quoting *Rossi v. Standard Roofing, Inc.*, 156 F.3d 452, 464-65 (3d Cir. 1998)); *see also Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 760-61 (1984). Because no reasonable jury could conclude on the basis of Plaintiffs' evidence that OFE conspired to

reduce the supply of eggs, judgment as a matter of law should be granted in favor of OFE.  *See, e.g., Edward J. Sweeney & Sons, Inc. v. Texaco, Inc.*, 637 F.2d 105, 110-17 (3d Cir. 1980) (affirming directed verdict on Sherman Act Section I claim and noting that granting direct verdict was "crucial when, as here, the plaintiff's case, and therefore the defendant's liability, is based solely on circumstantial evidence").

### III. OFE IS ENTITLED TO JUDGMENT AS A MATTER OF LAW AS NO REASONABLE JURY COULD FIND THAT OFE ENTERED INTO ANY AGREEMENTS TO REDUCE THE SUPPLY OF EGGS.

Plaintiffs have failed to prove that OFE entered into any agreements to reduce the supply of eggs.  "[T]he very essence of a section 1 claim is the existence of an agreement, because section 1 liability is predicated on some form of concerted action." *InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 159 (3d Cir. 2003); *see also In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 356 (3d Cir. 2004).  "Unilateral action simply does not support liability; there must a unity of purpose or a common design and understanding or a meeting of the minds in an unlawful arrangement." *Gordon v. Lewistown Hosp.*, 423 F.3d 184, 207 (3d Cir. 2005).  For that reason, Plaintiffs must present evidence of "a conscious commitment to a common scheme designed to achieve an unlawful objective." *Monsanto Co.*, 465 U.S. at 764 (quoting *Edward J. Sweeney & Sons,* 637 F.2d at 111).  And Plaintiffs are "required to prove each particular defendant's culpability prior to obtaining relief from that defendant in this action." *In re Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d 709, 755 (E.D. Pa. 2011); *see also Rossi*, 156 F.3d at 467.

Furthermore, to prevail on a Section 1 conspiracy claim under the Sherman Act, the plaintiff must prove "the existence of a *single* agreement that unreasonably restrains trade, whether tacit or express." *In re K-Dur Antitrust Litig.*, No. 01-cv-1653, 2016 U.S. Dist. LEXIS 22982, *64 (D.N.J. Feb. 25, 2015) (emphasis added) (citation omitted).  A three-step test is used

3

to determine whether a set of events comprises a single conspiracy or separate, unrelated conspiracies. *United States v. Kelly*, 892 F.2d 255, 259 (3d Cir. 1989) (citation omitted). "The court first determines whether there was a common goal among the conspirators. Second, the court examines the nature of the scheme to find out whether the agreement sought to create a result that would require the continuous cooperation of the conspirators. Finally, the court examines the level to which the participants overlap in the various dealings." *In re K-Dur Antitrust Litig.*, 2016 U.S. Dist. LEXIS 22982, at *65-66 (internal quotation marks and citations omitted).

For a single conspiracy to exist, conspirators must have been aware of the existence of co-conspirators, and each conspirator must have done something in furtherance of a single, illegal endeavor. *Id*. at *66-67 (citing *Kotteakos v. United States*, 328 U.S. 750, 755 (1946)). Thus, to demonstrate a single, overarching conspiracy, a plaintiff must not only prove that the various challenged activities were linked to form an overarching conspiracy, but also that each defendant saw the challenged activities as part of an overarching conspiracy and that it consciously committed to joining such an overarching conspiracy. *See e.g., Precision Assocs., Inc., v Panalpina World Transp. (Holding) Ltd.,* No. 08-CV-42, 2011 U.S. Dist. LEXIS 51330, *105 (E.D.N.Y. Jan 4, 2011) (each defendant needs to be aware of and committed to the essential purpose of the overarching conspiracy); *In re Fresh and Process Potatoes Antitrust Litig.*, 834 F. Supp. 2d 1141, 1174-75 (D. Idaho 2011) (dismissing complaint against defendant because there was no circumstantial evidence showing that defendant consciously committed to the alleged "overarching conspiracy").

