UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:  PROCESSED EGG PRODUCTS<br>ANTITRUST LITIGATION | MDL No. 2002<br>2:08-md-02002 |

THIS DOCUMENT RELATES TO:
ALL DIRECT PURCHASER ACTIONS

**THE DIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
<u>OF MOTION TO ALTER OR AMEND THE JUDGMENT</u>**

**TABLE OF CONTENTS**

                                                            **Page**

INTRODUCTION .................................................................................................................1

ARGUMENT .......................................................................................................................2

I.     THE JURY FINDING OF AN OVERARCHING CONSPIRACY TO REDUCE SUPPLY REQUIRES APPLICATION OF THE *PER SE* STANDARD ...........................3

          A.     The Jury Found Rose Acre Participated In A Conspiracy To Reduce Supply ...........................................................................................................3

          B.     A Conspiracy To Reduce Supply Is *Per Se* Illegal ....................................4

          C.     This Court's Order Requiring Application Of Rule Of Reason To The UEP Certified Program Cannot Apply To The Jury Finding Of An Overarching Conspiracy To Reduce Supply............................................5

II.    THIS COURT SHOULD ENTER JUDGMENT FOR PLAINTIFFS AND SET A NEW TRIAL ON INJURY AND DAMAGES ...................................................9

CONCLUSION....................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Broad. Music, Inc. v. Columbia Broad. Sys., Inc.*,
   441 U.S. 1 (1979) ............................................................................................................ 4

*Cont'l Ore Co. v. Union Carbide & Carbon Corp.*,
   370 U.S. 690 (1962) ...................................................................................................... 6, 7

*In re Domestic Drywall Antitrust Litig.*,
   No. 13-MD-2437, 2016 WL 684035 (E.D. Pa. Feb. 18, 2016) ..................................... 4

*Gen. Leaseways v. Nat'l Truck Leasing Ass'n*,
   744 F.2d 588 (7th Cir. 1984) ........................................................................................ 4, 6

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*,
   551 U.S. 877 (2007) ....................................................................................................... 4, 7

*In re Linerboard Antitrust Litig.*,
   305 F.3d 145 (3d Cir. 2002) .......................................................................................... 4

*MBR Constr. Servs., Inc. v. City of Reading*,
   No. 11-cv-07218, 2012 WL 4478384 (E.D. Pa. Sept. 28, 2012) ................................. 4

*NCAA v. Bd. of Regents of Univ. of Okla.*,
   468 U.S. 85 (1984) .......................................................................................................... 4

*Nw. Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co.*,
   472 U.S. 284 (1985) ....................................................................................................... 4

*Reardon v. Reardon*,
   465 F. App'x 90 (3d Cir. 2012) .................................................................................... 2, 3

*Rossi v. Standard Roofing, Inc.*,
   156 F.3d 452 (3d Cir. 1998) .......................................................................................... 9

*United States v. Andreas*,
   39 F. Supp. 2d 1048 (N.D. Ill. 1998) ........................................................................... 4

*United States v. Apple*,
   791 F.3d 290 (2d Cir. 2015), *cert. denied*, 2016 WL 854227 (Mar. 7, 2016) ............ 8

*Wiest v. Lynch*,
   710 F.3d 121 (3d Cir. 2013) .......................................................................................... 2

**Rules**

Fed. R. App. P. 4(a)(4)(A) .................................................................................................. 1

Fed. R. Civ. P. 59(e) ........................................................................................................... 2

**Additional Authorities**

Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶¶ 2001a, 2016 (2018) .................................................................................. 5

The Direct Purchaser Plaintiffs ("DPPs" or "Plaintiffs") respectfully submit this memorandum of law in support of their motion to alter or amend the judgment such that judgment of liability is entered in favor of Plaintiffs and against Defendant Rose Acre Farms, Inc. ("Rose Acre").[1]

## INTRODUCTION

The jury expressly found a conspiracy to reduce the supply of eggs and that Defendant Rose Acre participated in that conspiracy. This Court nevertheless entered judgment in favor of Defendants, including Rose Acre, because the jury did not find that the conspiracy imposed an "unreasonable" restraint on supply. However, this finding applies only to an adjudication under the Rule of Reason standard. Under the *per se* standard, which is the correct standard as a matter of law and based on the jury's own verdict, Rose Acre's conduct should be deemed *per se* unlawful and judgment (as to liability) should be entered in favor of Plaintiffs.

