IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

IN RE: PROCESSED EGG PRODUCTS  |
ANTITRUST LITIGATION            |
                                |
--------------------------------| MDL NO. 08-md-02002
                                |
This document relates to:       |
                                |
DIRECT PURCHASER PLAINTIFF      |
CLASS ACTION                    |

---

**DEFENDANT ROSE ACRE FARMS' RESPONSE IN OPPOSITION TO
THE DIRECT PURCHASER PLAINTIFFS'
<u>MOTION TO ALTER OR AMEND THE JUDGMENT</u>**

## INTRODUCTION

Six weeks before trial, the Direct Purchaser Plaintiffs (DPPs) told this Court that they were "prepared to try the case under the Rule of Reason on the single question of whether there was a single conspiracy to reduce the supply of eggs and thereby raise prices."[1] The ramification of that decision was crystal clear from the beginning: It meant the jury could find that there was a conspiracy to reduce the supply of shell eggs yet also conclude that the conspiracy did not impose an unreasonable restraint on supply. The DPPs then submitted draft jury instructions and a verdict form that applied the Rule of Reason to the DPPs' conspiracy claim and, ultimately, approved the final verdict form and its four questions without objection. Now, after 10 years of litigation, a trial spanning 6 weeks, 6 days of jury deliberation, and a jury verdict in favor of the Defendants, the DPPs are asking for a do-over. The DPPs' request to set aside the jury's verdict and apply the *per se* standard retroactively should be summarily rejected.

The DPPs have identified no circumstances warranting the extraordinary relief they are seeking. Because the verdict form obviously allowed the jury to reach the decision it made, there is no "new evidence" to support any request to alter the judgment. Moreover, the DPPs' motion merely rehashes old arguments on the Rule of Reason that this Court has considered and rejected, twice. If the DPPs disagree with the Court's ruling, the proper forum for their request is the Third Circuit, not a Rule 59(e) motion (although even an appeal would be futile for the reasons provided below). Finally, the DPPs had ample opportunity to object to the verdict form, and particularly to the application of the Rule of Reason to the entire alleged tri-partite conspiracy. But DPPs chose not to, thus waiving any objections they now raise. The Court should deny the DPPs' Motion to Alter or Amend the Judgment.

---

[1] Mem. Supp. Pls.' Motion to Alter or Amend the Judgment at 6.

## PROCEDURAL BACKGROUND

In July 2015, certain Defendants moved for summary judgment in the Indirect Purchaser Plaintiff (IPP) and Direct Action Plaintiff (DAP) actions, arguing that the Rule of Reason standard applied to the UEP Certified Program.[2] As in this action, the IPPs and DAPs alleged that Defendants violated Section 1 of the Sherman Act by reducing egg supplies through a conspiracy comprising the Certified Program, USEM exports, and certain supply recommendations. And, as in this case, the IPPs and DAPs claimed that the conspiracy was *per se* unlawful. The moving Defendants disagreed, asserting that the Court needed to consider each component of the alleged conspiracy individually, and that the Certified Program was appropriately judged under the Rule of Reason. While the motion was limited to the IPP and DAP cases, the DPPs sought and received permission to submit their own brief on why the *per se* rule should apply.[3] In September 2016, the Court concluded that the various components of the alleged single conspiracy should be judged individually and that the Certified Program "must be evaluated under the rule of reason."[4] The Court denied the motion for summary judgment, however, and allowed the IPPs and DAPs to proceed on their Certified Program-related claims under a Rule of Reason theory.

Notwithstanding the Court's ruling, in January 2018, the DPPs raised the question again and moved to "confirm" that *their* antitrust claims based on the Certified Program were "governed by the *per se* rule."[5] The DPPs asserted that the Court's September 2016 decision on the Rule of Reason did not apply to the DPP case and that the Defendants had waived any

---

[2] *See* ECF Nos. 1245 and 1246 (July 2, 2015).

[3] *See* Memorandum Opinion at 22 n.5 (ECF No. 1437) (Sept. 9, 2016).

[4] *Id*. at 2.

[5] Memorandum Supp. Motion to Confirm at 1 (ECF No. 1574-1) (Jan. 8, 2018).

argument to the contrary. The Court denied the DPPs' motion and held that "the UEP Certified Program must be evaluated under the rule of reason" for the same reasons it held before.[6]

At that time, the Court did not decide what standard would apply to the conspiracy's other two components, and instead, invited the parties to file "a separate and specific motion with briefing on the merits" if the parties wanted the Court "to rule on the merits of other components . . . ."[7] No party filed a motion on those issues.

