IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: PROCESSED EGG PRODUCTS ANTITRUST LITIGATION | : : : : : | MULTIDISTRICT LITIGATION |
| THIS DOCUMENT APPLIES TO: ALL DIRECT PURCHASER ACTIONS | : : | No. 08-md-2002 |

**M E M O R A N D U M**

PRATTER, J.                                                                                                                                           DECEMBER 13, 2018

For the third time in this decade long litigation, the Direct Purchaser Plaintiffs (DPPs) ask the Court to rule that Defendant Rose Acre Farms committed a *per se* antitrust violation.[1] And, for the third time, the Court will decline to do so. In this instance, the DPPs move under Fed. R. Civ. P. 59(e) to ask the Court to alter the judgment in light of the jury's conclusion that Rose Acre participated in a tripartite scheme that amounted to a conspiracy to reduce egg supply. Because there is no new evidence and no clear error of law to support altering the jury's verdict under Rule 59(e), the Court denies the motion.

**BACKGROUND**

The facts of this case are well documented in the Court's prior rulings. *See e.g., In re Processed Egg Products Antitrust Litig.*, 206 F. Supp. 3d 1033 (E.D. Pa. 2016); *In re Processed Egg Products Antitrust Litig.*, No. 08-2002, 2018 WL 813895 (E.D. Pa. Feb. 9, 2018). By way of a brief summary, the plaintiffs allege that the defendants participated in a multi-prong price-fixing scheme designed to decrease the supply of eggs and thereby increase egg prices. At issue in this

---

[1]     The DPPs only file this motion against Rose Acre, presumably because the jury apparently concluded that Rose Acre participated in the alleged conspiracy.

motion, once again, is whether the Court should have applied the rule of reason analysis or *per se* rule for antitrust violations.

In 2016, the Court ruled on summary judgment motions between and among certain defendants, the Direct Action Plaintiffs (DAPs), and the Indirect Purchaser Plaintiffs (IPPs). This ruling did not directly or expressly apply to the DPPs who filed this motion. At that time, the DPPs were given leave to file "post hearing briefing addressing the arguments regarding the applicability of the *per se* rule," and they raised substantially similar arguments to those made by the DAPs and IPPs. *In re Processed Egg Products Antitrust Litig.*, 206 F. Supp. 3d at 1047 n.5.

At the summary judgment stage, the plaintiffs argued that the collective actions in furtherance of the conspiracy (i.e., the United Egg Producers (UEP) Certified Program, the United States Egg Marketers export program, and other alleged supply-reducing conduct) should be viewed as a singular attempt by the defendants to artificially reduce egg supply and that conspiracies to reduce egg supply are *per se* unlawful. The summary judgment opinion declined to view all three elements as one conspiracy because "the plaintiffs' characterization of the defendant's conduct as comprising a single conspiracy as dispositive for purposes of application of *per se* or rule of reason analysis would completely subsume the rule of reason in most, if not all circumstances." *Id.* at 1040.

Instead, the opinion's holding was limited to the UEP Certified Program because the defendants had only moved for summary judgment on that program.[2] The Court declined to consider which rule applied to "the alleged instrumentalities of the conspiracy that are not formal

---

[2] This program issued certifications to egg producers if those producers complied with the UEP's animal husbandry guidelines. The plaintiffs claim that these guidelines depressed egg supply by, among other things, increasing cage space per chicken. A more detailed discussion of the relevant portions of the UEP Certified Program is explained in this Court's summary judgment ruling addressing the same issue. *See In re Processed Egg Products Antitrust Litig.*, 206 F. Supp. 3d 1033.

components of the UEP program–such as the export program, the agreement to limit new construction, the chick-hatch reductions, the forced molts, and the coordinated slaughter of hens." *Id.* at 1040 n.2. Ultimately, the Court concluded that the UEP Certified Program should be considered under the "rule of reason" rubric because there was no express agreement to restrict supply and there was contrary evidence that the UEP Certified Program provided certain procompetitive benefits.

