## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE:  PROCESSED EGG PRODUCTS          )
ANTITRUST LITIGATION                    )
                                        )
THIS DOCUMENT APPLIES TO:               )          MDL No. 2002
                                        )
All Direct Action (Non-Class) Plaintiffs' Cases  )          Civil Action No.:  08-md-02002
                                        )


## PLAINTIFFS' PROPOSED JURY INSTRUCTIONS
## FOR THE LIABILITY PHASE (Revised)

## TABLE OF CONTENTS

Introduction .................................................................................................................... 1

Statement of Case; Summary of Applicable Law; Preponderance of the Evidence .............. 3

Evidence ......................................................................................................................... 6

Burden of Proof .............................................................................................................. 8

Direct and Circumstantial Evidence ................................................................................. 10

Credibility of Witnesses .................................................................................................. 11

Expert Witnesses ............................................................................................................ 14

Conflicting Expert Testimony .......................................................................................... 15

Co-Conspirator Statements and Co-Conspirator Liability ................................................. 16

Lawyer Interviewing Witness ........................................................................................... 18

Adverse Inference from Missing Witness .......................................................................... 19

Purpose of the Sherman Act ............................................................................................ 20

The Sherman Act, Section 1 ............................................................................................ 21

Agreement to Reduce Supply Is *Per Se* Unlawful ........................................................... 23

Contract, Combination or Conspiracy – Definition, Existence, and Evidence ...................... 25

Parallel Conduct and Direct Agreement ........................................................................... 28

Rule of Reason – Overview .............................................................................................. 31

Proof of Competitive Harm ............................................................................................. 32

Rule of Reason, Evidence of Competitive Benefits ............................................................ 35

Rule of Reason – Balancing the Competitive Effects .......................................................... 36

Animal Welfare Is Not Part of the Rule of Reason Analysis ............................................... 37

Balancing Anticompetitive and Procompetitive Effects ..................................................... 40

**Good Intent Not a Defense**........................................................................43

**Reasonableness of Prices No Excuse**.........................................................44

**Corporations** ...............................................................................................45

**Participation and Intent**.............................................................................47

**Trade Organization May Commit Antitrust Violations**...........................49

**Liability of Association for Acts of an Agent** ...........................................51

**Apparent Authority of an Agent of a Trade Association**..........................52

**Liability of Member for Acts of Association**.............................................54

**Injury and Causation** .................................................................................55

**Business or Property** ..................................................................................58

**Deliberations** ..............................................................................................59

**Proposed Instruction No. ___:  Introduction**

Members of the Jury:

Now that you have heard all of the evidence that has been admitted in this trial and the arguments of counsel, it is my duty to give you the final instructions as to the law that is applicable to this case.  Use these instructions to guide you in your deliberations.

All of the instructions of law I gave you at the beginning of the trial, during the trial, and these final instructions must guide and govern your deliberations.  It is your duty to follow the law, as stated, in all of the instructions of the Court and to apply these rules of law to the facts as you find them from the evidence received during the trial.  Counsel has referred to some of the applicable rules of law and the Court's instructions.  They are permitted to do so.  However, if any difference appears to you between the law as stated by counsel and that as stated by the Court, you, of course, are to be governed by the instructions told to you by the Court.

You are not to single out any one instruction alone as stating the law, but you must consider the instructions as a whole in reaching your decisions.  Likewise, you are not to be concerned with the wisdom of any rule of law stated by the Court.  Regardless of any opinion you may have as to what the law ought to be, it would be a violation of your sworn duty to base any part of your verdict upon any view or opinion of the law other than those provided in the Court's instructions, just as it would be a violation of your sworn duty, as the judges of the facts, to base your verdict upon anything but the evidence received in this case.

As I am sure you have come to realize, whatever you think you knew about trials, about evidence, or about the law as a result of watching TV shows or movies has no place here as you perform your duties as jurors in this case.  No one involved in this case should be compared to any TV show, any movie or any actor or actress.  You were chosen as jurors for this real life trial

to evaluate all of the evidence received and to decide each of the factual questions presented by the allegations brought by the parties.  In resolving the issues presented to you for decision in this trial, as I have told you, you must not be persuaded by bias, prejudice, or sympathy for or against any of the parties to this case or by any public opinion.

**Notes**

Instruction is taken from Class jury instructions, June 5, 2018 Trans., pp. 106-08; *see also* Model Civil Jury Instructions for the Third Circuit, Instruction No. 3.1.

**Plaintiffs' Proposed Instruction No. ___:  Statement of Case; Summary of Applicable Law; Preponderance of the Evidence**

This is a civil case.  The parties who brought the lawsuit are the plaintiffs.  The plaintiffs are:  The Kroger Company; Safeway, Inc.; Walgreen Co.; Hy-Vee, Inc.; Albertsons LLC; The Great Atlantic & Pacific Tea Company; H.E. Butt Grocery Company; Publix Super Markets, Inc.; Supervalu Inc.; Giant Eagle, Inc.; Winn-Dixie Stores, Inc.; and Roundy's Inc.  The parties against whom the lawsuit was brought are the defendants:  Rose Acre Farms, Inc.; the United Egg Producers; and the United States Egg Marketers.

In your deliberations, you will be addressing the following questions:

First, was there a contract, combination or conspiracy?

Second, did the contract, combination or conspiracy unreasonably restrain trade?

Third, did the restraint cause the plaintiffs to suffer injury by paying higher prices for eggs than they otherwise would have paid?

I will provide you with more in-depth instructions on these questions shortly.  As to these claims, plaintiffs have the burden of proving the case against the defendants by what is called the preponderance of the evidence.  Preponderance of the evidence means the plaintiffs have to prove to you, in light of all the evidence, that what they claim is more likely so than not so.  To say it differently: if you were to put the evidence favorable to plaintiffs and the evidence favorable to defendants on opposite sides of the scales, plaintiffs would have to make the scales tip somewhat on their side.  If plaintiffs fail to meet this burden, the verdict must be for  defendants. If you find after considering all the evidence that a claim or fact is more likely so than not so, then the claim or fact has been proved by a preponderance of the evidence.

In determining whether any fact has been proved by a preponderance of evidence [in the

case], you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

You may have heard of the term "proof beyond a reasonable doubt." That is a stricter standard of proof and it applies only to criminal cases. It does not apply in civil cases such as this. So you should put it out of your mind.

Here, plaintiffs allege that they paid higher prices for eggs purchased from the defendants and other egg producers because the defendants, along with these other alleged co-conspirators, combined, agreed or conspired to limit the nation's supply of eggs, which then drove up the prices for eggs.

The defendants deny these allegations, and they assert that their actions did not have the effect of reducing the market supply of eggs or raising the price of eggs.  They also claim that their conduct caused the market supply of eggs to actually increase during the alleged conspiracy period.

We have heard a lot about other egg producer companies that are not here today.  Some of those companies are alleged by the plaintiffs to be co-conspirators of the defendants.  These other egg producer companies are not defendants in this case and you should not concern yourself with any claims that have been or might have been brought against them or whether any such claims are pending or have been resolved or anything along those lines.

**Notes**

The first two paragraphs are taken from the Class jury instructions, June 5, 2018 Trans. p. 118. The next three paragraphs of the instruction are taken from Model Civil Jury Instructions for the Third Circuit (2018 ed.), Instruction 1.10 (modified).  The last three paragraphs are modeled on

the Class jury instructions, June 5, 2018 Trans., pp. 119-20.

**Plaintiffs' Proposed Instruction No. ___:  Evidence**

The evidence from which you are to find the facts consists of the following:

      1. The testimony of the witnesses <u>including witnesses presented in video depositions or other depositions</u>;

      2. Documents and other things received as exhibits;

      3. Any facts that are stipulated--that is, formally agreed to by the parties.

The following things are not evidence:

      1. Statements, arguments, and questions of the lawyers for the parties in this case;

      2. Objections by lawyers;

      3. Any testimony I tell you to disregard; and

      4. Anything you may see or hear about this case outside the courtroom.

You must make your decision based only on the evidence that you see and hear in court. Do not let rumors, suspicions, or anything else that you may see or hear outside of court influence your decision in any way.

You should use your common sense in weighing the evidence.  Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

There are rules that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence, and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. This simply means that the lawyer is requesting that I make a decision on a particular rule of evidence. You should not be influenced by the fact that an objection is made. Objections to questions are not evidence. Lawyers have an

obligation to their clients to make objections when they believe that evidence being offered is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it. If the objection is sustained, ignore the question. If it is overruled, treat the answer like any other. If you are instructed that some item of evidence is received for a limited purpose only, you must follow that instruction.

