IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: PROCESSED EGG PRODUCTS ANTITRUST LITIGATION | MULTIDISTRICT LITIGATION |
| *THIS DOCUMENT APPLIES TO:* ALL DIRECT ACTION PLAINTIFF CASES | No. 08-md-2002 |

**MEMORANDUM**

PRATTER, J.                                                      OCTOBER 22, 2019

INTRODUCTION

With trial fast approaching, the parties have tasked the Court with a flock of motions *in limine*. The Court has already resolved all but three of the remaining motions, two of which are addressed in this Memorandum.

First is the Direct Action Plaintiffs' (DAPs) motion *in limine* to preclude reference to a deposition taken without their participation in a separate action. Doc. No. 1895. The DAPs ask the Court to prohibit the defendants from admitting prior deposition testimony taken in a separate state court antitrust action in Kansas. The Court denies the motion because neither the Federal Rules of Civil Procedure nor the Federal Rules of Evidence require excluding the evidence.

Second is the defendants' motion *in liminé* to exclude complaints filed by Compassion Over Killing and associated documents. Doc. No. 1903. The defendants argue that such complaints and their associated documents are inadmissible because they are irrelevant, prejudicial, hearsay, and concern settlement agreements. The Court grants the motion in part and denies the motion in part as set forth below.

1

BACKGROUND

The DAPs accuse the defendants of conspiring to reduce the supply of eggs, in turn artificially driving up prices and causing the DAPs to pay more for eggs than they would have paid absent the alleged conspiracy. At the center of this scheme is the UEP Animal Care Certified Program, participation in which was marketed to consumers in part through placement of a UEP Certified Seal on members' egg cartons. The DAPs allege that the UEP Certified Program was not created to promote animal welfare, but to depress egg supply. The defendants deny that the UEP Certified Program or any of its members restrained trade.

DISCUSSION

## I. The DAPs' Motion to Preclude Reference to a Deposition Taken Without Their Participation in a Separate Action

The DAPs seek to prohibit the defendants from presenting at trial the prior deposition testimony of Beth Schnell, the president and CEO of Sparboe Farms, Inc., who was deposed in connection with a separate state court antitrust action in Kansas. The DAPs claim that because they were not parties or successors in interest to any parties in that action, use of the prior deposition testimony at this trial would be improper under the Federal Rules of Civil Procedure.

### A. Admissibility Under the Federal Rules of Civil Procedure and Evidence

Federal Rule of Civil Procedure 32(a)(8) permits an earlier "lawfully taken" deposition to "be used in a later action involving the same subject matter between the same parties, or their representatives or successors in interest, to the same extent as if taken in the later action." Rule 32(a)(8) also instructs that "[a] deposition previously taken may also be used as allowed by the Federal Rules of Evidence." FED. R. CIV. P. 32(a)(8). The defendants agree that the DAPs were not parties to the Kansas action but argue that the deposition is still admissible under Federal Rule of Evidence 804(b)(1), rendering it also admissible under Rule 32(a)(8). The Court agrees and therefore denies the DAPs' motion.

2

Federal Rule of Evidence 804(b)(1) provides a hearsay exception for testimony that was given by an unavailable witness at a "lawful deposition, whether given during the current proceeding or a different one," that "is now offered against a party . . . whose predecessor in interest had . . . an opportunity and similar motive to develop it by direct, cross-, or redirect examination." Here, Ms. Schnell is "unavailable" for the purposes of Rule 804 because she lives outside of the Court's subpoena power, making (1) Ms. Schnell "absent from the trial," and (2) the defendants unable, "by process or other reasonable means, to procure [her] attendance." FED. R. EVID. 804(a)(5)(A). The key question then becomes whether the defendants can establish that the plaintiffs in the Kansas action constitute the DAPs' "predecessors in interest."

The Third Circuit Court of Appeals construes the term "predecessor in interest" broadly for the purposes of Rule 804(b)(1). *See Lloyd v. Am. Exp. Lines, Inc.*, 580 F.2d 1179, 1187 (3d Cir. 1978) ("[I]f it appears that in the former suit a party having a like motive to cross-examine about the same matters as the present party would have, was accorded an adequate opportunity for such examination, the testimony may be received against the present party. Under these circumstances, the previous party having like motive to develop the testimony about the same material facts is, in the final analysis, a predecessor in interest to the present party.") (citation and quotations omitted); *see also New Jersey Tpk. Auth. v. PPG Indus., Inc.*, 197 F.3d 96, 110 n.21 (3d Cir. 1999) ("Privity or a common property interest is not required to establish a predecessor in interest relationship, rather, a shared interest in the material facts and outcome of the case will create such an interest."). Here, the Kansas action also alleged antitrust violations causing a restraint on trade and was "premised upon factual allegations that form the cause of actions at issue in [this] multidistrict litigation." Doc. No. 601 at 7 n.5. With the Kansas matter being significantly similar to the matter at hand, the plaintiffs in the Kansas action would have also had a significantly similar motive to develop Ms. Schnell's testimony, as well as "a shared interest in the material

3

facts and outcome of the case." The plaintiffs in the Kansas action can be fairly said to constitute the DAPs' predecessors in interest, making Ms. Schnell's prior deposition testimony admissible pursuant to Federal Rule of Evidence 804(b)(1). With the prior deposition testimony "allowed by the Federal Rules of Evidence," it is also admissible pursuant to Federal Rule of Civil Procedure 32(a)(8).

