**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: PROCESSED EGG PRODUCTS | § | |
| ANTITRUST LITIGATION | § | |
| | § | **MDL No. 2002** |
| | § | **08-md-02002** |
| | | |
| | § | |
| | § | |
| THIS DOCUMENT RELATES TO: | § | |
| All Direct Purchaser Actions | § | |

**MEMORANDUM IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS' MOTION
TO PAY FEES & COSTS OF CAL-MAINE SETTLEMENT ADMINISTRATION**

Pursuant to the Settlement Agreement between the Direct Purchaser Plaintiffs

("Plaintiffs") and Defendant Cal-Maine Foods, Inc. ("Cal-Maine Settlement Agreement") (Doc.

No. 848-2 Ex. A), and this Court's Orders of February 28, 2014 (Doc. No. 908) and October 10,

2014 (Doc. No. 1081) Plaintiffs hereby request that the Court approve a distribution of

$421,100.89 from the Settlement Fund to the Court-approved claims administrator, Garden City

Group, LLC ("GCG"), renamed Epiq Class Action and Claims Solutions, Inc. ("Epiq"),[1] for fees

and expenses incurred in connection with the notice and administration of the Cal-Maine

Settlement Agreement.  The claims administrator is referred to herein as "GCG/EPIQ".

**I.      Introduction**

This Court approved GCG, now EPIQ, as claims administrator for this litigation on

February 28, 2014 in connection with its preliminary approval of the Cal-Maine Settlement

Agreement. (Doc. No. 908.) The Cal-Maine Settlement Agreement provides, among other things,

---

[1]      GCG was acquired by Epiq Class Action and Claims Solutions, Inc., on June 15, 2018, and has transitioned to using the Epiq name for its work as Claims Administrator.  The management team that has been handling notice and claims administration for the Eggs litigation remains the same.  Affidavit of Peter T. Sperry Regarding Notice Dissemination and Claims Administration ("Sperry Affidavit") at ¶ 1 n.1, filed herewith.

that Cal-Maine would contribute $28 million to a Settlement Fund for distribution to members of a proposed Settlement Class, part of which could be used to pay Court-approved attorneys' fees, costs, and expenses. (Doc. No. 848-2 Ex. A.)  Pursuant to its appointment as administrator of the Cal-Maine Settlement, GCG/EPIQ performed the tasks outlined below and as set forth in the Sperry Affidavit.

## II.   Settlement Administration Work Performed by GCG/EPIQ Regarding Dissemination of Notice of the Cal-Maine Settlement Agreement

After the Court preliminarily approved the Cal-Maine Settlement Agreement, GCG/EPIQ was ordered to disseminate notice to the members of the proposed Settlement Class.[2]  (Doc. No. 908.)  In anticipation of disseminating notice, GCG/EPIQ collected, between March 7, 2014 and April 2, 2014, approximately 8400 additional electronic data files from eleven named egg producer Defendants containing the names and addresses of potential members of the Settlement Class.[3]  Work performed by GCG/EPIQ prior to mailing notice to all potential class members included: loading supplemental data and prior data into a customer database created for this litigation; updating addresses; and identifying and excluding duplicate address records; formatting and printing the Notice Packet.  Sperry Affidavit at ¶¶ 6-7; *see also* August 14, 2014 Supplemental Affidavit of Jennifer M. Keough Regarding Notice Dissemination and Claims Administration ¶¶ 6-7 (Doc. No. 1036-4) ("Keough Aff.").  GCG/EPIQ also consulted with Class Counsel regarding the terms of the Notice.

Upon entry of the Court's Order that GCG/EPIQ disseminate notice, GCG/EPIQ, in April 2014, served notice upon the potential class members through direct mailings to almost 17,000

---

[2]     The notice also advised the Settlement Class of a proposed amendment to the Sparboe Settlement Agreement.

[3]     These additional files supplemented the almost 14,000 electronic data files previously received by GCG/EPIQ in 2010 in connection with the Moark and Sparboe Settlements.  Sperry Affidavit at ¶ 5.

direct purchasers of shell eggs and egg products, publication notice in the *Wall Street Journal* and industry publications, press releases, and maintenance of an informational website and toll-free hotline.  Sperry Affidavit at ¶¶ 7, 11-14; *see also* Keough Aff. at ¶¶ 8, 11-14.  GCG/EPIQ also handled numerous administrative tasks relating to notice dissemination, including processing undeliverable mail, and responding to requests for notice packets.  Sperry Affidavit at ¶¶ 8-10.

## III.   Settlement Administration Work Performed by GCG/EPIQ Regarding Objections and Exclusions

GCG/EPIQ has performed extensive settlement administration work since notice of the Cal-Maine Settlement was issued, including work to validate each claim.  Members of the Settlement Class who wished to be excluded from the Cal-Maine Settlement Agreement were required to submit exclusion requests to GCG/EPIQ postmarked or hand-delivered no later than August 1, 2014. GCG/EPIQ received and provided to Co-Lead Counsel a list of 61 entities that requested exclusion from the Cal-Maine Settlement. Many of the entities that requested exclusion also identified subsidiaries and related companies that should be excluded from the Cal-Maine Settlement which were noted by GCG/EPIQ. Sperry Affidavit at ¶ 15.

