**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **IN RE: PROCESSED EGG PRODUCTS** | : | **MULTIDISTRICT** |
| **ANTITRUST LITIGATION** | : | **LITIGATION** |
| | : | |
| | : | |
| | : | |
| ***THESE INSTRUCTIONS APPLY TO:*** | : | **No. 08-md-2002** |
| **THE DIRECT ACTION PLAINTIFFS** | : | |

<u>**DEFENDANTS' PROPOSED REVISED JURY INSTRUCTIONS—LIABILITY PHASE**</u>

 Defendants Rose Acre Farms, Inc. ("Rose Acre"), United Egg Producers, Inc. ("UEP") and United States Egg Marketers, Inc. ("USEM") (collectively, "Defendants"), for the reasons set forth in Defendants' Trial Brief filed December 1, 2019 (ECF No. 2065), respectfully submit the following minimally revised proposed jury instruction regarding injury for the liability phase of the Direct Action Plaintiff trial. For the convenience of the Court, Defendants have highlighted and double-underscored their proposed revisions, which are to the injury instruction, Instruction No. 23, previously filed by Defendants on September 27, 2019 (ECF No. 1988). Defendants have also bracketed text to indicate text that Defendants (consistent with their September 27, 2019 submission), propose omitting from the injury instruction given by the Court at the Direct Purchaser Plaintiff trial.

# **TABLE OF CONTENTS**

Instructions 1-9:        Background Information............................................... 1-22

Instructions 10-11:      Overview of Antitrust law ....................................... 23-24

Instructions 12-17:      Conspiracy Law ....................................................... 25-37

Instructions 18-22:      Rule of Reason......................................................... 38-45

Instruction 23:          Injury........................................................................ 46-48

Instruction 24:          Plaintiffs' Participation.................................................49

Instructions 25-26:      Closing Information................................................. 50-53

# INSTRUCTION NO. 1

## *Introduction*

Members of the Jury:

Now that you have heard all of the evidence that's been admitted in this trial and the arguments of counsel, it's my duty to give you the final instructions as to the law that is applicable to this case. Use these oral instructions to guide you in your deliberations.

All of the instructions of law I gave you at the beginning of the trial, during the trial, and these final instructions must guide and govern your deliberations. It is your duty to follow the law, as stated, in all of the instructions of the Court and to apply these rules of law to the facts as you find them from the evidence received during the trial.  Counsel has referred to some of the applicable rules of law and the Court's instructions. They are permitted to do so. However, if any difference appears to you between the law as stated by counsel and that as stated by the Court, you are to be governed by the instructions told to you by the Court.

You are not to single out any one instruction alone as stating the law, but you must consider the instructions as a whole in reaching your decisions. Likewise, you are not to be concerned with the wisdom of any rule of law stated by the Court. Regardless of any opinion you may have as to what the law ought to be, it

1

would be a violation of your sworn duty to base any part of your verdict upon any view or opinion of the law other than those provided in the Court's instructions, just as it would be a violation of your sworn duty, as the judges of the facts, to base your verdict upon anything but the evidence received in the case.

As I am sure you have come to realize, whatever you think you knew about trials, about evidence, or about the law as a result of watching T.V. shows or movies, has no place here as you perform your duties as jurors in this case. No one involved in this case should be compared to any T.V. show, any movie or any actor or actress. You were chosen as jurors for this real life trial to evaluate all of the evidence received and to decide each of the factual questions presented by the allegations brought by the parties. In resolving the issues presented to you for decision in this trial, as I have told you, you must not be persuaded by bias, prejudice, or sympathy for or against any of the parties to this case or by any public opinion.

<u>Source</u>:   Instruction No. 1 at the DPP trial.   *See*, *also*, Third Circuit Model Instructions, Instruction No. 1.1.

2

**INSTRUCTION NO. 2**

### *Evidence*

The evidence from which you are to find the facts consists of the following:

1. The testimony of the witnesses including the testimony presented via deposition;

2. Stipulated facts that have been agreed to by the parties; and

3. Documents and other things received as exhibits.

The following things are ***not*** evidence:

1. Statements, arguments, and questions of the lawyers for the parties in this case, even if the lawyers' questions sounded like they were based on facts as described by the lawyers—what the lawyers said is not evidence unless I told you specifically you could consider it so;

2. Objections by lawyers, even if their objections sounded as though they were based on something sounding like facts.

3. Any testimony I told you to disregard or which I excluded from evidence; and

4. Anything you may have seen or heard about this case outside the courtroom.

3

You must make your decision based only on the evidence that you saw and heard in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

You can, and should, use your common sense in weighing the evidence. Consider the evidence in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

There are rules that control what can be received into evidence. When a lawyer asked a question or offered an exhibit into evidence and a lawyer on the other side thought that it was not permitted by the rules of evidence, that lawyer may have objected. Indeed, you heard several objections in this trial. Objections simply meant that the lawyer was requesting that I make a decision on a particular rule of evidence. Objections to questions – whether short or lengthy – are not evidence. Lawyers have an obligation to their clients to make objections when they believe that the evidence being offered is improper under the rules of evidence. Sometimes they are right, sometimes they are not. You should not be influenced by the objection or by the Court's ruling on it. If the objection was sustained, you are

4

to ignore the question and any whole or partial answer to it. If the objection was overruled, treat the answer like any other.

If you were instructed – or if I instruct you now – that some item of evidence is received for a limited purpose only, you must follow that instruction and may only consider the evidence for that limited purpose.

In this trial, a lot of evidence has been admitted for a limited purpose—you may have heard the parties referencing it throughout. For the evidence that was admitted for notice to UEP members, you may only consider it for the limited purpose of what was being communicated to members in the particular document, for whatever weight you think it deserves. However, you cannot use it to prove, either directly or circumstantially, the truth of what it says.

For example, if a document admitted for that purpose states that it "will be cold on January 1," you can only use it for the purpose of showing that people were told that and may or may not have acted in response to that information. Perhaps you can use it as evidence that the person who received the letter put on a coat on January 1 in reliance on the forecast, or changed travel plans as a result of the weather forecast. However, you cannot use it to prove, either directly or circumstantially, that it was actually cold on January 1. Such a jump would require

5

evidence offered for the truth of the matter. I have noted such evidence for you throughout trial.

Also, if certain testimony or other evidence was ordered struck from the record, you must disregard that evidence. Do not consider any testimony or other evidence that was excluded. Do not speculate about what a witness might have said or what an exhibit might have shown.

Source:    Instruction No. 2 at the DPP trial.    *See*, *also*, Third Circuit Model Instructions, Instruction No. 1.5.

