## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: PROCESSED EGG PRODUCTS ANTITRUST LITIGATION | : : : : : | MULTIDISTRICT LITIGATION |
| *THIS DOCUMENT APPLIES TO:* ALL DIRECT ACTION PLAINTIFFS | : : | No. 08-md-2002 |

## MEMORANDUM

PRATTER, J.                                        JULY 29, 2022

In this long-running litigation, the Direct Action Plaintiffs and one defendant, Rose Acre Farms, Inc., have been unable to resolve Rose Acre's post-trial demand to tax certain costs to the plaintiffs. The Court was called upon intervene to resolve various of the disputed costs based on the precise measurements defined in relevant statutes along with a pinch of equitable discretion. Despite egging on the parties to hatch a plan and amicably settle the remaining costs in order to avoid or mitigate the delay and expense that comes from the parties not working together, the Court's encouragement was not "un eouf" to unscramble their dispute over costs. As a result, the Court resolves the remaining disputed costs by granting Rose Acre's bill of costs in part.

### BACKGROUND

This case stretches back more than a decade. Various groups of plaintiffs sued defendant egg producers and marketers for alleged antitrust violations, all of which were consolidated in a multidistrict litigation over which this Court presided. As relevant here, after a 26-day trial involving one group of plaintiffs, the Direct Action Plaintiffs (occasionally referred to as "DAPs"),

1

a jury found in favor of the defendants, and the Court accordingly entered judgment.[1] After that trial, one of the defendants, Rose Acre Farms, Inc., submitted its bills of costs for certain expenses that it sought to tax to the DAPs. The Court held an on-the-record oral argument related to Rose Acre's bill of costs on January 27, 2022, and thereafter issued an order resolving certain of the disputed costs. The Court subsequently issued another opinion regarding Rose Acre's claimed costs for "exemplification." *See In re Processed Egg Prods. Antitrust Litig.*, No. 08-md-2002, 2022 WL 2467075 (E.D. Pa. July 6, 2022). The Court continued to encourage the parties to attempt to settle their remaining dispute. The parties, however, informed the Court that they were unable to reach a settlement, necessitating this final opinion on this particular matter.

Three categories of costs remain: (1) transcripts, (2) printing, and (3) witness fees. At this point, Rose Acre demands $156,395.79 for transcripts, $31,370.18 for printing, and $22,204.08 for witness fees.[2] While acknowledging that some costs within these categories are taxable, the DAPs contend that the amount properly taxable is much lower. In addition, the DAPs contend that Rose Acre already recovered certain of these costs in its settlement of costs with another group of plaintiffs, the Direct Purchaser Plaintiffs, and thus should not be granted what the DAPs argue would amount to a double recovery.

---

[1] The Direct Action Plaintiffs appealed this Court's judgment, which the Court of Appeals for the Third Circuit affirmed. *In re Processed Egg Products Antitrust Litigation*, 850 F. App'x 142 (3d Cir. 2021). That is not at issue at this stage.

[2] Rose Acre initially demanded $157,024.97 in transcript fees for transcripts of depositions, hearings, and the trial. Doc. No. 2158-11, at 5. Rose Acre later conceded, however, that it was not seeking to recover the cost of the transcript for the Federal Rule of Evidence 702 hearing, and the DAPs then agreed that the adjusted amount of $1,261 was the proper amount taxable for the costs of hearing transcripts. Doc. No. 2160, at 20. The Court, thus, taxed this cost in an earlier order. Doc. No. 2168, at 3. As such, the above figure represents Rose Acre's original demand minus the amount the Court already granted.

Likewise, Rose Acre initially demanded $40,413.32 for printing. Doc. No. 2158-11, at 11. However, the Court denied $3,500 for a copier rental and $5,543.14 for the cost of binders and tabs, bringing the demand down to the above figure. Doc. No. 2168, at 2.

DISCUSSION

The prevailing party may recover certain "costs—other than attorney's fees" "[u]nless a federal statute, these rules, or a court order provides otherwise." Fed. R. Civ. P. 54(d)(1). Taxable "costs" are established in 28 U.S.C. § 1920 as:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

A court may not shift costs beyond those in this statute and in 28 U.S.C. § 1821 (for witness travel fees and expenses) without express statutory authorization. *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 444–45 (1987).