After more than ten days of testimony, the "evidence" presented against OFE is:

- OFE joined the Certified Program in 2004 (a stipulated fact);

- OFE sold eggs to Hillandale Farms (which is not a class member; there is no evidence that OFE sold eggs to a class member);

- There were several efforts to argue that Mohamed Mousa was an OFE representative who attended one or more UEP meetings in 2004, but the witnesses were unable to confirm that Mr. Mousa was actually an OFE representative and, moreover, there was no evidence presented to the jury that Mr. Mousa a UEP officer or a voting member of UEP at any of these meetings.  Thus, his presence cannot form the basis for establishing OFE's participation in any alleged conspiracy;

- OFE is identified in two United Voices articles (P14 and P141) which were both admitted for the limited purpose of notice and not for the truth of the matter asserted; and

- The November 29, 2004 Gene Gregory letter that was the subject of extensive argument (P15).

With respect to P15 and after it was admitted into evidence, Plaintiffs failed to provide any independent, corroborating evidence to support its admissibility.[2]

- As the Court is well aware, Chad Gregory had no firsthand knowledge of the document and had never seen it before.

- There is no evidence that P15 was ever sent; the document was produced by UEP but there is no evidence that the document was actually sent to or received by Mr. Mousa or anyone at OFE.

- Plaintiffs chose not to present any testimony from Gene Gregory regarding the document.

---

[2] The record is unclear whether P15 was definitively admitted or conditionally admitted.  Out of an abundance of caution, and in accordance with FRE 103(b), OFE moves this Court to strike and/or reconsider the admissibility under FRE 801(d)(2)(E) of P15.

- Plaintiffs chose not to present any evidence from Mohamed Mousa regarding the document.
- P15 provides that Mr. Mousa signed an intention form – but no signed intention form was presented into evidence.
- No evidence was put into the record that OFE "exercised [its] stated intention" through a signed letter as supposedly contemplated by P15, or otherwise.
- There is also no evidence that anyone at OFE actually reviewed P15, P14 or P141 and certainly no evidence that anyone at OFE undertook to do anything with regard to the supposed "stated intention" or any other illegal action.
- Finally, there is no evidence that OFE actually disposed of its hens four weeks earlier than previously scheduled. Plaintiffs chose not to present any testimony from any OFE witness, or any witness, on this issue – or, for that matter, any issue.

It is stipulated that OFE was not a member of USEM and did not export eggs. Plaintiffs referenced several "short term supply reduction" actions but there is no evidence that OFE was involved in any of them, or aware of any of them. And there is no testimony or evidence of any actions taken by OFE at any time during the class period with respect to its flock size.

With this evidentiary record after Plaintiffs have rested, OFE's membership in the Certified Program and one single document—P15—are insufficient grounds on which any reasonable jury could conclude that OFE was liable on the Section 1 claim asserted. This Court has previously ruled that that "participation in a trade group association and/or attending trade group meetings, even those meetings where key facets of the conspiracy allegedly were adopted or advanced, are not enough on their own to give rise to the inference of *agreement* to the conspiracy." *In re Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d at 722 (emphasis in

6

original) (citing *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 349 (3d Cir. 2010)). Even "[i]n situations where a trade association, its officers, employees or members are found to have violated the antitrust laws, membership in the association will not automatically involve all members in the violation. There must, instead, be some evidence of actual knowledge of, and participation in, the illegal scheme in order to establish a violation of the antitrust laws by a particular association member." *AD/SAT, Div. of Skylight, Inc. v. Associated Press*, 181 F.3d 216, 234 (2d Cir. 1999) (quoting Thomas Vakerics, Antitrust Basics, § 6.13). *See also In re Processed Egg Prods. Antitrust Litig.*, 902 F. Supp. 2d 704, 713 (E.D. Pa. 2012) ("[E]gg producers may legitimately choose to increase cage sizes for animal welfare purposes."). It is undisputed that the Certified Program did not on its face include an agreement to reduce flock size and did not prohibit participants from increasing egg production. (*See, e.g.*, May 7 Tr. 68:3-71:23.) There is no evidence that OFE joined the Certified Program with a commitment to reduce the supply of eggs.[3] And there is absolutely no evidence that OFE joined a conspiracy to reduce the supply of eggs in order to raise the price of eggs.