First, *per se* analysis applies to the jury's finding of an overarching conspiracy to reduce supply. Countless cases have established that a horizontal agreement to reduce supply, just like an agreement to raise prices, is illegal *per se*. The jury finding of the existence of such an agreement here thus mandates the application of the *per se*, not the Rule of Reason, standard. This Court's prior summary judgment ruling, applying Rule of Reason analysis to the Direct Action Plaintiffs' claims involving the United Egg Producers ("UEP") Certified Program, noted that this Court could not assume that the UEP Certified Program was part of a single conspiracy to reduce supply. But the jury verdict here now conclusively establishes that the UEP Certified Program was, in fact, part of such an overarching conspiracy. Once the jury decided that there

---

[1] The period for Plaintiffs to file any notice of appeal is tolled, as to all parties, while this motion is pending. *See* Fed. R. App. P. 4(a)(4)(A).

was an overarching conspiracy to reduce supply, the exact mechanisms employed for pursuing that conspiracy are irrelevant: the conspiracy itself mandates application of the *per se* standard. That is especially clear here because there were two other supply control components—short term supply recommendations and United States Egg Marketers ("USEM") exports—for which this Court did not decide whether the *per se* or Rule of Reason standard applies. It would be illogical to presume the Rule of Reason standard simply because the conspirators *also* employed another mechanism (the UEP Certified Program) that this Court held was not *per se* illegal by itself. Indeed, that is why Plaintiffs have consistently argued that the conspiracy must be considered as a whole, and that *per se* analysis applies to that overarching conspiracy. In short, the jury found a conspiracy to reduce supply, and this is the quintessential case where *per se* analysis must be applied.

Second, applying the *per se* standard to the jury verdict requires entry of judgment as to liability against Rose Acre. Under the *per se* standard, the jury's finding of a conspiracy to reduce the supply of eggs and Rose Acre's participation in that conspiracy makes Rose Acre liable under the antitrust laws. The only questions that remain concern the existence of injury to Plaintiffs and the amount of damages, and the Court should therefore set a new trial for a jury to decide those issues alone.

## ARGUMENT

Rule 59 allows for "[a] motion to alter or amend the judgment." Fed. R. Civ. P. 59(e). The Third Circuit has held that "a proper Rule 59(e) motion . . . must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." *Wiest v. Lynch*, 710 F.3d 121, 128 (3d Cir. 2013) (quotation marks omitted); *see also Reardon v. Reardon*, 465 F. App'x 90, 93 (3d Cir. 2012) ("[A] Rule 59(e) motion is a device to relitigate the original issue decided

by the District Court, and used to allege legal error.") (quotation marks omitted).  Here, new evidence in the form of the jury verdict itself, as well as the need to correct a clear legal error, warrants a change in the judgment such that judgment is entered as to liability in favor of Plaintiffs.

I. **THE JURY FINDING OF AN OVERARCHING CONSPIRACY TO REDUCE SUPPLY REQUIRES APPLICATION OF THE *PER SE* STANDARD**

   A. **The Jury Found Rose Acre Participated In A Conspiracy To Reduce Supply**

The jury verdict here establishes that Rose Acre participated in an overarching conspiracy to reduce the supply of eggs.  In particular, the jury found, "by a preponderance of the evidence, that there was a single overarching conspiracy to reduce supply comprised of all three of (1) short term supply recommendations, (2) the United Egg Producers (UEP) Certified Program, and (3) United States Egg Marketers (USEM) exports."  Dkt. 1763 at 2.  The jury also found that Rose Acre "participated in the conspiracy to reduce supply."  *Id.*

The jury instructions explicitly state that the finding of an overarching conspiracy could be made only based on an *agreement* with the *unlawful purpose* to reduce the supply of eggs.  As the instructions stated: "It is the agreement or the understanding to restrain trade by limiting egg supply that would constitute the conspiracy."  June 5, 2018 Trial Tr. at 130:14-16.  The instructions also state that "an agreement or understanding between two or more persons or companies exists when they share a commitment to a common scheme to achieve an unlawful purpose."  *Id.* at 129:7-9.  Moreover, the instructions explicitly state that the finding of Rose Acre's participation in the conspiracy is a finding that Rose Acre "knowingly joined in the unlawful plan, either at its inception or at some later time, with the intent to further the purpose of the conspiracy."  *Id.* at 137:5-8.