Four weeks later, at the hearing on the parties' motions *in limine*, the Court asked whether it was "the Plaintiffs' position that unless you can get an overarching conspiracy, you're not interested in getting anything? . . . Or, in other words, . . . the jury cannot find multiple different conspiracies . . . ."[8] Counsel said they would take the question under advisement, "because we want to make sure that we frame this exactly right to be responsive to the ramifications of your question," and come back with a "well-crafted answer."[9] Later that day, they announced: "Plaintiffs are prepared to try the case under the Rule of Reason on the single question of whether there was a single conspiracy to reduce the supply of eggs and thereby raise prices."[10] One of the DPPs' attorneys added that he "hope[d] the Court" would give "[t]he ABA Model Instruction [on] Rule of Reason,[11] under which the DPPs could meet their "burden of

---

[6] Memorandum Op. at 5, 9 (ECF No. 1586) (Feb. 9, 2018).

[7] *Id.* at 6, n.3.

[8] Motions Hearing, March 13, 2018 Tr. at 47-48.

[9] *Id.* at 48-49.

[10] *Id.* at 177-178. Ironically, the only question put to the DPPs was whether they were alleging a single conspiracy or multiple conspiracies. The DPPs offered their position that the Rule of Reason would apply to the single conspiracy without provocation.

[11] *Id.* at 56.

3

proving that the restraint is anticompetitive" by showing a "reduction of supply," and "[t]hen the burden switches to [the Defendants] . . . under the Rule of Reason."[12]

Then, on April 13, 2018, the DPPs filed proposed jury instructions and a verdict form, both of which applied the Rule of Reason to their claim of an overarching conspiracy. The DPPs' jury instructions expressly contemplated that the jury could find that one or more Defendants participated in a conspiracy to limit the supply of eggs and *still* evaluate that conspiracy under the Rule of Reason.[13] And their verdict form asked whether the jury found that "any . . . defendants participated in a conspiracy to limit the supply of eggs?" If the jury answered, "Yes," it then asked whether the jury found "that the conspiracy unreasonably restrained trade[.]"[14]

On May 25, when submitting proposed edits to the Court's draft jury instructions, the DPPs once again proposed a Rule of Reason instruction that would apply to the entire, overarching conspiracy to reduce supply. In redlines to the working draft of Instruction No. 12 (Rule of Reason Overview), the DPPs suggested that the Court include the following underlined language in the instruction's first paragraph:

> Under Section 1 of the Sherman Act, a restraint of trade is illegal only if it is found to be unreasonable. You must therefore determine whether the restraint challenged here—<u>an alleged conspiracy to limit the supply of eggs and thereby raise egg prices, through conduct including the UEP Certified Program, exports</u>

---

[12] *Id.* at 57.

[13] *See* DPP Proposed Instructions on Sherman Act Elements and Rule of Reason (ECF No. 1681) (Apr. 13, 2018) at 8 ("A conspiracy is an agreement or understanding between two or more persons with the intent to restrain trade, or having the effect of restraining trade, by limiting the supply of eggs.") and 14 ("Under Section 1 of the Sherman Act, a restraint of trade is illegal only if it is found to be unreasonable. You must determine, therefore, whether the restraint challenged here—Defendants' coordinated conduct to limit the supply of eggs—is unreasonable.").

[14] DPP Proposed Verdict Form (ECF No. 1683) (Apr. 13, 2018) (attached as Exhibit 1).

<blockquote>through USEM and short term supply management through early molting and early slaughter – is unreasonable. There are a number of steps to this inquiry, which I will first summarize before going into each in detail.[15]</blockquote>

The DPPs also offered a proposed verdict form, which, again, expressly anticipated that the jury would apply the Rule of Reason analysis only after first finding that one or more defendants participated "in a conspiracy to limit the supply of eggs in the United States."[16]

On May 30, the DPPs' counsel expressed support for the Court's ordering of the Rule of Reason instructions in version 5 of the draft jury instructions.[17] The DPPs raised no concerns about the Court's draft verdict form, except to ask that Question 1 be revised to refer to a "single overarching conspiracy."[18] The Court agreed to make that change. Then, during the charging conference on June 4, the DPPs' counsel assured the Court they were not "seeking any changes to the verdict form . . . ."[19] The DPPs did object to the Rule of Reason instruction in Instruction 13, but they based that objection only on their preference for the Court's original ordering of the instructions in version 5.[20] When given the opportunity to object to Instruction No. 16 (Rule of Reason: Proof of Competitive Harm), counsel ambiguously stated that the DPPs "had previously submitted language relating to shifting burdens under the Rule of Reason and some other details, so we just renew that past objection pursuant to what we had talked about before the conference

---

[15] May 25, 2018 DPP Proposed Revisions to Draft Jury Instructions (excerpt attached as Exhibit 2.)