In January 2018, the DPPs filed a "Motion for Confirmation of Application of *Per Se* Rule." They sought to confirm that the Court's 2016 summary judgment ruling did not apply to their "single conspiracy to reduce supply [that] was effectuated through three principle categories of conduct." DPPs Motion for Confirmation of Application of *Per Se* Rule at 5 (Doc. No. 1574). The Court denied the motion and confirmed that the rule of reason would also apply to the UEP Certified Program in the DPPs' case. However, the Court declined to analyze the other components of the alleged scheme because the DPPs focused on waiver-based arguments. In a footnote, the opinion stated:

> While the DPPs ask to "confirm" that all components of the alleged scheme fall under the *per se* rule, the only issue that both parties ask the Court to determine is the standard for the UEP Certified Program. Given the DPPs' focus on waiver-based arguments, if the parties wish the Court to rule on the merits of other components, the Court requires a separate and specific motion with briefing on the merits of those issues, and the issues must be individually articulated.

*In re Processed Egg Products Antitrust Litig.*, 2018 WL 813895 at *3 n.3 (E.D. Pa. Feb. 9, 2018). Neither party filed any specific motion on the merits of the other components.

Trial commenced on the basis of application of rule of reason analysis on the question of whether there was a single conspiracy among adherents to several component parts to reduce the supply of eggs and thereby increase prices. Motions Hearing, March 13, 2018 Tr. at 177–78

3

("Plaintiffs are prepared to try the case under the rule of reason on the single question of whether there was a single conspiracy to reduce the supply of eggs and thereby raise prices. So that it would be just a one-question case, whether there was a single conspiracy."). The plaintiffs also preserved "their right to appeal the Court's earlier determinations on the rule of reason and supplemental expert reports." *Id.* at 178.

In May 2018, the DPPs' case proceeded to trial as outlined above. After six weeks of trial and six days of jury deliberations, the jury rendered a verdict in favor of the defendants. In particular, the jury found by a preponderance of the evidence that "there was a single overarching conspiracy to reduce supply comprised of all three of (1) short term supply recommendations, (2) the United Egg Producers (UEP) Certified Program, and (3) United States Egg Marketers (USEM) exports[.]" Verdict Form (Doc. No. 1763). The jury also found that Rose Acre Farms was the only defendant that participated in the conspiracy to reduce supply. *Id.* Finally, however, the jury concluded that the conspiracy did not impose an unreasonable restraint on supply. *Id.*

## DISCUSSION

The DPPs move to alter or amend the judgment under Fed. R. Civ. P. 59(e). "A proper Rule 59(e) motion . . . must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." *Laziridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010); *see also Wiest v. Lynch*, 710 F.3d 121, 128 (3d Cir. 2013): *United States v. Fiorelli*, 337 F.3d 282, 288 (3d Cir. 2003) (internal quotation marks omitted) ("A motion under Rule 59(e) is a device to relitigate the original issue decided by the district court, and used to allege legal error."). The DPPs have a "heavy burden" in seeking relief under Rule 59. *Impala Platinum Holdings Ltd. V. A-1 Specialized Xervs. & Supplies, Inc.*, No. 16-1343, 2017 WL 2840352, at *5 (E.D. Pa. June 30, 2017); *see also Cont'l Cas. Co. v. Diversified Indus., Inc.*, 884 F. Supp. 937, 943 (E.D. Pa. 1995) ("Because federal

4

courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly.").

Here, the DPPs contend that their motion is meritorious because there is both new evidence in the form of the jury's verdict and a need to correct a clear error of law in the Court's application of the rule of reason to the overarching conspiracy. The DPPs argue that the Court *must* enter judgment in their favor against Rose Acre and set a new trial to determine damages.