Also, certain testimony or other evidence may be ordered struck from the record and you will be instructed to disregard this evidence. Do not consider any testimony or other evidence that gets struck or excluded.   Do not speculate about what a witness might have said or what an exhibit might have shown.

**Notes**

Model Civil Jury Instructions for the Third Circuit (updated Oct. 2017), Instruction number 1.5.

**Plaintiffs' Proposed Instruction No. \_\_\_:  Burden of Proof**

As I mentioned earlier, when we were going through the *voir dire* procedure, this is a civil case.  It is not a criminal case.  The plaintiffs are the retail stores I mentioned before:  Kroger, Safeway, Walgreen, Hy-Vee, Albertsons, A&P, H.E. Butt Grocery, Publix Super Markets, Supervalu, Giant Eagle, Roundys and Winn-Dixie.  They are the named plaintiffs who brought this lawsuit.  They are doing so on behalf of themselves.

The defendants are Rose Acre Farms, the United Egg Producers and the United States Egg Marketers.

The plaintiffs have the burden of proving their case by what is called the preponderance of the evidence.  This means that they must prove to you in light of all the evidence that what they claim is more likely so than not so.  You may have heard the term "proof beyond a reasonable doubt."  This is not a TV show, whatever you think you know from TV or books and stuff, it's just really not going to be helpful. If you've heard – you probably heard from TV, proof beyond a reasonable doubt.  That's a very strict standard of proof that applies only to criminal cases.  It has no application in this case at all.

To put it differently, and again, reminding you that this is a civil case, not a criminal case, you know the picture of the Lady of Justice holding the scale, the pans on the scale?  If you put all of the evidence in favor of the Plaintiffs in one of the pans and all of the evidence that you think is in favor of the defendants in another pan, and if the scale tips ever so slightly in favor of the plaintiffs, then the plaintiffs have sustained their burden to prove by a preponderance of the evidence that their claims are appropriate.

If the pans remain evenly balanced or they tip ever so slightly for the defendants, then the plaintiffs have not sustained their burden to show by a preponderance of the evidence that what

they say is more likely true than not.

In determining whether any fact has been proved by a preponderance of the evidence, you may – unless I otherwise tell you – consider the testimony of any and all witnesses, regardless of who called them.  You can consider any and all exhibits, regardless of who offered it.

**Notes**

Instruction is taken from Class Trial.  *See* Transcript, May 3, 2018, pp. 165-67, modified to delete reference to affirmative defenses as there are none to be tried.  *See also* Model Civil Jury Instructions for the Third Circuit (2018 ed.), Instruction No. 1.10.

**Plaintiffs' Proposed Instruction No. __:  Direct and Circumstantial Evidence**

There are two types of evidence that you may use in reaching your verdict. One type of evidence is called "direct evidence."  An example of "direct evidence" is when a witness testifies about something that the witness knows through  his own senses — something the witness  has seen, felt, touched or heard or did. If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining. Another form of direct evidence is an exhibit where the fact to be proved is its existence or current condition.

The other type of evidence is circumstantial evidence.  "Circumstantial evidence" is proof of one or more facts from which you could find another fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

You should consider both kinds of evidence that are presented to you. The law makes no distinction in  the weight to be given to either direct or circumstantial evidence. You are to decide how much weight to give any evidence.

**Notes**

Model Civil Jury Instructions for the Third Circuit (2018 ed.), Instruction No. 1.6, Option 2.

**Plaintiffs' Proposed Instruction No. ___:  Credibility of Witnesses**

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You are the sole judges of the credibility of the witnesses. "Credibility" means whether a witness is worthy of belief.  You may believe everything a witness says or only part of it or none of it.   In deciding what to believe, you may consider a number of factors, including the following:

> (1) the opportunity and ability of the witness to see or hear or know the things the witness testifies to;

> (2) the quality of the witness's understanding and memory;

> (3) the witness's manner while testifying;

> (4) whether the witness has an interest in the outcome of the case or any motive, bias or prejudice;

> (5) whether the witness is contradicted by anything the witness said or wrote before trial or by other evidence;

> (6) how reasonable the witness's testimony is when considered in the light of other evidence that you believe; and

> (7) any other factors that bear on believability.

The weight of the evidence to prove a fact does not necessarily depend on the number of witnesses who testify about it.  What is more important is how believable the witnesses were and how much weight you think their testimony deserves.  You may be guided by the appearance and conduct of the witness, or by the manner in which the witness testified, or by the character or tone of the testimony that's been given, or by evidence that's contrary to the witness testimony.

You should carefully examine all the testimony that's been given, as well as the

11

circumstances under which each witness has testified, and every matter in evidence tending to show whether the witness is worthy of belief.

The factors I just listed in considering how to evaluate a witness's credibility also work in evaluating possible discrepancies in testimony.

You should consider whether the witness impresses you as having an accurate recollection of the matters about which she or he testified.

Also, consider any relationship each witness may have with either side of the case, the manner in which each witness might be affected by the verdict, and the extent to which the testimony of each witness is either supported or contradicted by other evidence.

Inconsistencies or discrepancies in the testimony of a witness or between the testimony of different witnesses may or may not cause you to discredit their testimony.

Two or more people seeing the same event might see or hear it differently.  However, in weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or if it is an unimportant detail, and also consider whether the discrepancy results from what appears to you to be an innocent error or an intentional falsehood.

After making your own judgment, you should give the testimony of each witness such weight, if any, that you think it deserves.  In short, you may accept or reject the testimony of any witness in whole or in part.

The weight of the evidence to prove a fact does not necessarily depend on the number of witnesses who testify. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.

**Notes**

Model Civil Jury Instructions for the Third Circuit (2018 ed.), Instruction number 1.7; *see also*

Instructions given in Class Trial, Trans. June 5, 2018 at 113-14.

**Plaintiffs' Proposed Instruction No. ___:  Expert Witnesses**

Some witnesses, because of education or experience, are permitted to state opinions and

the reasons for those opinions.  Opinion testimony should be judged just like any other

testimony.  You may accept it or reject it, and give it as much weight as you think it deserves,

considering the witness's education and experience, the reasons given for the opinion, and all the

other evidence in the case.

**Notes**

*In re TFT-LCD (Flat Panel) Antitrust Litigation*, No. 07-1827 SI, MDL No. 1827 (N.D. Cal.

June 28, 2012); *see also* Class jury instructions, June 5, 2018 Trans., pp. 123-24.

**Plaintiffs' Proposed Instruction No. \_\_\_:  Conflicting Expert Testimony**

You have heard testimony of witnesses who the parties refer to as experts who have been called by both sides to give their opinion about various issues.  The witnesses who testified in this case did so to assist you in reaching a decision on certain issues.  It is your obligation to determine the expertise, if any, of such witnesses and the credibility of such witnesses and the reliability of their opinions.  The testimony of these witnesses is sometimes in conflict.  They disagree at times.  You must remember that you are the sole trier of the facts and where their testimony relates to a question of fact, it is your job to resolve the disagreements.  The way you resolve the conflict between the witnesses is the same way that you decide other fact questions and the same way that you decide whether to believe ordinary witnesses.

In addition, because they gave their opinions, you should consider the soundness of each opinion, reasons for the opinion, and the witness's motive, if any, for testifying.  You may give the testimony of each of these witnesses such weight, if any, that you think it deserves in the light of all the evidence.  You should not permit a witness's opinion testimony to be a substitute for your own reason, judgment and common sense.  You may reject the testimony of any opinion witness in whole or in part, if you conclude the reasons given in support of an opinion are unsound or, if you, for other reasons, do not believe the witness.  The determination of the facts in this case rests solely with you.

**Notes**

*In re TFT-LCD (Flat Panel) Antitrust Litigation*, No. 07-1827 SI, MDL No. 1827 (N.D. Cal. June 28, 2012); *see also* Class jury instructions, June 5, 2018 Trans., pp. 124-25.

15

**Plaintiffs' Proposed Instruction No. ___: Co-Conspirator Statements and Co-Conspirator Liability**

In this case, it is alleged that Rose Acre as well as other egg producers agreed or conspired with and through the UEP and the USEM to suppress the output or raise the price of eggs.

If you find that the alleged agreement or conspiracy existed, then, <u>unless the Court has instructed otherwise</u>, the acts and statements of <u>all the participants in that agreement or conspiracy</u> are binding on <u>the other participants</u> whom you find <u>to have joined the agreement or</u> conspiracy.