## B. Fairness and Prejudice

The DAPs further argue that permitting the defendants to use Ms. Schnell's prior deposition testimony would be unfair and unduly prejudicial. They contend that the defendants should have cross-noticed Ms. Schnell's deposition in this case, provided the DAPs with a copy of the prior deposition transcript before Ms. Schnell's deposition in this case, or used Ms. Schnell's deposition in this case to secure the testimony they seek to admit. However, the DAPs point to no legal support for these contentions, and neither the Federal Rules of Civil Procedure nor the Federal Rules of Evidence require a party take any of those actions to render prior deposition testimony admissible. Rather, the advisory committee notes to Federal Rule of Evidence 804 state the contrary. *See* FED. R. EVID. 804 advisory committee's note ("The committee understands that the rule as to unavailability, as explained by the Advisory Committee contains no requirement that an attempt be made to take the deposition of a declarant.") (internal quotations omitted).

However, the Rules are not deaf to fairness concerns: "Fairness would preclude a person from introducing a hearsay statement on a particular issue if the person taking the deposition was aware of the issue at the time of the deposition but failed to depose the unavailable witness on that issue." FED. R. EVID. 804 advisory committee's note. But even this restriction does not further the DAPs' arguments. First, the defendants never took an offensive deposition of Ms. Schnell in this case. Second, although the defendants were present by phone at the DAPs' deposition of Ms.

4

Schnell, that deposition was terminated before the defendants had the opportunity to cross-examine Ms. Schnell.

In contrast, the DAPs did have the opportunity to depose Ms. Schnell at that deposition. They also have had a copy of the transcript of her Kansas action deposition since October 2015. Although the Court recognizes that the DAPs would have preferred having the transcript prior to taking Ms. Schnell's deposition in this case, which took place in 2014, this does not rise to the level of undue prejudice. The Rules permit the admission of Ms. Schnell's prior deposition testimony, and therefore so does the Court. The DAPs' motion is denied.

## II. The Defendants' Motion to Exclude Complaints Filed by Compassion Over Killing and Associated Documents

The defendants seek to exclude documents and testimony concerning complaints submitted to the Federal Trade Commission (FTC) and Better Business Bureau (BBB). These complaints, filed by animal rights groups, claimed that the UEP Certified Seal, placed on egg cartons in compliance with the UEP Certified Program, was misleading because it falsely advertised a higher level of animal care than was actually provided under the UEP Certified Program. In particular, the defendants seek to exclude any documents and testimony concerning the complaints, the related National Advertising Division of the Council of Better Business Bureaus (NAD) and National Advertising Review Board (NARB) reports, an FTC letter summarizing the disputes, and references to any related settlement agreements. The defendants argue that the complaints and their associated documents are irrelevant, prejudicial, inadmissible hearsay, and inappropriately concern settlement agreements.

### A. Settlement Agreements

The parties agree that documents concerning settlements between the UEP and 16 state attorneys general are inadmissible. The defendants assert that the FTC letter is likewise inadmissible because it references a settlement agreement between UEP and the FTC. However,

5

the plain language of the letter summarizes the UEP's decision to modify its seal and remove egg cartons bearing the old seal from retail sale without reference to any apparent settlement agreement prompting the UEP's actions. Because the defendants fail to provide any evidence that the FTC letter concerns settlement discussions, the letter will not be excluded on this ground at this time.

### B. Complaints

Consistent with the Court's previous ruling, the complaints themselves "may be admissible if they are not offered for the truth of the matter, but only if the defendants claim that they joined the UEP Certified Program under pressure from animal rights group. These complaints, depending on their text and timing, can be used to rebut that assertion." Doc. No. 1678 at 12. In the event that the DAPs attempt to admit the complaints, admissibility shall be determined on a case-by-case basis at trial.

### C. Associated Documents

Although the complaints by animal rights groups are possibly admissible for a very narrow purpose, the adjudications by the agencies—as well as documents summarizing these adjudications—are inadmissible. After the complaints were filed, the NAD and the NARB generated documents and findings. These reports largely agreed with the animal rights programs and found the UEP Seal to be misleading. Next, the FTC sent a letter to the UEP summarizing the NAD and NARB decisions, encouraging adherence to the decisions, and referencing UEP's modification of the misleading seal. The adjudications, summaries of the adjudications, and references to the UEP's replacement of its seal are only relevant if offered for their truth value—to lend legitimacy to the animal rights groups' claims. The DAPs argue that the FTC letter can be admitted for its truth under the public records exception to the hearsay rule or for a permissible reason other than its truth, such as to evidence that the defendants had notice of animal rights groups' dissatisfaction.

6

The tangentially relevant NAD and NARB reports are inadmissible because "the supposed imprimatur of authority" that a ruling by these entities carries makes admitting the rulings "more prejudicial than probative." Doc. No. 1678. The same inherently holds true for a letter summarizing and bolstering these decisions, particularly when authored by a government agency. *See Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 827 F. Supp. 2d 409, 420 (E.D. Pa. 2011) (noting that "a jury could be likely to give undue weight to the decision of a government agency") (citing *Cambra v. Rest. Sch.*, No. 04-2688, 2005 WL 2886220, at *3 (E.D. Pa. Nov. 2, 2005) (finding that the danger of unfair prejudice in admitting an EEOC Letter of Determination "draw[ing] categorical legal conclusions . . . at the heart of [the] case" outweighed the letter's "minimal probative value")), *rev'd in part on other grounds*, 537 Fed. App'x 90 (3d Cir. 2013). This holds true regardless of whether the FTC letter could be admitted under the public records hearsay exception or for a permissible non-hearsay reason. Therefore, the NAD and NARB reports, the FTC letter, and related testimony will be excluded at trial.

## CONCLUSION

For the foregoing reasons, the motions *in limine* are variously granted and/or denied as outlined above. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

7