Class Members wishing to object to the approval of the Cal-Maine Settlement were required to submit objections to the Court and the Parties, postmarked or hand-delivered no later than August 1, 2014. GCG/EPIQ did not directly receive nor is it aware of any objections from Class Members.  Sperry Affidavit at ¶ 16.

## IV.   Settlement Administration Work Performed by GCG/EPIQ Regarding Claims Submissions and Processing

Class Members seeking to file a claim in the Cal-Maine Settlement were required to submit a completed Claim Form to GCG/EPIQ via mail postmarked or hand-delivered no later

than August 1, 2014.[4] During the Claim Form submission period, GCG/EPIQ received 520 new Claim Forms. Including prior Moark Settlement Claim Form submissions, amended Claim Form submissions, and new Cal-Maine Claim Form submissions, there were 1,195 claim submissions on file for inclusion in the Cal-Maine Settlement.  Sperry Affidavit at ¶ 17.

GCG/EPIQ then reviewed, analyzed, and consolidated as necessary all submitted claims. The analysis included consolidating duplicate and related claims that shared a company name, address, and/or tax identification number while maintaining the total value of purchases between all consolidated claim forms, as well as ensuring that each claim met the eligibility requirements under the settlement.  Sperry Affidavit at ¶¶ 18-19.

Following the deadline for submissions, GCG/EPIQ commenced its review of all newly-submitted Shell Egg SubClass and Egg Products SubClass purchases and undertook an extensive outreach program that addressed a variety of claim form problems, including blank submissions (36 forms), indirect purchaser submissions (196 forms), deficient documentation (123 forms), and unconfirmed purchases (19 forms).  Sperry Affidavit at ¶ 20.  All responses for any notice sent to claimants and Class Members were reviewed and processed to ensure eligibility for (or to confirm denial of) class membership, and acceptance or denial of claimed Shell Egg SubClass and/or Egg Products SubClass purchases. Sperry Affidavit at ¶¶ 19-20.[5]

---

[4]    Class Members who previously filed a claim in the Moark Settlement were not required to file a Claim Form in the Cal-Maine Settlement for those same purchases. Class Members with a valid Moark Settlement claim automatically had their claims transferred and filed in the Cal-Maine Settlement.  These Class Members were permitted to amend their previously submitted claim forms with new or updated information.

[5]    For a purchase to be eligible under the Cal-Maine Settlement, Shell Egg SubClass and Egg Products SubClass purchases must have met the following requirements: (1) Shell Egg and/or Egg Products purchases claimed must have been purchased directly from any egg Producers and named Defendants from the United States; (2) the purchases must have been made in the United States; (3) from January 1, 2000 through February 28, 2014; (4) and were not an excluded entity.  Sperry Affidavit at ¶ 19.

4

Following the initial claim processing and outreach to Class Members, GCG/EPIQ compiled a list of all newly-claimed Shell Egg and Egg Products Producers that had not been identified in the Moark Settlement claims administration process and conferred with Co-Lead Counsel to determine eligibility under the Cal-Maine Settlement Agreement.  Sperry Affidavit at ¶ 21. Those Producers that were determined to be ineligible or could not be determined to be a Producer under the terms of the Cal-Maine Settlement received notices from GCG/EPIQ regarding these particular claim issues.  Sperry Affidavit at ¶ 21.  All submitted responses and evidence supporting eligible Producer status were reviewed and provided to Co-Lead Counsel for their determination of eligibility. Sperry Affidavit at ¶ 22.

Following the final notice mailing, GCG/EPIQ removed or consolidated 395 claim submissions where such submissions were duplicative[6] or did not meet the requirements for inclusion in the Cal-Maine Settlement. Following the consolidations and removals, GCG/EPIQ combined all claims, including those claims validated in the Moark Settlement, and determined that 800 claims were eligible for inclusion in the Cal-Maine Settlement.  Sperry Affidavit at ¶ 22. Included among the 800 eligible claims were 203 updated records that included additional Shell Egg SubClass and/or Egg Products SubClass purchases from their submission in the Moark Settlement. Additionally, 121 brand new Claim Forms were submitted for inclusion in the Cal-Maine Settlement. It was determined that eligible Class Members submitted a total of $25,058,716,445.00 in valid Shell Egg purchases and $11,920,317,188.00 in valid Egg Products purchases.  Sperry Affidavit at ¶ 23.

---

[6]     If a Class Member submitted a duplicative submission for a company with multiple locations, GCG/EPIQ would contact and confer with the Class Member to consolidate the purchases into a single claim (and to remove duplicative purchases as necessary).

## V.      Settlement Administration Work Performed by GCG/EPIQ Regarding Award Notification and Distribution

GCG/EPIQ identified and submitted to Co-Lead Counsel an accounting of the payments to each Authorized Claimant that GCG/EPIQ intended to pay. Following approval on May 27, 2016 by Co-Lead Counsel of the payment accounting, GCG/EPIQ printed and mailed a claim determination letter to the 800 eligible Class Members. The letter was mailed on June 1, 2016, informed each Class Member of their proposed awards, and provided for a July 1, 2016 deadline to object to the determination.  Sperry Affidavit at ¶ 25.