**INSTRUCTION NO. 3**

### ***Credibility of Witnesses***

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You are the sole judges of the credibility of the witnesses. "Credibility" means whether a witness is worthy of belief. You may believe everything a witness says, only part of it, or none of it. In deciding what to believe, as I mentioned to you at the start of the trial, you may consider a number of factors, including the following:

1. the opportunity and ability of the witness to see or hear or know the things the witness testifies to;

2. the quality of the witness's understanding and memory;

3. the witness's manner while testifying;

4. whether the witness has an interest in the outcome of the case or any motive, bias or prejudice;

5. whether the witness is contradicted by anything the witness said or wrote before trial or by other evidence;

6. how reasonable the witness's testimony is when considered in the light of other evidence that you believe; and

7. any other factors that bear on believability.

7

The weight of the evidence to prove a fact does not necessarily depend on the number of witnesses who testify. What is more important is how believable the witnesses were and how much weight you think their testimony deserves.

You may be guided by the appearance and conduct of the witness, or by the manner in which the witness testifies, or by the character or tone of the testimony given, or by evidence contrary to the testimony.

You should carefully examine all the testimony given, the circumstances under which each witness has testified, and every matter in evidence tending to show whether a witness is worthy of belief. The factors that I just listed a moment ago in considering how to evaluate a witness's credibility also work in evaluating possible discrepancies in testimony.

You should consider whether the witness impresses you as having an accurate recollection of the matters about which he or she testified. Also, consider any relation each witness may have with either side of the case, the manner in which each witness might be affected by the verdict, and the extent to which the testimony of each witness is either supported or contradicted by other evidence in the case.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimonies of different witnesses, may or may not cause you to discredit such

testimony. Two or more persons seeing an event may see or hear it differently. However, in weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

After making your own judgment, you should give the testimony of each witness such weight, if any, that you may think it deserves. In short, you may accept or reject the testimony of any witness, in whole or in part.

Keep in mind, ladies and gentlemen, that the quality or weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or nonexistence of any fact. Indeed, you may find that the testimony of a small number of witnesses—or even one witness alone—as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

Source:   Instruction No. 3 at the DPP trial.   *See*, *also*, Third Circuit Model Instructions, Instruction No. 1.7.

9

**INSTRUCTION NO. 4**

## *Equal Standing of the Parties*

You should consider and decide this case as a dispute between persons of equal standing or of equal worth in the community, and holding the same or similar stations in life. A corporation, partnership, or unincorporated association is entitled to the same fair trial as a private individual. All persons, including corporations, partnerships, unincorporated associations, and other organizations stand equal before the law, and are to be treated as equals. Therefore, you should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life.

Source:   Instruction No. 4 at the DPP trial (citing Third Circuit Model Instructions).

10

**INSTRUCTION NO. 5**

## *Corporations*

Under the law, a corporation is a person, but it acts only through its agents. A corporation's agents include its directors, officers, employees, or others acting on its behalf. A corporation is not capable, under the law, of conspiring with its own agents, unincorporated divisions, or wholly owned subsidiaries. Through its agents, however, a corporation is capable of conspiring with other persons or independent corporations.

A corporation is legally bound by the acts and statements of its agents or employees done or made within the scope of the agent's employment or apparent authority.

Acts done within the scope of employment are acts performed on behalf of a corporation and directly related to the performance of the duties the agent has general authority to perform. Apparent authority is the authority that persons outside the corporation could reasonably believe the agent would have, judging from his or her position with the company, the responsibilities previously entrusted to the person or the office and the circumstances surrounding his or her past conduct. An agent can have apparent authority even when, despite these

11

appearances, the agent is actually acting in a dishonest, fraudulent, or anticompetitive manner.

To summarize, for a corporation to be legally responsible for the acts or statements of its agents, you must find that the agent was acting within the scope of his or her employment with apparent authority.

The fact that a corporation has instructed its agents not to violate the antitrust laws does not excuse the corporation from responsibility for the unlawful acts of its agents done within the scope of their employment or apparent authority.

A corporation is entitled to the same fair trial as a private individual. The acts of a corporation are to be judged by the same standard as the acts of a private individual, and you may hold a corporation liable only if such liability is established by the preponderance of the evidence. All persons, including corporations, are equal before the law.

Source:  Instruction No. 5 at the DPP trial.  *See*, *also*, American Bar Association, Model Jury Instructions in Civil Antitrust Cases (2016 ed.) ("ABA Model Instructions") at 19 (Section 1 of the Sherman Act, Instruction 3: Corporations).

**INSTRUCTION NO. 6**

**_The Parties, Claims, and Burden of Proof_**

This is a civil case. For the issues you will consider, [the Direct Purchaser Class] the Plaintiffs are the parties who brought this lawsuit.  [They are the plaintiffs]. They include Giant Eagle, Inc., The Kroger Co., Safeway, Inc., Walgreen Co., Hy-Vee, Inc., Albertsons LLC, The Great Atlantic & Pacific Tea Company, Inc., H.E. Butt Grocery Company, Roundy's Supermarkets, Inc., SuperValu Inc., Publix Super Markets, Inc., Winn-Dixie Stores, Inc., C&S Wholesale Grocers, Inc. and H.J. Heinz Company, L.P.

Rose Acre Farms, Inc. [Ohio Fresh Eggs, and R.W. Sauder], United Egg Producers, Inc., and United States Egg Marketers, Inc. are the parties against whom the lawsuit was filed. They are the defendants.

The questions you will be addressing in your deliberations are these: First, was there a contract, combination, or conspiracy between or among at least two separate entities? Second, did the alleged contract, combination, or conspiracy unreasonably restrain trade?  And finally, did the restraints cause the Plaintiffs to suffer an injury to their business or property?

I will provide you more in-depth instruction as to these questions shortly. As to these claims, the [Direct Purchaser Class has] Plaintiffs have have the burden of

13

proving their case against the defendants by what is called the preponderance of the evidence. Preponderance of the evidence means that, to prevail on a claim or affirmative defense, the party asserting the relevant claim or affirmative defense will have to prove to you, in light of all the evidence, that what they claim is more likely so than not so. To put it differently, as you consider the claims against each individual defendant, you may think about the burden of proof this way: if you were to put the evidence favorable to the [Direct Purchaser Plaintiff Class] Plaintiffs regarding each individual defendant and the evidence favorable to each of the individual defendants on opposite sides of the pan scales that are frequently used to signify justice, the [Direct Purchaser Plaintiff Class] Plaintiffs would have to make the scales tip ever so slightly on their side to prevail on any issue or claim as to which they have what we call the burden of proof, and this is true independently for each defendant.