The Court of Appeals for the Third Circuit has explained that "there is a 'strong presumption' that costs are to be awarded to the prevailing party." *Reger v. The Nemours Found., Inc.*, 599 F.3d 285, 288 (3d Cir. 2010) (quoting *In re Paoli R.R. Yard PCB Litig.*, 221 F.3d 449, 462 (3d Cir. 2000)). That is because "denial of such costs is akin to a penalty." *Id.* Still, in passing § 1920, "Congress undertook to standardize the costs allowable in federal litigation." *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158, 164 (3d Cir. 2012) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 255 (1975)). Thus, § 1920 "defines the full extent of a federal court's power to shift litigation costs absent express statutory authority." *Id.* (quoting *W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 86 (1991)). As such, "whether a particular expense falls within the purview of section 1920, and thus may be taxed in the first place, is an issue of

3

statutory construction." *Id.* (quoting *In re Ricoh Co. Patent Litig.*, 661 F.3d 1361, 1364 (Fed. Cir. 2011)). In other words, courts may not "invoke equitable concerns . . . to justify an award of costs for services that Congress has not made taxable." *Id.* at 170. Stated simply, a court must first decide, based on statutory interpretation, *if* a cost is taxable before then determining, in its discretion, whether that cost *should* be taxed.

At this stage, Rose Acre's claimed costs are for transcripts under § 1920(2), printing under § 1920(3), and certain witness fees and expenses under § 1920(3). The Court addresses each in turn.

## I.   The Court Grants Rose Acre's Demand to Tax the Cost of Transcripts to the Direct Action Plaintiffs in the Amount of $141,843.96

The parties dispute the amount of costs taxable to the Direct Action Plaintiffs for various transcripts prepared during the course of this long-running case. The parties have further broken this down into two subcategories (1) deposition transcripts and (2) hearing or trial transcripts. Rose Acre asserts that $156,395.79 is the amount properly taxable to the DAPs for this category, comprising $103,460.22 for deposition transcripts and $51,673.74 for trial transcripts (excluding transcripts of hearings already resolved). Carter Aff. ¶ 47, Doc. No. 2158-2; Ex. A to Carter Aff., at 45, Doc. No. 2158-3. On the other hand, the DAPs argue that only $93,187.10 is properly taxable to them, comprising $73,069.73 for deposition transcripts and $18,855.54 for trial transcripts (excluding transcripts of hearings already resolved).

### A.   Deposition Transcripts

A party may tax costs for transcripts of depositions "necessarily obtained for use in the case." 28 U.S.C. § 1920(2). This does not mean that the deposition transcript was necessarily used at *trial*, but whether the deposition "appeared 'reasonably necessary' to defendants at the time of the deposition." *In re Aspartame Antitrust Litig.*, 817 F. Supp. 2d 608, 617 (E.D. Pa. 2011) (quoting

*Stevens v. D.M. Bowman, Inc.*, No. 07-cv-2603, 2009 WL 117847, at *3 (E.D. Pa. Jan. 15, 2009));

*accord Adv. Fluid Sys., Inc. v. Huber*, No. 13-cv-3087, 2021 WL 391986, at *7 (M.D. Pa. Feb. 4,

2021). Stated differently, a deposition is taxable even if not used at trial unless it is "virtually

irrelevant." *Thabault v. Chait*, No. 85-cv-2441, 2009 WL 69332, at *9 (D.N.J. Jan. 7, 2009).

Rose Acre seeks to tax the cost of a total of 219 depositions. *See* Ex. A to Carter Aff., at

1–11, Doc. No. 2158-3. Within this category is a variety of costs, depending on each different

deposition. *See id.* at 12–44.

The Direct Action plaintiffs make two different types of objections to these costs. First, the

DAPs claim that certain entire depositions should not be taxed because they were not for use in

this case. Second, the DAPs claim that certain costs associated with depositions should not be

taxed because they are not the cost of producing transcripts.