Plaintiffs' use of P15 also does not provide evidence upon which a jury could find liability because Plaintiffs failed to present any independent or corroborating evidence. *See In re Fine Paper Antitrust Litig.*, 685 F.2d 810 (3d Cir. 1982) (trial court did not err in refusing to admit co-conspirator hearsay statements because "there is a real danger in a conspiracy trial involving numerous defendants that the jury may find a particular defendant guilty merely because of his association with the other defendants. One aspect of this danger is that the trial judge, after admitting hearsay declarations of alleged co-conspirators subject to later connection, may find at the close of all the evidence that the government has not borne its burden of proving

---

[3] OFE incorporates by reference the additional legal and factual arguments advanced by Rose Acre Farms and R.W. Sauder regarding the Certified Program and their summary of the evidentiary record regarding the Certified Program and its pro-competitive impact.

by independent evidence that those declarations were made during the course and in furtherance of a conspiracy joined in by both the defendant and the declarant. Cautionary instructions to the jury might not suffice to cure the resulting prejudice to the defendant.") (citation omitted); *United States v. Kerr*, No. 2:11cr188, 2012 U.S. Dist. LEXIS 127492, *21 (W.D. Pa. Sept. 7, 2012) ("While the practicalities of a conspiracy trial may require that hearsay be admitted 'subject to connection,' the judge must determine, when all the evidence is in, whether in his view the prosecution has proved participation in the conspiracy, by the defendant against whom the hearsay is offered, by a fair preponderance of the evidence independent of the hearsay utterances.") (citing *United States v. Bey*, 437 F.2d 188, 191 (3d Cir. 1971) (quoting with approval *United States v. Geaney*, 417 F.2d 1116, 1120 (2d Cir. 1969))). While the Third Circuit has held that in certain circumstances it may be permissible to introduce "inadmissible declarations of alleged coconspirators," the ultimate utility of such evidence is tethered to the obligation of the Plaintiffs "before the case is completed, to establish the existence of the conspiracy and prove aliunde as to every separate defendant." *United States v. Cont'l Grp., Inc.*, 603 F.2d 444, 456 (3d Cir. 1979).

**IV.     CONCLUSION**

Both the Supreme Court and the Third Circuit have cautioned lower courts to consider the harmful consequences that weak, circumstantial cases like Plaintiffs' can have on legitimate pro-competitive conduct. Because mistaken inferences can deter lawful, competitive behavior, "antitrust law limits the range of permissible inferences that can be drawn from ambiguous evidence in a § 1 case." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). Thus, where a defendant's actions are "as consistent with permissible competition as with illegal conspiracy," plaintiffs must present admissible evidence "that 'tends to exclude the

possibility' that the alleged conspirators acted independently." *Id.* (quoting *Monsanto Co.*, 465 U.S. at 764); *see also In re Chocolate Confectionary Antitrust Litig.*, 801 F.3d 383, 395-97 (3d Cir. 2015); *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 117-18 (3d Cir. 1999); *Rossi*, 156 F.3d at 466; *In re Citric Acid Litig.*, 191 F.3d 1090, 1093-97 (9th Cir. 1999) (collecting cases).

Put simply, the Plaintiffs introduced no evidence that OFE joined an illegal conspiracy. The jury would need to rely on numerous unsupported factual inferences for it to make the leap from OFE's participation in UEP to knowingly joining a conspiracy to reduce the supply of eggs. One of Rule 50's specific purposes is to prevent juries from making such unsupported inferences. Because the jury would have to resort to impermissible speculation to conclude there was a conspiracy to reduce the supply of eggs and that OFE joined the alleged conspiracy with the intent to further its purpose, the Court should enter judgment as a matter of law in OFE's favor to prevent the jury from doing so.

After years of discovery and more than ten days of trial testimony, Plaintiffs have failed to implicate OFE in any conspiracy to reduce the supply of eggs. For the foregoing reasons, OFE respectfully moves this Court to (1) strike and/or reconsider the admissibility under Federal Rule of Evidence 801(d)(2)(E) of P15; and (2) enter judgment as a matter of law in its favor on Plaintiffs' claim for violation of Section 1 of the Sherman Act.

DATED:  May 18, 2018	Respectfully Submitted,

/s/ *Joseph M. Callow, Jr.*
Joseph M. Callow, Jr.
KEATING MUETHING & KLEKAMP PLL
One East Fourth Street, Suite 1400
Cincinnati, Ohio 45202
Phone: (513) 579-6419
Fax: (513) 579-6457
jcallow@kmklaw.com

*Counsel for Defendant Ohio Fresh Eggs, LLC*

### CERTIFICATE OF SERVICE

On this 18th day of May 2018, I hereby certify that DEFENDANT OHIO FRESH EGGS, LLC'S MOTION FOR JUDGMENT AS A MATTER OF LAW AND MOTION TO STRIKE AND/OR RECONSIDER THE ADMISSIBILITY UNDER FRE 801(d)(2)(E) OF PLAINTIFFS' EXHIBIT 15 and memorandum in support were filed and served upon all counsel via the Court's CM/ECF system.

*/s/ Joseph M. Callow, Jr.*
Joseph M. Callow, Jr.