3

B.     A Conspiracy To Reduce Supply Is *Per Se* Illegal

Under established precedent, including binding opinions from the Supreme Court and the Third Circuit, a conspiracy to reduce supply is *per se* illegal. "It is a well-known antitrust principle that any concerted restrictions of output are *per se* illegal." *In re Domestic Drywall Antitrust Litig.*, No. 13-MD-2437, 2016 WL 684035, at *65 n.67 (E.D. Pa. Feb. 18, 2016). As the Supreme Court has explained, a *per se* rule is applied when "the practice facially appears to be one that would always or almost always tend to restrict competition and decrease output." *Broad. Music, Inc. v. Columbia Broad. Sys., Inc.*, 441 U.S. 1, 19-20 (1979); *see also, e.g.*, *Nw. Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co.*, 472 U.S. 284, 289-90 (1985) (same); *NCAA v. Bd. of Regents of Univ. of Okla.*, 468 U.S. 85, 100 (1984) (same). "A horizontal cartel among competing manufacturers or competing retailers that decreases output or reduces competition in order to increase price is, and ought to be, *per se* unlawful." *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 893 (2007); *see also United States v. Andreas*, 39 F. Supp. 2d 1048, 1059 (N.D. Ill. 1998) ("Output restrictions are classic per se violations which personify the law of supply because product scarcity causes consumers to pay inflated prices to satisfy demand."). Indeed, the "most important per se categories are naked horizontal price-fixing, market allocation, and *output restrictions*." *MBR Constr. Servs., Inc. v. City of Reading*, No. 11-cv-07218, 2012 WL 4478384, at *7 (E.D. Pa. Sept. 28, 2012) (emphasis added, quotation marks omitted). *Per se* analysis applies to a conspiracy to reduce supply because "an agreement on output [ ] is equivalent to a price-fixing agreement." *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 159 (3d Cir. 2002); *see also id.* at 160 (quoting *Gen. Leaseways v. Nat'l Truck Leasing Ass'n*, 744 F.2d 588, 594-95 (7th Cir. 1984) (Posner, J.) ("An agreement on output also equates to a price-fixing agreement. . . . If . . . firms restrict output directly, price will as mentioned rise in order to limit demand to the reduced supply. Thus, with exceptions not

relevant here, raising price, reducing output, and dividing markets have the same anticompetitive effects.") (internal alterations omitted); Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶¶ 2001a, 2006 (2018) ("[A] cartel earns the higher prices resulting from monopoly power only by reducing marketwide output, causing the market to 'clear' at a higher price. . . . Fixing the 'price' may not always be the best way for colluders to accomplish their goal. . . . It might be far more workable for the firms to agree that each will [cut supply]."). A conspiracy to reduce supply would, by definition, "always or almost always tend to . . . decrease output." Thus, a conspiracy to reduce supply is *per se* illegal.

In sum, the jury did not find simply that there was a conspiracy to create short term supply recommendations, the UEP Certified Program, and USEM exports. It found that there was an "overarching conspiracy" to reduce supply comprised of these mechanisms for achieving that goal. Because the jury's finding was framed precisely in terms of whether there was a conspiracy to reduce supply—and "conspiracy" was plainly defined in the instructions as an unlawful agreement to reduce supply—that finding necessarily establishes that the *per se* standard applies to the conduct at issue.

      **C.**    **This Court's Order Requiring Application Of Rule Of Reason To The UEP Certified Program Cannot Apply To The Jury Finding Of An Overarching Conspiracy To Reduce Supply**

On summary judgment in 2016 and then again in a motion in January 2018, Plaintiffs argued that the conspiracy as a whole should be subject to *per se* analysis. *See* Dkts. 1391, 1574. This Court held on summary judgment that the UEP Certified Program must be considered separately from the conspiracy as a whole, and that the Rule of Reason standard would apply to the jury's consideration of the legality of the UEP Certified Program. *See* Dkts. 1437, 1586.

The jury verdict supersedes the reasoning this Court employed in reaching that decision, such that the verdict should be deemed a liability finding as to Rose Acre.[2]

First, the Court's prior decision to examine elements of the conspiracy individually is now inconsistent with the jury verdict. In particular, this Court held that it would not accept "plaintiffs' characterization of the defendant's conduct as comprising a single conspiracy as dispositive for purposes of application of *per se* or rule of reason analysis." Dkt. 1437 at 9. This Court similarly held that it "cannot, and will not assume that they all are woven together via the allegation of a single, overarching conspiracy." *Id.* at 14. However, the Court need no longer make an "assum[ption]" or accept "plaintiffs' characterization" because the jury has now found that there was, in fact, a single, overarching conspiracy to reduce supply. Given the jury's verdict, Plaintiffs' arguments have been proven correct. *See, e.g.*, DPPs' Post-Hearing Submission Regarding *Per Se* Liability, Dkt. 1391 at 9-10.