[16] *See id.* at Proposed Verdict Form.

[17] May 30, 2018 Tr. at 208.

[18] *Id.* at 240.

[19] June 4, 2018 Tr. at 56.

[20] *See id.* at 65: 1-5 (stating that they "would just renew our past objection related to our having proposed a different approach on presenting the Rule of Reason.").

began."[21]  For the remaining Rule of Reason instructions, counsel for the DPPs simply said: "Nothing new beyond what we had previously submitted to the Court."[22]

# ARGUMENT

## I. PLAINTIFFS HAVE NOT PRESENTED NEW EVIDENCE OR REVEALED A CLEAR LEGAL ERROR JUSTIFYING AN AMENDMENT TO THE JUDGMENT.

A Rule 59(e) motion is permitted only in "extremely limited" circumstances.[23] Under Third Circuit precedent, a court may not alter or amend its judgment unless "the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted . . . judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice."[24] Here, the DPPs invoke grounds (2) and (3), asserting that "the jury verdict itself" is their "new evidence," and that the Court's application of the Rule of Reason is "a clear legal error."[25] Neither argument is correct, and the DPPs' Motion to Alter or Amend the Judgment should be denied.

### A. Plaintiffs Have Not Presented New Evidence Justifying Any Amendment To The Judgment.

The DPPs begin by erroneously claiming the "jury verdict itself" qualifies as "new evidence" that "warrants a change in the judgment . . . ."[26] For purposes of Rule 59(e), "'new evidence' means material discovered after a judgment or order that could not have been found

---

[21] *Id.* at 67.

[22] *Id.* at 68.

[23] *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011).

[24] *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 251 (3d Cir. 2010) (quoting *Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)).

[25] Mem. Supp. Pls.' Motion to Alter or Amend the Judgment at 3.

[26] *Id.*

with due diligence beforehand and that could be used to prove a fact."[27] It does not include evidence that was in the movant's possession before the court entered judgment.[28]

For several reasons, the jury verdict is not newly discovered evidence. First, "a jury verdict is not evidence, but merely 'findings of fact, based on the evidence presented to it.'"[29] Second, the verdict did not come into the DPPs' possession after the judgment. The Court announced the verdict five days before the Court entered judgment.[30] And third, the verdict form clearly provided for a jury finding that: (1) there *was* a conspiracy to reduce supply, and (2) one or more Defendants *did* participate in it, but (3) the conspiracy did *not* impose an unreasonable restraint on supply.[31] Indeed, the DPPs' own proposed verdict form anticipated the possibility of a jury verdict like the one announced on June 14. Accordingly, the fact that the jury discharged its responsibility in the way it did cannot constitute "new evidence" to support a Rule 59(e) motion.

### B. Plaintiffs Have Not Demonstrated A Clear Error Of Law Warranting Any Amendment To The Judgment.

Alternatively, the DPPs assert that the Court's application of the Rule of Reason to the overarching conspiracy claim qualifies as a "clear legal error" that "warrants a change in the

---

[27] *Commonwealth v. Harris (In re Commonwealth's Motion to Appoint New Counsel Against Or Directed To Defender Assoc. of Phila.),* No. 13-62, 2013 U.S. Dist. LEXIS 144103, at *3 (E.D. Pa. Oct. 3, 2013). *See also Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 252 (3d Cir. 2010).

[28] *See Ollie's Bargain Outlet, Inc. v. New Eng. Bus. Exch.*, 227 F. App'x 156, 159 (3d Cir. 2007).

[29] *Sayger v. Riceland Foods, Inc.*, 735 F.3d 1025, 1034 (8th Cir. 2013) (quoting *Anderson v. Genuine Parts Co., Inc*., 128 F.3d 1267, 1272 (8th Cir. 1997)).