I. **The Jury's Verdict is Not Evidence for Purposes of Rule 59(e)**

The DPPs contend that the jury verdict constitutes new evidence that warrants reconsideration of the judgment under Rule 59(e). District courts within the Third Circuit have stated that "'new evidence' means material discovered after a judgment or order that could not have been found with due diligence beforehand and that could be used to prove a fact." *In re Commonwealth's Motion to Appoint New Counsel Against or Directed to Defender Ass'n of Phila.*, No. 13-62, 2013 WL 5498152, at *1 (E.D. Pa. Oct. 3, 2013); *see also Evidence*, BLACK'S LAW DICTIONARY (10th Ed. 2014) (defining evidence as "[s]omething (including testimony, documents, and tangible objects) that tends to prove or disprove the existence of an alleged fact; anything presented to the senses and offered to prove the existence or nonexistence of a fact" and newly discovered evidence as evidence "existing at the time of a motion or trial but then unknown to a party, who, upon later discovering it may assert it as grounds for reconsideration or a new trial"). A jury verdict is a "jury's finding or decision on the factual issues of a case." *Verdict*, BLACK'S LAW DICTIONARY (10th Ed. 2014).

By definition, the jury's verdict could not have existed at the time the Court issued its previous rulings on the application of the rule of reason or the *per se* rule to this case. But, in the first logical instance, the Court does not consider the jury's verdict to be "evidence" within the

5

meaning of Rule 59(e). What the DPPs really want is for the Court to consider the jury's verdict as confirmation of the plaintiffs' theory that there was one overarching conspiracy to reduce supply and then apply the *per se* rule to that conspiracy. This argument is more appropriate for arguing under the third justification of a Rule 59(e) motion—the need to correct clear error of law or manifest injustice.

## II. Application of the Rule of Reason Was Not a Clear Error of Law

Although the DPPs agreed to try the case under the rule of reason, they did so "only on the understanding that they reserved the right to argue that *per se* analysis should be applied." Mot. to Alter at 6 n.2 (Doc. No. 1788). The DPPs make that argument now. The DPPs believe that the Court made a clear error of law in applying the rule of reason instead of the *per se* rule to the overall conspiracy. They contend that: (1) the jury found that Rose Acre participated in an overarching conspiracy to reduce supply; (2) a conspiracy to reduce supply is *per se* illegal; and, (3) the Court's order requiring application of the rule of reason to the UEP Certified Program is inconsistent the jury's findings that there was an overarching conspiracy to reduce supply.

The DPPs argue that it is legally incoherent for the Court to apply the rule of reason to the overall conspiracy considering the jury's verdict and case law that states that a conspiracy to reduce supply is *per se* illegal. *See e.g. Leegin Creative Leather Prod., Inc. v. PSKS, Inc.*, 551 U.S. 877, 893 (2007) ("A horizontal cartel among competing manufacturers or competing retailers that decreases output or reduces competition in order to increase price is, and ought to be, *per se* unlawful."); *Nat'l Collegiate Athletic Ass'n v. Bd. Of Regents of Univ. of Okla.*, 468 U.S. 85, 99 (1984) ("By restraining the quantity of television rights available for sale, the challenged practices create a limitation on output; our cases have held that such limitations are unreasonable restraints of trade."); *In re Domestic Drywall Antitrust Litig.*, 163 F. Supp. 3d 175, 254 n.67 (E.D. Pa. Feb.

6

18, 2016) ("It is a well-known antitrust principle that any concerted restrictions of output are *per se* illegal."). The DPPs state that the "jury verdict supersedes the reasoning the Court employed" in its decisions at summary judgment and on the motion for confirmation. Mot. to Alter at 6 (Doc. No. 1788).

Essentially, the DPPs argue that the jury verdict proved their theory of the case correct. The DPPs now ask the Court to take into consideration the jury's answer to Question 1 on the Verdict Form and apply the *per se* rule to the overarching conspiracy. The DPPs certainly do not present any new legal arguments. Instead, they rely on what has been their argument all along—this is a case about a restraint on the supply of eggs and restraints on supply are *per se* illegal—with the added feature that the jury has now concluded that Rose Acre participated in a three-part effort to reduce the supply of eggs.