A person who [knowingly] joins an existing agreement or conspiracy, or who participates only in part of the agreement or conspiracy with knowledge of its objective, is just as responsible as if he or she had been one of those who formed or began the <u>agreement or</u> conspiracy and participated in every part of it.

**Notes**

The second paragraph is excerpted and slightly modified from paragraph six of ABA, *Model Jury Instructions* (2016 ed.), Ch. 2, Instruction No. A-4, p. 21.  *See also United States v. Pungitore*, 910 F.2d 1084, 1147 (3d Cir. 1990) ("'When a party jumps aboard the "conspiracy train" he assumes responsibility for all conduct whether or not he is conscious of its extent' and therefore a co-conspirator's statements in furtherance of the conspiracy made before the defendant entered the conspiracy are admissible against him[.]") (quoting *United States v. Fields*, 871 F.2d 188, 194 (1st Cir. 1989)), *cert. denied*, 499 U.S. 955 (1989).

The third paragraph is excerpted and slightly modified from paragraph 3, ABA *Model Jury Instructions* (2016 ed.), Ch. 2, Instruction No. A-4, p. 21.  A defendant who joins an

agreement or conspiracy that harms competition is jointly and severally liable for all acts of its co-conspirators done in furtherance of the conspiracy.  *See*, *e.g.*, *Pinkerton v. United States*, 328 U.S. 640, 646 (1946); *Tex. Indus., Inc. v Radcliff Materials, Inc.*, 451 U.S. 630, 642-46 (1981); *In re Wellbutrin XL Antitrust Litig.*, 2012 U.S. Dist. LEXIS 66312 *101 (E.D. Pa. May 11, 2012) ("Antitrust co-conspirators are jointly and severally liable for all damages caused by the conspiracy to which they were a party.").  This joint and several liability is triggered regardless of when a conspiracy participant enters the conspiracy.  *See Havoco of Am., Ltd. v. Shell Oil Co.*, 626 F.2d 549, 554 (7th Cir. 1980) (recognizing that "a co-conspirator who joins a conspiracy with knowledge of what has gone on before and with an intent to pursue the same objectives may, in the anti-trust context, be charged with the preceding acts of its co-conspirators"); *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 538-539 (D.N.J. 2004) (noting that "a co-conspirator is liable for all acts committed in furtherance of a conspiracy, regardless of when it entered the conspiracy") (citing *Lefco v. U.S.*, 74 F.2d 66, 68-69 (3d Cir. 1934) ("Those who come on later and co-operate in the common effort to obtain the unlawful results become parties thereto and assume responsibility for all done before."); *In re Nissan Motor Corp. Antitrust Litig.*, 430 F. Supp. 231, 232 (S.D. Fl. 1977) ("proof of the unlawful affiliation is sufficient to render a co-conspirator liable for all damages that the conspiracy caused, regardless of the exact time defendant became a member or the extent of its participation").  As this Court has recognized, "[p]articipation by each conspirator in every detail in the execution of the [antitrust] conspiracy is unnecessary to establish liability, for each conspirator may be performing different tasks to bring about the desired result."  *In re Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d 709, 732 (E.D. Pa. 2011).

**Plaintiffs' Proposed Instruction No. ___:  Lawyer Interviewing Witness**

It is proper for a lawyer to meet with any witness in preparation for trial.

**Notes**

Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 1.16, p. 22.  The comments

to the instruction state that "this instruction should be given where evidence regarding an

attorney's meeting with a witness has been the subject of trial testimony."

**Plaintiffs' Proposed Instruction No. ____:  Adverse Inference from Missing Witness**

[*Witness*] was mentioned at trial but did not testify.  You may, but are not required to, assume that [*Witness's*] testimony would have been unfavorable to <u>United Egg Producers</u>.

**Notes**

Federal Civil Jury Instructions of the Seventh Circuit, Instruction No. 1.19, p. 25.  The name of the witness or witnesses who do not appear at trial have been, for now, left blank.  Plaintiffs will request that the blank be filled in with the names of UEP witnesses who do not appear at trial.

**Plaintiffs' Instruction No. ___:  Purpose of the Sherman Act**

The purpose of the Sherman Act is to preserve free and unfettered competition in the marketplace.  The Sherman Act rests on the central premise that competition produces the best allocation of our economic resources, the lowest prices, the highest quality, and the greatest material progress.

**Notes**

ABA, *Model Jury Instructions in Civil Antitrust Cases* (2016 ed.),  Ch. 1, Instruction A-1, p. 1. This instruction is based on the Supreme Court's statement in *Northern Pacific Railway v. United States*, 356 U.S. 1, 4 (1958); *see also* 1 ABA Section of Antitrust Law, *Antitrust Law Developments 1-2* (8th ed. 2017).

**Proposed Instruction No. \_\_\_:  The Sherman Act, Section 1**

One of the technical requirements of Section 1 of the Sherman Act is that the restraint of trade affect interstate commerce.  I am instructing you that I have determined that this requirement concerning interstate commerce has been met; and, therefore, you need not consider that technical requirement in your deliberations.

There are two legal tests that are used to determine whether a defendant has violated Section 1 of the Sherman Act.  The first test is the "*per se* rule."  The other test the so-called "rule of reason."  I am going to instruct you on both of these tests.

First, in order to establish a violation of Section 1 of the Sherman Act under the *per se* rule, the plaintiffs must prove:

1. The existence of a combination, agreement or conspiracy between or among at least two entities that actually or potentially compete against each other in the sale of eggs;

2. That the combination, contract or conspiracy was undertaken for the purpose and with the effect of suppressing the output of eggs or raising the price of eggs;

3. That the combination, agreement or conspiracy caused the plaintiffs to be injured by having to pay higher prices for eggs.

In order to establish a violation of Section 1 of the Sherman Act under the rule of reason, the plaintiffs must prove the following:

1. The existence of a [contract,] combination, agreement or conspiracy between at least two separate entities;

2. That the [contract,] combination, agreement, or conspiracy unreasonably restrains trade; <u>and</u>

3. <u>[that the restraint affects interstate or foreign commerce; and]</u>

4.  [4] That the restraint of trade caused the plaintiffs to [suffer an injury to its business or property] <u>be injured by having to pay higher prices for eggs</u>.

I will first instruct you in greater detail on the *per se* rule.  If you determine that the defendants have violated the *per sei rule*, there will be no need for you to consider the rule of reason approach.  If you do not find a *per se* violation, you will have to then consider whether defendants' conduct violated the rule of reason.

### Notes

The first paragraph of the instruction pertaining to interstate commerce is taken from the Class jury instructions, June 5, 2018 Trans., pp. 125-26.  The description of the elements of a *per se* violation is supported by Plaintiffs' Memorandum of Law on Applicability of the *Per Se* Rule, submitted herewith.  The description of the elements of a rule of reason violation is taken from ABA, *Model Jury Instructions in Civil Antitrust Cases* (2016 ed.), Ch. 1, Instruction B-2, p. 2 (modified).

**Plaintiffs' Proposed Instruction No. ___:  Agreement to Reduce Supply Is *Per Se* Unlawful**

I will now instruct you on the *per se* rule.

Plaintiffs claim that egg producers, acting for and on behalf of the UEP, agreed or conspired to suppress the supply of eggs or to increase the price of eggs.  Plaintiffs claim that the defendants and their co-conspirators accomplished this by implementing the short-term supply reduction measures, the UEP Certified Egg Program and the USEM export programs.  Plaintiffs further claim that Rose Acre knowingly joined that agreement or conspiracy by agreeing to become a participant in the UEP Certified Program and the USEM export programs.  Defendants deny that they agreed or conspired to suppress the supply of eggs or increase the price of eggs.

Under the Sherman Act it is a violation of the *per se* rule for competitors to agree or conspire to suppress the supply of a product or to raise the price of that product.

To prevail on this *per se* claim against a defendant, the plaintiffs must prove, as to that defendant, each of the following elements by a preponderance of the evidence:

1.  That the defendant agreed or conspired with an actual or potential competitor;

2.  That the agreement or conspiracy was (1) for the purpose and (2) with the effect of reducing the supply of eggs or increasing the price of eggs; and

3.  That the plaintiff was injured by the agreement or conspiracy.

If you find that the evidence is insufficient to prove any one or more of these elements as to a particular defendant, then you must find for that defendant and against plaintiffs on this claim of *per se* illegality.  If you find that the evidence is sufficient to prove each of the elements as to that defendant, then you must find for plaintiffs and against that defendant on this claim of *per se* illegality.

**Notes**

23

*See* Plaintiffs' Memorandum of Law in Support of Giving a *Per Se* Instruction to the Jury, filed herewith.

**Plaintiffs' Proposed Instruction No. ___:  Contract, Combination or Conspiracy –
Definition, Existence, and Evidence**

Plaintiffs allege that defendants participated in an agreement or conspiracy to restrain trade by reducing the supply of eggs or increasing the price of eggs.  [A] <u>An agreement or</u> conspiracy is an [agreement or] understanding between two or more persons to restrain trade.

<u>In order to prove an agreement or conspiracy,</u> plaintiffs must prove both of the following elements by a preponderance of the evidence:

1.  That the alleged agreement or conspiracy existed; and

2.  That the defendant knowingly became a member of <u>that agreement, understanding or</u> conspiracy.

To act knowingly means to participate deliberately, and not because of mistake or accident or other innocent reason.

The basis of a conspiracy <u>or agreement</u> is an [agreement or] understanding between two or more persons. An agreement or understanding between two or more persons exists when they share a commitment to a common scheme.  <u>A written agreement or contract satisfies the</u> <u>agreement or conspiracy element of a claim for restraint of trade.</u>  However, [to establish the existence of a conspiracy,] the evidence need not show that its members entered into any formal or written agreement.  The agreement or understanding may be been entirely unspoken.  A person can become a member without full knowledge of all of the details of the conspiracy, the identity of all of its members, or the parts such members played in the alleged agreement or conspiracy.  The members of the conspiracy need not necessarily have met together, directly stated what their object or purpose was to one another, or stated the details or the means by which they would accomplish their purpose.  To prove an agreement or conspiracy existed, the

25

evidence must show that the alleged members of the conspiracy came to an agreement or understanding among themselves to accomplish a common purpose.

[A] An agreement or conspiracy  may be formed without all parties coming to [an] that agreement or conspiracy at the same time, such as where competitors separately decide [accept invitations] to participate in a plan to restrain trade at different times.  Similarly, it is not essential that all persons acted exactly alike or that all of them employed all of the means or methods designed to achieve the goals of the agreement or conspiracy.  It is enough that a participant knowingly agreed or conspired to use at least one of the means or methods designed to achieve the common objective.  Nor is it necessary that all of the participants possessed the same motive for entering the agreement or conspiracy.  It is also not necessary that all of the means or methods alleged by the plaintiffs were agreed upon to carry out the alleged agreement or conspiracy, nor that all of the means or methods that were agreed upon were actually used or put into operation, nor that all the persons alleged to be members of the conspiracy were actually members.  It is the agreement or understanding to restrain trade by reducing the supply of eggs that constitutes a conspiracy.  Therefore, you may find a conspiracy existed regardless of whether it actually succeeded or failed.

Plaintiffs may prove the existence of the alleged agreement or conspiracy through direct evidence, circumstantial evidence, or both.  Direct evidence is explicit and requires no inferences to establish the existence of the alleged agreement or conspiracy.

If direct evidence of an agreement is [may] not [be] available, [and therefore] an agreement or conspiracy [also] may be shown through circumstantial evidence.  You may infer the existence of [a] an agreement or conspiracy from the circumstances, including what you find the alleged members actually did and the words they used.  Mere similarity of conduct among

various persons, however, or the fact that they may have associated with one another and may have met or assembled together, does not by itself establish the existence of an agreement or conspiracy.  If they acted similarly but independently of one another, without any agreement among them, then there would not be a conspiracy.

In determining whether an agreement or understanding between two or more persons has been proved, you must view the evidence as a whole and not piecemeal.

**Notes**

ABA, *Model Jury Instructions in Civil Antitrust Cases* (2016 ed.), Ch. 2, Instruction A-1, pp. 13-14 (modified as proposed in ABA notes).

**Plaintiffs' Proposed Instruction No. ___:  Parallel Conduct and Direct Agreement**

Plaintiffs contend that the defendants [engaged in similar conduct, namely ] <u>agreed or conspired to reduce the supply or increase the price of eggs</u>.  [Plaintiff further contents that this conduct, when considered with other evidence, shows that a conspiracy existed among defendants. Their behavior may be no more than he result of the exercise of independent judgment in response to identical or similar market conditions.] <u>The plaintiffs contend that the defendants' agreement or conspiracy included one or more of the short-term supply reduction measures, the UEP Certified Egg Program and the USEM export programs.</u>

<u>In addition to direct evidence of an agreement or conspiracy – such as the actions of the members of UEP committees or the UEP Board of Directors or written agreements by egg producers to participate in the conduct – you may also consider whether the defendants engaged in similar conduct.  The plaintiffs contend that the similar conduct by the defendants and their co-conspirators is further evidence that defendants agreed or conspired to engage in the allegedly anticompetitive conduct.  The mere fact that defendants and their alleged co-conspirators have engaged in similar behavior does not by itself establish the existence of an agreement or conspiracy to engage in that conduct.  Their behavior may be no more than the result of the exercise of independent judgment in response to identical market conditions, unaccompanied by agreement with others to participate in a scheme.</u>  For example, everyone might open their umbrellas on a rainy day, but that similar behavior would not necessarily mean that they had agreed or conspired to open their umbrellas.  A business may lawfully adopt the same prices, conditions of sale, or other practices, as its competitors as long as it does so independently and not as part of an agreement or understanding with one or more of its competitors.  If defendants acted similarly but independently of one another, without any agreement or understanding

between two or more of them, then there would not be [a] <u>an agreement or</u> conspiracy <u>to engage in that practice</u>.

<u>In order to find an agreement or conspiracy through circumstantial evidence of similar conduct,</u> you must decide whether defendants' similar conduct was, more probably than not, the result of an agreement or understanding among them. In doing so, you may consider defendants' similar conduct along with other evidence. You may infer from the circumstantial evidence that an agreement or conspiracy existed only if you find that the evidence, when viewed as a whole, makes it more likely that defendants had an agreement or understanding with one another than that they acted independently of one another. In making this determination, you should consider the similar conduct against the entire background in which it took place. The evidence, when viewed all together, must satisfy you that it is more likely that defendants' similar actions were the product of an agreement or understanding with one another than their own independent decisions.

If after considering all of the evidence, you conclude that plaintiff has shown either by direct evidence or by circumstantial evidence of similar conduct that it was more likely than not that defendants' conduct was the result of an agreement or understanding among them than their independent decisions, you must find for plaintiff on the question of whether defendants participated in an agreement or conspiracy. If, after considering all of the evidence, you conclude that plaintiff failed to prove that defendants' similar conduct was more likely than not the result of an agreement or understanding with one or more of the other defendants, then you must find against plaintiffs and in favor of that defendant on the question of whether that defendant participated in a conspiracy.

**Notes**

ABA, *Model Jury Instructions in Civil Antitrust Cases* (2016 ed.), Ch. 2, Instruction A-2, p. 17

(modified).

**Plaintiffs' Proposed Instruction No. ___:  Rule of Reason – Overview**

I will now instruct you with regard the rule of reason.

Under Section 1 of the Sherman Act, a restraint of trade is illegal if it violates the *per se* rule or if it is found to [be unreasonable] <u>unreasonably injure competition</u>.  <u>If you do not find that the defendants committed a *per se* violation of Section 1 of the Sherman Act, you must then decide whether they violated the rule of reason.  In order to determine whether the defendants violated the rule of reason</u>, you must determine [, therefore,] whether the restraint [challenged here] <u>alleged</u> – that the defendants entered into an agreement or conspiracy to implement one or more of the the UEP's short-term supply reduction measures, the rules of the UEP Certified Program and the USEM exports – [is unreasonable] <u>caused an unreasonable effect on competition</u>.  In making this determination, you must first determine whether plaintiffs have proven that the challenged restraint has resulted in a substantial harm to competition in a relevant product and geographic market.  If you find that plaintiffs have proven that the challenged restraint results in a substantial harm to competition in a relevant market, then you must consider whether the restraint produces countervailing procompetitive benefits.  If you find that it does, then you must balance the competitive harm against the competitive benefit.  The challenged restraint is illegal under Section 1 of the Sherman Act if you find that the competitive harm it causes substantially outweighs any procompetitive benefit <u>it causes</u>.

I will now review each step of the analysis in more detail.

**Notes**

ABA, *Model Jury Instructions in Civil Antitrust Cases* (2016 ed.), Ch. 1, Instruction C-1, p. 3 (modified).

**Plaintiffs' Proposed Instruction No. ___:  Proof of Competitive Harm**

[As I mentioned], <u>In order</u> to prove that the challenged restraint is unreasonable, plaintiffs first must demonstrate that the restraint has resulted in a substantial harm to competition. Although it may be relevant to the inquiry, harm that occurs merely to the individual business of plaintiff is not sufficient, by itself, to demonstrate harm to competition generally  That is, harm to a single competitor or group of competitors does not necessarily mean that there has been harm to competition.  <u>Harm to competition requires market-wide effects.</u>

Furthermore, plaintiffs must show that the harm to competition occurred in an identified market, known as a relevant market. There are two aspects to a relevant market.  The first aspect is known as the relevant product market.  The second aspect is known as the relevant geographic market.  It is plaintiffs' burden to prove the existence of a relevant market.

If you find that plaintiffs have proven the existence of a relevant market, then you must determine whether plaintiffs also have proven that the challenged restraint has a substantial harmful effect on competition in that market.  A harmful effect on competition [, or competitive harm,] refers to a reduction in competition that results in higher prices, lower output  <u>or supply</u> or lower product quality.  If the challenged conduct has not resulted in higher prices, decreased output or supply, lower quality, or the loss of some other competitive benefit, then there has been no competitive harm, and you should find that the challenged conduct was not unreasonable.

In determining whether the challenged restraint has produced competitive harm, you should look at the following factors:

- <u>Whether</u> the effect of the restraint [on] <u>is to raise</u> price, <u>lower</u> output <u>or supply of the product</u>, <u>or lower</u> quality [and service];

- The purpose and nature of the restraint;

- The nature and structure of the relevant market;

- The number of competitors in the relevant market and the level of competition among them, both before and after the restraint was imposed <u>and the percentage of market controlled by the participants in the restraint</u>; and

- Whether the defendants possess market power.

The last factor mentioned, market power, has been defined as an ability to profitably raise prices, for a sustained period of time, above [those] <u>the prices</u> that would be charged in a competitive market.  <u>The plaintiffs must demonstrate that the restraint has produced anticompetitive effects. The plaintiffs can satisfy this burden either by proving the existence of actual anticompetitive effects, such as a reduction of output or increase in the price of eggs, or by proving that the defendants have market power.  Market power is essentially a surrogate for detrimental effects on competition.</u>  Firms that collectively possess market power generally can charge higher prices for the same goods or services than [a firm in the same market that does not possess] <u>they would be able to if they lacked</u> market power.  An important factor in determining whether defendants possess market power is defendants' market share, that is, the percentage of the products [or services] sold in the relevant market [by all competitors] <u>that is controlled by the defendants</u>.  If defendants do not possess a substantial market share, it is less likely that [the challenged restraint has resulted in a substantial harmful effect on competition in the market.] <u>defendants possess market power from which adverse effects on competition may be inferred.</u>

**Notes**

ABA, *Model Jury Instructions in Civil Antitrust Cases* (2016 ed.), Ch. 1, Instruction C-3B, p. 5. This instruction has been modified in keeping with Third Circuit law that an adverse effect on competition can be proved *either* by directly proving such an effect *or* by proving that

defendants possess market power.  For example, in *U.S. v. Brown University*, 5 F.3d 658, 668-69

(3d Cir. 1993), the Court stated:

> The plaintiff may satisfy this burden by proving the existence of actual
>
> anticompetitive effects, such as reduction of output, *see FTC v. Indiana*
>
> *Federation of Dentists*, 476 U.S. 447, 460-61, 106 S. Ct. 2009, 2019, 90 L.Ed.2d
>
> 445 (1986), increase in price, or deterioration in quality of goods or services, *see*
>
> *Tunis Bros.*, 952 F.2d at 728.  Such proof is often impossible to make, however,
>
> due to the difficulty of isolating the market effects of challenged conduct.  7 P.
>
> Areeda, *Antitrust Law* ¶1503, at 376 (1986).  Accordingly, courts typically allow
>
> proof of the defendant's "market power" instead.  *Tunis Bros*, 952 F.2d 727; *see*
>
> *NCAA v. Board of Regents of the Univ. of Oklahoma*, 468 U.S. 85, 110, 104 S. Ct.
>
> 2948, 2965, 82 L.Ed.2d 70 (1984).  Market power, the ability to raise prices above
>
> those that would prevail in a competitive market.  *Jefferson Parish Hosp. Dist.*
>
> *No. 2 v. Hyde*, 466 U.S. 2, 27 n.46, 104 S. Ct. 1551, 1566 n.46, 80 L.Ed.2d 2
>
> (1984), is essentially a "surrogate for detrimental effects."  *Indiana Dentists*, 476
>
> U.S. at 460-61, 106 S. Ct. at 2019 (quoting 7 P. Areeda, *supra*, ¶1511, at 429).

*See also King Drug Co. of Florence, Inc. v. SmithKline Beecham Corp.*, 791 F.3d 388, 412 (3d

Cir. 2015) (quoting verbatim from *Brown University* to the effect that plaintiff may prove

anticompetitive effects either by proving a reduction in output or increase in price or by proving

market power which "is essentially a surrogate for detrimental effects").

34

**Plaintiffs' Proposed Instruction No. ___:  Rule of Reason, Evidence of Competitive Benefits**

If you find that plaintiffs have proven that the challenged restraint resulted in substantial harm to competition in a relevant market, then you next must determine whether the restraint also [benefits competition in other ways] caused procompetitive benefits.  If you find that the challenged restraint does [result in competitive benefits] cause procompetitive benefits, then you also must consider whether the restraint was reasonably necessary to achieve that procompetitive benefit.  If plaintiffs prove that the procompetitive benefits could have been achieved by other, reasonably available alternative means that [create] would cause substantially less harm to competition, then [they] those purported procompetitive benefits cannot be used to justify the restraint.

**Notes**

ABA, *Model Jury Instructions in Civil Antitrust Cases* (2016 ed.), Ch. 1, Instruction C-3C, p. 8 (modified).

**Plaintiffs' Proposed Instruction No. ___: Rule of Reason – Balancing the Competitive Effects**

If you find that the challenged restraint was reasonably necessary to achieve [competitive] <u>procompetitive</u> benefits, then you must balance those [competitive] <u>procompetitive</u> benefits against the competitive harms [resulting from] <u>that are caused by</u> the same restraint.

If the competitive harm substantially outweighs the competitive benefits, then the challenged restraint is unreasonable.  If the competitive harm does not substantially outweigh the competitive benefits, then the challenged restraint is not unreasonable.  In conducting this analysis, you must consider the benefits and harm to competition and consumers, not just to a single competitor or group of competitors.  Plaintiffs bear the burden of proving that the anticompetitive effect of the conduct substantially outweighs its benefits.

**Notes**

ABA, *Model Jury Instructions in Civil Antitrust Cases* (2016 ed.), Ch. 1, Instruction C-4, p. 9 (modified).

[after Rule of Reason Proof of Harm]

**Plaintiffs' Proposed Instruction No. ___:  Animal Welfare Is Not Part of the Rule of Reason Analysis**

In determining whether defendants' conduct has harmed competition, you must focus only on the competitive effects of that conduct.  Animal welfare or ethical concerns about the treatment of animals are irrelevant and must play no part in your deliberations.  If defendants have agreed or conspired to undertake conduct that unreasonably harms competition – as defined by the instructions I give you – then that conduct is unlawful regardless of whether it improves animal welfare or provides for more ethical treatment of animals.

The defendants claim that the UEP Certified Egg Program has had certain procompetitive effects.  If you find that the Certified Egg Program resulted in procompetitive effects, then you may consider those procompetitive effects in determining whether the defendants' conduct, on balance, harms competition.  In making that determination you may not consider an egg to be of higher quality or a better product simply because it was produced in compliance with an animal welfare program implemented by a group of competitors.

**Notes**

In *National Society of Prof. Engineers v. U.S.*, 435 U.S. 679, 685, 690, 693-95 (1978) (the Supreme Court held that the inquiry required by the rule of reason "is confined to a consideration of impact on competitive conditions"; that conduct that harms competition cannot be justified on the ground that it improves public health or welfare by removing "inferior work"; and that an attempt to justify a competitive restraint on the basis of the threat posed "to the public safety and the ethics … is nothing less than a frontal assault on the basic policy of the Sherman Act."  The Supreme Court further held that "all elements of a bargain – quality, service, safety and

37

durability … are favorably affected by the free opportunity to select among alternative offers" made by individual competitors and not by group agreement.  The Supreme Court rejected the argument that a restraint on free and open competition could be justified on the ground that it "would adversely affect the quality of the engineering."  The Court explained:

> The Sherman act reflects a legislative judgment that ultimately competition will produce not only lower prices, but also better goods and services…. The assumption that competition is the best method of allocating resources in a free market recognizes that all elements of a bargain – quality, service, safety, and durability – and not just immediate cost are favorably affected by the free opportunity to select among alternative offers.  Even assuming occasional exceptions to the presumed consequences of competition, the statutory policy precludes inquiry into the question of whether competition is good or bad.

435 U.S. at 695.  *See also Schuylkill Energy Resources, Inc. v. Penn Power & Light*, 113 F.3d 405, 414, fn.9 (3d Cir. 1997) (stating that the Supreme Court in *Nat'l Soc'y of Prof. Engineers* "reject[ed] Defendants' attempt to use safety and health to justify anticompetitive behavior"; *In re Lipitor Antitrust Litig.*, 868 F.3d 231, 263 (3d Cir. 2017) (relying on *National Soc'y of Prof. Engineers* for proposition that "the antitrust inquiry is 'confined to a consideration of impact on competitive conditions…' and 'good motives will not validate an otherwise anticompetitive product"); *U.S. v. Brown University*, 5 F.3d 658, 669 (3d Cir. 1993) ("A restraint on competition cannot be justified solely on the basis of social welfare concerns"); *Koefoot v. American College of Surgeons*, 652 F. Supp. 882, 892-93, 896 (N.D. Ill. 1986) (excluding evidence of purported

improved quality of health care as irrelevant and stating that such evidence would be admissible only if it "might [prove] that there has been no anticompetitive effect").

**Plaintiffs' proposed Instruction No. ___:  Balancing Anticompetitive and Procompetitive Effects**

Plaintiffs claim that the defendants agreed or conspired to reduce the supply of eggs resulting in an increase in the price of eggs.  Plaintiffs claim that defendants succeeded in reducing the supply and raising the price of eggs through one or more of the following measures: the UEP short-term supply reduction measures, the rules of the UEP Certified Egg Program, and the USEM egg export programs.  The defendants deny that they agreed or conspired to reduce the supply of eggs or that anything they did had the effect of reducing the supply of eggs or increasing the price of eggs.  The defendants further claim that the UEP Certified Egg Program has certain procompetitive benefits that outweigh any anticompetitive effects of that program.  I am now going to instruct you in detail as to how you are to weigh and balance any purported procompetitive effects against any anticompetitive effects that you might find.

First, the defendants do not claim that the UEP short-term supply reduction measures or the USEM egg export programs had any procompetitive effects.  If you find that the defendants agreed or conspired to undertake those measures and that their conduct reduced the supply of eggs or resulted in an increase in the price of eggs, then that conduct constitutes an unreasonable harm to competition.

Second, the defendants do contend that the UEP Certified Egg Program resulted in procompetitive effects that outweigh any anticompetitive effects you might find.  Specifically, defendants claim that the UEP Certified Egg Program (1) increased hen productivity and thereby increased the overall supply of eggs, and (2) resulted in greater consumer choice, higher quality eggs and satisfied customer demand for humanely produced eggs.

40

With regard to defendants' contention that the UEP Certified Egg Program had procompetitive effects because it made hens more productive, I instruct you as follows:

In order for an increase in hen productivity to outweigh any reduction in the supply of eggs caused by the Certified Egg program, the evidence must show that the total number of additional eggs that results from an increase in hen productivity is greater than any reduction in the supply of eggs caused by the Certified Program.  The question is what was the net effect on the supply of eggs of the Certified Program and whether, the absence of the Certified Program, the supply of eggs would have been higher than it was.  If the Certified Program, on balance, caused the supply of eggs to go down, the effect is anticompetitive.  If the Certified Egg Program, on balance, caused the supply of eggs to go up, then the effect is not anticompetitive.

With regard to the defendants' claim that the UEP Certified Egg Program had procompetitive effects because it satisfied consumer demand, increased consumer choice and improved the quality of eggs, I instruct you as follows:

In order for any of these purported procompetitive effects to outweigh any anticompetitive effects caused by the UEP Certified Egg Program, you must find that the procompetitive benefits were caused by the Certified Egg Program and would not have occurred but for the Certified Egg Program.

Similarly, if you find that consumers would have had the ability to purchase more humanely produced eggs or eggs of higher quality in the absence of the Certified Egg Program, then you must find that the Certified Egg Program did not have the purported procompetitive effects that the defendants claim.

**Notes**

41

*See* Memorandum in Support of Plaintiffs' Motion *in Limine* to Exclude Evidence of Animal

Welfare, ECF #1887.

**Plaintiffs' Proposed Instruction No. \_\_\_:  Good Intent Not a Defense**

If you find that defendants engaged in [a price fixing] <u>an agreement or</u> conspiracy <u>to reduce the supply of eggs or increase the price of eggs</u>, it is not a defense that defendants acted with good motives, thought their conduct was legal, or that the conduct may have had some good results.

**Notes**

ABA, *Model Jury Instructions in Civil Antitrust Cases* (2016 ed.), Ch. 2, Instruction B-3, p. 29 (modified).

**Plaintiffs' Proposed Instruction No. ___:  Reasonableness of Prices No Excuse**

The Sherman Act prohibits an agreement among competitors to fix or raise prices, regardless of whether the resulting prices are reasonable.  Therefore, if you find that [a price-fixing] an agreement or conspiracy to raise price or suppress output existed, it does not matter whether the resulting prices [agreed upon] were high or low or reasonable or unreasonable.

**Notes**

ABA, *Model Jury Instructions in Civil Antitrust Cases* (2016 ed.), Ch. 2, Instruction No. B-4, p. 30 (modified).

**Plaintiffs' Proposed Instruction No. ___:  Corporations**

Under the law, a corporation is a person, but it acts only through its agents.  A corporation's agents include its directors, officers, employees, or others acting on its behalf.  A corporation is not capable under the law of conspiring with its own agents, unincorporated divisions, or wholly owned subsidiaries.  Through its agents, however, a corporation is capable of conspiring with other persons or independent corporations.

A corporation is legally bound by the acts and statements of its agents or employees done or made within the scope of the agent's employment or apparent authority.

Acts done within the scope of employment are acts performed on behalf of a corporation and directly related to the performance of the duties the agent has general authority to perform.  Apparent authority is the authority that persons outside the corporation could reasonably believe the agent would have, judging from his or her position with the company, the responsibilities previously entrusted to the person or the office, and the circumstances surrounding his or her past conduct.  An agent can have apparent authority even when, despite these appearances, the agent is actually acting in a dishonest, fraudulent, or anticompetitive manner.

To summarize, for a corporation to be legally responsible for the acts or statements of its agents, you must find that the agent was acting within the scope of his or her employment or with apparent authority.

The fact that a corporation has instructed its agents not to violate the antitrust laws does not excuse the corporation from the responsibility for the unlawful acts of its agents done within the scope of their employment or apparent authority.

A corporation is entitled to the same fair trial as a private individual.  The acts of a corporation are to be judged by the same standards as the acts of a private individual, and you

may hold a corporation liable only if such liability is established by the preponderance of the evidence.  All persons, including corporations, are equal before the law.

**Notes**

ABA, *Model Jury Instructions in Civil Antitrust Cases* (2016 ed.), Ch. 2, Instruction A-3, p. 19.

**Plaintiffs' Proposed Instruction No. ___:  Participation and Intent**

Before you can find that a defendant was a member of the <u>agreement or</u> conspiracy alleged by plaintiffs, the evidence must show that the defendant knowingly joined in the plan either at its inception, or at some later time, with the intent to further the purpose of the <u>agreement or</u> conspiracy.

To act knowingly means to participate deliberately and not because of mistake, accident or other innocent reason.  A person may become a member of [a] <u>an agreement or</u> conspiracy without full knowledge of all the details of <u>the agreement or</u> conspiracy, the identity of all its members, or the parts they played.  Knowledge of the essential nature of the plan is enough.  On the other hand, a person who has no knowledge of [a] <u>an agreement or</u> conspiracy, but happens to act in a way that helps the conspiracy succeed, does not thereby become a conspirator.

A person who knowingly joins an existing <u>agreement or</u> conspiracy, or who participates only in part of a conspiracy with knowledge of the overall conspiracy, is just as responsible as if he or she had been one of those who formed or began the agreement or conspiracy and participated in every part of it.

In determining whether a defendant was a member of the alleged <u>agreement or</u> conspiracy, you should consider only the evidence about that particular defendant's statements and conduct, including any evidence of that defendant's knowledge and participation in the events involved and any other evidence of that particular defendant's participation in the <u>agreement or</u> conspiracy alleged.

If you find that the alleged <u>agreement or</u> conspiracy existed, then the acts and statements of the <u>parties to the agreement or the</u> conspirators are binding on all of those whom you find were members of the <u>agreement or</u> conspiracy.

47

Once you have found that a defendant is a member of a conspiracy, he, she or it is presumed to remain a member and is responsible for all actions taken by all co-conspirators during and in furtherance of the conspiracy until it is shown that the conspiracy has been completed or abandoned.

**Notes**

ABA, *Model Jury Instructions in Civil Antitrust Cases* (2016 ed.), Ch. 2, Instruction A-4, p. 21 (modified).

**Plaintiffs' Proposed Instruction No. ___:  Trade Organization May Commit Antitrust Violations**

Businesses that are actual or potential competitors may lawfully form into associations to advance common interests.  You have heard about two such associations here:  the United Egg Producers and the United States Egg Marketers.  [For example,] Trade associations may keep members informed of new services or technology in the industry or perform other valuable services, such as cooperative research, publication of trade journals, or joint representation before legislative or administrative bodies.

[An] A trade association is, however, capable of committing violations of the antitrust laws.  The actions of a group of competitors taken through an association to which they belong present the same issues as the actions of a group of competitors who have not created a formal organization such as a trade association.  A trade association or similar industry group cannot lawfully act to facilitate the raising, stabilizing, or maintaining of prices in the market in which its members compete with one another [,] or to reduce members' collective output or supply of [products or services, or to allocate territories among members that are in horizontal competition with one another.] the product they sell.  A trade association or similar industry group cannot lawfully agree to adopt rules that prohibit members from bidding competitively with one another because that severely affects price competition.  These actions constitute an agreement with its members in violation of the Sherman Act even if the association has not conspired with a nonmember.  Under such circumstances, the trade association or similar industry group becomes one of the co-conspirators or participants in the unlawful agreement.

**Notes**

49

ABA, *Model Jury Instructions in Civil Antitrust Cases* (2016 ed.), Chap. 2, Instruction No. C-10, p. 57 (modified); Class Trial, June 5, 2018, Trans. pp. 138-140.  *See also FTC v. Superior Court Trial Lawyers Ass'n*, 493 U.S. 411 (1990); *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 443 (1978); *Maple Flooring Mfrs'. Ass'n v. United States*, 268 U.S. 563, 574 (1925); *United States v. Am. Linseed Oil Co.*, 262 U.S. 371 (1923); *Am. Column & Lumber Co. v. United States*, 257 U.S. 377 (1921); *In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 369 (3d Cir. 2004); *Todd v. Exxon Corp.*, 275 F.3d 191, 198-99 (2d Cir. 2001); *Alvord-Polk, Inc. v. F. Schumacher & Co.*, 37 F.3d 996, 1007 (3d Cir. 1994).

**Plaintiffs' Proposed Instruction No. ___:  Liability of Association for Acts of an Agent**

Like a corporation, a trade association is a legal entity that can be found liable for the unlawful acts of its agents.  To find a trade association liable, you must find that the agent or agents acted with "apparent authority." [, as I defined it earlier.]

For a trade association to be responsible for the acts of one of its agents acting with apparent authority, it is not necessary that the trade association specifically authorize the agent to commit those acts.  Nor is it necessary that the trade association ratify or endorse the agent's actions.  Nor is it necessary that the trade association itself have knowledge of the actions.  Rather, the trade association is legally bound by the acts of its agent performed with apparent authority.

**Notes**

ABA, *Model Jury Instructions in Civil Antitrust Cases* (2016 ed.), Ch. 2, Instruction C-12, p. 62 (modified).

**Plaintiffs' Proposed Instruction No. ___: Apparent Authority of an Agent of a Trade Association**

[Under the law, a corporation is a person, but it acts only through its agents. A corporation's agents] The agents of a trade association include its directors, officers, employees and others acting on its behalf. [A corporation is not capable under the law of conspiring with its own agents, unincorporated divisions, or wholly owned subsidiaries. Through its agents, however, a corporation is capable of conspiring with other persons or independent corporations.]

[A corporation is legally bound by the acts and statements of its agents or employees done or made within the scope of the agent's employment or apparent authority.]

[Acts done within the scope of employment are acts performed on behalf of a corporation and directly related to the performance of the duties the agent has general authority to perform.] The apparent authority of an agent of a trade association is the authority that persons outside of the [corporation] trade association could reasonably believe the agent would have, judging from his or her position with the [company] trade association, the responsibilities previously entrusted to the person or the office and the circumstances surrounding his or her past conduct.  An agent can have apparent authority even when, despite these appearances, the agent is actually acting in a dishonest, fraudulent or anticompetitive manner.

[To summarize, for a corporation to be legally responsible for the acts or statements of its agents, you must find that the agent was acting within the scope of his or her employment with apparent authority.]

The fact that a [corporation] trade association may have instructed its agent not to violate the antitrust laws does not excuse the [corporation] trade association from responsibility for the

unlawful acts of its agents done [within the scope of their employment or] <u>with</u> apparent authority.

[A corporation is entitled to the same fair trial as a private individual. The acts of a corporation are to be judged by the same standard as the acts of a private individual, and you may hold a corporation liable only if such liability is established by the preponderance of the evidence. All persons, including corporations, are equal before the law.]

**Notes**

ABA, *Model Jury Instructions in Civil Antitrust Cases* (2016 ed.), Ch. 2, Instruction A-3, p. 19, modified to apply to apparent authority of trade association agent as opposed to that of a corporation, as proposed by ABA, *Model Jury Instructions in Civil Antitrust Cases* (2016 ed.), Ch. 2, Instruction C-12, p. 62.

**Plaintiffs' Proposed Instruction No. \_\_\_:  Liability of Member for Acts of Association**

A person or business that belongs to a trade association does not become liable for violating the antitrust laws simply because the trade association is liable for such violation. Instead, plaintiff must prove that the member of the trade association knew of and [participated] <u>agreed to participate</u> in the conduct that you find unlawful.

### Notes

ABA, *Model Jury Instructions in Civil Antitrust Cases* (2016 ed.), Ch. 2, Instruction C-13, p. 63 (modified slightly).

**Plaintiffs' Proposed Instruction No. __:  Injury and Causation**

If you find that <u>a</u> defendant has violated Section 1 of the Sherman Act, then you must decide if the plaintiffs [are entitled to recover damages from defendant] <u>were injured by the unlawful conduct</u>.

A plaintiff is [entitled to recover damages for an injury to its business or property] <u>injured</u> if it can establish three elements of injury and causation:

1.  Plaintiff was in fact injured as a result of defendant's violation of the antitrust laws;

2.  Defendants' alleged illegal conduct was a material cause of plaintiff's injury; and

3.  Plaintiff's injury is an injury of the type that the antitrust laws [were] <u>are</u> intended to prevent.

The first element is sometimes referred to as "injury in fact" or "fact of damage."  For plaintiffs to establish that [they are entitled to recover damages] <u>they are injured</u>, they must prove that they were injured as a result of [defendants'] <u>the</u> alleged violation of the antitrust laws. Proving the fact of damage does not require plaintiff to prove the dollar amount of its injury.  It requires only that plaintiff prove that it was in fact injured by defendant's alleged antitrust violation.  [If you find that plaintiff has established that it was in fact injured, you may then consider the amount of plaintiff's damages. It is important to understand, however, that injury and amount of damage are different concepts and that you cannot consider the amount of damage unless and until you have concluded that plaintiff has established that it was in fact injured.] <u>In fact, I have told the parties that they should not address the amount of damages suffered by plaintiffs at this time.  For now, the plaintiffs need prove only that they were in fact injured in an unspecified amount by the alleged antitrust violation.</u>

Plaintiffs must also [offer evidence that establishes] <u>establish</u> by a preponderance of the evidence that defendants' alleged illegal conduct was a material cause of plaintiffs' injury.  This means that plaintiffs must [have proved that some damage occurred to it] <u>prove that they suffered some injury</u> as a result of the alleged antitrust violation, and not some other cause. Plaintiffs are not required to prove that [defendant's] <u>the</u> alleged antitrust violation was the sole cause of its injury; nor need plaintiffs eliminate all other possible causes of <u>their</u> injury.  It is enough if plaintiffs have proved that the alleged antitrust violation was a material cause of their injury.

Finally, plaintiffs must establish that their injury is the type of injury that the antitrust laws were intended to prevent.  This is sometimes referred to as "antitrust injury."  If plaintiffs' injuries were caused by a reduction in competition, acts that would lead to a reduction in competition, or acts that would otherwise harm <u>competition or</u> consumers, then plaintiffs' injuries are antitrust injuries.  <u>For example, if the injury suffered by the plaintiffs is the result of the supply of eggs being reduced resulting in the price of eggs or egg products being increased, then that would constitute antitrust injury.</u>  On the other hand, if plaintiffs' injuries were caused by heightened competition, [the competitive process itself, or by acts that would benefit consumers,] then plaintiffs' injuries are not antitrust injuries and plaintiff may not recover damages for those injuries under the antitrust laws.

[*Insert the following if plaintiff is a competitor of defendant: You should bear in mind that the businesses may incur losses for many reasons that the antitrust laws are not designed to prohibit or protect against—such as where a competitor offers better products or services, or where a competitor is more efficient and can charge lower prices and still earn a profit. The*

*antitrust laws do not permit a plaintiff to recover damages for losses that were caused by the competitive process or conduct that benefits consumers.*]

In summary, if plaintiffs can establish that they were in fact injured by defendants' conduct, that defendants' conduct was a material cause of plaintiffs' injury, and that [defendant's] the injury was the type that the antitrust laws were intended to prevent, then plaintiffs [are entitled to recover damages for the injury to its business or property.] have established that they have been injured within the meaning of Section 1 of the Sherman Act.

### Notes

ABA, *Model Jury Instructions in Civil Antitrust Cases* (2016 ed.), Ch. 6, Instruction A-1, pp. 300-01 (modified).

**Plaintiffs' Proposed Instruction No. ___:  Business or Property**

[Plaintiff must establish that the injury it claims to have suffered was an injury to its business or property.] The term "business" includes any commercial interest or venture.  Plaintiff has been injured in its business if you find that it has suffered injury to any of its commercial interests or enterprises as a result of defendants' alleged antitrust violation.  The term property includes anything of value plaintiff owns, possesses, or in which plaintiff has a protectable legal interest.  Plaintiff has been injured in its property if you find that anything of value that it owns, possesses, or has a legal interest in has been damaged as a result of defendants' alleged antitrust violation. Plaintiff has been injured in its property if you find that it has paid an inflated price for goods, services, any legal interest of value, or has lost money as a result of defendants' alleged antitrust violation.

**Notes**

ABA, *Model Jury Instructions in Civil Antitrust Cases* (2016 ed.), Ch. 6, Instruction A-2, p. 303 (modified).  This instruction is offered only in the alternative.  In the prior instruction, plaintiffs removed reference to "business or property" so as to simply instruct the jury as to elements of plaintiffs being "injured."  The term "business or property" adds nothing of consequence to the instructions.  The injury alleged here is an increase in price paid for eggs.  It is undisputed that an increase in price paid due to an antitrust violation is an injury to "business or property."

3.1

**Plaintiffs' Proposed Instruction No. ___:  Deliberations**

When you retire to the jury room to deliberate, you may take with you these instructions, your notes and the exhibits that the Court has admitted into evidence. You should select one member of the jury as your foreperson. That person will preside over the deliberations and speak for you here in open court.

You have two main duties as jurors.  The first one is to decide what the facts are from the evidence that you saw and heard here in court.  Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide if, under the appropriate burden of proof, the parties have established their claims.  It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.  This includes the instructions that I gave you before and during the trial, and these instructions.  All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly.  Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

As jurors, you have a duty to consult with each other and to deliberate with the intention of reaching a verdict. Each of you must decide the case for yourself, but only after a full and impartial consideration of all of the evidence with your fellow jurors. Listen to each other carefully. In the course of your deliberations, you should feel free to re-examine your own views and to change your opinion based upon the evidence. But you should not give up your honest

convictions about the evidence just because of the opinions of your fellow jurors. Nor should you change your mind just for the purpose of obtaining enough votes for a verdict.

When you start deliberating, do not talk to the jury officer, to me or to anyone but each other about the case.  During your deliberations, you must not communicate with or provide any information to anyone by any means about this case.  You may not use any electronic device or media, such as a cell phone, smart phone, or computer of any kind; the internet, any internet service, or any text or instant messaging service; or any internet chat room, blog, website, or social networking service, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.

You may not use these electronic means to investigate or communicate about the case because it is important that you decide this case based solely on the evidence presented in this courtroom. Information on the internet or available through social media might be wrong, incomplete, or inaccurate. Information that you might see on the internet or on social media has not been admitted into evidence and the parties have not had a chance to discuss it with you. You should not seek or obtain such information and it must not influence your decision in this case.

If you have any questions or messages for me, you must write them down on a piece of paper, have the foreperson sign them, and give them to the jury officer.  The officer will give them to me, and I will respond as soon as I can.  I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you.

One more thing about messages.  Never write down or tell anyone how you stand on your votes.  For example, do not write down or tell anyone that a certain number is voting one way or another.   Your votes should stay secret until you are finished.

Your verdict must represent the considered judgment of each juror.  In order for you as a

jury to return a verdict, each juror must agree to the verdict.  Your verdict must be unanimous.

A form of verdict has been prepared for you.  It has a series of questions for you to answer.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will fill it  in, and have your foreperson date and sign the form. You will then return to the courtroom and your foreperson will give your verdict. Unless I direct you otherwise, do not reveal your answers until you are discharged. After you have reached a verdict, you are not required to talk with anyone about the case unless I order you to do so.

Once again, I want to remind you that nothing about my instructions and nothing about the form of verdict is intended to suggest or convey in any way or manner what I think your verdict should be.  It is your sole and exclusive duty and responsibility to determine the verdict.

**Notes**

Model Civil Jury Instructions for the Third Circuit (updated Oct. 2017), Instruction number 3.1.

Dated:  October 17, 2019

Respectfully submitted,

By: /s/ Paul E. Slater

Richard Alan Arnold, Esquire
William J. Blechman, Esquire
Douglas H. Patton, Esquire
KENNY NACHWALTER, P.A.
201 South Biscayne Boulevard, Suite 1100
Miami, Florida 33131
Tel: (305) 373-1000
Fax: (305) 372-1861
E-mail: wblechman@knpa.com

Paul Slater, Esquire
Joseph M. Vanek, Esquire
David P. Germaine, Esquire
SPERLING & SLATER
55 West Monroe Street, Suite 3200
Chicago, Illinois 60603
Tel: (312) 641-3200
Fax: (312) 641-6492
E-mail: jvanek@vaneklaw.com

*Counsel for Plaintiffs The Kroger Co.,*
*Safeway Inc., Roundy's Supermarkets, Inc.,*
*Walgreen Co., Hy-Vee, Inc., Albertsons LLC,*
*The Great Atlantic & Pacific Tea Company,*
*Inc., H.E. Butt Grocery Company, and*
*Conopco, Inc.*

*Counsel for Plaintiffs Supervalu Inc. and*
*Publix Super Markets, Inc.*

Bernard D. Marcus, Esquire
Moira Cain-Mannix, Esquire
Brian C. Hill, Esquire
MARCUS & SHAPIRA LLP
One Oxford Center
301 Grant Street, 35th Floor
Pittsburg, PA 15219
Tel: (412) 338-5200
Fax: (412) 391-8758
E-mail: marcus@marcus-shapira.com

Patrick J. Ahern, Esquire
AHERN & ASSOCIATES, P.C.
8 South Michigan Avenue, Suite 3600
Chicago, Illinois 60603
Tel: (312)-404-3760
Email:
patrick.ahern@ahernandassociatespc.com

*Counsel for Plaintiff Winn-Dixie Stores,*
*Inc., H.J. Heinz Company, L.P., C&S*
*Wholesale Grocers, Inc.*

*Counsel for Plaintiff Giant Eagle, Inc.*

## CERTIFICATE OF SERVICE

I certify that on October 17 2019, I caused a true and correct copy of the foregoing

document to be filed and served via ECF.

By: /s/  Paul E. Slater