As a result of the proposed award mailing, GCG/EPIQ identified six submissions that needed to be removed from consideration for payment due to associated exclusions removing the claimed entity from eligibly.  Sperry Affidavit at ¶ 26.  Also in July 2016, GCG/EPIQ received notice that Dutch Farms, Inc. ("Dutch Farms") was requesting inclusion in the Cal-Maine Settlement and payment from the settlement fund. GCG/EPIQ provided the Dutch Farms dispute immediately to Co-Lead Counsel for their determination.  Sperry Affidavit at ¶ 26.  Ultimately, Co-Lead Counsel petitioned the Court to permit Dutch Farms' inclusion within the Cal-Maine Settlement, which petition was granted on October 11, 2017.  Sperry Affidavit at ¶ 27; October 11, 2017 Order (Doc. No. 1557).  Following this Order, GCG/EPIQ updated the accounting report outlining eligible Class Members' award amounts and provided a draft check stub to Co-Lead Counsel for approval. The updated accounting reflected that 795 Class Members were eligible for distribution from the Cal-Maine Settlement.  Sperry Affidavit at ¶ 27; October 11, 2017 Order (Doc. No. 1558).

On January 22, 2018, $18,319,536.55 was deposited into the Cal-Maine Qualified Settlement Fund for distribution to eligible Class Members.  Sperry Affidavit at ¶ 28.  On February 8, 2018, GCG/EPIQ sent payments to the eligible Class-Members.  Sperry Affidavit at

6

¶ 28.  As of the date of this motion, approximately 751 disbursements have been presented for payment accounting for $18,184,989.07 of the Fund.  The remainder of the Fund is split between two categories:  33 checks, worth $94,507.08, have not been presented for payment, and 11 checks, worth $40,040.40, have recently been reissued.[7].  Sperry Affidavit at ¶ 28.

## VI.    Request for Authorization of Payment to GCG/EPIQ

The Cal-Maine Settlement Notice that was disseminated to members of the Settlement Class explained that the Settlement Fund may be reduced by "court-ordered attorneys' fees and reimbursement of litigation expenses, including administration of the Settlement, as approved by the Court," as well as "by the expense of providing notice to the Class." http://www.eggproductssettlement.com/docs/notice_cal-maine.pdf.      As described herein, GCC/EPIQ has handled all aspects of settlement administration for the Cal-Maine Settlement Agreement.

Plaintiffs respectfully request that the Court authorize payment to GCG/EPIQ in the amount of $421,100.89 in fees and expenses associated with notice and settlement administration.[8]  A true and correct copy of the invoices outlining GCG/EPIQ's outstanding costs and fees is attached to the Sperry Affidavit as Exhibit K.   Sperry Affidavit at ¶ 29.  A proposed Order has been submitted herewith.

Dated:  December 2, 2019                          Respectfully submitted,

---

[7]       Due to mergers, acquisitions, closures, and other entity changes, it has taken a significant amount of time to identify the appropriate claimants for the remaining portion of the Fund. The largest amount still due and owing is $69,945.24 (of the $94,507.08 in checks that have not been presented for payment). That claim was submitted by Interstate Brands Corporation, which, according to counsel, underwent bankruptcy and dissolution proceedings in 2012.  Counsel has been in touch with both the United States Trustee that handled the bankruptcy, as well as with general counsel for Hostess Brands (which was sold off as part of the bankruptcy), in an effort to try and distribute this particular claim amount.  Sperry Affidavit at ¶ 28 n.11.
[8]       By way of reference, GCG was paid $407,870.90 for the notice and claims administration services it provided in connection with the Moark settlement.

*/s/ Mindee J. Reuben*
Mindee J. Reuben
**LITE DEPALMA GREENBERG, LLC**
570 Broad Street, Suite 1201
Newark, NJ 07102
(973) 623-3000
(973) 623-0858 (fax)
mreuben@litedepalma.com

*Co-Lead Counsel and Liaison Counsel for Direct Purchaser Plaintiffs*

Michael D. Hausfeld
**HAUSFELD LLP**
1700 K. Street NW, Suite 650
Washington, DC 20006
(202) 540-7200
(202) 540-7201 (fax)
mhausfeld@hausfeldllp.com

*Co-Lead Counsel for Direct Purchaser Plaintiffs*

Stanley D. Bernstein
**BERNSTEIN LIEBHARD LLP**
10 East 40th Street
New York, New York 10016
(212) 779-1414
(212) 779-3218 (fax)
bernstein@bernlieb.com

*Co-Lead Counsel for Direct Purchaser Plaintiffs*

Stephen D. Susman
**SUSMAN GODFREY L.L.P.**
560 Lexington Avenue, 15th Floor
New York, NY 10022-6828
(212) 336-8330
(212) 336-8340 (fax)
ssusman@susmangodfrey.com

*Co-Lead Counsel for Direct Purchaser*
Plaintiffs

8