Here, the [Direct Purchaser Plaintiff Class] Plaintiffs allege that [between 2004 and 2008], starting at least as early as May 15, 2000, and continuing at least through 2012, they paid higher prices for commodity shell eggs and egg products purchased from [the defendants] Defendant Rose Acre Farms or other egg producers because the defendants, along with other alleged co-conspirators, conspired to [limit] reduce the nation's egg supply, which drove up egg prices.

14

Commodity shell eggs are the eggs you find in your grocery store, but do not include specialty eggs, such as organic or cage-free.  Egg products are liquid, frozen or dried eggs used by food manufacturers as ingredients in foods such as mayonnaise, salad dressing and cakes.

The Plaintiffs claim that this conspiracy to reduce egg supply consisted of three interrelated alleged restraints: (1) recommendations to molt and slaughter egg-laying hens early; (2) to join the UEP Certified Program; and (3) to participate in USEM's egg-export programs.

The defendants deny these allegations, and assert that all of the actions they took were for legitimate business reasons. They also claim that the supply of eggs actually increased during the alleged conspiracy.  Defendant USEM claims that it never agreed to molt or slaughter hens early and that it never joined the UEP Certified Program.  Defendant Rose Acre Farms also claims that it never agreed to molt or slaughter its hens early.

We have heard a lot about other companies not here today. Those parties are not at issue in this lawsuit, and you should not concern yourself with any claims against those parties, whether there are other pending or resolved lawsuits, or anything of the sort. Remember that I told you there are certain issues for the jury, and certain issues for the Judge. The presence or non-presence of other claims and

15

whether they impact this case are issues that I must deal with, and the law accounts for these types of interrelated claims. The only question before you is the claim between [this Direct Purchaser Plaintiff Class] these Plaintiffs and the defendants here today.

If the [Direct Purchaser Plaintiff Class fails] Plaintiffs fail to meet this burden, that is, if the scales remain evenly balanced or if they tip to a defendant's side, the verdict must be in favor of that defendant on the issue or matter as to which [the Direct Purchaser Plaintiff Class has] the Plaintiffs have the burden. If you find after considering all the evidence that a claim or fact is more likely so than not so, then the claim or fact has been proved by a preponderance of the evidence.

In determining whether any fact has been proved by a preponderance of evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

You may have heard of the term "proof beyond a reasonable doubt." That is a stricter standard of proof and it applies only to criminal cases. It does not apply in civil cases such as this, so you should put that concept out of your mind.

Source:   Instruction No. 7 at the DPP trial (citing Third Circuit Model Instructions).

16

**INSTRUCTION NO. 7**

**_DIRECT AND CIRCUMSTANTIAL EVIDENCE_**

There are two types of evidence that you may use in reaching your verdict. One type of evidence is called "direct evidence." An example of "direct evidence" is when a witness testifies about something that the witness knows through his or her own senses — something the witness has seen, felt, touched, heard or done. If a witness testified that he or she saw it raining outside, and you believed him or her, that would be direct evidence that it was raining. Another form of direct evidence is an exhibit where the fact to be proved is the document's existence or its current condition.   Direct evidence of a conspiracy must be explicit, and require no inferences to establish the proposition or conclusion being asserted.  The other type of evidence is circumstantial evidence. "Circumstantial evidence" is proof of one or more facts from which you could find another fact. For example, if someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining outside.

You should consider both kinds of evidence—direct and circumstantial—that are presented to you. The law makes no distinction in the weight to be given to

17

either direct or circumstantial evidence. You are to decide how much weight to give any evidence.

During the trial, you may have heard the attorneys use the term "inference." In their arguments they have asked you to infer on the basis of your reason, experience, and common sense, from one or more established facts, the existence of some other fact.

An inference is not a suspicion or a guess. It is a reasoned, logical decision to find that a disputed fact exists on the basis of another fact which has been shown to exist. There are times when different inferences may be drawn from facts, whether by direct or circumstantial evidence. The [Direct Purchaser Plaintiff Class asks] Plaintiffs ask you to draw one set of inferences, while the defendants ask you to draw other inferences. It is for you, and you alone, to decide what inferences you will draw.

The process of drawing inferences from facts in evidence is not a matter for guesswork or speculation. An inference is a deduction or conclusion which you, the jury, are permitted to draw – but not required to draw – from the facts that have been established by either direct or circumstantial evidence. In drawing inferences, you should exercise your common sense. So, while you are considering the evidence presented to you, you are permitted to draw, from the facts which you

18

find to be proven, such reasonable inferences as would be justified in light of your

experience.

<u>Source</u>:   Instruction No. 8 at the DPP Trial (citing Third Circuit Model
Instructions).

<u>Source for underscored modification to the DPP instructions</u>:   ABA Model
Instructions at 15, n.4 (2016 ed.) ("Where plaintiff attempts to prove the existence
of a conspiracy through direct evidence, the court should instruct the jury that
direct evidence of a conspiracy must be evidence that is explicit and requires no
inferences to establish the proposition or conclusion being asserted.")

**INSTRUCTION NO. 8**

***Opinion Testimony***

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions. Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case. You have heard from a number of experts in this case.

[The Direct Purchaser Plaintiff Class] The Plaintiffs brought [Dr. Rausser] Dr. Baye, an expert in economics, econometrics and statistics.

The defendants brought forth Dr. Walker and Dr. David, both experts in economics and econometrics.

Source:  Instruction No. 9 at the DPP Trial (citing *In re: TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-1827, MDL No. 1827 (N.D. Cal. June 28, 2012)).

20

INSTRUCTION NO. 9

### *Expert Witnesses*

You have heard testimony of these witnesses who the parties refer to as experts. These witnesses testified to assist you in reaching a decision on certain issues. It is your obligation to determine the expertise, if any, of such witnesses, the credibility of such witnesses, and the reliability of their opinions. The testimony of these witnesses is sometimes in conflict. They disagree at times. You must remember that you are the sole trier of the facts and where their testimony relates to a question of fact, it is your job to resolve the disagreements. The way you resolve the conflict between these witnesses is the same way that you decide other fact questions and the same way that you decide whether to believe ordinary witnesses.

In addition, because they gave their opinions, you should consider the soundness of each opinion, reasons for the opinion, and the witness' motive, if any, for testifying. You may give the testimony of each of these witnesses such weight, if any, that you think it deserves in the light of all the evidence. You should not permit a witness' opinion testimony to be a substitute for your own reason, judgment and common sense. You may reject the testimony of any opinion witness in whole or in part, if you conclude the reasons given in support of an opinion are

unsound or, if you, for other reasons, do not believe the witness. The determination

of the facts in this case rests solely with you.

<u>Source</u>:   Instruction No. 10 at the DPP trial (citing *In re: TFT-LCD (Flat Panel) Antitrust Litigation*, No. 07-1827, MDL No. 1827 (N.D. Cal. June 28, 2012)).

**INSTRUCTION NO. 10**

## *Purpose of the Sherman Act*

I now want to turn to the specific law of antitrust. The [Direct Purchaser Plaintiff Class here brings] Plaintiffs here bring this suit under the Sherman Act.

The purpose of the Sherman Act is to preserve free and unfettered competition in the marketplace. The Sherman Act rests on the central premise that competition produces the best allocation of our economic resources, the lowest prices, the highest quality, and the greatest material progress.

Source:  Instruction No. 11 at the DPP trial.  *See*, *also*, ABA Model Instructions at 1 (Instruction 1: Purpose).

23

INSTRUCTION NO. 11

**_Sherman Act Section 1_**

The [Direct Purchaser Class] Plaintiffs challenge [Ohio Fresh Eggs, Rose Acre Farms and R.W. Sauder's] defendants' conduct under Section 1 of the Sherman Act. Section 1 prohibits contracts, combinations, and conspiracies that unreasonably restrain trade. One of the requirements of this law is that the restraint of trade affects interstate commerce. I am instructing you that I have determined this requirement concerning interstate commerce is met, and therefore you need not consider that in your deliberations.

In light of that, to establish a violation of Section 1 of the Sherman Act, the Plaintiffs still must prove the following by a preponderance of the evidence:

(1)      the existence of a contract, combination, or conspiracy between or among at least two separate entities;

(2)      that the contract, combination, or conspiracy unreasonably restrains trade;

(3)      that the restraints caused the [Direct Purchaser Plaintiff Class] Plaintiffs to suffer an injury to their business or property.

I will address each of these three elements in turn.

Source:  Instruction No. 12 at the DPP trial.  *See*, *also*, ABA Model Instructions at 2 (Instruction 2: Sherman Act Section 1).

24

**INSTRUCTION NO. 12**

**_Contract, Combination, or Conspiracy—Definition, Existence and Evidence_**

A conspiracy is an agreement or understanding between two or more persons to do something [illegal] unlawful. In this case, the [Direct Purchaser Plaintiff Class] Plaintiffs claim that [illegal] unlawful goal was to restrain trade by [limiting] reducing egg supply. The [Direct Purchaser Class] Plaintiffs allege that [Ohio Fresh Eggs] Rose Acre Farms, United Egg Producers, and United States Egg Marketers participated in a conspiracy to restrain trade by [limiting] reducing egg supply.

The [Direct Purchaser Class] Plaintiffs must prove both of the following elements by a preponderance of the evidence:

(1) that the alleged conspiracy to restrain egg supply existed; and

(2) as to each individual defendant, that defendant knowingly became a member of that conspiracy. To act knowingly means to participate deliberately, not because of a mistake, accident or other innocent reason.

The basis of a conspiracy is an agreement or understanding between two or more persons or companies. Here, an agreement or understanding between two or

25

more persons or companies exists when they share a commitment to a common scheme <u>designed</u> to achieve an unlawful purpose.

To establish the existence of a conspiracy, the evidence need not show that its members entered into any formal or written agreement. The agreement itself may have been entirely unspoken. A person can become a member without full knowledge of all of the details of the conspiracy, the identity of all of its members, or the parts such members played in the charged conspiracy. The members of the conspiracy need not necessarily have met together, directly stated what their object or purpose was to one another, or stated the details or the means by which they would accomplish their purpose. To prove a conspiracy existed, the evidence must show that the alleged members of the conspiracy came to an agreement or understanding among themselves to accomplish a common purpose.

A conspiracy may be formed without all parties coming to an agreement at the same time, such as where competitors separately accept invitations to participate in a plan to restrain trade. Similarly, it is not essential that all persons acted exactly alike, nor is it necessary that they all possessed the same motive for entering the agreement. It is also not necessary that all of the means or methods claimed by the [Direct Purchaser Plaintiff Class] <u>Plaintiffs</u> were agreed upon by each individual defendant to carry out the alleged conspiracy, nor that all of the

26

means or methods that were agreed upon were actually used or put into operation, nor that all the persons alleged to be members of the conspiracy were actually members. It is the agreement or understanding to restrain trade by [limiting] reducing egg supply that constitutes a conspiracy. Therefore, you may find a conspiracy existed regardless of whether it succeeded or failed.

The [Direct Purchaser Class] Plaintiffs may prove the existence of the alleged conspiracy through direct evidence, circumstantial evidence, or both. Direct evidence is explicit and requires no inferences to establish the existence of the alleged conspiracy.

Direct evidence of an agreement may not be available, and therefore, a conspiracy may also be shown through circumstantial evidence. You may infer the existence of a conspiracy from the circumstances, including what you find the alleged members actually did and the words they used. However, mere similarity of conduct among various persons, or the fact that they may have associated with one another and may have met or assembled together, does not by itself establish the existence of a conspiracy unless the evidence tends to exclude the possibility that the persons were acting independently. If they acted similarly but independently of one another, without any agreement among them, then there would not be a conspiracy.

27

In determining whether an agreement or understanding between two or more persons has been proved, you must view the evidence as a whole and not piecemeal.

Source:  Instruction No. 14 at the DPP trial.  *See*, *also*, ABA Model Instructions at 13 (Contract, Combination, or Conspiracy, Instruction 1: Definition, Existence, and Evidence).

Source for underscored "tends to exclude" modification to DPP instruction: O'Malley, Grenig and Lee, Federal Jury Practice and Instructions, Civil Companion Handbook, Vol. 1 at 7 (2014-2015) (citing *In re Tableware Antitrust Litigation*, No. C-04-3514) ("Mere similarity of conduct between Federated and May, however, or the fact that they may have associated with one another and may have met or assembled together and discussed common aims and interests, does not establish the existence of a conspiracy unless the evidence tends to exclude the possibility that the Federated and May were acting independently.").  *See*, *also*, *Monsanto Co. v. Spray-Rite Serv. Co.*, 465 U.S. 752, 764 (1984) ("There must be evidence that tends to exclude the possibility that the manufacturer and nonterminated distributors were acting independently.")

## INSTRUCTION NO. 13

### *Interdependence*

The Plaintiffs claim an overarching conspiracy to reduce egg supply consisted of three interrelated restraints: (1) recommendations to molt and slaughter egg-laying hens early; (2) to join the UEP Certified Program; and (3) to participate in USEM's egg-export programs.  In order for the Plaintiffs to prove the existence of this overarching conspiracy to reduce supply, the restraints challenged here – (1) the recommendations of early molt and early slaughter; (2) the UEP Certified Program; and (3) the USEM export program—must all be part of a single, overarching conspiracy, as opposed to, for example, three different conspiracies that were each independent of each other.  To determine whether these three restraints constitute one conspiracy, you must look to (1) whether there was a common goal among the conspirators; (2) whether the agreement contemplated bringing to pass a continuous result that would not continue without the continuous cooperation of the conspirators; and (3) the extent to which the participants overlap in the various dealings.  If, after considering these factors, you find that all three of these programs were part of the same conspiracy to reduce supply, only then must you determine if the actions taken were reasonable.  There

29

are a number of steps to this inquiry, which I will first summarize before going into each in detail.

[In making this determination, you must first determine whether the Direct Purchaser Plaintiff Class has proven that the challenged restraints have resulted in a substantial harm to competition in a relevant product and geographic market. If you find that the Direct Purchaser Plaintiff Class has proven that the challenged restraints resulted in a substantial harm to competition in a relevant market, then you must consider whether the restraints produce countervailing competitive benefits. If you find that they do, then you must balance the competitive harm against the competitive benefit. The challenged restraints are illegal under Section 1 of the Sherman Act only if you find that the competitive harm substantially outweighs the competitive benefit. Before going into each step of the analysis in more detail, I first want to talk to you about how you determine if companies are conspiring together.]

Source:  Instruction No. 13 at the DPP trial.  The last paragraph of DPP Instruction No. 13 appears in Defendants' proposed Instruction No. 18.  *See*, *also*, *United States v. Kemp*, 500 F.3d 257, 287 (3d Cir. 2007) ("In order to determine whether a group of individuals engaged in a single conspiracy or multiple conspiracies, we evaluate three factors.  We consider (1) "whether there was a common goal among the conspirators"; (2) "whether the agreement contemplated bringing to pass a continuous result that will not continue without the continuous cooperation of the conspirators"; and (3) "the extent to which the participants overlap in the various dealings.") (quoting *United States v. Kelly*, 892 F.2d 255, 259 (3d Cir. 1989)).

30

**INSTRUCTION NO. 14**

**_Participation and Intent_**

Before you can find that [Ohio Fresh Eggs, Rose Acre Farms, and R.W. Sauder] any Defendant [were] was a member of the overarching conspiracy alleged by the [Direct Purchaser Class], Plaintiffs, the evidence must show, as to each individual defendant, that each defendant knowingly joined in the unlawful plan either at its inception, or at some later time, with the intent to further the purpose of the overarching conspiracy.

To act "knowingly" means to participate deliberately and not because of a mistake, accident, or other innocent reason. A person may become a member of a conspiracy without full knowledge of all the details of the conspiracy, the identity of all its members, or the parts they played. Knowledge of the essential nature of the plan is enough. On the other hand, a person who has no knowledge of a conspiracy, but happens to act in a way that helps the conspiracy succeed, does not thereby become a conspirator.

A person who knowingly and intentionally joins an existing conspiracy, or who participates only in part of a conspiracy with knowledge of the overall

31

conspiracy, is just as responsible as if he or she had been one of those who formed or began the conspiracy and participated in every part of it.

In determining whether a defendant was a member of the alleged conspiracy, you should consider only the evidence about that particular defendant's statements and conduct, including any evidence of that defendant's knowledge and participation in the events involved and any other evidence of that particular defendant's participation in the conspiracy alleged.

You may not find that a defendant was a member of a conspiracy based only on its association with or knowledge of wrongdoing, but it is a factor you may consider to determine whether a defendant was a member of the alleged conspiracy.

If you find that the alleged conspiracy existed, then the acts and statements of the conspirators made in furtherance of the conspiracy are binding on all of those who you find were members of the conspiracy.

Once you have found that a defendant is a member of a conspiracy, it is presumed to remain a member and is responsible for all actions taken by all coconspirators during, and in furtherance, of the conspiracy until it is shown that the conspiracy has been completed or abandoned.

Source:  Instruction No. 19 at the DPP trial.  *See*, *also*, ABA Model Instructions at 21 (Section 1 of the Sherman Act, Instruction 4: Participation and Intent).

**INSTRUCTION NO. 15**

***Parallel Conduct***

The mere fact that [the defendants] one or more egg producers may have participated in the UEP short-term supply-reduction recommendations, the UEP Certified Program, or the USEM Export Program does not by itself establish the existence of an overarching conspiracy to reduce the supply of eggs among the defendants. [Their] The egg producers' behavior may be no more than the result of the exercise of independent judgment in response to identical or similar market conditions.

For example, everyone might open their umbrellas on a rainy day, but that similar behavior would not necessarily mean that they had agreed or conspired to open their umbrellas. A business may lawfully adopt the same prices, conditions of sale, or other practices as its competitors, so long as it does so independently and not as part of an agreement or understanding with one or more of its competitors. If the [defendants or alleged co-conspirators] egg producers acted similarly but independently of one another, without an[y] overarching agreement or

33

understanding between two or more [of them] competitors to reduce egg supply, then there would not be a conspiracy.

You must decide whether the [defendants] egg producers' similar conduct was, more probably than not, the result of an agreement or understanding among them or other co-conspirators who are not present here to reduce egg supply.  In doing so, you may consider the defendants' similar conduct along with other evidence.

Source:  Instruction No. 15 at the DPP trial.  Underscored text proposed for addition to the last paragraph of this instruction is from the ABA Model Instructions at 17, para. 2 (Section 1 of the Sherman Act, Instruction 2: Parallel Conduct).

**INSTRUCTION NO. 16**

**<u>*Trade Organizations May Commit Antitrust Violations*</u>**

Businesses that are actual or potential competitors may lawfully form into associations to advance common interests. You have heard of two such examples here, United Egg Producers and United States Egg Marketers, <u>which are agricultural cooperative associations</u>. [Trade] Associations may keep members informed of new services or technology in the industry or perform other valuable services such as cooperative research, publication of trade journals, or joint representation before legislative or administrative bodies.

However, [a trade association's] <u>an association's</u> actions are not immune from antitrust laws, and an association is capable of [being a co-conspirator in violating] <u>committing violations</u> of the antitrust laws. [The actions of a group of competitors, taken through an association to which they belong, present the same issues as the actions of a group of competitors who have not created a formal organization such as a trade association.]  A trade association or similar industry group cannot lawfully act to facilitate the raising, stabilizing, or maintaining of prices in the market in which its members compete with one another, to reduce members' collective output of products or services, or to allocate territories among members that are in horizontal competition with one another.

35

If [a trade] an association exchanges with its members confidential, competitively sensitive information, such as current or future prices, or current or future output information, that is evidence which you may consider, along with all the other evidence, in deciding whether the association is in violation of the antitrust laws.

Source:   Instruction No. 20 at the DPP trial.   Some text omitted from DPP Instruction No. 20 now appears in Defendants' proposed Instruction No. 17.   *See*, *also*, ABA Model Instructions at 57 (Section 1 of the Sherman Act, Instruction 10: Trade Organization May Commit Antitrust Violations).

**INSTRUCTION NO. 17**

**_Liability of Member for Acts of Association_**

A person or business that belongs to a cooperative or [a trade] an association

does not become liable for violating the antitrust laws simply because the

cooperative or [trade] association is liable for such violation.  But, the actions of a

group of competitors, taken through an association to which they belong, can

present the same issues as the actions of a group of competitors who have not

created a formal organization such as an association. The Plaintiffs must prove that

the member of the cooperative or association knowingly, intentionally and actively

participated in the unlawful conspiracy.

Source: Instruction Nos. 20 & 21 at the DPP trial.  _See_, _also_, ABA Model
Instructions at 63 (Section 1 of the Sherman Act, Instruction 13:  Liability of
Member for Acts of Association) ("A person or business that belongs to a trade
association does not become liable for violating the antitrust laws simply because
the trade association is liable for such violation.  Instead, plaintiff must prove that
the member of the trade association knew of and participated in the conduct that
you find unlawful.").

37

INSTRUCTION NO. 18

*__The Rule of Reason--Introduction__*

Under the Sherman Act, a restraint of trade is illegal only if it is found to be unreasonable. You must therefore determine whether the restraints challenged here—(1) the UEP recommendations of early molt and early slaughter, (2) the UEP Certified Program, and (3) the USEM export programs—are, together, unreasonable.

In making this determination, you must first determine whether the [Direct Purchaser Plaintiff Class has] Plaintiffs have proven that the challenged restraints have resulted in a substantial harm to competition in a relevant product and geographic market. If you find that the [Direct Purchaser Plaintiff Class has] Plaintiffs have proven that the challenged restraints resulted in a substantial harm to competition in a relevant market, then you must consider whether the restraints produce countervailing competitive benefits. If you find that they do, then you must balance the competitive harm against the competitive benefit. The challenged restraints are illegal under Section 1 of the Sherman Act only if you find that the competitive harm substantially outweighs the competitive benefit. [Before going into each step of the analysis in more detail, I first want to talk to you about how you determine if companies are conspiring together.]

<u>Source</u>:  Instruction No. 13 at the DPP trial.  *See*, *also*, ABA Model Instructions at 3 (Sherman Act—General, Instruction 3A: Rule of Reason—Overview).

INSTRUCTION NO. 19

### *The Rule of Reason—Proof of a Relevant Market*

[Now that I have discussed how to determine conspiracy, I will turn back to the requirements of the Sherman Act.]   As I previously mentioned, to prove that the challenged restraints are unreasonable, the [Direct Purchaser Plaintiff Class] Plaintiffs must first demonstrate that the restraints have resulted in a substantial harm to competition.  [Although it may be relevant to the inquiry, harm that occurs merely to the individual business of the Direct Purchaser Plaintiff Class is not sufficient, by itself, to demonstrate harm to competition generally.]  Furthermore, the Plaintiffs must show that the harm to competition occurred in an identified market, known as a relevant product market.  [There are two aspects to a relevant market:

The first aspect is known as the relevant product market.  This means that the Direct Purchaser Plaintiff Class must show that there was harm in a relevant product market.  Here, the Direct Purchaser Plaintiff Class claims harm to the commodity shell egg market.  You must determine if these restraints caused harm in this product market.

40

The second aspect is known as the relevant geographic market.  A relevant geographic market is simply a given geographic area where the Direct Purchaser Plaintiff Class must show harm.

It is the [Direct Purchaser Plaintiff Class's] Plaintiffs' burden to prove the existence of a relevant market.

The basic idea of a relevant product market is that the products within it are reasonable substitutes for each other, from the buyer's point of view; that is, the products compete with each other.  In evaluating whether various products are reasonably interchangeable or reasonable substitutes for each other, you may also consider:

- consumers' views on whether the products are interchangeable;

- the relationship between the price of one product and sales of another;

- the presence or absence of specialized vendors;

- the perceptions of either industry or the public as to whether the products are in separate markets;

- the views of the Plaintiffs and Defendants regarding who their respective competitors are; and

- the existence or absence of different customer groups or distribution channels.

41

In this case, the Plaintiffs contend that the relevant product market is the market for eggs in all of their various forms, including shell eggs, raw unpasteurized liquid egg, various categories of industrial egg products, and various categories of high value-added egg products.  By contrast, the Defendants contend that all of these various forms of egg are not in the same relevant product market.

Source:  Instruction No. 16 from the DPP trial.  *See*, *also*, ABA Model Instructions at 108 - 109 (Section 2 of the Sherman Act, Instruction No. 4: Relevant Product Market).

**INSTRUCTION NO. 20**

**_Rule of Reason:  Proof of Competitive Harm_**

If you find that the [Direct Purchaser Plaintiff Class has] Plaintiffs have proven the existence of a relevant market, then you must determine whether the Plaintiffs have also proven that the challenged restraints have had a substantial harmful effect on competition in that market. A harmful effect on competition, or competitive harm, refers to a reduction in competition that results in the loss of some of the benefits of competition, such as lower prices, increased output, or higher product quality. The ability to charge higher prices for better products and services is not competitive harm. If the challenged conduct has not resulted in higher prices, decreased output, lower quality, or the loss of some other competitive benefit, then there has been no competitive harm, and you should find that the challenged conduct was not unreasonable.

In determining whether the challenged restraints have produced competitive harm, you may look at the following factors:

- the effect of the restraint on prices, output, product quality, and service;

- the purpose and nature of the restraint;

- the nature and structure of the relevant market;

- the number of competitors in the relevant market and the level of competition among them, both before and after the restraint was imposed; and

- whether the defendant and its alleged co-conspirators, together, possess market power.

The last factor, market power, has been defined as an ability to profitably raise prices for a sustained period of time above those that would be charged in a competitive market. A firm that possesses market power generally can charge higher prices for the same goods or services than a firm in the same market that does not possess market power. The ability to charge higher prices for better products or services, however, is not market power. An important factor in determining whether the defendants and their alleged co-conspirators together possess market power is their combined market share, that is, its percentage of the products or services sold in the relevant market by all competitors. Other factors that you may consider in determining whether the defendants and their alleged co-conspirators have market power include barriers to entry into the egg market for potential competitors, the threat of substitute products for eggs, outside competitors who were not part of the alleged conspiracy, and the percentage of the market covered by alleged members of this conspiracy. If the defendants and their

alleged co-conspirators do not possess a substantial market share, it is less likely that the defendants and their alleged co-conspirators possess market power.

If they do not possess market power, it is less likely that the challenged restraints have resulted in a substantial harmful effect on competition in the market. On the other hand, if you were to conclude that the defendants and their alleged co-conspirators possess market power, you could conclude that it is more likely that the challenged restraints have resulted in a substantial harmful effect on competition in the market.

Source:  Instruction No. 16 at the DPP trial.  *See*, *also*, ABA Model Instructions at 5 (Sherman Act—General, Instruction 3B: Rule of Reason—Proof of Competitive Harm).

**INSTRUCTION NO. 21**

### *Rule of Reason:  Evidence of Competitive Benefits*

If you find that the [Direct Purchaser Plaintiff Class has] Plaintiffs have proven that the challenged restraints resulted in substantial harm to competition in a relevant market, then you next must determine whether the restraints also benefit competition in other ways.

In considering whether the challenged restraints benefitted competition, you may consider various factors including, but not limited to: whether the challenged restraints were demanded by customers, increased production, increased consumer choice, resulted in the creation of a new product, decreased prices, or improved product quality.

If you find that the challenged restraints do result in competitive benefits, then you also must consider whether the restraints were reasonably necessary to achieve the benefits. If the [Direct Purchaser Plaintiff Class proves] Plaintiffs prove that the same benefits could have been readily achieved by other, reasonably available alternative means that create substantially less harm to competition, then they cannot be used to justify the restraints.

Source:  Instruction No. 17 at the DPP trial.  *See*, *also*, ABA Model Instructions at 8 (Sherman Act—General, Instruction 3C: Rule of Reason—Evidence of Competitive Benefits).

46

## INSTRUCTION NO. 22

### *Rule of Reason:  Balancing the Competitive Effects*

If you find that the challenged restraints were reasonably necessary to achieve competitive benefits, then you must balance those competitive benefits against the competitive harm resulting from the same restraints.

If the competitive harm substantially outweighs the competitive benefits, then the challenged restraints are unreasonable. If the competitive harm does not substantially outweigh the competitive benefits, then the challenged restraints are not unreasonable. In conducting this analysis, you must consider the benefits and harm to competition and consumers. The [Direct Purchaser Plaintiff Class bears] Plaintiffs bear the burden of proving that the anticompetitive effect of the conduct substantially outweighs its benefits.

Source:  Instruction No. 18 at the DPP trial.  *See*, *also*, ABA Model Instructions at 9 (Sherman Act—General, Instruction 3D: Rule of Reason—Balancing the Competitive Effects).

47

### INSTRUCTION NO. 23

### *Injury*

If you find that [defendant has violated the] one or more defendants participated in an overarching conspiracy to reduce supply in violation of the Sherman Act, then you must decide if the [Direct Purchaser Plaintiff Class] Plaintiffs were injured by that violation.   You must make this determination separately for each Plaintiff.

[The Direct Purchaser Plaintiff Class] A Plaintiff is entitled to recover damages for an injury to its business or property if it can establish three elements of injury and causation:

(1) [the Direct Purchaser Plaintiff Class] that Plaintiff was in fact, injured as a result of the Defendants' actions in violation of the antitrust laws;

(2) [the defendants alleged illegal conduct was] the actions of the Defendants in violation of the antitrust laws were a material cause of that Plaintiff's injury; and

(3) [the Direct Purchaser Plaintiff Class's] that Plaintiff's injury is an injury of the type that the antitrust laws were intended to prevent.

This first element is sometimes referred to as "injury in fact" or "fact of damage." Each Plaintiff must prove that it was injured as a result of [the

48

defendants' alleged violation of the antitrust laws] the actions of all alleged co-conspirators in violation of the antitrust laws. This does not require [the Direct Purchaser Plaintiff Class] each Plaintiff to prove the dollar value of its injury—in fact, I have asked them not to address that at this time. It requires only that [the Direct Purchaser Plaintiff Cass] each Plaintiff prove that it was, in fact, injured by the actions of all alleged co-conspirators in violation of the antitrust laws.

[The Direct Purchaser Plaintiff Class] Each Plaintiff must also offer evidence that establishes by a preponderance of the evidence that [the defendants' alleged illegal conduct] the actions of all alleged co-conspirators in violation of the antitrust laws was a material cause of [the Direct Purchaser Plaintiff Class's] that Plaintiff's injury. This means that the [Direct Purchaser Plaintiff Class] Plaintiff must have proved that some damage occurred to it as a result of [the defendants' alleged antitrust violation] all alleged co-conspirators' actions, and not some other cause. The [Direct Purchaser Plaintiff Class] Plaintiff is not required to prove that the alleged antitrust violation was the sole cause of its injury; nor need the Plaintiff eliminate all other possible causes of injury. It is enough if the Plaintiff has proved that the alleged antitrust violation was a material cause of its injury.

Finally, the [Direct Purchaser Plaintiff Class] Plaintiffs must establish that their injury is the type of injury that the antitrust laws were intended to prevent.

49

This is sometimes referred to as "antitrust injury." If the [Direct Purchaser Plaintiff Class's] Plaintiffs' injuries were caused by a reduction in competition, acts that would lead to a reduction in competition, or acts that would otherwise harm consumers, then the [Direct Purchaser Plaintiff Class's] Plaintiffs' injuries are antitrust injuries. On the other hand, if the [Direct Purchaser Plaintiff Class's] Plaintiffs' injuries were caused by actions of non-conspirators, heightened competition, the competitive process itself, or by acts that would benefit consumers, then the [Direct Purchaser Plaintiff Class's] Plaintiffs' injuries are not antitrust injuries and the [Direct Purchaser Plaintiff Class] Plaintiffs may not recover damages for those injuries under the antitrust laws.

In summary, if [the Direct Purchaser Plaintiff Class] a Plaintiff can establish that it was, in fact, injured by [defendants' conduct] the actions of all alleged co-conspirators in violation of the antitrust laws, that [defendants' conduct was] all co-conspirators' actions were a material cause of the Plaintiff's injury, that their injury was not also caused by the actions of producers who were not part of the alleged conspiracy, and that the defendants' injury was the type that the antitrust laws were intended to prevent, then [the Direct Purchaser Plaintiff Class] that Plaintiff is entitled to recover damages for the injury to its business or property.

50

As noted above, you must make this determination separately for each individual Plaintiff.

The term "business" includes any commercial interest or venture. [The Direct Purchaser Plaintiff Class] A Plaintiff has been injured in its business if you find that it has suffered injury to any of its commercial interests or enterprises as a result of [a defendant's alleged antitrust violation] the actions of all alleged co-conspirators in violation of the antitrust laws. The term "property" includes anything of value that [members of the Direct Purchaser Plaintiff Class] the Plaintiff owns, possesses, or in which [members of the Direct Purchaser Plaintiff Class have] the Plaintiff has a protectable legal interest. [The Direct Purchaser Plaintiff Class] A Plaintiff has been injured in its property if you find that it has paid an inflated price for goods, services, any legal interest of value, or that it has lost money as a result of [alleged antitrust violations by the defendants and their co-conspirators] the actions of all alleged co-conspirators in violation of the antitrust laws.

Source:  Instruction No. 22 at the DPP trial.  *See*, *also*, ABA Model Instructions at 300 (Causation and Damages, Instruction 1:  Injury and Causation).

# INSTRUCTION NO. 24

## *Plaintiffs' Participation*

A person who is of equal guilt in an unlawful conspiracy cannot claim that he has been wronged by other people who assisted or collaborated with him in the conspiracy.  Defendants claim that if any unlawful conspiracy existed in which any Defendants were conspirators, Plaintiffs were equally or more responsible in the formation of such a conspiracy.  If you find that a Plaintiff was a co-initiator of the conspiracy or equally responsible for the acts of the conspiracy, then that Plaintiff cannot prove that it was injured for that period of time in which that Plaintiff remained a party to the conspiracy.

However, a Plaintiff is not prevented from proving injuries caused by an unlawful conspiracy merely because that Plaintiff may have participated in the conspiracy, so long as that Plaintiff was not an equal participant in the conspiracy. If you find that a Plaintiff was an equal participant in the alleged unlawful scheme, the Plaintiff has not been injured.

Sources:  ABA Model Jury Instructions in Civil Antitrust Cases (2016 ed.) at 327 (Causation and Damages, Instruction No. 16: Plaintiff's Participation).  *See*, *also*, *In re: Processed Egg Prods. Antitrust Litig.*, MDL No. 08-02002, Order on Motion *in Limine* Concerning DAPs' Alleged Preferences, Demands, or Requirements for UEP Certified Eggs (ECF No. 1985) (quoting *Howard Hess Dental Labs*, *Inc. v. Dentsply Int'l*, *Inc.*, 424 F.3d 363, 382 (3d Cir. 2005), for the proposition that "every Court of Appeals that has decided the issue has held that antitrust plaintiffs who were involved in a conspiracy at a requisite level are barred from suing.")

## INSTRUCTION NO. 25

### *Notes*

In this case you have been permitted to take notes during the course of the trial, and most of you – perhaps all of you – have taken advantage of that opportunity. You may have your notes available to you during your deliberations, but you should make use of them only as an aid to your own memory. In other words, you should not give your notes any precedence over your independent recollection of the evidence or lack of evidence; and neither should you be unduly influenced by the notes of other jurors. I emphasize that the notes you may have taken are not entitled to any greater weight than the memory or impression of each juror as to what the testimony or other evidence may have been.

Source:   Instruction No. 23 at the DPP trial (citing Third Circuit Model Instructions).

### INSTRUCTION NO. 26

### *The Process for Deliberations*

When you retire to the jury room to deliberate, you may take with you your notes and certain exhibits that the Court has admitted into evidence. I strongly recommend that you select one member of the jury as your foreperson. That person will preside over the deliberations and speak for you here in open court.

You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide if, under the appropriate burden of proof, the parties have established their claims. It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.

Perform these duties fairly. Do not let any bias, sympathy, or prejudice that you may feel toward one side or the other influence your decision in any way.

As jurors, you have a duty to consult with each other and to deliberate with the intention of reaching a verdict. Each of you must decide the case for yourself,

54

but only after a full and impartial consideration of all of the evidence with your fellow jurors. Listen to each other carefully. In the course of your deliberations, you should feel free to re-examine your own views and to change your opinion based upon the evidence. But you should not give up your honest convictions about the evidence just because of the opinions of your fellow jurors. Nor should you change your mind just for the purpose of obtaining enough votes for a verdict.

When you start deliberating, do not talk to the jury officer, to me, or to anyone but each other about the case. If you have any questions or messages for me, you must write them down on a piece of paper, have the foreperson sign them, and give them to the jury officer, Mr. Coyle. Mr. Coyle will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you.

One more thing about messages. Never write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that a certain number is voting one way or another. Your votes should stay secret until you are finished.

Your verdict must represent the considered judgment of each juror. In order for you, as a jury, to return a verdict, each juror must agree to the verdict. Your verdict must be unanimous.

A verdict form has been prepared for you. It has a series of questions for you to answer. You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will fill it in and have your foreperson date and sign the form. You will then return to the courtroom and your foreperson will give your verdict. Unless I direct you otherwise, do not reveal your answers until you are discharged. After you have reached a verdict, you are not required to talk with anyone about the case unless I order you to do so.

Once again, I want to remind you that nothing about my instructions and nothing about the form of verdict is intended to suggest or convey in any way or manner what I think your verdict should be. It is your sole and exclusive duty and responsibility to determine the verdict.

Source:   Instruction No. 24 at the DPP trial (citing Third Circuit Model Instructions).

56

DATED:  December 2, 2019                         Respectfully Submitted,


/s/ *Jan P. Levine*                                      /s/ *Donald M. Barnes*
Jan P. Levine                                            Donald M. Barnes
Robin P. Sumner                                          Jay L. Levine
Pepper Hamilton LLP                                      Porter, Wright, Morris & Arthur LLP
3000 Two Logan Square                                    2020 K Street, N.W., Suite 600
18th and Arch Streets                                    Washington, DC 20006-1110
Philadelphia, PA 19103                                   (202) 778-3000
(215) 981-4000                                           dbarnes@porterwright.com
levinej@pepperlaw.com                                    jlevine@porterwright.com
sumnerr@pepperlaw.com
                                                         James A. King
**Counsel for Defendants United Egg Producers,**        Porter, Wright, Morris & Arthur LLP
**Inc. & United States Egg Marketers, Inc.**            41 South High Street, Suite 2900
                                                         Columbus, OH 43215
                                                         (614) 227-2000
                                                         jking@porterwright.com

                                                         **Counsel for Defendant Rose Acre Farms, Inc.**

## CERTIFICATE OF SERVICE

On this, the 2nd day of December, 2019, I hereby certify that the foregoing

DEFENDANTS' PROPOSED REVISED JURY INSTRUCTIONS – LIABILITY PHASE was

filed and served via the Court's ECF system on counsel of record.

*/s/ Allen T. Carter*

Allen T. Carter

12762082v7

58