### 1. *Depositions Not for Use in this Case*

First, the DAPs argue that the Court should not tax $12,132.32 in costs of 19 depositions

taken in a different case (the "AWG case") that was briefly consolidated in this Court before that

single case was remanded to Kansas state court. However, the DAPs have cited no legal authority

supporting their position. Instead, the DAPs walk through the procedural posture of these two cases

and note that Rose Acre did not end up using any of those 19 depositions at trial here. *See* Doc.

No. 2160, at 16–17. But, as the Court has already explained, that depositions are not ultimately

used at trial does not mean they are not taxable. *In re Aspartame Antitrust Litig.*, 817 F. Supp. 2d

at 617. The DAPs also assert that they were not allowed to participate in those depositions. But

that DAPs did not attend certain depositions does not mean they are automatically not taxable.

*Thabault*, 2009 WL 69332 at *9. Plus, Rose Acre has asserted that *at the time* it took the

depositions, the legal issues in the other case and the legal issues in the MDL case in front of this

Court were identical such that Rose Acre anticipated the depositions being useful in this case.

Carter Aff. ¶¶ 35–36, Doc. No. 2158-2. Furthermore, the Court had already ruled them admissible in this case. Doc. Nos. 1332, 2024. In short, Rose Acre has met its burden of showing these costs are taxable. Given that there is a "strong presumption" in favor of awarding costs, *In re Paoli*, 221 F.3d at 462, the Court denies the DAPs' objection to this particular subcategory and taxes these particular costs to the DAPs.

Second, the DAPs contend that $9,931.82 in costs for 24 depositions of consumer class representatives that Rose Acre deposed in the Indirect Consumer Class case should not be taxed to them. Again, however, the DAPs have not cited any legal authority upon which the Court should deny Rose Acre's claimed costs for these depositions. Instead, like the above, the DAPs assert that Rose Acre did not end up using them at trial and counsel for the DAPs did not attend these depositions. But, as already explained, neither argument is a reason to deny the cost of a deposition. Once again, Rose Acre explained that it deposed these consumer plaintiffs because they "appeared at the time to be central to Rose Acre's customer demand defense." Doc. No. 2166, at 7; Carter Aff. ¶¶ 12–13, Doc. No. 2158-2. The Court finds that Rose Acre has met its burden and, given the presumption in favor of taxing costs, the Court will not deny these costs. Therefore, the Court denies the DAPs' objection to this particular subcategory and taxes these particular costs to the DAPs.

### 2. *Other Transcript Costs*

Additionally, the DAPs object to certain costs applicable to certain depositions. Specifically, DAPs contend that Rose Acre's demand to tax the costs of linked exhibits, scanned/OCR exhibits, Realtime, and CD packages are not taxable as part of the cost of depositions. But the DAPs have not grappled with the language of § 1920(2), which clearly allows taxation of "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case." 28 U.S.C. § 1920(2). The DAPs do not contend that Rose Acre's asserted costs are not

for such fees of printed or electronic transcripts; instead they claim that these costs were not necessary. S*ee Duchesneau v. Cornell Univ.*, No. 08-cv-4856, 2015 WL 619609, at *6 (E.D. Pa. Feb. 11, 2015). But Rose Acre has explained why they incurred these costs to, for instance, condense depositions taken during the course of trial, to streamline certain depositions, and to receive copies of electronic depositions. *See* Carter Aff. ¶¶ 14–34, Doc. No. 2158-2. Because Rose Acre has met its burden of showing these costs were necessary, the DAPs make only a blanket assertion that they are not, and costs permitted by § 1920 are presumptively taxable, the Court denies the DAPs' objections to these costs as well.

Therefore, the Court grants Rose Acre's demand to tax **$103,460.22** in deposition transcript costs to the DAPs.

### B. <u>Hearing and Trial Transcripts</u>

Rose Acre also demanded $53,564.75 for the fees associated with trial and hearing transcripts. Ex. A to Carter Aff., at 45, Doc. No. 2158-3. The Court already granted Rose Acre $1,261.83 from this category for hearing transcripts after Rose Acre agreed that the cost of its Federal Rule of Evidence 702 hearing should be withdrawn and the DAPs agreed that the cost of the remaining transcripts were taxable. Doc. No. 2168, at 3. Thus, $51,673.74 for trial transcripts remains to be resolved. This is comprised of $18,855.54 for PDFs, $7,048.80 for ASCII, $19,935 for three Realtime feeds, and $5,834.40 for morning and evening edited delivery. Ex. A to Carter Aff., at 45, Doc. No. 2158-3.

The DAPs do not object to $18,855.54 for the hourly trial transcripts but object to the remaining costs. The DAPs argue that the remaining costs were not necessary to Rose Acre's case.

Costs for ASCII, Realtime, and expedited delivery of transcripts may be taxed under 28 U.S.C. § 1920(2) when necessary to the case. *Duchesneau*, 2015 WL 619609, at *18 ("Expedited trial transcripts have been deemed necessary in cases involving complex issues or when a trial

extends over a long period of time." (quoting *Depasquale v. Int'l Bus. Machs.*, No. 94-cv-3058, 1998 WL 195662, at *2 (E.D. Pa. Apr. 2, 1998)); *Otsuka Pharm. Co. v. Sandoz, Inc.,* No. 07-cv-1000, 2015 WL 5921049, at *7 (D.N.J. Oct. 9, 2015) (finding ASCII and Realtime trial transcripts necessary because they "were essential to the smooth functioning of the trial" "[d]ue to the complex nature of [the] case, the amount of witnesses, and the volume of documents presented"). Here, other than a general denial, the DAPs have not explained how or why Rose Acre's demand for these costs was *not* necessary. That is plainly insufficient for the Court to deny them in full given the "strong presumption" that costs are to be awarded to the prevailing party. *In re Paoli*, 221 F.3d at 462.

Still, the Court agrees with the DAPs to the extent they object to costs for *three* Realtime feeds. Rose Acre claims three feeds were necessary to (1) track witness testimony and ensure proper limiting instructions were sought and delivered, (2) ensure only properly admitted testimony was played at trial, and (3) facilitate attorneys' timely objections. Carter Aff. ¶ 45, Doc. No. 2158-2. Quite plainly, some of Rose Acre's asserted reasons for having three Realtime feeds were solely for Rose Acre's lawyers' convenience. Thus, the Court finds that Rose Acre may tax the cost of one Realtime feed to the DAPs. As such, the Court reduces Rose Acre's demand for its Realtime costs of $19,935 by two thirds to $6,645 in order reflect the cost of one Realtime feed.

Therefore, the Court grants Rose Acre's demand to tax **$38,383.74** for trial transcript costs to the DAPs.

II.    **The Court Grants Rose Acre's Demand to Tax Certain Printing Costs to the Direct Action Plaintiffs in the Amount of $24,765.54**

Another unsettled category is Rose Acre's demand to tax $40,413.32 for printing costs to the DAPs. Ex. A to Carter Aff., at 46–47, Doc. No. 2158-3. Printing costs are taxable under 28 U.S.C. § 1920(3).[3]

The Court has already denied certain of these costs, namely $3,500 for the rental of a copy machine and $5,543.14 for the cost of binders and tabs. Doc. No. 2168, at 2. That leaves $31,370.18, which can be broken down as follows:

- $9,554.58 for black and white printing costs at $0.18 per page

- $1,957.90 for color printing costs

- $9,184.47 for certain printing costs by an outside vendor (Parcels)

- $9,949 for the printing of demonstrative exhibits by an outside vendor (Magna)

- $724.23 for certain printing costs by an outside vendor (Discovery Document Solution)

Carter Aff. ¶¶ 48–57, Doc. No. 2158-2; Ex. A to Carter Aff., at 46–47, Doc. No. 2158-3.[4]

The DAPs contend that only $19,753.32 is properly taxable to them. Doc. No. 2160, at 14. This is based on the DAPs' contention that Rose Acre's demanded rate is too high and that Rose Acre's purpose for these copies is not specified, such that the Court should reduce Rose Acre's requested amount by adjusting the printing rate down to $0.15 per page (in addition to removing the binders and tabs expenses) and then apply another one-third reduction.

First, the DAPs are right that Rose Acre's requested rate of $0.18 per page for black and white copying is too high. Courts in the Third Circuit routinely permit rates of $0.10-$0.15.

---

[3] Rose Acre is claiming certain of its copying costs under § 1920(3) for printing rather than under § 1920(4) for the costs of making copies. However, that categorization does not change the Court's analysis.

[4] These figures represent the amount Rose Acre originally demanded minus those costs the Court denied in its March 18, 2022 Order. Doc. No. 2168, at 2.

*See, e.g.*, *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 717 (3d Cir. 2005); *Langbord v. U.S. Dep't of the Treasury*, No. 06-cv-5315, 2017 WL 3953954, at *4 (E.D. Pa. July 10, 2017). Rose Acre attempts to get around this by saying that the $0.10-$0.15 range is out-of-date and should be updated to reflect rising costs. Maybe so. (In the future, perhaps comparative quotes would serve the need to make the inflation point). But Rose Acre has cited to no authority for this proposition. Thus, the Court concludes that Rose Acre's requested rate will be reduced from $0.18 per page to $0.15 per page, reducing Rose Acre's demand for $9,554.58 for black and white copies to $7,962.15.

Second, the DAPs argue that Rose Acre has not specified the purpose for these copies, whether they were solely for its own convenience or if they were for a necessary use in the case. 28 U.S.C. § 1920(4). Rose Acre retorts that, due to the sprawling nature of this case and impossibility of absolute accounting accuracy, it is only seeking the costs of copes in the months leading to trial, and not the cost of copies for the years prior to that. In other words, Rose Acre claims that is has already reduced its request by a reasonable rate.

The Court has no way of determining whether Rose Acre's self-reduced figure is an accurate reflection of the costs actually necessary to the case versus those for its own convenience. But neither do the DAPs. And the Court is well aware of the length and complexity of this case, which required innumerable filings that continue to adorn the Court's bookshelves. Thus, without any way of accurately determining if Rose Acre's self-reduced figure is accurate and reasonable, without knowing if the DAPs' requested reduction of one-third goes too far given Rose Acre's self-reduction, and given the presumption that costs are taxable to the losing party, the Court, instead, invokes its "ample discretion" to engage in a bit of rough justice. *Race Tires Am., Inc.*, 674 F.3d at 167.

Taking the newly reduced black and white copy figure of $7,962.15 and adding the other costs (for which the DAPs do not challenge the per-page rate), the adjusted total is $29,777.75. The DAPs contend $19,753.32 is properly taxable to them. Doc. No. 2160, at 14. Taking the average of these figures, therefore, the Court grants Rose Acre's demand to tax **$24,765.54** in printing costs to the DAPs.

### III.   The Court Grants Rose Acre's Demand to Tax Certain Witnesses Fees to the Direct Action Plaintiffs in the Amount of $14,820.01

Under 28 U.S.C. § 1920(3), the prevailing party may recover certain witness fees. The amount of those fees is further explicated in 28 U.S.C. § 1821. Section 1821 precisely specifies the recoverable costs for travel, lodging, and meals for witnesses who attend federal court. *See* 28 U.S.C. §§ 1821(b), (c), (d). A court may not grant fees beyond those permitted in this statute without express statutory authorization. *Crawford Fitting Co.*, 482 U.S. at 444–45.

Section 1821 specifies that amount for travel on common carriers must be "at the most economical rate reasonably available" and that a mileage rate will be calculated according to the General Services Administration's rate. 28 U.S.C. §§ 1821(c)(1), (c)(2). It further specifies that lodging, and food must not exceed the amounts identified by the General Services Administration's rate for that area. 28 U.S.C. §§ 1821(d)(1), (d)(2). As the DAPs correctly identify, the GSA rates for lodging and meals in 2019 were as follows:

- Lodging:
    - October 2019: $196 + 15.5% tax = $226.38[5]
    - November 2019: $196 + 15.5% tax = $226.38
    - December 2019: $149 + 15.5% tax = 172.10
- Food & Incidentals:
    - Breakfast: $14

---

[5] The DAPs have conceded that Rose Acre may recover the GSA rate plus the amount of local tax on lodging. *See, e.g.*, Doc. No. 2167, at 2; Doc. No. 2167-3.

- o   Lunch: $16
- o   Dinner: $26
- o   Incidental Expenses: $5

*FY   2020   Per   Diem   Rates   for   ZIP   19106*,   U.S.   Gen.   Servs.   Admin.,

https://www.gsa.gov/travel/plan-book/per-diem-rates/per-diem-rates-

results/?action=perdiems_report&state=PA&fiscal_year=2020&zip=19106&city=Philadelphia

(last   visited   July   26,   2022);   *Payments,   Assistance   &   Taxes*,   City   of   Phila.,

https://www.phila.gov/services/payments-assistance-taxes/business-taxes/hotel-tax/   (last   visited

July 26, 2022).

Rose Acre demands $22,204.08 in witness fees.[6] Ex. A. to Carter Aff., at 48, Doc. No.

2158-3; Doc. No. 2166-1.[7] The DAPs counter that certain of those fees exceed the prescribed rates,

and thus contend that $12,529.79 is the proper amount. Doc. No. 2167, at 1–3; Doc. No. 2167-3.

Having (unfortunately) reviewed both parties' submissions line-by-line, receipt-by-receipt, and

meal-by-meal, the Court agrees with the DAPs' asserted adjustments in large part. *See* Doc. No.

2167-3.

First, the DAPs are correct that numerous of Rose Acre's asserted costs for hotel and food

do not conform to the GSA's rate for Philadelphia during the relevant time period. *See, e.g.*, Doc.

No. 2167-3, at 2 line 4 (taxing $72.04 for dinner for one person). In fact, it appears from Rose

Acre's submissions that it made *no attempt* to conform its requested costs to the prescribed GSA

rates. Second, the DAPs are correct that Rose Acre cannot tax costs for people who were not

---

[6] There is a possible discrepancy in this figure. Rose Acre demands $22,204.08, but the DAPs assert that when all of Rose Acre's receipts are added up, the total only comes out to $22.202.76. Doc. No. 2167-3, at 6 line 142. This $1.32 difference may bedevil someone else, but does not affect the Court's decision in this particular category of costs so the Court will not address it further.

[7] Rose Acre initially submitted its demand of $22,204.08 with an entirely unorganized collection of receipts and Rose Acre had also not identified which receipts corresponded to which demanded cost. *See* Exs. E, F & G to Carter Aff., Doc. Nos. 2158-7, 2158-8, 2158-9. Only after the Court required Rose Acre to more specifically identify its purported witness costs did Rose Acre submit coherent documentation of these expenses. Doc. No. 2166-1.

witnesses in the case. *See, e.g., id.* at 3 lines 44, 45 ($60 excess baggage charges for Cynthia Hinton, who was not a witness). Third, the DAPs are correct that Rose Acre cannot tax for 25 days of parking expenses for witness David Hurd when Mr. Hurd was only a witness for four days. *See* Ex. E to Carter Aff. at 172, Doc. No. 2158-7. Nor can Rose Acre tax 32 cab rides for Mr. Hurd spanning 26 days. *See id.* at 174, 181, 183–209; Doc. No. 2167-3, at 3–4 lines 62–65, 67–94. The Court agrees that the DAPs' solution to tax the eight most expensive cab rides (two per day for Mr. Hurd's four days of testimony) is a reasonable one. *See* Doc. No. 2167-3, at 3 line 62.

The Court does, however, make two further adjustments. First, the Court grants the full $605.52 that Rose Acre demands for four nights of lodging for witness Greg Hinton. Ex. E to Carter Aff., at 107, Doc. No. 2158-7; Doc. No. 2167-3, at 3 line 52. The DAPs contend that only $172.10 is properly taxable based on the GSA rate plus tax. Doc. No. 2167-3, at 3 line 52. However, the DAPs' proposed award for this item is only for one night of lodging, when the bill is for four nights of lodging, and the DAPs concede that Mr. Hinton was a witness for four days. Doc. No. 2167-3, at 3 column B; Ex. E to Carter Aff., at 107, Doc. No. 2158-7. Thus, even at the GSA rate plus tax of $172.10, which the DAPs concede is properly taxable, multiplied by four nights, Rose Acre's entire claimed amount is properly taxable to the DAPs.

Second, the Court grants Rose Acre a total of $1,856.80 for certain unspecified travel and food expenses. Rose Acre demands a variety of costs for undifferentiated food and cab fare for witness Jonathan Walker totaling $281.96, as well as $3,724.16 for his airfare, and $1,564.29 for the airfare of witness Jesse David. Ex. F to Carter Aff., at 3, 15, 27, Doc. No. 2158-8; Doc. No. 2166-1, at 3; Doc. No. 2167-3, at 5 lines 124–28, 130. Rose Acre has not provided detailed documentation so that the Court can discern (1) what portion of the amalgamated total for food and cab fare corresponds to each and, thus, whether it corresponds to the GSA rates, and (2)

13

whether the asserted airfare is the lowest economical rate reasonably available. While Rose Acre has provided at least some receipts, *cf. Greene v. Fraternal Order of Police*, 183 F.R.D. 445, 450 (E.D. Pa. 1998), those receipts do not demonstrate whether the bill for airfare is the most economical rate reasonably available. 28 U.S.C. § 1821(c)(1). The "receipt" for Mr. Walker's $3,724.16 flight is a timekeeping summary that does not even state the originating location for his remarkably pricey travel to Philadelphia. Ex. E to Carter Aff., at 15, Doc. No. 2158-8. Thus, in its equitable discretion, the Court grants Rose Acre one-third of these costs. *Race Tires Am., Inc.*, 674 F.3d at 167; *see Greene*, 183 F.R.D. at 448.

Considering all of the above, and in the Court's equitable discretion, therefore, the Court grants Rose Acre's demand to tax **$14,820.01** in witness fees to the DAPs.

## IV.   The Court Cannot Reduce the Amount Taxable to the Direct Action Plaintiffs Based on the DAPs' Unsupported Double Recovery Theory

Lastly, the DAPs argue that the Court should reduce the amount that Rose Acre may tax to them, arguing that Rose Acre has already recovered for certain expenses and should not be permitted to recover twice. According to the DAPs, Rose Acre already recovered for certain of these costs when it settled its similar costs dispute with the Direct Purchaser Plaintiffs after also prevailing against them at trial in 2018. Without any specificity, the DAPs assert "Rose Acre seeks to recover . . . many of the same costs that it already recovered." Doc. No. 2160, at 20. But the DAPs have suggested no method by which the Court might discern which portion, if any, of Rose Acre's settlement with the Direct Purchaser Plaintiffs would correspond with Rose Acre's claimed costs here. Indeed, any attempt to "put together again" the costs covered by Rose Acre's blanket settlement with the Direct Purchaser Plaintiffs and then determine which of those unspecified costs overlap with costs in this case would be an impossible task, even if this Court had the help of "all the king's horses and all the king's men."

14

Therefore, the Court will not equitably reduce the amount that Rose Acre may properly tax to the DAPs based on this purely speculative argument.

## CONCLUSION

Now at the end of this dispute,[8] the Court includes the following totals of costs taxable to the DAPs that reflect this decision and the Court's two other decisions on this matter:

- Fees for printed or electronically recorded transcripts necessarily obtained for use in the case under § 1920(2): **$143,105.79**;[9]

- Fees and disbursements for printing and witnesses under § 1920(3): **$39,585.55**;[10]

- Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case under § 1920(4): **$0**.[11]

For the foregoing reasons, the Court grants in part and denies in part Rose Acre Farms Inc.'s demand to tax certain costs to the Direct Action Plaintiffs. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

[8] And again taking the opportunity to compliment all generations of counsel who participated in the "Eggs" cases, notwithstanding the possible judicial exasperation with and exception of the present task. The lawyering has been superb.

[9] This comprises $1,261.83 for hearing transcripts, Doc. No. 2168, at 3, $103,460.22 for deposition transcripts, and $38,383.74 for trial transcripts, as explained herein.

[10] This comprises $24,765.54 for printing, along with $14,820.01 for certain witness fees, as explained herein.

[11] The Court denied Rose Acre's demand to recover certain costs related to ESI discovery, Doc. No. 2168, at 1–2, and also denied Rose Acre's demand to recover certain other costs for "exemplification," Doc. Nos. 2173, 2174.