Such a single conspiracy cannot be separated out as a matter of law. As the Supreme Court explained, "plaintiffs should be given the full benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each." *Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962). This Court held *Continental Ore* concerned only whether evidence should be considered collectively, and did not preclude the individual consideration of the legality of different components of a conspiracy. Dkt. 1437 at 12. However, *Continental Ore* held that the "character," not just the

---

[2] Plaintiffs agreed to try the case under the Rule of Reason only on the understanding that they reserved the right to argue that *per se* analysis should be applied. *See* Mar. 13, 2018 H'rg Tr. at 177:24-178:7 ("Plaintiffs are prepared to try the case under the Rule of Reason on the single question of whether there was a single conspiracy to reduce the supply of eggs and thereby raise prices. So that it would be just a one-question case, whether there was a single conspiracy. Plaintiffs would preserve their right to appeal the Court's earlier determinations on the Rule of Reason and supplemental expert reports.").

6

"effect," of a conspiracy must be considered "as a whole." 370 U.S. at 699. Indeed, Plaintiffs pleaded that there was one overarching conspiracy, that is what the jury decided, and the legal analysis must conform to this pleading and proof.

This Court also relied on *Leegin* in support of the "necessity of applying different modes of legal analysis (i.e. *per se* versus rule of reason) when analyzing the legality of separate aspects of a single conspiracy." Dkt. 1437 at 10-11. The cited section of *Leegin* does not concern a single conspiracy, however, instead stating: "A horizontal cartel among competing manufacturers or competing retailers that decreases output or reduces competition in order to increase price is, and ought to be, *per se* unlawful. To the extent a vertical agreement setting minimum resale prices is entered upon to facilitate either type of cartel, it, too, would need to be held unlawful under the rule of reason." *Leegin*, 551 U.S. at 893 (internal citation omitted). Thus, *Leegin* stands only for the proposition that a vertical agreement that "facilitate[s]" a horizontal agreement need not be subject to *per se* analysis. But here, the different mechanisms that comprise the conspiracy are all horizontal, and they do not simply further the conspiracy— by the jury's own finding, they *constitute* the single, overarching conspiracy.

Second, the Court's holding that the UEP Certified Program on its own should be evaluated under a Rule of Reason analysis does not support the conclusion that an overarching conspiracy that *includes* the UEP Certified Program should be evaluated under Rule of Reason. In its order, this Court made clear that "[a]t this point, the Court is only called upon to evaluate the UEP Certified Program and determine whether this program is *per se* unlawful, or whether it must be considered under the rule of reason." Dkt. 1437 at 14. And at that point, the Court found that "the UEP Certified Program does not involve an express agreement among competitors to restrain supply," and thus was not *per se* unlawful. *Id.* at 18; *see also id.* ("While

7

the plaintiffs have characterized the Certified Program as a simple output-limitation agreement, they are unable to point to any evidence that, on its face, the agreement to enter into the UEP Certified Program constituted an express agreement among competitors to restrict egg supply.").

But we are now at a different point, where the jury has found that there was an agreement to reduce supply and that the UEP Certified Program was part of that agreement. To be sure, if the jury had merely found a conspiracy to create the UEP Certified Program, then this Court's holding would be fully applicable.[3] But Plaintiffs set themselves a higher bar in the verdict form, and cleared that bar, with the jury holding that there was an overarching conspiracy to reduce supply. Thus, the question now is whether an overarching conspiracy to reduce supply should be subject to *per se* or Rule of Reason analysis. As discussed above (and in the prior briefing filed by Plaintiffs, incorporated by reference herein, *see* Dkts. 1391, 1574, 1583), such a conspiracy is illegal *per se*.

The fact that the conspiracy included the UEP Certified Program does not change the analysis, regardless of how the UEP Certified Program would be evaluated if independent of a conspiracy to reduce supply. The specific mechanism used to reduce supply is irrelevant once the jury found that that there was, in fact, a conspiracy to reduce supply. The conspiracy itself is unlawful. There is no case holding that competitors can conspire to reduce supply (or raise prices) if they use a particular mechanism for doing so. Rather, the question is whether the mechanisms were part of a conspiracy to reduce supply or raise prices—if they are, then the conspiracy is *per se* illegal. *See, e.g., United States v. Apple*, 791 F.3d 290, 325 (2d Cir. 2015) ("In short, the relevant 'agreement in restraint of trade' in this case is the price-fixing conspiracy

---

[3] DPPs continue to disagree with this Court's holding that the UEP Certified Program, standing alone, would be subject to Rule of Reason analysis or that the Court's prior summary judgment opinion should have been applied to DPPs. *See* Dkts. 1391, 1574.

identified by the district court, not Apple's vertical contracts with the Publisher Defendants. How the law might treat Apple's vertical agreements in the absence of a finding that Apple agreed to create the horizontal restraint is irrelevant."), *cert. denied*, 136 S. Ct. 1376 (2016).

Furthermore, the conspiracy includes two other mechanisms for reducing supply: short-term supply recommendations and USEM exports. This Court did not decide whether these mechanisms would be subject to *per se* analysis if viewed independently. Thus, if this Court were to apply Rule of Reason analysis to the overarching conspiracy to reduce supply, then the fact that these agreements were part of a *greater* overarching conspiracy to reduce supply would somehow make those agreements necessarily governed by Rule of Reason, even if *per se* analysis would otherwise apply. There is no legal basis for such a result, and it highlights why the conspiracy must be judged as a whole.

## II. THIS COURT SHOULD ENTER JUDGMENT FOR PLAINTIFFS AND SET A NEW TRIAL ON INJURY AND DAMAGES

For the reasons stated above, the jury verdict itself establishes that *per se* analysis applies in this case. It also establishes liability under the *per se* standard. In particular, the jury finding of a conspiracy to reduce supply and Rose Acre's participation in the conspiracy suffices to establish liability under the *per se* standard. *See, e.g.*, *Rossi v. Standard Roofing, Inc.*, 156 F.3d 452, 464-65 (3d Cir. 1998) ("Our conclusion that Rossi's allegations constitute a *per se* violation of § 1 simplifies our analysis here. In the usual rule of reason case, to establish a violation of § 1, plaintiffs must prove: (1) that the defendants contracted, combined or conspired among each other; (2) that the combination or conspiracy produced adverse, anti-competitive effects within the relevant product and geographic markets; (3) that the objects of and the conduct pursuant to that contract or conspiracy were illegal; and (4) that the plaintiffs were injured as a proximate result of that conspiracy. Here, because *per se* analysis applies, prongs two and three are

conclusively presumed satisfied and need not be addressed.") (internal citation omitted). The jury answer to the question regarding the reasonableness of the restraint is simply irrelevant in the *per se* analysis.

Accordingly, the only judgment that is consistent with the verdict and the correct legal standard is a judgment of liability in favor of Plaintiffs and against Rose Acre. This Court should enter that judgment and set a new trial on the remaining issues: the existence of injury to Plaintiffs and the amount of damages to be awarded.

## CONCLUSION

For the foregoing reasons, this Court should amend the judgment by entering judgment in favor of Plaintiffs as to liability, and hold a new trial solely as to the existence of injury and the amount of damages.

| | |
|---|---|
| July 12, 2018 | Respectfully submitted, |
| s/   Mindee J. Reuben<br>Mindee J. Reuben<br>LITE DEPALMA GREENBERG, LLC<br>1835 Market Street, Suite 2700<br>Philadelphia, PA 19103<br>Phone: 267-314-7980<br>mreuben@litedepalma.com<br>*Co-Lead and Liaison Counsel for Direct Purchaser Plaintiffs* | /s/   Stephen R. Neuwirth<br>Stephen R. Neuwirth<br>David M. Cooper<br>QUINN EMANUEL URQUHART<br>       & SULLIVAN, LLP<br>51 Madison Avenue, 22nd Floor<br>New York, NY  10010<br>Phone:  212-849-7165<br>stephenneuwirth@quinnemanuel.com<br>*Counsel for Direct Purchaser Plaintiffs* |
| /s/   Michael D. Hausfeld<br>Michael D. Hausfeld<br>HAUSFELD LLP<br>1700 K Street NW, Suite 650<br>Washington, DC 20006<br>(202) 540-7200<br>mhausfeld@hausfeldllp.com<br>*Co-Lead Counsel for Direct Purchaser Plaintiffs* | /s/   Ronald J. Aranoff<br>Ronald J. Aranoff<br>WOLLMUTH MAHER & DEUTSCH LLP<br>500 Fifth Avenue - 12th Floor<br>New York, New York 10110<br>(212) 382-3300<br>raranoff@wmd-law.com<br>*Counsel for Direct Purchaser Plaintiffs* |

| | |
|---|---|
| /s/  Stephen D. Susman | /s/  Stanley D. Bernstein |
| Stephen D. Susman | Stanley D. Bernstein |
| SUSMAN GODFREY LLP | BERNSTEIN LIEBHARD LLP |
| 1301 Avenue of the Americas, 32nd Floor | 10 East 40th Street |
| New York, NY 10019 | New York, New York 10016 |
| (212) 336-8330 | (212) 779-1414 |
| ssusman@susmangodfrey.com | bernstein@bernlieb.com |
| *Co-Lead Counsel for Direct Purchaser Plaintiffs* | *Co-Lead Counsel for the Direct Purchaser Plaintiffs* |