[30] *See* June 14, 2018 Tr. at 16-17; Civil Judgment (ECF No. 1767) (June 19, 2018). At no time prior to entry of judgment did the DPPs ever suggest that the verdict supports an entry of judgment for them.

[31] *See* Verdict Form (ECF No. 1763) (June 15, 2018).

judgment . . . ."[32] The "clear legal error" standard is "a very high hurdle to leap over."[33] "A final judgment must not be just possibly wrong, or even probably wrong, it must be 'dead wrong' to constitute clear error."[34] Additionally, "[a] motion for reconsideration is not an opportunity to relitigate issues that have been thoroughly addressed before."[35] Nor can it be used to raise arguments that that the movant "could have made but neglected to make before judgment."[36] Instead, the movant "must base its motion on arguments that were previously raised but were overlooked by the Court . . . ."[37]

Here, the DPPs are re-litigating issues that this Court thoroughly addressed on two separate occasions. The DPPs argue, again, that every conspiracy to reduce supply is *per se* unlawful and that a court cannot apply different standards of analysis to different components of the alleged conspiracy. Section I.B. of the DPPs' Memorandum of Law, which argues that "a

---

[32] Mem. Supp. Pls.' Motion to Alter or Amend the Judgment at 2-3.

[33] *Shearer v. Titus (In re Titus)*, 479 B.R. 362, 367 (Bankr. W.D. Pa. 2012).

[34] *Mt. McKinley Ins. Co. v. In re Pittsburgh Corning Corp. (In re Pittsburgh Corning Corp.)*, Nos. 00-22876-TPA, 9443, 9444, 9445, 9446, 9447, 9471, 2013 Bankr. LEXIS 4782, at *8 (Bankr. W.D. Pa. Nov. 12, 2013) (quoting *Lardner v. F.B.I.*, 875 F. Supp. 2d 49, 53 (D.D.C. 2012)) (other citation omitted).

[35] *Harris*, 2013 U.S. Dist. LEXIS 144103, at *10-11. *See also Pollock v. Energy Corp. of Am.*, 665 F. App'x 212, 218 (3d Cir. 2016) (quoting *Youghiogheny & Ohio Coal Co. v. Milliken*, 200 F.3d 942, 954 (6th Cir. 1999) (quoting *Glendon Energy Co. v. Borough of Glendon*, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993))) (holding that a Rule 59(e) motion "is not properly founded on a request that the Court 'rethink what [it] had already thought through—rightly or wrongly.'"). *See also Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010) ("advanc[ing] the same arguments that were in [the movant's] complaint and motions . . . is not a proper basis for reconsideration").

[36] *United States v. Jasin*, 292 F. Supp. 2d 670, 677 (E.D. Pa. 2003) (quoting *Reich v. Compton*, 834 F. Supp. 753, 755 (E.D. Pa. 1993)).

[37] *Jasin*, 292 F. Supp. 2d at 676. *See also Pollock*, 665 F. App'x at 218 (upholding a district court's denial of a motion to reconsideration where the movant "[did] not offer any new law, evidence, or argument that, *because overlooked*, reveals a 'clear error of law'") (emphasis added).

conspiracy to reduce supply is *per se* illegal[,]"[38] is simply a copy-and-paste version of the arguments in their Post-Hearing Submission Regarding *Per Se* Liability (from the IPP and DAP actions).[39] Section I.C. of the DPPs' Memorandum of Law, which argues that "a single conspiracy cannot be separated out" and must "be considered 'as a whole,'"[40] relies on the same quote from *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962), and the same Second Circuit *Apple* opinion, that the DPPs unsuccessfully cited in that Post-Hearing Submission.[41]

    The Court did not overlook these arguments. It rejected them in its ruling on certain Defendants' summary judgment motions on liability in the IPP and DAP actions. The Court held that "[t]he *per se* rule is appropriate only in instances where 'the business practice in question is one, which on its face, has no purpose except stifling of competition.'"[42] The Court noted the opinion in *In re Mushroom Direct Purchase Antitrust Litigation*, which held that "the rule of reason is the default position and can be applied to horizontal restraints . . . if they do not fit into existing categories of *per se* violations."[43] And the Court found that *Continental Ore* did not address "whether separate conduct . . . in a given conspiracy can or should be evaluated under the *per se* analysis or rule of reason."[44] The Court instead relied on *Leegin*, which "explained the

---

[38] Mem. Supp. Pls.' Motion to Alter or Amend the Judgment at 4.

[39] *See* DPPs' Post-Hearing Submission Regarding *Per Se* Liability at 1-2 (ECF No. 1391) (Apr. 4, 2016) (FILED UNDER SEAL).

[40] Mem. Supp. Pls.' Motion to Alter or Amend the Judgment at 6-7.

[41] *See* DPPs' Post-Hearing Submission Regarding *Per Se* Liability at 8-10.

[42] Memorandum Op. at 10 (ECF No. 1437) (Sept. 9, 2016) (quoting *Eichorn v. AT&T Corp.*, 248 F.3d 311, 143 (3d Cir. 2001)).

[43] *Id.* (quoting *In re Mushroom Direct Purchaser Antitrust Litig.*, No. 06-0620, 2015 U.S. Dist. LEXIS 143331, *71 (E.D. Pa. May 26, 2015)) (further citation omitted).

[44] *Id.* at 11.

necessity of applying different modes of legal analysis (i.e. *per se* versus rule of reason) when analyzing the legality of separate aspects of a single conspiracy."[45] The Court also reaffirmed each of those findings in its ruling denying the DPPs' Motion to Confirm.[46] Plaintiffs cannot use Rule 59(e) to get a third bite at an apple they have bitten twice before.

The Court's previous decisions on the Rule of Reason were correct. A conspiracy "to reduce supply" is not necessarily *per se*.[47] It is not the label used to describe the alleged conspiracy that controls whether *per se* or Rule of Reason applies, but rather the nature of the conduct that comprises the alleged conspiracy.[48] "*Per se* illegality is limited to those practices that are naked restraints lacking any procompetitive virtues."[49] In particular, "[p]*er se* rules are invoked when . . . circumstances make the likelihood of anticompetitive conduct so great as to

---

[45] *Id.* (citing *Leegin Creative Leather Prods. v. PSKS, Inc.*, 551 U.S. 877, 895, 127 S. Ct. 2705 (2007)); *see also id.* at 12-13. The DPPs' motion for reconsideration now disputes the Court's interpretation of *Leegin*, arguing that it applied only to cases involving separate horizontal and vertical conspiracies. *See* Mem. Supp. Pls.' Motion to Alter or Amend the Judgment at 7. But the DPPs ignore the Court's additional citation to *In re Mushroom Direct Purchase Antitrust Litigation*, *see* Memorandum Op. at 14 (ECF No. 1437) (Sept. 9, 2016), which applied the rule of reason to a single conspiracy with both "vertical and horizontal aspects." *In re Mushroom Direct Purchaser Antitrust Litig.*, 2015 U.S. Dist. LEXIS 143331, at *69.

[46] *See* Memorandum Op. at 1, 6-7 (ECF No. 1586) (Feb. 9, 2018).

[47] *In re Sulfuric Acid Antitrust Litig.*, 703 F.3d 1004, 1011-12 (7th Cir. 2012) (finding no error in the district court's decision to treat a horizontal supply restriction case under the rule of reason). *Cf. Luke Bros. v. Krusell*, No. 94-11701-MLW, 1997 U.S. Dist. LEXIS 23589, at *27-28 (D. Mass. June 27, 1997) ("even when a litigant characterizes a restraint as a form of 'price fixing,' courts do not apply per se treatment unless they are satisfied that the challenged practice is of a type that is worthy of that sometimes overused label").

[48] *See Broad. Music, Inc. v. Columbia Broad. Sys., Inc.*, 441 U.S. 1, 8, 99 S. Ct. 1551 (1979) ("easy labels do not always supply ready answers.").

[49] *Pocono Invitational Sports Camp, Inc. v. NCAA*, 317 F. Supp. 2d 569, 584 n.18 (E.D. Pa. 2004) (quoting Irving Scher, ANTITRUST ADVISOR 1-16 (4th ed. 2001)); *see also Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*, 792 F.2d 210, 229 (D.C. Cir. 1986) ("In *BMI*, *NCAA*, and *Pacific Stationery*, the Supreme Court returned the law to the formulation of *Addyston Pipe & Steel* and thus effectively overruled *Topco* and *Sealy* as to the *per se* illegality of all horizontal restraints.").

render unjustified further examination of the challenged conduct."[50] "Courts will not declare a restraint *per se* illegal unless they have had considerable experience examining the restraint and the industry in question."[51] And in this case, the Court found that the Certified Program does not inherently reduce supply; producers were free to increase production.[52] The Court further found that "the plausible presence of certain procompetitive aspects . . . renders it necessary and appropriate to evaluate the plaintiffs' claims under the rule of reason."[53] That was borne out at trial, with evidence that egg producers like Rose Acre dramatically increased production while the Certified Program produced numerous procompetitive benefits.[54]

The DPPs hope to avoid the Court's earlier rulings and clear case law by arguing that the finding of an "overarching conspiracy" could only have been made if the jury found an

---

[50] *Nat'l Collegiate Athletic Ass'n v. Bd. of Regents*, 468 U.S. 85, 103-104, 104 S. Ct. 2948 (1984). *See also Continental T. V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 58-59 (1977) ("[D]eparture from the rule-of-reason standard must be based upon demonstrable economic effect rather than . . . formalistic line drawing.").

[51] *Pocono Invitational Sports Camp,* 317 F. Supp. 2d at 584 n.18 (quoting Irving Scher, ANTITRUST ADVISOR 1-16 (4th ed. 2001)). *See also In re Se. Milk Antitrust Litig.*, 739 F.3d 262, 271 (6th Cir. 2014) ("Applying [the *per se*] standard, then, should be done reluctantly and infrequently, informed by other courts' review of the same type of restraint, and only when the rule of reason would likely justify the same result.") (citing *Leegin Creative Leather Prods.*, 551 U.S. at 886).

[52] Memorandum Op. at 19-20 (ECF No. 1437) (Sept. 9, 2016) ("As noted above, the record contains evidence that the aggregate national egg supply increased during the conspiracy period. . . . Similarly, while the plaintiffs argue that the supply reducing effects of the conspiracy are essentially undisputable, the record includes evidence that egg supply actually *increased* during the conspiracy period.").

[53] *Id.* at 22.

[54] *See, e.g.*, May 11, 2018 Tr. at 213:16-215:25, 219:25-222:21 (M. Rust); May 14, 2018 Tr. at 109:8-110:15, 134:13-135:2 (M. Rust); May 15, 2018 Tr. at 40:22-41:8, 42:25-43:9, 45:10-48:21, 55:13-20, 64:4-20, 66:10-68:14, 72:22-25 (M. Rust); May 17, 2018 Tr. at 59:15-60:2, 65:2-69:6, 83:14-85:10, 167:17-168:16 (J. Armstrong); May 22, 2018 Tr. at 30:6-31:16, 32:2-33:9, 34:1-6, 40:12-50:2 (G. Hinton); May 22, 2018 Tr. at 150:3-6, 152:1-6, 154:2-9, 162:25-166:11, 169:3-169:25, 170:4-190:5 (D. Hurd); May 29, 2018 Tr. at 122:18-127:6 (J. David); Def. Exs. 19, 44, 272, 441, 602, 630, 805, 808 & 1008; Pltf. Exs. 8 & 177.

"agreement with an *unlawful* purpose," and that an unlawful purpose necessarily means a *per se* unlawful agreement.[55] But the language used in the jury instructions is simply the language used to define "concerted conduct" (or, to use the language of the statute, "contract, combination . . . or conspiracy") under Section 1.[56] That language does not define whether the agreement at issue must be judged under the *per se* standard or Rule of Reason.

The jury's verdict validates the Court's rejection of the *per se* standard. The jury's answer "No" to Question 3 indicates an underlying finding that either the conspiracy did not result "in higher prices, decreased output, lower quality, or the loss of some other competitive benefits," or any "competitive harm [did] not substantially outweigh the competitive benefits . . . ."[57] Thus, the jury verdict does not "supersede[ ] the [Court's] reasoning" on the Rule of Reason, as Plaintiffs assert.[58] Instead, it *affirms* that the conspiracy was not "plainly anticompetitive"[59] or lacking in "redeeming benefits"[60] and that the Rule of Reason was the appropriate standard to apply.

---

[55] Mem. Supp. Pls.' Motion to Alter or Amend the Judgment at 3 (some emphasis omitted).

[56] *See* June 5, 2018 Tr. at 129 (instructing the jury that "The basis of a conspiracy is an agreement or an understanding between two or more persons or companies. Here, an agreement or understanding between two or more persons or companies exists when they share a commitment to a common scheme to achieve an unlawful purpose."). As the Court is well aware, Section 1 requires both a finding of concerted conduct (*i.e.*, agreement) *and* that the challenged conduct was unreasonable. *See, e.g., In re Mushroom Direct Purchaser Antitrust Litig.*, 2015 U.S. Dist. LEXIS 143331, at *42. In *per se* cases, the second element is presumed. *See id.* at *46. But the finding of an "agreement" is critical under both the *per se* standard and the Rule of Reason alike.

[57] June 5, 2018 Tr. at 133-134, 136.

[58] Mem. Supp. Pls.' Motion to Alter or Amend the Judgment at 6.

[59] *Texaco Inc. v. Dagher*, 547 U.S. 1, 5, 126 S. Ct. 1276, 1279 (2006) (quoting *National Soc. of Professional Engineers v. United States*, 435 U.S. 679, 692, 98 S. Ct. 1355 (1978)).

[60] *In re Sulfuric Acid Antitrust Litig.*, 703 F.3d at 1012.

## II. PLAINTIFFS DID NOT PROPERLY PRESERVE THEIR OBJECTIONS TO THE JURY INSTRUCTIONS AND VERDICT FORM.

Under the DPPs' theory, a finding that an overarching conspiracy existed and that at least one of the Defendants participated in such a conspiracy necessarily compels *per se* treatment. In essence, then, the DPPs are now objecting to the inclusion of Question 3 on the verdict form, and to the instruction that the jury end its deliberations if it answered "No" to Question 3. But the DPPs never once objected to Question 3 or to the verdict form's instruction that a negative answer should terminate the jury's deliberations. It is simply too late to object now.

Moreover, the DPPs' motion argues that, even if the Rule of Reason applies to the Certified Program alone, it was inappropriate to apply that standard to a conspiracy that included two other elements – the short-term supply recommendations and USEM exports – that might "be subject to *per se* analysis if viewed independently."[61] The Court, however, directly invited the parties to brief the standard that applied to those two elements.[62] For whatever reason, the DPPs declined the invitation. In fact, they conceded on the record that the jury should evaluate their overarching conspiracy claim under the Rule of Reason.[63] In doing so, the DPPs waived any objection to the Court's application of the Rule of Reason to the DPPs' overarching conspiracy claims.

It is fundamental that a party must object to a jury instruction "on the record, stating distinctly the matter objected to and the grounds for the objection."[64] Numerous district courts

---

[61] Mem. Supp. Pls.' Motion to Alter or Amend the Judgment at 9.

[62] *See* Memorandum Op. at 6 n. 3 (ECF No. 1586) (Feb. 9, 2018).

[63] *See* Mar. 13, 2018 Tr. at 177:24 – 178:4.

[64] Fed. R. Civ. P. 51(c)(1). *See also* Fed. R. Civ. P. 51(c)(2)(A) (stating that "[a]n objection is timely if . . . a party objects at the opportunity provided under Rule 51(b)(2)") and 51(b)(2) (stating that the Court "must give the parties an opportunity to object on the record and out of the jury's hearing before the instructions and arguments are delivered").

13

within the Third Circuit have denied relief under Rule 59(e) to a party that failed to properly preserve objections to allegedly deficient jury instructions or verdict forms.[65] Those trial court decisions are consistent with the Third Circuit's strict holding that preserving objections to jury instructions under Fed. R. Civ. P. 51 requires explicit, on-the-record objections.[66] "By mandating on-the-record exceptions, and imposing a penalty for failure to enter them, Rule 51 serves the critical purpose of apprising the trial court of possible errors in the charge and affording the court and the parties an opportunity for correction before submission of the case to the jury."[67]

In the case here, the DPPs did more than merely waive or forfeit an objection to the issue they now raise in their Rule 59(e) motion. They affirmatively asked the Court, on multiple occasions, to provide the very instructions and verdict-form questions that they now complain impermissibly allowed the jury to apply the Rule-of-Reason analysis to a *per se* conspiracy. The DPPs did state, on March 13, 2018, that they "would preserve their right to appeal the Court's earlier determinations on the Rule of Reason . . . ."[68] Preserving that objection, however, did not preserve any objection to the jury's application of the Rule of Reason to the overarching

---

[65] *See, e.g.*, *Wright v. Cacciutti*, No. 3:12-CV-1682, 2015 U.S. Dist. LEXIS 75921 (M.D. Pa. June 11, 2015) (holding, in a negligence action, that the defendants could not object to the court's jury instructions on past medical expenses through a Rule 59(e) motion, because they had not clearly objected to those instructions on the record); *Thompson v. Petrof*, No. 1:10-cv-123-MRH, 2014 U.S. Dist. LEXIS 64813 (W.D. Pa. May 12, 2014) (finding that a plaintiff had waived challenges to the verdict form in her Section 1983 case by failing to raise them until her Rule 59(e) motion).

[66] *See, e.g.*, *Franklin Prescriptions, Inc. v. New York Times Co.*, 424 F.3d 336 (3d Cir. 2005) (holding in a defamation case that the plaintiff's submission of a formal request for a presumed damages charge, and the plaintiff's argument for that instruction during the *in camera* charging conference, still did not properly preserve an objection to the district court's failure to give a presumed damages instruction under Rule 51; plaintiff failed to lodge an on-the-record objection to that aspect of the instructions or the related aspects of the special verdict form).

[67] *Id.* at 340 (citing *Fashauer v. N.J. Transit Rail Operations*, 57 F.3d 1269, 1288 (3d Cir. 1995)).

[68] Mar. 13, 2018 Tr. at 178:5-6.

conspiracy. The DPPs were obligated to object to the verdict form and jury instructions clearly and unambiguously on the record. In the end, the DPPs kept quiet. The DPPs cannot remedy that silence now by raising objections post-trial in a motion for reconsideration. The DPPs' objections to the Court's reliance on the Rule of Reason in its jury instructions and verdict form have been waived.

## CONCLUSION

The DPPs have presented no new evidence, and demonstrated no clear error of law, that would justify reversing the jury's verdict for Rose Acre Farms and empanelling a new jury. Instead, the DPPs have simply recycled their prior arguments on the Rule of Reason. The Court rejected those arguments twice before and should reject them a third time here. And to the extent the DPPs now seek to challenge the Court's application of the Rule of Reason to their overarching conspiracy claim, rather than applying the *per se* standard to their supply recommendation and USEM export claims independently, they waived that objection by failing to raise it before or at trial. For all of these reasons, Defendant Rose Acre Farms respectfully requests that this Court deny the DPPs' Motion to Alter or Amend the Judgment.

DATED: July 26, 2018　　　　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　　　/s/ Donald M. Barnes
　　　　　　　　　　　　　　　　　　　　　Donald M. Barnes
　　　　　　　　　　　　　　　　　　　　　Jay L. Levine
　　　　　　　　　　　　　　　　　　　　　James A. King
　　　　　　　　　　　　　　　　　　　　　Eric B. Gallon

　　　　　　　　　　　　　　　　　　　　　PORTER, WRIGHT, MORRIS & ARTHUR, LLP
　　　　　　　　　　　　　　　　　　　　　2020 K Street, NW, Suite 600
　　　　　　　　　　　　　　　　　　　　　Washington, DC 20006
　　　　　　　　　　　　　　　　　　　　　Telephone: (202) 778-3056
　　　　　　　　　　　　　　　　　　　　　Facsimile: (202) 778-3063
　　　　　　　　　　　　　　　　　　　　　dbarnes@porterwright.com
　　　　　　　　　　　　　　　　　　　　　jlevine@porterwright.com

　　　　　　　　　　　　　　　　　　　　　41 S. High Street, Suite 3100
　　　　　　　　　　　　　　　　　　　　　Columbus, OH 43215-6194
　　　　　　　　　　　　　　　　　　　　　Telephone: (614) 227-2000
　　　　　　　　　　　　　　　　　　　　　Facsimile: (614) 227-2100
　　　　　　　　　　　　　　　　　　　　　jking@porterwright.com
　　　　　　　　　　　　　　　　　　　　　egallon@porterwright.com

　　　　　　　　　　　　　　　　　　　　　***Counsel for Defendant Rose Acre Farms, Inc.***

## **CERTIFICATE OF SERVICE**

On this, the 26th day of July, 2018, I hereby certify that Defendant Rose Acre Farms' Response in Opposition to the Direct Purchaser Plaintiffs' Motion to Alter or Amend the Judgment and Proposed Order were filed and served on all counsel of record via the Court's ECF system.

/s/ James A. King

James A. King
PORTER WRIGHT MORRIS & ARTHUR LLP
41 South High Street, Suite 2900
Columbus, Ohio 43215
Telephone: 614-227-2051
Facsimile: 614-227-2100