As this Court has previously summarized, in this litigation:

> To establish an actionable antitrust violation, a plaintiff must show (1) concerted action by the defendants, (2) that this concerted action resulted in a restraint on trade and (3) that this restraint was unreasonable. 15 U.S.C. § 1; *Santana Prod., Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 131 (3d Cir. 2005). Because every agreement among competitors will inevitably restrain trade in some manner, the Supreme Court has read into the Sherman Act a "reasonableness requirement." *White Motor Co. v. United States*, 372 U.S. 253, 261–62 (1963) (citing *Bd. of Trade of City of Chicago v. United States*, 246 U.S. 231, 238 (1918)).

> The rule of reason is the "usual standard" to determine if challenged conduct unreasonably restrains trade. *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 315 (3d Cir. 2010) (citing *Leegin Creative Leather Products, Inc. v. PSKS, Inc.*, 551 U.S. 877, 882 (2007)); *In re Processed Egg Products Antitrust Litig.*, 206 F. Supp. 3d 1033 (E.D. Pa. 2016). But some actions are *per se* antitrust violations. The *per se* rule is appropriate only in instances where "the business practice in question is one, which on its face, has no purpose except stifling of competition." *Eichorn v. AT&T Corp.*, 248 F.3d 131, 143 (3d Cir. 2001), *as amended* (June 12, 2001) (citing *White Motor Co. v. United States*, 372 U.S. 253, 262 (1963)).

7

*In re Processed Egg Products Antitrust Litig.*, 2018 WL 813895, at *3. This Court has also previously concluded that evaluating "the legality of the individual business practices making up the alleged conspiracy is entirely consistent with the Supreme Court's directive that use of the *per se* analysis should be sparing and deliberate." *In re Processed Egg Products Antitrust Litig.*, 206 F. Supp. 3d at 1043.

The jury's verdict in this case does not change the way this Court analyzed the facts and applied the case law at the summary judgment and motion to confirm stages. The Court concluded that there was evidence that there were pro-competitive benefits to, at the very least, the UEP Certified Program and applied the rule of reason to that program. *See In re Processed Egg Products Antitrust Litig.*, 206 F. Supp. 3d at 1045 ("The Court, however, finds that the UEP Certified Program does not involve an express agreement among competitors to restrain supply and that the record contains evidence indicating that the certified program provided certain procompetitive benefits."); *In re Processed Egg Products Antitrust Litig.*, 2018 WL 813895, at *4 (applying the rule of reason to the UEP Certified Program in the DPPs case because of the duplicative facts).

The DPPs now ask the Court to go back and undo and unwind years of reasoned and litigated legal analysis because of one aspect of the jury's factual conclusions. In their motion, the DPPs state, "Indeed Plaintiffs pleaded that there was an overarching conspiracy, that is what the jury decided, and the legal analysis must conform to the pleading and proof." Mot. to Alter at 7 (Doc. No. 1788). But the Court's legal analysis does not have to conform to the subsequent jury's verdict; the jury's verdict is instead an outgrowth of the Court's legal rulings because those rulings create the universe in which the jury makes its decisions. The Court made the legal decision that the rule of reason applied to the UEP Certified Program. *Deutscher Tennis Bund v. ATP Tour,*

8

*Inc.*, 610 F.3d 820, 829 n.7 (3d Cir. 2010) ("The selection of a mode of antitrust analysis is a question of law . . . ."). The DPPs then opted to try the case under the rule of reason as one overarching conspiracy. When the jury applied the rule of reason to the facts of the case, beyond concluding that Rose Acre participated in a tripartite scheme to reduce supply, the jury also determined that the supposed conspiracy did not impose an unreasonable restraint on supply—a verdict that is entirely consistent with the rule of reason. The Court declines to reconsider its prior legal analysis because of the jury's answer to the first question on the verdict form.

## CONCLUSION

For the reasons outlined in this Memorandum, the DPPs' motion to alter or amend is denied. An appropriate order follows.

BY THE COURT:

/s/ Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE